George A. Zelcs *(pro hac vice)*
  gzelcs@koreintillery.com
Robert E. Litan *(pro hac vice)*
Randall P. Ewing, Jr. *(pro hac vice)*
  rewing@koreintillery.com
Jonathon D. Byrer *(pro hac vice)*
  jbyrer@koreintillery.com
**KOREIN TILLERY, LLC**
205 North Michigan, Suite 1950
Chicago, IL  60601
Telephone: (312) 641-9750
Facsimile: (312) 641-9751

Karma M. Giulianelli, CA Bar #184175
  karma.giulianelli@bartlitbeck.com
Glen E. Summers
  glen.summers@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewetta St. Suite 1200,
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile:  (303) 592-3140

Stephen M. Tillery *(pro hac vice)*
  stillery@koreintillery.com
Jamie Boyer *(pro hac vice)*
  jboyer@koreintillery.com
Michael E. Klenov, CA Bar #277028
  mklenov@koreintillery.com
Carol O'Keefe *(pro hac vice)*
  cokeefe@koreintillery.com
**KOREIN TILLERY, LLC**
505 North 7th Street, Suite 3600
St. Louis, MO  63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Ann Ravel
  aravel@mcmanisfaulkner.com
**MCMANIS FAULKNER**
Fairmont Plaza, 10th Floor, 50 West San
Fernando Street
San Jose, CA  95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| EPIC GAMES, INC.; | CASE NO. 3:20-cv-05671-JD |
| Plaintiff, | |
| vs. | **PLAINTIFF MARY CARR'S RESPONSE TO SUA SPONTE JUDICIAL REFERRAL FOR PURPOSES OF DETERMINING RELATIONSHIP OF CASES** |
| GOOGLE LLC, *et al.*; | |
| Defendants. | RELATED CASE: *Carr, et al. v. Google, LLC, et al.;* Case No. 5:20-CV-05761 |

Pursuant to Local Rule 3-12, Plaintiff Mary Carr, on behalf of herself and all others similarly situated (collectively "Plaintiff Carr"), submits this Response to the *Sua Sponte* Judicial Referral for Purposes of Determining Relationship of Cases ("Judicial Referral") ordered by Judge Chen in *Pure Sweat Basketball, Inc. v. Google, LLC, et al.*, Case No. 20-cv-05792-EMC ("*PSB*"). Plaintiff Carr respectfully submits that *Carr, et al. v. Google, LLC, et al.*, Case No. 5:20-cv-05761 ("*Carr*"), is related to *Epic Games, Inc. v. Google, LLC et al.*, Case No. 3:20-cv-05671 ("*Epic*")—a fact Google admits. *Carr* and *Epic* concern the same subject matter (restrictions Google imposes on Android-compatible hardware manufacturers and application ("app") developers), the same factual and expert inquiry (whether such restrictions result in anticompetitive harm in a relevant antitrust market), and the same resulting claims (federal and state antitrust laws). Those cases are appropriately related. Forcing these lawsuits to proceed along parallel tracks before different judges would not only waste enormous judicial and party resources, but also risk inconsistent results.[1]

Plaintiff Carr does, however, dispute that *Feitelson v. Google, Inc.*, Case No. 14-cv-02007 ("*Feitelson*"), is related to *Carr* or *Epic*. *Feitelson* concerned Google's behavior in the search engine market and consequently involved different parties, conduct and proposed classes. Moreover, *Feitelson* was resolved on a motion to dismiss over five years ago.[2] Local Rule 3-12 ensures related cases proceed efficiently and consistently. Relating two recently-filed cases dealing with app distribution and use to a long-defunct lawsuit involving search functions does not serve that goal. Accordingly, *Carr* should be related to *Epic* and proceed before this Court.

---

[1] Plaintiff Carr takes no position on whether *PSB* is related to *Carr* and *Epic*. Should the Court determine *PSB* is related, it should proceed before Judge Donato because *Epic* is the lowest-numbered case. *See* L.R. 3-12(c) (2020). Plaintiff Carr agrees with Google that lawsuits concerning Android and Apple products are not related.

