```
R. Alexander Saveri (SBN 173102)
Geoffrey C. Rushing (SBN 126910)
Cadio Zirpoli (SBN 179108)
Sarah Van Culin (SBN 293181)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: rick@saveri.com; geoff@saveri.com;
 cadio@saveri.com; sarah@saveri.com

Randy Renick (SBN 179652)
HADSELL STORMER & RENICK LLP
The Marine Building
128 N. Fair Oaks Ave.
Pasadena, California 91103
Telephone (626) 585-9600
Facsimile (626) 577-7079
Email: rrr@hadsellstormer.com
```

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIC GAMES., <br>         Plaintiff, <br> v. <br><br> GOOGLE LLC; GOOGLE IRELAND LIMITED; GOOGLE COMMERCE LIMITED; GOOGLE ASIA PACIFIC PTE. LIMITED; and GOOGLE PAYMENT CORP., <br>         Defendants. | CASE NO.: 3:20-cv-05671-JD <br><br> **DECLARATION OF R. ALEXANDER SAVERI IN SUPPORT OF ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED PURSUANT TO CIVIL LOCAL RULE 3-12(b)** |
| SMITH ROBERTS, Individually and on Behalf of All Others Similarly Situated, <br>         Plaintiffs, <br> vs. <br> GOOGLE LLC and ALPHABET, INC., <br>        Defendants. | CASE NO.: 4:20-cv-07824-DMR |

I, R. ALEXANDER SAVERI, declare as follows:

1. I am the managing partner of the law firm of Saveri & Saveri, Inc. and a member in good standing of the State Bar of California and the Northern District of California. I submit this declaration in support of Plaintiff's Administrative Motion to Consider Whether Cases Should Be Related Pursuant to Civil Local Rule 3-12(b). Except as otherwise stated, I make this Declaration based on my own personal knowledge, and if called as a witness I could and would competently testify to the matters stated herein.

2. Attached as Exhibit A is a true and correct copy of the complaint in *Roberts v. Google LLC et al*, Case No. 4:20-cv-07824-DMR filed in the Northern District of California on November 5, 2020.

3. In accordance with Civil Local Rule 7-11(a), a stipulation in support of this administrative motion could not be obtained as Google LLC and Alphabet Inc. have not yet been served nor appeared in the *Roberts* Action.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 18th day of November 2020, in San Francisco, California.

                                          */s/ R. Alexander Saveri*
                                          R. Alexander Saveri

# EXHIBIT A

R. Alexander Saveri (SBN 173102)
Geoffrey C. Rushing (SBN 126910)
Cadio Zirpoli (SBN 179108)
Sarah Van Culin (SBN 293181)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA 94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: rick@saveri.com; geoff@saveri.com;
 cadio@saveri.com; sarah@saveri.com

Randy Renick (SBN 179652)
HADSELL STORMER & RENICK LLP
The Marine Building
128 N. Fair Oaks Ave.
Pasadena, California 91103
Telephone (626) 585-9600
Facsimile (626) 577-7079
Email: rrr@hadsellstormer.com

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| SMITH ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>Defendants. | CASE NO.: 5:20-cv-07824<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SHERMAN ACT (15 U.S.C. § 2) AND CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*)**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff, Smith Roberts, individually and on behalf of all those similarly situated, brings this action for damages and equitable relief against Google LLC and Alphabet Inc. and alleges, based upon the investigation of counsel and on information and belief, as follows:

### I.  OVERVIEW

1. Google's Play Store is an app store available to consumers whose mobile devices use Google's Android operating system. Google has sought to deter competition in the market for Android apps and products sold within those apps to ensure its monopolization of this market.

2. Plaintiff and the proposed Class have overpaid or otherwise suffered economic harm as a result of Google's monopolization of the Android mobile app market and now seek damages and injunctive relief.

