# CRAVATH, SWAINE & MOORE LLP

JOHN W. WHITE
EVAN R. CHESLER
STEPHEN L. GORDON
ROBERT H. BARON
DAVID MERCADO
CHRISTINE A. VARNEY
PETER T. BARBUR
MICHAEL S. GOLDMAN
RICHARD HALL
JULIE A. NORTH
ANDREW W. NEEDHAM
STEPHEN L. BURNS
KATHERINE B. FORREST
KEITH R. HUMMEL
DAVID J. KAPPOS
DANIEL SLIFKIN
ROBERT I. TOWNSEND, III
PHILIP J. BOECKMAN
WILLIAM V. FOGG
FAIZA J. SAEED
RICHARD J. STARK
THOMAS E. DUNN
MARK I. GREENE
DAVID R. MARRIOTT
MICHAEL A. PASKIN
ANDREW J. PITTS
MICHAEL T. REYNOLDS

ANTONY L. RYAN
GEORGE E. ZOBITZ
GEORGE A. STEPHANAKIS
DARIN P. MCATEE
GARY A. BORNSTEIN
TIMOTHY G. CAMERON
KARIN A. DEMASI
DAVID S. FINKELSTEIN
RACHEL G. SKAISTIS
PAUL H. ZUMBRO
ERIC W. HILFERS
GEORGE F. SCHOEN
ERIK R. TAVZEL
CRAIG F. ARCELLA
DAMIEN R. ZOUBEK
LAUREN ANGELILLI
TATIANA LAPUSHCHIK
ALYSSA K. CAPLES
JENNIFER S. CONWAY
MINH VAN NGO
KEVIN J. ORSINI
MATTHEW MORREALE
JOHN D. BURETTA
J. WESLEY EARNHARDT
YONATAN EVEN
BENJAMIN GRUENSTEIN
JOSEPH D. ZAVAGLIA

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1958

WRITER'S EMAIL ADDRESS
yeven@cravath.com

STEPHEN M. KESSING
LAUREN A. MOSKOWITZ
DAVID J. PERKINS
J. LEONARD TETI, II
D. SCOTT BENNETT
TING S. CHEN
CHRISTOPHER K. FARGO
DAVID M. STUART
AARON M. GRUBER
O. KEITH HALLAM, III
OMID H. NASAB
DAMARIS HERNÁNDEZ
JONATHAN J. KATZ
DAVID L. PORTILLA
RORY A. LERARIS
KARA L. MUNGOVAN
MARGARET T. SEGALL
NICHOLAS A. DORSEY
ANDREW C. ELKEN
JENNY HOCHENBERG
VANESSA A. LAVELY
G.J. LIGELIS JR.
MICHAEL E. MARIANI
LAUREN R. KENNEDY
SASHA ROSENTHAL-LARREA
ALLISON M. WEIN
MICHAEL P. ADDIS

JUSTIN C. CLARKE
SHARONMOYEE GOSWAMI
C. DANIEL HAAREN
EVAN MEHRAN NORRIS
LAUREN M. ROSENBERG
MICHAEL L. ARNOLD
HEATHER A. BENJAMIN
MATTHEW J. BOBBY
DANIEL J. CERQUEIRA
ALEXANDRA C. DENNING
HELAM GEBREMARIAM
MATTHEW G. JONES
MATTHEW M. KELLY
DAVID H. KORN
BRITTANY L. SUKIENNIK
ANDREW M. WARK

———————

PARTNER EMERITUS
SAMUEL C. BUTLER

———————

OF COUNSEL
MICHAEL L. SCHLER
CHRISTOPHER J. KELLY

May 4, 2021

**VIA ECF**

The Honorable James Donato
U.S. District Court for the Northern District of California
45 Golden Gate Avenue, Courtroom 11, 19th Floor
San Francisco, CA 94102

**RE:**  *In re: Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal.);
*Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.) ("*Epic v. Google*");
*In re Google Play Consumer Antitrust Litigation*, No. 3:20-cv-05761-JD (N.D. Cal.);
*In re Google Play Developer Antitrust Litigation*, No. 3:20-cv-05792-JD (N.D. Cal.)

Dear Judge Donato:

Plaintiffs in the above-captioned matters respectfully request that the Court compel Defendants (collectively, "Google") to produce all discovery materials from the case captioned *Callsome Solutions Inc. v. Google, Inc*., Index No. 652386/2014 (N.Y. Sup.) ("*Callsome*"). Plaintiffs certify that the Parties have met and conferred on this issue but have reached an impasse.

**I.     Background**

On March 1, 2021, Plaintiffs served Google with Supplemental RFP No. 204, which requested that Google produce all "Discovery Materials" from the *Callsome* litigation. (Ex. A.) "Discovery Materials" was defined to include all documents produced by Google, including responses to requests for production, interrogatories or requests for admission, as well as transcripts and videos of any depositions taken in the case.

In its Responses and Objections served on March 31, 2021, Google objected to producing any documents in response to RFP No. 204. (Ex. B.) Google asserts that the *Callsome* litigation is an "irrelevant legal action," and that Plaintiffs' request is "unduly burdensome, disproportionate, duplicative, and oppressive." (*Id*.) Google has not budged from this position

despite Plaintiffs' further explanations in correspondence and telephonic meet-and-confers concerning the relevance of the requested materials.

