Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc. in Epic Games, Inc. v. Google LLC et al.*

Brian C. Rocca (SBN 221576)
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

Daniel M. Petrocelli, Bar No. 97802
dpetrocelli@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars, 7th Fl.
Los Angeles, CA 90067-6035
Telephone: (310) 553-6700

*Counsel for Defendants Google LLC et al.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT STATEMENT RE: EPIC'S REQUEST FOR ADDITIONAL IN-HOUSE COUNSEL PURSUANT TO THE PROTECTIVE ORDER**<br><br>Judge: Hon. James Donato |

**Joint Statement:** As directed by the Court, Epic Games, Inc. ("Epic") and Defendants (collectively, "Google", and together with Epic, the "Parties") have met and conferred in good faith regarding the addition of one in-house counsel from Epic as "Designed House Counsel" (defined below) pursuant to the governing Protective Order ("PO") (*Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal. 2020), ECF Nos. 106-1, 143). The Parties have been unable to reach agreement and therefore, pursuant to this Court's Order dated July 22, 2021 (*In re Google Play Store Antitrust Litigation* (the "Action"), No. 3:21-md-02981-JD (N.D. Cal. 2021) ("MDL") ECF No. 67), by and through their undersigned counsel, submit this Joint Statement.

**Epic's Position:**

The PO, negotiated in 2020, provides that two in-house counsel for each Party may be "Designated House Counsel". Designated House Counsel are the only individuals employed by a Party who are permitted to see information designated as "Highly Confidential – Attorneys' Eyes Only" ("HC-AEO") by the other Party.

Good cause exists to modify the PO to permit the Parties to designate one additional Designated House Counsel. Since the entry of the PO, significant discovery has taken place, with more to come, and it has become apparent that another Designated House Counsel is necessary for Epic to effectively prosecute this complex litigation. To date, Google has produced close to 1.5 million documents, of which Google has designated more than 145,000 as HC-AEO. The documents Google has designated as HC-AEO include many documents that are of strategic importance to the case, as evidenced by Epic's recent amendment to its Complaint, which referenced 28 documents produced by Google, of which 20 were designated HC-AEO. Google's recitation of the *proportion* of documents designated HC-AEO is unavailing; it is the absolute volume and the importance, rather than the proportion, of documents that determines the ability of Designated House Counsel to review the HC-AEO information.

The two Designated House Counsel at Epic have a range of responsibilities at the company, and the scope of their responsibilities differ meaningfully from each other. "Designated

House Counsel A" supervises a team of 20 people, and has a broad supervisory role over many legal matters at Epic, including copyright, trademark, right of publicity, game content, and other intellectual property issues, as well as related regulatory concerns. Designated House Counsel A also supervises and/or directly handles certain disputes, enforcement matters, and commercial litigation matters (including this Action). Designated House Counsel A has responsibility for overall strategy for this Action and provides detailed guidance on motions, edits papers, and meets multiple times per week with in-house and outside counsel working on the Action. "Designated House Counsel B" has responsibility for day-to-day oversight over this Action, not only contributing to the motions and editing papers, but also communicating daily with outside counsel, in-house counsel, Epic employees, and others involved in the action. Designated House Counsel B also has responsibility for various other intellectual property, enforcement, and commercial litigation matters, and provides legal advice in connection with music licensing, escalated player support issues, and intellectual property enforcement matters. Both spend a significant number of hours on this matter and they are unable to commit more of their time to this Action. Because Epic has a small legal department and an even smaller team dedicated to litigation, Epic's Designated House Counsel cannot shed any of their other responsibilities in favor of this Action. In fact, due to the volume of work in this matter, Epic has hired additional dedicated litigation staff to assist the existing in-house counsel.

