Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
  LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Darin P. McAtee (*pro hac vice*)
dmcatee@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff and Counter-Defendant
Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIC GAMES, INC., a Maryland Corporation,<br><br>                                    Plaintiff,<br><br>            v.<br><br>GOOGLE LLC; GOOGLE IRELAND LIMITED; GOOGLE COMMERCE LIMITED; GOOGLE ASIA PACIFIC PTE. LIMITED; and GOOGLE PAYMENT CORP.,<br><br>                                    Defendants. | Case No. 3:20-CV-05671-JD<br><br>**EPIC GAMES, INC.'S ANSWER AND DEFENSES TO GOOGLE'S COUNTERCLAIMS** |
| GOOGLE LLC; GOOGLE IRELAND LIMITED; GOOGLE COMMERCE LIMITED; GOOGLE ASIA PACIFIC PTE. LIMITED; and GOOGLE PAYMENT CORP.,<br><br>                                    Counterclaimants,<br><br>            v.<br><br>EPIC GAMES, INC., a Maryland Corporation,<br><br>                                    Counter-Defendant. | |

Plaintiff and Counter-Defendant Epic Games, Inc. ("Epic"), by and through its undersigned counsel, hereby answers the Counterclaims of Defendants Google LLC, Google Ireland Limited, Google Commerce Ltd., and Google Asia Pacific Pte. Ltd., (collectively, "Google"), filed October 11, 2021 (the "Counterclaims") and asserts its defenses.

## ANSWER

Except as otherwise expressly set forth below, Epic denies each and every allegation contained in the Counterclaims including, without limitation, the section headings of the Counterclaims.  Epic expressly reserves the right to amend and/or supplement its answer and defenses.  Epic states that no response is necessary to the unnumbered paragraphs in the Counterclaims.  To the extent a response is required, Epic denies the allegations.  For the avoidance of doubt, Epic is not responding to Google's Answer or to the introductory materials contained in the unnumbered paragraphs preceding Google's Answer.  Subject to the foregoing, as and for its Answer to Google's Counterclaims, Epic pleads as follows:

1.     Epic states that the allegations in Paragraph 1 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations in Paragraph 1, except admits that there is diversity of citizenship between Epic and Google, that the amount in controversy exceeds $75,000, that Google's counterclaims arise out of the same factual nucleus as Epic's claims, and that Google purports to invoke the jurisdiction of this Court pursuant to the statutes cited therein.

2.     Epic states that the allegations in Paragraph 2 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations in Paragraph 2, except admits that it filed a Complaint against Google in this District.

3.     Epic states that the allegations in Paragraph 3 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations in Paragraph 3, except admits that it brought an action against Google in this Court and that a substantial part of the events or omissions giving rise to Epic's claims occurred in this District.

4.       Epic admits, on information and belief, the allegations of Paragraph 4.

5.       Epic admits, on information and belief, the allegations of Paragraph 5.

6.       Epic admits, on information and belief, the allegations of Paragraph 6.

7.       Epic admits, on information and belief, the allegations of Paragraph 7.

8.       Epic admits the allegations of Paragraph 8.

9.       Epic denies the allegations of Paragraph 9, except that it admits, on information and belief, that (i) Google was founded in a Silicon Valley garage, (ii) Google made Android available on a purportedly open-source basis in 2008 and (iii) Google licenses Android.

10.       Epic denies the allegations of Paragraph 10, except admits that Google operates Google Play, an online store where Android users must often go to find Android apps.

11.       Epic denies the allegations of Paragraph 11, except admits that Google Play is not the only source from which consumers are technically able to acquire Android apps.

12.       Epic denies the allegations of Paragraph 12, except admits, on information and belief, that for a developer to distribute apps through Google Play, Google requires (i) that the developer enter into the Google Play Developer Distribution Agreement ("DDA"), and refers to that agreement for its contents, and (ii) that the developer adhere to Google's policies, and refers to those policies for their contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  By referring to Google's anti-competitive policies, Epic does not admit that those policies constitute or form part of a lawful and/or enforceable contract.

