Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone:  (415) 591-7500
Facsimile:  (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Vanessa A. Lavely (*pro hac vice* forthcoming)
vlavely@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD | Case No. 3:20-cv-05671-JD<br>Case No. 3:21-md-02981-JD<br><br><br>**DECLARATION OF LAUREN A. MOSKOWITZ IN SUPPORT OF PLAINTIFF EPIC GAMES, INC.'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Date:  June 2, 2022 at 10:00 a.m.<br>Courtroom: 11, 19th Floor<br>Judge: Hon. James Donato |

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

I, Lauren A. Moskowitz, declare as follows:

1.      I am an attorney at the law firm of Cravath, Swaine & Moore LLP, and am one of the attorneys representing Plaintiff Epic Games, Inc. ("Epic") in this action.  I am admitted to appear before this Court *pro hac vice*.

2.      I submit this declaration in support of Epic's Motion for a Preliminary Injunction.  The contents of this declaration are based on my personal knowledge of the information and documents cited herein.  If called as a witness, I could and would competently testify thereto.

3.      Attached hereto as **Exhibit 1** is a true and correct copy of a blog post on Google's Android Developers Blog, titled "Android Market: Now available for users", published on October 22, 2008[1], available at https://android-developers.googleblog.com/2008/10/android-market-now-available-for-users.html (last visited April 28, 2022), stating at page 1[2]:

> Starting in early Q1, developers will also be able to distribute paid apps in addition to free apps. Developers will get 70% of the revenue from each purchase; the remaining amount goes to carriers and billing settlement fees—Google does not take a percentage. We believe this revenue model creates a fair and positive experience for users, developers, and carriers.

[1] Titles and dates of the exhibits described herein are obtained from my review of the face of the document or the accompanying metadata produced in connection therewith.

[2] All yellow highlighting has been added for emphasis for the purposes of this declaration.  Gray highlighting signals materials filed under seal.

4.     Attached hereto as **Exhibit 2** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-001423609-610, which includes an email from ████████████████████████████ at the page ending in '609, stating:

5.     Attached hereto as **Exhibit 3** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-001677481-484 (marked as Plaintiffs' Deposition Exhibit 304), which includes an email from █████████████ ████ at the pages ending in '483-'484, and an email from █████████████ █████████████████ at the page ending in '481, stating:

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY4-000339905-910 (marked as Plaintiffs' Deposition Exhibit 872), which includes an email from █████████████ ██████████████     at the page ending in '905, stating:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

7.     Attached hereto as **Exhibit 5** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-001337211-252, titled ███ ████████████████████████████████████ containing the following slides at the pages ending in '225-'226:



8.   Attached hereto as **Exhibit 6** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-004320094, which includes an email from ███████████████████ stating:

9.      Attached hereto as **Exhibit 7** is a true and correct copy of a blog post on Google's

Android Developers Blog, titled "In-App Billing on Android Market: Ready for Testing",

published on March 24, 2011, available at https://android-

developers.googleblog.com/2011/03/in-app-billing-on-android-market-ready.html (last visited

April 28, 2022), stating:

> ### In-App Billing on Android Market: Ready for Testing
> 24 March 2011
>
> *[This post is by Eric Chu, Android Developer Ecosystem. —Dirk Dougherty]*
>
> Back in January we announced our plan to introduce Android Market In-app Billing this
> quarter. We're pleased to let you know that we will be launching In-app Billing next week.

10.     Attached hereto as **Exhibit 8** is a true and correct copy of the document produced

by Google in this litigation bearing Bates range GOOG-PLAY-006347283-285 (marked as

Plaintiffs' Deposition Exhibit 287), titled █████████████████████████

████████████  stating at the page ending in '284:

█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████

11.     Attached hereto as **Exhibit 9** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-003772918.R-925.R, titled ██████████████████████████████████████████ containing the following slide at the page ending in '919.R:

12. Attached hereto as **Exhibit 10** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-004230269-270, which includes an email from ███████████████████████████ at the page ending in '269, stating:

13. Attached hereto as **Exhibit 11** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-004105853-858, which includes an email from ██████████████████ at the page ending in '853, stating:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

1    14.    Attached hereto as **Exhibit 12** is a true and correct copy of the document

2  produced by Google in this litigation bearing Bates range GOOG-PLAY-007264058-069, titled

3  ███████████████████████████████████████████████ stating at the pages

4  ending in '060 and '063:

15. Attached hereto as **Exhibit 13** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000439987.R-0017.R (marked as Plaintiffs' Deposition Exhibit 804), titled ███████████████ containing the following slides at the pages ending in '006.R-'007.R:



