MUNGER, TOLLES & OLSON LLP
560 MISSION STREET
SAN FRANCISCO, CALIFORNIA 94105-2907
TELEPHONE (415) 512-4000
FACSIMILE (415) 512-4077

July 1, 2022

Writer's Direct Contact
(415) 512-4044
(415) 644-6944 FAX
kyle.mach@mto.com

**VIA CM/ECF**

The Honorable James Donato, U.S. District Judge
U.S. District Court, Northern District of California
450 Golden Gate Ave
San Francisco, CA 94102

      Re:    *In re: Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD
              *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD

To The Honorable James Donato:

      Defendants ("Google") respectfully request an order compelling Plaintiff Epic Games, Inc. ("Epic") to produce documents related to a mobile gaming device called Steam Deck. Google has met and conferred with counsel for Epic, and the parties are unable to resolve this dispute. *See* Standing Order for Discovery in Civil Cases ¶ 19, N.D. Cal. L.R. 37-1(a).

## Introduction

      Epic claims that Google unlawfully exercises monopoly power in the distribution of Android mobile apps and has foreclosed channels for app developers to reach users, but refuses to produce documents related to the Steam Deck, a handheld mobile device capable of running mobile apps and games. Steam Deck is a device for "[a]ll-in-one portable PC gaming" that "brings the Steam games and features you love to a powerful and convenient form factor that you can take wherever you go." *See* Steam Deck, available at https://www.steamdeck.com/en/ (last accessed July 1, 2022). Users of Steam Deck can install apps and app stores, including the Epic Games Store that Epic alleges competes with Google Play. Epic's CEO has publicly praised Steam Deck for this functionality, but Epic has decided not to support *Fortnite* on Steam Deck.

      Epic's objection to producing documents regarding Steam Deck is that they are not relevant. That objection is meritless. Epic documents regarding Steam Deck are relevant to testing Epic's definition of relevant markets that are limited to smartphones and tablets and do not include devices such as Steam Deck. Indeed, after trial of Epic's antitrust claims against Apple, Judge Gonzalez Rogers cited the release of the Steam Deck as "further support" for the Court's conclusion that Epic's allegations that Apple had monopoly power in a market for iOS apps were incorrect. *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 1032, n. 597 (N.D. Cal. 2021). Further, Epic's decision not to support its *Fortnite* game on Steam Deck is also relevant to proving how developers invest in app development, which is important to understanding how platforms such as Google Play compete for app developers and thus how Google's conduct has affected competition.

## Background

1

MUNGER, TOLLES & OLSON LLP

*In re: Google Play Store Antitrust Litigation*
July 1, 2022

Epic alleges in its First Amended Complaint that there is a "Merchant Market for Mobile OSs" that includes "mobile OSs that OEMs can license for installation on the smart mobile devices they manufacture." ECF No. 82 at ¶ 51. Epic alleges that a gaming console "like Sony's PlayStation 4" is not "a reasonable substitute for a mobile device like a smartphone," in part because a console is "physically difficult to transport" compared to a "mobile device" that "enable[s] the consumer to play mobile games away from home or anywhere in the home." *Id.* at ¶ 53. Epic also alleges an "Android App Distribution Market" that includes "all the channels by which mobile apps may be distributed to . . . users of mobile devices running the Android OS." *Id.* at ¶ 68. Many of the same games can be played on PC and gaming consoles just as they can on Android mobile devices. However, Epic alleges that "stores distributing personal computer or gaming console software" are not part of this alleged market. *Id.* at ¶ 71.

Notwithstanding its agreement to produce documents regarding distribution channels other than app stores available on smartphones and tablets, Epic now refuses to conduct a reasonable search for documents related to Steam Deck. During meet and confer, Epic has taken the position that Steam Deck is irrelevant because it is not part of the markets *Epic* alleges and refused to state its position regarding whether Steam Deck is a "mobile device" as that term is used in Epic's Complaint to define its alleged markets. Epic has conducted a search of emails only, limited to a single term ("steam deck") for only the period of July 15, 2021 through February 6, 2022, and excluded the most relevant custodian, its CEO, who has publicly commented on Steam Deck, and has refused to expand its search.[1] Tellingly, Epic will confirm to Google only that, based on its narrow search, "it is not aware of any documents relating to whether to develop Fortnite for the Steam Deck device," leaving unanswered whether Epic is aware of documents regarding its other apps, such as the Epic Games Store, or whether it intends to promote Fortnite to Steam Deck users without developing a Steam Deck-specific version.

**<u>Argument and Requested Relief</u>**

Google seeks discovery regarding Steam Deck to test Epic's assertion that Steam Deck and distribution of apps for that device are not part of the relevant market, to understand whether Epic considers Steam Deck a "mobile device" in its normal course of business, and to test Epic's assertion that app developers are foreclosed from reaching app users. *See* Exhibit 1 (RFP Nos. 26-29, 42-43, 50, 64, 75-76, and 86). Epic objects that documents related to Steam Deck are not relevant because Steam Deck is not within the scope of *Epic*'s alleged markets.[2] The Court should overrule this relevance objection for several reasons:

First, Google is entitled to test Epic's assertion that Steam Deck is not part of any relevant market. Epic has the burden to prove its market, *R.C. Dick Geothermal Corp. v. Thermogenics, Inc.*, 890 F.2d 139, 143 (9th Cir. 1989), and its objection "assumes an answer to a heavily contested merits question." *In re Apple iPhone Antitrust Litig.*, No. 11-CV-06714-YGR-TSH, 2021 WL 718650, at *2 (N.D. Cal. Feb. 24, 2021). In the *Apple* litigation brought by Epic,

---

[1] Epic has also pointed to five documents it produced from 2019 regarding the Linux operating system. However, the documents do not discuss Steam Deck and predate its public announcement by over 18 months.

