Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

[Additional Counsel Appear on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**EPIC GAMES, INC.'S RESPONSE IN OPPOSITION TO GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL** |

Pursuant to Civil Local Rule 79-5(f)(4), Plaintiff Epic Games, Inc. ("Epic") submits this Response in Opposition to Google's Administrative Motion to File Under Seal ("Google Mot.") (ECF No. 352), including the Declaration of Christian Cramer ("Cramer Decl.") (ECF No. 352-1), filed on behalf of Defendants Google LLC et al. (collectively, "Google").[1]  Google seeks to seal portions of Epic's Proposed Second Amended Complaint (ECF No. 344-1) and Epic's and Match's Notice of Motion and Motion to Amend Complaints ("Motion to Amend") (ECF No. 343), as well as supporting declarations and exhibits.

Google asserts that its sealing request is "narrow" and focuses "on four specific, highly sensitive areas . . . of non-public information": "(a) specific deal terms (price and nonprice) of contracts with non-parties, (b) non-public financial information, (c) details of negotiations and negotiation strategies with non-parties, and (d) personally identifiable information".  (Google Mot. 2.)  In reality, Google's proposed redactions are significantly broader and seek to redact material that does not meet the Ninth Circuit's high standard for sealing.

Epic does not oppose Google's effort to seal portions of its contracts,[2] specific financial terms (subject to one exception discussed below),[3] or the personal information of its employees or others.[4]  However, Epic opposes Google's broader redactions that constitute an effort to conceal core evidence of its anticompetitive conduct, and the anticompetitive harm that conduct has caused for millions of Android developers and billions of Android users.  Google has failed to offer the required "compelling reasons" to prevent the public from reading key passages of Epic's Proposed Second Amended Complaint and associated filings.  Subject to the reasonable exceptions discussed below, Google's sealing effort should be denied.

---

[1] All citations are to the MDL docket unless otherwise indicated.

[2] Epic does not oppose sealing Exhibits E, F and G to the Zaken Declaration (ECF Nos. 344-5, 344-6, 344-7), as proposed by Google.  Cramer Decl. ¶¶ 17-22.  Nor does Epic oppose sealing Exhibits C and D to the Zaken Declaration (ECF Nos. 344-3, 344-4) to the extent they reference contract terms Google planned to offer developers.  See Cramer Decl. ¶ ¶ 15-16.

[3] See, e.g., Cramer Decl. ¶¶ 9 and 29 (dollar amounts only).

[4] Epic does not oppose sealing the personally identifiable information the Cramer Declaration states is contained in Exhibits C, E, F and G of the Zaken Declaration (ECF Nos. 344-3, 344-5, 344-6, 344-7).  Cramer Decl. ¶¶ 14, 18, 20, 22.

EPIC GAMES, INC.'S RESPONSE IN OPPOSITION TO GOOGLE'S ADMINISTRATIVE MOTION TO SEAL
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

**DISCUSSION**

The information Google asks to seal is found in Epic's Proposed Second Amended Complaint, its Motion to Amend and related filings. (ECF Nos. 344-1, 343.) To seal such information, Google bears the burden of rebutting the "strong presumption of access to judicial records". *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006). It must present "compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure". *Id.* (citation and quotation marks omitted); *see* Google Mot. 1 (conceding this standard applies). A party's exposure to "embarrassment, incrimination, or . . . further litigation will not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1197. Where, as here, a complaint alleges "violations of the antitrust laws . . . the public interest is particularly strong" and favors disclosure. (Order re Sealing of Complaints 2 (ECF No. 79).)

As noted above, Epic does not oppose Google's request to seal the following information: (1) portions of Google's contracts with third parties; (2) the specific dollar amounts that Google paid developers, except to the extent that Google's redactions are selective and misleading; or (3) the personally identifiable information that Google identified in its sealing papers.

