UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF KARMA M. GIULIANELLI IN SUPPORT OF RULE 37 SANCTIONS**<br><br>Judge: Hon. James Donato |

I, Karma M. Giulianelli, declare as follows:

1. I am an attorney duly admitted to practice in the State of Colorado and before this Court. I am a partner at Bartlit Beck LLP and am co-lead counsel for the consumer class in this action. I submit this declaration in response to the Court's minute order, MDL Dkt. 415, requesting responses to the Court's questions to be submitted under oath. This declaration responds to two of the Court's questions: Question 3 "When did this issue first come up in this case and how?" and Question 5 "Did Google plainly advise plaintiffs' counsel or the Court that it was choosing an approach to the preservation of Google Chats that could lead to the loss of potentially relevant evidence if an individual employee decided not to preserve a relevant chat?"

2. The contents of this declaration are based on my personal knowledge. If called as a witness, I could and would competently testify to the facts set out herein.

3. On October 1 and 2, 2020, Google filed joint case management statements with Consumers and Epic on their respective dockets. In these statements, Google informed the Court that it has "reviewed the Court's Guidelines and Checklist regarding the Discovery of Electronically Stored Information ('ESI') and confirms that, at the appropriate time, it will meet and confer with plaintiffs in all Related Cases to address reasonable and proportionate steps, including developing a joint ESI protocol, to preserve evidence relevant to the issues reasonably evident in this action. Further, Google represents that it has taken appropriate steps to preserve evidence relevant to the issues reasonably evident in this action." Attached hereto as **Exhibit 1** is a true and correct copy of the case management from the Consumer action, and attached hereto as **Exhibit 2** is a true and correct copy of the case management statement from the Epic action.

4. On October 13, 2020, Google's counsel sent Consumer, Developer and Epic Plaintiffs a draft Stipulated Order re: Discovery of Electronically Stored Information. Google's draft identified "instant messaging and chat application data" as "[a]mong the sources of data the parties agree are not reasonably accessible, the parties agree not to preserve, search, or collect." Attached hereto as **Exhibit 3** is a true and correct copy of that email and attached draft stipulated order. Plaintiffs notified Google that this provision was unacceptable, and Google agreed to strike it. At no time during those discussions, in which I personally participated, did

1  Google notify Plaintiffs that there was a "default" setting that would automatically delete such
2  data every 24 hours for individuals subject to the litigation hold, including during the pendency
3  of this litigation.

4        5.     On November 10, 2020, the Court entered the Order re Discovery of
5  Electronically Stored Information, No. 3:20-cv-05761-JD, Dkt. 72. Paragraph 4(a) identifies
6  certain sources of data that "will be preserved pursuant to normal business retention, but not
7  searched, reviewed, or produced, except for good cause shown." Google Chat or other instant
8  messaging systems are not listed among those sources in paragraph 4(a). To the contrary, the
9  order contemplates the production of instant messages, and specifically "Google Chat" messages,
10 and sets forth guidelines for the production of instant messages in paragraph 20 of Appendix 1:
11 "To the extent instant messages (e.g., Slack, Jabber, Google Chat) or text messages (e.g., SMS,
12 iMessage) are produced for any custodian, a party shall take reasonable steps to produce such
13 messages in a manner that preserves the context of the communication…"

14       6.     Based on my exchanges with Google's counsel and the Court's order, I
15 understood that Google was preserving, searching, and collecting chat communications.

16       7.     By April 2021, Google had produced approximately 147,000 documents
17 in this MDL, but Plaintiffs noticed there were no text messages or chats in Google's productions.
18 On April 22, 2021, plaintiffs wrote to counsel for Google that: "Plaintiffs are growing
19 increasingly worried that, to date, Plaintiffs have seen no Instant Messages, in Google's
20 productions." Plaintiffs requested that Google confirm it is "collecting and will be producing
21 such documents, as is required under the ESI order." In this letter and in subsequent letters I
22 describe below, Plaintiffs focused their complaints on Google's collection and production of
23 Chats, rather than on Google's preservation of Chats, because Plaintiffs were led to believe that
24 Google had been preserving all potentially relevant Chats, consistent with the ESI Order. A true
25 and correct copy of that letter was attached as Exhibit 18 to Lee M. Mason's Declaration in
26 Support of Plaintiffs' Rule 37 Motion, MDL Dkt. 349-1, and is reattached here as **Exhibit 4**.

