1   Brian C. Rocca, S.B. #221576
    brian.rocca@morganlewis.com
2   Sujal J. Shah, S.B. #215230
    sujal.shah@morganlewis.com
3   Michelle Park Chiu, S.B. #248421
    michelle.chiu@morganlewis.com
4   Minna Lo Naranjo, S.B. #259005
    minna.naranjo@morganlewis.com
5   Rishi P. Satia, S.B. #301958
    rishi.satia@morganlewis.com
6   **MORGAN, LEWIS & BOCKIUS LLP**
    One Market, Spear Street Tower
7   San Francisco, CA 94105
    Telephone: (415) 442-1000
8
    Richard S. Taffet, *pro hac vice*
9   richard.taffet@morganlewis.com
    **MORGAN, LEWIS & BOCKIUS LLP**
10  101 Park Avenue
    New York, NY 10178
11  Telephone: (212) 309-6000

12  *Counsel for Defendants Google LLC et al.*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Nicholas R. Sidney, S.B. #308080
nick.sidney@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Kyle W. Mach, S.B. #282090
kyle.mach@mto.com
Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Emily C. Curran-Huberty, S.B. #293065
emily.curran-huberty@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

13
    Jonathan I. Kravis, *pro hac vice*
14  jonathan.kravis@mto.com
    **MUNGER, TOLLES & OLSON LLP**
    601 Massachusetts Avenue NW, Suite 500E
15  Washington, D.C. 20001
    Telephone: (202) 220-1100

16

17              **UNITED STATES DISTRICT COURT**

18            **NORTHERN DISTRICT OF CALIFORNIA,**

19                 **SAN FRANCISCO DIVISION**

20  **IN RE GOOGLE PLAY STORE**            Case No. 3:21-md-02981-JD
    **ANTITRUST LITIGATION**
21
                                           **DEFENDANTS' BRIEF IN**
22  This Document Relates To:              **RESPONSE TO THE COURT'S**
                                           **QUESTIONS REGARDING**
23  *Epic Games Inc. v. Google LLC et al.*, Case No.  **PRESERVATION OF CHAT**
    3:20-cv-05671-JD                       **MESSAGES**
24
    *In re Google Play Consumer Antitrust*
25  *Litigation*, Case No. 3:20-cv-05761-JD
                                           Judge:     Hon. James Donato
26  *State of Utah et al. v. Google LLC et al.*, Case
    No. 3:21-cv-05227-JD
27
    *Match Group, LLC et al. v. Google LLC et al.*,
28  Case No. 3:22-cv-02746-JD

# TABLE OF CONTENTS

Page

I.   GOOGLE'S RESPONSES TO THE COURT'S QUESTIONS REGARDING CHAT PRESERVATION ...................................................................................1

II.  POTENTIAL REMEDIES ....................................................................................3

    A.   Any Remedy Must Be Tailored to Curing the Prejudice Shown by Plaintiffs ..........4

    B.   Any Prejudice Plaintiffs May Prove Would Be Limited.............................................5

    C.   Google Has Identified Three Remedies That The Court Could Consider to Address Any Prejudice Shown By Plaintiffs .................................................................8

    D.   THE COURT SHOULD NOT ORDER AN ADVERSE INFERENCE INSTRUCTION ..........................................................................................................10

         1.   An Adverse Inference Instruction Is Not Available as a Matter of Law Because Google Did Not Intend to Deprive Plaintiffs of Evidence .............................................................................................10

         2.   An Adverse Inference Would Be Disproportionate to any Prejudice that Plaintiffs May Prove..........................................................................11

    E.   GOOGLE SHOULD NOT BE PROHIBITED FROM ASSERTING A DEFENSE BASED ON PLAINTIFFS' LACK OF EVIDENCE ..........................12

         1.   Such a Remedy Would Be Equivalent to a Terminating Sanction or Adverse Presumption by the Court, Which Are Unavailable Here.............12

         2.   Such a Remedy Would Be Disproportionate to Any Prejudice Plaintiffs May Prove and Would Jeopardize Google's Due Process Rights .....................................................................................................13

    F.   PRESENTING EVIDENCE ON PRESERVATION TO THE JURY RISKS DISTRACTING THE JURY FROM THE MERITS..............................................14

-i-

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

4   **FEDERAL CASES**

5   *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*,
6      881 F.2d 1396 (7th Cir. 1989) ................................................................8

7   *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*,
   69 F.3d 337 (9th Cir. 1995).................................................................14

8   *Borum v. Brentwood Vill., LLC*,
9      332 F.R.D. 38 (D.D.C. 2019) ...............................................................8

10  *Brown v. Albertsons, LLC*,
   No. 2:16–cv–01991–JAD–PAL, 2017 WL 1957571 (D. Nev. May 11, 2017) ..........................4
11

12  *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
   482 F.3d 1091 (9th Cir. 2007)..........................................................5, 15

13  *Edwards v. Junior State of Am. Found.*,
14     No. 4:19-CV-140-SDJ, 2021 WL 1600282 (E.D. Tex. Apr. 23, 2021) ....................10

15  *Gen. Ins. Co. of Am. v. E. Consol. Utils., Inc.*,
   126 F.3d 215 (3d Cir. 1997)...............................................................14
16

