# EXHIBIT 2

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
Katherine B. Forrest (*pro hac vice*)
kforrest@cravath.com
Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice pending*)
lmoskowitz@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Attorneys for Plaintiff Epic Games, Inc.*

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
Sujal J. Shah, Bar No. 215230
sujal.shah@morganlewis.com
Michelle Park Chiu, Bar No. 248421
michelle.chiu@morganlewis.com
Minna Lo Naranjo, Bar No. 259005
minna.naranjo@morganlewis.com
Rishi P. Satia, Bar No. 301958
rishi.satia@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

Richard S. Taffet, *pro hac vice pending*
richard.taffet@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
101 Park Avenue
New York, NY 10178-0060
Telephone: (212) 309-6000
Facsimile: (212) 309-6001

Willard K. Tom, *pro hac vice pending*
willard.tom@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004-2541
Telephone: (202) 739-3000
Facsimile: (202) 739-3001

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIC GAMES, INC.,<br><br>                              Plaintiff,<br><br>        v.<br><br>GOOGLE LLC et al.,<br><br>                              Defendants. | Case No. 3:20-cv-05671-JD<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date: October 8, 2020<br>Time: 10:00 a.m.<br>Courtroom: 11, 19th Floor (via Zoom)<br>Judge: Hon. James Donato |

In response to the Court's docket Order dated September 18, 2020 (ECF 50), Epic Games, Inc. ("Epic") and Google LLC; Google Ireland Limited; Google Commerce Ltd.; Google Asia Pacific Pte. Ltd.; and Google Payment Corp. (collectively "Google", and together with Epic, the "Parties"), have met and conferred and hereby submit this Joint Case Management Statement.

**Epic's Preliminary Statement.**  The Court's Order of September 18, 2020 (the "Order") directed the Parties to prepare "[a] joint case management statement", a document governed by Section 3 of the Standing Order for Civil Cases Before Judge James Donato (the "Standing Order") and the Standing Order for All Judges of the Northern District of California: Contents of Joint Case Management Statement.  Epic has sought to do so.  Google, however, refuses to engage on many of the requirements of such joint case management statement ("JCMS"), arguing that the Order does not convene a Case Management Conference pursuant to the Standing Order.  Epic disagrees with Google's reading of the Order and, regardless of the nature of the upcoming conference, believes the Parties should provide the Court with all the information called for in a JCMS, so as to advance the case rather than delay it.  Epic, for its part, has attempted to provide its position on the topics called for in a JCMS, even where Google refused (improperly, in Epic's view) to provide its position on these topics.  Epic has done so separately because it believes this Action is materially different from *Carr v. Google LLC et al.*, Case No. 20-cv- 05761-JD (filed August 15, 2020), and *Pure Sweat Basketball, Inc. v. Google LLC et al.*, Case No. 20-cv-05792-JD (filed August 17, 2020) (the "Related Actions"), a view shared also by Plaintiffs in the Related Actions who acknowledged that there are "profound differences with the *Epic* complaint".  *See Pure Sweat Basketball Inc., et al. v. Google LLC, et. al.*, Case No. 20-cv-005792, Dkt. No. 44 at 3.

**Google's Preliminary Statement**.  The Court has "related" three separate actions under Local Rule 3-12—namely, the *Epic*, *Carr* and *Pure Sweat Basketball* ("*PSB*") cases (together for purposes of Google's Statements herein, "the Related Cases").  Google's

understanding is that the Court ordered a status conference principally to discuss consolidation of the Related Cases for pretrial and trial purposes.  Google proposed that all parties in the Related Cases should submit a single case management statement addressing the matter of potential consolidation.  Google and the *Carr* (putative consumer class) and *PSB* (putative developer class) plaintiffs agreed to such an approach.  Epic, however, declined to participate in a combined statement.  Epic also apparently takes the position, contrary to Google's understanding, that the Court has set an initial case management conference for October 8, 2020, thus triggering various events under the federal and local rules.  Google believes that the Court's determination of whether and how the Related Cases should be coordinated is a threshold issue.  For example, if the Court determines that discovery should be coordinated, then ***all*** of the parties in the Related Cases—not just Epic and Google—should meet and confer, at the appropriate time, about a proposed discovery schedule and potential coordination order.  Google respectfully proposes that, consistent with common local practice, the most efficient sequence of case events is for the Court to first address threshold matters of relation, coordination and consolidation, and then consider Google's initial pleadings challenges, to be followed by the initial Case Management Conference set at a later date.

## I.   JURISDICTION AND SERVICE

The Parties agree that this Court has subject-matter jurisdiction over this case pursuant to the Clayton Antitrust Act, 15 U.S.C. § 26, and 28 U.S.C. §§ 1331 and 1337.  The Parties further agree that the Court has supplemental and diversity jurisdiction over Epic's state law claims pursuant to 28 U.S.C. §§ 1367 and 1332.  There are no issues pending regarding personal jurisdiction or venue, and no parties remain to be served.

