UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | Case No. 21-md-02981-JD<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW RE CHAT PRESERVATION** |

During discovery in this multidistrict litigation (MDL) case, plaintiffs obtained information indicating that Google did not adequately preserve communications that were exchanged internally on its Chat message system. Plaintiffs say that this shortfall was intentional and deprived them of material evidence. They have requested sanctions under Federal Rule of Civil Procedure 37(e). Dkt. No. 349.[1] After substantial briefing by both sides, and an evidentiary hearing that featured witness testimony and other evidence, the Court concludes that sanctions are warranted.

## BACKGROUND

The MDL action involves multiple antitrust cases challenging Google's Play Store practices as anticompetitive. The plaintiffs are Epic Games, Inc., Case No. 20-cv-05671-JD; the consumer plaintiffs, Case No. 20-cv-05761-JD; the Attorneys General of 38 states and the District of Columbia, Case No. 21-cv-05227-JD; and the Match Group plaintiffs, Case No. 22-cv-02746-

---

[1] Unless otherwise stated, all docket number references are to the ECF docket for the multidistrict litigation case, Case No. 21-md-02981-JD. This order will be filed in unredacted form on the public docket, except for certain employee names which are redacted below. Other sealing requests made in connection with these proceedings will be resolved by a separate order.

JD.[2] An action by software developers was filed and is in the process of settling on a class basis, Case No. 20-cv-05792-JD, and the developer plaintiffs are not part of these proceedings. Plaintiffs allege that Google illegally monopolized the Android app distribution market by engaging in exclusionary conduct, which has harmed the different plaintiff groups in various ways.

Even before the MDL was instituted, the Court directed the parties to coordinate discovery with an eye toward containing costs and burdens. This was largely successful and the parties have managed to work things out, with one major exception. In April 2021, plaintiffs asked Google about a curious lack of Chat messages in its document productions. In October 2021, Google said that Google Chats are typically deleted after 24 hours, and that Google had not suspended this auto-deletion even after this litigation began. Google chose instead to let employees make their own personal choices about preserving chats.

This decision raised obvious questions that were presented to the Court in a joint statement in May 2022. Dkt. No. 258. With the Court's consent, plaintiffs filed a motion for sanctions under Rule 37 in October 2022, which resulted in substantial briefing by each side, including the filing of declarations and other written evidence. *See* Dkt. Nos. 340, 349, 367, 373.

The parties disagreed about a number of factual issues, and the Court was unwilling to resolve the disputes on a dry record. Consequently, the Court held an evidentiary hearing over two days in January 2023. Dkt. Nos. 375, 384, 420. The Court received documentary evidence, heard testimony by Google employees Genaro Lopez, Jamie Rosenberg, and Andrew Rope, and took closing arguments by the parties. Dkt. Nos. 415, 440. This record was supplemented by a transcript of the deposition of former Google employee Tian Lim, Dkt. No. 449, and many follow-up submissions, *see*, *e.g.*, Dkt. Nos. 428, 429, 431, 432. At the Court's direction, Google produced to plaintiffs in February 2023 approximately 52,271 additional chats, after which both sides filed supplemental briefs addressing this new evidence. Dkt. Nos. 454, 463, 464. Overall,

---

[2] The Match Group plaintiffs are Match Group, LLC; Humor Rainbow, Inc.; PlentyofFish Media ULC; and People Media, Inc.

2

the Court has obtained a thorough and highly detailed record with respect to Google's Chat preservation conduct.

The Court makes the ensuing findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). The findings and conclusions are based on the evidence admitted at the hearing and filed on the docket by the parties; the Court's observation of the demeanor, credibility, and candor of the witnesses; and the arguments of the parties at the hearing and in their post-hearing filings.

## FINDINGS OF FACT

### I. GOOGLE IS A FREQUENT AND SOPHISTICATED LITIGATION PARTY

1. Google is a well-known and "really big" company that is "in the public eye." It is frequently a party to government proceedings and private litigation. Dkt. Nos. 418 & 446 (Hrg. Tr.) at 70:9, 102:11-22.

2. Google employees are no strangers to document production and discovery obligations. At any given time, Google has thousands of employees who are under a litigation hold for document preservation. Hrg. Tr. at 60:23-61:2, 102:17-22.

3. Google employee Jamie Rosenberg testified that he had been "placed under many litigation holds over [his] time at Google," and he did not recall a time in his last five or six years there when he personally was not under at least one litigation hold. Hrg. Tr. at 99:4-10.

