| | | |
|---|---|---|
| 1 | John C. Hueston (SBN 164921) | Karma M. Giulianelli (SBN 184175) |
| 2 | jhueston@hueston.com | karma.giulianelli@bartlitbeck.com |
|   | Douglas J. Dixon (SBN 275389) | **BARTLIT BECK LLP** |
| 3 | ddixon@hueston.com | 1801 Wewatta St., Suite 1200 |
|   | **HUESTON HENNIGAN LLP** | Denver, Colorado 80202 |
| 4 | 620 Newport Center Drive, Suite 1300 | Telephone: (303) 592-3100 |
|   | Newport Beach, CA 92660 | |
| 5 | Telephone: (949) 229-8640 | Hae Sung Nam (*pro hac vice*) |
| 6 |  | hnam@kaplanfox.com |
|   | Joseph A. Reiter (SBN 294976) | **KAPLAN FOX & KILSHEIMER LLP** |
| 7 | jreiter@hueston.com | 850 Third Avenue |
|   | Christine Woodin, SBN 295023) | New York, NY 10022 |
| 8 | cwoodin@hueston.com | Telephone: (212) 687-1980 |
|   | **HUESTON HENNIGAN LLP** | |
| 9 | 523 West 6th Street, Suite 400 | *Co-Lead Counsel for Consumer Plaintiffs* |
|   | Los Angeles, CA 90014 | |
| 10 | Telephone: (213) 788-4340 | Paul J. Riehle (SBN 115199) |
| 11 |  | paul.riehle@faegredrinker.com |
|   | *Counsel for Plaintiffs Match Group, LLC;* | **FAEGRE DRINKER BIDDLE & REATH** |
| 12 | *Humor Rainbow, Inc.; PlentyofFish Media* | **LLP** |
|   | *ULC; and People Media, Inc.* | Four Embarcadero Center, 27th Floor |
| 13 |  | San Francisco, CA 94111 |
|   | Brendan P. Glackin (SBN 199643) | Telephone: (415) 591-7500 |
| 14 | bglackin@agutah.gov | |
|   | **OFFICE OF THE UTAH ATTORNEY** | Christine A. Varney (*pro hac vice*) |
| 15 | **GENERAL** | cvarney@cravath.com |
| 16 | 160 E 300 S, 5th Floor | **CRAVATH, SWAINE & MOORE LLP** |
|   | PO Box 140872 | 825 Eighth Avenue |
| 17 | Salt Lake City, UT 84114-0872 | New York, New York 10019 |
|   | Telephone: (801) 366-0260 | Telephone: (212) 474-1000 |
| 18 |  | |
| 19 | *Counsel for the Plaintiff States* | *Counsel for Plaintiff Epic Games, Inc.* |

*Caption continued on next page.*

---

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD<br><br>*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD<br><br>*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD<br><br>*Match Group, LLC, et al, v. Google LLC, et al.*, Case No. 3:22-cv-02746-JD | Case No. 3:21-md-02981-JD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO BIFURCATE DEFENDANTS' COUNTERCLAIMS AGAINST EPIC AND MATCH**<br><br>Judge:   Hon. James Donato<br><br>Date:        September 7, 2023<br>Time:       10:00 a.m.<br>Courtroom:  11 |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.     BIFURCATION WOULD MAKE TRIAL MORE EFFICIENT .......................... 2

         A.    Google Substantially Overstates the Factual Overlap Between Its Counterclaims and the Core Antitrust Claims. ........................................... 2

         B.    Bifurcation Would Promote Efficiency by Narrowing the Triable Issues ................................................................................................................ 5

    II.    BIFURCATION IS NECESSARY TO PREVENT PREJUDICE TO THE STATES AND CONSUMERS ................................................................................ 7

         A.    Google's Opposition Confirms That a Failure to Bifurcate Would Prejudice the States and Consumers. ............................................................ 7

