Pages 1 - 41

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

| | |
|---|---|
| IN RE GOOGLE PLAY STORE<br>ANTITRUST LITIGATION | )<br>)  **NO. 21-md-02981-JD**<br>) |
| ──────────────────────────── | )<br>) |
| THIS DOCUMENT RELATES TO: | )<br>) |
| Epic Games, Inc. vs. Google LLC, et al.,<br>Case No. 3:20-cv-05671-JD | )<br>)<br>) |
| In Re Google Play Consumer Antitrust<br>Litigation, Case No. 3:20-cv-05761-JD | )<br>)<br>) |
| State of Utah, et al. v. Google LLC,<br>et al., Case No. 3:21-cv-05227-JD | )<br>)<br>) |
| Match Group, LLC, et al. vs. Google LLC,<br>et al., Case No. 3:22-cv-02746-JD | )<br>) |
| ──────────────────────────── | ) |

San Francisco, California
Thursday, September 7, 2023

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff Epic Games in 20-cv-05671 JD:
                    CRAVATH SWAINE AND MOORE LLP
                    825 Eighth Avenue
                    New York, New York 10019
              BY:  **GARY A. BORNSTEIN, ATTORNEY AT LAW**
                   **YONATAN EVEN, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Ana Dub, RDR, RMR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

**APPEARANCES**:   (CONTINUED)

For the Consumer Class Plaintiffs in 20-cv-05761 JD:
                        KAPLAN FOX AND KILSHEIMER LLP
                        850 Third Avenue
                        14th Floor
                        New York, New York 10022
                 BY:   **HAE SUNG NAM, ATTORNEY AT LAW**

                        BARTLIT BECK LLP
                        1801 Wewatta Street
                        Suite 1200
                        Denver, Colorado 80202
                 BY:   **KARMA M. GIULIANELLI, ATTORNEY AT LAW**

For State of Utah and the Plaintiff States in 21-cv-05227 JD:
                        OFFICE OF THE UTAH ATTORNEY GENERAL
                        160 East 300 South
                        Fifth Floor
                        Salt Lake City, Utah 84114
                 BY:   **BRENDAN P. GLACKIN**
                        **ASSISTANT ATTORNEY GENERAL**

For Match Group, LLC in 22-cv-02746 JD:
                        HUESTON HENNIGAN LLP
                        620 Newport Center Drive, Suite 1300
                        Newport Beach, California 92660
                 BY:   **DOUGLAS J. DIXON, ATTORNEY AT LAW**


For Defendants:
                        MORGAN LEWIS & BOCKIUS LLP
                        One Market Street, 28th Floor
                        Spear Street Tower
                        San Francisco, California 94105-1596
                 BY:   **BRIAN C. ROCCA, ATTORNEY AT LAW**
                        **MICHELLE PARK CHIU, ATTORNEY AT LAW**

                        MUNGER TOLLES & OLSON LLP
                        350 South Grand Avenue
                        Fiftieth Floor
                        Los Angeles, California 90071
                 BY:   **GLENN D. POMERANTZ, ATTORNEY AT LAW**

