Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH
LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

Karma M. Giulianelli (SBN 184175)
karma.giulianelli@bartlitbeck.com
**BARTLIT BECK LLP**
1801 Wewatta St., Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100

Hae Sung Nam (*pro hac vice*)
hnam@kaplanfox.com
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue
New York, NY 10022
Telephone: (212) 687-1980

*Co-Lead Counsel for the Class in In re Google
Play Consumer Antitrust Litigation*

Brendan P. Glackin (SBN 199643)
bglackin@agutah.gov
**OFFICE OF THE UTAH ATTORNEY
GENERAL**
160 E 300 S, 5th Floor
PO Box 140872
Salt Lake City, UT 84114-0872
Telephone: (801) 366-0260

*Counsel for the Plaintiff States*

Douglas J. Dixon (SBN 275389)
ddixon@hueston.com
**HUESTON HENNIGAN LLP**
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640

*Counsel for Plaintiffs Match Group, LLC, et al.*

[Additional counsel appear on signature page]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

**IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**

THIS DOCUMENT RELATES TO:

*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD

*In re Google Play Consumer Antitrust Litigation*, Case No. 3:20-cv-05761-JD

*State of Utah et al. v. Google LLC et al.*, Case No. 3:21-cv-05227-JD

*Match Group, LLC et al. v. Google LLC et al.*, Case No. 3:22-cv-02746-JD

Case No. 3:21-md-02981-JD

**PLAINTIFFS' REPLY IN SUPPORT OF PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE**

Judge: Hon. James Donato

1

## <u>TABLE OF CONTENTS</u>

2

**Page**

3   INTRODUCTION ...................................................................................................................1

4   ARGUMENT .........................................................................................................................2

5       I.    Google's Objections to Plaintiffs' Proposed Remedy Are Meritless. ...........................3

6           A.    Plaintiffs Seek a Remedy that Is Consistent with the Court's Prior
7                     Orders.....................................................................................................3

        B.    The Court's Findings of Fact Should Not Be Kept from the Jury. .......................4
8
        C.    Google Has Not Identified a Proportional Alternative Remedy.........................5
9
    II.    Google's Efforts to Relitigate Prejudice Are Meritless and Improper. .........................6
10
        A.    Google Cannot Challenge the Court's Prejudice Findings. ...............................6
11
        B.    Google Distorts the Factual Record ...................................................................7
12
              i.    Google's Post-Litigation Chats Were Relevant. .......................................7
13
              ii.    Evidence of Intent Is Relevant, and Google Destroyed It. .....................11
14
              iii.    Google Mischaracterizes Its Employees' Chat Deletion Practices.........13
15
              iv.    There Is No Doubt that Google Destroyed Relevant Evidence. .............14
16
CONCLUSION......................................................................................................................15
17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                   **Page(s)**

*Am. Needle v. Nat'l Football League*, 560 U.S. 183 (2010) .................................................................. 12

*Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132 (N.D. Cal. 2012) ........................................ 6

*Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976 (N.D. Cal. 2012) ........................................ 5

*Chicago Bd. of Trade v. United States*, 246 U.S. 231 (1918) .............................................................. 12

*NCAA v. Alston*, 141 S. Ct. 2141 (2021) .......................................................................................... 10

*Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145 (9th Cir. 2003) .................................. 12

*Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46 (1990) .......................................................................... 12

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001) ........................................................ 12


**Federal Rules**                                                                  **Page(s)**

Fed. R. Civ. P. 37 ............................................................................................................................. 1, 4, 5

Fed. R. Civ. P. 72 .................................................................................................................................. 6

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

This Court held a multi-day evidentiary hearing, received extensive briefing on Google's intentional destruction of Chats, and found that (1) "Google intended to subvert the discovery process", (2) "substantive business communications were made on Chat that plaintiffs will never see", and (3) Plaintiffs "certainly" proved prejudice despite it not being their burden to do so.  (Dkt. 469 ("Sanctions Order") at 18.)  Google seeks to relitigate these findings and asserts that Plaintiffs should have to prove them yet again to the jury.  (Dkt. 634 ("Opp.") at 2.)  Google's attempt to get a do-over should be rejected.  These issues have long been resolved, with this Court concluding that "sanctions are warranted".  (Sanctions Order at 1.)  The only "remaining question is about the remedy".  (*Id.* at 18.)  At the September 7, 2023 hearing, this Court reaffirmed:  "I have already found that something was intentionally not preserved.  I'm not going to sail into trial as if that didn't happen and just []wait to see the evidence. . . . [W]e can do that before trial, and we're going to do it."  (9/7/2023 Tr. 36:23-37:9.)  The time has come for Google to bear the consequences of its longstanding, deliberate policy of instructing its employees to conduct their most sensitive business communications in "history off" Chats and then destroying those Chats despite pending litigation to which they were relevant, including this case and related investigations and regulatory actions.

