DocuSign Envelope ID: 1791ABBC-4634-4785-9A79-3192B74D189C
Case 3:20-cv-05671-JD   Document 541-1   Filed 11/13/23   Page 1 of 5

| | |
|---|---|
| Brian C. Rocca, Bar No. 221576<br>brian.rocca@morganlewis.com<br>Sujal J. Shah, Bar No. 215230<br>sujal.shah@morganlewis.com<br>Michelle Park Chiu, Bar No. 248421<br>michelle.chiu@morganlewis.com<br>Minna Lo Naranjo, Bar No. 259005<br>minna.naranjo@morganlewis.com<br>Rishi P. Satia, Bar No. 301958<br>rishi.satia@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1596<br>Telephone: (415) 442-1000<br><br>Richard S. Taffet, *pro hac vice*<br>richard.taffet@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>101 Park Avenue<br>New York, NY 10178-0060<br>Telephone: (212) 309-6000<br><br>*Counsel for Defendants* | Glenn D. Pomerantz, Bar No. 112503<br>glenn.pomerantz@mto.com<br>Kuruvilla Olasa, Bar No. 281509<br>kuruvilla.olasa@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>350 South Grand Avenue, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 683-9100<br><br>Kyle W. Mach, Bar No. 282090<br>kyle.mach@mto.com<br>Justin P. Raphael, Bar No. 292380<br>justin.raphael@mto.com<br>Emily C. Curran-Huberty, Bar No. 293065<br>emily.curran-huberty@mto.com<br>Dane P. Shikman, S.B. #313656<br>dane.shikman@mto.com<br>Rebecca L. Sciarrino, S.B. # 336729<br>rebecca.sciarrino@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>560 Mission Street, Twenty Seventh Fl.<br>San Francisco, California 94105<br>Telephone: (415) 512-4000<br><br>Jonathan I. Kravis, *pro hac vice*<br>jonathan.kravis@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>601 Massachusetts Ave. NW, Ste 500E<br>Washington, D.C. 20001<br>Telephone: (202) 220-1100 |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.,* Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF ELIZABETH DALY IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL TRIAL EXHIBITS**<br><br>Judge: Hon. James Donato |

DECLARATION OF ELIZABETH DALY IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO SEAL TRIAL EXHIBITS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

DocuSign Envelope ID: 1791ABBC-4634-4785-9A79-3192B74D189C

I, Elizabeth Daly, declare as follows:

1. I am currently employed by Google LLC (Google) as a Director within Google's Legal organization. I graduated from the University of Michigan Law School in 2007 and have been an in-house counsel for Google since 2011. I am a member of the New York State Bar.

2. Since 2015, I have been the Google in-house counsel principally responsible for supporting the legal aspects of Google's negotiation and analysis of the Information Services Agreement (ISA), including the Joint Cooperation Agreement (JCA), with Apple Inc. (Apple). I also frequently receive information from Google employees regarding Google's evaluation of Apple's strategic objectives and Google's efforts to market its products and services to consumers who use Apple devices.

3. In my role as in-house counsel, I periodically evaluate the commercial sensitivity of information relating to these subjects and assess whether disclosing particular information would harm Google's competitive standing. That includes, for example, determining whether to seek confidential treatment for materials submitted to regulators and deciding whether information shared with business partners should be subject to a non-disclosure agreement.

4. I understand that the plaintiff in this case intends to use particular documents in open court, and I have reviewed certain of those documents because they relate to Google's relationship with Apple and other topics I am familiar with from my work at Google.

5. I have reviewed Exhibit 1492 which appears to be a copy of the amendment to the ISA between Google and Apple dated September 30, 2016. Although the agreement has subsequently been amended, that amendment was primarily an extension of the existing terms of the 2016 amendment and, consequently, the majority of the terms of this 2016 amendment remain in effect today. The agreement is non-public, and its terms are highly commercially sensitive. Public disclosure of the agreement is likely to cause significant harm to Google's competitive standing by, for example, giving Google's competitors insight into how Google structures this deal with Apple, which Google queries result in a revenue share payment to Apple, and the commercial terms of the partnership. That kind of disclosure would, among other

things, give competitors a one-sided advantage in preparing their own bids to provide services that Google presently provides under the agreement. Additionally, Google has similar arrangements to promote Google Search with other third-party browsers. Public disclosure of the agreement is likely to cause significant harm to Google's competitive standing by, for example, giving Google's competitors insight into how Google might have structured similar deals with other partners beyond Apple, which would, among other things, give competitors a one-sided advantage in preparing their own bids to provide services that Google presently providers under these other third-party browser agreements.

