| | |
|---|---|
| Brian C. Rocca, Bar No. 221576<br>brian.rocca@morganlewis.com<br>Sujal J. Shah, Bar No. 215230<br>sujal.shah@morganlewis.com<br>Michelle Park Chiu, Bar No. 248421<br>michelle.chiu@morganlewis.com<br>Minna Lo Naranjo, Bar No. 259005<br>minna.naranjo@morganlewis.com<br>Rishi P. Satia, Bar No. 301958<br>rishi.satia@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1596<br>Telephone:  (415) 442-1000<br><br>Richard S. Taffet, *pro hac vice*<br>richard.taffet@morganlewis.com<br>**MORGAN, LEWIS & BOCKIUS LLP**<br>101 Park Avenue<br>New York, NY  10178-0060<br>Telephone: (212) 309-6000<br><br>*Counsel for Defendants* | Glenn D. Pomerantz, Bar No. 112503<br>glenn.pomerantz@mto.com<br>Kuruvilla Olasa, Bar No. 281509<br>kuruvilla.olasa@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>350 South Grand Avenue, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 683-9100<br><br>Kyle W. Mach, Bar No. 282090<br>kyle.mach@mto.com<br>Justin P. Raphael, Bar No. 292380<br>justin.raphael@mto.com<br>Emily C. Curran-Huberty, Bar No. 293065<br>emily.curran-huberty@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>560 Mission Street, Twenty Seventh Fl.<br>San Francisco, California 94105<br>Telephone: (415) 512-4000<br><br>Jonathan I. Kravis, *pro hac vice*<br>jonathan.kravis@mto.com<br>**MUNGER, TOLLES & OLSON LLP**<br>601 Massachusetts Ave. NW, Ste 500E<br>Washington, D.C. 20001<br>Telephone: (202) 220-1100 |

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.,*<br>Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**DECLARATION OF CHRISTIAN CRAMER IN SUPPORT OF GOOGLE'S ADMINISTRATIVE MOTION TO FILE UNDER SEAL TRIAL EXHIBITS**<br><br>Judge:  Hon. James Donato |

I, Christian Cramer, declare as follows:

1.     I have been Finance Director for Defendant Google LLC ("Google") since March 2017 and have worked at Google since September 2007. I have personal knowledge of Google's practices concerning the confidentiality of its financial information. The facts set forth here are true and correct to the best of my knowledge, information, and belief, and are based on my personal knowledge of Google's policies and treatment of confidential information, the materials provided to me and reviewed by me, and/or conversations with other knowledgeable Google employees. If called upon as a witness in this action, I could and would testify from my personal knowledge and knowledge acquired from sources with factual foundation.

2.     I submit this declaration in support of this Motion seeking to seal the non-public, highly confidential financial information identified below.

3.     I have reviewed Exhibit 1616, which appears to be a copy of a document entitled "Alphabet Margin Trends 2018-2024", which at pages -061 and -062 sets forth detailed and commercially-sensitive financial metrics for Google's product offerings (e.g., Search, YouTube, Cloud, Ads, and Play). Specifically, the data included in this document breakdown revenue, operating income, and operating margin for 2018-2020 with projections for the years 2021-2024 for multiple Google product areas. Moreover, these data do not account for all costs that the included products would incur if they were standalone businesses. Alphabet does not publicly report current or forecasted revenue or earnings data by product area at this granular of a level. It is company policy to treat this information as highly-confidential and to limit its distribution to only a limited subset of employees.

4.     I have also reviewed Exhibit 441, which appears to be a copy of a document titled "Android Device LTV Overview." Slide -008 (and related testimony at 312:16 - 313:21 of my deposition in this litigation) contains financial margin data for specific non-Play Google products, including Search, on Android and iOS devices. Alphabet does not publicly report financial margin data on its products on a per-device basis, and treats this type of analysis and data as highly confidential.

1

DECLARATION OF CHRISTIAN CRAMER ISO OF GOOGLE'S ADMIN. MOT. TO FILE UNDER SEAL TRIAL EXHIBITS
Case Nos. 3:21-md-02981-JD; 3:20-cv-05671-JD


5. Public disclosure of the data revealed on pages -061 and -062 of Exhibit 1616 is likely to cause significant harm to Google's competitive standing by, among other things, giving its competitors across product areas (e.g., Search, Clouds, Ads, Play, YouTube, etc.) insight into Google's financial metrics which they can use to gain an unfair advantage in competing against the company. Google's competition could use data broken down at this level of granularity to drive pricing decisions and inform strategy in contract negotiations. For example, Google's Search competitors (e.g., Microsoft, Yahoo), could leverage Google's actual and forecasted operating income figures to inform the terms and conditions offered to device makers (e.g. Samsung), mobile phone carriers (e.g. AT&T and Verizon), and publishers to compete more effectively–and unfairly–against Google Search or other Google product areas for that business. Moreover, the harm to Google would be particularly significant if its competitors were not similarly forced to disclose their own commercially sensitive financial metrics across product areas. In other words, Google's competitors would have a one-sided advantage in competing for business that is likely to result in commercial harm to Google's across its different product offerings.

6. Similarly, public disclosure of the data revealed on slides -061 and –062 of Exhibit 1616 is likely to cause significant harm to Google's competitive standing by, for example, giving existing and/or potential customers across product areas (e.g., app developers and device makers), improper and unfair insight into the company's revenue and operating income and margins which they could leverage to extract unreasonable deal terms in commercial negotiations with Google. If, for example, a device maker or carrier had access to detailed financials for Play, it could leverage that data and information advantage to extract more favorable financial deal terms, including revenue share, than it would otherwise be able to do through an otherwise active and serious negotiation. Moreover, Google is nearly constantly negotiating agreements with existing and/or potential customers—across product areas—and thus all of those negotiations would likely be impacted by the public release of this information which would put Google at competitive disadvantage.

7. Public disclosure of the data revealed on page -008 of Exhibit 441 is also likely to cause significant harm to Google's competitive standing by, among other things, giving mobile device makers insight into Google's financial analysis on a device-by-device basis which they could use to gain an unfair advantage in competing against the company. A mobile phone makers, like Apple, could use this data to drive pricing decisions and inform strategy vis-a-vis competition with Google. The harm to Google would be particularly significant if its competitors were not similarly forced to disclose their own device-level finances. In other words, Google's competitors would have a one-sided advantage in competing for the sale of mobile phones that is likely to result in commercial harm to Google.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of November 2023, in Mountain View, California.

DocuSigned by:

Christian Cramer

———————————————
Christian Cramer