Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE &**
**REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc. in Epic
Games, Inc. v. Google LLC et al.*

Glenn D. Pomerantz (SBN 112503)
glenn.pomerantz@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Brian C. Rocca (SBN 221576)
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants Google LLC et al*

[Additional counsel appear on signature page]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br><br>**JOINT PROPOSED JURY VERDICT FORM AND OBJECTIONS**<br><br>Judge: Hon. James Donato<br>Trial Date: November 6, 2023<br>Time: 9:00 am<br>Place: Courtroom 11, 19th Floor |

# **TABLE OF CONTENTS**

Plaintiff's Proposed Verdict Form ...................................................................................... 3

Defendants' Proposed Verdict Form ................................................................................. 10

Plaintiff's Position Re Verdict Form ................................................................................ 18

Defendants' Position Re Verdict Form............................................................................. 20

**Plaintiff's Proposed Verdict Form**

Please answer the following Questions in accordance with the Jury Instructions given to you by the Court. Mark your answers by placing an X in the space provided.

**Epic's Claims**

**Monopolization—Section 2 of the Sherman Act**

1.     Has Epic proven, by a preponderance of the evidence, that Google unlawfully acquired or maintained monopoly power in a relevant antitrust market that includes the Google Play Store?

YES____ NO ____

*Continue to Question No. 2.*

2.     Has Epic proven, by a preponderance of the evidence, that Google unlawfully acquired or maintained monopoly power in a relevant antitrust market that includes Google Play Billing?

YES____ NO____

*Continue to Question No. 3.*

**<u>Unlawful Restraints of Trade—Section 1 of the Sherman Act</u>**
**<u>and the California Cartwright Act</u>**

3.     Has Epic proven, by a preponderance of the evidence, that Google entered into an agreement not to compete with one or more of Activision, Riot, or Supercell?

YES____ NO____

*Continue to Question No. 4.*

4.     Has Epic proven, by a preponderance of the evidence, that Google entered into one or more agreements that unreasonably restrained trade in a relevant antitrust market that includes the Google Play Store?

YES____ NO____

*Continue to Question No. 5.*

5.     Has Epic proven, by a preponderance of the evidence, that Google entered into one or more agreements that unreasonably restrained trade in a relevant antitrust market that includes Google Play Billing?

YES____ NO____

*Continue to Question No. 6.*

1

2

### **Tying—Section 1 of the Sherman Act**
### **and the California Cartwright Act**

3

4

5

6.    Has Epic proven, by a preponderance of the evidence, that Google maintained a *per se* illegal tie of Google's Android app store (Google Play Store) and Google's payment processor (Google Play Billing)?

6

YES_____ NO_____

7

8

***Continue to Question No. 7.***

9

10

7.    Has Epic proven, by a preponderance of the evidence, that Google unlawfully tied use of its Android app store (Google Play Store) to use of Google's payment processor (Google Play Billing) under the rule of reason?

11

12

YES_____ NO_____

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>Injury</u>**

2

3    ***If you answered Yes to <u>any</u> preceding Question, continue to Question No. 8. If you answered No to <u>all</u> preceding Questions, skip to Question No. 9 .***

4

5    8.    Did any of Google's anti-competitive conduct you found unlawful in the previous questions
          cause injury to Epic in its business or property?

6

7              YES_____ NO_____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**Google's Counterclaims**

2

***If you answered Yes to <u>any</u> of Questions No. 1, 2, 3, 6 or 7, <u>or</u> you answered Yes to <u>either</u> Question No. 4 or 5 (and you found that Google's Developer Distribution Agreement and/or its Payments Policy unreasonably restrained trade), then do not answer any other questions; sign and date this Verdict Form and inform the Court that the jury has reached a verdict. Otherwise, continue to Question No. 9.***

3

4

5

6

9.      Has Google proven, by a preponderance of the evidence, that Epic breached the Google Play Payments Policy with Google by not exclusively using Google Play Billing in its app distributed through the Google Play Store, causing damage to Google?

7

8

9

                    YES____ NO____

10

11

***Continue to Question No. 10.***

12

10.     Has Google proven, by a preponderance of the evidence, that Epic breached the implied covenant of good faith and fair dealing incorporated into the Developer Distribution Agreement with Google, causing damage to Google?

