Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE &**
**REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Christine A. Varney (*pro hac vice*)
cvarney@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

Glenn D. Pomerantz (SBN 112503)
glenn.pomerantz@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Brian C. Rocca (SBN 221576)
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants Google LLC et al*

[Additional counsel appear on signature page]

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT PROPOSED VERDICT FORMS AND OBJECTIONS**<br><br>Judge:  Hon. James Donato<br>Trial Date:  November 6, 2023<br>Time:  9:00 am<br>Place:  Courtroom 11, 19th Floor |

1

2

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Plaintiff's Proposed Verdict Form ........................................................................................ 1

Defendants' Proposed Verdict Form .................................................................................... 6

Plaintiff's Position Re Verdict Form .................................................................................. 13

Defendants' Position Re Verdict Form ............................................................................... 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## Plaintiff's Proposed Verdict Form

Please answer the following Questions in accordance with the Jury Instructions given to you by the
Court. Mark your answers by placing an X in the space provided.

## Epic's Claims

## Monopolization—Section 2 of the Sherman Act

1.      Has Epic proven, by a preponderance of the evidence, that Google unlawfully acquired or
        maintained monopoly power in a relevant antitrust market that includes the Google Play Store?


                YES____ NO ____


*Continue to Question No. 2.*


2.      Has Epic proven, by a preponderance of the evidence, that Google unlawfully acquired or
        maintained monopoly power in a relevant antitrust market that includes Google Play Billing?


                YES____ NO____


*Continue to Question No. 3.*

## Unlawful Restraints of Trade—Section 1 of the Sherman Act and the California Cartwright Act

3.   Has Epic proven, by a preponderance of the evidence, that Google entered into one or more agreements that unreasonably restrained trade in a relevant antitrust market that includes the Google Play Store?

YES____ NO____

*Continue to Question No. 4.*

4.   Has Epic proven, by a preponderance of the evidence, that Google entered into one or more agreements that unreasonably restrained trade in a relevant antitrust market that includes Google Play Billing?

YES____ NO____

*Continue to Question No. 5.*

### Tying—Section 1 of the Sherman Act
### and the California Cartwright Act

5.   Has Epic proven, by a preponderance of the evidence, that Google unlawfully tied use of its Android app store (Google Play Store) to use of Google's payment processor (Google Play Billing) under the rule of reason?

YES_____ NO_____

**<u>Injury</u>**

***If you answered Yes to <u>any</u> preceding Question, continue to Question No. 6.***

6.    Did any of Google's anti-competitive conduct you found unlawful in the previous questions cause injury to Epic in its business or property?

YES_____ NO_____

1    ***Sign and date this Verdict Form and inform the Court that the jury has reached a verdict.***

2

3

4    Dated: _____

5                                                      _____

6                                                                              Foreperson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Defendants' Proposed Verdict Form**

*When answering the following questions and filling out this Verdict Form, please follow the directions provided throughout the form. Answer these questions in accordance with the instructions I gave to you. Your answer to each question must be unanimous. Mark your answers by placing an X in the space provided.*

We, the jury, unanimously agree to the answers to the following questions submitted to us, and we return them as our verdict in this case as follows:

### Epic's Claims Against Google

### Monopolization—Section 2 of the Sherman Act—Alleged Android App Distribution Market

1.    Did Epic prove the existence of an Android app distribution market and that this market's geographic scope is the entire world except for China?

> YES____ NO ____

*If you answered "NO," proceed to Question 5; otherwise proceed to the next question.[1]*

2.    Did Epic prove that Google has monopoly power in the Android app distribution market?

> YES____ NO ____

*If you answered "NO," proceed to Question 5; otherwise proceed to the next question.*

3.    Did Epic prove that Google willfully acquired or maintained its monopoly power in the Android app distribution market through anticompetitive conduct?

> YES____ NO ____

*If you answered "NO," proceed to Question 5; otherwise proceed to the next question.*

4.    Did Epic prove that it suffered injury to its business or property as a result of the anticompetitive conduct you found in response to Question 3?

> YES____ NO ____

*Proceed to Question 5.*

---

[1] Google preserves its argument that Epic must prove its alleged market to succeed on its claims.  If the Court rejects that argument, Google proposes changing this sentence to read:  "Proceed to Question 2."

## __Monopolization—Section 2 of the Sherman Act—Alleged Android In-App Billing Services Market__

5.    Did Epic prove the existence of an Android in-app billing services market and that this market's geographic scope is the entire world except for China?