[2] *See Feitelson, et al. v. Google, Inc.*, 80 F.Supp.3d 1019 (N.D. Cal. 2015).

1
2

**FACTUAL AND PROCEDURAL BACKGROUND**

3       On August 13, 2020, Plaintiff Epic Games, Inc. ("Epic") filed suit against Defendants
4   Google LLC, Google Ireland Ltd., Google Commerce Ltd., Google Asia Pacific PTE Ltd. and
5   Google Payment Corp. (collectively "Google") for violating the Sherman Antitrust Act, the
6   California Cartwright Act and the California Unfair Competition Law. (*See* Compl. For Injunctive
7   Relief ("Epic Compl."), attached as Ex. 1). Three days later, Plaintiff Carr did the same on behalf
8   of "[a]ll persons in the United States who paid for an app on Google Play, subscribed to an app
9
10  obtained on Google Play, or paid for in-app digital content on an app obtained on Google Play within
11  the relevant statute of limitations." (*See* Class Action Compl. ("Carr Compl.") at ¶109, attached as
12  Ex. 2). In its Response to the Judicial Referral, Google admitted that *Epic* and *Carr* are related.
13  (ECF Doc. 32, Google's Resp. at p. 2).
14
15      Both *Epic* and *Carr* allege Google is abusing its monopoly power in the Android app market
16  by: (1) forcing manufacturers to pre-install and prominently display the Google Play Store icon; (2)
17  prohibiting the distribution of any app through Google Play Store that helps users bypass the Store
18  for app downloads or purchases; (3) conditioning use of Google advertising services on app
19  distribution through Google Play Store; (4) inhibiting consumers' ability to bypass the Google Play
20  Store; (5) tying the ability to distribute an app through Google Play Store to a developer's agreement
21  to exclusively use Google Play Billing for in-app purchases; and (6) using its middle-man role in
22  app distribution and purchasing to enhance Google's own revenue-generating advertising services.[3]
23  (*See* Comparison Chart, attached as Ex. 3). Epic seeks injunctive relief, while Plaintiff Carr seeks
24  injunctive relief and damages. (Ex. 1, Epic Compl.; Ex. 2, Carr Compl.)
25
26
27
_____
28  [3] Exhibit 3 provides a detailed comparison of the allegations in the *Epic* and *Carr* Complaints.

*Epic* and *Carr* will both require a showing that Google's restrictions on original equipment manufacturers ("OEMs") (such as Samsung) and app developers (such as Epic) cause an anticompetitive impact in a relevant market. This will require Plaintiffs in both cases to produce thorough economic testimony establishing not only the same relevant market, but consumer harm within that market—an intensive inquiry involving complete overlap in factual and economic evidence. Both cases must also establish a lack of any countervailing procompetitive impact that might outweigh the marketplace harm caused by Google's conduct, another inquiry requiring essentially identical testimony, discovery, and economic evidence. Simply put, *Epic* and *Carr* involve conduct relating to the same market participants, the same facts showing an impact on those participants (including consumers), and the same legal claims. They are related.

In contrast, *Feitelson* had nothing whatsoever to do with Android apps, focusing instead on the Internet search market. (*See* First Am. Class Action Compl. ("Feitelson Compl."), attached as Ex. 4) *Feitelson* argued Google abused its monopoly power in the search engine market by forcing OEMs to make Google the default search engine on Android devices which, in turn, stifled competition, innovation and revenue generation in that arena. (*Id.* at ¶8-9). Proposed class members were purchasers of an Android device where Google's conduct caused the installation of its own search engine as the default. (*Id.* at ¶84). *Feitelson*, therefore, involved a different market and—had it not been dismissed five years ago—would have involved a different theory of effects in that market.