### II.  JURISDICTION AND VENUE

3. Plaintiff brings this action under Sections 4, 12 and 16 of the Clayton Act (15 U.S.C. §§ 15, 22 and 26) for treble damages and injunctive relief, as well as reasonable attorneys' fees and costs with respect to the injuries sustained by Plaintiff arising from violations by Defendants of the federal antitrust laws, including Section II of the Sherman Antitrust Act (15 U.S.C. § 2).

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 133l, 1337 (a) and 1367.

5. This Court has *in personam* jurisdiction over Defendants because each, directly and/or through its ownership or control of subsidiaries: (a) transacted business in the United States, including in this District; (b) are registered to do business in the state of California; (c) had substantial aggregate contacts with the United States, including this District; and/or (d) engaged in anticompetitive acts that were directed at, and had a direct, substantial, and reasonably foreseeable and intended effect of injuring, the business or property of persons and entities residing in, located in, or doing business throughout the United States, including in this District. Defendants conduct business throughout the United States, including in this District,

**CLASS ACTION COMPLAINT - 1**

and have purposefully availed themselves of the laws of the United States.

6. Venue is proper in this District pursuant to 15 U.S.C. §§ 15 and 22 and 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, a substantial portion of the affected interstate trade and commerce was carried out in this District, and one or more of the Defendants reside in this District or are licensed to do business in this District. The anticompetitive conduct alleged herein has been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business in this District.

### III. INTRA-DISTRICT ASSIGNMENT

7. Assignment to the San Jose Division of this District is proper under Civil Local Rule 3-2(c) and (e) because a substantial part of the events or omissions which give rise to Plaintiff's claims occurred in Santa Clara County, where Google LLC is headquartered.

### IV. PARTIES

8. Plaintiff, Smith Roberts, is a resident of Los Angeles County, California, and purchased and paid Google for one or more apps or in-app purchases through the Google Play Store.

9. Defendant, Google LLC is a limited liability company organized under the laws of the State of Delaware, with its principal office at 1600 Ampitheatre Parkway, Mountain View, California 94043. Google LLC is a foreign limited liability company registered with the California Secretary of State.

10. Defendant Alphabet Inc. is a Delaware corporation with its principal office at 1600 Ampitheatre Parkway, Mountain View, California 94043. Alphabet Inc. is a foreign corporation registered with the California Secretary of State.

### V. FACTUAL ALLEGATIONS

11. Google was officially launched in 1998 as a search engine that ranked the relevance of a webpage by assessing how many other webpages linked to it and grew to become the world's most popular search engine. Its dominance is such that "Googling" something is now

**CLASS ACTION COMPLAINT - 2**

synonymous with running an online search.

12. Google has since expanded from its search engine into other areas including digital advertising, a mobile operating system (Android), and digital mapping, email, cloud computing, and voice assistant services. Nine of Google's products—Android, Chrome, Gmail, Google Search, Google Drive, Google Maps, Google Photos, Google Play Store, and YouTube—have more than a billion users each. Each of these services provides Google with a trove of user data, reinforcing its dominance across markets and driving greater monetization through online ads.

13. Alphabet Inc. was formed in 2015 to serve as a holding company for Google and several former Google subsidiaries. As of 2019, Fortune 500 listed Alphabet Inc. as the fourth largest technology company worldwide.

14. Google is one of the world's largest corporations. For 2019, Google reported total revenues of $160.7 billion—up 45% from 2017—and more than $33 billion in net income. Google has enjoyed strong and steady profits, with profit margins greater than 20 percent for nine out of the last ten years. Financial analysts predict that Google is well positioned to maintain its dominance, noting that "Alphabet has established unusually deep competitive moats around its business."

15. In the late 1990s and early 2000s, when Google was formed, internet searches were almost exclusively performed through browsers on computers. However, individuals now increasingly use phones and other mobile devices to access the internet. Thus, Google launched a business policy to target users of mobile devices and to ensure they adopt versions of Google's technology, products and operating systems.