## II. The *Callsome* Litigation

Callsome Solutions Inc. ("Callsome") was a startup app developer that designed and developed a software development kit ("SDK") for Android, Google's mobile device operating system. Callsome's SDK—called Post Call Manager ("PCM")—allowed app developers to add to their apps functions that enhance a user's productivity with respect to telephone calls and text messages. (*Callsome* ECF No. 2 at ¶¶ 23-26.) After ending a phone call or receiving a text message, an app incorporating PCM would open a screen on the user's device that allowed the user to take several actions, including calling the person back, sending them an email, or running an internet search for topics related to the call. (*Id*. at ¶ 26.) Notably, instead of using Google Search for internet searches, PCM used Yahoo's search engine. (*Id*.)

Callsome launched the PCM SDK in September 2013, partnering with StartApp, a mobile advertising platform which, at the time, was an emerging rival to Google in the Russian search market. (*Id*. at ¶¶ 28, 34.) By the end of November 2013, apps incorporating the PCM were downloaded more than 46 million times, with approximately 1.3 billion logged app sessions. (*Id*. at ¶ 35.) That same November, Google sent suspension notices to developers with apps utilizing PCM, threatening them with removal of their apps from the Google Play store unless they removed PCM from their apps. (*Id*. at ¶¶ 38-41.) Callsome approached Google, but Google claimed that Callsome's PCM breached Google's terms and conditions and would not retract its notices. (*Id*. at ¶¶ 45-55.) As a result of Google's suspension notices, most app developers ceased using PCM, leading to the demise of Callsome's business and, ultimately, of Callsome itself. (*Id*. at ¶¶ 42-44.)

In 2014, Callsome sued Google in New York State Supreme Court in Manhattan for tortious interference and trade libel. (*Id*. at ¶ 1.) Callsome alleged its PCM product did not breach any Google terms and conditions. (*Id*. at ¶ 60.) As discovery progressed, however, Callsome uncovered new information leading it to believe that Google's claims of breach of contract were pretextual, and that Google's real motive was to use its power over the Play Store to squash Callsome's PCM due to its use of competing search functionality and a competing ad network. (*Callsome* ECF No. 301 at 4-5.) In 2017, Callsome successfully moved to reopen discovery after learning of the existence of Calldorado, a developer with an SDK "using an advertising format and mechanism identical to that for which Google banned Callsome's product from the Google Play Store for purportedly violating its Ad Policy." (*Callsome* ECF No. 511 at 4; ECF No. 301 at 3.) Unlike PCM, the "functionally identical" Calldorado SDK was allowed to thrive in the Play Store, eventually becoming a "Google Premier Partner" that was "constantly in conversation with Google." (*Callsome* ECF No. 301 at 3.) Callsome alleged this disparate and discriminatory behavior towards two "identical products" was related to Google's desire to blunt the competitive threat posed by StartApp. (*Id*. at 4-5; ECF No. 2 at ¶¶ 28-29.) By 2020, Callsome had reached out to the House Judiciary Committee, who saw fit to include Callsome in its 2020

Competition in Digital Markets Investigation (the "House Report"),[1] which specifically mentions allegations regarding Google's attempt to squash competition from StartApp. (House Report at 222.) In 2020, the *Callsome* litigation settled out of court on strictly confidential terms, which now prevent Callsome from speaking with Plaintiffs' counsel regarding its allegations.

### III.   Argument

The Court should compel Google to produce all discovery materials from the *Callsome* litigation as sought in RFP No. 204 because they are likely to provide direct evidence of Google's anticompetitive conduct. (Ex. A.)

Plaintiffs in this case allege that Google has monopoly power in the market for Android app distribution, and that Google abuses that power to harm competition in that and adjacent markets. (*See, e.g., Epic v. Google* Complaint ("Complaint"), ECF No. 1 ¶¶ 59-61; Consumer Complaint, ¶¶ 97-101; Developer Complaint, ¶¶ 5, 13.) According to Callsome's complaint, as a result of Google's suspension notices, the download rate for PCM dropped by over 50% in the first month alone, declining even more drastically thereafter. (*Callsome* ECF No. 2 ¶¶ 44.) Google's ability to shut down PCM within a matter of weeks demonstrates its market power in app distribution. And Google's use of that power to quash competition in adjacent markets demonstrates the competitive harm that flows from Google's conduct. Indeed, although the *Callsome* action sounded in tort, many of the allegations in the *Callsome* complaint invoke the same anticompetitive concerns at issue in these cases. As just one example, Callsome's allegation that "Google utilizes two particularly effective methods to maintain Google Play as the premier marketplace: licensing agreements and user warnings", mirrors allegations Plaintiffs have made here. (*Id*. at ¶ 10; *see e.g.,* Complaint ¶¶ 96-99; Consumer Complaint, ¶¶ 42-44, 89-94; Developer Complaint ¶¶ 8, 11, 81.)