In light of the volume of HC-AEO documents and the correspondingly significant number of filings and depositions that will implicate HC-AEO information, adding an additional Designated House Counsel is necessary for Epic to adequately and comprehensively guide the litigation strategy for this Action. Further, as the Parties work toward completing document production and enter into depositions and expert discovery, the demands on Epic's internal counsel who are able to see HC-AEO documents will increase. For example, with respect to depositions, the terms of the PO provide that the Parties have up to 21 days *after* a transcript is made available to designate either specific portions or the entirety of the transcript as HC-AEO. As a practical matter, this means that only Designated House Counsel can participate in opposing party and non-

party depositions, and with respect to Epic in particular, only one of Epic's two Designated House Counsel will likely be able to commit the time to being in those depositions given the responsibilities of the other Designated House Counsel; Epic needs an additional Designated House Counsel to be able to participate in the numerous depositions likely to take place in this Action.  Epic itself is entitled to take an active role in its own litigation, and having in-house counsel who is able to see the full picture of relevant discovery is a critical way it can do so.  The ability of Google's Designated House Counsel to manage Epic's HC-AEO materials is irrelevant to Epic's request—this comparison suggests parity between, for example, the size of each Party's respective in-house legal departments and the scope of responsibilities of each Party's Designated House Counsel, when there is no indication that such parity exists.

Google has not provided any factual basis to show any risks of inadvertent disclosure associated with Epic's proposed in-house counsel.  For example, the PO imposes strict requirements sufficient to mitigate any concerns about maintaining the confidentiality of HC-AEO material and avoiding inadvertent disclosure.  Section 7.3(b) requires the Party seeking to designate in-house counsel as Designated House Counsel to show, among other things, the in-house counsel's current and reasonably foreseeable future primary job duties in sufficient detail for the Designating Party to determine if counsel is involved in or may become involved in any competitive decision-making.  Epic has disclosed to Google the identity of the proposed additional Designated House Counsel and confirmed that this individual's role and responsibilities are nearly identical to the role and responsibilities of Designated House Counsel B.

Further protections for the confidentiality of HC-AEO information are as follows:

- Section 7.1 dictates that material designated HC-AEO (included in the definition of "Protected Material") may be used only in connection with this litigation and that "such Protected Material shall not be used for any other business purpose, in connection with any other legal proceeding, or for any other purpose whatsoever."

- Protected Material to be viewed by Designated House Counsel must either be transferred via Secured File Transfer Protocol and deleted within 14 days of receipt, or viewed only by means of screen sharing or other methods which do not allow the viewer to retain copies.
- Designated House Counsel review the PO and sign the requisite "Acknowledgement and Agreement to Be Bound", confirming that counsel will abide by the terms of the PO under penalty of sanctions or contempt of court.

These restrictions are sufficient to protect the confidentiality of the Parties' Protected Material, including information designated HC-AEO, and the addition of one Designated House Counsel subject to the same restrictions does not present any material increased risk to Google and materially improves Epic's ability to manage this complex multi-district litigation.

Google's concern that this additional Designated House Counsel could leave Epic or may not abide by those obligations is merely speculative. Counsel's capacity and willingness to abide by their professional and contractual obligations, including with respect to the requirements of a PO, are assumed absent evidence to the contrary. *Alza Corp. v. Impax Lab'ys, Inc.*, No. C-03-4032-VRW, 2004 WL 7339748 (N.D. Cal. June 21, 2004) ("[T]he general rule is that attorneys operating under a protective order will properly handle confidential information."); *Nazomi Commc'ns, Inc. v. Arm Holdings PLC*, No. C 02-02521-JF, 2002 WL 32831822 (N.D. Cal. Oct. 11, 2002) ("[A] presumption [that non-competitive decisionmakers cannot abide by a PO] stands in opposition to the leading cases in this area which presuppose fidelity to ethical duties and bar access only when there is a significant danger of inadvertent disclosure."). This presumption is equally strong for both outside and in-house counsel. *See U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984) ("[I]n-house counsel are officers of the court, are bound by the same Code of Professional Responsibility, and are subject to the same sanctions."). This applies even where counsel may leave a particular employer, as courts "recognize[] that a confidentiality agreement continues to bind an attorney even after the attorney leaves an employer". *Aristocrat Techs. v. Int'l Game Tech.,* No. C 06-3717 MJJ, 2007 WL 9747649, at *5

(N.D. Cal. Feb. 1, 2007) (granting HC-AEO access to in-house counsel and noting that "even if there is turnover . . . those attorneys must continue to honor their promise to respect the confidentiality" of the HC-AEO information).

Google's citation to *Alza* is inapposite: the *Alza* Court's discussion of whether a well-intentioned attorney could be expected to "lock-up" certain information concerned attorneys who participate in competitive decision-making. *Alza*, 2004 WL 7339748, at *3 (granting in-house counsel access to confidential information after finding that counsel was not involved in competitive decision-making and thus created a low risk for inadvertent disclosure). Epic has already disclosed to Google information sufficient to show, as required by Section 7.3(b) of the PO, that Epic's in-house counsel who would become Designated House Counsel does not participate in competitive decision-making. Google has not identified any particularized concern about inadvertent disclosure with respect to this in-house counsel.