13.       Epic denies the allegations of Paragraph 13, except admits (i) that the DDA contains terms that Google purports to be binding on developers, and refers to that agreement for its contents, (ii) that developers must use Google Play in order to reach a worldwide audience of billions and (iii) admits, on information and belief, that Google

charges developers a fee to set up a Google Play developer account.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  Epic further states that it is without knowledge or information sufficient to form a belief as to the percentage of apps available on Google Play from which Google does not collect a "service fee".

14.     Epic denies the allegations of Paragraph 14, except admits the existence of the DDA and refers to that agreement for its contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

15.     Epic denies the allegations of Paragraph 15, except admits (i) the existence of the DDA and refers to that agreement for its contents, and (ii) that Google imposes a supra-competitive tax of up to 30% of the price charged by the developer for content distributed through apps distributed through Google Play.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  Epic further states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations concerning the proportion of developers eligible for any reduced service fees that Google purports to offer.

16.     Epic denies the allegations of Paragraph 16, except admits (i) the existence of the DDA and refers to that agreement for its contents, and (ii) that Google mandates, through anti-competitive contracts of adhesion, that developers must use Google Play Billing in circumstances where developers charge for downloads of apps or for in-app purchases of, or subscriptions to, content sold within apps distributed through Google Play.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

17.     Epic denies the allegations of Paragraph 17, except admits (i) the existence of the DDA and refers to that agreement for its contents, and (ii) that certain provisions of the DDA purport to prohibit app developers like Epic from distributing apps

that, in turn, facilitate the download of other apps.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

18.     Epic denies the allegations of Paragraph 18, except admits (i) the existence of the DDA and refers to that agreement for its contents, and (ii) the existence of Google's policies, and refers to those policies for their contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  By referring to Google's anti-competitive policies, Epic does not admit that those policies constitute or form part of a lawful and/or enforceable contract.

19.     Epic denies the allegations of Paragraph 19, except admits the existence of the DDA and refers to that agreement for its contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

20.     Epic denies the allegations of Paragraph 20, except admits (i) the existence of the DDA and refers to that agreement for its contents, and (ii) the existence of Google's policies, and refers to those policies for their contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  By referring to Google's anti-competitive policies, Epic does not admit that those policies constitute or form part of a lawful and/or enforceable contract.

21.     Epic denies the allegations of Paragraph 21, except admits (i) that Epic is, among other things, a developer of games and other apps, (ii) that Epic was founded in 1991 by Timothy Sweeney, (iii) that Timothy Sweeney is Epic's controlling shareholder, CEO, and board chairman, (iv) that Tencent Holdings, Ltd. and Sony Corporation are non-controlling shareholders in Epic and (v) that Epic's most recent equity valuation was $28.7 billion.

1         22.     Epic denies the allegations of Paragraph 22, except admits (i) that Epic

2   develops *Fortnite*, (ii) that *Fortnite* is free for everyone to download and experience, (iii) that

3   Epic offers users various in-app purchases of content for use within *Fortnite*, (iv) that *Fortnite*

4   has topped 400 million users and (v) that *Fortnite* supports "cross-play", which allows users

5   of certain platforms to experience *Fortnite* with one another.

6         23.     Epic denies the allegations of Paragraph 23, except admits (i) that Epic

7   develops Unreal Engine, a software suite available for license by third-party developers that

8   allows them to create and distribute three-dimensional digital content and apps, and (ii) that

9   Epic offers Epic Online Services, an open and modular set of online services for game

10  development.

11        24.     Epic denies the allegations of Paragraph 24.

12        25.     Epic denies the allegations of Paragraph 25, except admits (i) that Epic

13  began distributing *Fortnite* on Google Play in April 2020, (ii) that Epic entered into a DDA

14  with Google and refers to that agreement for its contents and (iii) that Timothy Sweeney sent

15  an email to Google executives with the subject line "Consumer Choice & Competition" on

16  June 30, 2020, and refers to that communication for its contents.  By referring to the DDA, a

17  contract of adhesion that contains anti-competitive terms, Epic does not admit that the

18  agreement or all provisions therein are lawful and/or enforceable.