16.     Attached hereto as **Exhibit 14** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000320285.R-370.R, titled ███████████████████████████ containing the following slide at the page ending in '362.R:

17.    Attached hereto as **Exhibit 15** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000542113.R-152.R, titled ███████████████████████████████ containing the following slide at the page ending in '119.R:



18.     Attached hereto as **Exhibit 16** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-001886111.R-166.R (marked as Plaintiffs' Deposition Exhibit 166), titled ███████████████████████ ████████████████ containing the following slides at the pages ending in '112.R and '118.R:



19.     Attached hereto as **Exhibit 17** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000836440-441, which includes an email from ████████████████████████ at the pages ending in '440-'441, stating:

20.     Attached hereto as **Exhibit 18** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-003459064, which includes an email from ███████████████████████ stating:

███████████████████████████████████████████████

21.     Attached hereto as **Exhibit 19** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000082831-834 (marked as Plaintiffs' Deposition Exhibit 703), which includes an email from ████████ ████████████████ at the pages ending in '831-'833, stating:

███████████████████████████████████████████████

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

22.     Attached hereto as **Exhibit 20** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000092281.R-330.R, titled ███████████████████████████████ containing the following slide at the page ending in '306.R:

1       23.    Attached hereto as **Exhibit 21** is a true and correct copy of the document

2   produced by Google in this litigation, bearing Bates range GOOG-PLAY-000442440-511

3   (marked as Plaintiffs' Deposition Exhibit 705), titled ████████████████

4   ████████████ containing the following slides at the pages ending in '441, '450, '453, '483

5   and '485:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***







24.     Attached hereto as **Exhibit 22** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000840773-782 (marked as Plaintiffs' Deposition Exhibit 704), which includes an email from ███████ ███████████████ at the page ending in '774, stating:

25.     Attached hereto as **Exhibit 23** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000880576.R-645.R (marked as Plaintiffs' Deposition Exhibit 290), titled ████████████ ████ containing the following slide at the page ending in '589.R:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

26.     Attached hereto as **Exhibit 24** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000257419-422, which includes an email from ████████████████████████ at the pages ending in '419-'420, stating:

1   27.  Attached hereto as **Exhibit 25** is a true and correct copy of the document

2 produced by Google in this litigation bearing Bates range GOOG-PLAY-001558912.R-944.R,

3 titled ██████████████████████████████ containing the following slide at

4 the page ending in '919.R:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

28.     Attached hereto as **Exhibit 26** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000307941.R-970.R (marked as Plaintiffs' Deposition Exhibit 682), titled ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ containing the following slides at the pages ending in '951.R and '954.R and text at the page ending in '954.R:

29.     Attached hereto as **Exhibit 27** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000566853-914, titled ███████████████████████████ containing the following slide (excerpted) at the page ending in '863:

30.     Attached hereto as **Exhibit 28** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000446489-499, titled ████████████████████████████████████████ containing the following chart at the pages ending in '493-'494:

31.     Attached hereto as **Exhibit 29** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000292636.R-655.R, titled ███████████████████████ containing the following slide at the page ending in '649.R:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

32.     Attached hereto as **Exhibit 30** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-000304837.R-892.R,

titled ████████████████████████████████████ containing the following slide

at the page ending in '840.R:

33.     Attached hereto as **Exhibit 31** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000051671-701 (marked as Plaintiffs' Deposition Exhibit 315), titled ███████████████ ███████████████████████ containing the following slide at the page ending in '695:

34.     Attached hereto as **Exhibit 32** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-002440706-708, titled ██████████████████████████ stating at the page ending in '706:

35.     Attached hereto as **Exhibit 33** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-000096813.R-844.R,

titled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ containing the following slide at the page ending in

'817.R:



36.     Attached hereto as **Exhibit 34** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-001496795-801, titled

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

37.     Attached hereto as **Exhibit 35** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-004785946, which includes an email from █████████████████████████████████ stating:

████████████████████████████████████████████████████████████████

38.     Attached hereto as **Exhibit 36** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000207755-777 (marked as Plaintiffs' Deposition Exhibit 267), titled ███████████████████████ █████████████████████ stating at the page ending in '772:

████████████████████████████████████████████████████████████████

39.     Attached hereto as **Exhibit 37** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000565541.R-562.R (marked as Plaintiffs' Deposition Exhibit 522), titled ███████████████████ ██████████████ containing the following slide at the page ending in '552.R:



40.     Attached hereto as **Exhibit 38** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-004509200 (marked as Plaintiffs' Deposition Exhibit 591), titled ████████████████████████ stating:

41.     Attached hereto as **Exhibit 39** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-003332817.R-864.R

(marked as Plaintiffs' Deposition Exhibit 136), titled ████████████████

████████████████████████████████  containing the following

slides at the pages ending in '822.R, '828.R and '835.R:

42.     Attached hereto as **Exhibit 40** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000555504-507, which includes an email from ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ containing the following subject line:

43.     Attached hereto as **Exhibit 41** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-004702879-881, which has the metadata filename ███████████████

███████████████████████████████████████████

███ stating at the pages ending in '879-'880:

44.     Attached hereto as **Exhibit 42** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000445893.R-978.R (marked as Plaintiffs' Deposition Exhibit 439), titled ███████████████████ ████████████ containing the following slide at the page ending in '896.R:

1      45.    Attached hereto as **Exhibit 43** is a true and correct copy of the document

2  produced by Google in this litigation bearing Bates range GOOG-PLAY4-004259430-432

3  (marked as Plaintiffs' Deposition Exhibit 652), titled ████████████████████████

4  ██████████████████  stating at the page ending in '430:

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

46.     Attached hereto as **Exhibit 44** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-004705533.R-538.R,

titled ██████████████████████████████ containing the

following slide at the page ending in '534.R:

47.     Attached hereto as **Exhibit 45** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-004488106.R-164.R

(marked as Plaintiffs' Deposition Exhibit 624), titled ███████████████

████████████████ containing the following slides at the pages ending in '107.R and

'115.R:

48.     Attached hereto as **Exhibit 46** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-003720093 (marked as Plaintiffs' Deposition Exhibit 789), which includes an email from ███████████ ███████████████████████ stating:

███████████████████████████████████████████

49.     Attached hereto as **Exhibit 47** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-004506631-633 (marked as Plaintiffs' Deposition Exhibit 708), which has the metadata ████████ ███████ ███████████████ stating at the page ending in '631:

███████████████████████████████████████████

50.     Attached hereto as **Exhibit 48** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000337564.R-631.R (marked as Plaintiffs' Deposition Exhibit 360), titled ████████████████████ containing the following slide at the page ending in '587.R:



51.     Attached hereto as **Exhibit 49** is an excerpt of a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-000237798, which is an Excel spreadsheet with the metadata filename ███████████ ████████████████████████████ ███████████████

52.     Attached hereto as **Exhibit 50** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-007328838-878 (marked as Plaintiffs' Deposition Exhibit 523), titled ████████████████████ ██████ containing the following slide at the page ending in '860:

53.     Attached hereto as **Exhibit 51** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-003334312-347 (marked as Plaintiffs' Deposition Exhibit 519), titled ███████████████████████ containing the following slide and text at the page ending in '314[3]:

[3] The highlighting on the bullet point ████████████████████████████████████ was in the original.

54.     Attached hereto as **Exhibit 52** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000347493.R-539.R, titled ███████████████████████ containing the following slide at the page ending in '494.R:

55.     Attached hereto as **Exhibit 53** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-002076224.R-238.R (marked as Plaintiffs' Deposition Exhibit 167), titled ████████████████████ ████████████ containing the following slide at the page ending in '229.R:

56.    Attached hereto as **Exhibit 54** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000234772-779 (marked as Plaintiffs' Deposition Exhibit 149), which includes an email from ███████ ████████████████ at the page ending in '773, stating:

57.    Attached hereto as **Exhibit 55** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-007280918-920 (marked as Plaintiffs' Deposition Exhibit 150), which includes an email from ███████ ████████████████████████████████████████████████ at the pages ending in '918-'919, stating:

58.   Attached hereto as **Exhibit 56** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-007847561-565, titled

███████████████████████████████████████████████

███████████      stating at the pages ending in '561 and '563:

59.     Attached hereto as **Exhibit 57** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-004794198.R-210.R,

titled ███████████████████████████ containing the following slide at the page

ending in '203.R:



60.     Attached hereto as **Exhibit 58** is an excerpt of a true and correct copy of the

document produced by Google in this litigation bearing Bates number GOOG-PLAY-

004260663, which is an Excel spreadsheet titled █████████████████████

█████████████████

61.     Attached hereto as **Exhibit 59** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-000929031-041

(marked as Plaintiffs' Deposition Exhibit 162), titled ████████████████████

████████████████████████████████████████████ stating at the pages

ending in '031 and '033:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

62.     Attached hereto as **Exhibit 60** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000560166-172, titled ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ stating at the page ending in '166:

63.    Attached hereto as **Exhibit 61** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-000558461.R-477.R, titled ██████████████████████████ containing the following slide at the page ending in '465.R:

64.     Attached hereto as **Exhibit 62** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-004234103-105, which includes an email from ████████████████████████ at the pages ending in '103-'104, stating:

65.     Attached hereto as **Exhibit 63** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-004455818-821, which includes a chat from ████████████████████████ at the page ending in '818, stating:

66.     Attached hereto as **Exhibit 64** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-004489655.R-663.R,

titled ███████████████████████████████████ containing the

following slides at the pages ending in '656.R-'657.R:



67.     Attached hereto as **Exhibit 65** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-002274491-494, titled █████████████████████████████████ stating at the page ending in '492:

68.    Attached hereto as **Exhibit 66** is a true and correct copy of a webpage on

Google's Google Play website titled "Google Play Developer Distribution Agreement", dated

November 17, 2020, available at https://play.google.com/about/developer-distribution-

agreement.html (last visited April 28, 2022), stating at pages 1-3:

> **Payment Account:** A financial account issued by a Payment Processor to a Developer that authorizes the Payment Processor to collect and remit payments on the Developer's behalf for Products sold via Google Play.
>
> **Payment Processor(s):** The entity authorized by Google to provide services that enable Developers with Payment Accounts to be paid for Products distributed via Google Play.
>
> **Play Console**: The Google Play Console and other online tools or services provided by Google to developers at https://play.google.com/apps/publish, as may be updated from time to time. The Play Console is also available through an app to developers.

> # 3. Commercial Relationship, Pricing, Payments, and Taxes
>
> 3.1 You hereby appoint Google as Your agent or marketplace service provider as outlined here to make Your Products available in Google Play.
>
> 3.2 This Agreement covers both Products that users can access for free and Products that users pay a fee to access. In order for You to charge a fee for Your Products and to be paid for Products distributed via Google Play, You must have a valid Payment Account under a separate agreement with a Payment Processor, be approved by a Payment Processor for a Payment Account, and maintain that account in good standing. If there is a conflict between Your Payment Processor agreement and this Agreement, the terms of this Agreement will apply.

> # 4. Use of Google Play by You
>
> 4.1 You and Your Product(s) must adhere to the Developer Program Policies.
>
> 4.2 You are responsible for uploading Your Products to Google Play, providing required Product information and support to users, and accurately disclosing the permissions necessary for the Product to function on user Devices.

69.    Attached hereto as **Exhibit 67** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-004146689.R-757.R (marked as Plaintiffs' Deposition Exhibit 384), titled ███████████████ ███████████ containing the following slides at the pages ending in '697.R and '705.R:

70.     Attached hereto as **Exhibit 68** is a true and correct copy of a webpage on Google's website titled "Developer Program Policy"[4], dated January 20, 2021 (marked as Plaintiffs' Deposition Exhibit 714), stating at page 22:

## Payments

1. Developers charging for apps and downloads from Google Play must use Google Play's billing system as the method of payment.

2. Play-distributed apps must use Google Play's billing system as the method of payment if they require or accept payment for access to features or services, including any app functionality, digital content or goods.

   a. Examples of app features or services requiring use of Google Play's billing system include, but are not limited to, in-app purchases of:
   - Items (such as virtual currencies, extra lives, additional playtime, add-on items, characters and avatars);
   - subscription services (such as fitness, game, dating, education, music, video, and other content subscription services);

---

[4] This version of the Developer Program Policy is no longer available on Google's website.

71.     Attached hereto as **Exhibit 69** is a true and correct copy of the document

produced by Google in this litigation bearing Bates range GOOG-PLAY-008698390-472, titled

█████████████████████████████████████ containing the following slides at

the pages ending in '418-'419:



72.   Attached hereto as **Exhibit 70** is an excerpt of a true and correct copy of the deposition transcript of Adrian Ong, Senior Vice President, Operations at Match Group, filed in *Epic v. Apple*, No. 4:20-cv-05640-YGR-TSH, (N.D. Cal. May 3, 2021), Docket No. 667-1, dated February 24, 2021.[5]

---

[5] Redaction within appears in the original document as filed; redacted material was not relied upon in the present filing.

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

73.     Attached hereto as **Exhibit 71** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-006829073.R-172.R (marked as Plaintiffs' Deposition Exhibit 388), titled ███████████████ ███████████ containing the following slides at the pages ending in '121.R, '157.R, '170.R and '171.R:





74.    Attached hereto as **Exhibit 72** is a true and correct copy of a blog post on Google's Android Developers Blog, titled "Boosting developer success on Google Play", published on March 16, 2021, available at https://android-developers.googleblog.com/2021/03/boosting-dev-success.html (last visited April 28, 2022), stating at page 1:

Starting on July 1, 2021 we are reducing the service fee Google Play receives when a developer sells digital goods or services to 15% for the first $1M (USD) of revenue every developer earns each year. With this change, 99% of developers globally that sell digital goods and services with Play will see a 50% reduction in fees. These are funds that can help developers scale up at a critical phase of their growth by hiring more engineers, adding to their marketing staff, increasing server capacity, and more.