[2] Epic has not articulated an objection based on proportionality. Google respectfully submits that any such objection should also be overruled given the narrow scope of Google's request compared to the importance of market definition in this case, an issue on which Epic bears the burden.

MUNGER, TOLLES & OLSON LLP

*In re: Google Play Store Antitrust Litigation*
July 1, 2022

the Court held that discovery from Valve, a third party, regarding its PC gaming store was discoverable. The Court rejected Valve's argument that the information was "irrelevant" because "it does not participate in the mobile market and that it does not sell mobile apps on Steam." *Id.* The Court concluded that "Apple is entitled to take discovery to support its arguments in favor of a broad market definition." *Id.* The same is true here: Google seeks discovery from a party regarding a portable device that is more similar to the mobile devices that Epic contends are in the market than the PC-based store that was a proper subject of discovery in *Apple*. As noted, Judge Gonzalez Rogers cited the release of the Steam Deck as "further support" for the Court's conclusion that Epic's allegations that Apple had monopoly power in a market for iOS apps were incorrect. *Epic Games*, 559 F. Supp. 3d at 1032, n. 597. Epic cannot prevent Google from obtaining evidence regarding Steam Deck to show that Epic's Android-only markets are equally wrong.

Second, Epic's refusal to search the custodial files of its CEO, Tim Sweeney, is unfounded as Mr. Sweeney has made public comments indicating that Steam Deck may be a substitute for Android devices. Mr. Sweeney has described Steam Deck as a "handheld PC/console hybrid" and "an open platform where users are free to install software or [*sic*] their choosing - including Windows and other stores." *See* Tim Sweeney, Twitter, https://twitter.com/TimSweeneyEpic/status/1415755678849900546 (last accessed July 1, 2022). A device for "portable PC gaming" where users can install other stores is relevant to whether users have options other than Android. Moreover, the fact that Steam Deck users can install "other stores," including Epic Games Store, makes discovery regarding Steam Deck relevant to Epic's options for distributing a store that it contends competes with Google Play.

Third, Mr. Sweeney has stated that Epic will not distribute *Fortnite* on Steam Deck. *See* Tim Sweeney, Twitter, https://twitter.com/TimSweeneyEpic/status/1490519194915459072 (last accessed July 1, 2022). The reasons behind Epic's refusal to distribute *Fortnite* on Steam Deck may shed light on how even major developers have limited resources to invest in app development. This means that platforms must compete for developers to invest in their platforms and that developers benefit from having an operating system like Android and an app store like Google Play that are available in consistent form across devices. Evidence regarding those facts from Epic's own files are likely to support Google's arguments that it faces intense pressures to compete and that its conduct is a means for engaging in that competition.

Fourth, during the parties' meet and confer, Google asked Epic to confirm that it "is not aware of any documents relevant to Steam Deck other than the five documents cited in Epic's May 4 letter." Epic declined to do so, stating only that "Epic can represent that it is not aware of any documents relating to whether to develop Fortnite for the Steam Deck device." Epic's response strongly suggests that additional relevant documents exist and, notably, Epic did not confirm that it is unaware of documents regarding the Epic Games Store, any of Epic's other mobile games, or the promotion of Fortnite to Steam Deck users.

Google respectfully requests that the Court compel Epic to promptly conduct a reasonable search for and produce documents responsive to RFP Nos. 26-29, 42-43, 50, 64, 75-76, and 86 as they relate to Steam Deck.

MUNGER, TOLLES & OLSON LLP

*In re: Google Play Store Antitrust Litigation*
July 1, 2022

Respectfully submitted,

Dated: July 1, 2022

By: */s/ Kyle W. Mach*_____
    Kyle W. Mach

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Jonathan I. Kravis, pro hac vice
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E Washington, D.C. 20001
Telephone: (202) 220-1100

*Counsel for Defendants Google LLC et al. in In re Google Play Consumer Antitrust Litigation; In re Google Play Developer Antitrust Litigation; Epic Games, Inc. in Epic Games, Inc. v. Google LLC; State of Utah et al. v. Google LLC et al.*

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005

MUNGER, TOLLES & OLSON LLP

*In re: Google Play Store Antitrust Litigation*
July 1, 2022

minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, pro hac vice
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Daniel M. Petrocelli, S.B. #97802
dpetrocelli@omm.com
Stephen J. McIntyre, S.B. #274481
smcintyre@omm.com
**O'MELVENY & MYERS LLP**
1999 Avenue of the Stars Los Angeles,
California 90067
Telephone: (310) 553-6700
Facsimile: (310) 246-6779

Ian Simmons, pro hac vice
isimmons@omm.com
Benjamin G. Bradshaw, S.B. #189925
bbradshaw@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: (202) 383-5300
Facsimile: (202) 383-5414

Neal Kumar Katyal, pro hac vice
neal.katyal@hoganlovells.com
Jessica L. Ellsworth, pro hac vice
jessica.ellsworth@hoganlovells.com
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone: (202) 637-5600

MUNGER, TOLLES & OLSON LLP

*In re: Google Play Store Antitrust Litigation*
July 1, 2022

Facsimile: (202) 637-5910

*Counsel for Defendants*

MUNGER, TOLLES & OLSON LLP

*In re: Google Play Store Antitrust Litigation*
July 1, 2022

### Certificate Pursuant to Local Rule 5-1(h)(3)

I, Kyle Mach, am the ECF User whose credentials are being used to file Defendants' Discovery Letter Brief dated July 1, 2022. In compliance with Local Rule 5-1(h)(3), I hereby attest that counsel for Defendants have concurred in this filing.

Dated: July 1, 2022

By  */s/ Kyle Mach*
      Kyle Mach