However, Google's proposed redactions are substantially broader and appear designed to shield the substance of Epic's claims from public view. Specifically, Google seeks to seal allegations and evidence at the core of Epic's Proposed Second Amended Complaint regarding Google's anticompetitive "Project Hug". The basic premise of Project Hug is already public. As set forth in Epic's First Amended Complaint ("FAC"), none of which is sealed, Project Hug is Google's plan "to spend hundreds of millions of dollars on secret deals with over 20 top developers that were 'most at risk . . . of attrition from Play', in order to prevent these developers from competing with Google Play". (ECF No. 82 ¶ 128.) The targets of Project Hug were "major mobile app developers, such as Activision Blizzard". (*Id.* ¶ 33.) Project Hug was authorized by top Google executives (*id.* ¶ 128), and it achieved Google's goals. By December 2020, Google had signed deals "with the vast majority of the developers it targeted" (*id.*), and these agreements "allow Google to keep its monopolistic behavior publicly unchallenged" (*id.* ¶ 33). By Google's estimate, Project Hug and a related program would

1  "'mitigate[] risk that top game developers de-prioritize Google Play for title distribution' and secure
2  the 'Play revenue / margin at risk', which was 'up to $6B / $1.1B in 2022'". (*Id.* ¶ 119.)

3        Through its filing, Google improperly seeks to use the sealing process to hide key details of
4  Project Hug. It does so by claiming that its effort to pay off competitors, and the outcome of that
5  effort, are "business information" and "strategic analysis about dealings with certain counterparties".
6  (Google Mot. 3-4.) The material Google would redact is not the type of sensitive business information
7  such as "trade secrets" or "pricing terms" that courts have held may be subject to sealing. *See Tevra*
8  *Brands LLC v. Bayer HealthCare LLC*, 2020 WL 1245352, at *2 (N.D. Cal. Mar. 16, 2020). It is
9  instead core evidence of Google's anticompetitive effort to foreclose competition, and the harm that
10 conduct has caused to Android developers and users who pay higher prices and have no viable
11 alternatives to Google Play. "Where, as here, the material to be sealed goes to the very heart of the
12 suit" and includes "the allegedly anticompetitive practices [the plaintiff] challenges", "the public
13 interest in access is especially great". *Id.* That much of the information Google seeks to seal is already
14 public cuts further against its request. *See, e.g.*, *FTC v. AMG Servs., Inc.*, 2012 WL 3562027, at *2-3
15 (D. Nev. Aug. 15, 2012) (denying effort to seal purported "trade secrets and confidential commercial
16 and business information" when the information was described in a "general way" and largely public).

17       The examples of Google's overreach are numerous. To take just a few:

- Google asks to seal high-level descriptions of the contractual restraints that ensured the success of Project Hug. (ECF No. 344-1 ¶¶ 198, 209.) It claims this text reveals "specific details about the non-public terms of contractual agreements". (Cramer Decl. ¶¶ 32, 38.) But the descriptions do not reveal specific contract terms; they discuss in a generalized manner the form and type of anticompetitive restraints found in Google's many Project Hug agreements. "[E]ssential contractual terms (as opposed to merely ancillary ones), [described] at a reasonably high level of generality", cannot be sealed absent "compelling reasons" that Google has failed to present. *Tevra Brands*, 2020 WL 1245352, at *3.
- Google seeks to seal the number of developers enrolled in Project Hug, and an estimate of the percentage of Google Play revenue attributed to these developers. (ECF No. 344-1 ¶¶ 208, 213.) These facts are not, as Google claims, "internal strategic decision making" that "could

give a competitor or potential business partner unfair leverage in competing against or negotiating with Google". (Cramer Decl. ¶¶ 37, 39.) They are core allegations that show the pervasive extent of Google's conduct and foreclosure of competition.

- Google seeks to seal testimony from a Google executive regarding Google's motivations for Project Hug and the effects of the agreements on competition. (*See* ECF No. 344-9.) It likewise seeks to seal allegations in the Proposed Second Amended Complaint explaining why these agreements achieved Google's goals. (ECF No. 344-1 ¶¶ 199-201.) These facts are central to Epic's claims because they explain why Google entered into the Project Hug agreements, how those agreements reduced competition, and the horizontal nature of those agreements. Google's efforts to pass them off as "strategic decision-making regarding its partnership[s]" (*e.g.*, Cramer Decl. ¶ 30) or "specific terms" of agreements (*id.* ¶¶ 33-35) are insufficient. The allegations do not involve trade secrets or otherwise present compelling reasons outweighing the public policies favoring disclosure.