27       8.     On April 30, 2021, Google responded to Plaintiffs' April 22 letter, writing:
28 "Google confirms that it is collecting and will produce existing, responsive instant messages and

1  text messages." In its response, Google did not disclose that the universe of "existing" chats was subject to ongoing daily deletion. Attached hereto as **Exhibit 5** is a true and correct copy of that letter.

9.  On May 22, 2021, Plaintiffs wrote to counsel for Google: "Please also confirm when you expect to begin producing instant messages and text messages, as set forth in your April 30 letter." Attached hereto as **Exhibit 6** is a true and correct copy of that letter.

10. On July 6, 2021, Plaintiffs wrote to counsel for Google, noting that, even though the date for substantial completion of document discovery had passed, Google had "yet to produce any Instant Messages (including Slack, Jabber, Google Chat, SMS or iMessage) and text messages" and requested that Google "promptly produce them." Attached hereto as **Exhibit 7** is a true and correct copy of that letter.

11. Google did not respond to Plaintiffs' inquiries regarding instant messages, including Google Chats. On July 13, 2021, Plaintiffs wrote to counsel for Google, noting that Google still had not confirmed that it would be collecting and producing "existing, responsive instant messages" as represented in its April 30, 2021 letter. Plaintiffs then "reiterated our repeated requests that Google produce all text messages and instant messages … that are responsive to Plaintiffs' requests for production." The letter further requested that Google answer "a) Whether Google has already produced any of these messages, and, if so, please identify a representative group of them by Bates number; b) Whether there are instant and text messages that Google intends to produce in the future, and, if so, when Google will make that production; and c) Whether Google refrained from collecting or otherwise withheld text and instant messages from any custodians and the reasons for Google doing so." Attached hereto as **Exhibit 8** is a true and correct copy of that letter.

12. On July 14, 2021, counsel for Google responded, representing that it had "produced responsive, non-privileged chat files from the agreed upon custodians." Google identified 4 produced chats as examples and advised plaintiffs how to identify additional chat files. Attached hereto as **Exhibit 9** is a true and correct copy of that letter.

13.     On a July 21, 2021 meet-and-confer call in which I participated, counsel for Google told plaintiffs it had collected and produced all responsive chats, and it had no further chats to produce. Google said it would respond further in writing.

14.     On July 30, 2021, because Google had not yet responded in writing, plaintiffs requested by email that Google prepare to provide an update on text and instant messages in an August 3, 2021 meet-and-confer.

15.     On August 2, 2021, plaintiffs wrote to counsel for Google explaining that, using Google's guidance to identify Chats, "Plaintiffs have been able to identify fewer than 900 possible instant message files." The letter identified emails sent and received by Google custodians in which they explicitly referenced specific chats in which they had participated, and asked Google to "identify the Bates numbers of the instant messages described in the documents referenced above, or explain why Google has not produced them." Plaintiffs further asked Google to "explain how Google collected instant messages from its custodians; provide a full list of the custodians whose instant messages Google searched and produced; and identify the instant messaging software(s) from which Google produced instant messages (e.g., Google Chat, Google Hangouts, WhatsApp, Slack, Jabber, Microsoft Teams), as well as any instant messaging software(s) used by Google employees to discuss work-related matters from whom Google did not produce instant messages." Plaintiffs' letter also noted:

> It also appears that Google employees are more open in discussing 'sensitive' topics over instant message than over email, a fact that underscores Google's obligation to adequately produce instant message files. *See* GOOG-PLAY-000475242 (instant message in which a Google employee ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

Attached hereto as **Exhibit 10** is a true and correct copy of that letter.

16.     On an August 3, 2021 meet and confer, Google stated that chats were subject to legal hold and that its chat production was complete. I did not participate in this meet and confer, but I received detailed, contemporaneously taken notes of the meet and confer from my co-counsel as soon as the meet and confer ended. Google agreed to respond by letter with more detail.

17. On August 13, 2021, counsel for Google wrote: "As previously explained on meet and confer calls, without disclosing information protected by the attorney-client privilege and/or attorney work product doctrine, we can confirm that chats are subject to the litigation hold and that Google has collected and produced relevant chats for custodians that are responsive to Plaintiffs' discovery requests." Google "disagreed" that there were any deficiencies in the production, and wrote:

> Like many companies, Google's chats are not retained in the normal course of business. Chats are kept by default for only 24 hours in the usual course of business. To the extent a custodian was using chats before these lawsuits were filed, Google had no obligation to preserve those chats. Thus, we do not expect that we would have records of 'pings' discussed in emails that were dated prior to this lawsuit, as identified in your August 2 letter.