17  *Goonewardena v. N.Y. Workers Comp. Bd.*,
   258 F. Supp. 3d 326 (S.D.N.Y. 2017), aff'd 788 F. App'x 779 (2d Cir. 2019) ..................14

18  *Hynix Semiconductor Inc. v. Rambus Inc.*,
19     897 F. Supp. 2d 939 (N.D. Cal. 2012) ...................................................7

20  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*,
   456 U.S. 694 (1982) .......................................................................14
21

22  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   341 F.R.D. 474 (S.D.N.Y. 2022)..................................................6, 7, 10, 11

23  *Kologik Cap., LLC v. In Force Tech., LLC*,
24     No. CV-18-11168-GAO, 2020 WL 1169403 (D. Mass. Mar. 11, 2020)...................9

25  *Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006)..............................................................14
26

27  *Matthew Enter., Inc. v. Chrysler Grp. LLC*,
   No. 13-cv-04236-BLF, 2016 WL 2957133 (N.D. Cal. May 23, 2016) ...................4, 7

28

*Pitts v. HP Pelzer Auto. Sys., Inc.*,
 331 F.R.D. 688 (S.D. Ga. 2019)................................................................9

*Rhoda v. Rhoda*,
 No. 14 Civ. 6740 (CM), 2017 WL 4712419 (S.D.N.Y. Oct. 3, 2017).........................6

*Serra Chevrolet, Inc. v. Gen. Motors Corp.*,
 446 F.3d 1137 (11th Cir. 2006)..............................................................14

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
 328 F.R.D. 100 (S.D.N.Y. 2018)................................................................9

*Troyer v. Liberty Mut. Ins. Co.*,
 No. 2:19-cv-01056-APG-DJA, 2021 WL 4978430 (D. Nev. Oct. 25, 2021) .............5

*United States v. Microsoft Corp.*,
 253 F.3d 34 (D.C. Cir. 2001) ..................................................................8

*Wanderer v. Johnston*,
 910 F.2d 652 (9th Cir. 1990)..................................................................5

*Youngevity Int'l v. Smith*,
 No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687 (S.D. Cal. July 28, 2020) .............15

**FEDERAL RULES**

Fed. R. Civ. P. 26(f) .........................................................................3

Fed. R. Civ. P. 37 ..................................................................... passim

Fed. R. Civ. P. 37(e)........................................................................12

Fed. R. Civ. P. 37(e)(1).................................................................4, 8

Fed. R. Civ. P. 37(e)(2).............................................................4, 10, 12

Fed. R. Civ. P. 37(e)(2)(A)................................................................13

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

Google submits this brief to address the questions posed by the Court following the January 12, 2023, hearing. Civil Minutes, MDL ECF No. 415 (Jan. 13, 2022). Section I of this brief summarizes Google's answers to the first five questions raised by the Court regarding the preservation of Google Chat messages ("chats"). Next, Section II addresses the Court's final question regarding appropriate remedies and the potential remedies discussed by the Court at the January 12 hearing.

I. **GOOGLE'S RESPONSES TO THE COURT'S QUESTIONS REGARDING CHAT PRESERVATION**

Google has filed concurrently with this brief written declarations that respond to the Court's first five questions regarding chat preservation. Civil Minutes, MDL ECF No. 415 (Jan. 13, 2022). To assist the Court, Google summarizes its responses below.

- *How many recipients of the litigation hold notice in this case personally elected to turn the history to "on" for any of their Google Chats?*

- *On what dates did the hold notice recipients do so?*

- *If they later turned the chat history back to "off," when did they do that?*

This question is answered in the attached Declarations of Devin Chen and Duy Ho. In brief: over 90 percent (355 out of 383) of the employees on legal hold in this case have, since receiving the legal hold notice, participated in chats where history was turned on by one of the chat participants. Google does not maintain log data to determine, for any meaningful time period, when any specific legal hold recipient toggled history on or off for a chat conversation. *See* Declaration of Devin Chen ("Chen Decl.") at ¶ 4. To assist the Court in understanding this issue, Google has provided data for each employee subject to the legal hold in this case regarding the Google Chats that were preserved on account of one of the chat participants individually turning history "on" for a specific conversation, starting from the date of the initial legal hold notice to the present. Specifically, Exhibit A to the Declaration of Duy Ho shows in Column A the number of one-to-one or group chats—that is, those chats that allow an individual user to enable history "on"—that were preserved for each employee on legal hold. *See* Declaration of Duy Ho ("Ho Decl.") at ¶ 4, Ex. A. In that same table in Exhibit A, Column D shows for each employee on legal

hold the number of preserved chats within threaded rooms/spaces (chats that are always history "on" by product design with no ability for employees to turn history "off"). *See id.* at ¶ 4, Ex. A.

- ***In any case filed in the United States in the past five years, did Google preserve all Google Chats for relevant individuals (with Google turning the history to "on" for all of those individuals' Google Chats, rather than leaving the preservation decision to the discretion of each individual employee)?***

This question is answered in the attached Declaration of Gregory Johnson. In brief: No. For at least the last five years, Google has maintained a consistent approach to preserving chats for legal hold recipients in all matters. *See* Declaration of Gregory Johnson ("Johnson Decl.") at ¶¶ 7-9. Specifically, Google preserves (a) automatically (with no user action required) the chat threads within threaded rooms/spaces in which an employee on legal hold participates, and (b) any one-on-one or group chats in which any participant turned history on. *See id.*, at ¶ 8. For these one-on-one or group chats, Google distributed a legal hold notice and a later reminder that instructed recipients *not to use* Google Chat to discuss topics listed in the hold notice, and if necessary to turn history "on" if the recipient does use chats to discuss such topics. *See id.*, at ¶¶ 4-6; *see also* 1/12/23 Hr'g Tr. at 43:13-20; DXCH-2 at 2, MDL ECF No. 423-2 (directing employees to turn history "on" "[w]hen you are discussing a topic identified in any legal hold notice").