## II.   FACTS

**EPIC'S STATEMENT**:  Google has a monopoly in the Merchant Market for Mobile Operating Systems,[1] which is the market comprising mobile operating systems that original equipment manufacturers ("OEMs") can license for installation on smart mobile devices they manufacture, such as mobile phones and cellular-enabled tablets.  In practice, Google's Android operating system ("Android") is the only licensable option for OEMs.

Google uses its monopoly in the Merchant Market for Mobile Operating Systems to unlawfully maintain monopolies and restrain trade in two related aftermarkets:  (i) the Android App Distribution Market, which is the market for the distribution of mobile applications ("apps") to users of Android smart mobile devices, and (ii) the Android In-App Payment Processing Market, which is the market for the processing of payments for the purchase of digital content that is consumed within Android apps.

Google has a monopoly in the Android App Distribution Market through the Google Play Store, which is Google's app store.  More than 90% of app downloads through app stores on Android mobile devices go through the Google Play Store, and Google has taken a variety of steps to restrict and discourage app downloads outside of app stores.  Google's anti-competitive acts that maintain this monopoly include:  (1) conditioning OEMs' licensing of the Google Play Store, as well as other essential Google services, on OEMs' agreement to place the Google Play Store on the home screen of their devices; (2) interfering with OEMs' ability to distribute apps directly to consumers through pre-installation on the devices they make; (3) preventing competing app distributors from providing Android users ready access to competing app stores; (4) conditioning app developers' ability to effectively advertise their apps to Android users on using the Google Play Store to distribute their apps; and (5) restricting the manner in which consumers can discover, download, and install mobile apps and app stores.

---

[1]   Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Complaint. (Dkt. 1.)

With respect to the Android In-App Payment Processing Market, Google conditions app developers' access to the Google Play Store on their agreement to use Google Play Billing—Google's in-app payment processing tool—to process in-app purchases of digital content. App developers thus are coerced into using Google Play Billing if they wish to reach Android users through the Google Play Store; this constitutes an anti-competitive tie.

The effect of Google's conduct is to foreclose competing app distributors and payment processors—like Epic—from the relevant markets. On August 13, 2020, Epic stood up to Google by providing users with a choice of payment processors on Epic's popular *Fortnite* app. In retaliation against Epic for introducing competition to Google Play Billing, and in furtherance of Google's anti-competitive scheme, Google removed *Fortnite* from the Google Play Store. As a result, Epic suffered—and continues to suffer—irreparable harm to its reputation, goodwill, and competitive standing. Each day that Epic remains off the Google Play Store causes Epic unquantifiable harm because Google's other restraints ensure that downloading apps outside an app store is threatening and technically challenging to most users, which prevents Epic from effectively distributing *Fortnite* to many Android users. Epic promptly filed its Complaint for Injunctive Relief (the "Complaint") on August 13, 2020.

Epic anticipates that the following factual issues, among others, will be disputed: (a) whether the Android App Distribution Market and the Android In-App Payment Processing Market constitute valid antitrust markets; (b) whether Google has engaged in the aforementioned conduct in those markets; and (c) the effects of Google's conduct on competing app distributors and payment processors, developers, and users.

**GOOGLE'S STATEMENT**: For over a decade, Google has devoted substantial resources to developing the Android operating system ("OS") based on the principle of openness, while ensuring trust, safety, and reliability. Android is technologically open. This means OEMs can customize the OS to run on an extraordinary range of devices with highly differentiated software, features, and user interfaces. Google licenses Android OS to OEMs such as Samsung, LG, and Motorola free of charge. Because Android is an open platform, it allows for incredibly

broad customization. As a result, OEMs, starting with zero-cost software, are freed up to develop innovative Android devices for users at varying price points.

Consistent with the principle of openness, Google also created Google Play—a non-exclusive app store where developers can make their Android apps available to users. Google offers a license to Google Play, along with other popular Google apps, to OEMs. There is no requirement to license this suite of apps. However, nearly all Android OEMs choose to do so  because it gives their users "out-of-the-box" functionality to directly compete with Apple's iPhone, which runs on iOS—the main competitive mobile OS to Android. Google's significant investment in Android and Google Play, coupled with its commitment to an open ecosystem, have helped to dramatically increase innovation, consumer choice, and output in the mobile device and software industries.

In contrast to iPhone users who must download apps through Apple's App Store, Android users have many options for where to get apps.  Besides Google Play, they can download apps directly from app developers via websites; through alternative app stores, such as the Samsung Galaxy Store, that OEMs preload on a device, or download directly onto a device, such as Amazon Appstore for Android or SlideME.