4. Former employee Tian Lim, who worked at Google for over five years through early January 2023, testified that the litigation hold he received for this case "was probably one of at least ten or more other litigation holds that I was on." Dkt. No. 449-1 (Lim Depo. Tr.) at 6:25-7:9, 20:22-21:3.

### II. GOOGLE TRAINS EMPLOYEES TO "COMMUNICATE WITH CARE"

5. Google employees receive training to "Communicate with Care." Hrg. Tr. at 101:23-25. These are live group trainings to teach Google employees how to handle written communications. The trainings are presented by lawyers, with presentation slides. *Id.* at 99:24-100:13.

3

6. One set of training slides was received into evidence. Hrg. Exh. PX-120. The interactive training was titled, "You Said What?!: 10 Things to Ensure You Are Communicating With Care." The first slide stated, "At Google, We are constantly in the public eye . . . and the courthouse. We often have to produce employee communications as evidence, which means your communications can become public at any time. Our communications can hurt or embarrass us as a company, or as individuals. We need to be cautious in our communications to avoid unnecessary harm. [¶] This is not about 'hiding stuff' or not pointing out something that may need fixing. Speaking up is a core company value. This is about being thoughtful in your communication in order to reduce the risk of unintended harm to Google and/or you." *Id*. at GOOG-PLAY-005029850.

7. "Rule 03" in the training was to "Avoid Communicating When Angry or Tired." *Id*. at GOOG-PLAY-005029855. It gives the example of a fictional Google employee, Echo, who, after "working all night" on a new product, has decided to write an email to the team lead "before calling it a night[,] and wants you to take a look at it before sending it." *Id*. at GOOG-PLAY-005029856. The team lead "took the night off to attend a basketball game," and Echo's draft email ends with the line, "Could have really used your help tonight. Hope you enjoyed the game." *Id*. The training asks, "What do you think you should tell Echo to do?" It gives four possible options: (1) "Send the email"; (2) "Don't send the email now. Send it in the morning"; (3) "Talk to the team lead in the morning"; and (4) "Don't send the email. Chat 'off the record' via Hangouts instead." *Id*.

8. In a later slide, Option 4 ("Don't send the email. Chat 'off the record' via Hangouts instead.") is marked red as a discouraged option, rather than green, like Options 2 and 3. *See id*. at GOOG-PLAY-005029858. A pop-up box provides this commentary about Option 4: "Better than sending the email, but not without risk. While 'off the record' Hangout chats between individual corporate accounts are not retained by Google as emails are, any chat participant may save the conversation by simply copying and pasting it into a doc or email - something Echo's team lead might choose to do in order to discuss the appropriateness of that middle-of-the-night chat with Echo and HR in the morning." *Id*. at GOOG-PLAY-005029860.

1  The apparent concern is that the chat might then be retained for a much longer period of time than
2  off-the-record chat messages usually are.

3        9.      The "Communicate with Care" training gave specific instructions to Google
4  employees about strategies for seeking to make their emails and other communications "protected
5  by the attorney-client privilege." *Id*. at GOOG-PLAY-005029877.  Employees were advised that
6  "You must include an attorney in the address" of an email, and, "In addition to addressing it to an
7  attorney and labeling it as such, for the email to be attorney-client privileged, it must be for the
8  purposes of getting legal advice." *Id*. at GOOG-PLAY-005029882.

9        10.     To complete the training, Google employees were required to certify that "you have
10  fully reviewed, understand and are responsible for applying the advice and guidelines provided in
11  this training to your interactions, responsibilities, and work at and for Google." *Id*. at GOOG-
12  PLAY-005029900.