         B.    Bifurcation Would Not Prejudice Google. ................................................ 10

CONCLUSION ............................................................................................................................. 10

i

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

# TABLE OF AUTHORITIES

**Cases**

*Andrade v. Rambosk*,
   No. 2:22-cv-482-JLB-KCD, 2023 WL 2077427 (M.D. Fla. Feb. 17, 2023) ............................. 8

*Blessing v. Sirius XM Radio Inc.*,
   756 F. Supp. 2d 445 (S.D.N.Y. 2010) .................................................................................... 9

*Kaiser Steel Corp. v. Mullins*,
   455 U.S. 72 (1982) .............................................................................................................. 5, 6

*Lazar v. Superior Court of Los Angeles*,
   12 Cal. 4th 631 (1996) ............................................................................................................ 6

*Marentes v. State Farm Mut. Auto. Ins. Co.*,
   224 F. Supp. 3d 891 (N.D. Cal. 2016) .................................................................................... 6

*Memorex Corp. v. Int'l Bus. Machs. Corp.*,
   555 F.2d 1379 (9th Cir. 1977) ................................................................................................ 2

*N. Pac. Ins. Co. v. Stucky*,
   CV 12-15-H-DLC, 2013 WL 5408837 (D. Mont. Sept. 25, 2013) ........................................ 8

*New York v. Meta Platforms, Inc.*,
   66 F.4th 288 (D.C. Cir. 2023) ................................................................................................ 9

*Owens v. Haslett*,
   98 Cal. App. 2d 829 (1950) .................................................................................................... 5

*Ryan v. Mike-Ron Corp.*,
   226 Cal. App. 2d 71 (1964) .................................................................................................... 5

*SCFC ILC, Inc. v. Visa U.S.A. Inc.*,
   801 F. Supp. 517 (D. Utah 1992) ..................................................................................... 7, 10

*SEC v. Pac. W. Cap. Grp., Inc.*,
   No. CV 15-2563 FMO (FFMx), 2018 WL 6822607 (C.D. Cal. Feb. 13, 2018) .................... 8

*Smith v. Off. of Alameda Cnty. Pub. Def.*,
   No. 20-cv-08534-JST, 2022 WL 20016848 (N.D. Cal. Aug. 30, 2022) ................................ 8

**Other Authorities**

Sameer Samat, *Listening to Developer Feedback to Improve Google Play*, ANDROID
   DEVELOPERS BLOG (Sept. 28, 2020), https://android-developers.googleblog.com/2020/09/
   listening-to-developer-feedback-to.html ................................................................................ 4

ii

REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

**Rules**

Fed. R. Civ. P. 42 ................................................................................................................1, 9

# INTRODUCTION

This is a complex antitrust case involving four different Plaintiff groups, conduct ranging more than a decade, and difficult economic and technological issues. The jury should be able to focus on the complex issues at the core of the antitrust claims without the distraction of irrelevant evidence and legal theories regarding alleged misconduct of two individual Plaintiffs. This is particularly true where, as here, bifurcating that unrelated evidence against Epic and Match will promote the efficiency of the trial as a whole and prevent undue prejudice to the State and Consumer Plaintiffs.

Google does not dispute that the Court can exercise its discretion to bifurcate Google's counterclaims "[f]or convenience, to avoid prejudice, or to expedite and economize," or that any one of those grounds is sufficient. Fed. R. Civ. P. 42(b). Nor does Google dispute that the vast majority of evidence that Plaintiffs will introduce at trial to support their antitrust claims—*e.g.*, Google's agreements with carriers, OEMs, and would-be competitors—has nothing to do with Google's counterclaims. Mot. at 2. Google fails to rebut the substantial efficiencies gained from trying the counterclaims after the common antitrust claims—including the strong possibility that the counterclaims would not have to be tried *at all*. Moreover, Google's counterclaims against Epic and Match relate to individualized issues that are separate from the core antitrust claims. Trying those claims together with the core antitrust claims risks substantial prejudice to the States and Consumers, who had no hand in the misconduct that Google alleges against Epic and Match. These circumstances provide more than sufficient grounds to bifurcate Google's counterclaims against Epic and Match.