            **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

```
1    APPEARANCES:  (CONTINUED)

2    For Defendants:
                         MUNGER, TOLLES & OLSON LLP
3                        560 Mission Street, 27th Floor
                         San Francisco, California 94105
4                   BY:  DANE P. SHIKMAN, ATTORNEY AT LAW

5
                         MUNGER, TOLLES & OLSON LLP
6                        601 Massachusetts Avenue NW
                         Washington, D.C. 20004
7                   BY:  JONATHAN KRAVIS, ATTORNEY AT LAW

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | **Thursday - September 7, 2023**                     **11:15 a.m.** |

<br>

2                   **P R O C E E D I N G S**

3                          ---o0o---

4       **THE CLERK:**  Calling Civil 20-5671, Epic Games vs.

5 Google LLC; calling Civil 20-5761, In Re Google Play Consumer

6 Antitrust Litigation; Multidistrict Litigation 21-2981, In Re

7 Google Play Store Antitrust Litigation; Civil 21-5227, State of

8 Utah vs. Google LLC; and Civil 22-2746, Match Group, LLC vs.

9 Google LLC.

10       Counsel, please state your appearances for the record.

11       **MR. GLACKIN:**  Brendan Glackin for the states.

12       **MS. GIULIANELLI:**  Good morning.  Karma Giulianelli for

13 the consumers.

14       **MR. DIXON:**  Good morning, Your Honor.  Doug Dixon of

15 Hueston Hennigan for the Match plaintiffs.

16       **MR. BORNSTEIN:**  Good morning.  Gary Bornstein for

17 plaintiff Epic Games.

18       **MR. EVEN:**  Good morning.  Yonatan Even for Epic Games.

19       **MR. POMERANTZ:**  Good morning, Your Honor.  Glenn

20 Pomerantz for Google.  And with me today is my partner Jonathan

21 Kravis and Dane Shikman.

22       **MR. ROCCA:**  And, Your Honor, it's Brian Rocca and

23 Michelle Park Chiu of Morgan Lewis for Google.  Thank you.

24       **THE COURT:**  Okay.  Well, there have been developments.

25       So what's happening with the proposed settlements?

1          **MR. GLACKIN:**  Good morning, Your Honor.  Brendan

2     Glackin on behalf of the states.

3          So, I mean, we're pleased to report, as you saw in the

4     stipulation, that there's an agreement in principle between the

5     states and the consumers and Google to resolve those claims.

6          I mean, I'm happy to answer any questions --

7          **THE COURT:**  Well, I'm wondering --

8          **MR. GLACKIN:**  -- that you --

9          **THE COURT:**  Thank you.  I do have some questions.

10    So -- and we have to talk about scheduling.

11         I'll just tell you now, I'm very reluctant to move any

12    trial dates until I see something done, but we'll talk about

13    that.

14         So, now, the states are going to be settling on a

15    *parens patriae* basis; is that right?

16         **MR. GLACKIN:**  Correct, Your Honor.  In terms of the

17    format of the settlement, there will be an amended complaint

18    that includes the current state attorneys general and also the

19    attorneys general in jurisdictions that were previously part of

20    the proposed class.  All of those claims of absent consumers

21    will be resolved on a *parens patriae* basis, and the claims of

22    the individual consumers will also be resolved as part of the

23    settlement process.

24         **THE COURT:**  All right.  Are you envisioning all 50

25    states plus the District?

 1          **MR. GLACKIN:**  Right now, 52 jurisdictions, Your Honor.

 2          **THE COURT:**  52.  Okay.  What's the 52nd one?

 3          **MR. GLACKIN:**  Puerto Rico.

 4          **THE COURT:**  Oh, okay.  All right.

 5          Okay.  And is this going to involve money?

 6          **MR. GLACKIN:**  There are monetary and non-monetary

 7    terms to the settlement, Your Honor.

 8          **THE COURT:**  Are the monetary terms going to be

 9    deposited with the state treasuries, or is it going to go to

10    consumers, or how is that going to work?

11          **MR. GLACKIN:**  Well, Your Honor, there are aspects of

12    that that are still not ready to be disclosed.  But in general,

13    there will be the creation of a fund for relief of consumers.

14    There will also be money going to other places.

15          **THE COURT:**  And is the non-monetary relief going to be

16    some kind of structural change in the commission rate?

17          **MR. GLACKIN:**  I don't believe I'm able right now --

18          **THE COURT:**  Not ready to say?  All right.  That's

19    fine.  Okay.

20          All right.  You know, there's always an issue -- I am

21    going to decertify the consumer class.  There's always an issue

22    with when you don't certify or you decertify, it's

23    eyebrow-raising to suddenly have a settlement class.

24          I understand you're not going to ask for that.  Is

25    that right?

1      **MR. GLACKIN:**  Correct, Your Honor.  And if I could

2   speak to that a little bit.  So, first of all, correct, we are

3   not going to need or request Your Honor to certify a settlement

4   class.  It's unnecessary in the *parens* context.  And that's one

5   reason that Congress enacted this amendment to the Clayton Act

6   40 years ago.

7          You know, in terms of -- I anticipated Your Honor

8   might see that sequencing.  And what I would say is that, as we

9   set forth in the stipulation, this settlement, which is

10  actually -- and I want to be clear because when we get to

11  talking about scheduling and interim dates, this is not just a

12  scribble on the back of a napkin.  This is a term sheet that

13  has been heavily negotiated between the parties over a matter

14  of months and that has been now approved at the staff level by

15  all 52 of these jurisdictions.

16      **THE COURT:**  Well, I was wondering about that.  So at

17  least a substantial preliminary review and approval has been

18  expressed by the 52 jurisdictions?

19      **MR. GLACKIN:**  Oh, yes, at the staff level.  I mean, my

20  colleagues at the attorneys general's offices worked over the

21  Labor Day weekend to get sign-off not only from the original 39

22  jurisdictions, but from all 13 of the new jurisdictions as

23  well.  And we have staff-level approval at the appropriate

24  level of each of those jurisdictions.  In some cases, it's the

25  chief of antitrust enforcement.  In other cases, it's the chief

1   deputy for the state.

2           Now, I must emphasize that a settlement, particularly

3   in a case of this high profile, requires the sign-off of each

4   of the individual attorneys general; and that is, obviously --

5   that is a real decision that they have to make.  They will