Plaintiffs' requested remedy is appropriately tailored to attempt to ameliorate the prejudice and harm resulting from Google's calculated choice to evade discovery obligations and destroy evidence.  Rather than seek a mandatory adverse inference instruction, Plaintiffs request the narrowest form of relief specified in Rule 37(e)(2):  a *permissive* instruction that the jury "may", if it chooses, presume that the evidence Google intentionally destroyed would have been harmful to Google's case and helpful to Plaintiffs'.  (Dkt. 608 ("Pls. Proposal") at 3.)  *See* Fed. R. Civ. P. 37(e)(2)(B) (authorizing courts to "instruct the jury that it may or must presume the information was unfavorable to the party").  Google opposes even that much, insisting that Plaintiffs must use their limited, valuable trial time to prove yet again that the document destruction occurred, arguing that "the Court can wait until the end of trial to determine whether any jury instruction is needed".  (Dkt. 634 ("Opp.") at 2.)  But Plaintiffs have already successfully made their case on this issue.  Delaying resolution any further would simply reward Google's misconduct.  It would mean that the January 2023 evidentiary hearing, volumes of

legal briefs (this being Plaintiffs' **tenth**[1]), supplemental document productions, and findings already established in this Court's Sanctions Order, were all just a rehearsal for Plaintiffs to have to prove, yet again, that Google intentionally prejudiced Plaintiffs by destroying its most sensitive communications.

Google does not dispute, or even address, the core argument in Plaintiffs' submission:  that a permissive adverse inference instruction is needed to address the harm Plaintiffs suffered where "the destroyed Chats would have been (at least on average) **more** sensitive and **more** damning to Google's positions in this litigation than the communications Google actually preserved and produced."  (Pls. Proposal at 3.)  Instead, Google attempts, again, to dispute that there was any prejudice at all.  At nearly every turn, Google distorts the factual record, implying without support that its employees never chatted about the *current* agreements and *post-litigation* policy changes Plaintiffs addressed in their submission.  Google is wrong.  Plaintiffs have shown—as far as is possible without the benefit of the documents Google destroyed—that the thousands upon thousands of deleted Chats contained probative evidence that would have supported Plaintiffs' case.  Plaintiffs have also shown that those deleted Chats would have been more helpful to Plaintiffs than Google's preserved emails, given Google's training of employees to use "history off" Chats for their most sensitive communications *precisely because* Google knew and intended that those Chats would be destroyed, rather than disclosed.

Plaintiffs first alerted the Court to problems with Google's Chat retention in December 2021. Despite Google's repeated efforts to conceal and obfuscate, Plaintiffs exposed Google's deliberate, company-wide scheme to funnel sensitive communications to ephemeral channels to shield from discovery its most sensitive, unadulterated documents.  This Court has already found that Google's discovery misconduct prejudiced Plaintiffs.  To address this harm, Plaintiffs' proposed remedy should be ordered in advance of trial, so that the parties can focus their presentation of evidence on the merits instead of relitigating, yet again, Google's intentional destruction of relevant evidence.

## ARGUMENT

Google raises two sets of arguments in opposition to Plaintiffs' submission:  (i) challenges to Plaintiffs' remedy proposal (Opp. Pts. I & III), and (ii) arguments that Plaintiffs did not suffer prejudice (Opp. Pt. II).  Google has failed to show that Plaintiffs' proposal is not proportional to

---

[1] *See* Dkts. 258, 349, 373, 428, 432, 444, 451, 468, 608.

Google's misconduct (*see* Part I below), and Google's efforts to relitigate the prejudice this Court has already found "certainly" exists are meritless and distort the facts (*see* Part II, below).  Plaintiffs address these topics in turn.

## I. Google's Objections to Plaintiffs' Proposed Remedy Are Meritless.

Plaintiffs' opening brief demonstrates that a permissive adverse inference instruction is proportional to Google's intentional Chat destruction.  Plaintiffs proved that their injury is not the loss of duplicative evidence, but the loss of an entire *category* of evidence, *i.e.*, off-the-record Chats—a category that, by Google's design, included Google employees' most sensitive and candid statements about relevant topics.  Plaintiffs proved that "Google employees took the [Communicate with] Care training to heart", faithfully going "off the record" when their conversations became "sensitive" or "risky".  (Sanctions Order at 5.)  Just as Google intended, "relevant, substantive business communications" were destroyed.  (*Id.* at 18.)  And just as Google intended, Plaintiffs now cannot show these "sensitive" and "risky" Chats to the jury.  (*See id.*)

Google does not engage with the above arguments.  Instead, Google mischaracterizes the remedy Plaintiffs are seeking, attempts to skirt this Court's factual findings and argues for an unduly narrow remedy.  These arguments are meritless and should be rejected.

### A. Plaintiffs Seek a Remedy that Is Consistent with the Court's Prior Orders.

Google first argues in its Opposition that the "Court has already rejected a less-severe remedy than the one now proposed by Plaintiffs".  (Opp. at 2.)  This claim is based on misleadingly cherry-picked language from the January 31, 2023 hearing.  Google is wrong.

*First*, the January 31, 2023 hearing was held prior to Google's additional Chat productions, prior to several rounds of additional briefing, and prior to the Court's March 28, 2023 Sanctions Order, which found that Google destroyed evidence and asked the parties to brief the appropriate remedy.  Thus, discussions during the January 31, 2023 hearing have no bearing on the issue now before the Court.  The Court asked the Parties to brief, and should now determine the appropriate remedy in light of its Sanctions Order, not on the basis of observations made months earlier on an incomplete record.