6. I have reviewed Exhibit 1489, which appears to be a copy of the JCA between Google and Apple dated May 15, 2014. Certain portions of the JCA remain current, operative, agreed upon terms between Google and Apple and reveal terms and conditions set forth in the ISA. Thus this agreement is non-public, and its terms are also highly commercially sensitive. Public disclosure of this agreement is likely to cause significant harm to Google's competitive standing by, for example, giving Google's competitors insight into how Google structures this deal with Apple, which Google queries result in a revenue share payment to Apple, and the commercial terms of the partnership. That kind of disclosure would, among other things, give competitors a one-sided advantage in preparing their own bids to provide services that Google presently provides under the agreement. Additionally, Google has similar arrangements to promote Google Search with other third-party browsers. Public disclosure of the agreement is likely to cause significant harm to Google's competitive standing by, for example, giving Google's competitors insight into how Google might have structured similar deals with other partners beyond Apple, which would, among other things, give competitors a one-sided advantage in preparing their own bids to provide services that Google presently providers under these other third-party browser agreements.

7. As noted, Google separately negotiates agreements with a number of companies to promote Google Search in those companies' browsers. The terms of those agreements differ from each other (and from the JCA and ISA referenced above) as each partner expresses its own

DECLARATION OF ELIZABETH DALY IN SUPPORT OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL TRIAL EXHIBITS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD

preferences and objectives, leading to different commercial compromises. Google's competitive standing would likely be harmed significantly if all of Google's current and potential partners were aware of the terms that Apple negotiated with Google. The harm to Google's competitive standing would be especially severe if only Google, and not its competitors, were required to disclose an agreement like the one in question. Under those circumstances, Google's competitors would be able to continue engaging in ordinary confidential commercial negotiations with Apple and other browser developers, yet all involved would know the outcome of Google's negotiation.

8. Due to the commercial sensitivity of the JCA, ISA, and amendment thereto, access to the agreement is limited within Google. These restrictions generally exist to ensure compliance with confidentiality obligations to Apple relating to the agreement and to provide separation between the Google employees responsible for negotiating with third party browser partners (such as Apple and Mozilla) and the Google employees who negotiate agreements with Android partners (such as Samsung and Motorola). The fact that Google generally restricts access to the agreements in this way further informs my conclusion that publicly disclosing these agreements with Apple would affect Google competitive standing in relation to its competitors and many of its partners.

9. I have reviewed Exhibit 6190, which appears to be a December 20, 2018 email thread with the subject line "Tim Briefing Feedback," and Exhibit 1493, which appears to be a document entitled "Apple Partnership Strategy," dated October 29, 2020. These documents are confidential, and public disclosure of them is likely to cause significant harm to Google's competitive standing for similar reasons set forth above. The email at Exhibit 6190 includes various contractual terms that Google employees contemplated or evaluated in negotiating the ISA with Apple. Exhibit 1493 similarly includes discussion of financial terms and contractual provisions of agreements with Apple relating to Cloud, Ads, and other products and services offered by Google. In my experience supporting commercial transactions, the negotiating team will often deliberate internally about various constructs and generate models that reflect potential alternatives before making a proposal to the counterparty, which in this case was Apple. If Apple

had access to these materials in advance of future negotiations regarding whether to renew or amend the ISA, or any of the other agreements referenced in these documents, then it would have a one-sided advantage by virtue of having seen the range of financial terms and other scenarios that certain Google employees modeled.

10. Furthermore, disclosure would cause significant competitive harm in relation to competitors that wish to provide services that Google presently provides under the ISA - or under the Cloud and Ads agreements. For example, other search engines would not only have access to terms that Google agreed to in a recent agreement with Apple, but also a range of terms and scenarios that were analyzed internally based on confidential Google information. And as discussed above in connection with the ISA with Apple, disclosure of these confidential documents would also likely undermine Google's competitive standing by affecting negotiations with its other partners, who would be able to use Google's internal analyses of terms and scenarios that were evaluated in negotiations with Apple to assess how Google may be approaching its negotiations with those other partners.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 13th day of November, 2023, in Manhasset, New York.



Elizabeth Daly