13

14

15

                    YES____ NO____

16

17

***Continue to Question No. 11.***

18

19

11.     Has Google proven, by a preponderance of the evidence, that Epic was unjustly enriched by receiving benefits that it ought to have returned to Google, and that the unjust enrichment related to a different subject than the Developer Distribution Agreement between Google and Epic?

20

21

22

                    YES____ NO____

23

24

25

26

27

28

***If you answered Yes to <u>either</u> of Questions No. 9 or 10, continue to Question No. 12. Otherwise, skip to Question No. 13.***

12.     We award Google the following damages for its breach of contract counterclaims against Epic:


$_____


*(Award no more than $398,931.)*


***If you answered Yes to Question No. 11, continue to Question No. 13.***


13.     We award Google the following damages for its unjust enrichment counterclaim against Epic:


$_____


*(Award no more than $240,652.)*

***Sign and date this Verdict Form and inform the Court that the jury has reached a verdict.***

Dated: _____

_____

Foreperson

**Defendants' Proposed Verdict Form**

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Answer these questions in accordance with the instructions I gave to you. Your answer to each question must be unanimous. Mark your answers by placing an X in the space provided.*

We, the jury, unanimously agree to the answers to the following questions submitted to us, and we return them as our verdict in this case as follows:

### Epic's Claims Against Google

### Monopolization—Section 2 of the Sherman Act—Alleged Android App Distribution Market

1.  Did Epic prove the existence of an Android app distribution market and that this market's geographic scope is the entire world except for China?

    YES_____ NO _____

    *If you answered "NO," proceed to Question 5; otherwise proceed to the next question.*

2.  Did Epic prove that Google has monopoly power in the Android app distribution market?

    YES_____ NO _____

    *If you answered "NO," proceed to Question 5; otherwise proceed to the next question.*

3.  Did Epic prove that Google willfully acquired or maintained its monopoly power in the Android app distribution market through anticompetitive conduct?

    YES_____ NO _____

    *If you answered "NO," proceed to Question 5; otherwise proceed to the next question.*

4.  Did Epic prove that it suffered injury to its business or property as a result of the anticompetitive conduct you found in response to Question 3?

    YES_____ NO _____

    *Proceed to Question 5.*

**Monopolization—Section 2 of the Sherman Act—Alleged Android In-App Billing Services Market**

5.    Did Epic prove the existence of an Android in-app billing services market and that this market's geographic scope is the entire world except for China?

YES____ NO ____

*If you answered "NO," proceed to Question 9; otherwise proceed to the next question.*

6.    Did Epic prove that Google has monopoly power in the Android in-app billing services market?

YES____ NO ____

*If you answered "NO," proceed to Question 9; otherwise proceed to the next question.*

7.    Did Epic prove that Google willfully acquired or maintained its monopoly power in the Android in-app billing services market through anticompetitive conduct?

YES____ NO ____

*If you answered "NO," proceed to Question 9; otherwise proceed to the next question.*

8.    Did Epic prove that it suffered injury to its business or property as a result of the anticompetitive conduct you found in response to Question 7?

YES____ NO ____

*Proceed to Question 9.*

**_Per Se_ Unlawful Restraint(s) of Trade—Section 1 of the Sherman Act and the California Cartwright Act[1]**

9.    Has Epic proven that Activision, Riot, or Supercell were competitors or potential competitors of the Google Play store?

|          |      |     |    |
|----------|------|-----|----|
| Activision: | YES____ | NO ___ |
| Riot: | YES____ | NO____ |
| Supercell: | YES____ | NO____ |

*If your answer for any company was "YES" proceed to the next question; otherwise, proceed to Question 12.*

10.   For each company for which your answer to Question 9 was "YES," has Epic proven that Google entered into an agreement not to compete with that company with respect to the distribution of apps, and in particular that Activision, Riot Games, or Supercell would not launch Android app stores that would have competed with the Google Play Store?   If your answer to Question 9 was "NO" for a particular company, select N/A below for that company.

|          |      |     |    |
|----------|------|-----|----|
| Activision: | YES____ | NO____ | N/A____ |
| Riot: | YES____ | NO____ | N/A ____ |
| Supercell: | YES____ | NO____ | N/A ____ |

*If your answer for any company was "YES" proceed to the next question; otherwise, proceed to Question 12.*

11.   Has Epic proven that it suffered injury to its business or property as a result of the agreements with the companies for which you answered "YES" in response to Question 10?