           YES____ NO ____

*If you answered "NO," proceed to Question 9; otherwise proceed to the next question.*[2]

6.    Did Epic prove that Google has monopoly power in the Android in-app billing services market?

           YES____ NO ____

*If you answered "NO," proceed to Question 9; otherwise proceed to the next question.*

7.    Did Epic prove that Google willfully acquired or maintained its monopoly power in the Android in-app billing services market through anticompetitive conduct?

           YES____ NO ____

*If you answered "NO," proceed to Question 9; otherwise proceed to the next question.*

8.    Did Epic prove that it suffered injury to its business or property as a result of the anticompetitive conduct you found in response to Question 7?

           YES____ NO ____

*Proceed to Question 9.*

---

[2] Google preserves its argument that Epic must prove its alleged market to succeed on its claims.  If the Court rejects that argument, Google proposes changing this sentence to read:  "Proceed to Question 6."

**Unlawful Restraint(s) of Trade Under the Rule of Reason—Section 1 of the Sherman Act and the California Cartwright Act—Alleged Android App Distribution Market**

9.   *If your answer to Question 1 was "NO," proceed to Question 12; otherwise answer this Question 9.[3]*

Did Epic prove that Google has market power in the market for Android app distribution?

        YES____  NO ____

*If you answered "NO," proceed to Question 12; otherwise proceed to the next question.*

10.   Has Epic proven that Google entered into a contract, combination, or conspiracy with any of the following entities that unreasonably restrained trade in the market for Android App Distribution?

        Original Equipment Manufacturers (OEMs)          YES____  NO ____

        Cell phone carriers (carrier RSAs)[4]              YES___   NO ____

        Developers in the Games Velocity Program (Project Hug)   YES___   NO ____

        Developers who distribute apps on Google Play (the DDA)  YES___   NO ____

*If your answer for any entity was "YES" proceed to the next question; otherwise, proceed to Question 12.*

11.   Has Epic proven that it suffered injury to its business or property as a result of those contract(s), combination(s), or conspirac(ies) you found in response to Question 10.

        YES____  NO ____

*Proceed to Question 12.*

---

[3] Google preserves its argument that Epic must prove its alleged market to succeed on its claims.  If the Court rejects that argument, Google proposes deleting the italicized language.

[4] Google submits that the agreements with carriers should not be submitted to the jury.  No evidence has been presented by Epic regarding the content and effect of these agreements, and certainly no evidence upon which a jury could determine that these agreements are anticompetitive. Google includes those agreements in its form here only in the event that this objection is overruled.

**Unlawful Restraint(s) of Trade Under the Rule of Reason—Section 1 of the Sherman Act and the California Cartwright Act—Alleged Android In-App Billing Service Market[5]**

12.  *If your answer to Question 5 was "NO," proceed to Question 15; otherwise answer this Question 12.[6]*

   Did Epic prove that Google has market power in the market for Android in-app billing services?

   YES____ NO ____

   *If you answered "NO," proceed to Question 15; otherwise proceed to the next question.*

13.  Has Epic proven that Google's Developer Distribution Agreement ("DDA") unreasonably restrained trade in the market for Android in-app billing services?

   YES____ NO ____

   *If you answered "NO," proceed to Question 15; otherwise proceed to the next question.*

14.  Has Epic proven that it suffered injury to its business or property as a result of those contract(s), combination(s), or conspirac(ies) you found in response to Question 13.

   YES____ NO ____

   *Proceed to Question 15.*

---

[5] Google preserves its objection to these questions being submitted to the jury because they are duplicative of Epic's tying claim. *See Epic Games v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (declining to consider alleged tie under both a generic Section 1 theory and a tying theory).

[6] Google preserves its argument that Epic must prove its alleged market to succeed on its claims.  If the Court rejects that argument, Google proposes deleting the italicized language.

1

### **Tying—Section 1 of the Sherman Act and the California Cartwright Act**

2

15.     Has Epic proven that the Google Play store and Google Play Billing are separate and distinct

3       products?

4                YES____ NO ____

5       *If you answered "NO," proceed to Question 23; otherwise proceed to the next question.*

6

7       16.     Has Epic proven that Google coerces app developers that use the Google Play store to also use
        Google Play Billing?

8                YES____ NO ____

9

10      *If you answered "NO," proceed to Question 23; otherwise proceed to the next question.*

11      17.     Has Epic proven that Google has sufficient market power with respect to app distribution
        services to enable it to restrain competition as to an alleged market for Android in-app billing

12      services?