While *Feitelson* discussed Google's Mobile Application Distribution Agreement ("MADA"), its sole focus was how that agreement forced OEMs to select Google as the default search engine, which is not at issue in *Epic* or *Carr*. (*Id.* at ¶35-36, 41-42, 52). *Feitelson* made no mention of app developers, distributors or users, it did not discuss how Android apps functioned, and it did not address how users accessed or made payments within those apps. (*Id.* at ¶59-73).

Ultimately, *Feitelson* was dismissed at the pleading stage in 2015. *Feitelson, et al. v. Google, Inc.*, 80 F.Supp.3d 1019 (N.D. Cal. 2015).

**ARGUMENT**

## I.      LEGAL STANDARD

Under Local Rule 3-12(a), actions are related when they "concern substantially the same parties, property, transaction or event" and "[i]t appears likely that there will be an unduly burdensome duplication of labor and expense or conflicting results if the cases are conducted before different judges." L.R. 3-12(a) (2020). To determine relatedness, courts consider parties, procedural posture, claims and underlying facts. *See Pepper v. Apple, Inc.*, 2019 WL 4783951 (N.D. Cal. August 22, 2019). The relief sought by potentially related cases is irrelevant because "courts routinely relate cases in which the theories of damages differ." *Id.* at \*2.

## II.     *EPIC* AND *CARR* ARE RELATED, BUT *FEITELSON* IS NOT.

Google admits that *Epic* and *Carr* are related. (ECF Doc. 32, Google Resp. at p. 2). As described above, those lawsuits concern the same defendants, the same Android-related app markets, the same Google agreements, the same abusive conduct governing Android app distribution and in-app purchasing and the same antitrust claims. (Ex. 3, Chart). Both cases are in their procedural infancy. That *Carr* seeks damages in addition to injunctive relief is not relevant, particularly where the inquiry into competitive harm required by both claims (and used to prove damages) is the same. *Pepper,* 2019 WL 4783951 at \*2. If these cases proceeded separately, party and judicial resources would be wasted on duplicative discovery and cumulative motion practice, all while running the risk of inconsistent rulings. Under Local Rule 3-12(a), *Epic* and *Carr* are clearly related.

*Feitelson*, in contrast, has little in common with those lawsuits. That case involved:

- Different markets (search engine vs. app distribution/in-app payment processing);

- Different classes (Android device purchasers who used Google's general search engine vs. Android app users who used Google's app distribution and payment processing);

- Different conduct (abuse of power over OEMs to stifle search engine competition vs. abuse of power over app developers to stifle app distribution outside of Google Play Store and/or processing of in-app purchases outside of Google Play Billing); and

- Different theories of competitive impact (an alleged overcharge in the cost of Android phones because a lack of price competition for default search engine status prevented OEMs from passing subsidies from search engine competitors to consumers vs. an overcharge in app and in-app purchases by virtue of Google's toll on app developers through the app distribution store).

Google's argument otherwise is vague at best and misleading at worst. As Google knows, the search engine service at issue in *Feitelson* exists on a different home screen service than the one at issue in *Epic* and *Carr*. Google writes "[t]hese cases each allege claims against Google defendants based on Google's contracts with app developers and its policies within the Android ecosystem." (ECF Doc. 32, Google's Resp. at p. 2). But a cursory inspection of *Feitelson* reveals no substantive discussion of "Google's contracts with app developers" or any other app-related topics. (*See* Ex. 4, Feitelson Compl.) There is certainly no specific discussion regarding how Android-compatible apps are distributed through Google Play Store or how app users pay for in-app purchases using Google Play Billing.

Similarly, Google claims the "complaints allege the same theory of anticompetitive harm: Google's use of MADAs to purportedly foreclose competition in the relevant markets alleged in each complaint." (ECF Doc. 32, Google's Resp. at p. 3). Of course, the "relevant markets" in *Epic* and *Carr* are different from those in *Feitelson*, as is the competition allegedly foreclosed (competing search engines vs. competing app delivery and payment systems). Neither *Epic* nor *Carr* have anything to do with Yahoo or Bing – the foreclosed competition in the search engine market. Presumably, this is why Google provides a generic chart and describes the cases as involving "anticompetitive conduct" in a "relevant market" instead of comparing their specific allegations. These differences are not insignificant – they go to the core inquiry in an antitrust case.