16. A mobile app is software designed for use on a mobile device to provide access to digital content or services. Popular mobile apps allow users to share content or play games and, importantly, permit "in app" sale or purchase transactions for goods and services. Mobile apps can be pre-installed on a mobile device as a component of the operating system by the Original Equipment Manufacturer ("OEM"), or otherwise loaded directly onto the mobile device from the

**CLASS ACTION COMPLAINT - 3**

web using a web browser (a process referred to as "sideloading"). The most frequent way that consumers access mobile apps is through an app store, which itself may be pre-installed on the mobile device. Google uses its Google Play Store to control the mobile app market for devices using the Android operating system.

17. An app store is the central point for users to access mobile apps and allows users to search, review and buy a mobile app in one spot. There is separate market for mobile apps specific to the OS, including apps developed for Apple iOS that only work on Apple mobile devices and apps developed for Android OS that only work on Android mobile devices. For the same reason, Apple's App Store and the Google Play Store do not compete against one another.

18. In order to establish dominance, Google released the Android mobile operating system. Google released the Android code for free as "open source," which means that anyone could access the code and modify it. Modifying the operating system constitutes a "fork."

19. The open source aspect of the Android OS was key to its wide adoption by OEMs (such as LG, Motorola, Samsung, etc.) and phone carriers (such as AT&T, T-Mobile/Sprint, Verizon, etc.). The open source model suggested that the distributors, and not Google, would ultimately retain control over their devices and the app ecosystem on those devices which led OEMs and phone carriers to use Android instead of other choices then available.

20. However, once the distributors agreed to use the Android OS, app developers looking for wide distribution of their apps were then incentivized by Google to develop apps compatible with Android OS. As more apps became available on Android OS, the operating system became more attractive to consumers which in turn led to even more developers designing for Android.

21. To achieve desired network effects and make the Android system ubiquitous, Google then "shared" its search advertising and app store revenues with distributers to further induce distributors to give up control over the OS and which apps come preinstalled on mobile devices.

**CLASS ACTION COMPLAINT - 4**

22. Google solidified market dominance of Android OS through a series of contracts with distributors designed to minimize competition. Google requires OEMs such as LG, Motorola, and Samsung to enter "anti-forking agreements." These agreements specifically forbid OEMs from developing or distributing versions of Android that do not comply with onerous Google-controlled technical standards. The signatories may not distribute devices with Android forks or use their powerful brands to market forks on behalf of third parties. As a result of Google's anticompetitive practices, Android OS represents over 95 percent of licensable mobile operating systems for smartphones and tablets in the United States.

23. Google exercised its monopoly power to establish the Google Play Store as the dominant "store" by which other applications can be downloaded for use by consumers on the Android OS.

24. Knowing that users rarely change defaults, Google required that mobile device OEMs pre-install the Google Play Store on all mobile devices. Google also refuses to allow any rival app store to be downloaded from the Google Play Store. Third-party app stores could only be accessed by "sideloading," a complicated multi-step process where users are warned that sideloading is unsafe. Thus, while Google theoretically permits users to download third-party app stores, few users pursue this option because Google implements significant hurdles designed to steer consumers away from this option.

25. Google also limits basic app functions for third-party apps that are available to apps downloaded on the Google Play Store, including making it more difficult for users to update apps compared to automatic updates in the mobile device's background.

26. Because the Google Play Store is the primary way users install applications on Android devices, the Play Store effectively functions as a gatekeeper for software distribution on all mobile devices with Android OS.

27. As a result of its monopolistic conduct, Google has extracted supra-competitive prices for its Android app distribution services and in-app purchases made through the Google Play Store, including a 30 percent commission on sales of paid apps and a 30 percent fee for in-

**CLASS ACTION COMPLAINT - 5**

1  app purchases. Google collects and processes these commissions and fees directly from Plaintiff
2  and Class Members, remitting the remainder of their payment to the mobile app developer.

3        28.     Google uses its gatekeeping power over third-party app developers with arbitrary
4  and unaccountable enforcement of Play Store policies, which then protect the dominance of
5  Google's own services and stifles rivals. For example, one mobile app "Callsome" was banned
6  from the Google Play store for "Ad Policy" violations only to learn later that an identical product
7  was able to stay and thrive in the Play Store. Callsome believes it was banned because of its
8  partnership with SmartApp, which at the time was widely considered to be a potential rival to
9  Google in the Russian market.