Given the substantive overlap, the discovery taken in the *Callsome* litigation is likely to support Plaintiffs' claims in this MDL. In 2017, Callsome specifically reopened discovery "to determine the full truth and reasons behind Google's disparate and discriminatory behavior towards [...] two equivalent products." (*Callsome* ECF No. 301 at 3.) Discovery concerning the disparate treatment of two similarly situated app developers, aimed at establishing an anticompetitive motive, is relevant to Plaintiffs' allegation that Google misuses its monopoly power as a tool to unreasonably constrain competition. (*Id*. at 2; Complaint ¶¶ 208-211; Consumer Complaint, ¶¶ 150-156; Developer Complaint ¶¶ 100-104.) As a result of Google's alleged anticompetitive conduct, both Callsome, Epic, and Developer Plaintiffs have been unreasonably restricted in their ability to distribute their products, (Complaint ¶ 213; Developer Complaint ¶¶ 196-198; *Callsome* ECF No. 301 at 2.), with Developers overpaying for distribution services, thereby causing Consumers to pay higher prices. (Consumer Complaint ¶ 155.)

In meet-and-confers, counsel for Google suggested that because the underlying claims in the *Callsome* litigation sound in tort and trade libel rather than antitrust, discovery into the *Callsome* litigation is not relevant. But Google's focus on the specific causes of action

---

[1] U.S. House. Subcommittee on Antitrust, Commercial and Administrative Law of the Committee on the Judiciary, *Investigation of Competition in Digital Markets Majority Staff Report and Recommendations*, (2020) *available at* https://judiciary.house.gov/uploadedfiles/competition_in_digital_markets.pdf

Callsome chose to pursue is a distraction. What is relevant are the *factual circumstances* concerning Callsome's effective removal from the Play Store, and those circumstances appear to support Plaintiffs' allegations here. Indeed, that Callsome's circumstances implicate antitrust concerns is evidenced by Callsome's decision to reach out to the House Judiciary Committee and in the inclusion of Callsome's allegations in the House Report as an example of Google's alleged anticompetitive conduct. The House Report details how Google allegedly abuses its "control over the Play store to protect the dominance of its own services and stifle rivals." (House Report at 222.) Citing a submission by Callsome, the House Report details how "challenging a Play Store decision was like navigating a black box," with "Google respond[ing] with silence, then roadblocks and runarounds" with respect to developers' attempts to resolve Play Store decisions amicably—more evidence of Google's market power. (*Id.*)

Google's objection of undue burden lacks merit and is contrary to the Court's Standing Order for Discovery in Civil Cases, ¶ 6 ("A burden, overbreadth or similar objection shall not be a valid reason for withholding requested, responsive materials actually known to counsel or the party."). In 2018, when discussing sanctions against Google for excessively designating documents as confidential, the *Callsome* court noted that Google had produced only "3923 documents consisting of 4,771 pages." (*Callsome* ECF No. 359 at 3.) Google "will suffer little if any burden by producing the documents as they are kept in their normal course of business because these documents have already been produced." *Munoz v. PHH Corp.*, 2013 WL 684388, at *6 (E.D. Cal. Feb. 22, 2013).

For the foregoing reasons, the Court should compel Google to produce the *Callsome* discovery as sought in RFP No. 204.

\*     \*     \*

CRAVATH, SWAINE & MOORE LLP
   Christine Varney (*pro hac vice*)
   Katherine B. Forrest (*pro hac vice*)
   Gary A. Bornstein (*pro hac vice*)
   Yonatan Even (*pro hac vice*)
   Lauren A. Moskowitz (*pro hac vice*)
   M. Brent Byars (*pro hac vice*)
   Timothy G. Cameron (*pro hac vice*)
   Omid H. Nasab (*pro hac vice*)
   Darin P. McAtee (*pro hac vice*)

FAEGRE DRINKER BIDDLE & REATH LLP
   Paul J. Riehle (SBN 115199)

Respectfully submitted,

By:   /s/  Yonatan Even
       Yonatan Even

       *Counsel for Plaintiff Epic Games, Inc.*


BARTLIT BECK LLP
   Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
   Hae Sung Nam

Respectfully submitted,

By:   /s/   Karma M. Giulianelli
       Karma M. Giulianelli

       *Co-Lead Counsel for the Proposed Class in In re Google Play Consumer Antitrust Litigation*

HAGENS BERMAN SOBOL SHAPIRO LLP
   Steve W. Berman
   Robert F. Lopez
   Benjamin J. Siegel

SPERLING & SLATER PC
   Joseph M. Vanek
   Eamon P. Kelly
   Alberto Rodriguez

Respectfully submitted,

By:   /s/  Steve W. Berman
      Steve W. Berman

*Co-Lead Interim Class Counsel for the Developer Class and Attorneys for Plaintiff Pure Sweat Basketball*

HAUSFELD LLP
   Bonny E. Sweeney
   Melinda R. Coolidge
   Katie R. Beran
   Scott A. Martin
   Irving Scher

Respectfully submitted,

By:   /s/  Bonny E. Sweeney
      Bonny E. Sweeney

*Co-Lead Interim Class Counsel for the Developer Class and Attorneys for Plaintiff Peekya App Services, Inc.*