Further, there is no greater risk of Designated House Counsel reviewing HC-AEO information and subsequently leaving their current positions than there is of "Outside Counsel of Record", as defined by the PO, doing the same. The PO does not place any numerical limits on the number of Outside Counsel of Record who can view HC-AEO information. As with Outside Counsel of Record, it is reasonable to expect, and should be assumed, that Designated House Counsel will abide by the PO's requirements.

When deciding whether to modify a protective order, courts "examine factually all the risks and safeguards surrounding inadvertent disclosure by any counsel, whether in-house or retained". *Amgen Inc. v. Sandoz Inc.*, No. 16-CV-02581-RS(MEJ), 2017 WL 22502, at *2 (N.D. Cal. Jan. 3, 2017). Here, given the scope of this Action, the number of documents designated HC-AEO, the capacities of the existing Designated House Counsel, the role and responsibilities of the Epic in-house counsel who would become Designated House Counsel, and the protections provided by the PO that protect the confidentiality of Google's information, the robust safeguards are more than sufficient to protect against the low risk of inadvertent disclosure. Epic respectfully requests that the Court permit Epic to add one Designated House Counsel.

**Google's Position:**

The PO was negotiated and agreed to by the various parties subject to this MDL proceeding in December 2020 and entered in the MDL by this Court on May 12, 2021. *See* No. 3:20-cv-05671-JD, ECF No. 106; No. 3:21-md-02981-JD, ECF No. 34. Section 2.4 of the PO, which limits access to HC-AEO information in this matter to outside counsel plus two Designated House Counsel, was a compromise specifically negotiated by the parties. Epic now seeks to change the parties' bargain, and modify an Order of the Court, by requesting an increase in the number of Designated House Counsel permitted to see documents designated HC-AEO under the PO. The request is unwarranted in these circumstances, where Epic already has a large team of outside counsel, and two Designated House Counsel, available to deal with the small percentage of documents labeled HC-AEO. Epic has failed to demonstrate the requisite good cause and prejudice to its case necessary to modify a protective order. The request should be denied.

"To modify a protective order a party must establish good cause by demonstrating how the protective order will prejudice the party's case." *Intel Corp. v. Via Techs., Inc.*, 198 F.R.D. 525, 528 (N.D. Cal. 2000) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)). "The party seeking access must demonstrate that its ability to litigate will be prejudiced, not merely its ability to manage outside litigation counsel." Id. at 529. In both Brown Bag and Intel, the parties sought to modify a protective order to allow one in-house counsel access to confidential information to manage the case; Epic, here, cannot credibly claim prejudice given the PO already allows two Designated House Counsel to access HC-AEO information. Unlike in the cases cited by Epic – *Alza Corp., Nazomi, Aristocrat*, and *Amgen* – where Parties were seeking initial entry of a protective order, a PO in this case has already been entered.

Epic purportedly needs a third Designated House Counsel, pointing to the "more than 145,000" documents (only 9.7% of its production) that Google designated as HC-AEO. But Epic fails to demonstrate how limiting Designated House Counsel to two in-house counsel prejudices Epic. For comparison, Google has been able to effectively manage the handling of Highly Confidential materials during the discovery process, despite Epic designating more than

400,000 documents (approximately 19.7% of its production) as HC-AEO. And, Google has been able to effectively manage the litigation of four coordinated cases under the terms of the current PO. Epic never explains why it did not anticipate any issues with respect to the number of HC-AEO documents when the parties were negotiating the PO, nor does Epic explain why Epic's outside cannot review and direct Designated House Counsel to the documents it believes are most key to this case. Epic's "small legal department" makes a PO limiting the number of Designated House Counsel more, not less, important as it is reasonable to assume that some number of Epic's legal department may be involved in competitive decision making in the future, despite Epic's assurances that it does not currently foresee any Designated House Counsel being involved in such matters.