19        26.     Epic denies the allegations of Paragraph 26, except admits (i) that Epic

20  entered into a DDA with Google and refers to that agreement for its contents, (ii) that *Fortnite*

21  is free to download and experience, (iii) that Epic offers users various in-app purchases of

22  content for use within *Fortnite* and (iv) that Google imposed a supra-competitive fee on

23  purchases of *Fortnite* in-app content made on apps downloaded through Google Play; and

24  states that it is without knowledge or information sufficient to form a belief as to the truth of

25  the allegations concerning the profits or revenues of other developers.  By referring to the

26  DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the

27  agreement or all provisions therein are lawful and/or enforceable.

28

27.     Epic denies the allegations of Paragraph 27, except admits (i) that Epic entered into a DDA with Google, and refers to the DDA for its contents, and (ii) the existence of Google's policies, and refers to those policies for their contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  By referring to Google's anti-competitive policies, Epic does not admit that those policies constitute or form part of a lawful and/or enforceable contract.

28.     Epic denies the allegations of Paragraph 28, except admits (i) that in August 2018, Epic began to distribute the Android version of *Fortnite* through Samsung's Galaxy Store and as a direct download from Epic's website and (ii) the existence of a blog post describing Epic's initial experiences distributing the Android version of *Fortnite*, and refers to that blog post for its contents.

29.     Epic denies the allegations of Paragraph 29, except admits (i) that Google requires users to enable the ability to install from "unknown sources" in order to download apps outside of Google Play, whether directly from third-party developers or from non-OEM third-party app stores and (ii) that Google identified a theoretical vulnerability in the *Fortnite* installer launched on Android in August 2018, which Epic promptly fixed within 36 hours.

Epic further states, on information and belief, that Google purposefully, and with anti-competitive intent, made this theoretical vulnerability public before many users had downloaded the patch that Epic had made available.  Despite Google's public position that Android is an "open" platform, when Google faced a serious attempt by a developer to distribute a popular application outside of Google Play, Google ███████████████████████ ████████████████████████████████████████████ Specifically, to address Epic's decision to launch *Fortnite* outside of Google Play, Google ████████████████████ ████████ ████████████ A collection of running notes from ██████████████████████ █████████████████████████, reflect Google's anti-competitive aim: ████████████████ ████████████████████████████████████████

1        Google seized on the theoretical vulnerability in the *Fortnite* installer as a

2  means to deter users from obtaining Android apps outside Google Play and to deter

3  developers from distributing Android apps outside Google Play.  Meeting notes of the

4  ████████ ██████ reflect that Google planned to ██████████████████████████████

5  ██████████████████████████████████████ █████████ ████████████████ to address it.  In

6  fact, just nine days after identifying the vulnerability to Epic, Google ██████████████████

7  ████████████████████████████████████████████████████████████████████████████████████

8  ████████████████████████ Google did this despite knowing that many users were still

9  exposed to the vulnerability.  Epic had promptly remedied the vulnerability with a patch that

10  took effect the next time a user launched the *Fortnite* app, so consistent with typical industry

11  practice, Google should have waited up to 90 days to allow more users to launch the app and

12  become protected before making the bug public.  Instead, disregarding the security of users,

13  Google rushed to ██████████████████████████████████████ in order to deter

14  developers from launching outside of Google Play and maintain Google's monopoly over

15  Android app distribution.

16        Contrary to Google's allegations that this theoretical vulnerability was an

17  "extremely serious security flaw", Google ████████████████████████████████████████████

18  ████████████ ██████████████████████████████ Google

19  personnel recognized ████████████████████████████████████████████

20  ██████████████████████████████████████████ ██████████

21  ████████████████████████████████████████████████████████████████

22  ██████████████████████████████████ █████████ ██████████ In this discussion,

23  the same Google engineer revealed ████████████████████████████████████████████

24  ██████████████████████████████████████████████████

25  ████████████████████████████████████████████████

26  ██████████████████████████████████ Likewise, Google's Head of

27  Security for Android further admitted, with respect to Google's use of ██████████████████████

28

30.     Epic denies the allegations of Paragraph 30, except admits (i) that Epic entered into a DDA with Google, and refers to the DDA for its content, (ii) that "V-Bucks" is the name of the digital currency used to obtain certain items within *Fortnite* and (iii) that V-Bucks purchased through the Xbox and iOS versions of *Fortnite*, the Epic website and through retail gift cards may be redeemed for digital content in *Fortnite* on Android.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

31.     Epic denies the allegations of Paragraph 31.

32.     Epic denies the allegations of Paragraph 32, except admits (i) that Epic referred internally to its ongoing response to Apple's and Google's anti-competitive and unlawful policies and practices as "Project Liberty" and (ii) that Epic sought systematic change in Apple's and Google's policies, rather than changes that might benefit only Epic.