75.     Attached hereto as **Exhibit 73** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-001090227 (marked as Plaintiffs' Deposition Exhibit 430), which is an Excel spreadsheet with the metadata filename

██████████████████████████████████████████████████████████

████████

76.     Attached hereto as **Exhibit 74** is an excerpt of a true and correct copy of the transcript of the trial testimony of Benjamin Simon, founder and CEO of Down Dog, in *Epic v. Apple*, No. 4:20-cv-05640-YGR-TSH, (N.D. Cal.), dated May 4, 2021.

77.     Attached hereto as **Exhibit 75** is an excerpt of a true and correct copy of the transcript of the trial testimony of Philip Schiller, Apple Fellow, in *Epic v. Apple*, No. 4:20-cv-05640-YGR-TSH, (N.D. Cal.), dated May 17, 2021.

78.     Attached hereto as **Exhibit 76** is a true and correct copy of a blog post on Google's Android Developers Blog, titled "Allowing developers to apply for more time to comply with Play Payments Policy", published on July 16, 2021, available at https://android-developers.googleblog.com/2021/07/apply-more-time-play-payments-policy.html (last visited April 28, 2022), stating at page 1:

> Many of our partners have been making steady progress toward the September 30 deadline. However, we continue to hear from developers all over the world that the past year has been particularly difficult, especially for those with engineering teams in regions that continue to be hard hit by the effects of the global pandemic, making it tougher than usual for them to make the technical updates related to this policy.
>
> After carefully considering feedback from both large and small developers, we are giving developers an option to request a 6-month extension, which will give them until March 31, 2022 to comply with our Payments policy. Starting on July 22nd, developers can appeal for an extension through the Help Center and we will review each request and get back to requests as soon as possible.

79. Attached hereto as **Exhibit 77** is a true and correct copy of a blog post on Google's Android Developers Blog, titled "Evolving our business model to address developer needs", published on October 21, 2021, available at https://android-developers.googleblog.com/2021/10/evolving-business-model.html (last visited April 28, 2022), stating at page 2:

> retention. We've worked with our partners in dating, fitness, education and other sectors to understand the nuances of their businesses. Our current service fee drops from 30% to 15% after 12 months of a recurring subscription. But we've heard that customer churn makes it challenging for subscription businesses to benefit from that reduced rate. So, we're simplifying things to ensure they can.
>
> To help support the specific needs of developers offering subscriptions, starting on January 1, 2022, we're decreasing the service fee for all subscriptions on Google Play from 30% to 15%, starting from day one.
>
> For developers offering subscriptions, this means that first-year subscription fees will be cut in half. We've already gotten positive feedback from our developer partners on this change:

80. Attached hereto as **Exhibit 78** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-007880154-167 (marked as Plaintiffs' Deposition Exhibit 542), titled ███████████ ███ stating at the page ending in '154:

81.      Attached hereto as **Exhibit 79** is a true and correct copy of a blog post on Google's Android Developers Blog, titled "Making Ratings and Reviews better for users and developers", published on August 23, 2021, available at https://android-developers.googleblog.com/2021/08/making-ratings-and-reviews-better-for.html (last visited April 28, 2022), stating at pages 1-2:

Ratings and reviews are important. They provide valuable quantitative and qualitative feedback on your users' reported experience of your app or game, and the broader service that you offer. That's why they're one of the signals people use when deciding what to download on Google Play.

We've heard from both Play Store users and developers that ratings and reviews could be more helpful. This is especially true when ratings from one area unfairly impact another — like when a bug that only impacted a single country negatively affects the app's rating everywhere; or when positive improvements in a tablet experience are overlooked because of the number of users on phones. So we're starting a multi-quarter program of improvements to make ratings more personalized and indicative of the experience each individual user can expect, and to make them easier to navigate and use for developers:

82.     Attached hereto as **Exhibit 80** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-007763365-367, titled ███████████████████████ containing the following slide at the page ending in '365:



83.     Attached hereto as **Exhibit 81** is a true and correct copy of the publicly available document downloaded from the Android Open Source website, titled "Compatibility Definition", dated October 4, 2021, available at https://source.android.com/compatibility/cdd (last visited April 28, 2022).