- Similarly, Google seeks to seal its reasons for targeting a particular developer for Project Hug, and the anticipated effect of the parties' agreement. (ECF No. 344-4.) As above, these are not sealable business strategies, but essential features of Google's anticompetitive conduct.

The public interest in unsealing these materials is heightened by Google's efforts to obscure the underlying facts. On October 9, 2022, after Epic filed its Proposed Second Amended Complaint, Google issued public statements claiming that Project Hug "simply provides incentives for developers to give benefits and early access to Google Play users when they release new or updated content; it does not prevent developers from creating competing app stores".[5] Epic's filings—which rely on Google's own documents and the sworn testimony of its executives—demonstrate that these statements are incomplete and misleading. Google cannot use the sealing process as both a sword and a shield by selectively disclosing its preferred narrative to the press, while seeking to seal contrary facts from the public on the pretense that they constitute sensitive business information.

---

[5] I. Bonifacic, *Epic Games and Match Group Want to Bring Additional Antitrust Allegations Against Google*, Engadget (Oct. 9, 2022, 5:30 p.m.), https://www.engadget.com/epic-games-match-group-google-motion-213036490.html.

1       Google also seeks to seal the names of certain developers it paid through Project Hug (*e.g.*,
2 ECF No. 344-1 ¶¶ 199-201), and an additional developer with whom Google entered into another
3 agreement to prevent competition (*id.* ¶ 202). The fact that one of these developers enlisted in Project
4 Hug is already public. (*See, e.g.*, ECF No. 353 at 3-4.) In any event, "the unspecified interests of a
5 non-party" do not explain why Google itself would suffer harm, particularly where Google "do[es] not
6 indicate [it] notified [the non-parties] and do[es] not explain why [most of the non-parties are] not
7 pursuing this motion". *Aerojet Rocketdyne, Inc. v. Glob. Aerospace, Inc.*, 2019 WL 8273956, at *2
8 (E.D. Cal. July 18, 2019). And Google has not set forth "compelling reasons" for why its own
9 interests would be so greatly harmed by the disclosure of this information that it must be sealed. While
10 Google repeatedly asserts that its "competitors could use this non-party information to unfairly target
11 Google's developer partners" (*e.g.*, Cramer Decl. ¶¶ 24, 26, 28), it fails to present "articulable facts
12 identifying the interests favoring continued secrecy", or explain how any "specific interests
13 overc[ome] the presumption of access by outweighing the public interest in understanding the judicial
14 process". *Kamakana*, 447 F.3d at 1181 (citations and quotation marks omitted).

15       Finally, while Epic is not opposed in principle to sealing the specific amount of money Google
16 paid individual developers through Project Hug, Google appears to be using its redactions to
17 selectively disclose facts that portray its conduct as less serious than Epic alleges. In several places,
18 Google does not seek to seal the size of one of its Project Hug agreements (ECF Nos. 344-1 ¶ 201; 343
19 at 3 (lines 23-24)), but it *does* seek to seal the size of a different agreement (ECF Nos. ¶¶ 199-200; 343
20 at 5 (line 25))—with no explanation for the inconsistency. This gamesmanship shows that in sealing
21 these numbers, Google is not seeking to protect any legitimate interests, but to avoid "embarrassment,
22 incrimination, or . . . further litigation"—which is not a valid basis for sealing. *Kamakana*, 447 F.3d
23 at 1181. If the number Google would disclose is made public, the number Google would keep hidden
24 should be made public as well.

## CONCLUSION

26       For the foregoing reasons, Epic submits that Google's request to seal portions of Epic's
27 Proposed Second Amended Complaint and related filings should be denied.

28

Dated: October 21, 2022

Respectfully submitted,

By:     /s/ *Lauren A. Moskowitz*
        Lauren A. Moskowitz

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*