A true and correct copy of that letter was attached as Exhibit 19 to Lee M. Mason's Declaration in Support of Plaintiffs' Rule 37 Motion, MDL Dkt. 349-1, and is reattached here as **Exhibit 11**.

18. I understood from these statements that Google had ceased any automatic deletion of Google Chats once this litigation was commenced.

19. On August 30, 2021, Plaintiffs wrote to counsel for Google requesting an update on Google's instant messaging investigation at an upcoming meet-and-confer scheduled for August 31. Plaintiffs further requested:

> To the extent that Google claims that there are no relevant, additional instant messages or texts to produce, Plaintiffs request that Google provide, in writing, details regarding the steps taken to identify relevant materials, including but not limited to: the non-custodial databases searched, the custodians whose texts and instant messages were searched, the relevant time period applied to those searches, and the search terms applied.

Attached hereto as **Exhibit 12** is a true and correct copy of that letter.

20. On October 6, 2021, Plaintiffs wrote to Google again:

> We understand Google's explanation as to why so few messages were produced—despite widespread custodial use of various messaging platforms over the years in the ordinary course—is that Google's corporate policy is to automatically delete instant messages within twenty-four (24) hours. We also understand that Google's corporate policy was then suspended pursuant to counsel's issuance of a preservation letter in connection with this litigation.

Plaintiffs requested that Google confirm that understanding and "promptly provide an 'instant message' refresh production for all custodians in this litigation covering the period between August 14, 2020 and March 31, 2021." Attached hereto as **Exhibit 13** is a true and correct copy of that letter.

21. On October 18, 2021, counsel for Google responded to Plaintiffs' October 6 letter:

> With respect to your characterizations of Google's retention policy, we disagree. As Google has consistently represented, Google issued a hold notice in connection with this litigation that requires custodians to preserve all relevant instant messages. We have no reason to believe that Google's production of relevant instant messages for all agreed-upon custodians for the agreed-upon time periods is in any way deficient and, thus, this should put an end to this discovery-on-discovery discussion.

While Google represented that its custodians were preserving "all relevant instant messages," it did not notify us that its default setting was "history off" for those custodians (so that Chats were being deleted every 24 hours) or that the vast majority of custodians had no recollection of turning "history on" at any point during the litigation hold period. Attached hereto as **Exhibit 14** is a true and correct copy of that letter.

22. On an October 21, 2021 meet and confer in which I participated, Plaintiffs again raised the small number of chats in the production. Google responded that chats had a 24-hour retention policy and that it had issued a litigation hold notice in connection with litigation.

23. It was not until that October 21, 2021 meet and confer that Google disclosed for the first time that Google had continued to automatically delete off-the-record chats every 24 hours. In response, Plaintiffs raised concerns about the destruction policy and preservation, to which Google responded that custodians can turn on a setting to save messages. Plaintiffs asked if Google had verified whether custodians in fact took appropriate measures to preserve Chats, to which Google responded that they had "no reason to believe" custodians had not enabled that setting. Plaintiffs requested that Google respond further in writing.

24. On October 29, 2021, Plaintiffs wrote to Google, requesting that Google promptly provide more information about its preservation of Google Chats. Plaintiffs further

1  noted that "[a]s discussed during our October 21, 2021 meet and confer, Google did not disclose
2  that it has a 24-hour purge policy for instant messages when the parties initially negotiated the
3  collection periods for Google custodians." Attached hereto as **Exhibit 15** is a true and correct
4  copy of that letter.

5       25.   On November 11, 2021, counsel for Google responded, asserting that
6  "Plaintiffs have made no showing that Google's production of instant messages and chats is
7  incomplete or deficient aside from baseless assumptions." Google also asserted that "its
8  productions of responsive chats and instant messages are comprehensive." Google further
9  responded:

> iii. With respect to the technological processes required to be taken by individuals to preserve chats or instant messages following their receipt of litigation holds, Google responds that the technological settings on Google's chat retention policy (see Exhibit A) did not change, as ==Google does not have the ability to change default settings for individual custodians with respect to the chat history setting.== See Exhibit B, Google Workspace Admin Help page re: chat history. Specifically:
>
> 1. Google's default settings for chat history for the entire organization is set to off;
> 2. ==Google employees need to apply the "history on" setting on a chat-by-chat basis;== and
> 3. Settings for chat history are set by each individual custodian.

18  (Emphasis added.) I understood these statements to mean that Google lacked the ability to change
19  the default setting to "history on." A true and correct copy of that letter was attached as Exhibit
20  1 to Lee M. Mason's Declaration in Support of Plaintiffs' Rule 37 Motion, MDL Dkt. 349-1, and
21  is reattached here as **Exhibit 16**.