- ***When did this issue first come up in this case and how?***

This question is answered in the attached Declaration of Brian Rocca. In brief: The parties first addressed the issue of chat preservation during meet-and-confer discussions in mid-October 2020, as one component of their overall negotiations over the proposed stipulated ESI order. *See* Declaration of Brian Rocca ("Rocca Decl.) at ¶¶ 3-5. The issue did not arise again until Plaintiffs sent Google a letter on April 22, 2021, regarding the status of Google's production of chats.

- ***Did Google take "appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action" as it represented to the Court in a case management statement on October 1, 2020? See Case No. 20-5761, ECF No. 45 at 11.***

This question is answered in the attached Declarations of Brian Rocca and Gregory Johnson. In brief: Yes. At the time of the parties' joint submission on October 1, 2020, Google believed (and continues to believe) that it had taken "appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action." ECF No. 45 at 11. As of October 1, 2020,

before the parties held their Rule 26(f) conference, Google had taken multiple steps to preserve potentially relevant information. For example, Google had (1) implemented a back-end legal hold that indefinitely preserved all available emails, history "on" chats, slide decks, and any other documents in Google Drive for employees subject to the legal hold, and (2) distributed a legal hold notice, and a subsequent reminder, that included instructions not to use Google Chat to discuss topics listed in the hold notice and, if the employee nonetheless needed to use Google Chat to discuss such topics, to turn history "on" for these discussions. *See* Rocca Decl. at ¶¶ 8-9; Johnson Decl. at ¶¶ 4-6. Further details about why Google believes it had taken appropriate steps are set forth in the Rocca and Johnson Declarations. *See* Rocca Decl. at ¶¶ 6-11; Johnson Decl. at ¶¶ 3-6.

- ***Did Google plainly advise plaintiffs' counsel or the Court that it was choosing an approach to the preservation of Google Chats that could lead to the loss of potentially relevant evidence if an individual employee decided not to preserve a relevant chat?***

This question is answered in the attached Declaration of Brian Rocca. In brief: Google informed Plaintiffs on October 21, 2021, that it had not suspended the 24-hour retention policy for history "off" chats. *See* Rocca Decl. at ¶¶ 12-13.

## II.   POTENTIAL REMEDIES

The Court instructed the parties to respond to the following question:

**"If the Court concludes that Google did not meet its preservation obligations, what is the appropriate remedy?"**

Civil Minutes at 2, MDL ECF No. 415. And the Court advised the parties that any "proposed remedies must be specific and proportionate." *Id.*

If the Court concludes that Google did not meet its preservation obligations with respect to chats, any remedy must be no greater than necessary to cure any prejudice to Plaintiffs arising from the loss of such chats. *See* Section II.A. As discussed in Section II.B, the prejudice here, if any, is limited to the period after Epic filed the first Complaint in this action in August 2020, limited to certain custodians, and limited by the scope and magnitude of other discovery taken in this action.

1   Google has identified potential remedies that may be tailored to curing any prejudice that

2   Plaintiffs may prove. *See* Section II.C. By contrast, remedies that would effectively foreclose

3   Google from presenting a defense or that would be tantamount to an adverse inference or

4   terminating sanction are unwarranted under Rule 37 and inconsistent with due process. Drastic

5   remedies of this kind are not available under Rule 37 because even if Plaintiffs could show that

6   Google's efforts to preserve chats were inadequate, they cannot demonstrate that Google acted

7   with the intent to deprive them of evidence.

8   Although Google has identified specific and tailored remedies in response to the Court's

9   question, Google maintains that Plaintiffs' motion should be denied for the reasons described in

10   Google's opposition brief, MDL ECF No. 367, this submission and the declarations filed

11   concurrently, and in Google's forthcoming argument at the January 31, 2023 hearing.

12   **A.**   **Any Remedy Must Be Tailored to Curing the Prejudice Shown by Plaintiffs**

13   The Court noted that any proposed remedy must be "proportionate." Civil Minutes at 2,

14   MDL ECF No. 415. That is consistent with Rule 37, which authorizes courts to "order measures

15   *no greater than necessary* to cure the prejudice" for the loss of evidence caused by negligent or

16   grossly negligent conduct. *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-cv-04236-BLF,

17   2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) (quoting Fed. R. Civ. P. 37(e)(1)) (emphasis

18   added). Absent prejudice, no remedy is warranted for such loss, Fed. R. Civ. P. 37(e)(1), and

19   "authority to order measures no greater than necessary to cure prejudice does not require the court

20   to adopt measures to cure every possible prejudicial effect." Fed. R. Civ. P. 37 advisory

21   committee's note to 2015 amendment.

22   Even where a party acted with an "intent to deprive" another party of evidence, the

23   "remedy should fit the wrong," and the Court should not employ drastic sanctions, such as an

24   adverse inference instruction, when "lesser measures . . . would be sufficient to redress the loss."