App developers are free to choose whether or not to charge for apps distributed through Google Play. The overwhelming majority of apps are distributed to users on Google Play for free.  For those apps distributed through Google Play for a fee, developers process the payment of those app purchases and in-app purchases through Google Play's billing system. Beyond mere payment processing, this allows Google Play to offer important services including easy-to-understand purchase information, centralized customer support, spending and budgeting controls, parental controls, parental or family member approval for app and in-app purchases, centralized management for all Google Play subscriptions, protection from subscription fraud, and reminders about free trials and recurring charges, among others.  It also allows Google Play to offer valuable services to developers including, but not limited to, connecting developers to a global consumer base that trusts the platform because of Google Play's security investments,

1    access to a payment platform that supports a wide variety of payment options, and app

2    development and optimization tools..  Google Play's billing system also helps ensure that Google

3    is able to recapture its significant investment in Google Play and the broader Android ecosystem.

4            Google's conduct is procompetitive and it denies any allegation that its conduct

5    violates antitrust or unfair competition laws or harms competition in any relevant market.

6            Fortnite is a popular video game distributed by Epic to users of Microsoft Xbox,

7    Sony PlayStation, Nintendo Switch, PCs, laptops, and Macs and, previously, iOS devices.  Epic

8    launched Fortnite on Android devices in August 2018, but initially did not distribute Fortnite

9    through Google Play.  Rather, Fortnite was only available by direct download and within 21 days

10   of the launch, over 15 million users downloaded Fortnite on their Android devices.[2]  For more

11   than 1-1/2 years, Epic distributed Fortnite to tens of millions of Android devices *entirely outside*

12   of Google Play.

13           In April 2020, Epic began offering Fortnite through Google Play. Then, on

14   August 13, 2020, Epic willfully violated Google Play's policies as part of an orchestrated public

15   relations strategy. For game developers who choose to sell their apps through the Play Store,

16   Google has published long-standing policies that are fair to developers and keep the store safe

17   for users. As a result of Epic's calculated breach of those policies, Google removed the non-

18   compliant version of Fortnite from Google Play consistent with how Google treats apps found to

19   be in violation of its policies.

20           Today, Fortnite remains easily accessible and available to Android users through

21   direct download from Epic's own website[3], and through other app stores, including the Samsung

22   Galaxy Store (which comes preloaded on the most widely used Android devices). And Epic is

23   able, if it so chooses, to distribute a compliant version of Fortnite on Google Play while it

24   litigates this case.

25

26   [2] https://arstechnica.com/gaming/2018/09/fortnite-reaches-15-million-android-downloads-without-google-play/

27   [3] https://www.epicgames.com/fortnite/en-US/mobile/android/get-started

28

### III.   PRINCIPAL LEGAL ISSUES DISPUTED BY THE PARTIES

**EPIC'S STATEMENT**: At this time, Epic anticipates that the following issues will be disputed:

- Whether Google's conduct in the Android App Distribution Market violates Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  (*See* Compl. at Counts 1, 2, 3 and 6 ¶¶ 135-157, 174-183.)

- Whether Google's conduct in the Android In-App Payment Processing Market violates Sections 1 or 2 of the Sherman Act, 15 U.S.C. §§ 1.  (*See* Compl. at Counts 4 and 5 ¶¶ 158-165.)

- Whether Google has monopoly power in either of the aforementioned markets.

- Whether Google has unlawfully retaliated against Epic.

- Whether Google's conduct as alleged in the Complaint violates California's Cartwright Act, Cal. Bus. & Prof. Code § 16700 *et seq.*, and Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  (*See* Compl. at Counts 7-11 ¶¶ 184-238.)

**GOOGLE'S STATEMENT**:  At this time, Google believes the Related Cases raise the following primary substantive legal issues:

- Whether the practices alleged in the complaints have led to the acquisition or maintenance of an unlawful monopoly in any relevant antitrust market(s).

- Whether the practices alleged in the complaints constitute an unreasonable restraint of trade in any relevant antitrust market(s).

- Whether the practices alleged in the complaints violate any state unfair competition law(s).

- Whether Epic breached the Google Play Developer Distribution Agreement (DDA) and/or violated any applicable policies.

IV.   **MOTIONS**

There are no pending motions.  Case relatedness motions are addressed below in Section X (Related Cases).  With respect to Google's stated intent to move to dismiss this Action and the Related Actions, the Parties positions are as follows.