13        11.     Google employees took the Care training to heart.  In multiple instances, internal
14  communications actively expressed concerns about the possibility of disclosure in litigation and
15  the risks of preserving Chats.  *See*, *e.g.*, Hrg. Exh. PX-9 at GOOG-PLAY-007653956 ("Comment
16  freely but please be aware that this doc is not privileged.  For anything sensitive, please move to
17  Chat / video call."); Dkt. No. 468, Ex. 8 ("are we allowed to talk about Runway here?," "that's a
18  good question.  i would say, if you talk about it, communicate with care - assume anything you say
19  here will be subject to discovery if there are any regulatory or legal proceedings at some point in
20  the future.  group chats (like this one) aren't transient and you can't turn off history (unlike 1:1
21  chat threads where you can turn off history and they disappear in 24 hours)"); *id.*, Ex. 19 ("should
22  we have history off for this? . . . I think our chats about google products are more likely to come
23  up in court"; "Right now it doesn't _feel_ risky.  But just communicate with care."); *id*., Ex. 20
24  ("Since history is turned on, be mindful of putting anything discoverable here"); *id*., Ex. 23 ("just
25  a reminder if you use privileged and confidential in emails an attorney must be in the To line";
26  "wondering what is the best way to update the team about confidential topics without having to
27  include an attorney in all comms"; "History has to be off I believe"; "yes with history off
28  everything gets wiped . . . but it does exist for 24-48 hrs so if super sensitive you need to use GVC

1   because they could look at your recent ping history and that could go into court[,] also hopefully it
2   won't come to this for any of us."); *id*., Ex. 27 ("please do not share sensitive information here
3   where possible . . . Until we fix the room architecture, content here is searchable/discoverable
4   within the corp."). At Google, the terms "history on" and "on the record" were used
5   interchangeably to mean the same thing. Hrg. Tr. at 29:8-12.

## III.   GOOGLE CHAT

12.   Google Chat is a "communications instant messaging tool" that allows users to send each other text messages. Hrg Tr. at 18:23-19:3. In effect, it is Google's in-house IM platform. This order focuses on Google's internal use of Chat, and its preservation practices for Chat messages sent on the platform by Google employees.

13.   Google Chats can take the form of one-on-one chats, Hrg. Tr. at 20:8-11; group chats involving three or more people, *id*. at 21:14-16; or "rooms and spaces," which are "topic- or project-based type[s] of conversations that are specifically oriented around a particular item or subject matter," *id*. at 23:5-11. A "threaded room" is a room with a general topic, where its members can have "threaded" conversations about various sub-topics. *Id*. at 23:17-24:3; Hrg. Exh. DXCH-106.

14.   Google Chat is an essential tool used daily by Google employees. Jamie Rosenberg testified that he "use[s] Chat every day." Hrg. Tr. at 99:23. Tian Lim also testified that he used Chat "probably every working day." Lim Depo. Tr. at 8:22-25.

15.   There are no restrictions on the content and topics on Chat. Hrg. Tr. at 47:2-10 (Chat can be used for "[a]nything under the sun that [employees] want to communicate."). Messages are not limited by size or number of characters. Chat is a versatile tool that allows users to attach lengthy documents to a message. *Id*. at 63:19-23.

16.   "History" can be turned "on" or "off" by users for a particular Chat. *See*, *e.g*., Hrg. Exh. DXCH-107. History is off by default for all Chats among Google employees with the sole exception of threaded rooms. Hrg. Tr. at 53:21-23.

17.   Different types of Chats have different default retention periods. Under Google's standard retention policy, one-on-one Google Chats with history off are retained for 24 hours only.

Hrg. Tr. at 26:21-27:8; Hrg. Exh. DXCH-1. After the 24 hours, the Chats are deleted forever and cannot be recovered. Hrg. Tr. at 52:25-53:6. One-on-one chats with history on are retained for 30 days. *Id*. at 27:9-17; Hrg. Exh. DXCH-1. History-on chats in a group conversation or "flat (non-threaded) room" are retained for 18 months. *Id*.; Hrg. Tr. at 31:11-13. For chats in a threaded room, history is "always on and can't be turned off," and these messages are also retained for a period of 18 months. Hrg. Tr. at 31:14-23; Hrg. Exh. DXCH-1.

18. Each Google employee has a corporate Gmail account for email, and if a litigation hold is not in place, emails in an employee's Gmail account are retained for 18 months unless the user has tagged them for "Indefinite" retention. Hrg. Tr. at 17:22-18:22.

19. An employee has several options to preserve a Chat for longer than its default retention period. She can "turn on history" for a Chat in a menu option. The "history on" setting applies to all messages sent in a Chat after the history button has been toggled, and that Chat's history will stay on until manually turned off. Hrg. Tr. at 28:11-29:21; Hrg. Exh. DXCH-107.

20. A Google employee can also retain Chat messages with the "Forward to inbox" feature. The feature "allows a user to select an individual message and up to four preceding messages and send those to their e-mail inboxes for longer-term archiving." Once in the user's personal Gmail inbox, the chats would be "subject to the 18-month default retention period." Hrg. Tr. at 29:23-31:2; Hrg. Exh. DXCH-108.