Instead of directly addressing Plaintiffs' arguments, Google attempts to argue that bifurcation would be inefficient based on its plan to present to the jury "much of the same evidence to defend against Plaintiffs' antitrust claims and prove its counterclaims." Opp. at 6. In effect, Google argues that its defenses to Plaintiffs' claims that Google monopolized markets that impact billions of individual users and tens of thousands of developers worldwide somehow depend on the specific details of Epic's and Match's alleged conduct. Google's opposition thus exposes its true aim: to present evidence of Epic's and Match's alleged bad faith conduct in an attempt to improperly

influence the jury's assessment of Plaintiffs' common antitrust claims. The Court should reject these efforts, and grant Plaintiffs' motion to bifurcate Google's counterclaims against Epic and Match.

## ARGUMENT

### I. BIFURCATION WOULD MAKE TRIAL MORE EFFICIENT

Google's opposition confirms that bifurcation would provide significant efficiency benefits. *First*, as Google's opposition demonstrates, any factual overlap would be limited, and the jury would benefit from separating the distinct counterclaim issues from the complex antitrust analysis. *Second*, Google fails to rebut the efficiencies of bifurcation identified in Plaintiffs' opening motion.

#### A. Google Substantially Overstates the Factual Overlap Between Its Counterclaims and the Core Antitrust Claims.

Google asserts that it "would present much of the same evidence to defend against Plaintiffs' antitrust claims and prove its counterclaims." Opp. at 6. Specifically, Google insists that it intends to present evidence of the Epic and Match conduct that forms the basis of its respective counterclaims as a central aspect of its antitrust defense.[1] *Id.* at 5. Even taking these assertions as true, Google does not argue that its antitrust defenses require anywhere near the quantum of evidence about the specifics of Epic's and Match's alleged conduct needed to prove its counterclaims.

Consider the conduct Google alleges against Epic. Google's opposition purports to explain Epic's decision to circumvent Google's billing platform. *Id.* ("Epic secretly engineered a software mechanism to allow users to pay with Epic's billing system, sidestepping Google and the Google Play Billing policy completely."). But there is a significant difference between (1) pointing to Epic at trial as an example of how developers might attempt to "sidestep" Google Play Billing, and (2) spending hours—possibly days—of trial time presenting the details of Epic's "Project Liberty," Epic's engagement of a public relations firm to shape the narrative around the project, and Epic's other alleged bad faith conduct. Those details are irrelevant to understanding Google's defenses to

---

[1] As argued in Plaintiffs' opening brief, the only affirmative defense that conceivably relates to Google's counterclaims is unclean hands, but "'[u]nclean hands' has not been recognized as a defense to an antitrust action for many years." *Memorex Corp. v. Int'l Bus. Machs. Corp.*, 555 F.2d 1379, 1381 (9th Cir. 1977); Mot. at 10.

the common antitrust issues. Tellingly, Google's most recent witness list indicates it may or will call *nine* Epic witnesses live and may designate deposition testimony from four further Epic witnesses. Mason Decl. Ex. 1 at 1–3. Plaintiffs expect that number will be significantly reduced if the counterclaims are bifurcated.