6   do -- these are elected officials, by and large, the chief law

7   enforcement officers of their respective jurisdictions.  They

8   will undertake a careful review of the proposed settlement when

9   it is finalized, and they will have to sign off and approve it.

10          But at the moment, yes, we have a substantial term

11  sheet that has passed staff-level review at all 52

12  jurisdictions.

13          **THE COURT:**  Well, okay.  I mean, I'm glad to hear

14  that.  But you don't have a final set of terms yet?

15          **MR. GLACKIN:**  Your Honor, what we don't -- we have a

16  final set of terms in the sense of the core terms of the

17  agreement.

18          What we don't have is a long -- you know, the

19  long-form settlement agreement that includes the precise

20  wording of the releases, you know, and all the other bells and

21  whistles that go into the settlement of a mass action.

22          Now, ordinarily, you would be looking at me and be

23  saying:  Mr. Glackin, I know you're a -- you can act with a lot

24  of alacrity.  Let's get that done faster than the next month.

25          In this case, Your Honor, it's the -- it's not just a

1    matter of getting that agreement done.  It's a matter of then

2    also going the review process -- through the review process

3    with the individual attorneys general.  They need to be fully

4    briefed by their staff.  They need to have a full opportunity

5    to see the agreement and sign off on it.

6         The benefit to Your Honor, though, is that when that

7    long-form agreement is finally presented to you, you'll know

8    that 52 -- the chief 52 law enforcement officers of the states

9    and jurisdictions all think this is a good deal for consumers.

10   And that's, again, a benefit --

11        **THE COURT:**  Well, that may be, but what if -- what if

12   one or more decide that they can't close on the scope of the

13   release, which is not uncommon?  I'm sure Google is going to be

14   asking for a lot, and I can see one of your 52 colleagues

15   saying, "That's too much in terms of a release."

16        So let's say one person -- one or two or three states

17   doesn't agree.  What's going to happen then?  Are you going to

18   cut them out and settle anyway?  Are you going to call the

19   whole thing off?  Is this a 52-or-bust deal?

20        **MR. GLACKIN:**  I don't think there's a -- I don't think

21   that the -- I don't think there's a foregone conclusion about

22   what the result of that would be.

23        **THE COURT:**  All right.  So as of right now -- and

24   Mr. Pomerantz will need to reassure me on this as well -- this

25   is not an all-or-nothing deal.  In other words, some parties

 1  could drop out, and you would still end up settling.

 2          Is that right, Mr. Pomerantz?

 3          **MR. POMERANTZ:**  Your Honor, what we have discussed, we

 4  expect all 52 to sign off because they've seen the significant

 5  terms.

 6          **THE COURT:**  Well, I understand.  But now you're going

 7  to ask elected officials, who may have other plans and issues

 8  in mind, and they may have a different perspective.

 9          So if, let's say, 10 percent of the states drop out,

10  are you still going to settle?

11          **MR. POMERANTZ:**  What we would expect to do is have a

12  discussion with Mr. Leonelli about the possibility of having a

13  settlement class for those states.

14          **THE COURT:**  I mean, I'm not saying that's impossible.

15  I mean, it is, as I said, eyebrow-raising.  A raised eyebrow

16  does not mean "no."  But it's not going to be a slam dunk.  I'm

17  sure you understand that.

18          **MR. POMERANTZ:**  We do, Your Honor.

19          **THE COURT:**  Okay.  It can be made to work, and I know

20  how I might do that, but you're going to have to present that

21  to me in the first instance.

22          **MR. POMERANTZ:**  We understand.

23          **THE COURT:**  Okay.  So what's the -- I'm nervous about

24  banking on 52 elected officials, and I think that's -- I think

25  that's -- I'm not saying it's an unreasonable gamble, but it's

1  a risk.  And I need to understand what's going to happen if

2  10 percent of them bail for whatever reason.

3          And the answer is you don't know yet?

4      **MR. POMERANTZ:**  Your Honor, I guess what I would say

5  is, we have had discussions about, in that situation, that we

6  would discuss a settlement class for those -- consumers in

7  those states.

8      **THE COURT:**  Well, but here's the issue.  Let me

9  just -- I'll put it on the table.

10          Epic has been champing at the bit since two years ago

11  to go to trial.  Every time they come in, they say, "We were

12  ready yesterday."  And they have a trial date.  I have a trial

13  date.  We all have a trial date.  It's November 6th.  It's been

14  literally chiseled in stone.  I have a little block of granite

15  that I chiseled it in, figuratively speaking.

16          I can't do this now and have the possibility that

17  you're going to crater in the state and consumer side and then

18  say, "We can't do it.  We need a trial," because the thing we

19  must avoid at all costs is having two sets of juries wrestling

20  with the same legal issues and the same facts.  Just, we can't

21  do it.  So -- and I am not going to kick November 6th.

22      **MR. POMERANTZ:**  Your Honor, I guess what I would say

23  to you is, based on discussions we've all had over many months,

24  none of us expect that we won't have a settlement to hand to

25  you by -- before the October 12th --

1       **THE COURT:**  All right.  I value and appreciate the

2   optimism, but having presided over hundreds of class

3   settlements where people have walked in a week before trial and

4   said it's a done deal and then come back trial day and say "We

5   couldn't finish it," things happen.  All right?  I understand

6   your optimism and your expectation, but it's not a guarantee.

7       So in 30 days, what do you think the states will

8   accomplish?

9       **MR. GLACKIN:**  Well, Your Honor, I mean, in an ideal

10  world, in the next 30 days, we would have the full settlement

11  agreement papered and approved by the attorneys general.

12      We'll also be working, at the same time, to prepare

13  the motion for notice.  There'll have to be a new motion for

14  notice because the settlement notice will look different.  And

15  we would hope to be, I mean, in an ideal world, bringing that

16  to you as a package by the end of that 30-day period.

17      They -- the boulder here -- you know, the general

18  paperwork that the lawyers have to do is something we can