*Second*, Google fails to disclose that the remedy Plaintiffs were seeking as of January 31, 2023 was a ***mandatory*** inference:  Plaintiffs proposed that the jury "***should*** infer that Chat messages

1   destroyed by Google would have been unfavorable to Google in this case." (Dkt. 428 at 8 (emphasis

2   added).)  Plaintiffs now propose a ***permissive*** instruction that the jury "***may*** infer that Chat messages

3   destroyed by Google would have been unfavorable to Google in this case." (Pls. Proposal at 19

4   (emphasis added).)  Thus, Google is wrong to claim that "[t]he remedy that Plaintiffs now propose is

5   ***even more severe*** than the version the Court rejected". (Opp. at 2 (emphasis added).)

6       *Third*, Google is wrong that the proposed remedy "amounts to an impermissible mandatory

7   inference". (*Id.*)  There is nothing impermissible or mandatory about presenting the jury with the

8   facts—as the Court has already found them—and permitting the jury to decide what conclusion to

9   draw from those facts. *See* Fed. R. Civ. P. 37(e)(2)(B) (authorizing instructions (mandatory or

10  permissive) as sanctions for the intentional destruction of evidence).

11      **B.    The Court's Findings of Fact Should Not Be Kept from the Jury.**

12      Having succeeded in keeping evidence from the jury through its document destruction, Google

13  now seeks to conceal this Court's finding of wrongdoing.  Google insists that any adverse inference

14  instruction should be "without additional commentary about the Court's prior findings". (Opp. at 18.)

15  In place of the Court's findings, Google would substitute "a stipulation of undisputed facts negotiated

16  by the parties." (*Id.* at 2.)  This is a transparent effort to relitigate—and even try to assert veto power

17  over—issues the Court already resolved.

18      Google has not offered any justification for preventing the jury from hearing the Court's factual

19  findings regarding Google's discovery misconduct (*see* Pls. Proposal at 19), or setting aside the

20  Court's findings in favor of a version of the facts agreeable to Google.  Nor can it.  The factual issues

21  were fully litigated, and the Court's findings are part of the record.  Google can no longer dispute

22  them, and it has no basis to argue that it should get a second (or third) bite at the apple in the hopes the

23  jury would reach a different, inconsistent conclusion.

24      Google asserts that "Plaintiffs cite no case in which a court has approved a jury instruction at

25  the outset of the trial as a remedy under Rule 37". (Opp. at 18.)  That does not mean that this relief is

26  inappropriate under the specific circumstances of this case.  Indeed, Google has not cited any case

27  where a court rejected the approach Plaintiffs are proposing, or where a court was faced with the

28  circumstances here and took a different approach.  This remedy is proportional here, because without

1  it, the jury will weigh the evidence at trial under the false impression that the story is complete.

2  Google's contrary argument—that the Court's factual findings would "taint" the jury when it "will

3  hear evidence about chats during trial along with the other evidence in the case" (Opp. at 18)—further

4  establishes that Google is seeking a do-over.  Plaintiffs merely seek to ensure the jury knows that

5  Plaintiffs are unable to present the full record of Google's conduct that would have been available but

6  for Google's decision to destroy its most sensitive documents.

7          **C.**     **Google Has Not Identified a Proportional Alternative Remedy.**

8        Google does not dispute that Rule 37 provides that "the court . . . upon finding that the party

9  acted with the intent to deprive another party of the information's use in the litigation may:  . . .

10  (B) instruct the jury that it may or must presume the information was unfavorable to the party".

11  (Sanctions Order at 15 (quoting Fed. R. Civ. P. 37(e)(2)(B)).)  Instead, Google points to an advisory

12  committee note stating that "the severe measures authorized by this subdivision"—a subdivision that

13  includes case-terminating sanctions and mandatory inference instructions, neither of which Plaintiffs

14  propose here—"should not be used when . . . lesser measures . . . would be sufficient to redress the

15  loss."  Fed. R. Civ. P. 37, ad. comm.'s note to 2015 amendment.  As a threshold matter, Plaintiffs

16  already are proposing lesser measures:  a permissive adverse inference instruction.  Moreover,

17  Google's plea for "lesser measures" fails because Google has not identified any "lesser measures" that

18  would be sufficient to redress Plaintiffs' loss.  The measures Google suggests—"a stipulation of

19  undisputed facts negotiated by the parties, and supplemented with any witness testimony that the Court

20  may deem necessary" (Opp. at 2)—are not a remedy for Plaintiffs, but an opportunity for Google to

21  take yet another swing at the Chat issues and force Plaintiffs to spend their limited trial time proving

22  the Chat deletion and prejudice they have already proven.

23        Having failed to show that Plaintiffs' proposed remedy is disproportionate, or to offer

24  proportional "lesser measures", Google resorts to critiquing Plaintiffs' citation to Magistrate Judge

25  Grewal's order in *Apple Inc. v. Samsung Electronics Co.*, 881 F. Supp. 2d 1132 (N.D. Cal. 2012).

26  Google incorrectly asserts that Plaintiffs "rely on the *Samsung* magistrate judge's report

27  recommending an adverse instruction, but they do not mention or even cite the district court decision

28

rejecting that recommendation as too severe." (Opp. at 2.)[2]  However, in a prior submission in this case, Google discussed the *same* factual findings from the *same* order for the *same* purpose as Plaintiffs—and Google too did "not mention or even cite the district court decision" modifying the language of the magistrate's jury instruction. (*See* Dkt. 367 at 6.)  And for good reason.  Contrary to Google's suggestion, Plaintiffs did not rely on any aspect of the magistrate judge's order that was overturned by the district court.  Instead, Plaintiffs pointed to the magistrate judge's *factual findings* regarding Samsung's document destruction, all of which were upheld by Judge Koh upon review. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990-92 (N.D. Cal. 2012).  Although Judge Koh modified the jury instruction, she *agreed* that these facts warranted a permissive adverse inference instruction. *Id.* at 1000.  And, as Plaintiffs pointed out in their opening proposal, the facts of this case are orders of magnitude more severe than those in *Samsung*. (Pls. Proposal at 15.)