YES____ NO ____

*Proceed to Question 12.*

---

[1] As Google has explained in its jury instructions, no *per se* Section 1 claim should go to the jury. Google proposes these questions in the event that its objections to the *per se* claims are overruled.

1    **Unlawful Restraint(s) of Trade Under the Rule of Reason—Section 1 of the Sherman Act and the**
2    **California Cartwright Act—Alleged Android App Distribution Market[2]**

3    12.   *If your answer to Question 1 was "NO," proceed to Question 15; otherwise answer this*
          *Question 12.*

4         Did Epic prove that Google has market power in the market for Android app distribution?

5              YES____ NO ____

6
7         *If you answered "NO," proceed to Question 15; otherwise proceed to the next question.*

8    13.   Has Epic proven that Google entered into a contract, combination, or conspiracy with any of
          the following entities that unreasonably restrained trade in the market for Android App
9         Distribution?

10             Original Equipment Manufacturers (OEMs)            YES____ NO ____

11             Developers in the Games Velocity Program (Project Hug)   YES___ NO ____

12        *If your answer for any entity was "YES" proceed to the next question; otherwise, proceed to*
13        *Question 15.*

14   14.   Has Epic proven that it suffered injury to its business or property as a result of those
          contract(s), combination(s), or conspirac(ies) you found in response to Question 13.

15
16             YES____ NO ____

17        *Proceed to Question 15.*

18
19
20
21
22
23

---

24   [2] These questions cover Counts Two and Five of Epic's complaint. Epic Second Amended Complaint
25   ("Epic SAC"), MDL ECF No. 378 at p. 64, 70. Epic's remaining Section 1 rule-of-reason claims
     should not be covered by these questions: The Court has ruled that Epic cannot base a claim on Section
26   4.5 of the DDA, which is the subject of Count Three. MDL ECF No. 700 at 1 (holding that Epic "may
     not argue or suggest that § 4.5 [of the DDA] is unlawful either on its own or in combination with other
27   alleged practices"). Count Seven addresses Google's payments policy, which is the same subject
     matter as Count Eight, Epic's tying claim. Epic SAC at p. 74. To the extent that the Court determines
28   that the alleged conduct underlying Epic's tying claim should be submitted to the jury twice, Google
     proposes that the questions follow those proposed here as Questions 12-14.

## <u>Tying—Section 1 of the Sherman Act and the California Cartwright Act[3]</u>

15.     Has Epic proven that app distribution services and in-app billing services are separate and distinct products?

        YES_____ NO _____

*If you answered "NO," proceed to Question 26; otherwise proceed to the next question.*

16.     Has Epic proven that Google coerces purchasers of app distribution services to also use Google Play Billing?

        YES_____ NO _____

*If you answered "NO," proceed to Question 26; otherwise proceed to the next question.*

17.     Has Epic proven that Google has sufficient market power with respect to app distribution services to enable it to restrain competition as to an alleged market for in-app billing services?

        YES_____ NO _____

*If you answered "NO," proceed to Question 26; otherwise proceed to the next question.*

18.     Has Epic proven that the alleged tying arrangement has foreclosed a substantial volume of commerce as to an alleged market for in-app billing services?

        YES_____ NO _____

*If you answered "NO," proceed to Question 26; otherwise proceed to the next question.*

19.     Has Epic proven that the alleged tying arrangement has unreasonably restrained trade in that it had a substantial adverse effect on competition as to an alleged market for in-app billing services?

        YES_____ NO _____

*If you answered "NO," proceed to Question 26; otherwise proceed to the next question.*

20.     Has Epic proven that it suffered injury to its business or property as a result of the tying arrangement?

        YES_____ NO _____

---

[3] For reasons explained in its position statements, no *per se* Section 1 claim should go to the jury. In the event that the Court overrules Google's objection to submitting the *per se* tying claim to the jury, Google would delete Question 19.

*If you answered "NO," proceed to Question 26; otherwise proceed to the next question.*

21.   Has Google proven a business justification for the alleged tying arrangement?

        YES____ NO ____

*If you answered "NO," proceed to Question 26; otherwise proceed to the next question.*

22.   Has Epic proven that Google's business justification could be achieved through substantially less restrictive means?