13                YES____ NO ____

14      *If you answered "NO," proceed to Question 23; otherwise proceed to the next question.*

15

16      18.     Has Epic proven that the alleged tying arrangement has foreclosed a substantial volume of
        commerce as to an alleged market for in-app billing services?

17                YES____ NO ____

18

19      *If you answered "NO," proceed to Question 23; otherwise proceed to the next question.*

20      19.     Has Epic proven that the alleged tying arrangement has unreasonably restrained trade in that it
        had a substantial adverse effect on competition as to an alleged market for Android in-app

21      billing services?

22                YES____ NO ____

23      *If you answered "NO," proceed to Question 23; otherwise proceed to the next question.*

24

25      20.     Has Epic proven that it suffered injury to its business or property as a result of the tying
        arrangement?

26                YES____ NO ____

27

28      *If you answered "NO," proceed to Question 23; otherwise proceed to the next question.*

21. Has Google proven a business justification for the alleged tying arrangement?

        YES_____ NO _____

*If you answered "NO," proceed to Question 23; otherwise proceed to the next question.*

22. Has Epic proven that Google's business justification could be achieved through substantially less restrictive means?

        YES_____ NO _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Google's Counterclaims Against Epic

### Breach of Contract[7]

*Based on the evidence at trial, Epic has conceded that Epic violated Google's payments policy and, in so doing, breached its contract with Google.  Epic concedes that Google's damages on this claim are $398,931.*

23.     Did Epic breach the Developer Distribution Agreement?

YES_____ NO_____

*If you answered "NO," skip the next question and sign and date this form; otherwise proceed to the next question.*

24.     What are Google's damages from Epic's breach of the Developer Distribution Agreement?

$ _____

Sign and date this Verdict Form and inform the Court that the jury has reached a verdict.

Dated: _____

_____
Foreperson

_____

[7] Although Epic has conceded it breached its contract with Google and has stipulated to the amount of damages for such breach, Google respectfully submits that the questions of breach and damages should either be resolved by the Court as a matter of law on the basis of Epic's concession, *see* Fed. R. Civ. P. 50(a), or submitted to the jury along with Epic's concession.

1

**Plaintiff's Position Re Verdict Form**

2

The Court asked the parties to submit "a coherent, flowing verdict form" with a "natural flow".

3

Epic's proposed form, consisting of just six questions addressing all claims, fits this mold.

4

Conversely, Google's 24-question form includes unnecessary questions, legal errors, and prejudicial

5

language that risks inconsistency with the jury instructions.  Google's verdict form should be rejected.

6

In *In re Capacitors Antitrust Litigation*, the Court used a verdict form much like Epic's

7

proposal.  In that form, the jury was asked three questions concerning liability:  (1) whether one

8

defendant participated in an agreement barred by Section 1, (2) whether the other defendant

9

participated in an agreement barred by Section 1, and (3) whether the plaintiff was injured by either

10

defendant's conduct.  *See* 3:17-cv-07046-JD, Dkt. 381 (May 22, 2023).  The form referred the jury to

11

the instructions.  The Court's approach in *Capacitors* was sound, and Epic's form adheres to it.

12

Google's approach is flawed and prejudicial to Epic.  *First*, Google's submission is inconsistent

13

with the Court's request.  (*See* Trial Tr. 3291:7-9.)  Not only does Google leave in the breach of

14

contract and damages questions, it modifies the remainder of its instructions.  For example, in

15

Question 15 regarding Epic's tying claim, Google has, for the first time in this filing, changed "app

16

distribution services" and "in-app billing services" to "the Google Play store" and "Google Play

17

Billing".  This is also inconsistent with the jury instructions approved by the Court.  (*See* Instruction

18

No. 33, Dkt. 823 at 41 ("***Android app distribution services*** (like the Google Play Store) and ***Android***

19

***in-app billing services*** (like Google Play Billing) are separate and distinct products.").  Google's

20

attempts to modify its verdict form from its prior version should be rejected.

21

*Second*, per Google's form, the jury must deliver a unanimous answer to every purported

22

element of Epic's claims.  Failure to answer unanimously (in any direction) would result in a failure to

23

resolve Epic's claims.  The law does not require that result.  *See Jazzabi v. Allstate Ins. Co.*, 278 F.3d

24

979, 985 (9th Cir. 2002) (juries are not required to "reach unanimous agreement on all the 'preliminary

25

factual issues that underlie the verdict" only "the ultimate issues").  Google's proposal would prevent

26

the jury from returning a verdict even when it unanimously agrees on the "ultimate issues", contrary to

27

well established law and common sense.  For example, for Epic's rule of reason claims, Google

28

presents as a ***dispositive*** question whether Epic proved "an Android app distribution market [with a]

geographic scope [of] the entire world except for China" or "an Android in-app billing services market [with a] geographic scope [of] the entire world except for China". But, as this Court observed (*see* Trial Tr. 3245:19-20), in *Epic v. Apple*, the Ninth Circuit explained that Epic may prevail on any market supported by the record, even if that market differs from the market Epic has alleged. *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 978 n.9 (9th Cir. 2023) (rejecting the "radical argument that, where parties offer dueling market definitions, the case immediately ends if the district court finds the record supports the defendant's proposed market (or a third in-between market[)].").