Claiming a five year-old search engine lawsuit relates to an app distribution/purchasing case because they both involve the MADA is like arguing a freedom of religion case is the same as a search and seizure case because they both involve the Bill of Rights.[4]

Finally, it is noteworthy that *Feitelson* was dismissed in 2015 at the pleading stage. Consequently, there is little risk of "burdensome duplication of labor and expense." L.R. 3-12(a). This is not a situation where extensive discovery occurred in *Feitelson* and re-plowing such ground is a waste of resources. Nor is this a situation in which *Feitelson* remains pending so that contemporaneously consistent rulings are an issue. Rather, the *Feitelson* opinion, like any other five-year old opinion, is available to the parties as precedent. That is where any relevance to *Epic* and *Carr* should begin and end.

## CONCLUSION

For these reasons, the Court should determine that *Epic* and *Carr* are related and transfer *Carr* to this Court for further proceedings. Plaintiff Carr reserves the right to supplement this Response and/or file additional briefing based upon the arguments submitted by other parties responding to the Judicial Referral.

---

[4] The Court should also reject Google's suggestion that all of these cases be transferred to Judge Freeman in the San Jose Division of this Court due to §16.8 of Google's DDA and/or Terms of Service ("TOS") and the assignment of the *Carr* case to her. (ECF Doc. 32, Google's Resp. at p.2 n.3). Having admitted that *Epic* and *Carr* are related and subjected itself to the jurisdiction of the Northern District of California, Google cannot circumvent Local Rule 3-12, which requires that related cases be assigned to the judge presiding over the lowest-numbered case. L.R. 3-12(f)(3) (2020). Second, assuming without conceding that plaintiffs were required to file suit in the San Jose Division of this Court, they all abided by that obligation. (*See* Ex. 1, Epic Compl. & Ex. 2, Carr Compl.) Google does not explain why a federal court cannot, as a matter of discretion over administration of its docket, transfer a properly filed case to another division in the interests of judicial efficiency and consistency. In fact, the opposite is true. *See, e.g., Chapman Univ. v. Atlantic Richfield Co.*, 2013 WL 12126015 at *4 & 6 (C.D. Cal. 2/25/13) (district courts have discretion to assign cases to various divisions that outweighs party's forum selection); *Barto v. Alon USA Energy, Inc.*, 2012 WL 13020327 at *3 (C.D. Cal. 10/3/12) (contractual forum selection clause does not trump district court's case allocation plan).

Dated: September 8, 2020                     s/ Jamie L. Boyer
                                            _____

George A. Zelcs *(pro hac vice)*
Robert E. Litan *(pro hac vice)*
Randall P. Ewing *(pro hac vice)*
Jonathon D. Byrer *(pro hac vice)*
KOREIN TILLERY LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: (312) 641-9750
Facsimile:  (312) 641-9751

Stephen M. Tillery *(pro hac vice)*
Jamie L. Boyer *(pro hac vice)*
Michael E. Klenov, CA Bar #277028
Carol L. O'Keefe *(pro hac vice)*
KOREIN TILLERY LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: (314) 241-4844
Facsimile: (314) 241-3525

Karma M. Giulianelli, CA Bar #184175
Glen E. Summers, CA Bar #176402
BARTLIT BECK LLP
1801 Wewetta St. Suite 1200,
Denver, Colorado 80202
Telephone: (303) 592-3100
Facsimile:  (303) 592-3140

Ann Ravel
MCMANIS FAULKNER
Fairmont Plaza, 10th Floor, 50 West San
Fernando Street
San Jose, CA  95113
Telephone: (408) 279-8700
Facsimile: (408) 279-3244

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all parties of record on September 8, 2020, through the Court's Electronic Case Filing System.

/s/ Jamie L. Boyer
_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28