10        29.     Google maintains a monopoly in the Android Mobile App Market and is able to
11  charge supra-competitive prices for mobile app and in-app purchases. Google uses
12  anticompetitive covenants in Google's Mobile Application Distribution Agreement ("MADA"),
13  requiring OEMs to license the entire suite of Google applications and services in order to also
14  license the Android OS. Google also requires OEMS to pre-install the Google Play Store on its
15  home page. If an OEM refuses these restrictive terms and conditions, it loses access to the
16  Android OS.

17        30.     As a result of the MADA terms and conditions, Google has successfully
18  prevented competition from its rivals in the Android Mobile App Market. Google's MADA
19  agreements also allow Google to charge supra-competitive prices for mobile app and in-app
20  purchases, harming Plaintiff and Class Members by limiting consumer choice.

21        31.     Similarly, Google uses its Developer Distribution Agreement ("DDA") to
22  contractually restrict competition in the Android Mobile App Market.  Amongst other terms, the
23  DDA mandated that developers comply with Google's Developer Program Policies, including
24  using Google's proprietary in-app billing for in-app game payments, as well as certain other
25  digital in-app purchases.  The DDA also requires that developers "may not use Google Play to
26  distribute or make available any Product that has a purpose that facilitates the distribution of
27  software applications and games for use on Android devices outside of Google Play." Google

**CLASS ACTION COMPLAINT - 6**

has the right to remove any Android app it believes has violated any portion of the DDA.

## VI. ANTITRUST INJURY

32. Plaintiff and Class Members purchased Android mobile apps and in-app digital content directly from Google through the Google Play Store. Without the unlawful restraints described above, Plaintiff and Class Members would not have to pay supra-competitive prices for mobile apps and in-app purchases. Google's anticompetitive practices also stalled, limited or foreclosed competition and innovation in the Android Mobile App Market.

## VII. MARKET DEFINITION

33. The relevant product market is the market for Android mobile apps and in-app purchases. The relevant geographic market for purposes for this action is the United States and its territories. Google has significant and durable power in this market, app stores and mobile apps are developed and distributed throughout the United States, and Google's Play Store is available to Android users throughout the United States.

## VIII. STATUTE OF LIMITATIONS AND FRAUDULENT CONCEALMENT

34. Plaintiff and the Class Members had no knowledge of Defendants' anticompetitive conduct, or of facts sufficient to place them on inquiry notice of the claims asserted herein, during the Class Period and continuing thereafter, until October 2020 when the United States House of Representatives published its Investigation of Competition in Digital Markets and provided details concerning Google and its conduct.

35. Plaintiff and the Class Members suffered economic loss due to Defendants' wrongful exercise of monopoly power. However, Plaintiff's interactions with Defendants were insufficient to discover their wrongful conduct.

36. Furthermore, no public information was available during the Class Period or thereafter that suggests Defendants' business activities were done to monopolize the Android Mobile App Market until the House published the Report of its investigation against Google.

37. Moreover, it was reasonable for Plaintiff and Class Members not to suspect that Defendants were engaging in any unlawful anticompetitive behavior. Plaintiff and Class

**CLASS ACTION COMPLAINT - 7**

Members are merely consumers of apps and were not active participants in the market.

38. Plaintiff alleges a continuing course of unlawful conduct by Defendants, including conduct within the applicable limitation periods. That conduct has inflicted continuing and accumulating harm within the applicable statutes of limitation.

39. For these reasons, the statutes of limitations applicable to Plaintiffs' and Class Members' claims have been tolled with respect to the claims asserted herein until the House Report about Google became public.