Google negotiated the limitation of the number of Designated House Counsel for a reason. By definition, information designated as Highly Confidential are "extremely sensitive" and the "disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means." Epic itself has alleged that it is "a potential competitor in app distribution and payment processing" (Amend. Compl., ¶ 30; see also ¶¶ 144, 168) and also that it "develops and distributes" popular apps, boasting that "400 million users have signed up for Epic's apps and services, and each day 30 to 40 million individuals log into an Epic app" (Amend. Compl., ¶ 35). Thus, Epic claims it is both a competitor of Google and a competitor of the other app developers that distribute their apps through the Play Store. Google's production thus contains not only its own competitively sensitive information relating to core business plans and commercial negotiations, but also the competitively sensitive information of other app developers that compete with Epic. Google's documents contain competitively sensitive information relating to partnerships between Google and certain app developers - the disclosure of which would harm not only Google but non-parties to this litigation.[1]

---

[1] A Supplemental Protective Order relating to Non-Party Materials that allows for a Non-Party Highly Confidential designation was entered in May 2021, and Google is undergoing efforts to align productions prior to May 2021 with these designations. Any modifications to the PO in the meantime will require Google to notice non-parties.

Epic's complaints of the pace of the case, the breadth of legal issues beyond this litigation that its Designated House Counsel are handling, and Designated House Counsel's ability "to commit the time" to being in depositions are self-inflicted. These are not reasons to modify a PO that Epic stipulated with full knowledge of the pace and scope of the litigation. In negotiating the PO, Google agreed to allow for two Designated House Counsel (despite only wanting one), but could not ultimately get any further assurances about a Designated House Counsel's duties and responsibilities beyond a Party's assurances that "the Designated House Counsel's current and foreseeable future primary job duties and responsibilities" do not involve any competitive decision making. See PO, ¶ 7.3(b)(iv)(2). As Epic's own cases acknowledge:

> although an attorney may very well have good intentions, he cannot reasonably be expected to 'lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer' because knowledge of the information would put the attorney 'in the untenable position of having to refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions lest he improperly or indirectly reveal the trade secrets.

*Alza*, 2004 WL 7339748, at *3 (citing *Brown Bag*, 960 F.2d at 1471); *see also Nazomi Commc'ns*, 2002 WL 32831822, at *2. And this Court acknowledged the commonsense issue that "as you add people, the odds that somebody is going to leave goes up…. [I]t's just the nature of the business." Jul. 22, 2021 Case Management Conference Tr. 26:3-5.

For these reasons, Google respectfully asks the Court to maintain the PO that was carefully negotiated and entered as an Order of the Court. The percentage of HC-AEO documents is small compared to the overall production, and Epic's ability to litigate is not prejudiced by the current access rules limiting disclosure to its team of outside counsel and its two Designated House Counsel. As stated during the July 22 status conference, Google is willing to permit Epic to change Designated House Counsel to the extent an already-designated House Counsel is no longer available to participate in the management of this litigation, or if another in-house counsel who qualifies under the terms of the existing PO can devote more time and attention to this matter.

| | | |
|---|---|---|
| Dated: July 29, 2021 | | CRAVATH, SWAINE & MOORE LLP |

    Christine Varney (*pro hac vice*)
    Katherine B. Forrest (*pro hac vice*)
    Darin P. McAtee (*pro hac vice*)
    Gary A. Bornstein (*pro hac vice*)
    Timothy G. Cameron (*pro hac vice*)
    Yonatan Even (*pro hac vice*)
    Lauren A. Moskowitz (*pro hac vice*)
    Omid H. Nasab (*pro hac vice*)
    Justin C. Clarke (*pro hac vice*)
    M. Brent Byars (*pro hac vice*)

FAEGRE DRINKER BIDDLE & REATH LLP
    Paul J. Riehle (SBN 115199)

Respectfully submitted,

By:   /s/ *Yonatan Even*
       Yonatan Even

*Counsel for Plaintiff Epic Games, Inc.*

Dated: July 29, 2021

MORGAN, LEWIS & BOCKIUS LLP
    Brian C. Rocca
    Sujal J. Shah
    Michelle Park Chiu
    Minna L. Naranjo
    Rishi P. Satia

Respectfully submitted,

By:   /s/ *Brian C. Rocca*
       Brian C. Rocca

*Counsel for Defendants Google LLC et al.*

## E-FILING ATTESTATION

I, Yonatan Even, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

*/s/ Yonatan Even*
Yonatan Even