33.     Epic denies the allegations of Paragraph 33, except admits (i) that Epic seeks to share profits with creators and (ii) that Epic initially launched *Fortnite* on Android outside of Google Play.

34.     Epic denies the allegations of Paragraph 34, except admits that on December 5, 2019 Timothy Sweeney sent an email to Google executives with the subject line "*Fortnite* on Google Play" and refers to that communication for its contents.

35.     Epic denies the allegations of Paragraph 35, except admits that Epic submitted a build of *Fortnite* to Google in December 2019 that contained Epic's own payment processing solution and without Google Play Billing, which Google rejected.

36.     Epic denies the allegations of Paragraph 36, except admits (i) that *Fortnite* became available for download through Google Play in April 2020 and (ii) that the referenced Epic employee sent two Google representatives an email on April 21, 2020 and refers to that communication for its contents.

37.     Epic denies the allegations of Paragraph 37, except admits (i) that beginning on the morning of August 13, 2020, when the *Fortnite* app on Android devices queried Epic's servers regarding how many payment processing options were available, the servers informed the app that there were two options, including Epic's own payment processing solution, (ii) that trial testimony was given by Timothy Sweeney in the May 2021 trial of Epic's claims against Apple Inc., and refers to that testimony for its contents, and (iii) that a May 11, 2020 email with the subject line "Apple/Google Approach []" exists, and refers to that communication for its contents.

38.     Epic denies the allegations of Paragraph 38, except admits that its actions in response to Google's unlawful and anti-competitive policies and practices required planning.

39.     Epic denies the allegations of Paragraph 39, except admits that Epic retained a public relations firm to help communicate Apple's and Google's anti-competitive policies and practices to the public.

40.     Epic denies the allegations of Paragraph 40, except admits the existence of (i) a May 11, 2020 internal email with the subject line "Project Liberty" and refers to that communication for its contents, and (ii) a slide deck titled "Project Liberty Comm's" and dated May 2020, and refers to that document for its contents.

41.     Epic denies the allegations of Paragraph 41, except admits the existence of a slide deck titled "Project Liberty Update to the Board of Directors" dated July 27, 2020, and refers to that document for its contents.

42.     Epic denies the allegations of Paragraph 42, except admits the existence of (i) an email from Timothy Sweeney to a Microsoft employee on August 5, 2020, and refers to that communication for its contents, and (ii) trial testimony given by Timothy Sweeney in the May 2021 trial of Epic's claims against Apple, Inc., and refers to that testimony for its contents.

43.     Epic denies the allegations of Paragraph 43, except admits that Timothy Sweeney sent an email to Google executives on the morning of August 13, 2020, and refers to that communication for its contents.

44.     Epic denies the allegations of Paragraph 44, except admits (i) that beginning on the morning of August 13, 2020, when the *Fortnite* app on Android devices queried Epic's servers regarding how many payment processing options were available, the servers informed the app that there were two options, including Epic's own payment processing solution, and (ii) the existence of an internal May 11, 2020 email chain with the subject line "Apple/Google Approach []", and refers to that communication for its contents.

45.     Epic denies the allegations of Paragraph 45.

46.     Epic denies the allegations of Paragraph 46, except admits that Google sent Epic a notice dated August 13, 2020 about *Fortnite* and refers to that communication for its contents.

47.     Epic denies the allegations of Paragraph 47, except admits that Android *Fortnite* users who downloaded the app from Google Play prior to the hotfix did not lose access to *Fortnite* or their purchased in-app content after the hotfix was implemented.

48.     Epic denies the allegations of Paragraph 48, except admits that Android *Fortnite* users who downloaded or updated to *Fortnite* version 13.40 through Google Play and have not uninstalled the app continue to have the option to use Epic's payment processing solution.

49.     Epic denies the allegations of Paragraph 49, except admits (i) that Epic initiated this action on August 13, 2020 and (ii) that Epic communicated with consumers about savings that were available if the consumer used Epic's direct payment option, and refers to that communication for its contents.