84.     Attached hereto as **Exhibit 82** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-007819042-061, titled ████████████████████████████████ containing the following slide at the page ending in '043:

85.     Attached hereto as **Exhibit 83** is a true and correct copy of the document produced by Google in this litigation bearing Bates range GOOG-PLAY-007879536-552, titled ████████████████████████████████████████ containing the following slide at the page ending in '537:



86.     Attached hereto as **Exhibit 84** is an excerpt of a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-007335854, which is an Excel spreadsheet with the metadata filename ████████████████████████████████████████ ███████████

87.   Attached hereto as **Exhibit 85** is a true and correct copy of a blog post on Google's Developers Korea Blog, titled "Enabling alternative billing systems for users in South Korea", published on November 4, 2021, available at https://developers-kr.googleblog.com/2021/11/enabling-alternative-billing-in-korea-en.html (last visited April 28, 2022), stating at pages 3-4:

> Service fees for distributing apps via Android and Google Play will continue to be based on digital sales on the platform. We recognize, however, that developers will incur costs to support their billing system, so when a user selects alternative billing, we will reduce the developer's service fee by 4%. For example, for the vast majority of developers who pay 15% for transactions through Google Play's billing system, their service fee for transactions

> through the alternate billing system would be 11%. As another example, certain categories of apps participating in our Media Experience Program, such as an eBooks provider, will pay a 10% service fee for transactions made via Google Play's billing system, but only 6% for transactions on an alternative system.

88.   Attached hereto as **Exhibit 86** is an excerpt of a true and correct copy of the deposition transcript of Google's former employee, █████████████████████ ████████

89.   Attached hereto as **Exhibit 87** is an excerpt of a true and correct copy of the deposition transcript of Google's former employee, █████████████████ ████████████

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

90.     Attached hereto as **Exhibit 88** is a true and correct copy of a webpage on Google's Play Console Help website, titled "Developer Program Policy", dated January 17, 2022, available at https://support.google.com/googleplay/android-developer/answer/11365487?hl=en (last visited April 28, 2022), stating at page 31:

---

**Payments**

1. Developers charging for app downloads from Google Play must use Google Play's billing system as the method of payment for those transactions.
2. Play-distributed apps requiring or accepting payment for access to in-app features or services, including any app functionality, digital content or goods (collectively "in-app purchases"), must use Google Play's billing system for those transactions unless Section 3 or Section 8 applies.

> Examples of app features or services requiring use of Google Play's billing system include, but are not limited to, in-app purchases of:
>
> Items (such as virtual currencies, extra lives, additional playtime, add-on items, characters and avatars);
> subscription services (such as fitness, game, dating, education, music, video, service upgrades and other content subscription services);
> app functionality or content (such as an ad-free version of an app or new features not available in the free version); and
> cloud software and services (such as data storage services, business productivity software, and financial management software).

---

91.     Attached hereto as **Exhibit 89** is an excerpt of a true and correct copy of the deposition transcript of Google's employee, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

92.     Attached hereto as **Exhibit 90** is an excerpt of a true and correct copy of the deposition transcript of Google's employee, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮

93.     Attached hereto as **Exhibit 91** is an excerpt of a true and correct copy of the deposition transcript of Google's employee, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮

94.     Attached hereto as **Exhibit 92** is an excerpt of a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-010801683, which is an Excel spreadsheet with the metadata filename ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮

95.     Attached hereto as **Exhibit 93** is an excerpt of a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-010801685, which is an Excel spreadsheet with the metadata filename ████████████████████████████████████████████████ ██████████████

96.     Attached hereto as **Exhibit 94** is a true and correct copy of a webpage on Google's Play Console Help website titled "Updates to Google Play Policies", dated April 6, 2022, available at https://support.google.com/googleplay/android-developer/answer/9934569#zippy=%2Csummary-of-changes%2Coctober%2Cjanuar (last visited April 28, 2022), stating at page 2:

January 20, 2021

| Effective Date | Changes Announced | Full Policy View |
|---|---|---|
| January 20, 2021 | September 28, 2020 | PDF |

Summary of Changes

We're updating our Payments policy to clarify when Google Play's billing system should be used for in-app purchases. This clarification is important to increase user protections across Play-distributed apps and makes the policy easier to understand.

Any existing app that is currently using an alternative billing system will need to remove it to comply with this update. For those apps, we are offering an extended grace period until September 30, 2021 to make any required changes. New apps submitted after January 20, 2021 will need to be in compliance. To view additional information about this update, please visit our Help Center.

97.     Attached hereto as **Exhibit 95** is a true and correct copy of a webpage on

Google's developers website titled "Alternative distribution options", available at

https://developer.android.com/distribute/marketing-tools/alternative-distribution (last visited

April 28, 2022), stating at pages 1-2:

**Distributing through an app marketplace**

Usually, to reach the broadest possible audience, you'd distribute your apps through a marketplace, such as Google Play.