22       26.   On November 29, 2021, Plaintiffs wrote to Google: "Google's letter of
23  November 11, 2021 perpetuates serious concerns with Google's productions to date with respect
24  to instant messages." Plaintiffs requested follow-up information from Google on the details of
25  its Chat retention policy and technical administrators who "can control whether to keep chat
26  history for users in your organization." Attached hereto as **Exhibit 17** is a true and correct copy
27  of that letter.

28       27.   Google did not respond to the November 29, 2021 letter.

GIULIANELLI DECLARATION IN SUPPORT OF RULE 37 SANCTIONS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD
8

28. On December 3, 2021, plaintiffs wrote to Google following the December 2, 2021 deposition of Tian Lim, a Vice President of User Experience and Product Management for Google Play, and the first witness deposed in the case. Among other things, Plaintiffs wrote: "Mr. Lim testified that he does not recall *ever* having turned on the Chat history function despite also acknowledging that he discussed business matters in various chats." Plaintiffs requested additional information from Google and noted that "absent a fulsome response," "Plaintiffs intend to raise this issue with the Court in our forthcoming Joint Case Management Statement." Attached hereto as **Exhibit 18** is a true and correct copy of that letter.

29. In the December 9, 2021, Joint Case Management Statement, MDL Dkt. 159, Google represented to the Court: "Google agrees that relevant instant message or chat communications are subject to preservation, and Google in fact took reasonable steps to preserve such messages." *Id.* at 11. Google also represented: "The custodian-facing aspects of the process included both written and oral preservation instructions to potential custodians, preservation reminders, all available preservation methods via its legal hold tool, and active management by legal counsel at every step of the process." *Id.* at 10. Attached hereto as **Exhibit 19** is a true and correct copy of that statement.

30. At the December 16, 2021 case management conference, the Court indicated that Plaintiffs should serve on Google certain questions plaintiffs posed in the case management statement as interrogatories.

31. On December 17, 2021, following the case management conference, the Court entered an order allowing the parties to serve preservation interrogatories. MDL Dkt. 167.

32. On December 20, 2021, plaintiffs served their Document Preservation Interrogatories on Google.

33. On January 14, 2022, Google Served its sworn Responses and Objections to Plaintiffs' Document Preservation Interrogatories. A true and correct copy of Google's interrogatory responses was attached as Exhibit 2 to Lee M. Mason's Declaration in Support of Plaintiffs' Rule 37 Motion, MDL Dkt. 349-1, and is reattached here as **Exhibit 20**.

34. Among other things, Google responded in its interrogatory responses that ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ Ex. 20 at 11, 14, Ex. C. Google also responded that it "████████████████████████████████████ ████████████████████████████████████████." Ex. 20 at 16.

35. On February 7 and 17, 2022, the parties met and conferred regarding Google's responses to the Preservation Interrogatories.

36. After receiving Google's responses, Plaintiffs questioned multiple Google witnesses on their use and preservation of Google Chats. For example, on February 3, 2022, James Kolotouros testified that ████████████████████████████████████████████████ ██████████." MDL Dkt. 258-8. On February 10, 2022, Jamie Rosenberg testified ██████ ████████████████████████████████████████████████████████████████ ██████████. MDL Dkt. 258-6. On March 23, 2022, Ashish Pimplapure testified ██████ ████████████████████████████. MDL Dkt. 258- 9.

37. On May 6, 2022, Plaintiffs informed counsel for Google by email that they "would like to meet and confer pursuant to Civil Local Rule 37-4" regarding "Google's destruction of Google instant messages." Attached hereto as **Exhibit 21** is a true and correct excerpted copy of that email.

38. Following a hearing on May 12, 2022, during which Plaintiffs informed the Court of their intent to file a motion concerning Google's destruction of instant messages, and in particular, its failure to turn off an auto-delete mechanism on an instant messaging platform that their employees use for business communications, the Court directed the parties to file a joint statement by May 27, 2022. MDL Dkt. 230.

39. On May 27, 2022, the parties submitted their Joint Statement Regarding Google's Preservation of Instant Messages. MDL Dkt. 258. In that statement, Google represented that "Google has taken reasonable steps to preserve relevant documents by issuing legal holds (and subsequent reminders) to relevant custodians and preserved relevant documents within Google's document storage systems." *Id.* at 9.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 24th day of January, 2023 at Denver, Colorado.

*/s/ Karma. M. Giulianelli*