25   Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment; Fed. R. Civ. P. 37(e)(2).

26   Moreover, "due process requires a relationship between the sanctioned party's misconduct

27   and the matters in controversy such that spoliation threatens to interfere with the rightful decision

28   of the case." *Brown v. Albertsons, LLC*, No. 2:16–cv–01991–JAD–PAL, 2017 WL 1957571, at *8

-4-

(D. Nev. May 11, 2017). Consequently, "the Ninth Circuit has found that the element of prejudice is essential, and sanctions [that] threaten or interfere with the litigants' claim or defenses violate due process when they are imposed 'merely for punishment of an infraction that does not threaten to interfere with the rightful decision of the case.'" *Troyer v. Liberty Mut. Ins. Co.*, No. 2:19-cv-01056-APG-DJA, 2021 WL 4978430, at *6 (D. Nev. Oct. 25, 2021) (alteration in original) (quoting *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)). The Ninth Circuit has also consistently expressed that "public policy favor[s] disposition of cases on their merits" rather than through sanctions. *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007).

## B.   Any Prejudice Plaintiffs May Prove Would Be Limited

Even if the Court were to conclude that Google did not take adequate steps to preserve chats, Plaintiffs have not suffered material prejudice from the loss of such chats.

*First*, any finding of prejudice must be confined to the time period following the filing of Epic's Complaint on August 13, 2020. Plaintiffs did not argue in their motion that Google had any duty to preserve chats prior to the filing of Epic's Complaint or that Google improperly destroyed any chats sent prior to the date of Google's September 2020 legal hold notice.

The limited period of time at issue in this motion limits the degree of any prejudice. The core conduct at issue in this case is based on business or product design decisions that predate the filing of Epic's Complaint—in many cases by more than a decade. For example, the Android security warnings, distribution agreements with device manufacturers, and agreements with developers Plaintiffs have challenged were instituted a decade or more before Epic filed its Complaint.

*Second*, any finding of prejudice must be confined to the 21 custodians for which the parties agreed to conduct limited post-Complaint discovery. Reflecting that blanket discovery into Google's post-Complaint activities was disproportionate to the needs of the case, the parties negotiated discovery cut-off dates for each custodian. For only 21 of the total 44 custodians, the

parties agreed that Google would search for documents dated *after* August 13, 2020.[1] *See* Rocca Decl. at ¶ 11. With respect to the remaining 23 custodians, the cut-off date was on or before August 13, 2020, and these custodians' chats could thus not have been preserved even if Google had taken additional steps to do so. *See id.* Therefore, Plaintiffs cannot identify any prejudice as to these 23 custodians.

**Third,** Plaintiffs could be only minimally prejudiced with respect to the 21 post-Complaint custodians. Google collected and produced over 1.2 million pages of documents—including emails and history "on" chats—from these custodians for the post-Complaint time period alone. *See* Ho Decl. at ¶ 5. And all post-Complaint custodians have chats that Google has preserved. *See id.* at ¶ 5, Ex. B.

To identify any potential gaps in this documentary record, Plaintiffs had the opportunity to depose many of these 21 custodians for up to 10 hours each, *after* Google had disclosed its chat retention practices to Plaintiffs. Despite knowing before taking any depositions in this case that non-threaded chats required the user to toggle history "on," Plaintiffs inquired into the chat preservation practices of only seven of the 21 custodians at their depositions. Of these seven, none testified that they regularly used chats to discuss the issues in this case and failed to preserve them. Plaintiffs have not deposed or did not ask the remaining 14 post-Complaint custodians about their use of chats or whether chats regarding particular issues were lost, strongly suggesting that any loss of these custodians' chats has not prejudiced Plaintiffs. *See generally In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 341 F.R.D. 474, 508-20 (S.D.N.Y. 2022) (hereinafter "*Keurig*") (evaluating spoliation on custodian-by-custodian basis and noting that failure to ask certain deponents about preservation suggested a lack of prejudice); *Rhoda v. Rhoda*, No. 14 Civ. 6740 (CM), 2017 WL 4712419, at *4 (S.D.N.Y. Oct. 3, 2017) (finding no prejudice from lost documents where the moving party failed to ask the custodian "any questions concerning the deleted emails at her deposition").

---

[1] The parties further agreed to limit discovery from most of these 21 custodians to documents on particular topics and during specific date ranges that vary by custodian. *See* Ho Decl. at ¶ 7; Rocca Decl. at ¶ 11, Ex. 18. Thus, any remedy must be similarly limited to chats sent or received by these 21 custodians during the narrow time period relevant to each custodian.

1       *Fourth*, Plaintiffs' demonstrated ability to prosecute this case with voluminous other

2   discovery further limits any finding of prejudice. Google has produced 13 terabytes of data and

3   more than *3 million* documents in this litigation, including its agreements with third parties,

4   documents memorializing its business decisions, and its internal competitive analyses. And if

5   Plaintiffs are right that Android's design or Google's business decisions are anticompetitive, the

6   evidence will be found in those millions of documents or in documents from third parties or other

7   sources regarding the *effects* of Google's conduct. Indeed, Plaintiffs have never explained how

8   post-Complaint chats from one of the 21 at-issue custodians are necessary to illuminate any

9   Google business decision or event that voluminous other documents on the same issue have not

10  explained. There is no basis to find prejudice in those circumstances. *See, e.g.*, *Matthew Enter.,*

11  *Inc.*, 2016 WL 2957133, at *4 (failure to "come forward with plausible, concrete suggestions"

12  about the contents of the allegedly spoliated evidence demonstrated lack of prejudice) (quoting

13  *Hynix Semiconductor Inc. v. Rambus Inc.*, 897 F. Supp. 2d 939, 981 (N.D. Cal. 2012) (emphasis

14  omitted)).