**EPIC'S STATEMENT**:  Epic believes that any motion by Google to dismiss this Action should be limited to this Action only.[4]  As noted above and further discussed below, the Related Actions raise issues that are distinct from some of the issues raised in this Action, especially because Epic, as a would-be competitor of Google in the app distribution and payment processing markets at issue in the Complaint, is differently situated than the Plaintiffs in the Related Actions.  Moreover, the schedule for any motion practice may not be the same in this Action and in the Related Action; for example, another relatedness motion has been filed in this case (Dkt. No. 53), which (as Google and Plaintiffs in the Related Actions acknowledge) will likely require determination of lead plaintiffs and the likely designation of an operative consolidated complaint for the putative developer class action—meaning that motion practice with respect to the developer class action may be delayed.  Epic respectfully requests the ordinary rules apply to any motion to dismiss this Action to ensure it is not prejudiced.  Epic submits this would not create inefficiency or duplication of efforts, as the outcome of any expeditious motion to dismiss this Action would at the very least inform Google and Plaintiffs in the Related Actions as to the relative strength of their positions.

In the alternative only, should the Court order the Parties to proceed with a single omnibus motion,  Epic respectfully requests that the Court direct Google to file a motion not exceeding 35 pages, and then allow Epic and Plaintiffs in the Related Actions, upon receiving Google's Motion, to confer with Google and approach the Court with an agreed-to proposal or

---

[4] Contrary to the assertions in the JCMS filed in the Related Actions, Epic did not agree to coordination of motions to dismiss in this Action and the Related Actions "to the fullest extent reasonably possible", and did not agree to the schedule or page numbers or allocations presented there and below.  *See Pure Sweat Basketball Inc., et al. v. Google LLC, et. al.*, Case No. 20-cv-005792, Dkt. No. 44 at 2.

with competing proposals on the number and allocation of pages allowed for opposition.  Epic submits Google's proposal below is unfair and untenable, as Epic has no way to assess whether Google's motion will focus disproportionately on Epic's Complaint, in which case Epic would be restricted to a 25-page opposition responding to a 35-page opening brief, after which Google would have a 25-page reply.  This distribution of pages—with Google receiving more than twice as many pages—would be manifestly unfair.

Epic does not believe that Google requires another month to file its opening brief when it has had Epic's and the Related Actions' complaints for over a month.  However, Epic would agree to Google's proposed motion to dismiss schedule if the Court does not stay discovery during the pendency of the motion.

**GOOGLE'S STATEMENT**:  Google anticipates filing a motion to dismiss in the Related Cases and, in the interest of efficiency, proposes a coordinated briefing schedule and related page limits below.  Counsel for the *Carr* and *PSB* Plaintiffs have agreed with this proposal:

| Proposed Briefing Schedule - Omnibus Motion to Dismiss *Epic*, *Carr*, *PSB* | | | |
|---|---|---|---|
| **Party** | **Event** | **Deadline** | **Page Limits** |
| Defendants | Motion | November 6, 2020 | 35 |
| Plaintiffs | Oppositions | December 4, 2020 | 25/25/25 |
| Defendants | Reply | December 23, 2020 | 25 |

## V.    AMENDMENT OF PLEADINGS

At this time, Epic does not anticipate seeking any amendments to its Complaint, but reserves the right to do so in response to a dispositive motion or responsive pleading by Google.

## VI. EVIDENCE PRESERVATION

Epic certifies that it has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information, that it discussed evidence preservation with Google at the Parties' meet and confer on September 29, 2020, and that Epic has taken reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

Google acknowledges that it has reviewed the Court's Guidelines and Checklist regarding the Discovery of Electronically Stored Information ("ESI") and confirms that, at the appropriate time, it will meet and confer with plaintiffs in all Related Cases to address reasonable and proportionate steps, including developing a joint ESI protocol, to preserve evidence relevant to the issues reasonably evident in this action. Further, Google represents that it has taken appropriate steps to preserve evidence relevant to the issues reasonably evident in this action.

## VII. DISCLOSURES

**EPIC'S STATEMENT**: Epic's position is that the Parties should serve the information required by Fed. R. Civ. P. 26(a)(1) by October 22, 2020. The Parties already have met and conferred, and while Google refused to engage on disclosure or other matters pursuant to Fed. R. Civ. P. 26(f), there is no reason to delay discovery from proceeding.

**GOOGLE'S STATEMENT**: The Parties have not met and conferred about disclosures or any other matters pursuant to Fed. R. Civ. P. 26(f). Google's position is that the Court should first address threshold matters of relation, coordination and consolidation, and then consider Google's initial pleadings challenges to each of the complaints, to be followed by a coordinated initial Case Management Conference in all Related Cases. In advance of the initial Case Management Conference, Google will meet and confer with the parties in all Related Cases, consistent with its obligations under federal and local rules.

## VIII. DISCOVERY

### A. Discovery Propounded to Date

No discovery has been propounded as part of this litigation to date.