21. Another preservation option entails copying and pasting the chat into a document saved to the employee's Google Drive. Items in an employee's Google Drive remain on Google's systems "indefinitely unless removed by the Googler themselves." Hrg. Tr. at 17:3-8, 55:16-21.

22. Google's information governance lead, Genaro Lopez, testified that the retention policy for Google Chats is animated by the goals of protecting privacy, reducing the cost of storage, guarding against cybersecurity risks, and promoting employee productivity and efficiency. Hrg. Tr. at 25:17-26:20. But with respect to storage, Lopez was not aware of "any kind of an analysis or study to figure out how expensive it would be or how burdensome it would be to preserve chats," even just for this case. *Id*. at 76:25-77:8.

23. Lopez testified that Google Chat was "typically" used for "quick, one-off" questions like an invitation to grab coffee, or for "sensitive," personal topics like "birth announcements" or "promotion[s]." Hrg. Tr. at 19:8-25. Google has generally pressed the suggestion in its briefs that Chat was primarily a social outlet akin to an electronic break room.

24. The record demonstrates otherwise. An abundance of evidence establishes that Google employees routinely used Chat to discuss substantive business topics, including matters relevant to this antitrust litigation. *See*, *e.g.*, Hrg. Tr. at 92:19-93:4 (Rosenberg email stating to another Google employee, "You mentioned in our IM chat yesterday that Samsung broached the topic of asking for rev share on the Play Store."); Hrg. Exh. PX-16 (Rosenberg chat thread with other Google employees discussing, vis-à-vis- Samsung, issues such as "get[ting] sample builds for all the configurations contemplated in our waiver so we can validate placement," "start[ing] the [MADA] signing process" with Samsung; and "CTS approval and device approval"); Hrg. Tr. at 97:16-18 (Rosenberg acknowledging that the conversation he had over Google Chat in Exhibit PX-16 "includes discussions about business topics"); Lim Depo. Tr. at 9:2-10:11 ("[o]ccasionally there were some more substantive conversations" over Google Chat); *id*. at 26:22-25 (Lim "most likely" personally used Google Chat for "substantive business communications"); *id*. at 27:22-29:4 ("many of the colleagues that [Lim] discussed business with over chat had responsibility over Google Play and Android"); *see also* Dkt. No. 468 (plaintiffs' supplemental brief) at 2-5 (providing numerous examples of Chats discussing "topics at the heart of this case," such as Revenue Share Agreements, Mobile App Distribution Agreements (MADAs), and Google Play Billing and Google's supracompetitive commission).[3]

**IV.    GOOGLE'S CHAT PRESERVATION PRACTICES IN THIS CASE**

25. When Google becomes involved in a lawsuit, it undertakes "an investigation to understand what the case generally deals with and identify individuals that may possess potentially relevant information," and then it "issue[s] a legal hold." Hrg. Tr. at 109:11-18.

---

[3] MADAs and their importance to the claims in the MDL are discussed in Paragraph 34.

26. While a legal hold is in place, "email data or Gmail data is preserved," as are "Google Workspace files, which includes Docs, Sheets, Slides; and also Google Drive content, which can include other file types." Hrg. Tr. at 110:3-8.

27. For this case, the "initial notice and hold was put in place in September of 2020," and four reminders have been sent since then. Hrg. Tr. at 113:9-15. It is Google's standard practice to "send reminders about every six months." *Id*.

28. Approximately 360 individuals are subject to the legal hold for this case, about 40 of whom have been designated as custodians. Hrg. Tr. at 113:16-21.

29. Google has the technical ability to set Chat history to "on" as the default for all employees who are subject to a legal hold, but it chooses not to. Hrg. Tr. at 43:22-43:4, 58:19-24. Google has preserved all Chat messages that had history toggled on, *id*. at 44:12-17, 55:2-4, but for any Chat where history was off, Google left it up to each individual hold recipient to decide which, if any, of those one-on-one or group chats should be preserved, *id*. at 45:20-46:7, 55:11-15.

30. The litigation hold recipients were (1) instructed not to use Google Chat to "discuss any topics that are related to their legal hold," and (2) told that "if they do find themselves in a conversation that strays into a topic related to the legal hold, they're asked to turn history on at that point to make sure that those messages are properly preserved." Hrg. Tr. at 43:4-20.