Google also asserts that it plans to defend against Plaintiffs' antitrust claims by presenting evidence about Epic's "hotfix" that enabled its users to use Epic's payment solution as an alternative to Google Play Billing. Opp. at 6. Google contends that the hotfix shows that Google cannot trust even sophisticated developers like Epic, thereby justifying Google's imposition of "unknown sources" warnings even for well-known, trusted developers. *Id.* But Google does not explain how evidence that Epic attempted to circumvent Google's anticompetitive tie supports Google's argument that major developers cannot be trusted to ensure they do not infect their own customers' devices with malware. Simply put, one developer's strategy to publicly circumvent Google's tie to draw attention to Google's unlawful practices is no defense to Google's overbroad security warnings.[2]

Match's alleged conduct is similarly irrelevant to Google's defense to the common antitrust claims. Google says it intends to argue at trial that its Google Play Billing tie is necessary because "it is the most efficient way to ensure that Google is actually paid for the value it delivers through Android and the Play store." Opp. at 5. And that "[t]o prove that point at trial," it will present evidence that "Match evaded paying the service fee it owed to Google for many years, and after Google attempted to enforce its billing requirement against Match, Match deceived Google about its intentions to comply." *Id.* But that claim has nothing to do with showing the so-called "efficiencies" of an anticompetitive tie as a monetization strategy in the context of the antitrust trial.

---

[2] Google also claims that it will need to address the removal of *Fortnite* from the Play Store as part of defending its antitrust claims. Opp. at 7. But brief testimony explaining that *Fortnite* was removed from the Play Store for failure to comply with Google's policies—a fact that is not in dispute—is a far cry from the exhaustive testimony that would be necessary to tell the story detailed in Google's counterclaims about how Epic supposedly concocted an elaborate scheme to deceive Google, which resulted in *Fortnite* being removed.

Furthermore, as the briefing on Match's Motion for Partial Summary Judgment demonstrates, Google's counterclaims (if they survive the antitrust trial) will require resolution of issues that have *absolutely nothing* to do with Google's tie, including questions of contract modification, waiver, consent, consideration, rescission, causation, and damages. *See* Dkt. 488-1 at 11–15; Dkt. 507-1 at 11–16; Dkt. 528-1 at 3–8. In fact, Google lists *six* Match witnesses it may or will call at trial—far more than necessary to present its purported defense to the illegal tie. Mason Decl. Ex. 1 at 1–3.

Google's other examples of factual overlap between its counterclaims and the core antitrust claims are similarly strained. The fact that one form contract, the DDA, is involved in both the antitrust claims and counterclaims does not mean bifurcation will introduce complexities, as Google asserts. *See* Opp. at 6. The first phase of trial would determine whether the agreement violates the antitrust laws. Then, *and only if needed*, the same jury in a second phase will decide whether the agreement was breached. No inefficiencies would arise from separating consideration of these distinct questions. To the contrary, substantial efficiency would result if the jury never even needs to consider the counterclaims. *See infra* § I.B; Mot. at 11–12.

Likewise, although the antitrust claims and Google's counterclaims against Match implicate Google's September 2020 statements "[c]larifying [its] policies regarding who needs to use Google Play's billing system and who does not," the evidence about those statements needed to try both sets of claims will not significantly overlap. Sameer Samat, *Listening to Developer Feedback to Improve Google Play*, ANDROID DEVELOPERS BLOG (Sept. 28, 2020), https://android-developers.googleblog.com/2020/09/listening-to-developer-feedback-to.html. The paragraphs of Match's Answer that Google cites in support of its claims of overlap *admit* that Google publicly announced a policy change that would have ultimately required Match to use Google Play Billing exclusively as of March 31, 2022; that will not be a point of dispute. Opp. at 7 (citing Dkt. 335 ¶ 48). And Google has not attempted to show that evidence regarding waiver, modification, and consideration will

overlap with the evidence needed to defend against the common antitrust claims. *See* Dkt. 507-1 at 11–16; Dkt. 528-1 at 3–8.[3]

### B. Bifurcation Would Promote Efficiency by Narrowing the Triable Issues.

As Plaintiffs explained in their motion, bifurcation would be efficient because the outcome of the antitrust phase would either obviate the need for, or significantly narrow the issues presented in, the counterclaim trial. Mot. at 11–13. If the developer agreements violate the antitrust laws, Google's counterclaims fail and will be disposed of without the need for the jury (and Google's witnesses) to sit through days of additional testimony.