19  accomplish.  The boulder is getting the settlement agreement

20  papered and approved.  It might take more than --

21      **THE COURT:**  Well, let me just jump in.  I think the

22  boulder, in your words, is getting 52 elected state officials

23  to say, "This is a good deal for the people of my state."

24  That's, I think, the boulder.

25      And I understand your optimism, and you know better

1    than I do how staff and attorney generals relate, and I defer

2    to that to some extent.  But I would not be surprised at all if

3    someone somewhere said, "I can't do this for the people of my

4    state."

5            MR. GLACKIN:  Well, if I could just pivot for a minute

6    and address the issue of interim dates.

7            An issue here is that if we are held to the interim

8    dates, it's -- between now and October 12th, it's not only bad

9    for us; it's also kind of chaotic for the other plaintiffs.

10           I mean, if we're held to those dates, to avoid this

11   what I would hope is slender risk of something not working out

12   on our settlement, we're forcing the other plaintiffs to

13   basically plan to have a trial with us that they know they're

14   not going to have and -- or are highly certain they're not

15   going to have.  And that's just chaotic.

16           I mean, the only way we could solve it would be to

17   have, like, two sets of --

18           THE COURT:  Can I just share something with you?  I

19   just finished a nine-year multidistrict litigation with scores

20   of parties for antitrust, and they all faced that risk.  People

21   settled up to and during trial.  That's just life.  Okay?

22           I don't believe that Epic and Match are going to be

23   relying 100 percent for a key aspect of their case on you or

24   the consumers, and such that, if you dropped away, there would

25   be chaos and wailing on their part.  It's just not going to

1    happen.  They're going to have their case; and if you're there,

2    great; and if you're not, fine.

3              **MR. GLACKIN:**  I think --

4         **THE COURT:**  Every party has this in a multi-partied

5    case.  That, I don't buy.

6              I understand you don't want to do the work, and I

7    appreciate that.  These are public resources.  I get it.  Okay?

8    There is an efficiency issue.

9              But in a normal circumstance, if it were just you two,

10   that probably would be okay.  I would do it.  But this is a

11   different situation, you know that, as I just said a few

12   moments ago.  You know, there are two parties who are locked

13   and loaded and want to go, and their day has not come.  It's

14   been delayed and delayed and delayed by me to accommodate

15   everybody.  And now I just -- I'm not going to ask them to wait

16   longer.

17             So let me just hear from Epic and Match.

18             I mean, what do you want to do?  Let me ask you that.

19        **MR. BORNSTEIN:**  Gary Bornstein for Epic, Your Honor.

20             It will come as no surprise, we want to go to trial.

21   We want to go to trial on November 6th, and we're going to be

22   ready to do that.

23        **THE COURT:**  What about -- your colleague here says

24   you're going to be strapped if they drop out at the

25   last minute.

1          **MR. BORNSTEIN:**  The issue, I think, is not so much

2     that we'll be strapped at the last minute.  We've been planning

3     for this possibility all along, with no guarantee one way or

4     the other how it would go.

5          We do have a lot of coordination that we've been doing

6     with one another.  The people at this table have spent an awful

7     lot of time together, Your Honor, trying to prepare

8     cooperatively for this trial.

9          It is something of a burden on us to do the additional

10    coordination to make sure:  When we're doing deposition

11    designations, do we all agree?  When we're planning the expert

12    program, do we all agree?

13         There is complication associated with having multiple

14    plaintiffs that does get simpler when there are fewer of us who

15    need to agree on the --

16         **THE COURT:**  But that's actually --

17         **MR. BORNSTEIN:**  -- strategic decisions.

18         **THE COURT:**  -- the status quo.

19         Here's the issue.  You were going to do that anyway.

20    So I know now you're saying, "Oh, but, look, here's a tempting

21    off-ramp."  But that off-ramp didn't exist until a day or two

22    ago; so it hasn't added to your work.  It's just maintained the

23    status quo, which I understand is complicated.

24         But you want to start November 6th?

25         **MR. BORNSTEIN:**  Yes, Your Honor.

 1              **THE COURT:**  All right.  Match?

 2          **MR. DIXON:**  Doug Dixon for the Match plaintiffs.

 3          Your Honor, we are of the same opinion.  We want to

 4  start.  We're ready to go and would like to begin trial on

 5  November 6th.

 6          **THE COURT:**  All right.  Okay.  Well, Mr. Pomerantz, I

 7  haven't heard much from you on scheduling.

 8          **MR. POMERANTZ:**  We are also prepared to go on

 9  November 6 with Epic and Match.

10          And we agree with the counsel for the states and for

11  the consumers that allowing us to vacate the trial date and the

12  interim dates allows us to focus with them on getting the

13  settlement finalized and out for approval to the relevant

14  parties.

15          **THE COURT:**  All right.  Well, I can't do it.  I can

16  wait for 30 days.  And if you come back in 30 days, I think

17  we'll have a much clearer picture of what's going to happen.

18  Ideally, it sounds even realistically, you'll be done.  At

19  least all 52 people would have signed off on it.

20          But if I cancel you right now and this thing

21  craters -- and there is a non-trivial possibility that it will,

22  just statistically speaking.  I'm not saying anything about the

23  parties involved, but statistically speaking, settlements fall

24  apart all the time, particularly a case this complex with so

25  many moving pieces -- I can't do November 6, and I probably

1    wouldn't be able to have you back until the second or third

2    quarter of 2024 earliest.  I have a giant -- I also have a

3    giant multi-defendant murder/racketeering thing that is going

4    to go, and that might even derail Q3 of next year.

5            So you could be looking at -- I think it's unlikely,

6    but you could be looking at a year from now, and I don't think

7    Mr. Bornstein wants to have that happen.

8            **MR. GLACKIN:**  I'm sure that's right, Your Honor.

9            If I may take one last shot.  It's not just that