## II.    Google's Efforts to Relitigate Prejudice Are Meritless and Improper.

Rather than attempt to craft a proportional remedy, Google devotes the majority of its Opposition to arguing that Plaintiffs suffered no prejudice, and to mischaracterizing the evidence that Plaintiffs presented.  These arguments are meritless and duplicative of Google's earlier failed efforts.

### A.    Google Cannot Challenge the Court's Prejudice Findings.

The Court already heard argument from both sides on whether Plaintiffs suffered prejudice.  And it decided the issue.  The Court held:  "It is also not plaintiffs' burden to prove prejudice, but the plaintiffs' supplemental briefs and evidence certainly did so." (Sanctions Order at 18 (citations omitted).)  Google nevertheless attempts to relitigate this issue.  That attempt should be denied.[3]

Google resurrects its previously rejected argument that it "produced over 3.3 million documents, spanning 21.7 million pages, made over 40 current and former employees available for deposition, and produced terabytes of transactional data." (Opp. at 17.)  Not a single piece of that evidence is an "off the record" Chat, where Google employees diverted sensitive conversations they

---

[2] Google is wrong to characterize the decision at issue as a report and recommendation.  It was an order on a non-dispositive motion pursuant to Fed. R. Civ. P. 72(a).

[3] Google's recycling of already-rejected arguments also shows that it has not even attempted to grapple with its serious violations of its discovery obligations.  Only a "substantial trial-related penalty" (1/12/2023 Tr. 134:7-12)—like the one Plaintiffs propose—can begin to make Google understand the consequences of its actions.

1    wanted destroyed.  (Sanctions Order at 4.)  Google also argues that its head of strategy for Android,

2    who wrote "I talk about RSA related things all day and I don't have history on for all my chats :)" in a

3    Chat that occupies more than a page of the Court's Sanctions Order, is somehow irrelevant because

4    even though she was on a litigation hold, she "was not a document custodian, was not deposed in this

5    case, and is not listed as a sponsoring witness of a single document on either side's exhibit list (apart

6    from the handful of chats Plaintiffs cite in their brief)."  (Opp. at 8.)  As the Court already explained,

7    "[t]he point is not well taken.  The [discovery] agreements between the parties were made while

8    plaintiffs were completely in the dark about Google's Chat practices, and the Court declines to give

9    Google any benefit from deals made on incomplete information."  (Sanctions Order at 18.)

10              **B.    Google Distorts the Factual Record**

11            In support of its revisionist view that Plaintiffs suffered no prejudice, Google claims Plaintiffs'

12    efforts to show what was lost suffer from "four overarching flaws."  (Opp. at 4.)  Not one of Google's

13    claimed "flaws" rebuts the evidence—let alone the Court's findings—that Google intentionally deleted

14    relevant business conversations, and that Plaintiffs "certainly" suffered prejudice.  (Sanctions Order

15    at 18.)

16                   ***i.    Google's Post-Litigation Chats Were Relevant.***

17            Plaintiffs' opening submission focuses on four relevant topics of deleted Chats to show

18    proportionality:  (i) *current agreements* between Google and Android OEMs; (ii) *current agreements*

19    between Google and Android developers; (iii) *post-litigation* changes to Google Play's business

20    model; and (iv) a *current agreement* between Google and Apple.  The evidence shows that Google

21    employees discussed these topics over Chat after this litigation began.  (Pls. Proposal at 4-14.)  Despite

22    this evidence, Google claims that "the vast majority of the conduct discussed in Plaintiffs' motion took

23    place before this lawsuit was filed—in many cases *years* before this lawsuit was filed—and therefore

24    any chats on these topics would have been permissibly deleted".  (*Id.*)  Google is wrong.

25            *First*, Google conflates the timing of its *conduct* with the timing of *Chats*.  It speculates that if

26    any aspect of a topic took place before this litigation began, then there would not be Chats about the

27    topic after that date.  That is plainly incorrect.  The topics Plaintiffs identify are not one-off events that

28    were soon forgotten.  They are agreements and programs that are central to Google's Android

business.  And, in fact, Google's surviving post-litigation documents show that employees continued

discussing these topics with great frequency after this litigation began.  (*See* Pls. Proposal at 4-15.)

*Second*, Google misrepresents the relevant timelines.  Each of the post-litigation topics

Plaintiffs identify involves *current* agreements, *post-litigation* programs, or both.  Google does not

deny that fact, but instead misleadingly points to aspects of these topics that predate the litigation, in

order to create the false impression that there were no post-litigation Chats.  Looking at examples from

each category of Chats identified by Plaintiffs demonstrates that Google's assertions are incorrect.

(*See id.*)  And as set forth below, Google's effort to mischaracterize these topics fails.