        YES____ NO ____

*Proceed to Question 26.*

## **Google's Counterclaims Against Epic**

### **Breach of Contract**

26.   Did Google and Epic enter a contract (the Developer Distribution Agreement)?

YES____ NO_____

*If you answered "NO," proceed to Question 33; otherwise proceed to the next question.*

27.   Did Epic breach the Developer Distribution Agreement?

YES____ NO_____

*If you answered "NO," proceed to Question 30; otherwise proceed to the next question.*

28.   Was Google harmed by Epic's breach of the Developer Distribution Agreement?

YES____ NO_____

*If you answered "NO," proceed to Question 30; otherwise proceed to the next question.*

29.   What are Google's damages from Epic's breach of the Developer Distribution Agreement?

$ _____

*Proceed to Question 33.*

### **Breach of the Implied Covenant of Good Faith and Fair Dealing**

30.   Did Epic unfairly interfere with Google's right to receive the benefits of the contract between Google and Epic?

YES____ NO_____

*If you answered "NO," proceed to Question 33; otherwise proceed to the next question.*

31.   Was Google harmed by Epic's interference?

YES____ NO_____

*If you answered "NO," proceed to Question 33; otherwise proceed to the next question.*

32.   What are Google's damages from Epic's breach of the implied covenant of good faith and fair dealing?

$ _____

*Proceed to Question 33.*

## **Google's Quasi-Contract/Unjust Enrichment Counterclaim Against Epic**

33.    Did Epic receive a benefit in connection with its use of the Google Play store?

YES____ NO____

*If you answered "NO," skip the remaining questions and sign and date this form; otherwise proceed to the next question.*

34.    Did Epic unjustly retain that benefit?

YES____ NO____

*If you answered "NO," skip the remaining questions and sign and date this form; otherwise proceed to the next question.*

35.    If you answered "yes" to Question 34, what is the dollar value of the benefit that Epic retained?

$ _____

Sign and date this Verdict Form and inform the Court that the jury has reached a verdict.

Dated: _____

_____
Foreperson

**Plaintiff's Position Re Verdict Form**

On November 29, the Court requested that the parties submit "a coherent, flowing verdict form" with a "natural flow". Epic's proposed form, consisting of just 13 questions addressing all of Epic's and Google's claims, fits this mold. Conversely, Google's 35-question form—which doesn't even address all of Epic's claims—includes unnecessary questions, legal errors, prejudicial language that risks inconsistency with the jury instructions  Google's verdict form should be rejected.

In *In re Capacitors Antitrust Litigation* the Court used a verdict form much like Epic's proposal. In that form, the jury was asked three questions concerning liability:  (1) whether one defendant participated in an agreement barred by Section 1, (2) whether the other defendant participated in an agreement barred by Section 1, and (3) whether the plaintiff was injured by either defendant's conduct. *See* 3:17-cv-07046-JD, Dkt. 381 (May 22, 2023). The form referred the jury to the instructions. The Court's approach in *Capacitors* was sound, and Epic's form adheres to it.

Google's approach to the jury form, by contrast, is flawed and prejudicial to Epic. *First*, per Google's form, the jury must deliver a unanimous answer to every purported element of Epic's claims. Failure to answer unanimously (in any direction) would result in a failure to resolve Epic's claims. The law does not require that result. *See Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002) (juries are not required to "reach unanimous agreement on all the 'preliminary factual issues that underlie the verdict" only "the ultimate issues"). Google's proposal would prevent the jury from returning a verdict even when it unanimously agrees on the "ultimate issues", contrary to well established law and common sense. For example, for Epic's rule of reason claims, Google presents as a *dispositive* question whether Epic proved "an Android app distribution market [with a] geographic scope [of] the entire world except for China" or "an Android in-app billing services market [with a] geographic scope [of] the entire world except for China". But in *Epic v. Apple*, the Ninth Circuit explained that Epic may prevail on any market supported by the record, even if that market differs from the market Epic has alleged. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 978 n.9 (9th Cir. 2023) (rejecting the "radical argument that, where parties offer dueling market definitions, the case immediately ends if the district court finds the record supports the defendant's proposed market (or a third in-between market[)].").