*Third*, Google adds commentary and prejudicial language to many instructions, including needlessly repeating language from its own proposed (and improper) jury instructions. Because the jury will have been instructed and will have access to those instructions while completing the form, further instruction in the form itself is unnecessary. Moreover, Google's form is inconsistent with the jury instructions in this case and risks causing juror confusion. For example, in Google's Question No. 16, Google says that Epic must prove "Google coerces app developers". But in Instruction No. 35, the jury will be instructed that Epic can prove conditioning by showing that Google either: (a) "refuses to distribute Android apps through the Google Play Store unless Android app developers agree to use Google Play Billing" for certain transactions, or (b) "effectively coerced Android app developers into using only Google Play Billing." This is a clear inconsistency between the jury instructions and Google's verdict form. As another example, Google's choice to describe Epic's alleged market as including "the entire world except for China", rather than Epic's description as "worldwide excluding China", risks prejudicing Epic by suggesting that Epic's market is unreasonably large. This could distract the jury from an evidence-based determination and is inconsistent with the jury instructions. *See* Instruction No. 19 (Relevant Geographic Market) ("Epic claims that the relevant geographic market is worldwide, excluding China"). Epic's proposed form properly addresses both issues by explaining that the jury must find "a relevant antitrust market that includes the Google Play Store" or "a relevant antitrust market that includes Google Play Billing".[8]

---

[8] Epic also objects to Google's preamble to the breach of contract claim instructions, which states "*Based on the evidence at trial, Epic has conceded that Epic violated Google's payments policy and, in so doing, breached its contract with Google.*" This language mischaracterizes Epic's position and is inconsistent with Epic's proposed stipulation and the jury instructions.

**Defendants' Position Re Verdict Form**

Epic asserts nearly a dozen antitrust claims across two different markets. Notwithstanding this complexity, Google substantially simplified its proposed verdict form while retaining the necessary questions to reach judgment. Epic's form, on the other hand, would result in an opaque verdict that could not meaningfully be reviewed. Epic's form would preclude understanding of the jury's findings on potentially dispositive issues such as relevant product market—which was decisive in *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)—or specific conduct underlying the jury's findings—which is important in any case, particularly a complex one, *see Pac. W. Cable Co. v. City of Sacramento*, 672 F. Supp. 1322, 1326-27 (E.D. Cal. 1987) ("[I]n large and complex cases such as this, involving many novel legal issues, the better practice would [be] to require special verdicts or the submission of interrogatories to the jury …."). Indeed, Courts frequently opt for detailed forms in antitrust cases.[9]

*First*, "a threshold step in any antitrust case is to accurately define the relevant market." *FTC v. Qualcomm, Inc.*, 969 F.3d 974, 992 (9th Cir. 2002). "Failing to define a relevant market alone is fatal to an antitrust claim." *Coronavirus Rep. v. Apple, Inc*., 85 F.4th 948, 957 (9th Cir. 2023). But Epic's form obscures the jury's threshold decision as to the relevant market. For example, rather than ask the jury whether Epic has proved its alleged Android app distribution market, Epic's Question 1 asks whether Google has monopolized "a relevant antitrust market that includes the Google Play store." That could be any number of markets beyond those for which any party has actually offered evidence. The verdict form should ask the jury about the markets that Epic has alleged in this case and that it has the burden to prove and not leave it up to the jury to examine other hypothetical markets that Epic has not alleged or offered any evidence regarding. Because Epic's proposed form does not specify the "relevant antitrust market," it would impede review of whether Epic proved that Google's conduct harmed competition: As the Supreme Court has explained, "courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market" because "[w]ithout a definition of [the] market there is no way to measure [the defendant's] ability to lessen or destroy competition." *Am. Express Co*., 138 S. Ct.