40. Additionally, or alternatively, application of the doctrine of fraudulent concealment tolled the statutes of limitations on Plaintiff's claims. Plaintiff and Class Members had no knowledge of Google's wrongful acquisition and maintenance of monopoly power in the relevant market, or of facts sufficient to place them on inquiry notice of their claims, during the Class Period and continuing thereafter. No information in the public domain or otherwise available to Plaintiff and Class Members during the Class Period suggested that Google had wrongfully acquired a monopoly or was using its monopoly power to charge supra-competitive prices.

41. In failing to disclose its wrongful monopolization, in addition to denying it was engaged in such conduct, Google was able to conceal its illicit conduct. In fact, Google has made public denials to this effect.

42. After it was revealed that the House was investigating Google's monopoly, Google denied such conduct. Similarly, in response to recent news reports of impending antitrust actions against it by federal and state officials for monopolization, Google stated publicly that competition is flourishing, and publishers and marketers have enormous choice.

43. Further, Google's anticompetitive monopoly conduct was inherently self-concealing because, as Google knew, its disclosure likely would have led to governmental enforcement activity or civil liability. Google's conduct is subject to antitrust regulation, so it was reasonable for Plaintiff and the Class Members to presume that they were purchasing apps in a competitive market. A reasonable person under the circumstances would not have had occasion

to suspect that apps were being sold at supra-competitive prices at any time during the Class Period.

## IX. CLASS ALLEGATIONS

44. Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on his own behalf and as representative of the following class of persons and entities (the "Class"):

> All persons and entities in the United States that made payment to Google for a mobile app on the Google Play Store, subscription fees for a mobile app obtained on the Google Play Store, or app content from a mobile app downloaded from the Google Play Store, from at least as early as January 1, 2016 through the present ("Class Period").

45. Excluded from the class are any named Defendants, Defendants' parent companies, subsidiaries, and affiliates, Defendants' officers, directors, management, employees, subsidiaries, affiliates or agents.

46. Plaintiff reserves the right to expand, modify, or alter the class definition in response to information learned during discovery.

47. The proposed class more than meets the prerequisites of Rule 23(a).

48. The proposed class is so large that joinder of all members is impracticable. Class members are also dispersed geographically, both throughout California and the U.S. While Plaintiff does not know the exact number and identity of all Class Members, Plaintiff is informed and believes that there are potentially millions of Class Members and that the precise number of Class Members can be ascertained through discovery.

49. Common questions of law and fact exist as to all members of the proposed class. Such common questions of law and fact include but are not limited to:

    a. Whether Defendants engaged in the conduct alleged in this Complaint;

    b. Whether Google unlawfully acquired and maintained monopoly power in the relevant market;

    c. Whether the alleged conspiracy violated the Sherman Act;

**CLASS ACTION COMPLAINT - 9**

      d. Whether the alleged conspiracy violated California's antitrust and unfair competition laws;

      e. The appropriate injunctive and related equitable relief for the Class; and

      f. The appropriate class-wide measure of damages.

50. Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class are all users of the Google Play Store who were harmed by Defendants' conduct. Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class.

51. Plaintiff's interests are coincident with, and not antagonistic to, those of the other Class members. Plaintiff is represented by counsel, who are competent and experienced in the prosecution of complex class action litigation.

52. The proposed class also meets the requirements of Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

53. Defendants' alleged conduct caused harm to all class members. Defendants' actions apply generally to the class and any final injunctive relief would be appropriate with respect to the class as a whole. Fed. R. Civ. Proc. 23(b)(2).

54. The questions of law and fact common to the members of the Class are predominant and outweigh those questions affecting only individual members, including legal and factual issues relating to liability and damages. Fed. R. Civ. Proc. 23(b)(3).

55. Class action treatment is a superior method for the fair and efficient adjudication of this litigation. With potentially millions of putative class members, class treatment will allow this enormous number of similarly situated potential plaintiffs to prosecute their common claims in a single forum in the most efficient manner. This will avoid the inevitable duplication of evidence, effort, and expense that numerous individual actions would involve. The benefits of proceeding through the class action mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually and significantly reducing the burden on the court system of trying these cases

**CLASS ACTION COMPLAINT - 10**

individually, far outweigh any difficulties that may arise in the management of this class action.