50.     Epic restates and incorporates by reference each of its responses to Google's allegations that Google purports to reallege and incorporate in Paragraph 50.

51.     Epic states that the allegations in Paragraph 51 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the

allegations in Paragraph 51, except admits the existence of the DDA and refers to that agreement for its contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

52.    Epic states that the allegations in Paragraph 52 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations in Paragraph 52.

53.    Epic denies the allegations of Paragraph 53, except admits the existence of (i) the DDA and refers to that agreement for its contents, and (ii) Google's policies, and refers to those policies for their contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  By referring to Google's anti-competitive policies, Epic does not admit that those policies constitute or form part of a lawful and/or enforceable contract.

54.    Epic states that the allegations of Paragraph 54 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 54, except admits (i) that beginning on the morning of August 13, 2020, when the *Fortnite* app on Android devices queried Epic's servers regarding how many payment processing options were available, the servers informed the app that there were two options, including Epic's own payment processing solution, and (ii) the existence of the DDA and refers to that document for its contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

55.    Epic denies the allegations of Paragraph 55, except admits the existence of the DDA and refers to that document for its contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

56.     Epic states that the allegations of Paragraph 56 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 56 except admits the existence of (i) the DDA and refers to that document for its contents, and (ii) Google's polices, and refers to those policies for their contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  By referring to Google's anti-competitive policies, Epic does not admit that those policies constitute or form part of a lawful and/or enforceable contract.

57.     Epic states that the allegations of Paragraph 57 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 57.

58.     Epic states that the allegations of Paragraph 58 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 58, except admits that Android *Fortnite* users who downloaded or updated to *Fortnite* version 13.40 through Google Play and have not uninstalled the app continue to have the option to use Epic's payment processing solution.

59.     Epic states that the allegations of Paragraph 59 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 59.

60.     Epic restates and incorporates by reference each of its responses to Google's allegations that Google purports to reallege and incorporate in Paragraph 60.

61.     Epic states that the allegations of Paragraph 61 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 61, except admits that Epic entered into a DDA with Google and refers to that document for its contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

62.     Epic states that the allegations of Paragraph 62 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 62, except admits the existence of (i) the DDA, and refers to that document for its contents and (ii) Google's policies and refers to those policies for their contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.  By referring to Google's anti-competitive policies, Epic does not admit that those policies constitute or form part of a lawful and/or enforceable contract.

63.     Epic states that the allegations of Paragraph 63 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 63, except admits the existence of the DDA, and refers to that document for its contents.  By referring to the DDA, a contract of adhesion that contains anti-competitive terms, Epic does not admit that the agreement or all provisions therein are lawful and/or enforceable.

64.     Epic states that the allegations of Paragraph 64 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 64.

65.     Epic restates and incorporates by reference each of its responses to Google's allegations that Google purports to reallege and incorporate in Paragraph 65.

66.     Epic states that the allegations of Paragraph 66 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 66.

67.     Epic states that the allegations of Paragraph 67 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 67.

68.     Epic states that the allegations of Paragraph 68 state a legal conclusion to which no response is required.  To the extent a response is required, Epic denies the allegations of Paragraph 68.

1      69.     Epic restates and incorporates by reference each of its responses to

2  Google's allegations that Google purports to reallege and incorporate in Paragraph 69.

3      70.     Epic states that the allegations of Paragraph 70 state a legal conclusion

4  to which no response is required.  To the extent a response is required, Epic denies the

5  allegations of Paragraph 70.

6      71.     Epic states that the allegations of Paragraph 71 state a legal conclusion

7  to which no response is required.  To the extent a response is required, Epic denies the

8  allegations of Paragraph 71.

9      72.     Epic denies the allegations of Paragraph 72, except admits that Google

10  communicated with Epic regarding the status of *Fortnite* on Google Play and refers to that

11  communication for its contents.

12      73.     Epic states that the allegations of Paragraph 73 state a legal conclusion

13  to which no response is required.  To the extent a response is required, Epic denies the

14  allegations of Paragraph 73.