Google Play is the premier marketplace for Android apps and is particularly useful if you want to distribute your apps to a large global audience. However, you can distribute your apps through any app marketplace you want or use multiple marketplaces.

Unlike other forms of distribution, Google Play allows you to use the In-app Billing service and Licensing service. The In-app Billing service (/google/play/billing) makes it easy to sell in-app products like game jewels or app feature upgrades. The Licensing service (/google/play/licensing) helps prevent unauthorized installation and use of your apps.

**Distributing through a website**

If you don't want to release your apps on a marketplace such as Google Play, you can make them available for download on your website or server, including on a private or enterprise server. To do this, first prepare your apps for release in the normal way, then host the release-ready APK files on your website and provide users with a download

link. To install an app distributed in this way, users must opt-in for installing unknown apps (/distribute/marketing-tools/alternative-distribution#unknown-sources).

98.     Attached hereto as **Exhibit 96** is a true and correct copy of a webpage on Google's Play Console Help website titled "Payments", available at https://support.google.com/googleplay/android-developer/answer/9858738 (last visited April 28, 2022), stating at page 1:

---

## Payments

1. Developers charging for app downloads from Google Play must use Google Play's billing system as the method of payment for those transactions.
2. Play-distributed apps requiring or accepting payment for access to in-app features or services, including any app functionality, digital content or goods (collectively "in-app purchases"), must use Google Play's billing system for those transactions unless Section 3 or Section 8 applies.

> Examples of app features or services requiring use of Google Play's billing system include, but are not limited to, in-app purchases of:
>
> Items (such as virtual currencies, extra lives, additional playtime, add-on items, characters and avatars); subscription services (such as fitness, game, dating, education, music, video, service upgrades and other content subscription services);
> app functionality or content (such as an ad-free version of an app or new features not available in the free version); and
> cloud software and services (such as data storage services, business productivity software, and financial management software).

3. Google Play's billing system must not be used in cases where:
   a. payment is primarily:
      for the purchase or rental of physical goods (such as groceries, clothing, housewares, electronics);
      for the purchase of physical services (such as transportation services, cleaning services, airfare, gym memberships, food delivery, tickets for live events); or
      a remittance in respect of a credit card bill or utility bill (such as cable and telecommunications services);
   b. payments include peer-to-peer payments, online auctions, and tax exempt donations;
   c. payment is for content or services that facilitate online gambling, as described in the Gambling Apps section of the Real-Money Gambling, Games, and Contests policy;
   d. payment is in respect of any product category deemed unacceptable under Google's Payments Center Content Policies.

---

4. Other than the conditions described in Section 3 and Section 8, apps may not lead users to a payment method other than Google Play's billing system. This prohibition includes, but is not limited to, leading users to other payment methods via:
   An app's listing in Google Play;
   In-app promotions related to purchasable content;
   In-app webviews, buttons, links, messaging, advertisements or other calls to action; and
   In-app user interface flows, including account creation or sign-up flows, that lead users from an app to a payment method other than Google Play's billing system as part of those flows.

99.   Attached hereto as **Exhibit 97** is a true and correct copy of a webpage on

Google's Play Console Help website titled "App Discovery and Ranking", available at

https://support.google.com/googleplay/android-developer/answer/9958766?hl=en (last visited

April 28, 2022), stating at page 1:

## App Discovery and Ranking

Our goal is to help users easily discover apps and games they will enjoy from the millions on Google Play.

Users can learn about and install apps in many different ways on Google Play, on many different types of devices, including phones, tablets and TVs. For example, users can browse the homepage or sub navigation pages, search for an app, find details on app detail pages, or read through editorial selections.

We want users to see content that is relevant to them and have a positive experience with the apps they download. We generally favor apps that are high quality and relevant to a broad audience. The best thing a developer can do to increase discoverability is to build an app that people enjoy and recommend to others.

We constantly test and optimize the discovery experience on Google Play, from adding new discovery pages, to experimenting with different visual formats and layouts, and enhancing our ranking algorithms.

100.   Attached hereto as **Exhibit 98** is a true and correct copy of a webpage on

Google's Play Console Help website titled "Create a Subscription", available at

https://support.google.com/googleplay/android-developer/answer/140504 (last visited April 28,

2022), stating at page 1:

## Create a subscription

Review our updated Subscriptions Policy in the Developer Policy Center to ensure your app is compliant with the latest changes.