15      To the contrary, the history of this litigation confirms that Plaintiffs have not been

16  prejudiced. Plaintiffs submitted 2,500 pages of expert reports citing approximately 2,000 produced

17  documents covering every critical issue in the case, conducted 325 hours of depositions of 39 fact

18  witnesses, introduced 1,100 exhibits at depositions, filed a motion for class certification, and filed

19  motions for preliminary injunctive relief. *See, e.g.*, Consumer Plaintiffs' Motion for Class

20  Certification, MDL ECF No. 251 (May 26, 2022); Epic's Motion for Preliminary Injunction, MDL

21  ECF No. 213 (Apr. 28, 2022); *see generally Keurig*, 341 F.R.D. at 508 (noting that volume of

22  other discovery to prosecute plaintiffs' antitrust claims indicated lower degree of prejudice); Fed.

23  R. Civ. P. 37, advisory committee's note to 2015 amendment (indicating that prejudice may be

24  reduced if "the abundance of preserved information may appear sufficient to meet the needs of all

25  parties").

26      Plaintiffs may speculate that post-Complaint chats are useful in demonstrating the "intent"

27  behind Google's business decisions years or even a decade ago. But Plaintiffs have not explained

28  why contemporaneous chats post-dating Epic's Complaint would contain unique insights

regarding such "intent." Nor has any custodian testified to discussing such issues in a chat that was not preserved. In any event, in an antitrust case, the "focus is upon the effect of that conduct, not upon the intent behind it. Evidence of the intent behind the conduct of a monopolist is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct." *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001).[2] Plaintiffs do not claim that they lack sufficient evidence to analyze the effects of Google's conduct.

### C.   Google Has Identified Three Remedies That The Court Could Consider to Address Any Prejudice Shown By Plaintiffs

In order to be "calibrated in terms of their effect on the particular case," Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment, any sanctions must reflect that any prejudice would be limited to chats exchanged by a subset of custodians after Epic's Complaint was filed. Google therefore outlines some potential remedies that may be "no greater than necessary to cure" any limited prejudice that Plaintiffs may prove. Fed. R. Civ. P. 37(e)(1). These remedies range in severity—with Remedy 3 considered a "serious measure[]"—and each must be tailored to ensure that they "do not have the effect of measures that are permitted . . . only on a finding of intent to deprive." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

**Remedy 1. An award of reasonable fees and costs incurred in connection with Plaintiffs' motion.** If the Court finds that Google should have provided Plaintiffs more details regarding its chat preservation practices earlier in the litigation but that Google's conduct did not cause any material prejudice to Plaintiffs' ability to litigate their claims, an award of reasonable fees and costs incurred in connection with Plaintiffs' sanctions motion would cure any prejudice caused by the timing of Google's disclosures and Plaintiffs' efforts to bring this motion. *See, e.g.*, *Borum v. Brentwood Vill., LLC*, 332 F.R.D. 38, 49 (D.D.C. 2019) (awarding fees and costs

---

[2] "Intent does not help to separate competition from attempted monopolization and invites juries to penalize hard competition. It also complicates litigation. Lawyers rummage through business records seeking to discover tidbits that will sound impressive (or aggressive) when read to a jury. Traipsing through the warehouses of business in search of misleading evidence both increases the costs of litigation and reduces the accuracy of decisions. Stripping intent away brings the real economic questions to the fore at the same time as it streamlines antitrust litigation." *A.A. Poultry Farms, Inc. v. Rose Acre Farms, Inc.*, 881 F.2d 1396, 1402 (7th Cir. 1989) (Easterbrook, J.).

because the prejudice to the moving party "primarily consists of the additional time and efforts it incurred"); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, 328 F.R.D. 100, 123 (S.D.N.Y. 2018) (awarding only fees and costs because moving party was not "significantly prejudiced" given production of other similar documents).

**Remedy 2: An order requiring Google to search for and produce chats from additional custodians.** If Plaintiffs establish that they have been prejudiced by the loss of chats post-dating Epic's Complaint, then the Court could order a limited reopening of discovery into chats from additional custodians. *See, e.g.*, *Kologik Cap., LLC v. In Force Tech., LLC*, No. CV 18-11168-GAO, 2020 WL 1169403, at *3 (D. Mass. Mar. 11, 2020) (ordering additional discovery directed at replacing lost ESI); *Pitts v. HP Pelzer Auto. Sys., Inc.*, 331 F.R.D. 688, 700 (S.D. Ga. 2019) (finding that reopening discovery addressed prejudice).