1       **EPIC'S STATEMENT**:  Epic's position is that discovery should commence no

2  later than October 8, 2020.  Epic's proposed case schedule, which includes fact and expert

3  discovery cutoff dates and assumes party and third-party discovery, is set forth in Exhibit A.

4  Google's position appears to be that the Court should resolve all the pending motions to dismiss

5  before the Parties proceed to discovery.  Such a stay would be inappropriate here because Epic's

6  Complaint extensively details Google's anti-competitive behavior.  There would be no benefit to

7  delaying for months for resolution of Google's prospective motion to dismiss which has not yet

8  been filed and will not dispose of this case.  *See In re Valence Tech. Sec. Litig.*, 1994 WL

9  758688, at *3 (N.D. Cal. Nov. 18, 1994) (denying defendant's motion to stay discovery where

10  defendant relied "solely on the possible success of his upcoming motion to dismiss" without

11  providing "a stronger showing of a presently deficient complaint").

12       Epic disagrees with Google's assertion that the schedule in Exhibit A is premature

13  because the dates were not "subject to a proper meet and confer"; Epic proposed to meet and

14  confer with Google, including on the proposed schedule, but Google refused to engage and failed

15  to provide a counterproposal.

16       **GOOGLE'S STATEMENT**:  Any discovery in the Related Cases will involve

17  numerous third parties, including, for example, original equipment manufacturers (OEMs),

18  mobile carriers, app developers and app distributors, video game console manufacturers,

19  retailers, and consumers.  To promote the most efficient case management plan, Google's

20  position is that the Court should first address threshold matters of relation, coordination and

21  consolidation, and then consider Google's initial pleadings challenges to each of the complaints,

22  to be followed by a coordinated initial Case Management Conference in all Related Cases.  In

23  advance of the initial Case Management Conference, Google will meet and confer with the

24  parties in all Related Cases, consistent with its obligations under federal and local rules.  For

25  these reasons, Google disagrees with the dates proposed in Exhibit A as premature, as they were

26  not subject to a proper meet and confer between Epic and Google, nor did the discussions

27  involve counsel for the *Carr* and *PSB* Plaintiffs.

28

JOINT CASE MANAGEMENT STATEMENT – 3:20-cv-05671-JD

1

**B.     Scope of Anticipated Discovery**

2

**EPIC'S STATEMENT**:  At this time, Epic expects to seek documentary and

3

testimonial discovery from Google regarding, among other things:  (1) Google's agreements with

4

and communications concerning OEMs or app developers regarding Android, app distribution,

5

or in-app payment processing; (2) Google's policies, practices, and pricing for the Google Play

6

Store and Google Play Billing; (3) historical and projected revenues, costs, and profitability for

7

the Google Play Store and Google Play Billing; (4) methods of downloading apps or app stores

8

outside of the Google Play Store, including the additional steps and warnings consumers

9

encounter on Android devices when they download an app directly from a developer; (5)

10

Google's purported commitment to maintaining an "open" Android ecosystem; (6) the relevant

11

markets described in the Complaint and Google's power in those markets, including any barriers

12

to entry; (7) the effects of Google's policies and practices on competition, innovation, app

13

distributors, app developers, and consumers; (8) any purported procompetitive justifications for

14

Google's conduct; (9) Epic or its products, including Google's actual or contemplated response

15

to the introduction of Epic's direct pay option on the Google Play Store; and (10) Google's

16

productions in government investigations and inquiries regarding Google Play Store practices.

17

Epic also intends to seek documentary and testimonial discovery from non-

18

parties.

19

**GOOGLE'S STATEMENT**:  See Google's Statement, above.

20

**C.     Coordinating Discovery with Class Action Lawsuits**

21

**EPIC'S POSITION**:  Epic believes that, where it is reasonably practical,

22

discovery should be coordinated between this action and the Related Actions.  There are,

23

however, important factual and procedural differences between the cases.  Unlike the Related

24

Actions, this is not a class action and Epic is not seeking damages.  Additionally, there may be a

25

need to consolidate further some of the pending class actions, and to designate lead plaintiffs, all

26

of which could unduly delay Epic's case.  As explained in more detail below (*see* Section XXI),

27

28

JOINT CASE MANAGEMENT STATEMENT – 3:20-cv-05671-JD

this case should move faster than the Related Actions, as Epic is suffering ongoing irreparable harm as a result of Google's retaliation.  Accordingly, Epic believes that there will come a point when discovery will likely substantially diverge between the cases.

**GOOGLE'S STATEMENT**:  For the reasons discussed above, Google believes that there are substantial efficiencies in coordinating discovery in the Related Cases to the maximum extent possible.  Although Epic is not seeking damages, Google does not believe discovery on that issue, or on issues related to class certification, require the discovery timetable between the Related Cases to diverge.  Google also has not retaliated against Epic, any harm Epic has suffered is not irreparable and is of its own making. There is no greater urgency to Epic's case compared to *Carr* or *PSB*, as discussed in more detail below (*see* Section XXI).