31. A "Google Chat Retention FAQs" document that is internally available to all Google employees also advises that the "History ON setting" should be used "[w]hen you are discussing a topic identified in any legal hold notice you've received." Hrg. Exh. DXCH-2; Hrg. Tr. at 34:7-35:1.

32. Google did not check to see if custodians were actually preserving relevant Chats as directed by the hold notice, and did nothing in the way of auditing or monitoring Chat preservation. Hrg. Tr. at 46:8-17. There is no evidence establishing that Google did any individualized follow-up on Chat preservation with the hold recipients, including those designated as custodians. *See*, *e.g.*, *id*. at 121:17-20.

## V. HOW EMPLOYEES RESPONDED

33. Overall, the record demonstrates that Google employees who received a litigation hold in this case were unable or unwilling to follow the Chat preservation instructions, and sometimes disregarded the instructions altogether.

34. Jamie Rosenberg is now a part-time advisor at Google but was previously a vice president "running a strategy team for [Google's] platforms and ecosystems organization." Hrg. Tr. at 78:20-79:3. He received a hold notice for this case and was deposed. *Id*. at 103:11-21. He testified that he had Chat history off during his entire time at Google, including when he was deposed, and has "not done anything to preserve chats for this litigation." *Id*. at 103:8-17. When asked if he knew if "MADAs are at issue in this case or not," he responded that he is "not familiar with the specific details of the case," and he cannot say "in detail" "what topics are and are not relevant to this case." *Id*. at 89:18-23. A MADA is a Mobile App Distribution Agreement, and it is, according to plaintiffs, a "principal subject" of their claims. Dkt. No. 468 at 3. "The MADAs are contracts that Google requires OEMs to enter into to license Google Mobile Services, a suite of proprietary Google applications and APIs that includes the Google Play Store, Google Search, Gmail, YouTube, and Google Maps, among others." *Id*. Epic's complaint alleges, for example, that "[t]hrough its MADAs with Android OEMs, Google requires OEMs to locate the Google Play Store on the 'home screen' of each mobile device. Android OEMs must further pre-install up to 30 Google mandatory apps and must locate these apps on the home screen or on the next screen, occupying valuable space on each user's mobile device that otherwise could be occupied by competing app stores and other services. These requirements ensure that the Google Play Store is the most visible app store any user encounters and place any other app store at a significant disadvantage." Case No. 20-cv-05671-JD, Dkt. No. 166 ¶ 91.

35. Rosenberg's testimony highlighted a fundamental problem with Google's approach to Chat preservation. Google left employees largely on their own to determine what Chat communications might be relevant to the many critical legal and factual issues in this complex antitrust litigation. A lawyer working on this case would know that MADAs are relevant. Jamie Rosenberg did not.

36. Tian Lim, who worked in the Google Play product area during the entire period of his 5-year employment with Google, also received a legal hold notice for this litigation. Lim Depo. Tr. at 20:9-16, 25:21-24. Lim believed that he understood the document preservation instructions in the hold notice, and his "interpretation was that if there was substantive information in chat that I should ensure the information was preserved." *Id*. at 20:17-21:18. He thought that he had complied with this instruction by cutting and pasting chat messages into his own personal document, "but probably more often I would make sure that the information was funneled into the right documents, the right comments in other documents, to make sure that the right stakeholders would actually see it, integrate those thoughts, and action on them." *Id*. at 21:19-22:8. In effect, Lim believed that he could comply with Google's document preservation obligations by creating and preserving a summary of a substantive business communication rather than preserving the actual communication itself. *Id*. at 36:5-19, 37:25-38:15.

37. Lim knew that his chats were not going to be automatically preserved because Google employees "were generally aware that chats would disappear after 24 hours," but he did not "ever turn history on in the chat program to save any chat conversations." *Id*. at 22:9-12, 38:16-39:6. Lim testified that the thought process that he might need to save something that was said because he was subject to a legal hold simply "doesn't occur because, as I said, I'm under so many legal holds, it's impossible to think that way." *Id*. at 40:23-41:6.