Google's only response is to elide hornbook law (and ignore Plaintiffs' arguments) that in the context of the Sherman Act, "illegal promises will not be enforced." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77–82 (1982). Unable to escape this black-letter doctrine (and without confronting it), Google resorts to mischaracterizing Plaintiffs' arguments as "equivalent to saying that because they believe Google charges a *supracompetitive* service fee, they should not have to pay anything *at all* for the value they received from the Google Play store." Opp. at 9. That is wrong: Plaintiffs claim that they do not owe Google anything on Google's counterclaims because Google's agreements and tying practice *violate the antitrust laws*.

Google also cites no authority for the proposition that it could salvage a tie found unlawful on a tenuous extra-contractual right to recover for the "value" it provided Epic and Match. The law is the opposite. Put simply, "a guilty party to an illegal contract cannot recover in quasi contract for the benefit conferred." *Ryan v. Mike-Ron Corp.*, 226 Cal. App. 2d 71, 75 (1964) ("That the application of this rule may leave one of the parties unjustly enriched is generally deemed unimportant since the purpose of the rule is not to effect justice between the parties, but to discourage transactions in derogation of the public interest."); *Owens v. Haslett*, 98 Cal. App. 2d 829, 833 (1950) (the law "precludes recovery on principles of quasicontract for benefits conferred under an illegal

---

[3] Google also asserts that the September 2020 announcement overlaps with the States' own state-law claims. Opp. at 6. But the States do not currently intend to spend any substantial amount of trial time on their claims concerning the misleading nature of Google's September 2020 statements.

bargain, as well as an action on the bargain itself" (citation omitted)). Google does not even attempt to address the caselaw cited in Plaintiffs' motion on this point.[4]

Google's false promise claim against Match will likewise fail if the DDA is determined to be illegal. Google (again) ignores Plaintiffs' arguments. As explained in Plaintiffs' motion, a legal and enforceable DDA is a necessary factual predicate for Google's false promise claim. Google claims that Match had an obligation to comply with the DDA and falsely promised it would do so. And if the DDA were found illegal, any promise by Match to comply would *also* not be enforceable. *See Kaiser Steel*, 455 U.S. at 77–82. Additionally, Google seeks damages in the form of "service fees that Match owes Google" due to "noncompliance with Google's payments policies." Opp. at 9 n.2; *id.* at 7 ("[T]here will be damages evidence for the counterclaims . . . principally a calculation of lost service fees based on the number of transactions after specific dates."). But as before, if those policies in the DDA are determined to be illegal, then Google has no entitlement to damages or justifiable reliance—essential elements of its false promise claim. *Marentes v. State Farm Mut. Auto. Ins. Co.*, 224 F. Supp. 3d 891, 922 (N.D. Cal. 2016) (granting summary judgment where plaintiffs "have not shown reliance resulting in damages"; therefore, "Plaintiffs' claim for promissory fraud fails"). Google's only cited case—*Lazar*—is inapposite, as it concerns an employment contract that was not found to be illegal. *Lazar*, 12 Cal. 4th at 635. It does not concern whether a party may recover for a false promise after a bargain was found illegal, or whether Google may justifiably rely on an illegal bargain, which it cannot.

Trying the antitrust claims first would therefore be most efficient because it would either moot Google's counterclaims entirely or significantly narrow the issues for the second phase, which could eliminate days of unnecessary testimony. Google's claim that Plaintiffs' proposed trial structure would drag the trial out to the December holidays is thus misplaced. Opp. at 1, 12. To the

---

[4] The only case Google cites for its assertion that its "claims for unjust enrichment against Epic and Match . . . will be heard regardless of the jury's findings on Plaintiffs' antitrust claims" is *Lazar v. Superior Court of Los Angeles*, 12 Cal. 4th 631, 638 (1996), which does not even mention unjust enrichment. Opp. at 9.