10   they're relying on this.  It's that our presence in the case

11   makes these things look different.  Right?  The jury

12   instructions are different if the states are in the case or not

13   in the case.

14           **THE COURT:**  Well, let me just jump in.  Okay.  30 days

15   from now is October 7th.  That's fine.  I've got plenty --

16   look, the preliminary instructions to the jury, I can amend, if

17   you drop out, in an hour.  The final instructions for a

18   four-week trial we're probably going to end up doing during the

19   trial anyway when you're not here.  So I'm not worried about

20   that.

21           It's just a matter of the issue of acting like

22   everybody's going to be in the case for another 30 days.

23   I think you're just going to have to do that.

24           And if you don't settle -- and this is for you to

25   decide.  I'm not going to ask for anything from you.  But if it

doesn't work, you are going on November 6th.  I want to be

clear about that.  Okay?  If for whatever reason this does not

work, the named plaintiffs, consumers, no class, and the states

will be on deck November 6th with everybody else.  Okay?  I'm

not going to -- I cannot push this off saying:  Oh, well, as

you know, we were going to settle and it fell apart and we need

four more weeks.  It's not going to happen.  All right?

           So we'll see you where you are.  I'll set you for --

what is it?  October -- you want to come back October 7th?

When did you want to come back?

           MR. GLACKIN:  We'd proposed October 12th.

           THE COURT:  You want to do the 12th?  Okay.

           Now, if you get this done ahead of time, you can tell

me.  Okay?  I mean, it has to be a rock-solid representation

that all 52 officials have signed off.  And there may be some

ministerial, purely ministerial things to do, but we are

d-o-n-e; we are done.  Okay?  That's fine.  I don't mind that.

           MR. GLACKIN:  The final settlement agreement that has

been approved by the 52 attorneys general.

           THE COURT:  And approved in such a way that nobody can

come back later and say:  Oh, I was still thinking about it and

now I say no.

           You understand what I mean?

           MR. GLACKIN:  We have an interest in avoiding that

also, Your Honor.

1          **MR. POMERANTZ:**  Your Honor, if I could raise one thing

2     that follows up on what you said --

3          **THE COURT:**  Yes.

4          **MR. POMERANTZ:**  -- about the jury instructions.

5          **THE COURT:**  If I may, Mr. Pomerantz, that also means

6     Google is on -- pledged.

7          **MR. POMERANTZ:**  We're on board.

8          **THE COURT:**  So if you can't work something out -- I've

9     been talking about the states, but Google may balk at some

10    point too.  So that goes for you.  You need to pledge to me:

11    This is a done deal.  All we have to do is literally change

12    paragraph numbering.  But other than that, we're good.

13         **MR. POMERANTZ:**  Okay.  Understood, Your Honor.

14         On jury instructions, what Mr. Glackin was referring

15    to was that the 39 states have combined alleged, I think,

16    something over 200 state law claims, which raise a lot of

17    different jury instructions.

18         **THE COURT:**  Just wait on that.  Okay?  We have plenty

19    of time.

20         **MR. POMERANTZ:**  So we don't need to deal with that

21    between now and October --

22         **THE COURT:**  That's the one thing I'll let you -- I

23    mean, Epic and Match, you should do your jury instructions.

24    All right?  I will carve out, for the moment, just that.  But

25    that's it.  That's the only thing I will carve out.  And the

1    only reason I'll carve that out is if you tell me on

2    October 12th "We failed," I will have at least four weeks to

3    get this done.  When I say "I," I mean we.  We will have at

4    least four weeks to get this done.

5        It won't be that hard.  These are going to be

6    Cartwright-type instructions -- right? -- under the California

7    Cartwright Act or some state law.  They're all going to be more

8    or less the same.  There are just going to be a lot of them.

9    They're not radically different laws.  The consumer laws --

10       **MR. GLACKIN:**  Absolutely, Your Honor.  I'm just taking

11   a deep breath because there's a whole discussion there that I

12   hope we don't have to have because we've settled.

13       **THE COURT:**  No, I understand.  But it's not going to

14   be the end of the world -- we're not going to be writing this

15   as if nobody has ever tried these claims before.  We're going

16   to have plenty of exemplars to work with.

17       **MR. GLACKIN:**  That's correct, Your Honor.  We

18   appreciate the relief from that requirement because --

19       **THE COURT:**  Just that.  That's the only one.

20       **MR. GLACKIN:**  Yes, Your Honor.

21       **THE COURT:**  And then on October 13th, you may be doing

22   nothing but writing jury instructions.  So be prepared for

23   that.  Okay?

24       **MR. GLACKIN:**  Great.

25       **THE COURT:**  Okay.  Now, if Epic and Match go forward

1   by themselves, we're going to do a jury trial.  Right?  And

2   we're going to do -- okay.  That sounds good.

3            Did you want to add something, Mr. Bornstein?

4            **MR. BORNSTEIN:**  Yes, Your Honor.  Thank you.

5            Just one minor logistical issue that I want to make

6   sure we don't have any trouble with arising from what now is at

7   least arguably a divergence of interests on the plaintiff side.

8            We've all been cooperating very effectively because

9   we've been very comfortable that we're operating within a

10  common interest privilege, and I want to make sure --

11           **THE COURT:**  Why are your interests diverging, though?

12  One group is settling; you're not.  What's the divergence?

13           **MR. BORNSTEIN:**  Well, if we're now, for example,

14  planning trial strategy and we have co-plaintiffs who are at

15  the same time moving towards a settlement, arguably Google may

16  argue that there ceases to be a common interest at that point

17  and that our communications cease to be protected.

18           **THE COURT:**  I will not allow that argument to fly.

19           **MR. BORNSTEIN:**  Thank you very much, Your Honor.

20           **THE COURT:**  I'm sure Mr. Pomerantz, even if he were

21  tempted, would realize that would be not in anyone's interest

22  to argue that.

23           **MR. POMERANTZ:**  We have no intention of doing that,

24  Your Honor.

25           **MR. BORNSTEIN:**  Belts and suspenders.  Thank you, Your