RSAs.  Google asserts that it approved an RSA 3.0 framework in June 2019 and "first offered"

the agreements to OEMs in late 2019.  (Opp. at 7.)  But Google fails to acknowledge that it negotiated

and renegotiated these agreements after the litigation began.  And Google ignores that these contracts

are not short-term engagements, but the source of an ongoing program where Google pays OEMs not

to preinstall competing app stores on their smartphones.  Google's OEM relationships are founded in

their contracts, namely RSAs and MADAs.  Google employs a team of dozens of business

development executives to manage those relationships.  It is absurd for Google to claim that these

employees and others did not discuss the RSAs and other OEM agreements over Chat during the post-

litigation period, when the evidence leaves no doubt that they did.  (*See, e.g.*, Sanctions Order at 12-13

("I talk about RSA related things all day and I don't have history on for all my chats :)") (Mar. 17.

2022 Chat).)

MADAs.  It is misleading for Google to suggest that no Chats about MADAs took place after

this litigation began.  Google observes that it has offered a version of the MADA for 15 years, and

asserts (wrongly) that "[t]he terms of the MADA have not changed significantly in the last 15 years".

(Opp. at 6.)  As with the RSAs, Google ignores that the MADAs are long-term, current agreements

that require constant engagement with OEMs.  In the same passage where Google writes off its

MADAs as forgotten relics, Google previews its trial argument that "the MADA ***is*** a critical tool that

Google ***uses*** to make Android phones competitive with the iPhone".  (*Id.* (emphasis added).)

Payments to Samsung not to compete.  Google concedes that it entered into an RSA with

Samsung in November 2020—after this litigation began.  (Opp. at 9.)  Unable to dispute that this is a

relevant post-litigation topic, Google focuses on the fact that the negotiations that preceded the RSA, including Project Banyan, stretched back to 2019.  But Google cannot deny that its years-long effort to eliminate competition from Samsung would have been discussed over Chat in the months leading up to November 2020, when those efforts culminated in the RSA.  Nor can Google deny that, as with all of Google's RSAs, the implementation of the revenue sharing program is managed by a large team at Google, who undoubtedly discussed the RSA and Google's Samsung partnership over Chat.

Project Hug.  Google suggests that no relevant Chats about Project Hug would have been destroyed, because Google "*began* offering agreements" "[*s*]*tarting in* 2019".  (Opp. at 10.)  This is yet another effort by Google to paint an *ongoing* program as a one-off event that its employees stopped chatting about before this litigation began.  But Google does not deny that Project Hug is ongoing, or that many if not most of the agreements were signed, amended or renegotiated after this litigation began.  Nor does Google deny that a team of partnership executives at Google devotes substantial time to Project Hug, or that Google's most senior developer partnerships executive testified in *August 2022* that Project Hug is her "day-to-day work".  (Dkt. 634-9 at 104:4-8.)  The evidence is clear that Project Hug—a sensitive program that Google kept secret for years—is exactly the kind of topic that Google employees were trained to, and did, discuss in off-the-record Chats.

Agreements not to compete with ABK, Riot and Supercell.  With respect to two of the three agreements Plaintiffs challenge as *per se* unlawful (with ABK and Riot), Google asserts that "Google could not have violated any duty to preserve chats when these agreements were developed, offered, and executed".  (Opp. at 10-11.)  But Google does not acknowledge that the third agreement (with Supercell) was developed, offered and executed *after* this litigation began.  And Google does not deny that the other two agreements ███████████████████████████.  (Pls. Proposal at 10.)  As with all the Project Hug agreements, Google's suggestion that these agreements and the ongoing program they established are relics of the past, no longer discussed over Chat, is false.  Further, Google's suggestion that Epic and the Match Plaintiffs represented to the Court that they had all relevant evidence on these agreements is a red herring.  (Opp. at 11.)  By representing that they had enough evidence to prove their claims, Epic and the Match Plaintiffs were by no means representing that they had received the full universe of relevant documents.  Indeed, just weeks before, Plaintiffs

had laid out the prejudice they suspected (but could not have fully known) from the Chat destruction. (*See* Dkt. 349 (Oct. 13, 2022 Motion for Sanctions); Dkt. 351 (Oct. 17, 2022 Joinder re Motion for Sanctions); Dkt. 373 (Nov. 10, 2022 Reply re Motion for Sanctions).)

Post-litigation policy changes.  The September 2020 policy changes Plaintiffs identify in their brief were certainly enacted after this litigation began, as were significant regulatory and legislative actions against Google around the globe that spurred changes such as User Choice Billing.  For example, Project Runway was planned and executed after this litigation began, and Google admits that "this litigation was a motivation" for Project Runway.  (Opp. at 12-13.)  Google does not deny that its employees discussed these topics in off-the-record Chats.  It argues instead that Plaintiffs either have all the information they need, or that the topics are not relevant to the litigation.  These claims are frivolous and ignore Plaintiffs' argument that off-the-record Chats were categorically different from Google's other documents because they were the unguarded, sensitive conversations that Google never wanted to be available for discovery and destroyed.  The evidence shows that Google's employees followed their training and diverted discussions about these topics to rooms where they would "get the right settings here (*i.e.*, history off)".  (*See* Pls. Proposal at 11-13 (quoting Dkt. 468-10).)