*Second*, Google also adds commentary and prejudicial language to many instructions, including needlessly repeating language from its own proposed (and improper) jury instructions.  Because the jury will have been instructed and will have access to those instructions while completing the form, further instruction in the form itself is unnecessary.  Moreover, Google's form is inconsistent with its proposed instructions and risks causing juror confusion.  For example, in Google's Question No. 16, Google says that Epic must prove "Google coerces purchasers of app distribution services to also use Google Play Billing".  Google's Form at 5.  But in Google's own "proof of conditioning" instruction, Google says that Epic must prove that Google "refused to distribute apps on the Google Play store unless developers also agreed to use Google Play Billing".  *See* Instruction No.   This is a clear inconsistency between Google's own instructions and Google's verdict form.  As another example, Google's choice to describe Epic's alleged market as including "the entire world except for China", rather than Epic's description as "worldwide excluding China", risks prejudicing Epic by suggesting that Epic's market is unreasonably large.  This could distract the jury from an evidence-based determination.  Epic's proposed form properly addresses both issues by explaining that the jury must find "a relevant antitrust market that includes the Google Play Store" or "a relevant antitrust market that includes Google Play Billing".  Epic's Form at 1.

*Third*, Google misleads by offering an incomplete form.  In footnotes, Google explains that it has not presented instructions for two of Epic's claims:  (1) Epic's unreasonable restraint of trade claim against Google's payments policy predicated on the rule of reason and (2) *per se* tying.[4]  If Google did offer questions on these claims—which Epic asserts are proper and the jury should be instructed on— its form would be considerably longer, particularly given that Google requests that the jury answer yes or no to every element of every other claim offered by Epic (including Epic's Section 1 *per se* claim, which Google likewise disputes).  Google's form already has twice as many questions as Epic's and would become longer still when all claims are included.  Google's form is contrary to the law, is confusing, risks inconsistency and does not even address all of Epic's claims.  It should be rejected.

---

[4] Epic acknowledges the Court's observations at the conclusion of trial today regarding the *per se* tying claim but wishes to preserve the argument.

**Defendant's Position Re Verdict Form**

Epic asserts nearly a dozen antitrust claims across two different markets. Notwithstanding this complexity, Google substantially simplified its proposed verdict form to 8 pages while retaining the necessary questions to reach judgment. Epic's form, on the other hand, would result in an opaque verdict that could not meaningfully be reviewed. Epic's form would preclude understanding of the jury's findings on potentially dispositive issues such as relevant product market—which was decisive in *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)—or specific conduct underlying the jury's findings—which is important in any case, particularly a complex one, *see Pac. W. Cable Co. v. City of Sacramento*, 672 F. Supp. 1322, 1326-27 (E.D. Cal. 1987) ("[I]n large and complex cases such as this, involving many novel legal issues, the better practice would [be] to require special verdicts or the submission of interrogatories to the jury …."). Indeed, Courts frequently opt for detailed forms in antitrust cases.[5]

*First*, "a threshold step in any antitrust case is to accurately define the relevant market." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 992 (9th Cir. 2002). "Failing to define a relevant market alone is fatal to an antitrust claim." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023). But Epic's form obscures the jury's threshold decision as to the relevant market. For example, rather than ask the jury whether Epic has proved its alleged Android app distribution market, Epic's Question 1 asks whether Google has monopolized "a relevant antitrust market that includes the Google Play store." That could be any number of markets beyond those for which any party has actually offered evidence. The verdict form should ask the jury about the markets that Epic has alleged in this case and that it has the burden to prove and not leave it up to the jury to examine other hypothetical markets that Epic has not alleged or offered any evidence regarding. Because Epic's proposed form does not specify the "relevant antitrust market," it would impede review of whether Epic proved that Google's conduct harmed competition: As the Supreme Court has explained, "courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market" because "[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Am. Express Co.*, 138 S. Ct.