---

[9] *E.g.*, *MCI Commc'ns Corp. v. Am. Tel. and Tel. Co.*, 708 F.2d 1081, 1093 (7th Cir. 1983); *Sidibe v. Sutter Health*, No. 3:12-cv-04584-LB, ECF No. 1530 (N.D. Cal. Mar. 11, 2022); *In re: HIV Antitrust Litig.*, No. 3:19-cv-02573-EMC, ECF No. 2057 (N.D. Cal. June 30, 2023); *Costco v. Au Optronics*, No. 2:13-cv-01207-RAJ, ECF No. 628 (W.D. Wash. Oct. 23, 2014).

at 2285. Moreover, Epic's own proposed jury instructions instruct the jury on these alleged markets, and the verdict form should conform to the jury instructions.

*Second*, Google's proposed form is tailored to the conduct Epic challenges. For example, Epic brings two § 1 claims under the rule of reason: (1) alleged anticompetitive agreements with OEMs and (2) alleged anticompetitive agreements with Project Hug developers. Epic Second Am. Compl., ECF No. 378 ¶¶ 179-87; ¶¶ 206-15. Google's form therefore asks whether the jury has found that Google has entered into an anticompetitive agreement with OEMs and with Project Hug developers. By contrast, Epic's form collapses both claims into a single, amorphous question: has "Google entered into one or more agreements that unreasonably restrained trade." If the jury found for Epic on this question, it would be difficult to determine *which* claims Epic prevailed on: agreements with OEMs? Agreements with game developers? Both, such that the jury finds liability without unanimity? Something else entirely?

*Third*, Question 5 of Epic's form asks about "agreements that unreasonably restrained trade in a relevant antitrust market that includes Google Play Billing." Presumably, this question is meant to address Count 7 of its complaint, which challenges the requirement that developers use Google Play Billing for certain transactions under Section 1 of the Sherman Act. But Epic's form asks about that very same conduct with respect to its tying claim. *See* Epic's Questions 12-14. The Court should not present the same Section 1 claim to the jury twice. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 998 (9th Cir. 2023) (declining to consider alleged tie under both a generic Section 1 theory and a tying theory).

*Fourth*, Epic's form fails to ask for unanimous findings, as required by Rule 48. "[C]ivil juries must render unanimous verdicts on the ultimate issues of a given case[,] not just the final verdict itself." *Jazzabi v. Allstate Ins. Co.*, 278 F.3d 979, 985 (9th Cir. 2002) (quotation marks and citation omitted). Google's form only asks about the key issues in the case. That is especially important where, as here, the jurors could base liability on "different acts." *Id.* at 986.

*Finally*, Google submits that unless judgment is entered on its breach-of-contract counterclaim, that counterclaim must be decided by the jury. The parties' stipulating that Epic breached the contract is not enough to make Google whole. Google requests that the Court either enter judgment as a matter of law for Google on its breach-of-contract counterclaim, subject to Epic's illegality affirmative defense, or that the question be put to the jury.

1  DATED:  December 4, 2023              CRAVATH, SWAINE & MOORE LLP
                                           Christine Varney *(pro hac vice)*
2                                          Gary A. Bornstein *(pro hac vice)*
                                           Timothy G. Cameron *(pro hac vice)*
3                                          Yonatan Even *(pro hac vice)*
                                           Lauren A. Moskowitz *(pro hac vice)*
4                                          Justin C. Clarke *(pro hac vice)*
                                           Michael J. Zaken *(pro hac vice)*
5                                          M. Brent Byars *(pro hac vice)*

6                                        FAEGRE DRINKER BIDDLE & REATH LLP
                                           Paul J. Riehle (SBN 115199)
7
                                         Respectfully submitted,
8
                                         By: */s/ Gary A. Bornstein*
9                                             Gary A. Bornstein

10                                          *Counsel for Plaintiff Epic Games, Inc.*

11 DATED:  December 4, 2023              MUNGER, TOLLES & OLSON LLP

12

13                                       By:  */s/ Glenn D. Pomerantz*
14                                            Glenn D. Pomerantz
                                             *Attorneys for Defendants Google LLC et al.*
15

16

17 DATED:  December 4, 2023              MORGAN, LEWIS & BOCKIUS LLP

18

19                                       By:  */s/ Brian C. Rocca*
20                                            Brian C. Rocca
                                             *Attorneys for Defendants Google LLC et al.*
21

22

23

24

25

26

27

28

1

## **E-FILING ATTESTATION**

2

I, Gary A. Bornstein, am the ECF User whose ID and password are being used to file this

3

document.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories

4

identified above has concurred in this filing.

5

6

                */s/ Gary A. Bornstein*

                Gary A. Bornstein

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28