## X. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Violation of the Sherman Act – Monopolization
### (15 U.S.C. § 2)

56. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

57. Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

58. The relevant market is the U.S. market for mobile apps and in-app purchases sold in the Android Mobile App Market.

59. Google has gained and maintains monopoly power in the relevant market by improper and unlawful means. Google has willfully acquired and maintained such power by coercing the purchase of Android mobile apps and in-app products and services at artificial prices and by exclusionary conduct, including its refusal to allow rival app stores to be accessed through the Google Play Store and by implementing significant frictions designed to steer consumers away from sideloading third-party app stores. Consumers must use the Android mobile app market to obtain Android mobile apps and in-app purchases.

60. Substantial barriers to entry exist in the relevant market.

61. Google has the power to exclude competition in the relevant market, and it has used that power, including by way of its unlawful practices in restraint of trade to maintain and expand its monopoly power in that market.

62. Google's conduct as described herein, including its unlawful practices in restraint of trade, is exclusionary as to its rival app stores in the U.S. market for Android mobile apps and in-app purchases.

63. Google has behaved as alleged herein in an attempt to obtain a monopoly in the U.S. market for Android mobile apps and in-app purchases, with the effect being that competition is foreclosed, innovation is stifled, and consumer choice is gravely diminished.

Additionally, Google has abused its market power by charging supra-competitive 30 percent commissions on sales of paid apps and a 30 percent fee for in-app purchases. Further, Google's actions have depressed output and stifled innovation and options for consumers as alleged herein.

64. There is no business necessity or other pro-competitive justification for Google's conduct.

65. As a direct and proximate cause of Google's conduct, Plaintiff and members of the Class have suffered antitrust injury. Plaintiff and the Class members paid significantly higher prices for Android mobile apps and in-app purchases than they would have but for Google's unlawful conduct. That conduct also deprived Plaintiff and Class members of improved quality and innovation in the relevant markets.

66. Plaintiff is inclined to continue to purchase Android mobile apps and in-app purchases in the future because of his investment in the mobile device containing the Android OS.

67. Plaintiff and members of the Class are entitled to damages, including treble damages, sustained because of Google's monopolistic acts and practices.

68. Plaintiff and members of the Class are entitled to equitable relief as appropriate to cure Google's monopoly conduct and restore competition in the relevant market. Members of the Class are regular users of the Android mobile app market and will continue to purchase such apps and in-app products and services and suffer further injury if Google's monopoly is not ended.

69. Plaintiff and the Class also are entitled to injunctive relief to prevent Google from persisting in its unlawful, inequitable, and unjustified behavior to their detriment, with such an injunction at a minimum prohibiting Google from continuing to charge supra-competitive commissions on sales of paid apps and supra-competitive fees for in-app purchases.

**CLASS ACTION COMPLAINT - 12**

## SECOND CAUSE OF ACTION
### Violation of Sherman Act – Attempted Monopolization
### (15 U.S.C. § 2)

70. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

71. Plaintiff brings this claim on his own behalf and on behalf of each member of the Class described above.

72. The relevant market is the U.S. market for mobile apps and in-app purchases sold in the Android Mobile App Market.

73. As described above, Google has attempted to monopolize the U.S. market for Android mobile apps.

74. Google's anticompetitive conduct has created a dangerous probability that it will achieve monopoly power in the U.S. market for Android mobile apps and in-app purchases.

75. Google has a specific intent to achieve monopoly power in the U.S. market for Android mobile apps and in-app purchases. Now, and if its unlawful restraints are not checked, Google has a dangerous probability of success in the relevant market as defined by Plaintiff.

76. Google has the power to exclude competition in the U.S. market for Android mobile apps and in-app purchases, and it has used that power, including by way of its unlawful practices in restraint of trade as described herein, in an attempt to monopolize that relevant market.

77. Google's conduct as described herein, including its unlawful practices in restraint of trade, is exclusionary as to its rival app stores in the U.S. market for Android mobile apps and in-app purchases.