15      74.     Epic states that the allegations of Paragraph 74 state a legal conclusion

16  to which no response is required.  To the extent a response is required, Epic denies the

17  allegations of Paragraph 74.

18      75.     Epic states that Paragraph 75 is a request for jury trial to which no

19  response is required.  To the extent a response is required, Epic denies that Google is entitled

20  to a jury trial.

21      Epic states that the unnumbered wherefore clause and the paragraphs following

22  Paragraph 74 of the Counterclaims are a request for jury trial and a prayer for relief to which

23  no response is required. To the extent a response is required, Epic denies that Google is

24  entitled to a jury trial, to the relief sought in the counterclaims, or to any relief whatsoever.

25

26

27

28

1

## EPIC'S DEFENSES

2      Epic asserts the following defenses. In asserting these defenses, Epic does not

3 assume the burden of proof with respect to any issue as to which applicable law places the

4 burden of proof on Google.

5

### First Defense

6

### (Google's Violations of the Antitrust Laws)

7      Google's claims are barred, in whole or in part, because the contracts on which

8 Google's Counterclaims are based are illegal and unenforceable on the basis that they violate

9 the antitrust and unfair competition laws, including the Sherman Act, 15 U.S.C. §§ 1, 2, the

10 Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.*, and the Unfair Competition Law,

11 Cal. Bus. & Prof. Code § 17200, *et seq.*, as Epic respectfully requests the Court to determine

12 on the basis of Epic's claims against Google (First Amended Complaint for Injunctive Relief,

13 Dkt. No. 157-4), which are hereby incorporated into and restated in this First Defense as if set

14 forth fully herein.

15

### Second Defense

16

### (Google's Contracts Are Illegal and Unenforceable)

17      Google's claims are barred, in whole or in part, by the doctrine of illegality

18 because the contracts on which Google's Counterclaims are based are illegal and

19 unenforceable pursuant to the antitrust and unfair competition laws, as Epic respectfully

20 requests the Court to determine on the basis of Epic's claims against Google (First Amended

21 Complaint for Injunctive Relief, Dkt. No. 157-4), which are hereby incorporated into and

22 restated in this Second Defense as if set forth fully herein.

23

### Third Defense

24

### (Google's Contracts Are Void as Against Public Policy)

25      Google's claims are barred, in whole or in part, because the contracts on which

26 Google's Counterclaims are based are void as against public policy pursuant to the antitrust

27 laws and unfair competition laws, as Epic respectfully requests this Court to determine on the

28 basis of Epic's claims against Google (First Amended Complaint for Injunctive Relief, Dkt.

No. 157-4), which are hereby incorporated into and restated in this Third Defense as if set forth fully herein.

### Fourth Defense

### (Google's Contracts Are Unconscionable)

Google's claims are barred, in whole or in part, because the contracts on which Google's Counterclaims are based are unconscionable on the basis that they are contrary to the antitrust laws and unfair competition laws, as Epic respectfully requests this Court to determine on the basis of Epic's claims against Google (First Amended Complaint for Injunctive Relief, Dkt. No. 157-4), which are hereby incorporated into and restated in this Fourth Defense as if set forth fully herein.

### Fifth Defense

### (Epic's Actions Are Justified and Privileged by the Antitrust Laws)

Google's claims are barred, in whole or in part, because Epic's actions were justified or privileged pursuant to the antitrust and unfair competition laws, as Epic respectfully requests this Court to determine on the basis of Epic's claims against Google (First Amended Complaint for Injunctive Relief, Dkt. No. 157-4), which are hereby incorporated into and restated in this Fifth Defense as if set forth fully herein.

### Sixth Defense

### (Unlawful Duress)

Google's claims are barred, in whole or in part, because the Developer Distribution Agreement on which Google seeks to rely is unenforceable by reason of duress. Epic did not act freely and voluntarily in executing the Agreement, but instead under the duress and compulsion wrongfully and illegally created by Google, as Epic respectfully requests this Court to determine on the basis of Epic's claims against Google (First Amended Complaint for Injunctive Relief, Dkt. No. 157-4), which are hereby incorporated into and restated in this Seventh Defense as if set forth fully herein.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Seventh Defense**

**(Failure To State a Claim)**

Google fails to state a claim on which relief can be granted.