Using Google Play's billing system, you can offer in-app products that charge users for content or services on a recurring basis, known as subscriptions. Subscriptions can include items like a collection of apps, games, or other content for a recurring fee within your app on Google Play.

You can offer multiple subscriptions within the same app. Subscriptions must be priced within the accepted price range. Subscriptions can't be unpublished.

You can also create an in-app product, which charges users on a one-time basis.

Important: Google Play Developer Program Policies and service fees apply to in-app products and subscriptions.

101.    Attached hereto as **Exhibit 99** is a true and correct copy of a webpage on

Google's Play Console Help website titled "Understanding Google Play's Payments policy",

available at https://support.google.com/googleplay/android-developer/answer/10281818?hl=en

(last visited April 28, 2022), stating at page 1:

## Payments policy clarification

In 2020, we clarified the language in our Payments policy     to be more explicit that all developers selling digital goods and services in their apps are required to use Google Play's billing system. Apps using an alternative in-app billing system will need to remove it in order to comply with the Payments policy.

We always strive to work with our developer community to help keep their apps on Play while they make any needed changes. While most developers have already complied with this long-standing policy, we gave a one year grace period for any that needed to make changes to their apps. Based on developer feedback, we gave eligible developers the option to request an additional six months    , giving them a total of 18 months to bring their apps into compliance. We continue to work with developer partners to meet the evolving needs of our ecosystem.

Developers that are not compliant with the Payments policy will not be able to submit app updates until they bring their app into compliance unless an update is needed to fix a critical security issue. Starting June 1, 2022, any app that is still not compliant will be removed from Google Play.

102.    Attached hereto as **Exhibit 100** is a true and correct copy of a webpage on

Google's Google Play website titled "How Google Play works", available at

https://play.google.com/about/howplayworks/ (last visited April 28, 2022), stating at page 6:

## Google Play: A platform with extensive reach

2.5+ billion active users on Google Play each month***

140+ billion downloads on Google Play in the last year**

190+ countries where Google Play is available**

## Why developers choose Google Play

Google Play is one of many ways to distribute apps and games on Android to people around the world.

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

103.    Attached hereto as **Exhibit 101** is a true and correct copy of a webpage on Google's Google Play website titled "Developer Policy Center", available at https://play.google.com/intl/en-US/about/developer-content-policy/ (last visited April 28, 2022), stating at page 1:



104.    Attached hereto as **Exhibit 102** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-000416245 (marked as Plaintiffs' Deposition Exhibit 428), which is an Excel spreadsheet ████████████████ ████████████████████████████

105.    Attached hereto as **Exhibit 103** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-010801682, which is an Excel spreadsheet ████████████████████ ████████████████████████████████████████████

106.    Attached hereto as **Exhibit 104** is a true and correct copy of the document produced by Google in this litigation bearing Bates number GOOG-PLAY-010801680, which is an Excel spreadsheet ████████████████████ ████████████████████████████████████

107.   Attached hereto as **Exhibit 105** is a true and correct copy of a webpage on Google's developers website titled "Google Play", available at https://developer.android.com/distribute (last visited April 28, 2022), stating at page 1:

# Google Play

With the ability to publish rapidly to over 2 billion active Android devices, Google Play helps you grow a global audience for your apps and games and earn revenue.



108.   Attached hereto as **Exhibit 106** is a true and correct copy of the document produced by non-party Activision Blizzard, Inc. in this litigation bearing Bates range AB-GOOG-000492-500, titled ███████████████████████████ containing the following slide at the page ending in '497:

***REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED***

109.    Attached hereto as **Exhibit 107** is a true and correct copy of the document produced by non-party Activision Blizzard, Inc. in this litigation bearing Bates range AB-GOOG-000432-485, titled ████████████████████████ containing the following slides at the pages ending in '435 and '441:



110.    Attached hereto as **Exhibit 108** is a true and correct copy of the document produced by non-party Amazon.com, Inc. in this litigation bearing Bates number AMZ-GP_00001836, which is an Excel spreadsheet ███████████████████████████ ████████████████████████████████████████

111.    Attached hereto as **Exhibit 109** is a true and correct copy of the document produced by non-party Amazon.com, Inc. in this litigation bearing Bates number AMZ-GP_00001497, which is an Excel spreadsheet ██████████████████████████████ ██████████████████████████

112.    Attached hereto as **Exhibit 110** is an excerpt of a true and correct copy of the document produced by non-party Samsung Electronics America, Inc. in this litigation bearing Bates number SEA_GOOGLE_00000720, which is an Excel spreadsheet titled ████████ ██████████████████████████

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that I executed this declaration on April 28, 2022 in New York, New York.

_____
Lauren A. Moskowitz