As noted above, the parties agreed to conduct post-Complaint discovery for 21 out of 44 Google custodians. None of the seven custodians that Plaintiffs deposed on this topic testified to sending substantive chats regarding the issues in this case that were not preserved. In fact, Google instructed its hold notice recipients *not* to use Google Chat for such purposes or, if necessary, to preserve any such chats by turning history on. *See* 1/12/23 Hr'g Tr. at 43:13-20; Johnson Decl. at ¶ 6. But, even assuming that some of the 21 custodians did not follow this instruction, the Court could supplement Plaintiffs' access to chats from other custodians. Google has preserved post-Complaint "history on" chats for the remaining approximately 20 custodians employed at the time of the Complaint, as well as for the hundreds of other employees who received hold notices. *See* Ho Decl., Ex. A. Although additional custodians may not perfectly replace any chats that may not have been retained, supplemental productions from these additional custodians could reduce any incompleteness in the record regarding Google's conduct during the relevant time period. Any such order should be limited to a reasonable number of additional custodians and tailored to relevant topics that arose after Epic's initial Complaint. *See* Ho Decl. at ¶ 7; Rocca Decl. at ¶ 11.

**Remedy 3: An order prohibiting Google from introducing as trial exhibits any chats sent or received by the 21 at-issue custodians after the date of Google's legal hold notice.** If Plaintiffs establish that they have been prejudiced by an evidentiary gap in chats sent or received

by the 21 at-issue custodians after September 11, 2020, the Court could level the field by ordering that Google is prohibited from introducing as trial exhibits any produced chats from these 21 custodians dated after September 11, 2020. *See, e.g.*, *Edwards v. Junior State of Am. Found.*, No. 4:19-CV-140-SDJ, 2021 WL 1600282, at *10 (E.D. Tex. Apr. 23, 2021) (prohibiting "Plaintiffs from offering any evidence of the alleged [Facebook] Messages effectively cures the prejudice"). Precluding Google from introducing evidence is a "serious measure" because it risks distorting the record on the merits. Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. This remedy could be tailored to any finding that Plaintiffs have been prejudiced by selective preservation of chats most likely to be helpful to Google while chats critical of Google have been lost. If Google cannot offer the retained chats into evidence, any prejudice caused by a selective chat record would be substantially cured.

### D. THE COURT SHOULD NOT ORDER AN ADVERSE INFERENCE INSTRUCTION

#### 1. An Adverse Inference Instruction Is Not Available as a Matter of Law Because Google Did Not Intend to Deprive Plaintiffs of Evidence

Under Rule 37, the Court must not order an adverse inference instruction unless it finds that Google "acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2). Negligence—even "gross negligence"—does not meet this standard. Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment; *see, e.g.*, *Keurig*, 341 F.R.D. at 521. That is because imposing an adverse inference for negligence can unfairly distort the outcome of a trial on grounds unrelated to the merits: "Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment.

*Keurig* demonstrates that Google did not act to intentionally deprive Plaintiffs of evidence. The defendant in that antitrust MDL proceeding failed to conduct timely custodial interviews and "sloppily implemented [its] litigation hold by not following up with certain of its custodians sooner to make sure that net was capturing what was required." *Keurig*, 341 F.R.D. at 521. The court held that this conduct was negligent but not intentional because "[u]nlike cases in which

courts have found intent where a party did not issue a litigation hold at all, [the defendant] cast a wide net in timely issuing litigation holds to over 700 custodians." *Id.*

Here, Google did substantially more than the defendant in *Keurig*. Google has placed 383 employees on legal hold. *See* Johnson Decl. at ¶ 4. After sending initial hold notices, Google sent updates to the original hold notice and several reminders. *See id.* at ¶¶ 4-5. The hold notices included "two specific instructions related to chats." 1/12/23 Hr'g Tr. at 43:13-20 (Lopez). First, hold recipients were "asked not to use the [chat] product to discuss any topics that are related to their legal hold." *Id.* Second, hold recipients were instructed that "if they do find themselves in a conversation that strays into a topic related to the legal hold" they should "turn history on at that point to make sure that those messages are properly preserved." *Id.* Regardless of whether the Court concludes that these instructions were sufficient to "captur[e] what was required" or whether Google erred by "not following up," Google's conduct does not meet the intent-to-deprive standard. *Keurig*, 341 F.R.D. at 521.

### 2. An Adverse Inference Would Be Disproportionate to any Prejudice that Plaintiffs May Prove

Even if the Court were to find that Google acted with the intent to deprive Plaintiffs of relevant chats, the drastic remedy of an adverse inference instruction would be unwarranted. Even where a party has acted with an "intent to deprive," the "remedy should fit the wrong," and the Court should not employ drastic sanctions when "lesser measures . . . would be sufficient to redress the loss." Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment. An adverse inference would not fit any wrong here given Plaintiffs' access to voluminous alternative evidence and the sufficiency of less severe sanctions.

Indeed, in *Keurig*, the Court rejected an adverse inference from the loss of documents on hard drives where the defendants, like Google, sent legal holds to hundreds of employees and produced millions of documents from emails and shared drives belonging to key employees. *Keurig*, 341 F.R.D. at 508, 529. Although some evidence indicated that the lost drives in that case may have contained unique documents, the Court found that a "narrow range of prejudice 'weigh[s] against imposing the harsh sanctions that [Plaintiffs] seek.'" *Id.* at 529.