D.     **Report on Planned Stipulated E-Discovery Order**

**EPIC'S STATEMENT**:  Epic's position is that the Parties should file a Stipulated Electronically Stored Information (ESI) [Proposed] Order by November 5, 2020.

**GOOGLE'S STATEMENT**:  The Parties will meet and confer and anticipate agreement upon a Stipulated Electronically Stored Information (ESI) [Proposed] Order.

E.     **Proposed Discovery Plan**

**EPIC'S STATEMENT**:  Epic's proposal regarding the timing of discovery is set forth in Exhibit A.  As noted above, Epic disagrees with Google's position that the Court should consider its initial pleading challenges before engaging on scheduling topics.

**GOOGLE'S STATEMENT**:  Google believes it is premature to discuss a discovery plan before the Court considers the threshold issue of the extent this case needs to be consolidated or coordinated with *Carr* and *PSB*.  Additionally, Google's position is that the Court should first address threshold matters of relation, coordination and consolidation, and then consider Google's initial pleadings challenges to each of the complaints, to be followed by a coordinated initial Case Management Conference in all Related Cases. In advance of the initial

Case Management Conference, Google will meet and confer with the parties in all Related Cases, consistent with its obligations under federal and local rules.

**F.    Current Discovery Disputes**

To date, the Parties have not identified any discovery disputes.

**IX.    CLASS ACTIONS**

There is no proposed class at issue in this matter.

**X.    RELATED CASES**

This Court has related two cases to this litigation:  *Carr v. Google LLC et al.*, Case No. 20-cv- 05761-JD (filed August 15, 2020), and *Pure Sweat Basketball, Inc. v. Google LLC et al.*, Case No. 20-cv-05792-JD (filed August 17, 2020).  *See* Related Case Order, Dkt. 42 (Sept. 9, 2020); Related Case Order, Dkt. 46 (Sept. 10, 2020).  On September 29, 2020, a plaintiff in a newly filed action—*Peekya Servs. Inc. v. Google LLC et al.*, Case No. 20-cv-06772 (filed September 29, 2020)—filed a motion to relate to this litigation.  That motion is pending. At this time, the Parties are not aware of other related cases.

**XI.    RELIEF**

**EPIC'S STATEMENT**:  Epic seeks all appropriate injunctive and equitable relief, including that the Court:  (1) enter judgment in favor of Epic and against Google; (2) issue an injunction prohibiting Google's anti-competitive and unfair conduct and mandating that Google take all necessary steps to cease such conduct and to restore competition; (3) declare that the contractual restraints complained of in the Complaint are unlawful and unenforceable; (4) award any other equitable relief necessary to prevent and remedy Google's anti-competitive conduct; and (5) grant any further relief the Court deems just and proper. (*See* Compl. at 59 (Prayer for Relief).)  Epic does not seek monetary relief in this litigation.

**GOOGLE'S STATEMENT**:  Google believes that Epic is not entitled to any relief as Google's conduct has not violated any federal or state law.

## XII.    SETTLEMENT AND ADR

The Parties have met and conferred regarding ADR and determined that ADR would not assist in resolving the dispute at this time.  The Parties, however, intend to stipulate to an ADR process in due course.

Epic and Google will file an ADR Certification form in advance of the status conference.

## XIII.    CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The Parties respectfully decline assignment to a magistrate judge to conduct all further proceedings in this litigation.

## XIV.    OTHER REFERENCES

The Parties agree this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV.    NARROWING OF ISSUES

At this stage, the Parties do not seek bifurcation of any issues.  The Parties further agree that it is too early to identify potential ways to expedite the presentation of evidence at trial, or otherwise narrow the case by agreement or motion.

## XVI.    EXPEDITED TRIAL PROCEDURE

The Parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

## XVII.    SCHEDULING

**EPIC'S STATEMENT**:  Epic's proposal regarding the case schedule is set forth in Exhibit A.

**GOOGLE'S STATEMENT**:  Google disagrees with the dates proposed in Exhibit A as premature, as they were not subject to a proper meet and confer, and they are proposed in advance of a status conference on consolidation of related cases (not an initial Case Management Conference).

## XVIII. TRIAL

Epic has not demanded a jury trial and is only seeking equitable relief. At this time, before any discovery has taken place, the Parties are unable to estimate the length of trial.

## XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

Pursuant to Civil Local Rule 3-15, Epic filed its Certification of Interested Entities or Persons (Dkt. No. 7), which discloses that as of the date of filing, Tencent Holdings Limited owns more than 10% of Epic's stock, and that, other than the named parties, Tencent Holdings Limited, and Timothy Sweeney, there is no other person, firm, partnership, corporation, or other entity known by the party to have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any other kind of interest that could be substantially affected by the outcome of the proceeding.