38. Chats produced by Google in February 2023 pursuant to the Court's order provided additional evidence of highly spotty practices in response to the litigation hold notices. The ensuing Chat exchange between two Google employees, Dkt. No. 468, Ex. 4, is representative. The Court has anonymized the exchange to spare the employees undue attention. It is Google's preservation obligation and conduct that is the focus here.

```
Sent:     Thu 3/17/2022 3:26:31 PM (UTC)
From:     ███████@google.com
To:       ███████@google.com, ███████@google.com
Subject:  AAAA4RKG7pM-MBI-FLAT:2022-03-16T20:26:30.092879
```

eth███@google.com 2022-03-17T15:26:30.092Z

As we are talking about RSA, I have turned on history as per policy.

mar███@google.com 2022-03-17T15:33:15.718Z

Hi Ethan, can you let me know what the policy you're referring to?

mar███@google.com 2022-03-17T15:33:23.807Z

I'd prefer to have history off

eth███@google.com 2022-03-17T15:33:45.555Z

legal/comp can confirm but anything convo regarding RSA i have to have history on

mar███@google.com 2022-03-17T15:33:45.830Z

I talk about RSA related things all day and I don't have history on for all my chats :)

eth███@google.com 2022-03-17T15:33:58.371Z

we cannot delete it. I am also on multiple legal hold

mar███@google.com 2022-03-17T15:34:02.578Z

Ok maybe I take you off this convo 😅

mar███@google.com 2022-03-17T15:34:08.567Z

As am I...

eth███@google.com 2022-03-17T15:35:12.807Z

sry why do you prefer to have history off? i think we should have record of our convo so there are no miscomm/understanding no?

mar███@google.com 2022-03-17T15:35:26.447Z

I can ping Marie and Michael separately. Included you for visibility

mar███@google.com 2022-03-17T15:35:41.445Z

Yes I do prefer history off

eth███@google.com 2022-03-17T15:37:01.904Z

pls keep BD team (me) included on any convo regarding Nothing RSA planning

eth███@google.com 2022-03-17T15:37:32.226Z

i can send an official email to confirm regarding history but that was the training i had received

mar███@google.com 2022-03-17T15:39:11.475Z

Of course I'll keep you included. But sounds like we have to keep history on in this convo specifically. But not in our 1:1 chats about RSAs or my 1:1 chats with Marie/Michael about RSAs

mar█████@google.com 2022-03-17T15:39:18.856Z

So that's why I'd prefer to move away from this group chat

mar█████@google.com 2022-03-17T15:39:42.832Z

It's just causing more touchpoints on my end but I respect you following your training

eth█████@google.com 2022-03-17T15:40:36.082Z

ty :) if you feel uncomfortable with history being on here, i understand.

eth█████@google.com 2022-03-17T15:41:01.592Z

but even if history is off here, these are all saved on servers anyway

mar█████@google.com 2022-03-17T15:44:15.150Z

Thanks ███!

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

39. In another chat, an employee said he or she was "on legal hold" but that they preferred to keep chat history off, Dkt. No. 468, Ex. 24:

```
Sent:     Thur 12/8/2022 5:52:34 PM (UTC)
From:     ██████@google.com
To:       ██████@google.com, ██████@google.com
Subject:  ITAObEAAAAE-MBI-FLAT:2022-12-07T22:52:33.612671
```

ott████@google.com 2022-12-08T17:52:33.612Z

Sounds good!

ott████@google.com 2022-12-08T17:52:36.138Z

I'll keep Jan in mind

div████████@google.com 2022-12-08T17:52:49.955Z

I am on legal hold

ott████@google.com 2022-12-08T17:52:56.632Z

(making a note via turning on history)

div████████@google.com 2022-12-08T17:52:56.898Z

Prefer to keep chat history off

ott████@google.com 2022-12-08T17:53:01.560Z

i'll turn off

## VI. GOOGLE IS NOW PRESERVING GOOGLE CHATS FOR THIS ACTION

40. Google represented to the Court in a filing on February 7, 2023, that it "will turn the history setting to 'on' for Google Chat, on an interim basis, for all 383 employees who have received a legal hold in this case. These employees will not have the ability to change history to 'off.' Google will meet and confer with Plaintiffs regarding which of these 383 legal hold recipients are the 'core set of relevant custodians' for which this setting should remain and then report back to the Court." Dkt. No. 448 at 1.