1  contrary, Google's current witness list shows that substantial time could be *saved* by bifurcation; that
2  list currently includes a total of *19* Epic and Match witnesses—the same as the 19 Google witnesses
3  that are listed. Mason Decl. Ex. 1 at 2–3.

4        Finally, given the gravity and import of Plaintiffs' antitrust claims in comparison to Google's
5  individualized counterclaims, bifurcation would serve the important interests of judicial economy by
6  preventing the counterclaims from "undermin[ing] the focus of the trier-of-fact on the important
7  antitrust issues raised in this action." *SCFC ILC, Inc. v. Visa U.S.A. Inc.*, 801 F. Supp. 517, 528 (D.
8  Utah 1992). Google's attempt to distinguish *SCFC* egregiously mischaracterizes that case. Opp. at 8.
9  There, the court noted that "*some* evidence pertinent to the non-antitrust counterclaims, particularly
10 *those dealing with fraud and bad faith*, probably will not be relevant to the antitrust dispute." *Id.* at
11 528 (emphases added). The same is true here. And while Google has identified some limited factual
12 overlap, significant portions of the counterclaim evidence, and in particular the evidence relating to
13 Epic's and Match's alleged bad faith dealings with Google, will not overlap with the evidence
14 presented in connection with the core antitrust claims. Bifurcation would better respect the jury's
15 time and allow for a more efficient and comprehensible presentation of the case.

## II. BIFURCATION IS NECESSARY TO PREVENT PREJUDICE TO THE STATES AND CONSUMERS

### A. Google's Opposition Confirms That a Failure to Bifurcate Would Prejudice the States and Consumers.

19       Google hardly engages with the prejudice the State and Consumer Plaintiffs would suffer if
20 the counterclaims were tried with the core antitrust claims. *See* Mot. at 4–6. Google's primary
21 response is that no jury would "confuse the Attorneys General of 39 states and territories with the
22 developers of *Tinder* and *Fortnite*." Opp. at 10. Of course, Plaintiffs do not believe the jury would
23 confuse an Attorney General's Office for an app developer. But the real and very substantial risk—
24 one that Google essentially ignores—is that, given the streamlined joint trial, the jury could
25 understand that the Plaintiffs are presenting a *single case*, and could hold conduct attributable to only
26 one plaintiff against all of the Plaintiffs when considering their common antitrust claims. An

1  instruction reminding the jury that Epic and Match are distinct from the States and Consumers would
2  do nothing to address that concern. Opp. at 12.[5]

3       Google expressly confirms that it intends to use evidence of what it describes as bad faith
4  conduct by Epic and Match to try to "rebut[] Plaintiffs' notion that all major developers can be
5  trusted." Opp. at 6. Using Epic's and Match's alleged bad acts to impugn *all developers* reveals
6  Google's intention to use this counterclaim evidence to mislead the jury into rendering a verdict in
7  Google's favor on the common antitrust claims. That is a naked effort to tie the fate of the States and
8  Consumers' claims to the jury's assessment of Epic's and Match's alleged conduct. That is precisely
9  the prejudice the States and Consumers would suffer from trying the counterclaims and common
10 antitrust claims together.

11      Google's efforts to distinguish the specific types of prejudice that other courts have found to
12 warrant bifurcation are without merit. Opp. at 11. It is indisputable that courts can, and regularly do,
13 bifurcate claims in precisely the way Plaintiffs propose here in order to avoid prejudicial spill over
14 from one aspect of a case to another. *See* Mot. at 12. There is little doubt that the States and
15 Consumers *would* suffer prejudice without bifurcation. At a minimum, inclusion of Google's
16 counterclaims would "undermine" the jury's focus "on the important antitrust issues raised in this
17 action." *SCFC*, 801 F. Supp. at 528.