```
 1    Honor.
 2          THE COURT:  All right.  While you're here, what about
 3    this Riot Games thing?  Is that you, or is that --
 4          MR. BORNSTEIN:  If you don't mind, Your Honor, I'm
 5    going to allow my partner Mr. Even to handle that.
 6          THE COURT:  Okay.  All right.
 7          MR. EVEN:  Yonatan Even, Your Honor, for Epic.
 8          So on Riot, where we are is that we have been trying
 9    for several months now to solve a problem that we think that
10    Google has created.
11          Google had four months to seek discovery, coordinated
12    discovery, from Riot.  They didn't do that.  What they did
13    instead was coordinate with Riot, who's an alleged
14    co-conspirator with Google, and got to a point where they were
15    comfortable enough, apparently, that they know what a Riot
16    witness would say in deposition, and then noticed us that
17    there's going to be a deposition in one week without any
18    documents or anything like that.
19          THE COURT:  No documents?
20          MR. EVEN:  I'm sorry?
21          THE COURT:  You didn't get any documents ahead of the
22    deposition?
23          MR. EVEN:  We didn't even know they were speaking to
24    Riot.  That was one week before the deadline, the cutoff for
25    depositions.
```

1          We told them:  That's sandbagging.  You can't do that.

2   Let's push the deposition till after the cutoff, and we'll try

3   and get documents.

4          Since then, we've been negotiating with Riot, who's

5   put up every obstacle in the book.  Nonetheless, I think we're

6   pretty close right now.

7          **THE COURT:**  Oh, okay.

8          **MR. EVEN:**  We've given them very limited search terms.

9   They told us that it hit on, I think, 16,500 documents.

10          I wrote to them and said, we agreed to many things

11   that they've asked us, like redactions and things like that.

12   We've agreed to bear significant costs, which no other third

13   party received in this case, up to $30,000.

14          They demanded more.  They said that their client is

15   currently abroad and they'll get back to us.

16          I checked again this morning.  She said he's still

17   abroad.  I haven't heard back.

18          That is the state of play.

19          **THE COURT:**  Do you want me to set a date, or what is

20   it you'd like me to do?

21          **MR. EVEN:**  So what I want, Your Honor, is to not have

22   an artificial date.  There's no magic around the date that

23   Google has proposed.  We -- I'm happy to commit --

24          **THE COURT:**  Well, the trial's in eight weeks.

25          **MR. EVEN:**  I understand that, Your Honor, and I

1  understand that -- I'm happy to commit that if we can't reach

2  resolution very quickly, we will move to compel next week,

3  let's say.  That's going to be in the --

4        **THE COURT:**  Let's just take care of it now.  So do you

5  think you have a deal?  Is that what you're saying?

6        **MR. EVEN:**  I think -- I'm very hopeful we have a deal,

7  but I haven't heard back from Riot.

8        **THE COURT:**  Do you have a deal?

9        **MS. CHIU:**  Your Honor --

10       **THE COURT:**  Can you just remind the court reporter who

11 you are?

12       **MS. CHIU:**  Yes.  Michelle Park Chiu on behalf of

13 Google.

14       We'd just like to point out that this document

15 subpoena was served in April.  Google only served a deposition

16 subpoena.  We did not actually seek documents.  We just needed

17 the testimony from a Riot individual.

18       And when Epic served their subpoena in April, they've

19 had several months to negotiate the production of documents.

20 Google has been prepared to take this deposition since March of

21 this year, and each time we propose a date, Epic has told us

22 they're not ready because they don't have any documents.

23       They did receive documents in July of this year but

24 continued to insist that they don't have enough.  And,

25 you know, they told us on August 28th that they were at an

impasse or near an impasse and were prepared to file a motion

to compel, but no such motion has been filed.

          So even if Mr. Even is correct that they are prepared

to move forward with a motion to compel in the Central District

of California, that's at least a month before any such motion

could be decided, at the earliest.

          **THE COURT:**  It's a little late now.

          It's in CD Cal?  Riot is in CD Cal?

          **MR. EVEN:**  I'm sorry?

          **THE COURT:**  Riot is in CD Cal?

          **MR. EVEN:**  In CD Cal.  They're in L.A., Your Honor.

          **THE COURT:**  It's an interesting issue that I have

thought about.

          So the convention is you enforce the subpoena in the

district where the third party is resident.  However, if

they're in California, we have statewide service rules,

statewide powers to compel.  So I'm not sure you actually -- in

other words, I think I can do it for you.  But let's see if we

can avoid that.

          Okay.  I understand.  You think they were late and all

that, but now they're here.  So Mr. Even thinks you have a

deal.  Do you have a deal?

          **MS. CHIU:**  We are not involved in the discussions

regarding the document subpoena because that was served only by

Epic.  And from Google's perspective, it's not really our issue

1   or dispute.  We just want them to be finished.  Either produce

2   the documents that they're going to produce or come to an

3   impasse and be ready to proceed with a deposition.

4         So we need a deposition date.

5         **THE COURT:**  So Riot is not here today.  Is that the

6   issue?

7         **MR. EVEN:**  They're not here, Your Honor.

8         **THE COURT:**  Well, so your deal is with Riot, not with

9   Google?

10        **MR. EVEN:**  My deal is with the lawyer from Riot,

11   that's correct.

12        **THE COURT:**  I see.  Okay.  Well, just tell me by next

13   week.  All right?  Just tell me -- if you have a problem, we'll

14   take care of it next week.

15        **MR. EVEN:**  Thank you very much, Your Honor.

16        **THE COURT:**  But I think -- why don't you have somebody

17   look at it, but I believe I can handle it.  And certainly, if

18   Riot wants to just agree to that, it will make life a lot

19   easier.  But it is going to happen.  So, but don't -- I mean,

20   why did you wait so long?

21        **MR. EVEN:**  Well, Your Honor, I can go with you through

22   the litany of --

23        **THE COURT:**  No, let's don't do that.

24        **MR. EVEN:**  -- delays, but I don't think it's going to

25   interest Your Honor.

1          **THE COURT:**  All right.  Okay.  Now, also, bifurcating

2    counterclaims, we're not going to bifurcate.  It's one trial

3    and get everything done.

4          Now, where are you two on blockbuster settlements,

5    Epic and Match?

6          **MR. EVEN:**  I'll let Mr. Bornstein...

7          **THE COURT:**  What's happening on your resolution

8    efforts?

9          **MR. BORNSTEIN:**  I have nothing to report on that,

10   Your Honor.

11         **THE COURT:**  Are you trying?

12         **MR. BORNSTEIN:**  We have had conversations a few --

13   several months ago.

14         **THE COURT:**  Okay.  But now we have a new marker on the

15   table.  Now Google -- I don't know the deal terms.  I have no

16   idea.  You probably know much more than I do.  But Google is

17   signaling substantial willingness to pay and to reform.  So is

18   that a breakthrough opportunity?

19         **MR. BORNSTEIN:**  Well, Your Honor, first of all, we're

20   not seeking damages.

21         Second of all --

22         **THE COURT:**  All right.  Just reform then.  How about

23   that?

24         **MR. BORNSTEIN:**  Second of all, we don't know the

25   terms.  The states have been as mum with me as they have been

1   with Your Honor on what the terms are.  And I understand why.

2   But they have been.

3       Our client has publicly said that it is prepared to

4   settle if there is actually going to be openness in the two

5   markets that we have identified.

6       **THE COURT:**  What would that mean, just at a general

7   level?  I do not want to hear about any actual settlement

8   communications.  That's not for me.  But just as a -- let's

9   assume we're talking about your post-trial win injunction.

10  What is it you would like to see happen?

11      **MR. BORNSTEIN:**  So happily, Your Honor, I'm not

12  violating settlement privilege because we've said this --

13      **THE COURT:**  Yes, we all agree on that.

14      **MR. BORNSTEIN:**  We've said this publicly.

15      So there are three pillars or three principles to the

16  settlement we would like to see.

17      Number one is openness in app distribution so that

18  there is freedom and flexibility for developers to be able to

19  distribute their apps on the Android operating system without

20  having to go through a Google-controlled pipe.

21      **THE COURT:**  Okay.

22      **MR. BORNSTEIN:**  Second is freedom and openness in

23  payments so that there is not a requirement for developers,

24  like Epic and Match, to use Google's payment system when they

25  would rather use either their own or a competitor, like PayPal

1    or somebody like that.

2          **THE COURT:**  All right.

3          **MR. BORNSTEIN:**  That's number two.

4          And number three is just good, strong

5    anticircumvention walls around the settlement to make sure that

6    there aren't differing creative ways that Google comes up with

7    or devises to get around Pillars 1 and 2.

8          And we've seen some of that in other jurisdictions.  I

9    can give Your Honor details if Your Honor is interested, but

10   nothing --

11         **THE COURT:**  That sounds a little --

12         **MR. BORNSTEIN:**  -- all that different --

13         **THE COURT:**  I mean, that sounds a little like the

14   classic don't-break-the-law injunction, which you can't get,

15   typically.

16         **MR. BORNSTEIN:**  No, Your Honor, it's not intended to

17   be that opaque.  And I can get into detail if the Court is

18   interested, but the idea is similar to what you often see in

19   FTC and DOJ settlements where there are defined

20   anticircumvention provisions to ensure that the anticompetitive

21   conduct that has been adjudicated is not replicated through

22   similar and related means.

23         **THE COURT:**  You're not talking about a monitor or

24   anything like that, are you?

25         **MR. BORNSTEIN:**  No, Your Honor, we're not.