There is likewise no merit to Google's claim that Google's proposed and actual changes to its anticompetitive business practices are irrelevant.  The changes Google actually made, including increasing prices for apps belonging to the Match Plaintiffs and Epic, are core evidence that Google has monopoly power and abused it.  And the changes Google considered demonstrate the availability of less-restrictive alternatives to its anticompetitive restraints, a fact that alone makes them relevant to the rule of reason inquiry.  *See, e.g.*, *NCAA v. Alston*, 141 S. Ct. 2141, 2160 (2021).  Candid Chats among executives would be additional, powerful evidence that fair business practices did not govern Google's choice of business models.

Google's partnership with Apple.  Google admits that Google and Apple are parties to "a revenue sharing agreement concerning Google's search engine".  (Opp. at 14.)  Google tries to dismiss this agreement as one that "pre-dates Android's launch 15 years ago" (*id.*), but that is highly misleading. ███████████████████████████████████████████████████████████

███████████████████ (Zaken Decl., Ex. 1), ██████████████████████████████████

1   ████ (Zaken Decl., Ex. 2 at 76:23-77:14).  The importance of this agreement to Google's business

2   cannot be overstated.  It has been widely reported that Google makes an ***annual*** payment of an

3   "estimated $19 billion" to Apple "to ensure its search engine remains the default on iPhones and other

4   Apple devices".[4]  Because the agreement is one where Google shares Search revenue, Google's own

5   revenue from iOS devices is astronomical—and its incentive to compete with this critical business

6   partner is diminished accordingly.  As Plaintiffs set forth in their opening submission, top Google

7   executives, including several likely trial witnesses, are deeply involved in Google's partnership with

8   Apple.  It defies credulity that these executives never once used Chat to discuss the Apple partnership.

9        *Third*, Google's claim that it "permissibly deleted" Chats prior to the start of this litigation is

10  incorrect.  Google employees are constantly under litigation hold.  As the Court found, witnesses such

11  as Jamie Rosenberg and Tian Lim could not recall any time in the past five years when they were not

12  under a litigation hold.  (Sanctions Order at 3.)  Google was forced to admit in response to a question

13  from the Court that "Google has, at least for the past five years" (and likely ten), "maintained the same

14  approach to preserving Google Chats for legal hold recipients in all of its cases."  (Dkt. 429-3 at 2.)

15  That "approach to preserving Google Chats" was uniform:  to destroy them rather than preserve or

16  produce them.  While Plaintiffs have focused on Google's deletion of evidence after this litigation

17  began, that hardly means that Google's earlier Chat deletion was "permissibl[e]".

18                    ii.        ***Evidence of Intent Is Relevant, and Google Destroyed It.***

19        Google asserts that "Plaintiffs argue repeatedly that lost chats would have shown Google's

20  intent or subjective motivation", but that "in this antitrust case, the inquiry focuses on *effect*, not

21  *intent*."  (Opp. at 4.)  Google mischaracterizes Plaintiffs' submission.  Plaintiffs' effort to show what

22  was lost is hardly limited to lost evidence of intent.  (*See, e.g.*, Pls. Proposal at 6 ("It is also likely that

23  Google employees discussed the success of the [RSA] program in achieving Google's anticompetitive

24  goals . . . ."); *id.* at 8 (arguing deleted Chats would have shown "whether Google arrived at any

25  unwritten understandings with Samsung"); *id.* at 10-11 (arguing deleted Chats would have undercut

26  Google's claim that "there is no 'direct evidence of a meeting of the minds'" and no "direct evidence

27

28       [4] Eva Dou & Trisha Thadani, *Google Pays Apple Billions a Year to Use Its Search Engine.  Now Executives Must Testify.*, Wash. Post (Sept. 21, 2023, 6:02 p.m.),
https://www.washingtonpost.com/technology/2023/09/21/google-antitrust-trial-apple-iphone/.

of a promise not to open a competing app store" regarding Project Hug); *id.* at 11 ("discussions over Chat" about Google's post-litigation business model changes "could have demonstrated the existence of less-restrictive alternatives to its challenged practices"); *id.* at 12 (arguing the deleted Chats "would have offered valuable details about YouTube's reasons for resisting" Google's billing policy change "and the challenges it faced when it ultimately switched from its own payment solution to GPB—an event that occurred and would have been discussed after this litigation began").)  And where Chats reflecting intent were lost, Google openly admits (Opp. at 5) that the Match Plaintiffs' claim of attempted monopolization of the Android in-app payment solutions market *requires* proof of intent.

Google also misstates the law.  The Supreme Court has held for over 100 years, dating back to "the classic formulation of the Rule of Reason" by Justice Brandeis, that "the purpose or end sought to be attained, are all relevant facts", "because knowledge of intent may help the court to interpret facts and to predict consequences." *Am. Needle v. Nat'l Football League*, 560 U.S. 183, 203 n.10 (2010) (quoting *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918)).  The Ninth Circuit has held the same.  *See Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1154 (9th Cir. 2003) ("[A] defendant's predatory intent may be relevant in determining whether a particular agreement is unreasonable.").  Google quotes *United States v. Microsoft Corp.*, 253 F.3d 34, 59 (D.C. Cir. 2001), for the proposition that the "focus is upon the effect of that conduct, not upon the intent behind it." (*See* Opp. at 4-5.)  *Microsoft* did not hold that intent is irrelevant, as Google argues, but that a Plaintiff can satisfy the rule of reason by showing anticompetitive effects alone.  In the very next sentence, which Google omits, *Microsoft* echoes the Supreme Court:  "Evidence of the intent behind the conduct of a monopolist is relevant only to the extent it helps us understand the likely effect of the monopolist's conduct".  *Microsoft Corp.*, 253 F.3d at 59.