---

[5] *E.g.*, *MCI Commc'ns Corp. v. Am. Tel. and Tel. Co.*, 708 F.2d 1081, 1093 (7th Cir. 1983); *Sidibe v. Sutter Health*, No. 3:12-cv-04584-LB, ECF No. 1530 (N.D. Cal. Mar. 11, 2022) (verdict form asking for element-by-element factual findings in antitrust case); *In re: HIV Antitrust Litig.*, No. 3:19-cv-02573-EMC, ECF No. 2057 (N.D. Cal. June 30, 2023) (same); *Costco v. Au Optronics*, No. 2:13-cv-01207-RAJ, ECF No. 628 (W.D. Wash. Oct. 23, 2014) (same).

at 2285. Moreover, Epic's own proposed jury instructions instruct the jury on these alleged markets, and the verdict form should conform to the jury instructions.

*Second*, Google's proposed form is tailored to the conduct Epic challenges. For example, Epic brings two different § 1 claims under the rule of reason: (1) alleged anticompetitive agreements with OEMs and (2) alleged anticompetitive agreements with Project Hug developers. Epic Second Am. Compl., ECF No. 378 ¶¶ 179-87; ¶¶ 206-15. Google's form therefore asks whether the jury has found that Google has entered into an anticompetitive agreement with OEMs and with Project Hug developers. By contrast, Epic's form collapses both claims into a single, amorphous question: has "Google entered into one or more agreements that unreasonably restrained trade." If the jury found for Epic on this question, it would be difficult to determine *which* claims Epic prevailed on: agreements with OEMs? Agreements with game developers? Both? Something else entirely?

*Third*, Question 5 of Epic's form asks about "agreements that unreasonably restrained trade in a relevant antitrust market that includes Google Play Billing." Presumably, this question is meant to address Count 7 of its complaint, which challenges the requirement that developers use Google Play Billing for certain transactions under Section 1 of the Sherman Act. But Epic's form asks about that very same conduct with respect to its tying claim. *See* Epic's Questions 12-14. The Court should not present the same Section 1 claim to the jury twice. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (declining to consider alleged tie under both a generic Section 1 theory and a tying theory).

*Fourth*, Epic's verdict form fails to ask for unanimous findings, as required by Rule 48.

*Fifth*, Epic's form instructs the jury not to reach *any* of Google's counterclaims if it finds in favor of Epic on any of its antitrust claims. That is not the law. *Kelly v. Kosuga*, 358 U.S. 516, 520 (1959). Even if a contract violates the antitrust laws, a court should decline to enforce the contract only if "the judgement of the Court would itself be enforcing the precise conduct made unlawful by the Act." *Id.* at 540; *see Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982); *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 699-700 (6th Cir. 2017). Moreover, this question of illegality is for the Court, not the jury. *See* MDL ECF No. 806 at 200-01.

1    DATED: November 29, 2023              CRAVATH, SWAINE & MOORE LLP
                                               Christine Varney *(pro hac vice)*
2                                              Gary A. Bornstein *(pro hac vice)*
                                               Timothy G. Cameron *(pro hac vice)*
3                                              Yonatan Even *(pro hac vice)*
                                               Lauren A. Moskowitz *(pro hac vice)*
4                                              Justin C. Clarke *(pro hac vice)*
                                               Michael J. Zaken *(pro hac vice)*
5                                              M. Brent Byars *(pro hac vice)*

6                                          FAEGRE DRINKER BIDDLE & REATH LLP
                                               Paul J. Riehle (SBN 115199)
7

8
                                           By:   */s/ Gary A. Bornstein*
9                                              Gary A. Bornstein

10                                             *Counsel for Plaintiff Epic Games, Inc.*

11
     DATED: November 29, 2023              MUNGER, TOLLES & OLSON LLP
12

13

14                                         By:   */s/ Glenn D. Pomerantz*
                                               Glenn D. Pomerantz
15                                             *Attorneys for Defendants Google LLC et al.*

16

17
     DATED: November 29, 2023              MORGAN, LEWIS & BOCKIUS LLP
18

19

20                                         By:   */s/ Brian C. Rocca*
                                               Brian C. Rocca
21                                             *Attorneys for Defendants Google LLC et al.*

22

23

24

25

26

27

28

1

### **E-FILING ATTESTATION**

2

I, Rebecca L. Sciarrino, am the ECF User whose ID and password are being used to file this

3

document.  In compliance with Civil Local Rule 5-1(h)(3), I hereby attest that each of the signatories

4

identified above has concurred in this filing.

5

6

 */s/ Rebecca L. Sciarrino*
Rebecca L.Sciarrino

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28