78. Google has acted in an attempt to obtain a monopoly in the U.S. market for Android mobile apps and in-app purchases, with the effect being that competition is foreclosed, innovation is stifled, and consumer choice is gravely diminished. Additionally, Google has abused its market power by charging supra-competitive 30 percent commissions on

**CLASS ACTION COMPLAINT - 13**

sales of paid apps and 30 percent fees for in-app purchases. Further, Google's actions have depressed output and stifled innovation and options for consumers as alleged herein.

79. There is no business necessity or other pro-competitive justification for Google's conduct.

80. Plaintiff and the Class have been injured, and will continue to be injured, in their property as a result of Google's conduct, including by way of overpaying for Android mobile apps and in-app purchases.

81. Plaintiff is inclined to continue to purchase Android mobile apps and in-app purchases in the future because of his investment in the mobile device containing the Android OS.

82. Plaintiff and the Class also are entitled to injunctive relief to prevent Google from persisting in its unlawful, inequitable, and unjustified behavior to their detriment, with such an injunction at a minimum prohibiting Google from continuing to charge supra-competitive commissions on sales of paid apps and supra-competitive fees for in-app purchases.

### THIRD CAUSE OF ACTION
### Violation of the California Unfair Competition Law
### (Cal. Bus. & Prof Code § 17200, *et seq.*)

83. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

84. Google's conduct is unlawful in violation of California's Unfair Competition Law ("UCL") because it violates Section II of the Sherman Act, 15 U.S.C. § 2.

85. Google has engaged in unfair business practices through the conduct alleged herein, which has restrained competition. Google's conduct is unfair and in violation of the UCL because it violates California's clearly established public policy forbidding monopolistic acts. Google wrongfully acquired and unlawfully maintained monopoly power in the relevant market through the conduct alleged herein, including by leveraging its monopoly power in the Android mobile app market to coerce the purchase of Android mobile apps and in-app products and services at artificial prices.

86. Google's practices also are unlawful in violation of the UCL because they offend public policy; are immoral, unethical, oppressive, outrageous, unscrupulous, and substantially injurious; and caused substantial harm, including in the form of artificially inflated prices, that greatly outweighs any possible utility from the practices.

87. Google's conduct actually and proximately caused Plaintiff and Class members to lose money or property. On behalf of the Class, Plaintiff seeks damages, injunctive relief, and reasonable attorneys' fees and costs, as well as any other relief the Court may deem just or proper.

## XI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Determine that this action may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B. Direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Class;

C. Appoint Plaintiff as Class Representative and his counsel of record as Class Counsel;

D. Enter judgment against Defendants and in favor of Plaintiff and the Class;

E. Award Plaintiff and the Class damages to the maximum extent allowed, including actual and statutory damages;

F. Award Plaintiff and the Class restitution for monies paid;

G. Award Plaintiff and the Class equitable, injunctive and declaratory relief as appropriate under applicable laws;

H. Award pre- and post-judgment interest at the highest legal rate;

I. Award Plaintiff and the Class members' reasonable attorneys' fees and costs of suit; and

J. Award such other and further relief as the Court may deem just and proper.

## XII. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: November 5, 2020

/s/ R. Alexander Saveri

R. Alexander Saveri (SBN 173102)
Geoffrey C. Rushing (SBN 126910)
Cadio Zirpoli (SBN 179108)
Sarah Van Culin (SBN 293181)
SAVERI & SAVERI, INC.
706 Sansome Street
San Francisco, CA  94111
Telephone: (415) 217-6810
Facsimile: (415) 217-6813
Email: rick@saveri.com;
geoff@saveri.com; cadio@saveri.com;
sarah@saveri.com

Randy Renick (SBN 179652)
HADSELL STORMER & RENICK LLP
The Marine Building
128 N. Fair Oaks Ave.
Pasadena, California 91103
Telephone (626) 585-9600
Facsimile (626) 577-7079
Email: rrr@hadsellstormer.com

*Attorneys for Plaintiff*

**CLASS ACTION COMPLAINT - 16**