**Eighth Defense**

**(Google's Unclean Hands)**

Google's claims are barred, in whole or in part, by the doctrine of unclean hands.

**Ninth Defense**

**(Google Is *In Pari Delicto*)**

Google's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

**Tenth Defense**

**(Lack of Injury-in-Fact)**

Google's claims are barred, in whole or in part, because it has sustained no injury in fact by any act or omission of Epic.

**Eleventh Defense**

**(Unjust Enrichment))**

Google's claims are barred, in whole or in part, because any recovery would result in unjust enrichment to Google.

**Twelfth Defense**

**(Lack of Causation)**

Google's claims are barred, in whole or in part, because of a lack of causation, including, without limitation, because any injuries or damages that may have been suffered were not caused solely or proximately by any act or omission of Epic.

**Thirteenth Defense**

**(Speculative Damages)**

Google's claims are barred, in whole or in part, because any damages that Google purports to have suffered are too remote or speculative to allow recovery, and it is impossible to ascertain and allocate such alleged damages with reasonable certainty.

**Fourteenth Defense**

**(Adequate Remedy at Law)**

Google is not entitled to seek equitable relief because the injury or damage Google alleges and would be entitled to recover following resolution of Epic's antitrust claims, if there is any, would be adequately compensated pursuant to Epic's conditional admission of liability for breach of contract if the contract is lawful and enforceable or would otherwise be recoverable in an action at law for damages.

**Fifteenth Defense**

**(Good Faith)**

Google's claims are barred, in whole or in part, because Epic's acts and conduct complained of in the Counterclaims were taken in good faith.

**Sixteenth Defense**

**(Acts of Claimant)**

Google is not entitled to recover damages from Epic because Google's damages, if any, were caused by Google's own conduct, for which Epic has no liability.

**Seventeenth Defense**

**(Acts of Third Parties)**

Without conceding that any act of Epic's caused damage to Google, Epic alleges that Google's damages, if any, were caused by the conduct of third parties, for which Epic has no liability.

**Eighteenth Defense**

**(Judicial Admission)**

Google's claims are barred, in whole or in part, insofar as Google is bound by its admissions in prior court actions, and cannot take contrary positions in this litigation.

1    Dated:  November 1, 2021                    Respectfully submitted,

2                                                By */s/ Gary A. Bornstein*

3                                                   Gary A. Bornstein

4                                                **FAEGRE DRINKER BIDDLE &**
5                                                **REATH LLP**

6                                                Paul J. Riehle (SBN 115199)
7                                                paul.riehle@faegredrinker.com

8                                                Four Embarcadero Center
                                                 San Francisco, California 94111
9                                                Telephone:  (415) 591-7500
                                                 Facsimile:  (415) 591-7510
10

11                                               **CRAVATH, SWAINE & MOORE**
                                                 **LLP**
12
                                                 Christine A. Varney (*pro hac vice*)
13                                               cvarney@cravath.com
                                                 Katherine B. Forrest (*pro hac vice*)
14                                               kforrest@cravath.com
                                                 Darin P. McAtee (*pro hac vice*)
15                                               dmcatee@cravath.com
                                                 Gary A. Bornstein (*pro hac vice*)
16                                               gbornstein@cravath.com
                                                 Timothy G. Cameron (*pro hac vice*)
17                                               tcameron@cravath.com
                                                 Yonatan Even (*pro hac vice*)
18                                               yeven@cravath.com
                                                 Lauren A. Moskowitz (*pro hac vice*)
19                                               lmoskowitz@cravath.com
                                                 Omid H. Nasab (*pro hac vice*)
20                                               onasab@cravath.com
                                                 Justin C. Clarke (*pro hac vice*)
21                                               jclarke@cravath.com
                                                 M. Brent Byars (*pro hac vice*)
22                                               mbyars@cravath.com
23
                                                 825 Eighth Avenue
24                                               New York, New York 10019
                                                 Telephone:  (212) 474-1000
25                                               Facsimile:  (212) 474-3700
26

27                                               **Attorneys for Plaintiff and Counter-**
                                                 **Defendant**
28                                               **EPIC GAMES, INC.**

EPIC'S ANSWER TO                 21                Case No. 3:20-cv-05671-JD
GOOGLE'S COUNTERCLAIMS