### E.   GOOGLE SHOULD NOT BE PROHIBITED FROM ASSERTING A DEFENSE BASED ON PLAINTIFFS' LACK OF EVIDENCE

At the evidentiary hearing on January 12, 2023, the Court identified as one potential remedy an order limiting Google's ability to argue that Plaintiffs lack evidence on certain issues. *See* 1/12/23 Hr'g Tr. at 135:14-21. Google respectfully submits that the Court should not issue such a drastic "preclusion" sanction for several reasons.

*First*, in the circumstances of this case, this preclusion sanction would approximate an adverse inference or terminating sanction with respect to the issues to which the order applies. Those sanctions—and any sanctions having a similar effect—are not available here as a matter of law. *Second*, a preclusion sanction would be disproportionate to Google's conduct (and any potential prejudice to Plaintiffs). *Third*, a preclusion sanction would impair Google's due process rights to a fair trial because it does not bear a sufficient relationship to the alleged misconduct.

#### 1.   Such a Remedy Would Be Equivalent to a Terminating Sanction or Adverse Presumption by the Court, Which Are Unavailable Here

As noted, the most drastic sanctions under Rule 37(e)—an adverse inference, an adverse inference jury instruction, or terminating sanctions—are reserved for circumstances in which a party acted with an "intent to deprive." Fed. R. Civ. P. 37(e)(2). A court also may not impose sanctions that have the *same effect* as these drastic sanctions without finding the requisite "intent to deprive." *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment (emphasis added) ("Care must be taken, however, to ensure that curative measures under subdivision (e)(1) do not have the effect of measures that are permitted under subdivision (e)(2) only on a finding of intent to deprive another party of the lost information's use in the litigation.").

Depending on the particular issues to which it applies, an order preventing Google from arguing that Plaintiffs have not proven an element of their claim could be tantamount to a terminating sanction or default judgment. *See* Fed. R. Civ. P. 37 advisory committee's note to 2015 amendment ("An example of an inappropriate (e)(1) measure might be an order . . . precluding a party from offering any evidence in support of, the central or only claim or defense in the case."). For example, if Plaintiffs argue that certain conduct was anticompetitive, Google would not be permitted to argue that there is no evidence of anticompetitive effects. Similarly, if

Plaintiffs argue that Google entered into an anticompetitive agreement with a third party, Google would not be able to show that there is, in fact, no evidence of such an agreement. And during closing, Google would be unable to show the jury the instructions that will inform their deliberation and point out that there is insufficient evidence on certain elements of Plaintiffs' claims. In effect, Google could be prevented from litigating particular issues on the merits.

An order preventing Google from stating that Plaintiffs lack evidence on an issue is also similar in effect to an adverse inference by the Court. Specifically, such an order presumes that, even though there is currently an absence of evidence in support of Plaintiffs' position on a particular issue, evidence that was not preserved would have supported Plaintiffs' position on that issue. *Cf.* Fed. R. Civ. P. 37(e)(2)(A) (sanction of "presum[ing] that the lost information was unfavorable to the party" is available only where the party "acted with the intent to deprive"). Because Google did not act with the intent to deprive Plaintiffs of relevant evidence, a sanction with the same effect as an adverse inference is not available as a matter of law.

### 2. Such a Remedy Would Be Disproportionate to Any Prejudice Plaintiffs May Prove and Would Jeopardize Google's Due Process Rights

Preventing Google from arguing that Plaintiffs lack evidence on a particular issue would be disproportionate and jeopardize Google's due process right to defend itself because it would prevent Google from making arguments unaffected by any failure to preserve chats.

As discussed above, the vast majority of the conduct at issue in this case began long before Plaintiffs filed suit and Google timely issued a hold notice. *See* Section II.B. In other words, the conduct spans a time period unaffected by any loss of post-Complaint chats. Google has produced millions of pages of documents from that pre-Complaint time period regarding myriad issues in the case, in addition to terabytes of transactional data. Similarly, a central focus of this antitrust case is on whether Google's conduct had anticompetitive *effects* on the market, including with respect to its competitors, customers, and consumers. Plaintiffs have sought discovery from more than 40 third parties, and have produced documents from their own files.

No loss of chats would affect whether this extensive record of pre-Complaint conduct and documents regarding effects on third parties contained evidence supporting Plaintiffs' claims on

any issue. Thus, preventing Google from arguing that Plaintiffs lack evidence on issues involving

conduct that was in place for years before any allegedly lost chats were created would prevent

Google from making arguments unaffected by any failure to preserve chats. It would leave

Plaintiffs better off than if Google had produced more post-Complaint chats. *See Goonewardena

v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 348 (S.D.N.Y. 2017), *aff'd* 788 F. App'x 779

(2d Cir. 2019) (finding that the "extreme sanctions" of preclusion or adverse inference are not

warranted in light of "very little, if any, prejudice from the spoliation").

Indeed, limiting Google's ability to defend itself at trial as to matters unrelated to any

failure to preserve chats would raise significant due process concerns. *See, e.g.*, *Anheuser-Busch,

Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (noting that due process requires

"a relationship between the sanctioned party's misconduct and the matters in controversy such that

the transgression threatens to interfere with the rightful decision of the case" (citations and

alterations omitted)); *Serra Chevrolet, Inc. v. Gen. Motors Corp.*, 446 F.3d 1137, 1152 (11th Cir.

2006) (finding that discovery sanction violated due process where it was not "specifically related

to the particular 'claim' which was at issue" in the discovery) (quoting *Ins. Corp. of Ireland v.

Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707 (1982)); *Gen. Ins. Co. of Am. v. E. Consol.

Utils., Inc.*, 126 F.3d 215, 220 (3d Cir. 1997).

**F.    PRESENTING EVIDENCE ON PRESERVATION TO THE JURY RISKS
DISTRACTING THE JURY FROM THE MERITS**

At the evidentiary hearing on January 12, 2023, the Court suggested that it may be

appropriate for Plaintiffs to examine witnesses at trial regarding Google's chat preservation. *See

1/12/23 Hr'g Tr. at 135:9-13. Although a jury presentation alone could be a less severe remedy

than an adverse inference instruction or order precluding Google from making certain arguments,

Google respectfully submits that a jury presentation is not sufficiently tailored to any prejudice

Plaintiffs may prove and that injecting this issue into the trial could impede rather than advance

"the rightful decision of the case," *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006), by

distracting the jury from the significant and complex antitrust issues presented.

-14-

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

As the Court is well aware, tens of millions of devices in the U.S. use Android and the Google Play store facilitates the distribution of millions of free apps to these users. Plaintiffs' claims, which seek to fundamentally restructure Google's business model for Android and the Google Play store, should be decided on the merits of Google's conduct, rather than by distracting the jury with the potential loss of internal chats from a small number of custodians during a narrow time period that is not central to Plaintiffs' claims. *See Connecticut Gen. Life Ins. Co.*, 482 F.3d at 1096. This poses a significant risk of creating a "trial-within-a-trial" on preservation that will waste the jury's valuable time and distract from the merits of Google's conduct and its effect on consumers.

Nevertheless, if Plaintiffs establish that they have been prejudiced by a gap in the record and if the Court decides to remedy any such prejudice by permitting witnesses to be examined on this issue, Google respectfully requests that the Court limit that presentation as follows.

First, any questioning of a witness on this issue should be confined to the post-Complaint time period, to conduct that occurred in that time period, and to conduct in which the witness was involved and can testify.

Second, any such presentation should be limited, perhaps to a small number of witnesses from the 21 post-Complaint custodians.

Third, Google should be permitted to introduce evidence of its preservation practices and the circumstances of this case to explain why it did not act with the intent to destroy unhelpful documents and that the jury should not infer that any such documents would have been helpful to Plaintiffs.[3] *See, e.g.*, *Youngevity Int'l v. Smith*, No. 3:16-cv-704-BTM-JLB, 2020 WL 7048687, at *5 (S.D. Cal. July 28, 2020) (ordering that "the parties are allowed to present evidence and argument to the jury regarding the lost text messages and Relevant Defendants' intent, and the Court will instruct the jury it may consider the evidence along with all the other evidence in making its decision."). This way, both sides may make their case to the jury on any spoliation issue and the jury may decide what weight, if any, it should have on its deliberations.

---

[3] Google suggests that the specific language of any such neutral instruction be deferred until trial when the Court can evaluate the evidentiary record before the jury.

1    DATED: January 24, 2023                    Respectfully submitted,

2

3                                                By:      /s/ *Glenn D. Pomerantz*
                                                        Glenn D. Pomerantz
4

5                                                        Glenn D. Pomerantz, S.B. #112503
                                                         glenn.pomerantz@mto.com
6                                                        Kuruvilla Olasa, S.B. #281509
                                                         kuruvilla.olasa@mto.com
7                                                        Nicholas R. Sidney, S.B. #308080
                                                         nick.sidney@mto.com
8                                                        **MUNGER, TOLLES & OLSON LLP**
9                                                        350 South Grand Avenue, Fiftieth Floor
                                                         Los Angeles, California 90071
10                                                       Telephone: (213) 683-9100

11                                                       Kyle W. Mach, S.B. #282090
                                                         kyle.mach@mto.com
12                                                       Justin P. Raphael, S.B. #292380
                                                         justin.raphael@mto.com
13                                                       Emily C. Curran-Huberty, S.B. #293065
                                                         emily.curran-huberty@mto.com
14                                                       Dane P. Shikman, S.B. #313656
                                                         dane.shikman@mto.com
15                                                       **MUNGER TOLLES & OLSON LLP**
16                                                       560 Mission St., Suite 2700
                                                         San Francisco, CA 94105
17                                                       Telephone: (415) 512-4000
                                                         Facsimile: (415) 512-4077
18

19                                                       Jonathan I. Kravis, *pro hac vice*
                                                         jonathan.kravis@mto.com
20                                                       **MUNGER, TOLLES & OLSON LLP**
                                                         601 Massachusetts Avenue NW, Suite 500E
21                                                       Washington, D.C. 20001
                                                         Telephone: (202) 220-1100
22

23

24

25

26

27

28

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brian C. Rocca, S.B #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B #248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, S.B #259005
minna.naranjo@morganlewis.com
Rishi P. Satia, S.B #301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000
Facsimile: (415) 422-1001

Richard S. Taffet, *pro hac vice*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

*Counsel for Defendants Google LLC et al.*

DEFENDANTS' BRIEF IN RESPONSE TO COURT'S QUESTIONS RE PRESERVATION OF CHATS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## E-FILING ATTESTATION

I, Dane P. Shikman, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that all signatories hereto, and to the attached declarations, have concurred in this filing.

*/s/ Dane P. Shikman*
Dane P. Shikman