Google LLC and Google Payment Corp. filed their Certification of Interested Entities or Persons (Dkt. No. 31), and the other three Google-related defendants will do so prior to the status conference. Pursuant to Civil L.R. 3-15, the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

- Google Commerce Ltd.
- Google Ireland Limited
- Google Asia Pacific Pte. Ltd.
- Google Payment Corp.
- Google LLC
- XXVI Holdings Inc., Holding Company of Google LLC
- Alphabet Inc., Holding Company of XXVI Holdings Inc.

## XX. PROFESSIONAL CONDUCT

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

## XXI. OTHER ISSUES:  CONSOLIDATION OF THE RELATED ACTIONS FOR PRETRIAL AND TRIAL PURPOSES

Pursuant to this Court's Order dated September 18, 2020, the Parties have set forth a brief overview of their respective views on the consolidation of the *Epic*, *Carr* and *PSB* actions for pretrial and trial purposes.

The Parties agree that this action should *not* be consolidated into a single complaint with the Related Actions.

**EPIC'S STATEMENT**:  *First*, time is of the essence in this case, but not in the Related Actions.  As noted, Google retaliated against Epic by removing Epic's popular *Fortnite* app from the Google Play Store.  *Fortnite*'s removal caused an uproar and backlash against Epic, harming Epic's reputation, goodwill, and competitive standing.  The longer *Fortnite* remains off the Google Play Store, the greater the harm.  Thus, a prompt trial is necessary in this case, which will require this case to proceed on a faster schedule than the Related Actions, which do not involve retaliation against any named plaintiffs.

*Second*, the Related Actions are putative class actions seeking monetary damages, so they will require resolution of significant issues that are irrelevant to this case, such as class certification and damages calculations.  These issues will necessarily take time to resolve, slowing the resolution of Epic's claim and prejudicing Epic.  *See, e.g.*, *Torman v. Capital All. Grp.*, 2015 WL 5827404, at *2 (S.D. Cal. Oct. 5, 2015) (denying a motion to consolidate in part because "the complaints would need to be consolidated, leading potentially to another motion for class certification and causing prejudice to the plaintiffs"); *see also Snyder v. Nationstar Mortg. LLC*, 2016 WL 3519181, at *2 (N.D. Cal. June 28, 2016) ("Even if a common question exists, consolidation is not appropriate where it results in inefficiency, inconvenience, or unfair prejudice to a party." (quotations omitted)).

*Third*, this case and the Related Actions will be tried to different finders of fact. While the Court will decide Epic's entitlement to equitable relief, the plaintiffs in the Related Actions have asserted claims for damages and demanded a jury trial on all issues so triable. *See Spurgeon v. Olympic Panel Prod. LLC*, 2008 WL 1805726, at *2 (W.D. Wash. Apr. 21, 2008) (denying a motion to consolidate in part because one case was set for a jury trial and the other was set for an earlier-in-time bench trial).

*Fourth*, Epic is in a different position from the plaintiffs in the Related Actions. Epic wishes to compete with Google in app distribution and in-app payment processing on Android. The plaintiffs in the Related Actions are developers or consumers, but not Google's direct competitors in the relevant markets.

Epic will welcome coordination of discovery efforts between this Action and the Related Actions to the extent such discovery overlaps and that coordination does not delay discovery in this Action.

**GOOGLE'S STATEMENT**: Under Rule 42(a), whenever "actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary delay." Consolidation is "within the broad discretion of the district court." *In re Adams Apple*, 829 F.2d 1484, 1487 (9th Cir. 1987). While Google believes that any similarly situated putative classes should be consolidated into a single complaint, it does not believe that the Related Cases need to be consolidated into a single complaint, provided the actions are coordinated for pretrial purposes, including pleadings challenges, discovery and dispositive motions, to the maximum extent possible.

With respect to pretrial ***coordination***, Google believes that motion practice related to threshold pleadings challenges in the Related Cases should be coordinated to the fullest extent possible. *See also* Joint Case Management Statement In Related Cases concurrently filed by Google, Mary Carr, and Pure Sweat Basketball. Google proposes a coordinated briefing schedule and modified page limitations above to ensure an efficient and organized presentation of the

issues to the Court.  Given the overlapping legal theories between the complaints filed in the Related Cases, briefing on dispositive motions in the three actions should also be coordinated to the fullest extent possible if the cases make it to that stage of the proceedings.

Discovery, once commenced in the Related Cases, should also be coordinated to the fullest extent reasonably possible. For example, the parties should cooperate on document production and depositions, where possible, to avoid duplication and increase efficiencies. Should the Court coordinate discovery, Google anticipates negotiating and proposing entry of a discovery coordination order to be presented one week in advance of the initial Case Management Conference, once such conference is set.