**CONCLUSIONS OF LAW**

The new version of Rule 37(e), which was added to the Federal Rules of Civil Procedure in 2015, and the Advisory Committee Notes to the 2015 Amendment (Comm. Notes), are the touchstones guiding the Court's conclusions. Rule 37(e) provides:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

The Committee Notes for Subdivision (e) state that the rule embodies the "common-law duty" of "potential litigants . . . to preserve relevant information when litigation is reasonably foreseeable." The parties do not dispute that Google bore that duty as of August 2020, when the first constituent lawsuit in the MDL was filed by Epic Games. *See* Case No. 20-cv-05671-JD, Dkt. No. 1.[4]

At the heart of this dispute is a simple question: did Google do the right thing with respect to preserving Chat communications in this case? There is no doubt that Google was perfectly free to set up an internal IM service with any retention period of its choosing for employees to use for

---

[4] Plaintiffs made some effort at the evidentiary hearing to move this date forward by referencing document requests issued in other cases that are not a part of this MDL. *See* Hrg. Tr. at 127:17-128:4. The Committee Notes advise that "[t]he fact that a party had an independent obligation to preserve information does not necessarily mean that it had such a duty with respect to the litigation, and the fact that the party failed to observe some other preservation obligation does not itself prove that its efforts to preserve were not reasonable with respect to a particular case." The Court focuses on the August 2020 time period for this MDL.

whatever purposes they liked. The overall propriety of Chat is not in issue here. What matters is how Google responded after the lawsuits were filed, and whether it honored the evidence preservation duties it was abundantly familiar with from countless prior cases.

The record establishes that Google fell strikingly short on that score. Several aspects of Google's conduct are troubling. As Rule 37 indicates, the duty to preserve relevant evidence is an unqualified obligation in all cases. The Court's Standing Order for Civil Cases expressly spells out the expectation that "as soon as any party reasonably anticipates or knows of litigation, it will take the necessary, affirmative steps to preserve evidence related to the issues presented by the action, including, without limitation, interdiction of any document destruction programs and any ongoing erasures of e-mails, voice mails, and other electronically-recorded material." Standing Order for Civil Cases Before Judge James Donato ¶ 8.

Google clearly had different intentions with respect to Chat, but it did not reveal those intentions with candor or directness to the Court or counsel for plaintiffs. Instead, Google falsely assured the Court in a case management statement in October 2020 that it had "taken appropriate steps to preserve all evidence relevant to the issues reasonably evident in this action," without saying a word about Chats or its decision not to pause the 24-hour default deletion. Case No. 20-5761, Dkt. No. 45 at 11. Google did not reveal the Chat practices to plaintiffs until October 2021, many months after plaintiffs first asked about them. *See* Dkt. No. 429 (Google's response to Court's questions) at 3 ("Google informed Plaintiffs on October 21, 2021, that it had not suspended the 24-hour retention policy for history 'off' chats."). The Court has since had to spend a substantial amount of resources to get to the truth of the matter, including several hearings, a two-day evidentiary proceeding, and countless hours reviewing voluminous briefs. All the while, Google has tried to downplay the problem and displayed a dismissive attitude ill tuned to the gravity of its conduct. Its initial defense was that it had no "ability to change default settings for individual custodians with respect to the chat history setting," Dkt. No. 427-3 ¶ 25, but evidence at the hearing plainly established that this representation was not truthful.

Why this situation has come to pass is a mystery. From the start of this case, Google has had every opportunity to flag the handling of Chat and air concerns about potential burden, costs,

16

1  and related factors. At the very least, Google should have advised plaintiffs about its preservation
2  approach early in the litigation, and engaged in a discussion with them. It chose to stay silent until
3  compelled to speak by the filing of the Rule 37 motion and the Court's intervention. The Court
4  has repeatedly asked Google why it never mentioned Chat until the issue became a substantial
5  problem. It has not provided an explanation, which is worrisome, especially in light of its
6  unlimited access to accomplished legal counsel, and its long experience with the duty of evidence
7  preservation.

Another major concern is the intentionality manifested at every level within Google to hide the ball with respect to Chat. As discussed, individual users were conscious of litigation risks and valued the "off the record" functionality of Chat. Google as an enterprise had the capacity of preserving all Chat communications systemwide once litigation had commenced but elected not do so, without any assessment of financial costs or other factors that might help to justify that decision.