18      Google's opposition also places undue focus on the *legal* simplicity of Google's
19 counterclaims, without engaging with the extensive counterclaim-specific *fact* evidence that Google
20 appears intent on presenting to the jury. *See* Mot. at 4–5; Opp. at 5–6. Google simply ignores the jury

---

[5] None of the cases Google cites (notably without parentheticals or quotations) addresses a remotely similar situation. *See N. Pac. Ins. Co. v. Stucky*, CV 12-15-H-DLC, 2013 WL 5408837, at *3 (D. Mont. Sept. 25, 2013) (no bifurcation of damages and liability in insurance coverage dispute where jury instructed to first make coverage determination); *Smith v. Off. of Alameda Cnty. Pub. Def.*, No. 20-cv-08534-JST, 2022 WL 20016848, at *1 (N.D. Cal. Aug. 30, 2022) (denying bifurcation of *Monell* discovery from individual discovery without prejudice to renewal); *Andrade v. Rambosk*, No. 2:22-cv-482-JLB-KCD, 2023 WL 2077427, at *2–3 (M.D. Fla. Feb. 17, 2023) (same); *SEC v. Pac. W. Cap. Grp., Inc.*, No. CV 15-2563 FMO (FFMx), 2018 WL 6822607, at *1–2 (C.D. Cal. Feb. 13, 2018) (denying motion to bifurcate threshold issue of whether "life settlements at issue are securities").

confusion that could result from hours of testimony on contract-based claims that have nothing to do with the common antitrust claims. Indeed, the main case Google cites for the proposition that "juries regularly hear counterclaims in complicated cases," Opp. at 13, did not even involve counterclaims. *See Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 449 (S.D.N.Y. 2010). The other cases Google cites are outlier patent cases, which Google admits elsewhere rely on "a body of case law" that is inapplicable here. Opp. at 8.

Finally, Google adopts a strikingly dismissive tone with respect to the States' sovereign interests in prosecuting their claims on behalf of the citizens they represent—even placing "sovereign" in scare quotes. Opp. at 2. The Plaintiff States' sovereignty is not in dispute. Google very clearly intends to insult the States' sovereignty by hoping that the alleged bad faith conduct it intends to introduce against Epic and Match in support of its counterclaims rubs off on the States.

Google ignores the on-point cases cited by Plaintiffs establishing that the States' sovereign interests are in fact a strong basis to bifurcate the counterclaims here. *See* Mot. at 6 (citing cases). Google instead relies on *New York v. Meta Platforms, Inc.*, 66 F.4th 288 (D.C. Cir. 2023), which is inapposite. There, when the D.C. Circuit wrote that the States should not "be treated as 'special persons,'" it was interpreting "persons" in Section 16 of the Clayton Act, rejecting the States' argument that laches did not apply to their antitrust claims. *Id.* at 299.

According to Google, the States somehow sacrificed any sovereign interest they had when they chose to intervene in existing litigation and opted to litigate their claims to enforce the antitrust laws on behalf of their citizens alongside private actors for the sake of efficiency. Opp. at 10–11. It would be a perverse rule to require the States to pursue the least efficient means of litigating their claims—and waste judicial resources—in order to avoid sacrificing the deference they are due as sovereigns. In any event, the States are hardly asking to be treated as "special;" they are asking to get a fair shot at trying their extremely significant antitrust claims without being saddled with alleged bad faith conduct evidence concerning two private plaintiffs. That relief is squarely within the Court's discretion under Federal Rule of Civil Procedure 42.