```
1              THE COURT:  Well, I mean, it sounds like there's some

2    opportunity to discuss these things.  I imagine the states and

3    the consumers wouldn't be settling, but I don't know.

4              So -- well, who are you seeing?  Are you seeing

5    someone, Mr. Pomerantz?

6              MR. POMERANTZ:  By "seeing," I'm sorry.

7              THE COURT:  A mediator.

8              MR. POMERANTZ:  Yes, we used a mediator, Judges Daniel

9    Weinstein and Rebecca Westerfield.

10             THE COURT:  Okay.

11             MR. POMERANTZ:  They worked with us on the settlement

12   with the states and with the consumers.

13             THE COURT:  All right.  Is that who you're using?  Are

14   you two, Match and Epic, are you using those?

15             MR. BORNSTEIN:  The communications that we have had,

16   Your Honor, have been principal to principal.

17             THE COURT:  You've never had a mediator?

18             THE WITNESS:  Correct.

19             THE COURT:  It may be time for one, don't you think?

20             MR. BORNSTEIN:  We have been very clear about the

21   principles that we would settle on.  And if Google is prepared

22   to have a conversation on the basis of those principles, that

23   would be fine.  If Google is not prepared to have a discussion

24   on the basis of the publicly stated principles that I've just

25   repeated again to Your Honor, it probably would be a waste of
```

```
 1    the parties' time.
 2            THE COURT:  Mr. Pomerantz?
 3            MR. POMERANTZ:  We have had discussions in the past,
 4    both principal to principal and lawyer to lawyer, and I'm sure
 5    we will continue to stay in touch.
 6            I would say that --
 7            THE COURT:  This is all too bland.  Who are the
 8    principals on the Google side?
 9            MR. POMERANTZ:  Hold on.
10            THE COURT:  You don't even know.  So this means you
11    guys have not --
12            MR. POMERANTZ:  I'm going to say senior executives at
13    Google have spoken to senior executives at Epic.
14            THE COURT:  All right.  They're going to talk again.
15    All right?  I want you to have a meeting face to face --
16    all right?  I'm going to order that -- face-to-face with the
17    two decision-makers, two people who can have a handshake deal
18    at the end of this meeting and bind both companies.  All right?
19            So who is that going to be, Mr. Pomerantz?
20            MR. POMERANTZ:  I would have to talk to my client.  I
21    do know who participated the last time, but I don't know who
22    would be the right people.
23            Mr. Bornstein and I have had some good dialogue about
24    this.  I think we would be able to --
25            THE COURT:  All right.  Well, I'm elevating it from
```

dialogue to now an order.  So you both pick -- if it's your

CEOs or CFOs or whoever can do it.  It's probably going to be a

C-suite person, I would imagine.  But you have them in a room.

You can pick a neutral ground.  People like Denver.  You know,

whatever you want to do.  Don't go to her place.  That wouldn't

be neutral.  And you get it done.  All right?

So that's going to be a court order.  The next two

weeks, in person, two people who can do a deal, walk out of

that room with -- what is that Civil Code Section 664.6,

California?  Makes it a binding deal.  Okay?  And that's going

to be my requirement.

Now, if you need a couple more days because two weeks

is too soon, that's fine, you can tell me.  You need to ask me

first.  But that's going to be the order.  All right?

**MR. POMERANTZ:**  And, Your Honor, just to be clear,

because we were only talking about Epic but --

**THE COURT:**  And Match.

**MR. POMERANTZ:**  -- the same is true --

**THE COURT:**  And Match.

**MR. POMERANTZ:**  The same is true with -- well, I think

they need to be separate discussions, but the same is true --

**THE COURT:**  Do they need to be separate discussions?

**MR. POMERANTZ:**  They do, Your Honor.  I think both

sides would agree with that.

**THE COURT:**  Match is on a different page for

 1   settlement in terms of principals?

 2        **MR. DIXON:**  Your Honor, we do have some differences in

 3   that we do seek -- Doug Dixon for the Match plaintiffs -- we do

 4   seek monetary damages as well.  I don't think that that's

 5   necessarily driving the differences between us and Google

 6   like --

 7        **THE COURT:**  No.  Between you and Epic.  You two are --

 8   aren't you on the same page for remedies?

 9        **MR. DIXON:**  With respect to the injunctive relief, the

10   reform that we seek, yes, Your Honor.  The pillars that

11   Mr. Bornstein just outlined are those that we too are seeking.

12        But I think in terms of -- we do seek monetary relief

13   in addition to the reform.  I would ask perhaps that the first

14   meeting, at least, Your Honor, be separate so that Match would

15   meet with Google.  Epic can --

16        **THE COURT:**  No.  I want you all to be there and talk

17   about at least these big points, which are the reform points.

18   The money can be worked out.  I'm not saying it's going to be

19   easy, but the money can be worked out.

20        You can have a second discussion separately with

21   Google because I'm sure Mr. Bornstein doesn't want to burn his

22   time doing that.

23        But let's get together on the macro issues, which

24   I think is the conduct issues.  And I hear you saying you're

25   basically on the same page.  I understand there are going to be

1  some -- you know, you'll have different little nuances, but --

2  so you do the same thing.  You have a person who can bind

3  Match, at least on that portion of the agreement.

4       Now, after that, you should probably stay and have a

5  discussion about the money as well.  Okay?

6       **MR. DIXON:**  Understood.  And I'm not pressing for

7  early release, Your Honor, but we do understand there is some

8  reform, some injunctive relief that's part of Google's

9  settlement with the states and consumers.  It would be

10  helpful to know --

11       **THE COURT:**  I don't want to wait 30 days.  You need to

12  do it sooner than that because we're about to fall off a work

13  cliff, and so -- look, this thing came out of the blue, at

14  least to me.  So you may have a similar --

15       **MR. DIXON:**  Yes, Your Honor.

16       **THE COURT:**  Smart companies do smart things, and this

17  may be an example of somebody just wanting to get life done and

18  move forward.  So...

19       **MR. DIXON:**  I agree, Your Honor.  I just would love to

20  learn what that relief is sooner.

21       **THE COURT:**  I can't order them to disclose

22  confidential settlement agreements.

23       If the three of you -- meaning Google,

24  states/consumers, and you -- want to reach some agreement on

25  that, I don't -- that's fine.  You can privately order whatever

1    you want.  But I can't see that until it's final, nor should I

2    see it.  And I don't know about the dynamic.  There may be

3    reasons why the states and the consumers and Google don't want

4    to do that.

5            But clearly, the door has opened, if even only a hair.

6    So you should just do that.  All right?  So two weeks, that's

7    the goal.

8            Okay.  Anything else for today?

9            Mr. Pomerantz?

10           **MR. POMERANTZ:**  I don't think so, Your Honor.

11           **THE COURT:**  All right.  Plaintiffs?

12           **MR. BORNSTEIN:**  Yes, Your Honor.  We had an issue

13   around the chat sanctions.

14           **THE COURT:**  Oh, yes, the chats.  Well, discovery is

15   closed now; right?

16           **MR. BORNSTEIN:**  Correct, Your Honor.

17           **THE COURT:**  Okay.  So tell me what you think you're

18   missing.  I think that's how I left it.  I just want to get

19   some sense of -- now, I know I said in the order -- and it's

20   certainly true now -- you can't talk about things you don't