Google likewise ignores the role of intent evidence for Plaintiffs' *per se* claims regarding Project Hug.  "Under the Sherman Act, a combination formed ***for the purpose*** and with the effect of" certain anticompetitive ends "is illegal *per se*."  *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 48 (1990) (citation omitted).  Google itself even argued in a June 2023 filing that Plaintiffs' *per se* claims involve a theory that Google and the Project Hug developers "had the mutual intent to agree not to compete, which is *per se* illegal." (Dkt. 523 at 5 (quoting Dkt. 509 at 10-11).)  While intent is not

required for the *per se* claims to succeed, it can be relevant, as Google has conceded.

Chats where Google employees admitted that Google's challenged conduct was designed to prevent competition would have been powerful tools to help the jury understand the effects that conduct had. Without those Chats, Plaintiffs lack valuable evidence they could have used to rebut Google's efforts to reimagine its challenged conduct as procompetitive, such as Google's claim in its Opposition that Google entered into the Project Hug agreements not to pay off its rivals, but "because developers have choices when it comes to app distribution and monetization". (Opp. at 10.)

Indeed, arguments like these show that Google intends to make the intent behind its conduct a key aspect of its defense. Google's trial brief argues at length that most of the conduct Plaintiffs challenge should be excused because it was ***intended*** to help Google compete with Apple. (*See, e.g.*, Dkt. 639 at 1 ("The conduct challenged by Epic and Match—agreements with phone manufacturers and developers, security policies, and a service fee model—is how Android competes with Apple's iOS and other platforms.").) The relevance of Chats where Google employees took different positions cannot be overstated. The jury will never see those Chats because Google knowingly destroyed them.

### iii.      Google Mischaracterizes Its Employees' Chat Deletion Practices.

Google cannot relitigate the Court's finding that "Google employees who received a litigation hold in this case were unable or unwilling to follow the Chat preservation instructions, and sometimes disregarded the instructions altogether." (Sanctions Order at 10.) Google seeks to cast doubt on whether its employees systematically deleted their Chats by arguing that Plaintiffs "mischaracterize[] the testimony of Google employees" whom Plaintiffs assert deleted relevant Chats. (Opp. at 5.) Google's claim is irrelevant and wrong. That testimony supports the Court's finding.

Google contends that Purnima Kochikar, Google's Rule 30(b)(6) witness on Project Hug, "testified at her deposition that she followed the instructions in the litigation hold" she was given. (Opp. at 11.) Google further claims that plaintiffs have no evidence that Ms. Kochikar discussed Project Hug with her history off. That is disingenuous at best. Ms. Kochikar did not testify that she did not discuss Project Hug over Google Chat. And when asked "Did you have your default setting to delete chats every 24 hours?", Ms. Kochikar testified "Yes." (Dkt. 634-9 at 22:5-6, 8.) Google's suggestion that Ms. Kochikar—the executive responsible for overseeing Project Hug, who testified in

PLAINTIFFS' REPLY ISO PROPOSED REMEDY RE GOOGLE'S DESTRUCTION OF CHAT EVIDENCE
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD; 3:20-cv-05761-JD; 3:21-cv-05227-JD; 3:22-cv-02746-JD

13

1  August 2022 that Project Hug and related programs are her "day-to-day work" (Dkt. 634-9

2  at 104:4-8)—never once discussed Project Hug over Chat, is absurd.

3       Google also speculates that Lawrence Koh may not have discussed Project Hug over Chat after

4  the litigation began because he left Google four months later.  (Opp. at 11.)  Google's claim is not

5  plausible.  Mr. Koh was a key architect of Project Hug who personally negotiated several agreements

6  and supervised those who negotiated others.  He admitted during his deposition that he used Google

7  Chat "routinely in the course of [his] business".  (Zaken Decl., Ex. 3 at 112:13-15, 17.)  And Google

8  admitted in interrogatory responses that Mr. Koh could not recall ever having turned on his Chat

9  history during his custodial period.  (Dkt. 432-2 at 13-16, Ex. C.)  Google's suggestion that Mr. Koh

10  never chatted about a major workstream he managed is not credible.

11       Google also accuses Plaintiffs of making "misleading and baseless claims about the deposition

12  testimony of Google's CEO" regarding his decision to keep his Chat history off.  (Opp. at 14.)  But

13  Plaintiffs' contention that Mr. Pichai "never turned on his Chat history" (Pls. Proposal at 14) comes not

14  from his deposition testimony, but from Google's sworn interrogatory response stating that Mr. Pichai

15  was among the many Google employees who could not recall *ever* having turned on their Chat history

16  during their custodial periods.  (Dkt. 432-2 at 13-16, Ex. C.)  Mr. Pichai's February 27, 2023

17  deposition testimony is not to the contrary.  When asked whether he had his Chat history on,

18  Mr. Pichai responded : "Typically, no.  But recently we have made a change", referring to the change

19  Google made "given developments in this litigation".  (Dkt. 634-15 at 186:19-187:7; *see also*

20  Dkt. 608-19 ("[A]lso can we change the setting of this group to history off.").)

21              *iv.        There Is No Doubt that Google Destroyed Relevant Evidence.*

22       Google argues that "Plaintiffs offer nothing more than rank speculation that any missing chats

23  would have been relevant—let alone helpful—to their case."  (*Id.* at 5.)  Google flagrantly ignores the

24  Court's finding that "[i]t is clear in the record that relevant, substantive business communications were

25  made on Chat that plaintiffs will never see, to the potential detriment of their case."  (Sanctions Order

26  at 18.)  Google's argument is also disingenuous.  To whatever extent Plaintiffs and the jury are left to

27  speculate about what Google employees said in off-the-record Chats, that is because Google

28  intentionally destroyed them to ensure that they would never be used against Google in court.