With respect to trial consolidation, the Court has broad discretion under FRCP 42(a)(1) to join separate actions for trial if they involve a common question of law or fact.  While Google believes it is premature to order a consolidated trial at this time, it generally supports efforts to streamline the presentation of issues at trial. Given the Court's broad discretion, Epic's request for a bench trial and the class plaintiffs' request for a jury trial is not a bar to consolidating issues for trial if it will serve the interests of judicial economy.

Despite Epic's claim that "time is of the essence" in this case, there is no actual urgency. Nor is Epic's alleged harm irreparable. Epic will not be prejudiced by consolidation because any harm Epic is suffering is entirely of its own making.

First, Google never "retaliated" against Epic.  Epic intentionally violated Google's policies. Google was well within its rights to remove the non-compliant version of Fortnite from the Google Play store in response to Epic's breach. Although Epic claims that "[t]he longer Fortnite remains off the Google Play Store, the greater the harm," Epic can resubmit a compliant version of Fortnite and be back on Google Play in short order if it so chooses. As the court in *Epic Games v. Apple* noted in response to Epic's motion for a temporary restraining order, the "current predicament appears of [Epic's] own making." *Epic Games v. Apple Inc*., 2020 U.S. Dist. LEXIS 154231, *8 (N.D. Cal. Aug. 24, 2020). Although, "'[t]he sensible way to proceed is for [Epic to comply with the agreements and guidelines] and continue

1  to operate while it builds a record … [a]ny injury that [Epic Games] incurs by following a

2  different course is of its own choosing.'" *Id.* at *9 (quoting *Second City Music, Inc. v. City of*

3  *Chicago*, 333 F.3d 846, 850 (7th Cir. 2003) (brackets in original).

4  Second, as Epic has repeatedly publicized, Fortnite is currently available to

5  Android users by direct download from Epic's website or through the Samsung Galaxy App

6  Store, which is preloaded on most Samsung devices.

7  Third, Fortnite is also still widely available to consumers through other portable

8  devices (e.g., Nintendo Switch, laptops) or devices that can be primarily played within the home

9  (e.g., Xbox, PlayStation, PCs).

10  Dated: October 1, 2020

        /s Gary A. Bornstein
11                                          Gary A. Bornstein

12                                          CRAVATH, SWAINE & MOORE LLP
13                                          Worldwide Plaza
                                            825 Eighth Avenue
14                                          New York, NY 10019
                                            Tel: (212) 474-1000
15                                          Fax: (212) 474-3700
                                            gbornstein@cravath.com
16
17  Dated: October 1, 2020

18
        /s Brian C. Rocca
19                                          Brian C. Rocca

20                                          MORGAN, LEWIS & BOCKIUS LLP
                                            One Market, Spear Street Tower
21                                          San Francisco, CA 94105-1596
                                            Tel: (415) 442-1000
22                                          Fax: (415) 442-1001
                                            brian.rocca@morganlewis.com
23

24

25

26

27

28

## Exhibit A: Epic's Proposed Discovery Plan and Schedule

| Event | Deadline |
|---|---|
| Initial Case Management Conference and Start of Fact Discovery | October 8, 2020 |
| Motion to Dismiss Opening Brief | October 22, 2020 |
| Motion to Dismiss Opposition Brief | November 19, 2020 |
| Motion to Dismiss Reply Brief | December 3, 2020 |
| Complete Rule 26(a)(1) Initial Disclosures and File Stipulated ESI [Proposed] Order | November 5, 2020 |
| (Substantial or Full) Completion of Document/Data Production | June 16, 2021 |
| Parties' Expert Disclosures | September 27, 2021 |
| Close of Fact Discovery | October 11, 2021 |
| Opening Expert Reports | November 1, 2021 |
| Rebuttal Expert Reports | December 1, 2021 |
| Expert Discovery Cutoff | December 22, 2021 |
| Dispositive Motions | January 5, 2022 |
| Dispositive Motion Opposition Brief | January 26, 2022 |
| Dispositive Motion Reply Brief | February 9, 2022 |
| Motions *in limine* and Trial Exhibits Exchanged | January 10, 2022 |
| Pretrial Meet and Confer | January 18, 2022 |
| Joint Pretrial Conference Statement, Motions *in limine*, and Proposed Findings of Fact and Conclusions of Law | January 25, 2022 |
| Oppositions to Motions *in limine* | February 1, 2022 |
| Proposed Order on Trial Stipulations, and Witness and Exhibit Lists | February 8, 2022 |
| Pretrial Conference and Hearing on Dispositive Motions | February 17, 2022 |
| Trial Start | February 28, 2022 |