This is in sharp contrast to Google's handling of email. When a litigation hold is in place, Google automatically preserves all emails from relevant custodians without requiring any individual action. Custodians cannot override the automated preservation of their emails. *See* Hrg. Tr. at 54:12-55:1. Google took the opposite course with Chat, and gave each employee carte blanche to make his or her own call about what might be relevant in this complex antitrust case, and whether a Chat communication should be preserved. The obvious danger of this approach was captured in Rosenberg's testimony about not really knowing the issues in this litigation, and not preserving his communications. Google aggravated the situation by intentionally deciding not to check up on employee decisions to ensure that relevant evidence was being preserved. In effect, Google adopted a "don't ask, don't tell" policy for Chat preservation, at the expense of its preservation duties.

Consequently, on the record as a whole, the Court concludes that Google did not take reasonable steps to preserve electronically stored information that should have been preserved in the anticipation or conduct of litigation. Fed. R. Civ. P. 37(e). The record demonstrates that the deleted Chat evidence "cannot be restored or replaced through additional discovery." *Id*. The

17

record also establishes intentionality for purposes of Rule 37(e)(2). The Court concludes that Google intended to subvert the discovery process, and that Chat evidence was "lost with the intent to prevent its use in litigation" and "with the intent to deprive another party of the information's use in the litigation." Comm. Notes, Subdivision (e)(2).

A prejudice finding under Rule 37(e)(1) is not strictly necessary because the finding of intent under subdivision (e)(2) supports "not only an inference that the lost information was unfavorable to the party that intentionally destroyed it, but also an inference that the opposing party was prejudiced by the loss of information that would have favored its position." Comm. Notes, Subdivision (e)(2). It is clear in the record that relevant, substantive business communications were made on Chat that plaintiffs will never see, to the potential detriment of their case. Google says that the prejudice is limited because there are only "21 custodians for which the parties agreed to conduct limited post-Complaint discovery," and "[f]or only 21 of the total 44 custodians, the parties agreed that Google would search for documents dated *after* August 13, 2020. With respect to the remaining 23 custodians, the cut-off date was on or before August 13, 2020." Dkt. No. 429 at 5-6 (emphasis in original; internal citation omitted). The point is not well taken. The agreements between the parties were made while plaintiffs were completely in the dark about Google's Chat practices, and the Court declines to give Google any benefit from deals made on incomplete information. In addition, prejudice for Rule 37 purposes is a matter of fairness and equity, which is why Rule 37(e) "leaves judges with discretion to determine how best to assess prejudice in particular cases." Comm. Notes, Subdivision (e)(1). It is also not plaintiffs' burden to prove prejudice, *see id.*, but the plaintiffs' supplemental briefs and evidence, Dkt. No. 468, certainly did so.

The remaining question is about the remedy. Proportionality is the governing concept here. To that end, the Committee Notes advise courts to "exercise caution," and state that "[f]inding an intent to deprive another party of the lost information's use in the litigation does not require a court to adopt any of the measures listed in subdivision(e)(2). The remedy should fit the wrong, and the severe measures authorized by this subdivision should not be used when the

information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss." Comm. Notes, Subdivision (e)(2).

The Court has already declined to issue terminating sanctions against Google. This antitrust case will not be decided on the basis of lost Chat communications. The determination of an appropriate non-monetary sanction requires further proceedings. The Court fully appreciates plaintiffs' dilemma of trying to prove the contents of what Google has deleted. Even so, the principle of proportionality demands that the remedy fit the wrong, and the Court would like to see the state of play of the evidence at the end of fact discovery. At that time, plaintiffs will be better positioned to tell the Court what might have been lost in the Chat communications.

For monetary sanctions, it is entirely appropriate for Google to cover plaintiffs' reasonable attorneys' fees and costs in bringing the Rule 37 motion, including the joint statement that preceded the motion and the evidentiary hearing and related events. Plaintiffs are directed to file by April 21, 2023, a statement of proposed attorneys' fees and costs with adequate documentation.[5] The parties will meet and confer on the proposal, and file a statement by May 12, 2023, indicating an agreement or identifying specific areas of disagreement for the Court to resolve.

**IT IS SO ORDERED.**

Dated: March 28, 2023

JAMES DONATO
United States District Judge

---

[5] As with counsel fee requests in the class settlement context, declarations of counsel as to the number of hours spent on various categories of activities related to the proceedings by each biller, together with hourly billing rate information may be sufficient, provided that the declarations are adequately detailed. The same goes for costs. Counsel should be prepared to submit copies of detailed billing and costs records if the Court orders.

19