### B. Bifurcation Would Not Prejudice Google.

In contrast, Google would not be prejudiced by bifurcation. Google claims no prejudice to its presentation in the core antitrust trial, and Google will face no prejudice to its presentation of its counterclaims if they are mooted by resolution of the antitrust claims. *See infra* § 1.B; Mot. at 11–12. The primary source of prejudice Google identifies is that—if the counterclaims survive—some of its employees may have to come to court twice. Opp. at 12. Notably, Google does not identify which witnesses it would call for both its antitrust defense and counterclaims. Even assuming such a witness exists, Google does not explain why it would be necessary to call that witness twice, or why it would be a significant burden to divide that witness's testimony between phases, particularly given that Google is headquartered in the Bay Area. *See SCFC*, 801 F. Supp. at 528 (bifurcation will "avoid the possibility of unfair prejudice to either party" and "because some evidence pertinent to the non-antitrust counterclaims, particularly those dealing with fraud and bad faith, probably will not be relevant to the antitrust dispute, the first proceeding may be shorter than originally anticipated"). For the reasons enumerated above, it is not necessarily the case that *any* employee would need to come to court twice, especially if the common antitrust trial moots Google's counterclaims. And even if a second phase were required, any burden would be quite minimal, as Google overstates the factual relationship between its antitrust defenses and its counterclaims. Any prejudice argument by Google is purely speculative.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the relief requested in their motion, namely that the Court bifurcate the trial of Plaintiffs' common antitrust claims from Google's counterclaims against Epic and Match and order that, should Google's counterclaims remain viable after the verdict on the antitrust claims, they will be tried to the same jury in a second phase against Epic and Match only.

| | | |
|---|---|---|
| 1 | DATED: August 17, 2023 | OFFICE OF THE UTAH ATTORNEY GENERAL |
| 2 | | |
| 3 | | By: */s/ Brendan P. Glackin* |
| 4 | | Brendan P. Glackin |
| 5 | | Lauren M. Weinstein<br>*Attorneys for Plaintiff States* |
| 6 | | |
| 7 | DATED: August 17, 2023 | BARTLIT BECK LLP |
| 8 | | |
| 9 | | |
| 10 | | By: */s/ Karma M. Giulianelli* |
| 11 | | Karma M. Giulianelli<br>*Co-Lead Counsel for Consumer Plaintiffs* |
| 12 | | |
| 13 | DATED: August 17, 2023 | KAPLAN FOX & KILSHEIMER LLP |
| 14 | | |
| 15 | | By: */s/ Hae Sung Nam* |
| 16 | | Hae Sung Nam<br>*Co-Lead Counsel for Consumer Plaintiffs* |
| 17 | | |
| 18 | DATED: August 17, 2023 | FAEGRE DRINKER BIDDLE & REATH LLP |
| 19 | | |
| 20 | | By: */s/ Paul J. Riehle* |
| 21 | | Paul J. Riehle<br>*Counsel for Plaintiff Epic Games, Inc.* |

- 11 -
REPLY IN SUPPORT OF MOTION TO BIFURCATE COUNTERCLAIMS AGAINST EPIC AND MATCH
Case Nos. 3:21-md-02981-JD, 3:22-cv-02746-JD, 3:20-cv-05671-JD, 3:20-cv-05761-JD & 3:21-cv-05227-JD

| | | |
|---|---|---|
| 1 | DATED: August 17, 2023 | CRAVATH, SWAINE & MOORE LLP |
| | | By: */s/ Gary A. Bornstein* |
| | | Gary A. Bornstein (*pro hac vice*) |
| | | *Counsel for Plaintiff Epic Games, Inc.* |
| | | |
| 7 | DATED: August 17, 2023 | HUESTON HENNIGAN LLP |
| | | By: */s/ Douglas J. Dixon* |
| | | Douglas J. Dixon |
| | | *Attorney for Plaintiffs Match Group, LLC, Humor Rainbow, Inc., PlentyofFish Media ULC, and People Media, Inc.* |

**E-FILING ATTESTATION**

I, Gary A. Bornstein, am the ECF User whose ID and password are being used to file this document. In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories identified above has concurred in this filing.

                                                   */s/ Gary A. Bornstein*
                                                   Gary A. Bornstein