21   know about.  But you should be able to give me at least some

22   informed sense of things that you expected to have seen or you

23   thought you would have seen or you saw a little bit of, or

24   whatever, and you think the chat issue impacted that in a

25   negative way.

1          **MR. BORNSTEIN:**  Yes, Your Honor.

2          **THE COURT:**  Whatever you want to do.  See what I'm

3   saying?

4          **MR. BORNSTEIN:**  Absolutely.  And I guess the question

5   I have for Your Honor is, we propose to actually submit

6   something to the Court in writing.

7          **THE COURT:**  Yes.  I want to do it now.  We're not

8   going to wait for trial.

9          **MR. BORNSTEIN:**  Oh, okay.  So I can cover that,

10  Your Honor.

11         **THE COURT:**  Well, just whenever you want to do it.  I

12  mean, do you want to do it -- not now.  I mean, you've got to

13  file something.

14         **MR. BORNSTEIN:**  Yes.

15         **THE COURT:**  Yeah.  When do you want to file it?

16         **MR. BORNSTEIN:**  So we proposed in the submission that

17  we would file something two weeks from today, with a response

18  from Google in two weeks.  We would do a reply.  It would all

19  be teed up for the Court at our pretrial conference.

20         **THE COURT:**  Yeah, that sounds fine.

21         **MR. POMERANTZ:**  Your Honor, if I could, obviously, if

22  Your Honor wants briefing before trial, we will do so.

23         **THE COURT:**  I have to, Mr. Pomerantz.  I can't --

24  first of all, something -- I have already found that something

25  was intentionally not preserved.  I'm not going to sail into

1  trial as if that didn't happen and just way wait to see the

2  evidence.

3          The defendants -- I mean, the plaintiffs can now tell

4  me, I think, with a reasonable degree -- let me say, with

5  enough specificity that I can work with it, what they think

6  they didn't get.  And you can tell me why that's no harm, no

7  foul, if that's what you want to tell me.  All right?

8          So we can do that before trial, and we're going to do

9  it.

10         **MR. POMERANTZ:**  Your Honor, my question wasn't about

11  briefing and providing that information to the Court.  The

12  question is when should Your Honor make a decision.

13         And we believe -- they have an exhibit list right now

14  to us of, like, 1700 exhibits, of which 1300 are not contracts

15  or data; they're just documents.  They're e-mails and decks.

16         And I think Your Honor should see at trial what all

17  the evidence is that they have that was preserved, and you

18  should also hear what evidence comes out of trial about the

19  chats, and then Your Honor should decide:  Should I give an

20  instruction at all?  If so, what should that instruction be?

21         And I do think that when you see the evidence at trial

22  and then you also -- both the evidence that is available and

23  the evidence on chats, Your Honor will be in a much better

24  position to decide what instruction, if any, should be given.

25  Just like happens with almost all other jury instructions, you

1   wait until you see it before you make your decision, and that

2   decision happens at the end of trial.

3          **THE COURT:**  We're going to do one step at a time.

4   We're going to do the briefing first.  Then we'll discuss it at

5   the pretrial conference.  What happens after that remains to be

6   seen.

7          **MR. POMERANTZ:**  That's fine, Your Honor.

8          **THE COURT:**  Now, also, 1700 exhibits?  Everybody comes

9   in with 1700 exhibits, and they all end up using a dozen.  So

10  that's just the way life is at trial.

11         Now, this may affect the trial length a little bit; so

12  we're not going to do it now.  But as you get closer to the

13  pretrial conference, let's just think about, maybe we don't

14  need as much time with the states and the consumers.  Should

15  they not be there?  Might be easier to do timewise.

16         Now, there were no *Daubert*s on the Epic/Match part;

17  right?

18         So who's your economist, Mr. Bornstein?

19         **MR. BORNSTEIN:**  Well, we have two economists

20  addressing the two separate markets.  One of them is

21  Dr. Douglas Bernheim, who's here at Stanford; and the other one

22  is Dr. Steven Tadelis, who's here at Berkeley.

23         **THE COURT:**  Match, who do you have?

24         **MR. DIXON:**  We have --

25         **THE COURT:**  Are you using the same?

 1          **MR. DIXON:**  No, Your Honor.  We do have an expert.  We

 2  are coordinating with -- Doug Dixon for the Match plaintiffs.

 3          We have Dr. Schwartz, whom we are using.  We do -- we

 4  are coordinating with Epic to ensure that we are not

 5  overlapping and presenting on redundant, or the same, issues.

 6  There are some Match-specific issues unique to Match that

 7  Dr. Schwartz will be addressing.

 8          **THE COURT:**  All right.

 9          **MR. POMERANTZ:**  Your Honor, if I could address this

10  one issue.

11          **THE COURT:**  You can.  Before I -- just -- so I'm happy

12  to hear you're working on redundancy.  That's important.

13          And also, just, I'm concerned.  I'm just going to

14  leave it at that for now.  Whether I do anything, we'll see.

15  But two markets, fine.  I don't want two and a half markets or

16  two markets plus this other thing.  Okay?  It's going to be too

17  much for the jury.  They can handle this.  I have a hundred

18  percent confidence.

19          I just did a really complicated Section 1 case.  Jury

20  asked over 20 questions.  They were superb questions.  I gave

21  each and every one of them.

22          I don't have a question about the jury being able to

23  handled it.  I do have a question about experts on the same

24  side having irreconcilable or conflicting views of what the

25  market is.

1        So please have an eye towards that as well.  Okay?

2        **MR. DIXON:**  We will.  We do, Your Honor.

3        **MR. POMERANTZ:**  Your Honor --

4        **THE COURT:**  Yes.

5        **MR. POMERANTZ:**  -- related to that issue, we had teed

6  up an issue for Your Honor's consideration regarding the fact

7  that they haven't yet winnowed down their experts.

8        That being said, because we expect there to be a

9  settlement here, assuming that the five experts that have been

10  designated solely by the states and the consumers are not

11  testifying at trial, which is what we obviously expect, then we

12  don't have that same concern.  And we will work with them, and

13  we're not seeking to keep out any of their experts.  We would

14  expect them not to be testifying on overlapping issues, but

15  we're not trying to have them streamline further, assuming that

16  the experts, which are Mr. Singer, Rysman, Chase, Solomon, and

17  Presser, those five were only designated by the states and the

18  consumers, and we would not expect them to testify at trial,

19  assuming a settlement.

20        **THE COURT:**  Is that right?

21        **MR. BORNSTEIN:**  It's not our intention to call any of

22  the individuals that Mr. Pomerantz just mentioned.

23        **THE COURT:**  All right.  Match?

24        **MR. DIXON:**  Doug Dixon for the Match plaintiffs.

25        The same, Your Honor.

```
1            THE COURT:  Okay.

2            MR. POMERANTZ:  That's fine, Your Honor.

3            THE COURT:  Okay.  Thanks very much, and I'll see you

4    on October 12th.

5            THE CLERK:  All rise.  Court's in recess.

6                (Proceedings adjourned at 11:58 a.m.)

7                            ---o0o---

8

9                     CERTIFICATE OF REPORTER

10           I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13   DATE:  Friday, September 8, 2023

14

15

16                    Ana Dub

17        _____

18            Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
             CSR No. 7445, Official United States Reporter
19

20

21

22

23

24

25
```