But there is no need to speculate, because the unrebutted evidence shows that the deleted Chats contained exactly what Google intended—the "sensitive" and "risky" conversations that Google trained its employees to destroy.  (*See* Pls. Proposal at 4-15.)  Indeed, Google trained its employees to Chat off the record, and then deleted those Chats, ***because*** Google knew that those Chats would be unfavorable to its litigation positions.  Plaintiffs proved this fact by uncovering the "Communicate with Care" training materials, where Google instructed employees that Google is "constantly in the public eye . . . and the courthouse", and taught them that Chatting off the record is "[b]etter than sending the email" because "'off the record' Hangout chats between individual corporate accounts are not retained by Google as emails are".  (Sanctions Order at 4.)  "Google employees took the Care training to heart", as demonstrated by the dozens of on-the-record Chats about topics relevant to this litigation where Google employees wrote things such as "communicate with care – assume anything you say here will be subject to discovery if there are any regulatory or legal proceedings at some point in the future.  group chats (like this one) aren't transient and you can't turn off history (unlike 1:1 chat threads where you can turn off history and they disappear in 24 hours)')".  (*Id.* at 5 (quoting Dkt. 468, Ex. 8).)  Far from being irrelevant, as Google suggests (*see* Opp. at 17-18), the use of "fake privilege" on Google communications is further proof that Google employees followed their training to try to conceal documents from review in court.

Google's argument that Plaintiffs offer "nothing more than rank speculation" also misses the point.  The Court did not ask Plaintiffs to prove the contents of the deleted Chats, but to "tell the Court what *might* have been lost in the Chat communications," recognizing "plaintiffs' dilemma of trying to prove the contents of what Google has deleted."  (Sanctions Order at 19 (emphasis added).)  Plaintiffs' submission demonstrates that what *was* lost were Google employees' "most sensitive—and most damning—communications, including about the topics at the heart of this litigation".  (Pls. Proposal at 2.)  Google elected not to engage with that argument in its brief.  Its failure to do so confirms what the Court already found—that Google intentionally and prejudicially destroyed relevant evidence, and a "substantial trial-related penalty" is warranted.  (1/12/2023 Tr. 134:7-12.)

## CONCLUSION

The Court should order Plaintiffs' proposed remedy.

Dated:  October 12, 2023      CRAVATH, SWAINE & MOORE LLP
     Christine Varney *(pro hac vice)*
     Gary A. Bornstein *(pro hac vice)*
     Timothy G. Cameron *(pro hac vice)*
     Yonatan Even *(pro hac vice)*
     Lauren A. Moskowitz *(pro hac vice)*
     Justin C. Clarke *(pro hac vice)*
     Michael J. Zaken *(pro hac vice)*
     M. Brent Byars *(pro hac vice)*

FAEGRE DRINKER BIDDLE & REATH LLP
     Paul J. Riehle (SBN 115199)

Respectfully submitted,

By: */s/ Lauren A. Moskowitz*
     Lauren A. Moskowitz

*Counsel for Plaintiff Epic Games, Inc.*

Dated:  October 12, 2023      HUESTON HENNIGAN LLP
     Douglas J. Dixon
     Christine Woodin
     Joseph A. Reiter

Respectfully submitted,

By: */s/ Douglas J. Dixon*
     Douglas J. Dixon

*Counsel for Plaintiffs Match Group, LLC et al.*

Dated:  October 12, 2023      BARTLIT BECK LLP
     Karma M. Giulianelli

KAPLAN FOX & KILSHEIMER LLP
     Hae Sung Nam

Respectfully submitted,

By: */s/ Karma M. Giulianelli*
     Karma M. Giulianelli

*Co-Lead Counsel for the Class in In re Google Play Consumer Antitrust Litigation*

Dated:  October 12, 2023

PRITZKER LEVINE LLP
Elizabeth C. Pritzker

Respectfully submitted,

By: */s/ Elizabeth C. Pritzker*
Elizabeth C. Pritzker

*Liaison Counsel for the Class in In re Google Play
Consumer Antitrust Litigation*


Dated:  October 12, 2023

OFFICE OF THE UTAH ATTORNEY GENERAL
Brendan P. Glackin
Lauren M. Weinstein

Respectfully submitted,

By: */s/ Lauren M. Weinstein*
Lauren M. Weinstein

*Counsel for the Plaintiff States*

## **E-FILING ATTESTATION**

I, Lauren A. Moskowitz, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories identified above has concurred in this filing.


 */s/ Lauren A. Moskowitz*
Lauren A. Moskowitz