Volume 1

Pages 1 - 116

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

IN RE GOOGLE PLAY STORE              )
ANTITRUST LITIGATION,                )
                                     )   NO. 21-md-02981-JD
_____     )
THIS DOCUMENT RELATES TO:            )
                                     )
EPIC GAMES, INC.,                    )
                                     )
            Plaintiff,               )
                                     )
   VS.                               )   NO. 3:20-cv-05671-JD
                                     )
GOOGLE, LLC., et al.,                )
                                     )
            Defendants.              )
_____     )


San Francisco, California
Thursday, November 2, 2023


**TRANSCRIPT OF PROCEEDINGS**


STENOGRAPHICALLY REPORTED BY:

Kelly Shainline, CSR 13476, RPR, CRR
Official United States Reporter

**<u>APPEARANCES</u>**:

For Plaintiff:

                CRAVATH, SWAINE & MOORE LLP
                825 Eighth Avenue
                New York, New York  10019
        BY:  **GARY BORNSTEIN, ATTORNEY AT LAW**
             **YONATAN EVEN, ATTORNEY AT LAW**
             LAUREN MOSKOWITZ, ATTORNEY AT LAW
             MICHAEL ZAKEN, ATTORNEY AT LAW
             MICHAEL BYARS, ATTORNEY AT LAW
             ANDREW WIKTOR, ATTORNEY AT LAW

For Defendants:

                MUNGER, TOLLES & OLSON LLP
                350 South Grand Avenue - 50th Floor
                Los Angeles, California  90071
        BY:  **GLENN POMERANTZ, ATTORNEY AT LAW**

                MUNGER, TOLLES & OLSON LLP
                601 Massachusetts Avenue NW
                Suite 500 East
                Washington, DC  20001
        BY:  **JONATHAN KRAVIS, ATTORNEY AT LAW**
             **LAUREN BELL, ATTORNEY AT LAW**

                MORGAN, LEWIS & BOCKIUS LLP
                One Market - Spear Street Tower
                San Francisco, California  94105
        BY:  **MICHELLE PARK CHIU, ATTORNEY AT LAW**

**I N D E X**

Thursday, November 2, 2023 - Volume 1

|  | **PAGE** | **VOL.** |
|---|---|---|
| Jury Voir Dire | 15 | 1 |

| | |
|---|---|
| 1 | **<u>Thursday - November 2, 2023</u>**                    **<u>9:16 a.m.</u>** |
| 2 | P R O C E E D I N G S |
| 3 | ---000--- |
| 4 |     (Proceedings were heard out of the presence of the |
| 5 | prospective jurors:) |
| 6 |         **THE CLERK:**  Calling Civil 20-5671, Epic Games, Inc. |
| 7 | vs. Google LLC and Multidistrict Litigation 21-2981, In re |
| 8 | Google Play Store Antitrust Litigation. |
| 9 |         **THE COURT:**  Thank you. |
| 10 |         **THE CLERK:**  Counsel. |
| 11 |     **MR. BORNSTEIN:**  Good morning, Your Honor.  Gary |
| 12 | Bornstein for plaintiff Epic Games, and I'm joined by a number |
| 13 | of people who I will spare the record introducing unless it |
| 14 | would be helpful to the court reporter. |
| 15 |         **THE COURT:**  Why don't you go ahead and do that. |
| 16 |     **MR. BORNSTEIN:**  Sure.  I have with me Yonatan Evan, |
| 17 | Lauren Moskowitz, Andrew Wiktor, Michael Zaken, and Brent |
| 18 | Byars. |
| 19 |     **MR. POMERANTZ:**  Good morning, Your Honor.  I'm Glenn |
| 20 | Pomerantz, and with me at counsel table is Lauren Bell, |
| 21 | Jonathan Kravis, Michelle Park Chiu, and our client |
| 22 | representative Lara Kollios. |
| 23 |         **THE COURT:**  Okay. |
| 24 |     All right.  So we have -- is it 76 or 95 people?  Is it |
| 25 | 95? |

1          **THE CLERK:**  Well, I don't know quite yet.  He told me

2    76 when I checked earlier.

3          **THE COURT:**  Okay.  We have a minimum of 76 and maybe

4    up to 95 prospective jurors to come in.

5          Now, we got a raft -- by "raft" I mean maybe a dozen --

6    late responses, like last night.  So I'm just going to keep

7    those people in the jury room unless we absolutely need them.

8    I doubt that we will, but I don't want to have to go through

9    the application the first time if we don't need to, and they're

10   not going to be ready for a while and do some processing.

11         So here's what's we're going to do now:  I'm going to

12   address the jury versus bench trial and give you my bench

13   ruling on that.

14         And then, don't make me regret this, I will allow you to

15   propose any voir dire follow-up based on the questionnaires for

16   specific people that you run by me first.  Okay?  So be

17   prepared to do that.  We'll have about a 10-minute break and

18   you can come tell me.  Okay?

19         All right.  This is an experiment.  I haven't done this

20   before.  You're the lucky winners.  So this is the first time

21   this will happen.  So if you want any of your -- any successive

22   parties to be able to do this, handle it well.  Okay?  It's all

23   on you.

24         All right.

25         **MR. BORNSTEIN:**  To be -- I apologize, Your Honor.  To

1    be sure I understand, you mean after the folks come on you'd

2    like to do that?

3         THE COURT:  No, no.  Based on the written

4    questionnaires.

5         MR. BORNSTEIN:  I see.

6         THE COURT:  If there's anything you specifically want

7    to ask -- you know, you've had the questionnaires now for a

8    while, so if there's anything you want to specifically -- for

9    example, some of them, you know, expressed some mild opinions

10   on one side or the other.  If you have something you want me to

11   ask specifically, I'll be willing to consider that.  Okay?

12        MR. BORNSTEIN:  Great.

13        THE COURT:  All right.  Now, with respect to Google's

14   desire to abandon a jury trial at this point, which they stated

15   in the filing on November 1st, the request is denied.  I'll put

16   a little bit more of this in the minute order, but the salient

17   facts are that all the parties, including Google, agree that

18   Google's counterclaims against Epic are triable to a jury and

19   should be tried by a jury.

20        Google has also expressly agreed that the evidence for the

21   counterclaims against Epic is basically the same as the

22   evidence that will be produced in Epic's antitrust case.

23        And in addition to that Google, along with all the other

24   parties, has on several occasions in the case expressly agreed

25   that, quote, "all claims by all plaintiffs are triable to a

1   jury, with the exception of the claims brought under the

2   California unfair competition law and claims that the states

3   have brought under the laws of 38 other states other than

4   California," close quote.  That's from MDL Docket Number 505 at

5   page 3.  That's just an indicator of similar statements that

6   Google and the parties have made throughout the case.

7       Looking more broadly, I have discussed and urged a jury

8   trial on all issues from the very first day that we have walked

9   in here.  As I just indicated, all the parties reached a

10  consensus in favor of a jury trial.  My case management and my

11  scheduling orders have reflected a reliance on that

12  representation, and Epic and the other parties up to date, but

13  certainly Epic today, has also relied on the idea that we're

14  going to be having a jury trial.

15      So request to abandon a jury at this point is denied and

16  we're on our way to a jury trial.

17      Now, we'll take a break now.

18      What happens now, Ms. Clark?  Are they ready yet or 10

19  more minutes or --

20      **THE CLERK:**  I'm going to bring in the prospective

21  juror panel and seat them and take roll.

22      **THE COURT:**  Okay.  So there's going to be a little

23  roll taking thing.  You'll have about 15 minutes.  So I'm going

24  to leave and I'll come back, and then at that point before

25  Ms. Clark comes to get me, just let me know if you have any

**PROCEEDINGS**

1   follow-up questions you want me to think about.  Okay?

2          MR. BORNSTEIN:  And, Your Honor, whenever is an

3   appropriate time, there are a few matters that Mr. Pomerantz

4   and I have been discussing.

5          THE COURT:  Well, let's just do it right now.  Go

6   ahead.

7          MR. BORNSTEIN:  Sure.

8      One of the issues is scheduling in light of the effort

9   that Your Honor has suggested that we make to get everything

10  wrapped up by whether it's November 30 or December 1st.

11         THE COURT:  Well, close of evidence by November 30th.

12         MR. BORNSTEIN:  Yes, the close of evidence.

13         THE COURT:  Not everything.  Just close of evidence,

14  yeah.

15         MR. BORNSTEIN:  Yes, thank you.

16     -- to try and get evidence closed by the end of the month

17  effectively or maybe December 1st if we can.

18         THE COURT:  I think we agreed we had the first week of

19  December or something.  Didn't we agree on that?

20         MR. BORNSTEIN:  I had understood Your Honor was

21  unavailable the first week of December.

22         THE COURT:  I'm unavailable starting the 5th but

23  between -- is there like five days --

24         MR. POMERANTZ:  We're going to go November 27th to

25  November 30th.

1        **THE COURT:**  Oh.  Thanksgiving's on --

2        **MR. BORNSTEIN:**  Early this year, correct.

3        **THE COURT:**  Oh, I see.

4        **MR. BORNSTEIN:**  So the Friday is December 1st.

5        **THE COURT:**  Go ahead.

6        **MR. BORNSTEIN:**  So we've been talking about how we can

7   make sure that we can get that done.  We think it is desirable

8   to get that done, both sides.

9        **THE COURT:**  Sorry.  Friday is December 1st?

10       **MR. BORNSTEIN:**  Correct.

11       **THE COURT:**  Oh.  So we can do trial on Monday the 4th

12  if we need to.  I'm starting the 5th.  I guess that's a Tuesday

13  from --

14       **MR. BORNSTEIN:**  Okay.  I had not appreciated that.

15  That's good to know.

16       **THE COURT:**  So you have one more day.

17     Go ahead.

18       **MR. BORNSTEIN:**  Well, I might suggest in light of

19  that, it might be fruitful for Mr. Pomerantz and I to take an

20  opportunity during the break now to discuss and see if we can

21  reach a common suggestion for Your Honor on this, but our goal

22  is just to try to have some clarity on the number of hours that

23  each side will have.

24       **THE COURT:**  We already talked about it.  It's 9:00 to

25  3:30.

1        **MR. BORNSTEIN:**  Oh, no, I'm sorry.  I don't mean daily

2   schedule.

3        **THE COURT:**  Didn't I say 45?  Is that what --

4        **MR. POMERANTZ:**  Well, Your Honor, since then --

5        **THE COURT:**  40?  What did I say?

6        **MR. POMERANTZ:**  Well, you said 45 in your order when

7   Match was a party in the case.  There's a bunch of witnesses

8   that won't be called now.  We -- I think we all agreed --

9        **THE COURT:**  Let me just -- are you sure?  I thought I

10   said something more, and then I cut it down to 45.

11        **MR. POMERANTZ:**  You did but that was when Match was

12   in.

13        **THE COURT:**  With Match?

14        **MR. POMERANTZ:**  Yes.

15        **THE COURT:**  Okay.

16        **MR. POMERANTZ:**  So we had been discussing a number

17   less than 45.  We haven't agreed on a number yet, but we've

18   been discussing a number less than 45.  Now having December 4th

19   available, you know, we just need to know the number of hours

20   per side, and it should be less than 45, we both agree with

21   that.  We haven't yet agreed on what that number is we, and so

22   we just want to have it so that we both are planning --

23        **THE COURT:**  Well, if you cut it down to 40, that will

24   be 10 hours, which would be basically a day and a half for

25   trial.  So --

1        **MR. BORNSTEIN:**  40 is fine with us, Your Honor.

2        **MR. POMERANTZ:**  Yeah.  And we had proposed 35 because

3   if you look at the time estimates for what each of us gave on

4   the Match witnesses --

5        **THE COURT:**  You know what I'm going to do.  You're

6   going to get 37 and a half.  That's the deal.  All right?

7        **MR. BORNSTEIN:**  Your Honor, if I may.  When --

8        **THE COURT:**  If you need another hour, I won't -- look,

9   I'm not going to shackle you.  I will not be a pushover; but if

10  you need a little more than an hour, that's fine.  Okay?

11       **MR. BORNSTEIN:**  What our concern is, Your Honor, is --

12  Mr. Pomerantz has represented if you cut out the Match

13  witnesses, you get down to a small number.  We have a real

14  disagreement about who gets cut out here.  We have essentially

15  the same case that we're proving.  The only thing that's

16  changed really is the Match counterclaims have gone away or the

17  counterclaims against Match has gone away.  It hasn't affected

18  what it is that we need to present.

19       **THE COURT:**  I understand.  But right now you're only

20  five hours apart.  So --

21       **MR. BORNSTEIN:**  Our 40 hours, Your Honor, was a

22  compromise effort to try to reach a deal with Google.

23       **THE COURT:**  You're saying 40 was your final offer?

24       **MR. BORNSTEIN:**  Right.  I'm saying I tried to come to

25  an offer, and we're now at the point where I feel like we are

**PROCEEDINGS**

1   being squeezed.  We sat down and worked very hard to try to

2   streamline this.

3          THE COURT:  All right.  How about this:  Why don't you

4   two chat for a little bit.  I'll withdraw the 37 and a half.

5   You two chat and if you can't reach it, I'll make a decision.

6          MR. BORNSTEIN:  I appreciate the opportunity,

7   Your Honor.

8          THE COURT:  Yeah.  Anything else?

9          MR. BORNSTEIN:  We had one other issue around a

10  witness that I would ask Ms. Moskowitz to address.

11         THE COURT:  Okay.  Yes.

12         MS. MOSKOWITZ:  Thank you, Your Honor.  Lauren

13  Moskowitz for Epic.

14     After Your Honor ruled on the Chats sanction, we realized

15  that we were going to have to prove up some facts about the

16  Chats beyond the facts that we had asked Your Honor to read

17  upfront, and so, of course, we're doing that with --

18         THE COURT:  I'm not reading anything upfront.

19         MS. MOSKOWITZ:  Understood.

20         THE COURT:  Yeah.

21         MS. MOSKOWITZ:  And after that, we went back and said:

22  How are we going to offer the evidence that we need to do in

23  front of the jury?  Obviously some of those are the business

24  folks that were already on our list.  We needed to add

25  Mr. Lopez, whom Your Honor may recall testified at our Chats

1  trial back in January about the Google end of this.  The switch

2  being able to be flipped, what history on, off, all of those

3  basic foundational things that they didn't flip the switch,

4  that things cannot be recovered, basic things like that.

5       We want to call him early.  We think that that is to put

6  the context of why we're talking about Chats with these various

7  business folks.  So we actually told Google we'd like him to be

8  on the first day of trial, not the first witness but the first

9  day.

10          THE COURT:  Monday?  This coming Monday?

11          MS. MOSKOWITZ:  Monday afternoon or we were flexible.

12  We could do it Tuesday morning.  He's not our first witness.

13       We offered a stipulation to Google to avoid him having to

14  come at all.  They haven't responded to the stipulation.  It

15  was copy and pasted from your order so it shouldn't be

16  controversial.  You've already found these facts.

17          THE COURT:  When did you -- how much time has

18  Mr. Pomerantz had to think about this?

19          MS. MOSKOWITZ:  We sent it on October 27th.

20          THE COURT:  Oh, okay.  What do you want me to do?

21          MS. MOSKOWITZ:  We would like Mr. Lopez available on

22  Monday; and if we can reach a stip by then, great, he can be

23  excused, but we'd like him to be available to testify on

24  Monday.

25          THE COURT:  You have to do it by tomorrow, don't you?

1  I mean, you've got to be ready to go on Monday.

2       **MS. MOSKOWITZ:**  I'm ready to go with Mr. Lopez if we

3  can continue to work over the weekend on the stipulation, but I

4  do want him here to testify on Monday.

5       **THE COURT:**  Oh, it's not Mr. Pomerantz.

6       **MR. KRAVIS:**  Jonathan Kravis for Google.

7       **THE COURT:**  Yeah.  Go ahead.

8       **MR. KRAVIS:**  As I told the plaintiffs yesterday, I am

9  willing to work with them on the stipulation.  I think there

10  are probably many facts that we can agree to, maybe some that

11  we can't, and we can talk that out.

12     With respect to Mr. Lopez, he did not appear on any

13  witness list that any party exchanged or that was filed with

14  the Court.

15       **THE COURT:**  I understand that; but, you know, you're

16  being punished for having done the wrong thing.  So you're not

17  getting any breaks on that.

18       **MR. KRAVIS:**  Understood.  And we are not -- to be

19  clear, we are prepared to make Mr. Lopez available.  We ask

20  that the plaintiffs call him in the second week of trial since

21  last night was the first time that they told us that they

22  intended to call him on Monday.

23       **THE COURT:**  How long is he going to be?  An hour maybe

24  or --

25       **MS. MOSKOWITZ:**  Less.

```
 1              THE COURT:  Less than that; right?  Half an hour
 2    maybe?
 3              MS. MOSKOWITZ:  Yeah.
 4              THE COURT:  Okay.  Have him ready -- if you can't
 5    reach a stipulation, have him ready on Monday.
 6              MR. KRAVIS:  Very well.  Thank you, your Honor.
 7              THE COURT:  Okay.
 8         Okay.  See you in a bit.
 9              THE CLERK:  All rise.  Court is in recess.
10                        Recess taken at 9:28 a.m)
11                             (Roll taken.)
12                   (Proceedings resumed at 9:55 a.m)
13         (Proceedings were heard in the presence of the prospective
14    jurors:)
15                          JURY VOIR DIRE
16              THE CLERK:  Calling Civil 20-5671, Multidistrict
17    Litigation 21-2981, Epic Games, Inc. vs. Google LLC and In re
18    Google Play Store Antitrust Litigation.
19         Counsel?
20              MR. BORNSTEIN:  Good morning, Your Honor.  Is now an
21    appropriate time for us to welcome the jury?
22              THE COURT:  Yes.  Just make your appearance first, and
23    then we'll do that in a moment.
24              MR. BORNSTEIN:  Very good.
25              THE COURT:  Okay.
```

```
 1          MR. BORNSTEIN:  Gary Bornstein for the plaintiff
 2   Epic Games.
 3          THE COURT:  And everyone else at your table, please.
 4          MR. BORNSTEIN:  Sure.  I'm joined by, in order here,
 5   Andrew --
 6          THE COURT:  Why don't you all just stand up so
 7   everybody can see you when your name's called.  When your
 8   name's called, yeah.
 9          MR. BORNSTEIN:  This is Andrew Wiktor, Michael Zaken,
10   Brent Byars, Faye Honig, Lauren Moskowitz, and Yonatan Evan.
11          MR. POMERANTZ:  Good morning, Your Honor.  Glenn
12   Pomerantz on behalf of Google, and with me at counsel table is
13   Lauren Bell, Jonathan Kravis, Lara Kollios, and Michelle
14   Park Chiu.
15       Thank you, Your Honor.
16          THE COURT:  Okay.  Welcome, ladies and gentlemen of
17   the jury, the prospective jury.
18       Actually I was going to talk with the lawyers first
19   outside of your presence, but you're here now so you just stay
20   there.
21       Is there anything you wanted to follow up on this morning?
22          MR. BORNSTEIN:  Just a few things, Your Honor.
23          THE COURT:  Okay.  Why don't you and Mr. Pomerantz
24   come with me in the back.
25       We'll be right back.  Just relax for a minute, and we'll
```

1    see you in just a second.

2        (The following proceedings were heard at the sidebar:)

3        **THE COURT:**  Let's start with plaintiffs.  Is this the

4    voir dire suggestion?

5        **MR. BORNSTEIN:**  Yes, Your Honor.  We had just a few.

6        **THE COURT:**  Which ones?

7        **MR. BORNSTEIN:**  For Juror 14.

8        **THE COURT:**  14.

9        **MR. BORNSTEIN:**  Yes.  Question 28 we thought was

10   appropriate to follow up.

11       **THE COURT:**  One second.  28?

12       **MR. BORNSTEIN:**  Question 28 about a close friend who

13   works for one of the parties.

14       **THE COURT:**  Okay.  We should see who.  Okay.  Number

15   28.

16      All right.

17       **MR. BORNSTEIN:**  Our next one is Juror Number 36,

18   Your Honor.

19       **THE COURT:**  36.  Yes.

20       **MR. BORNSTEIN:**  And Juror Number 36 at Question 31, we

21   thought was an appropriate follow-up.

22       **THE COURT:**  Well, she's going to know today.

23       **MR. BORNSTEIN:**  We might be looking at the wrong --

24       **THE COURT:**  I'm looking at Number 31, you said; right?

25       **MR. BORNSTEIN:**  Mr. Nicholas, 36.  I'm sorry 36.

**SIDEBAR**

1              THE COURT:  36.

2              MR. BORNSTEIN:  Question Number 31, that was the

3     confusion.  Juror Number 36.

4              THE COURT:  31.  My opinion... Okay.  Follow up on

5     that one.

6         All right.

7              MR. BORNSTEIN:  Thank you, Your Honor.

8         And then Juror Number 30 -- sorry -- 48.

9              THE COURT:  48.  Okay.

10             MR. BORNSTEIN:  Question Number 28 indicates a brother

11    who works for Google.

12             THE COURT:  Oh.  Online support -- on-site -- AV.

13    Okay.  You want me to ask about that.

14        All right.  Anyone else?

15             MR. BORNSTEIN:  I have just three more to raise.

16        Juror Number 84, Your Honor.

17             THE COURT:  84.

18             MR. BORNSTEIN:  Questions 21 and 22.

19             THE COURT:  Yes.  "I work at Visa."  Oh, okay.  Is

20    this a personal lawyer or communications?

21             MR. BORNSTEIN:  Communications, PR person.

22             THE COURT:  21 and 22.  Okay.

23             MR. BORNSTEIN:  Correct.  Essentially one follow-up

24    question I imagine.

25             THE COURT:  Okay.

**SIDEBAR**

1       MR. BORNSTEIN:  Juror Number 105 is my last one.

2       THE COURT:  Oh, good.

3       MR. BORNSTEIN:  And Question 28.

4       THE COURT:  Okay.

5       MR. BORNSTEIN:  And that's all, Your Honor.

6       THE COURT:  All right.

7    Defendant?

8       MS. BELL:  Your Honor, we have several.  My binder

9  with the actual questions are out there, but I know which

10 responses.

11      THE COURT:  Sure.  Okay.

12      MS. BELL:  Juror Number 3, Ms. Schott --

13      THE COURT:  Okay.

14      MS. BELL:  -- said she works in the tech industry and

15 polarized opinions on big tech in general.

16      THE COURT:  Which question is that?

17      MS. MOSKOWITZ:  23 I think.

18      MS. BELL:  Thank you.

19      THE COURT:  All right.  Okay.

20      MS. BELL:  Juror Number 6, Ms. Ong, says that she uses

21 Google -- a lot of Google products and finds it annoyingly

22 difficult to turn off all data tracking.

23      THE COURT:  You don't have the question numbers?

24      MR. POMERANTZ:  I can go grab my binder.

25      THE COURT:  Here it is.

1      Okay.  Data tracking isn't an issue here, but I'll ask.

2    Okay.

3        **MS. BELL:**  Juror Number 8, Mr. Klopp.

4        **THE COURT:**  How many do you have?

5        **MS. BELL:**  Unfortunately there are several that

6  mention Google.

7        **THE COURT:**  Okay.  8, yes.

8        **MS. BELL:**  "I believe tech companies like Google are

9  not regulated nearly enough."

10        **THE COURT:**  Okay.  All right.

11        **MS. BELL:**  Juror 19, Nair, states that Google holds a

12  monopoly in pretty much everything.

13        **THE COURT:**  That one she should have raised.  That's

14  the keyword, "monopoly."

15        **MS. BELL:**  It is.

16        **THE COURT:**  Which one?

17        **MS. BELL:**  Next is Juror 24, Mr. Stanhope, who also

18  states --

19        **THE COURT:**  Oh, wait.  You said 24.  Mine is Johnson.

20        **MS. BELL:**  There's two 24s.

21        **THE COURT:**  They got switched.  Okay.  Thanks.

22    So this fellow is actually 24.

23        **MS. BELL:**  Stanhope.

24        **MR. POMERANTZ:**  I think there were two 24s.

25        **MR. BORNSTEIN:**  24 is Mr. Stanhope I understand.

1          MS. BELL:  I believe 24 in your binder.

2          THE COURT:  This is Ben Johnson 103 and this is Ben

3    Johnson in 24.  What's this guy's name?

4          MS. BELL:  Stanhope, Bradley Stanhope.

5          THE COURT:  Was he late or something?

6          MS. MOSKOWITZ:  He actually wasn't, but I did know he

7    was not called out, I think, right away.  So there might have

8    been some confusion.

9          THE COURT:  I don't think I have him.

10         MR. POMERANTZ:  They didn't call him at all.

11         MS. MOSKOWITZ:  They did, but I don't know if it was

12   in order or not.

13         THE COURT:  I'll tell you what.  If Mr. Stanhope gets

14   called, I'll just pass him.  We may come back.  I'm just going

15   to pass, not dismiss.

16         MS. BELL:  All right.  Juror Number 26, Mr. Taber.

17         MS. MOSKOWITZ:  25 you mean.

18         MS. BELL:  I'm sorry, 25, Mr. Taber, "I dislike using

19   Google."

20         THE COURT:  What's Stadium?

21         MS. BELL:  It's an attempt at a games platform, so

22   it's directly relevant in this case.

23         MR. BORNSTEIN:  Your Honor, if I could interrupt one

24   moment.

25         THE COURT:  Sure.

1          **MR. BORNSTEIN:**  Just to be clear on the process here,

2     there are a number of other folks who I certainly have cause

3     challenge for.  I didn't go through --

4          **THE COURT:**  This is not cause.  I was just going to

5     ask a question.

6          This is a sidebar, by the way.

7          **MR. BORNSTEIN:**  I understand.

8          **THE COURT:**  Of course you can do cause.

9          **MR. BORNSTEIN:**  Very good.

10         **THE COURT:**  Next.

11         **MS. BELL:**  Juror Number 30, Wong --

12         **THE COURT:**  Okay.

13         **MS. BELL:**  -- states that if this is an antitrust, she

14    needs to communicate her views, "I believe Google Play Store

15    and Apple App Store have monopoly power."

16         **THE COURT:**  Also they should have brought that up on

17    Tuesday, but okay.

18         Next.

19         **MS. BELL:**  Juror 35, Kelly Thompson, mentions

20    animosity towards Google, Tinder, and Match.

21         **MR. BORNSTEIN:**  And Epic for that matter.

22         **THE COURT:**  Where is this?

23         **MR. BORNSTEIN:**  Question Number 23.

24         **THE COURT:**  "I spent 12 years..."

25         All right.  You-all should have raised this earlier.  This

1   one probably shouldn't have been here.

2           MR. POMERANTZ:  We apologize, but we understood

3   challenges for cause is like --

4           THE COURT:  This is not cause.  You know, the thing

5   was you're too far away or overtly, for example, we did the

6   religious person.

7           MR. POMERANTZ:  I think we both interpreted it

8   differently.

9           MR. BORNSTEIN:  Certainly if that were the standard,

10  we should have raised on Tuesday.  We both failed because there

11  are people on both directions that we didn't raise.

12          THE COURT:  How many more do you have?

13          MS. BELL:  I think eight more.

14          THE COURT:  Let's just do two more; and if we call the

15  number, you can just tell me and we'll do this again.

16          MR. POMERANTZ:  Can we just ask for a sidebar?

17          THE COURT:  Yeah, just do that.  Two more.

18          MS. BELL:  Juror 40, So, says "All parties are almost

19  monopoly group."

20          THE COURT:  That's good.  She's neutral.

21          MS. MOSKOWITZ:  Exactly.  That's 23 I think.

22          MR. BORNSTEIN:  Yes, Question 23.

23          MS. MOSKOWITZ:  Yep.

24          THE COURT:  Okay.  One more.

25          MS. BELL:  And 47, G-U-I-A-L.

 1          THE COURT:  25, "I play games."

 2          MS. BELL:  "I've been a platinum awards member and

 3     also used the engine published by Epic."

 4          THE COURT:  I mean, that's balanced; right?  Likes

 5     Epic, likes Google.  We'll ask.

 6        Okay.  Save the rest for later.

 7          MR. POMERANTZ:  Your Honor, we didn't have a chance to

 8     talk about the hours.

 9          THE COURT:  You didn't.

10          MR. POMERANTZ:  Can we just when the jurors are gone?

11          THE COURT:  Your colleague here said 40 is the

12     bare-bone minimum number.  It's only five hours.

13          MR. POMERANTZ:  We did not know about December 4th.

14          THE COURT:  And I've confirmed that the 4th --

15          MR. POMERANTZ:  Are you off the 11th?

16          THE COURT:  5th and 11th I'm out.  Start again Tuesday

17     the 12th.

18          MR. POMERANTZ:  If we have the 4th and if we have one

19     of the two Fridays that are in this span here, either this

20     November 17th or December 1, then I think it pencils out to

21     40 hours.

22          THE COURT:  All right.  Okay.

23          MR. BORNSTEIN:  Great.

24          THE COURT:  Just keep that in mind and...

25        (The following proceedings were heard in open court:)

1          **THE COURT:**  Okay.  Thank you for your patience.

2      Ms. Clark will give you the verbal cue when to stand up.

3      Now, ladies and gentlemen, welcome to the Northern

4  District of California.  Now, we are the federal trial court

5  for the Bay Area counties and the coastal counties all the way

6  from Monterey to the Oregon border.  Okay?

7      Now, most of you are not from those distant areas.  Some

8  of you may be.  We can talk about that if you are.  But you're

9  here today -- I'm going to select 10 of you to be jurors in a

10 civil case.  Not a criminal case.  It's a civil case.  You're

11 going to hear more about it directly from the parties in just a

12 minute.  They're going to give you a little statement from the

13 plaintiffs and from the defendants telling you in a very

14 neutral way what the case is about.

15     Before we get to that, let me tell you about the

16 scheduling because I know that's of most interest to you.  This

17 is going to be about a five-week trial.  Here is how I organize

18 the trial days:  The trial days will be Monday through

19 Thursday, Fridays will typically be off.  There may be one

20 Friday or so that we need to use to move the evidence along;

21 but the schedule will be Monday through Thursday, 9:00 a.m. to

22 about 3:30 p.m.  I don't like to start before 9:00 because, as

23 you all know as local residents, it's kind of hard to get into

24 San Francisco.  Earlier you may have things you have to do in

25 the morning with family things, other things, so I like to

1    start at 9:00.

2         We'll take a half hour lunch, one or two breaks during the

3    day.  And I like to have everybody out by 3:30 so that you

4    have, you know, a fighting chance of getting home without too

5    much traffic.  Okay?

6         Now, that's the schedule.  The parties have worked very,

7    very hard under my supervision to make the case as efficient in

8    its presentation as it can be.  I will promise you, this is my

9    personal promise to you, I do not let a minute of your precious

10   time, jury time, go to waste.  So we're going to maximum

11   efficiency to the fullest extent possible.

12        Now, it is a live show, things happen, so there will be a

13   little flexibility here and there.  Some days we might end at

14   3:00, another day we might end at 4:00 just to get things done;

15   but on the whole, that will be the schedule.

16        Now, in terms of calendar, we're going to go starting

17   Monday.  We're not starting today.  Today I am just selecting

18   10 jurors, and then on Monday the case will start.

19        We will go through the Tuesday of Thanksgiving, not the

20   Wednesday, up to the Tuesday of Thanksgiving; and then it is my

21   expectation and the parties' plan that all the evidence will be

22   finished by around December 4th.  That's the Monday after

23   Thanksgiving.  Okay?

24             **THE CLERK:**  No.

25             **THE COURT:**  All right.  Well, don't worry about it.

1       December 4th is going to be the time when we're aiming to

2   have all the evidence done.  We're going to take a couple days

3   off, and then we're going to do closing arguments and you'll be

4   deliberating.

5       So looking long term, it is, based on my long experience

6   handling juries, I fully expect you'll have plenty of time to

7   reach a verdict well before the December holiday period.  Okay?

8   So it's not going to go into that.

9       Now, if you need that time, the jury needs that time,

10  we'll absolutely be available; but my expectation is you will

11  probably have more than enough time to reach a verdict without

12  getting into the December holiday period in earnest.

13      So that is the schedule.  We have all your written

14  responses.  Now, what we're going to do is start to select the

15  jury.

16      So Ms. Clark is going to call 10 of you up to sit in the

17  jury box, and I'm going to have some questions I'm going to

18  direct to the people in the jury box for each of you to answer,

19  and you'll have a handheld mic that generally works, not

20  always.  It's 1980s government technology.  You might have to

21  bang it a little bit, but we'll help you with that.  We'll go

22  through all of that.

23      Now, for all of you in the gallery, you do need to pay

24  very careful attention to all of the questions I'm going to ask

25  of the 10 people in the jury box.  You have a pen and a pad to

1    do that.

2        So I'm going to call out the question number and I'm going

3    to ask the question.  If you have an answer to that question

4    that you want to share with us, make a note to yourself.  So

5    write down the question number and write down whatever your

6    note is.  All right?

7        So the reason we do that is people will be coming in and

8    out of the jury box as people get replaced and dismissed; and

9    if you get called up, I don't want to have to keep rereading

10   the same questions over and over and over again.  So just make

11   a note.  I'll make sure that the question number is very clear;

12   and then when you get up here, you just raise your hand and

13   tell me if you have any answers to the questions.  I will

14   prompt you for that.

15       So in my experience, and this is over scores and scores of

16   cases over the last many years, it takes about 90 minutes to

17   select a jury; sometimes a little bit more, sometimes a little

18   bit less.

19       I'm going to help you focus your answers on the substance

20   of the case by letting the parties tell you right now what the

21   case is about in a very, very high-level nutshell.  This is

22   just a little orientation statement, that's it, just so you

23   know what we're talking about in terms of your jury service.

24       Before that, though, let me say on behalf of myself and

25   all of my federal judicial colleagues and chamber staff and

1    court staff, thank you very much for coming in.

2        Just take a moment -- I like to do this with every jury --

3    just take a moment, clear your minds.  All right?  This is an

4    important endeavor.  I want you to think about it in this way:

5        Being a juror in the United States is a civil right.  We

6    tend to see it as an obligation because it does take up your

7    time and does disrupt your schedule, we appreciate that.  It is

8    your civil right.  It is the same right as free speech, the

9    right to bear arms, the right to vote.  These are all rights

10   enshrined in our Constitution.  And it is no coincidence we are

11   the freest, most open democratic country in the world precisely

12   because we ask all of you, our fellow citizens, to come in and

13   decide these important cases, criminal and civil.

14       And as you're going to hear in a moment, this is going to

15   be a case that has some substance to it.  So just focus on what

16   we're doing today.  Do the best that you can to answer the

17   questions, and I promise you, the 10 of you who are selected, I

18   promise you -- and I know this from personal experience as well

19   as being a judge -- you will find being a juror one of the most

20   rewarding things that you have done for your community.  It

21   will be at the very top of your list.

22       All right.  Let's hear now from the plaintiffs, and

23   they're going to give you a quick overview.

24       Let me just tell you, the plaintiffs are the people who

25   are bring bringing a claim against the defendants.  The

1  plaintiffs in our courtroom system in the United States, every

2  federal courtroom plaintiff sits closest to the jury.  That's

3  our tradition.  The defendants sit at the next table over.

4      And Mr. Bornstein is going to tell you about his case.

5      **MR. BORNSTEIN:**  It's a little awkward finding a place

6  to stand to face you-all rather than facing the Court, which is

7  what I'm used to doing.

8      Can everybody hear me okay?  Great.

9      Well, good morning.  My name is Gary Bornstein.  I am,

10 along with the people at the counsel table here behind me,

11 we're the counsel for the plaintiff, which is Epic Games, which

12 is a software developer some of you may know responsible for

13 the game Fortnite, which some of you may play or may have kids

14 or family members who play.

15     The defendant in the case is Google.  You all know Google.

16 We will be talking about one part of Google's business, which

17 is the Android operating system, the Android system on your

18 phone -- some of you may have Android phones -- and we'll be

19 talking about the Google Play Store, which is the app store

20 from which most people get their apps on Android phones.

21     Those of you who are seated on the jury are going to be

22 asked to decide whether Google's business practices relating to

23 Android and relating to the Google Play Store violate the law,

24 and we're focused in particular on the antitrust laws, which

25 are the laws that protect competition that makes sure that

1    companies that have a lot of power don't misuse that power to

2    prevent other companies from having a fair chance to compete

3    for your business and my business.

4        You're going to be asked to decide whether Google has

5    violated those laws by misusing its power over Android to

6    prevent competition from other companies who would like to

7    offer a store to provide apps to all of you and other Android

8    users on their phones.

9        We will argue as the plaintiff that Google has done that,

10   that Google has misused its power to prevent competition from

11   other stores, and that that has harmed people who want to offer

12   other stores, that that has harmed developers like Epic and

13   like lots of other developers around the world; and that it has

14   harmed consumers, we will say, because it has led to higher

15   prices.

16       Google will disagree.  You'll hear from Google's counsel

17   in a moment.  That's why we have a trial.  We will present the

18   evidence to you, and you will get to make a decision about

19   that.

20       I hope you will find it interesting.  We know we are

21   making a big imposition on your schedule, and we thank you for

22   this.  I hope you will find the experience rewarding as the

23   Court has said.

24       You will have the opportunity to meet the people at Google

25   who were involved in these business practices.  You will have

1 the opportunity to see the documents, what they were saying to

2 each other in realtime about this.  You'll have the opportunity

3 to meet the developers who were harmed by the conduct, and

4 you'll have the opportunity to hear experts who analyzed all of

5 this.

6     It's an important case.  There are billions of people with

7 Android phones, there are millions of people in companies who

8 develop apps, and the decision that the jury reaches will

9 affect all of them one way or another.

10     And at the end of the case, we are not going to ask you

11 for any money.  Epic is not asking for any kind of dollar

12 payment.  All we want is for the conduct that's at issue to be

13 stopped, for Google to stop engaging in what we say and we hope

14 to prove violates the law.

15     And so we will ask you ultimately to find that Google's

16 practices are unlawful, not for giving us any money but for the

17 benefit of Epic and all other app developers and consumers.

18     So thank you again very much for listening now and for

19 those of you who are on the jury for listening for the weeks to

20 come.

21         **THE COURT:**  Okay.  Mr. Pomerantz.

22         **MR. POMERANTZ:**  Good morning, everyone.  My name is

23 Glenn Pomerantz, and I have the honor of representing Google in

24 this case.

25     Let me tell you about what this case is about, at least

 1   from our perspective.  Most of us make a choice.  We make a

 2   choice between an iPhone or an Android phone.

 3        IPhones, all iPhones, are made by Apple.  Android phones

 4   are made by a variety of manufacturers.  This one here is made

 5   by Samsung.  It's the Samsung Galaxy phone.

 6        Now, most of you when you hear of Google, you probably,

 7   like me, before I got involved in this case, I think about

 8   Google's apps, Google Search, Google Maps -- you might have

 9   used it to get to the courthouse today -- gmail; but as counsel

10   said, Google is also the creator of the Android operating

11   system.  An operating system is what makes a phone work.

12        Now, Android is what we call an open-source operating

13   system.  What does that mean?  Well, what that means is that

14   Google takes the Android operating system and it puts it on the

15   Internet and makes it available entirely for free, and someone

16   who wants to manufacture a phone can take the Android operating

17   system and use it to operate their phone.  That's what Samsung

18   did in making its phone.  Motorola phones are also Android

19   phones.  Nokia.  There's others that make Android phones.

20        iPhones run on a different operating system.  They run

21   on something called IOS, and IOS is an operating system that

22   was created by Apple.  Now, unlike Google, Apple doesn't let

23   anybody else use the IOS operating system.  The only phone out

24   there that uses the IOS operating system is Apple's phone,

25   which is the iPhone.

1    You're going to hear a lot in this case about applications

2   or apps and how they get onto your phone.  Today we have lots

3   of apps that are available to us, literally millions of apps

4   are available to us, and we all use them for a lot of different

5   things.  We shop using apps.  We browse social media using

6   apps.  We play music.  We play games.  We find a date.  We do a

7   lot of things with apps.

8    And with the iPhone the only way to get an app onto your

9   phone is to go to the Apple App Store.  For those of you who

10  have iPhones, you know what I mean.  There's only one place

11  you can go, and it's the Apple App Store.

12   But Android is different.  Android allows choices, and one

13  of the choices that Android allows that Apple doesn't allow is

14  how do you get the apps onto your phone.

15   And so with an Android phone, one place you can go to get

16  apps is the Google Play Store and it's the most popular place

17  to go to get apps, but it's not the only place because Android

18  allows more than one app store to be on the phone.

19   Samsung Galaxy -- all Samsung phones, virtually all, come

20  with two apps.  For those of you who have an Android phone or a

21  Samsung you know what I mean.  Right on the home screen there

22  are two apps side by side:  The Samsung Galaxy Store and the

23  Google Play Store.  And the consumer can choose which one to

24  touch, which one to go to.  And there are other Android app

25  stores that users can put onto their phones.

1    And then there's another way that on the Android phone you

2    can get an app onto your phone that doesn't -- you can't do

3    with an iPhone, and that's you can go to the developer's

4    website, directly to their website and go get the app and

5    download it directly onto your phone.  That's called side

6    loading.  You'll hear more about that during the trial.  Again,

7    Android gives users that choice and Apple does not.

8         Now, the plaintiffs, as you've heard, claim that Google

9    has violated the antitrust laws.  In essence what they're

10   saying is that Google is a monopolist and that it controls the

11   way apps get onto Android phones.

12        But Google claims that it's not a monopolist and that it

13   competes with others, it competes with the Apple App Store, it

14   competes with the Samsung Galaxy Store, and it competes with

15   other ways you get apps onto your phone.

16        Let me give you one example.

17            **THE COURT:**  I'm wondering, maybe we could --

18            **MR. POMERANTZ:**  I have just three sentences,

19   Your Honor.

20            **THE COURT:**  And also the counterclaims too?

21            **MR. POMERANTZ:**  I'm sorry?

22            **THE COURT:**  You're going to mention the counterclaims?

23            **MR. POMERANTZ:**  I am, yeah.

24            **THE COURT:**  Okay.

25            **MR. POMERANTZ:**  So when an app developer is coming out

1    with the hottest new app, the Apple App Store and the Google

2    Play Store compete to see who can get that app onto their --

3    into their store first:  Is it going to be first available on

4    iPhone or on Android phones?  They compete with each other to

5    get the support of app developers.

6        They also compete for consumers because consumers want

7    apps and they want to know that they're available to put on

8    their phones and know that they're safe.

9        And what you'll see in this case is that the conduct that

10   they say is anticompetitive is actually pro-competitive because

11   that's how we have Android phones that are able to compete with

12   the iPhone.

13       Now, Google has its own claim against Epic and that claim

14   is based on a secret plan of Epic's that it called

15   Project Liberty.

16       Here's what happened:  Epic came to Google and said, "We

17   want to put Fortnite into the Play Store and we'll agree to pay

18   you a service fee in return."  But what Epic did is they hid

19   some code into the version of the Fortnite game that they gave

20   to the Play Store.  So they gave that game to Play, Play put it

21   in its store and made it available.

22       And then later what Epic did is they activated that secret

23   code with something called a hot fix, and what the hot fix did

24   is it enabled Epic to avoid paying the service fee.

25       So when they say that this case is not about money, you

1    will see that it is about money.  They were trying to avoid

2    paying the service fees that they owed.

3        So that's what the case is about from our perspective.  I

4    join everybody in thanking you for being willing to come down

5    here today and serve as jurors, and we very much look forward

6    to working with the 10 of you who are selected as jurors.

7    Thanks a lot.

8        **THE COURT:**  Okay.  That's the overview.

9        Now, let me just quickly point out, this is just the

10   lawyers talking.  This is not evidence.  This is just what

11   they're going to present to you, the 10 jurors, as themes in

12   the case -- okay? -- now just so you know so you can help

13   tailor your answers.

14       Ms. Clark, let's call our first 10 please.

15       Oh, and, by the way, so officially in the federal

16   government and the state of California we no longer have COVID

17   protocols; but if you want to wear a mask, it's perfectly fine.

18   Don't worry about it.  Do whatever makes you comfortable.

19   Okay?

20       All right.

21       **THE CLERK:**  Could I have the entire panel stand and

22   raise your right hand to be sworn?

23                   (Prospective jurors sworn.)

24       **ALL:**  Yes.

25       **THE CLERK:**  Thank you.

1         Ariana Schott, S-C-H-O-T-T.  If you'll please come

2    forward.  Take the first seat in the back row.

3         Amy Ng, N-G.  Take the second seat.

4         Ellouise Patton, P-A-T-T-O-N.  I'm going to seat you out

5    of order.  Come take the first seat in the bottom row.  Okay?

6    You'll be effectively Juror Number 5 now.

7         John Klopp, K-L-O-P-P.  You'll take the third seat in the

8    top row.

9         Elizabeth Trezza, T-R-E-Z-Z-A.  You'll take the fourth

10   seat.

11        Eddie Navarro, N-A-V-A-R-R-O.  Seat Number 5 at the top.

12   Yes, Seat Number Five at the top.

13        Maryam Rahman, R-A-H-M-A-N.  You'll take the second seat

14   in the bottom row.

15        Shantel Cruz, C-R-U-Z.  You'll take the third seat in the

16   bottom row.

17        Fatemeh Afsari, A-F-S-A-R-I.  You'll take the fourth seat

18   in the bottom row.

19        Michael McCormick, M-C-C-O-R-M-I-C-K.  You'll take the

20   tenth seat -- the fifth seat in the bottom row.

21        **THE COURT:**  Okay.  If you'd like to space out a little

22   bit, you can certainly do that.  Don't change the order that

23   you're sitting in; but if you wanted to have a seat in between

24   everybody, there's plenty of room for that.  I'll leave it up

25   to you.  Okay.

1    All right.  Now, I'm going to ask you our questions, and

2  this is when all of you in the gallery are going to be taking

3  notes of the question number and a note to yourself if you have

4  anything you'd like to share with me if you are called into the

5  jury box.

6       Now, Number 1, which is going to be the plaintiff's

7  instruction of their team; and then I'm going to ask you some

8  questions about the plaintiff's company.

9       Mr. Bornstein.

10       **MR. BORNSTEIN:**  Thank you, Your Honor.

11  Hello, everybody, again.

12       And Your Honor would just like me to introduce the folks

13  here at counsel table as I understand?

14       **THE COURT:**  Yes.

15       **MR. BORNSTEIN:**  Right.

16       Again, my name is Gary Bornstein, and the team here with

17  me -- I'll start on this end -- this is Andrew Wiktor, Michael

18  Zaken, Brent Byars, Faye Honig, Lauren Moskowitz, and Yonatan

19  Evan.

20       **THE COURT:**  Okay.  So this is Question 1 and it has

21  three parts.  They're all related, but this is 1A:  Do you know

22  any of these lawyers, members of the people seated in the jury

23  box?

24                   (No response.)

25       **THE COURT:**  Okay.  Question 1B, 1B:  Do you -- are you

1  personally acquainted, personally acquainted, with any officer,

2  director, or employee of Epic Games, the plaintiff?

3                    (No response.)

4      **THE COURT:**  No, okay.

5      Question 1C:  Have you or anyone close to you, have you or

6  anyone close to you, had any financial dealings with

7  Epic Games, including stock ownership?

8                    (No response.)

9      **THE COURT:**  No, okay.

10     All right.  This is Question 2.  We're going to do the

11 same thing for the defendants.

12     **MR. POMERANTZ:**  Thank you, Your Honor.

13     I'll reintroduce myself.  I'm Glenn Pomerantz, and with me

14 here at counsel table is Lara Kollios, Michelle Park Chiu,

15 Lauren Bell, and Jonathan Kravis.

16     **THE COURT:**  Okay.  Now, for all of you in the box if

17 you have an answer, you just have to raise your hand.  Okay?

18 That's what we have the handheld mic for.

19     You in the gallery need to make the notes, but we're

20 chatting.  Okay?

21     All right.  Question 2A:  Do you know any of the defense

22 attorneys?

23                    (No response.)

24     **THE COURT:**  Okay.  Question 2B:  Are you personally

25 acquainted with any officer, director, or employee of Google?

1          Yes.

2          **PROSPECTIVE JUROR SCHOTT:**  I do have some colleagues

3    that do work at Google.

4          **THE COURT:**  You have some colleagues that work at

5    Google.

6          **PROSPECTIVE JUROR SCHOTT:**  Yeah, who transferred from

7    my company to Google.

8          **THE COURT:**  Okay.  Now remind me where you work.

9    Where do you work?

10         **PROSPECTIVE JUROR SCHOTT:**  I'm Number 3.

11         **THE COURT:**  Sorry.  You've got to hold up the...

12         Where do you work?

13         **PROSPECTIVE JUROR SCHOTT:**  Tesla.

14         **THE COURT:**  Tesla.  Okay.

15         And who do you know at Google?

16         **PROSPECTIVE JUROR SCHOTT:**  I have a couple --

17         **THE COURT:**  Not by name, but just like job category.

18         **PROSPECTIVE JUROR SCHOTT:**  Oh, some are engineers,

19   some are in sales.

20         **THE COURT:**  Engineering and sales?

21         **PROSPECTIVE JUROR SCHOTT:**  Yeah.

22         **THE COURT:**  Okay.  Are these friends or are they

23   business colleagues?

24         **PROSPECTIVE JUROR SCHOTT:**  Both.  Well, they were

25   previous business colleagues.

1          THE COURT:  Friends and business colleagues?

2          PROSPECTIVE JUROR SCHOTT:  Yeah.

3          THE COURT:  And you talk to them on a regular basis.

4          PROSPECTIVE JUROR SCHOTT:  From time to time, yeah.

5          THE COURT:  Do you ever see them socially.

6          PROSPECTIVE JUROR SCHOTT:  Yes.

7          THE COURT:  You do?

8          PROSPECTIVE JUROR SCHOTT:  And some social gatherings.

9          THE COURT:  Okay.  All right.  Thank you.

10     And let's -- it always takes me a few minutes to get

11     everybody's name.

12     Is that Ms. Trezza?  No.

13          PROSPECTIVE JUROR AFSARI:  Fatemeh Afsari.

14          THE COURT:  Ah.  Okay.

15     Can you hand the mic down?

16     Okay.  All right.  So that was Ms. Trezza, right, who has

17     the -- you're at Tesla?  I'm sorry.  You're Ms. Schott.

18          PROSPECTIVE JUROR SCHOTT:  Yes.

19          THE COURT:  Yes, okay.  All right.

20     Yes.

21          PROSPECTIVE JUROR AFSARI:  Good morning.  My nephew is

22     working for Google.

23          THE COURT:  Okay.  Are you Ms. Rahman?  Your name,

24     please.

25          PROSPECTIVE JUROR AFSARI:  Fatemeh Afsari.

1          THE COURT:  Oh, okay.  All right.  I'm sorry.

2      Okay.  All right.  Your nephew works for Google?

3          PROSPECTIVE JUROR AFSARI:  Yes.

4          THE COURT:  What does your nephew do there?

5          PROSPECTIVE JUROR AFSARI:  I think he's an engineer.

6          THE COURT:  Okay.  How often -- do you see him a lot?

7          PROSPECTIVE JUROR AFSARI:  Like once or twice a week

8      yeah.

9          THE COURT:  Once or twice a week?

10         PROSPECTIVE JUROR AFSARI:  Yeah.

11         THE COURT:  Okay.  Anyone else you know at Google?

12         PROSPECTIVE JUROR AFSARI:  No.

13         THE COURT:  Okay.  Anybody else know Google employees?

14     One second.  You have to hand the mic up, yeah.

15     This is Ms. Howard; right?

16         PROSPECTIVE JUROR NG:  No.  Ng.

17         THE COURT:  Oh, I'm sorry.  Ms. Ng.  Yeah.  Okay.

18         PROSPECTIVE JUROR NG:  It's just my brother used to

19     work there for many years.

20         THE COURT:  Okay.  Is he still there?

21         PROSPECTIVE JUROR NG:  No, he's no longer there.

22         THE COURT:  When did he leave?

23         PROSPECTIVE JUROR NG:  I can't remember, but it was

24     several years ago.

25         THE COURT:  Was it more than five years ago, roughly?

 1          **PROSPECTIVE JUROR NG:**  I think so, but I don't recall.

 2          **THE COURT:**  Okay.  And when he was at Google, do you

 3  remember generally what he did there?

 4          **PROSPECTIVE JUROR NG:**  He was in finance and

 5  accounting.

 6          **THE COURT:**  In finance and accounting?

 7          **PROSPECTIVE JUROR NG:**  Yes.

 8          **THE COURT:**  Okay.  And as far as you can recollect, he

 9  left, you know, several years ago; is that right?

10          **PROSPECTIVE JUROR NG:**  Yeah.

11          **THE COURT:**  All right.  Great.

12      Anyone else on Google?

13                          (No response.)

14          **THE COURT:**  That was Question 2C for those of you

15  taking notes.

16      Okay.  So this is Question Number 3.

17      Oh, I need the witness list.

18                      (Pause in proceedings.)

19          **THE COURT:**  This is Question Number 3:  So I'm going

20  to read a list of the people who might testify.  It's a long

21  list.  They're not all going to testify.  We just have to

22  screen in advance.  Okay?  So it's overinclusive.

23      So I'm going to read the names; and as I'm reading them,

24  if a name rings a bell, just pop your hand up.

25      And you in the audience can make a note.

1        Steve Allison of Epic.

2        Sandra Alzetta of Spotify.

3        Chris Babcock, Epic.

4        Paul Bankhead, formerly of Google.

5        Ned Barnes.  He's someone who's going to be an expert

6   witness.  He's in Washington, D.C.

7        Brandon Barras, Google.

8        Robert Beaty at OCV, a company called OCV.

9        Pal Berg at Tidal.

10       Douglas Bernheim, also going to be an expert.  He's at

11   Stanford University.

12       Patrick Brady of Google.

13       Asi Burak of a company called Tilting Point.

14       Sandeep Chatterjee, chief executive officer of -- oh, I'm

15   sorry.  He's going to be -- he's an expert witness, Sandeep

16   Chatterjee.

17       Eric Christensen, Motorola.

18       George Christopolous, a company called SlideME.

19       Eric Chu at Open Handset Alliance.

20       AJ Cihla, C-I-H-L-A, at Tinder.

21       Christian Cramer at Google.

22       Edward Cunningham at Google.

23       Rich Czeslawski at Pure Sweat Basketball.

24       Ethan Diamond at Epic.

25       Sharmista Dubey at Match Group.

1        Chris Dury at GetJar -- there's all these tech names --
2   GetJar.
3        Jeffrey Ezell at AT&T.
4        Paul Feng at Google.
5        Peter Foster at Match Group.
6        Emily Garber at Google.
7        Randy Gelber at Epic.
8        Paul Gennai at Google.
9        Matthew Gentzkow, who's a professor at Stanford.
10       John Gold at Google.
11       Andrew Grant at Epic.
12       Don Harrison at Google.
13       Sarah Karam at Google.
14       Joshua Kim at Bandcamp.
15       David Kleidermacher at Google.
16       Thomas Koh at Epic.
17       Purnima Kochikar at Google.
18       Lawrence Koh at Google.
19       James Kolotouros at Google.
20       Joseph Kreiner at Epic.
21       John Lagerling at Google, formerly Google now at Mercari.
22       Margaret Lam at Android.
23       Greg Leonard, he's an economist, he's going to be an
24   expert witness.
25       Christopher Li at Google.

1        Hiroshi Lockheimer at Google.

2        Mrinalini Loew at Google.

3        Genaro Lopez at Google.

4        Haseeb Malik at Epic.

5        Michael Marchak at Google.

6        Justin Mattson, Google.

7        James Mickens.  He's a professor at Harvard.  He's going

8   to be an expert witness.

9        Richard Miner, Google.

10        Donn Morrill, Amazon.

11        David Nachman, a company called FastSpring.

12        David Nikdel, Epic.

13        Carson Oliver at Apple.

14        Adrian Ong at Match Group.

15        Christian Owens at a company called Paddle.

16        Cameron Payne, Epic.

17        Nicholas Penwarden, Epic.

18        Paul Perryman at Netflix.

19        Jordan Pettinato at SoundCloud.

20        Sundar Pichai at Google.

21        Ruth Porat at Google and Alphabet.  Alphabet's a

22   Google-affiliated company.

23        Ian Purves at Match Group.

24        Zhiyun Qian, expert witness at UC Riverside.

25        Kristen Rasanen at Google.

```
 1        Diana Rios at Google.

 2        Andrew Rope at Google.

 3        Jamie Rosenberg at Google.

 4        Andy Rubin at Google.

 5        Doug Schmidt, professor at Vanderbilt, expert witness.

 6        Nick Sears, Android.

 7        Marc Shedroff, Meta, formerly known as Facebook.

 8        Alec Shobin, Epic.

 9        Ben Simon, a company called Down Dog.

10        Douglas Skinner, professor at the University of Chicago,

11   expert witness.

12        Mark Sottosanti at Riot Games.

13        Danielle Stein at Google.

14        Hans Stolfus at Epic Mobile.

15        Adam Sussman, Epic.

16        Tim Sweeney, Epic.

17        Gary Swidler, Match Group.

18        Steven Tadelis, professor at UC Berkeley, expert witness.

19        Catherine Tucker, professor at MIT, expert witness,

20   Massachusetts Institute of Technology.

21        Daniel Vogel, Epic.

22        Okay, we're in the Vs.  We're almost done.

23        Daniel Vogel.

24        Richard Watts, Bumble.

25        Matthew Weissinger, Epic.
```

1          Armin Zerza, Activision.

2          And, finally, Ed Zobrist at Epic.

3          Any hits?  Anybody know any of those names?

4                         (No response.)

5               **THE COURT:**  That was Number 3.

6          Okay.  Question Number 4, Question Number 4:  Have you or

7     anyone close to you worked for a tech or mobile phone company?

8          We've got Tesla.  I'll count that as a tech company.

9          Tech or mobile phone?

10         Yes.  Can we pass the microphone?

11         Okay, Ms. Ng.

12              **PROSPECTIVE JUROR NG:**  I work for a contact center

13    software company.

14              **THE COURT:**  Okay.  I have to say I'm having a little

15    trouble hearing you, but you work for who?  Contact?

16              **PROSPECTIVE JUROR NG:**  59.

17              **THE COURT:**  Okay.  Did you get that, Kelly?

18              **CERTIFIED STENOGRAPHIC REPORTER:**  59.

19              **THE COURT:**  59?

20         Okay.  And what does 59 do?

21              **PROSPECTIVE JUROR NG:**  They create contact center

22    software.

23              **THE COURT:**  And what do you do there?

24              **PROSPECTIVE JUROR NG:**  I'm a technical writer.

25              **THE COURT:**  How long have you been there?

1        **PROSPECTIVE JUROR NG:**  Two and a half years.

2        **THE COURT:**  Did you have any other tech jobs before

3   that?

4        **PROSPECTIVE JUROR NG:**  I worked at Workday before

5   that.

6        **THE COURT:**  At workday?

7        **PROSPECTIVE JUROR NG:**  Yes.

8        **THE COURT:**  Okay.  What did you do at workday?

9        **PROSPECTIVE JUROR NG:**  Also as a technical writer.

10        **THE COURT:**  Okay.  And any before that?

11        **PROSPECTIVE JUROR NG:**  I was a legal publisher, so...

12        **THE COURT:**  Oh, okay.  Which one?

13        **PROSPECTIVE JUROR NG:**  LexisNexis.

14        **THE COURT:**  Okay.

15     Okay.  There's someone else who had a hand up.  Yes.

16        **PROSPECTIVE JUROR PATTON:**  Hi.  I have a brother that

17   works at Zoom.

18        **THE COURT:**  Works at where?

19        **PROSPECTIVE JUROR PATTON:**  Zoom, Z-O-O-M.

20        **THE COURT:**  Oh, Z-O-O-M.  Zoom?  Like this thing.

21        **PROSPECTIVE JUROR PATTON:**  Yes.

22        **THE COURT:**  All right.  What does he do at Zoom?

23        **PROSPECTIVE JUROR PATTON:**  Sales.

24        **THE COURT:**  Sales.  Okay.  How long has he been there

25   roughly?  Just roughly.  A year?  Two years?  Five years?

1          **PROSPECTIVE JUROR PATTON:**  At least five years.

2          **THE COURT:**  Okay.

3      All right.  Anyone else in the tech field?  No?

4      Okay.  Or any -- tech or mobile phone?

5                          (No response.)

6          **THE COURT:**  No?

7      All right.  That was Question Number four.

8      Question Number 5:  Have you or anyone close to you ever

9  worked for an app company?

10         Now, let's remember, apps are the things that you, you

11 know, download on your phone if you want to track health or,

12 you know, do things.

13         So anybody ever work for an app company?

14                         (No response.)

15         **THE COURT:**  No.

16     Okay.  Now that's Question Number 5.

17     Question Number 6, Number 6:  Do you or anyone close to

18 you have any education, training, or experience in developing

19 or distributing apps?

20         **PROSPECTIVE JUROR SCHOTT:**  Juror Number?

21         **THE COURT:**  Yes, Tesla.  How are you involved with

22 that?

23         **PROSPECTIVE JUROR SCHOTT:**  So I help our developments

24 team with our phone app for financial services.

25         **THE COURT:**  Okay.  And just at a high level, how do

1   you help the team with that?

2        **PROSPECTIVE JUROR SCHOTT:**  I provide data for them to

3   transfer onto the app.

4        **THE COURT:**  Okay.  Are you working at all with posting

5   that app on app stores?

6        **PROSPECTIVE JUROR SCHOTT:**  No, no.  They're solely the

7   ones that develop the app.  We just give them the data to

8   create the portion that we need.

9        **THE COURT:**  Oh, okay.

10      All right.  So you're providing -- you're not otherwise

11  involved in distributing it or selling it?

12       **PROSPECTIVE JUROR SCHOTT:**  No, we don't distribute it.

13  Not on our team.

14       **THE COURT:**  Okay.  All right.

15      Anybody else dealing with apps in any way?

16                    (No response.)

17       **THE COURT:**  No?  Okay.

18      That was Question Number 6.  That was Question Number 6.

19      Question Number 7, Number 7:  Have you or anyone close to

20  you created or developed an app?  Have you actually made your

21  own app or help somebody make an app or anybody close to you?

22      Ah, okay.  Oh, well, you have the mic.  Go ahead, yeah.

23       **PROSPECTIVE JUROR SCHOTT:**  I have friends who develop

24  apps for the company and colleagues.

25       **THE COURT:**  Tesla?

**JURY VOIR DIRE**

1      **PROSPECTIVE JUROR SCHOTT:**  Yeah, same company.

2      **THE COURT:**  All right.  Oh, I'm sorry.  Ms. Ng, did

3  you have yours -- we'll just go in -- it's easier for me if I

4  just -- Go ahead, yeah.

5      **PROSPECTIVE JUROR NG:**  I had a friend who created an

6  app and put it on the store.

7      **THE COURT:**  Okay.  Do you know what app that was?

8      **PROSPECTIVE JUROR NG:**  I don't remember the name.  It

9  was just a small game.

10      **THE COURT:**  Okay.  Do you remember which app store?

11      **PROSPECTIVE JUROR NG:**  I think they put it both up on

12  Google and the Apple Store.

13      **THE COURT:**  And Apple?

14      **PROSPECTIVE JUROR NG:**  Yeah.

15      **THE COURT:**  Okay.  And when did this happen?

16      **PROSPECTIVE JUROR NG:**  This was several years ago.

17      **THE COURT:**  More than five?

18      **PROSPECTIVE JUROR NG:**  Yeah, more than five.

19      **THE COURT:**  Okay.  And have you had any discussions

20  with your friend about the experience of putting an app in an

21  app store?

22      **PROSPECTIVE JUROR NG:**  No, not really.

23      **THE COURT:**  Not really.  Okay.

24    So do you know -- is it a male or a female?

25      **PROSPECTIVE JUROR NG:**  Male.

1      THE COURT:  All right.  So you know your friend did

2   it, but you're not sure what he did or anything else about the

3   details?

4      PROSPECTIVE JUROR NG:  No.  I just downloaded the game

5   because he asked us to download the game.

6      THE COURT:  Is the app still available?

7      PROSPECTIVE JUROR NG:  I have no idea.  I haven't

8   checked.

9      THE COURT:  Okay.

10     All right.  When was the last time you talked with your

11  friend about his app?

12     PROSPECTIVE JUROR NG:  About his app?  It's been a

13  very long time.

14     THE COURT:  More than a year?

15     PROSPECTIVE JUROR NG:  Yes.

16     THE COURT:  More than two years?

17     PROSPECTIVE JUROR NG:  Yes.

18     THE COURT:  More than three years?

19     PROSPECTIVE JUROR NG:  About the app, yes.

20     THE COURT:  Okay.  Great.

21     Okay.  Who is next?  Somebody else had -- oh, yes, please.

22  Yeah.

23     PROSPECTIVE JUROR RAHMAN:  Hi.  My name is --

24     THE COURT:  Can you remind me of your name?

25     PROSPECTIVE JUROR RAHMAN:  Maryam.

1          THE COURT:  Go ahead, yeah.

2          PROSPECTIVE JUROR RAHMAN:  My brother-in-law

3     creates -- he created an app like a year ago.

4          THE COURT:  Okay.  And what kind of app is it?

5          PROSPECTIVE JUROR RAHMAN:  I actually don't remember.

6     It was just like a tracking app.  It was just to help you get

7     from place to place in cities.

8          THE COURT:  Oh, you mean like a map app or something?

9          PROSPECTIVE JUROR RAHMAN:  Yeah.  Like a map app,

10    yeah.

11         THE COURT:  This is your brother-in-law?

12         PROSPECTIVE JUROR RAHMAN:  Yep.

13         THE COURT:  All right.  Have you ever talked -- do you

14    know if he put it in an app store somewhere?

15         PROSPECTIVE JUROR RAHMAN:  Yeah, he put it both in the

16    Apple Store and Google Play.

17         THE COURT:  Google and Apple?

18         PROSPECTIVE JUROR RAHMAN:  Yeah.

19         THE COURT:  Okay.  Have you ever had any conversations

20    with your brother-in-law about his experiences as an app

21    developer?

22         PROSPECTIVE JUROR RAHMAN:  Yeah, but it was a year

23    ago.

24         THE COURT:  At least a year ago?

25         PROSPECTIVE JUROR RAHMAN:  Uh-huh.

1    **THE COURT:**  So it's not something you talk about all

2    the time?

3    **PROSPECTIVE JUROR RAHMAN:**  No.

4    **THE COURT:**  Do you know if the app is still available?

5    **PROSPECTIVE JUROR RAHMAN:**  I don't, no.

6    **THE COURT:**  Do you know the name of it?

7    **PROSPECTIVE JUROR RAHMAN:**  I don't remember.  He's

8    constantly trying to make apps and put them on the stores,

9    so...

10   **THE COURT:**  All right.  Is he sort of a full-time app

11   developer or this was kind of a one-off?

12   **PROSPECTIVE JUROR RAHMAN:**  It's a side thing that he

13   does.

14   **THE COURT:**  It's a side thing.  Okay.

15   **PROSPECTIVE JUROR RAHMAN:**  Yeah.

16   **THE COURT:**  Has he done any other apps other than this

17   tracking thing?

18   **PROSPECTIVE JUROR RAHMAN:**  He hasn't gotten any other

19   apps like on the actual stores.  He's just working on them on

20   the side.

21   **THE COURT:**  Okay.  Has he ever said anything to you

22   about his experiences with Google or Apple's App Stores?

23   **PROSPECTIVE JUROR RAHMAN:**  Nothing other than a year

24   ago, no.

25   **THE COURT:**  Nothing?  Okay.

1        All right.  So you know he's done it, but not too much
2    more than that?
3              **PROSPECTIVE JUROR RAHMAN:**  Yeah.
4              **THE COURT:**  Okay.
5        All right.  Anybody else have an app response?
6        Oh, yes, please.  Yeah.
7              **PROSPECTIVE JUROR KLOPP:**  So Mr. Klopp.
8              **THE COURT:**  Yes, thank you.
9              **PROSPECTIVE JUROR KLOPP:**  I'm pretty much the same
10   category as the last juror.  So I have a friend who I know has
11   made apps, but we don't really talk about it much.  I just know
12   that's what he's done.
13             **THE COURT:**  Okay.  Is this a close friend or...
14             **PROSPECTIVE JUROR KLOPP:**  Yeah, I would say he's a
15   close friend.
16             **THE COURT:**  Does he talk about his app experiences
17   very much?
18             **PROSPECTIVE JUROR KLOPP:**  No.  I know he's made at
19   least one -- I think more than one; but, like I said, we don't
20   talk about it.
21             **THE COURT:**  Okay.  So he hasn't given you any details
22   about being an app creator or working on the app stores?
23             **PROSPECTIVE JUROR KLOPP:**  No.  I couldn't tell you the
24   name.  I -- just that he's done it.
25             **THE COURT:**  Okay.  All right.  Great.

1        Okay.  This is the Bay Area.  Everybody is either making

2    apps or has a buddy who makes an app.

3        Okay.  Anybody else on the apps?

4                      (No response.)

5        **THE COURT:**  Okay.  That was Question Number 7.  I've

6    only got two more.

7        Question Number 8, Question Number 8:  Have you heard or

8    read anything about this case?

9        Now remember what we're talking about.  We're talking

10   about antitrust claim against the Google Play Store and

11   Google's claims against Epic for breach of contract.  That's

12   the high level.

13       Have you read or heard anything about this case other than

14   what you have heard today here in court?

15                     (No response.)

16       **THE COURT:**  All right.  That was Question Number 8.

17       Question Number 9, Number 9:  Do you have any difficulty

18   understanding English or reading documents in English?

19                     (No response.)

20       **THE COURT:**  Number 9.

21       And, finally, Number 10, this is the grab-bag, catchall

22   question:  Last call, is there anything you want to share with

23   me about the possibility -- well, before I do that, let me

24   stop.

25       I forgot to ask, my apologies, you remember the Question 1

1    and 2 had three parts?  I forgot to ask about part 2C.  This is

2    2C for Google:  Have you or anyone close to you had any

3    financial dealings with any Google company, including stock

4    ownership?  Question 2C.

5        Do you own any stock in Google or Google companies or have

6    you had any financial dealings with Google?

7        Is this Tesla to Google, or is it you personally?

8        **PROSPECTIVE JUROR SCHOTT:**  It's me personally.  We

9    have some stock in Google.

10        **THE COURT:**  You own Google stock?

11        **PROSPECTIVE JUROR SCHOTT:**  Yeah, a portion of it, but

12    it's under --

13        **THE COURT:**  Did you say fortunately or unfortunately?

14                    (Laughter)

15        **PROSPECTIVE JUROR SCHOTT:**  It's under --

16        **THE COURT:**  Okay.  All right.  So you own some stock?

17        **PROSPECTIVE JUROR SCHOTT:**  Yeah.

18        **THE COURT:**  Okay.  Let me just ask qualitatively,

19    don't give me any numbers, is it a major investment for you or

20    is it a minor investment?

21        **PROSPECTIVE JUROR SCHOTT:**  No, it's part of our stock

22    options that we're offered as employees for a tech company.  So

23    it's like bundled in.

24        **THE COURT:**  Oh, I see.  Okay.

25        All right.  Is it a lot or a small amount?

1          **PROSPECTIVE JUROR SCHOTT:**  It's restricted right now

2    so it's nothing technically --

3          **THE COURT:**  It's nothing.  Okay.  All right.

4          **PROSPECTIVE JUROR SCHOTT:**  -- but once it's vested, it

5    may be.

6          **THE COURT:**  Okay.  Great.

7        Anything for Question 2C?

8        Yes.  Pass that down.  I need to -- yeah.

9          **PROSPECTIVE JUROR AFSARI:**  Hi.  I had the experience

10   in 2000 and also right now, so...

11         **THE COURT:**  You own some stock?

12         **PROSPECTIVE JUROR AFSARI:**  Unfortunately.

13         **THE COURT:**  Google stock?

14         **PROSPECTIVE JUROR AFSARI:**  Yes.

15         **THE COURT:**  Okay.

16         **PROSPECTIVE JUROR AFSARI:**  Before we lost the whole

17   thing and now is another experience.

18         **THE COURT:**  And now -- it's large or small now?

19         **PROSPECTIVE JUROR AFSARI:**  Before was bad, bad

20   experience, yes, large, large amount.

21         **THE COURT:**  Oh, I see.  It's small now?  You don't

22   have very many now?

23         **PROSPECTIVE JUROR AFSARI:**  Better than before, yeah,

24   2000, and now is another experience.

25         **THE COURT:**  Okay.  I'm just -- I'm having a little

1    trouble understanding.  Let me just ask, for today, like right

2    now, do you own what you consider to be --

3         **PROSPECTIVE JUROR AFSARI:**  Right now we have --

4         **THE COURT:**  Let me just finish.

5         **PROSPECTIVE JUROR AFSARI:**  Oh, sorry.

6         **THE COURT:**  The court reporter is taking this down.

7    So just right now, don't give me any numbers, but do you

8    have what you consider to be a lot of Google stock or a small

9    amount of Google stock?

10        **PROSPECTIVE JUROR AFSARI:**  A lot.

11        **THE COURT:**  A lot.  Okay.

12   Okay.  Thank you.

13   Anybody else with Google stock ownership or financial

14   dealings?

15                         (No response.)

16        **THE COURT:**  Okay.

17   All right.  Let's go back to Question 10.  This is the

18   catchall, last call:  Is there anything you want to share with

19   me about being a juror in this case before I talk to the

20   lawyers?

21   Okay.  Let's see, that is Ms. Patton?

22        **PROSPECTIVE JUROR PATTON:**  Yes.

23        **THE COURT:**  We're going to have you -- we're just

24   going to have you -- I know you have a cane, but we're just

25   going to have you over here on the side.  Okay?

1      **PROSPECTIVE JUROR PATTON:**  Oh, okay.

2      **THE COURT:**  So don't -- yeah.  We'll just have a

3  private conversation over here.

4      And, by the way, if there's anything you want to share

5  privately, just let me know.  Okay?  This is not meant to put

6  anybody on the spot or make you uncomfortable.  So if you'd

7  rather share an answer with me privately, this is for

8  everybody, just hold up your hand and we'll go over there like

9  we're going to do right now with Ms. Patton.

10      (The following proceedings were heard at the sidebar:)

11      **THE COURT:**  What's on your mind?

12      **PROSPECTIVE JUROR PATTON:**  I haven't received

13  documentation yet from my physical therapist and my general

14  practitioner, but I'm in physical therapy now so I can get rid

15  of this cane; but I'm in physical therapy and I have vertigo

16  very, very bad.

17      **THE COURT:**  Are you going every day or three times a

18  week or something?

19      **PROSPECTIVE JUROR PATTON:**  Twice a week.

20      **THE COURT:**  What times do you normally go?

21      **PROSPECTIVE JUROR PATTON:**  In the afternoons generally

22  from 1:00 to 3:00, or somewhere around in there.

23      **THE COURT:**  Okay.  And that's going to be going on for

24  a while?

25      **PROSPECTIVE JUROR PATTON:**  Yeah, until I can -- I

**SIDEBAR**

1    mean, for at least the next two or three weeks.  I'm trying to

2    get out of this so I can get this cane out of here.

3            **THE COURT:**  I understand.  Did you have surgery or

4    something?

5            **PROSPECTIVE JUROR PATTON:**  I had surgery on this foot

6    and then this hand; and then I had some kind of condition, I

7    don't know what it was.  I woke up like a drunken sailor at

8    3:00 o'clock in the morning, and from then on I was dizzy.  So

9    they got me physical therapy to try to teach me -- get me

10   better balance, walking better --

11           **THE COURT:**  All right.

12           **PROSPECTIVE JUROR PATTON:**  -- and also dealing with

13   the dizziness.

14           **THE COURT:**  Okay.  Thank you.  You can just go --

15           **PROSPECTIVE JUROR PATTON:**  But I've got documentation

16   coming.

17           **THE COURT:**  You'll probably have to send that to the

18   Jury Office; but for right now, it's okay.  If you can just go

19   back.

20               (Prospective Juror Patton leaves sidebar.)

21           **THE COURT:**  Okay.  Anybody else?

22                       (Pause in proceedings.)

23           **THE COURT:**  Come on in.

24           **PROSPECTIVE JUROR AFSARI:**  Thank you, Your Honor.

25           **THE COURT:**  Now remind me of your name again.

**SIDEBAR**

1      **PROSPECTIVE JUROR AFSARI:**  My name is Fatemeh Afsari,

2  Number 16.  Fatemeh Afsari.

3      **THE COURT:**  Okay.  So you're the one who owns the

4  Google stock.  You have a lot of Google stock.  You're the one

5  with a lot of Google stock.

6      **PROSPECTIVE JUROR AFSARI:**  Yeah, but in 2000 we really

7  lost the house to the --

8      **THE COURT:**  Remember I asked you how much do you own

9  today and you said it was a lot; is that right?

10      **PROSPECTIVE JUROR AFSARI:**  Right now, yeah.

11      **THE COURT:**  Right now you have a lot of Google stock?

12      **PROSPECTIVE JUROR AFSARI:**  Yes.

13      **THE COURT:**  Thank you.

14      **PROSPECTIVE JUROR AFSARI:**  But my concern is different

15  right now.

16      **THE COURT:**  No, no.  But I think that's going to be

17  enough for today.  You can just go back.

18      **PROSPECTIVE JUROR AFSARI:**  I'm sorry.  I apologize.

19      **THE COURT:**  That's fine.

20         (Prospective Juror Afsari leaves sidebar.)

21      **THE COURT:**  Okay.  Anybody else?

22                       (No response.)

23      **THE COURT:**  All right.  Now, I'm going to have a word

24  with the lawyers so you can all relax, and we'll be back in a

25  couple of minutes.

**SIDEBAR**

1          **UNIDENTIFED SPEAKER:**  Is it possible to use the

2    bathroom?

3          **THE COURT:**  Please, yes.  Perfect time to do that if

4    that's what you'd like to do.

5       Okay.  I'm going to excuse Ms. Afsari.

6          **MR. BORNSTEIN:**  Understood.

7          **THE COURT:**  Cause or peremptories?

8          **MR. BORNSTEIN:**  No, Your Honor.

9          **THE COURT:**  You're good?

10         **MR. BORNSTEIN:**  Yes.

11         **THE CLERK:**  So plaintiff passed...

12         **THE COURT:**  Okay.  Counsel?

13      Actually, I forgot.  I think Ms. Patton for physical

14   reasons.  So I'm going to excuse her too, but plaintiff

15   otherwise okay?

16         **MR. BORNSTEIN:**  Yes, Your Honor.

17         **THE COURT:**  Defendants?

18         **MS. BELL:**  Your Honor, we would like to excuse Juror

19   Number, I believe, 10, Ms. Trezza.

20         **THE CLERK:**  Who?

21         **THE COURT:**  Trezza.

22         **THE CLERK:**  She's Juror Number 4.

23         **MS. BELL:**  You're going by the seat?

24         **THE CLERK:**  Yeah.

25         **THE COURT:**  This is defense peremptory.  Anybody else?

 1           MS. BELL:  I'm sorry, Ms. Clark, the empty seat.

 2           THE CLERK:  It's Ms. Trezza; right?

 3           MS. BELL:  Ms. Ng.

 4           THE COURT:  Ms. Ng, Number 2.

 5           THE CLERK:  You want to excuse her?

 6           THE COURT:  Yeah.  That's her peremptory.

 7      Who else?  You only get three.

 8           MS. BELL:  I know, Your Honor.  That's all,

 9  Your Honor.

10           THE COURT:  Okay.  Great.  So that's four then; right?

11      Okay.  Perfect.

12      (The following proceedings were heard in open court:)

13           THE COURT:  I'm going to let the other jurors come

14  back.

15      Come on in.

16      We need to wait for Ms. Ng.

17                      (Pause in proceedings.)

18           THE COURT:  Okay.  I am going to gamble.  I think

19  reliably that that's -- we have a full house.

20      So, Ms. Ng, Ms. Patton, Ms. Trezza, and Ms. Afsari, you

21  can return to the jury office.

22      (Prospective Jurors Amy Ng, Ellouise Patton, Elizabeth

23  Trezza, and Fatemeh Afsari excused.)

24           THE COURT:  And let's call up our next four please.

25           THE CLERK:  Leave your notebooks in the stack that's

1   on the bench right there, please.

2       Riya Nair, N-A-I-R.  If you'll take Seat Number 2 on the

3   top row.  Top row, Seat Number 2.

4       Katherine Gong, G-O-N-G.  You'll take Seat Number 4 in the

5   top row.

6       Ai Ling Sun Teng, T-E-N-G.  You'll take Seat Number 6,

7   first seat in the bottom row.

8          **THE COURT:**  Lisa, before you do the next one, do this

9   one (indicating).

10         **THE CLERK:**  Lee Taber, T-A-B-E-R.  If you'll take Seat

11  Number 9 in the bottom row.  Thank you.

12         **THE COURT:**  Okay.  So for our four new in the box

13  numbers, let me go down the question numbers.  You can just

14  raise your hand if you have any responses.

15      So Question Number 1 was:  Do you know the plaintiffs or

16  any financial dealings with Epic?

17                    (No response.)

18         **THE COURT:**  All right.  Question Number 2:  Do you

19  know any of the defendants or any financial dealings with

20  Google or Google companies?

21      Yes.  Okay.

22         **PROSPECTIVE JUROR NAIR:**  I used to work at Google.

23         **THE COURT:**  Okay.  May I -- that's Ms. Nair?

24         **PROSPECTIVE JUROR NAIR:**  Riya Nair, yeah.

25         **THE COURT:**  All right.  When did you work at Google?

1          **PROSPECTIVE JUROR NAIR:**  I worked in 2006 as a

2    contractor.  And later I used to work at Motorola Mobility as

3    an engineer and product manager; and Google had bought Motorola

4    for two years and then they passed it on to Lenovo.

5          **THE COURT:**  I see.  So when was the last time you

6    worked for anybody tied to Google?

7          **PROSPECTIVE JUROR NAIR:**  I am in touch with some of

8    the people working at Google.  I used to work with them, so I

9    meet them on and off.

10         **THE COURT:**  All right.  But when was the last time you

11   personally worked any -- with Motorola or Google?

12         **PROSPECTIVE JUROR NAIR:**  2015.

13         **THE COURT:**  2015.

14      Okay.  And today you socially see some Google employees?

15         **PROSPECTIVE JUROR NAIR:**  Yes.

16         **THE COURT:**  Okay.  And do you know what they do at

17   Google?

18         **PROSPECTIVE JUROR NAIR:**  Some are in sales, two are

19   product managers.

20         **THE COURT:**  Do you know which products?

21         **PROSPECTIVE JUROR NAIR:**  Apps.

22         **THE COURT:**  Apps?  Okay.

23      Do they work with the App Store?

24         **PROSPECTIVE JUROR NAIR:**  The Play Store.

25         **THE COURT:**  Yeah.  The Play Store.

1   Okay.  Somebody else have a hand up for the Google.  Yes?

2        PROSPECTIVE JUROR GONG:  I work at the bank that

3   Google banks in.

4        THE COURT:  This is Ms. Gong?

5        PROSPECTIVE JUROR GONG:  Yes.

6        THE COURT:  Okay.  You work at Google's bank.

7        PROSPECTIVE JUROR GONG:  A bank that Google banks in.

8        THE COURT:  Which bank is that?

9        PROSPECTIVE JUROR GONG:  HSBC.

10       THE COURT:  HSBV?

11       PROSPECTIVE JUROR GONG:  HSBC.

12       THE COURT:  Oh, I'm sorry.  HSBC.

13   Okay.  Do you work on the Google accounts.

14       PROSPECTIVE JUROR GONG:  Yes, my team does, and I'm

15   the data entry for the items that they...

16       THE COURT:  Now, just at a high level, what services

17   are you personally providing with respect to Google?

18       PROSPECTIVE JUROR GONG:  They open bank account and

19   commercially we help them do deposits, send -- do transfers,

20   payments, things like that, services like that.

21       THE COURT:  All right.  So it's, you know, traditional

22   banking work that you do for Google as a company?

23       PROSPECTIVE JUROR GONG:  Yes.

24       THE COURT:  Okay.  All right.

25   Okay.  Anybody else on the Google ties?

```
 1                         (No response.)

 2          THE COURT:  Okay.  That was Question 2.

 3      Question -- the third one was I read the witness list.

 4  Anybody know any of those possible witnesses?

 5                         (No response.)

 6          THE COURT:  All right.  Question Number 4:  Has

 7  anybody worked for a tech or mobile phone company?

 8      I've got that one already, Ms. Nair.  I've got yours,

 9  Google and Motorola.

10      Anybody else?

11          THE CLERK:  Pass her the mic.

12          THE COURT:  I'm sorry, yeah.  You also worked at

13  Apple?

14          PROSPECTIVE JUROR NAIR:  Actually I have worked at

15  Good Technology, and currently I work at a company called

16  Balloon, which -- who also have apps on App Store, not on

17  Play Store.

18          THE COURT:  Oh, okay.  They have apps in the

19  Play Store?

20          PROSPECTIVE JUROR GONG:  App Store.  So current

21  company has apps on App Store.

22          THE COURT:  Apple or Google?

23          PROSPECTIVE JUROR GONG:  Apple.

24          THE COURT:  Apple, okay.

25      All right.  And what do you do there today?  What do you
```

 1    do for the company today?

 2              **PROSPECTIVE JUROR GONG:**  I am a product management VP.

 3              **THE COURT:**  Product management?

 4              **PROSPECTIVE JUROR GONG:**  Yeah.

 5              **THE COURT:**  Okay.  Are you involved in apps in any

 6    way?

 7              **PROSPECTIVE JUROR GONG:**  Yes.

 8              **THE COURT:**  Okay.  What do you do with respect to

 9    apps?  Are you developing them?  Selling them?

10              **PROSPECTIVE JUROR NAIR:**  I define them so engineers

11    can develop it.

12              **THE COURT:**  I see.  So I got you -- Ms. Nair, I've got

13    your answer to this, but this is Number 5.  You work for an app

14    company.

15         Anybody else have an app company ties?

16                        (No response.)

17              **THE COURT:**  Okay.  Number 6:  Any training,

18    experience, education in developing or distributing apps?

19                        (No response.)

20              **THE COURT:**  Number 7:  Creating or developing an app?

21                        (No response.)

22              **THE COURT:**  All right.  Number 8, have you heard

23    anything about this case other than what you've heard here

24    today?

25         That's okay.  The app stuff is enough.

SIDEBAR

1      **PROSPECTIVE JUROR NAIR:**  Actually --

2      **THE COURT:**  No, no.  But just -- this is just yes or

3  no.  I don't want to hear what you've heard.

4      Just to double-check, nobody's heard anything about this

5  case or claims before coming in today?

6                        (No response.)

7      **THE COURT:**  Okay.  Difficulty with English, Number 9?

8  English, any English comprehension problems, readability.

9                        (No response.)

10     **THE COURT:**  Okay.  And then finally the grab-bag,

11  catchall, last call:  Anything you want to tell me?

12     Okay.  Just come on down here.

13     (The following proceedings were heard at the sidebar:)

14     **PROSPECTIVE JUROR TABER:**  My wife is going to have a

15  surgery next week or so.

16     **THE COURT:**  Really?

17     **PROSPECTIVE JUROR TABER:**  We're new to the area the

18  last six months.  We don't have anyone else to take her to and

19  from.

20     **THE COURT:**  All right.  That's definitely scheduled

21  for the next --

22     **PROSPECTIVE JUROR TABER:**  Yeah.  She's having an

23  appointment today, and in the next week or two it's going to

24  be.

25     **THE COURT:**  Is that a day thing or overnight?

1    **PROSPECTIVE JUROR TABER:**  It should be within one day,

2    but I don't know how long --

3    **THE COURT:**  But then there's recovery and you're going

4    to stay home with her?

5    **PROSPECTIVE JUROR TABER:**  I work from home.

6    **THE COURT:**  You do?

7    **PROSPECTIVE JUROR TABER:**  Yeah.

8    **THE COURT:**  Anything else?

9    **PROSPECTIVE JUROR TABER:**  That's it.

10    **THE COURT:**  Okay.  Good.  You may go back.

11    (The following proceedings were heard in open court:)

12    **THE COURT:**  Anybody else?

13    Ms. Nair, I think you're okay.  I have enough to work

14    with.  Just trust me.  Trust the judge for a minute.

15    Okay.  All right.  Anybody else?

16    Okay.  All right.  I'm going to talk to the lawyers for a

17    few minutes, and we'll be right back.

18    (The following proceedings were heard at the sidebar:)

19    **THE COURT:**  Let me just tell you what I'm going to do.

20    I'm going to excuse Ms. Nair.  There's too many ties.  Any

21    objection to that?

22    **MR. BORNSTEIN:**  No.

23    **MS. BELL:**  No, Your Honor.

24    **THE COURT:**  Plaintiffs?

25    **MR. BORNSTEIN:**  We have a cause challenge for

1    Number 20, Ms. Gong.

2              **THE COURT:**  The banking?

3              **MR. BORNSTEIN:**  No, no.  She's indicated on her

4    questionnaire that she despises Epic Games.

5              **THE COURT:**  Oh.  Do you want to talk with her about

6    that or no?

7              **MR. BORNSTEIN:**  That's fine.

8              **THE CLERK:**  What seat is she?

9              **MS. MOSKOWITZ:**  Seat Number 4, Juror 20.

10             **THE COURT:**  That's Epic for cause.

11       Okay.  Defendant --

12             **MR. BORNSTEIN:**  I have one other issue, Your Honor,

13   which is really a follow-up question.

14       Ms. Teng indicated on her questionnaire that she is

15   unavailable out of town from November 18 to November 21.

16             **THE COURT:**  She didn't say anything.  I think it's

17   fine.  She didn't say anything.

18             **MS. BELL:**  Your Honor, we would move for cause for

19   Mr. Taber.

20             **THE COURT:**  I'm going to do that.

21             **MS. BELL:**  Oh.

22             **THE COURT:**  I'm going to do that.

23       Do you have any objection to that?

24             **MR. BORNSTEIN:**  To Mr. Taber, no.

25             **THE COURT:**  Okay.  So it's just two; right?  Ms. Nair

1   and Mr. Taber?

2            **MR. BORNSTEIN:**  And we're going to exercise on

3   Ms. Teng.

4            **THE COURT:**  On who?

5            **MR. BORNSTEIN:**  On Ms. Teng.

6            **THE COURT:**  For cause?

7            **MR. BORNSTEIN:**  No.

8            **THE COURT:**  For peremptory.

9            **MR. BORNSTEIN:**  Yes.  We'll take for cause if you give

10  it to me.

11           **THE COURT:**  Just to make sure, it's Mr. Nair,

12  Ms. Teng, and Mr. Taber.

13           **MR. BORNSTEIN:**  Correct.  And Ms. Gong for cause.

14           **THE COURT:**  Ms. Nair is by me.

15           **MR. BORNSTEIN:**  Yes.  Ms. Gong is for cause.

16           **THE COURT:**  Yeah.  It's four then.  All right.

17           **MS. BELL:**  Your Honor -- I'm sorry.

18           **THE COURT:**  Good.

19           **MS. BELL:**  Yes.

20       (The following proceedings were heard in open court:)

21           **THE COURT:**  Okay.  Ms. Nair, Ms. Gong, Ms. Teng, and

22  Mr. Taber, you can go back to the jury office.

23       (Prospective Jurors Riya Nair, Katherine Gong, and Lee

24  Taber excused.)

25           **THE COURT:**  We'll call up our next four, please.

 1          **THE CLERK:**  Shaneen Perez, P-E-R-E-Z.  If you'll take
 2   Seat Number 2.
 3       Suavic G-R-U-Z-Y-N-S-K-I, if you'll take Seat Number 4.
 4       Jigme Namgyal, N-A-M-G-Y-A-L, if you'll take Seat
 5   Number 6.
 6          Yin Wong, W-O-N-G, if you'll take Seat Number 9.
 7          **THE COURT:**  Okay.  Our four new people, I'm going to
 8   run down the questions again.
 9       Anybody know anybody in the Epic table or have any
10   financial dealings with Epic?
11                     (No response.)
12          **THE COURT:**  Anybody have -- Question 2:  Nobody at
13   Google or have any financial dealings with Google?
14       Yes.  Pass our mic down Mr. Gruzynski.
15          **PROSPECTIVE JUROR GRUZYNSKI:**  Yes.  My last name is
16   Gruzynski.
17       So I do have -- I own Google stocks in both personal and
18   retirement accounts.
19          **THE COURT:**  Okay.  What's -- just not a number, but --
20          **PROSPECTIVE JUROR GRUZYNSKI:**  5 percent of my
21   portfolio.
22          **THE COURT:**  5 percent of your portfolio?
23          **PROSPECTIVE JUROR GRUZYNSKI:**  Yeah, I would say.
24          **THE COURT:**  All right.  Okay.
25       Any friends?  Anything else about Google?

1      **PROSPECTIVE JUROR GRUZYNSKI:**  No.

2          **THE COURT:**  Okay.  Any other Google ties with anybody?

3                    (No response.)

4          **THE COURT:**  Question 3, on that long list of

5      witnesses, anybody have any name hits?

6                    (No response.)

7          All right.  Good.

8          Question 4:  Tech or mobile company work?

9                    (No response.)

10         **THE COURT:**  Question 5:  Work for an app company?

11         Ah, okay.  Let's start -- and that is Mr. Wong?

12         **PROSPECTIVE JUROR WONG:**  Yes.

13         **THE COURT:**  Yes.

14         **PROSPECTIVE JUROR WONG:**  My sister just up put an app

15     in the Apple Store.

16         **THE COURT:**  Your sister?

17         **PROSPECTIVE JUROR WONG:**  Yes.  And she and her

18     partners also started a company 20 years ago, an app called

19     Urban Pixel, but it didn't go anywhere.

20         **THE COURT:**  That was 20 years ago?

21         **PROSPECTIVE JUROR WONG:**  Yeah.

22         **THE COURT:**  They didn't hit the jackpot?

23         **PROSPECTIVE JUROR WONG:**  That was before the

24     smartphone era, so...

25         **THE COURT:**  That's long gone now?

1          **PROSPECTIVE JUROR WONG:**  Right.

2          **THE COURT:**  Okay.

3          **PROSPECTIVE JUROR WONG:**  But right now she's putting

4    an app on the Apple Store just currently now.

5          **THE COURT:**  Currently?

6          **PROSPECTIVE JUROR WONG:**  Yes.

7          **THE COURT:**  Okay.  Do you know what the app is?

8          **PROSPECTIVE JUROR WONG:**  It's called Jest app.

9          **THE COURT:**  Just app?

10         **PROSPECTIVE JUROR WONG:**  J-E-S-T app.

11         **THE COURT:**  Oh.  Is it like a comedy thing?

12         **PROSPECTIVE JUROR WONG:**  It's an animated text,

13   expressive text app.

14         **THE COURT:**  Okay.  And that's on Apple Store only?

15         **PROSPECTIVE JUROR WONG:**  Right.  Correct.

16         **THE COURT:**  Okay.  Now, have you had any detailed

17   conversations with her about apps or making apps or anything

18   like that?

19         **PROSPECTIVE JUROR WONG:**  Yes.

20         **THE COURT:**  You have?

21         **PROSPECTIVE JUROR WONG:**  Yes.

22         **THE COURT:**  Did she give you any impressions about app

23   stores one way or the other, positive or negative?

24         **PROSPECTIVE JUROR WONG:**  No.

25         **THE COURT:**  Okay.  Has she ever talked about the

1   Google Play Store.

2            **PROSPECTIVE JUROR WONG:**  No.

3            **THE COURT:**  Has she ever talked about competition

4   between app stores?

5            **PROSPECTIVE JUROR WONG:**  No.

6            **THE COURT:**  Okay.

7            **PROSPECTIVE JUROR WONG:**  But on Question Number --

8            **THE COURT:**  We'll get to that one.  We're just doing

9   one at a time.

10       Okay.  How often do you talk with your sister about her

11  app experience?

12           **PROSPECTIVE JUROR WONG:**  Well, we get together maybe

13  twice or once a month.

14           **THE COURT:**  Okay.  And when you -- each time you see

15  her, does the app store come up?

16           **PROSPECTIVE JUROR WONG:**  Not every time.

17           **THE COURT:**  Okay.  All right.

18           **PROSPECTIVE JUROR WONG:**  Only reason is because it's

19  about to go up, she was mentioning how difficult to move to the

20  server and stuff like that.  So recently we've been talking a

21  lot more, but this app's been in the work for 10 years so it's

22  only off and on.

23           **THE COURT:**  Okay.  Thank you.

24       Anybody else with app company?

25       Yes, please.

1      **PROSPECTIVE JUROR NAMGYAL:**  I have a friend who works

2  in the Uber.

3      **THE COURT:**  A friend who works for Uber?

4      **PROSPECTIVE JUROR NAMGYAL:**  Yes.

5      **THE COURT:**  Oh, okay.  A driver or employee?

6      **PROSPECTIVE JUROR NAMGYAL:**  Employee.

7      **THE COURT:**  Within the company itself?

8      **PROSPECTIVE JUROR NAMGYAL:**  Yes.

9      **THE COURT:**  Okay.  Is that person involved in the Uber

10  app at all?

11      **PROSPECTIVE JUROR NAMGYAL:**  That, I don't know.

12      **THE COURT:**  Okay.

13      **PROSPECTIVE JUROR NAMGYAL:**  Because we don't talk

14  about the work.

15      **THE COURT:**  And you're not personally involved in the

16  Uber app?

17      **PROSPECTIVE JUROR NAMGYAL:**  No.

18      **THE COURT:**  All right.  Okay.  So that was Question 5.

19      Question 6 -- and, Mr. Wong, I think I've heard your

20  answer already so you don't need to tell me -- but you or

21  anyone close to you have any education or experience in

22  developing an app?

23      We heard from Mr. Wong.

24                   (No response.)

25      **THE COURT:**  Same question, 7:  Do you know anybody

1    who's created or developed an app?

2        I already got your answer, Mr. Wong.

3                          (No response.)

4        **THE COURT:**  All right.  Question 8, have you heard

5    anything about this case before today?

6        **PROSPECTIVE JUROR WONG:**  Yes.

7        **THE COURT:**  You have?  Did you read something in the

8    newspaper?

9        Can you pass that to Mr. Wong?

10       Do not tell me what you saw.  I don't want to know what

11   you saw.  I just want to know did you see it in a newspaper or

12   did you hear a story?

13       **PROSPECTIVE JUROR WONG:**  This conversation happened a

14   few years ago because my son, he's a --

15       **THE COURT:**  No, no.  What I'm asking about is, this

16   case is --

17       **PROSPECTIVE JUROR WONG:**  This specific --

18       **THE COURT:**  -- not -- is only a year or two old.

19       **PROSPECTIVE JUROR WONG:**  Right.

20       **THE COURT:**  Okay.

21       **PROSPECTIVE JUROR WONG:**  But when it happened, my son,

22   he played Fortnite, and he told me about the case -- well, for

23   Epic Games was complaining about Google, and they were going

24   back and forth.

25       **THE COURT:**  Okay.

1          **PROSPECTIVE JUROR WONG:**  And we did have that side

2    conversation about it.

3          **THE COURT:**  With your son?

4          **PROSPECTIVE JUROR WONG:**  Yeah, with my son.

5          **THE COURT:**  And your son's only connection to Epic is

6    that he plays Fortnite?

7          **PROSPECTIVE JUROR WONG:**  Right.  Right.

8          **THE COURT:**  Okay.  And since that conversation a

9    couple years ago, have you seen or heard anything else about

10   the case?

11         **PROSPECTIVE JUROR WONG:**  No.

12         **THE COURT:**  That's it?

13         **PROSPECTIVE JUROR WONG:**  That's it.

14         **THE COURT:**  Has your son given you any updates?

15         **PROSPECTIVE JUROR WONG:**  No.  At that time Fortnite

16   was very hot, and then we were talking about timing and --

17   anyway, yeah.

18         **THE COURT:**  All right.  But since then your son hasn't

19   been coming to you and giving you updates or anything like

20   that?

21         **PROSPECTIVE JUROR WONG:**  No.  No.

22         **THE COURT:**  Anybody else see or hear anything about

23   this case before today?

24                        (No response.)

25         **THE COURT:**  Okay.  Question Number 9:  Any problem

1   with English?

2                          (No response.)

3         THE COURT:  And, finally, anything else?  Last-call

4   question.

5       Okay.  Both of you can --

6         PROSPECTIVE JUROR WONG:  I also have something on

7   Number 10.

8         THE COURT:  Yeah.  So let's start with Mr. Gruzynski.

9         PROSPECTIVE JUROR GRUZYNSKI:  Sorry.  I meant

10  Number 10, yeah.  I also have Number 10.

11        THE COURT:  This is the last call, catchall.

12      Yeah, we do those over here.  Okay?  So let me get set up

13  and you can come on down, and we'll take it from there.

14      (The following proceedings were heard at the sidebar:)

15        THE COURT:  Remind me who you are.

16        PROSPECTIVE JUROR PEREZ:  Shaneen Perez.

17        THE COURT:  Perez.  Okay.  What's the issue?

18        PROSPECTIVE JUROR PEREZ:  This is for Number 10.  This

19  is just, like, my availability.  I'm a full-time student at

20  City College of San Francisco, and I have classes Monday

21  through Fridays, so it would be difficult for me to attend.

22      And then I also work part time at an after-school program

23  for South City of San Francisco as a recreation leader.

24        THE COURT:  Is it the end of the semester right now

25  for your City College classes?

1    **PROSPECTIVE JUROR PEREZ:**  I guess.  We're, like, kind
2    of in midterms right now but, yeah.
3    **THE COURT:**  But between now and the end of the year,
4    it's like the end of the semester?
5    **PROSPECTIVE JUROR PEREZ:**  Yeah.  There's still --
6    **THE COURT:**  Exams and all that?
7    **PROSPECTIVE JUROR PEREZ:**  Yeah.
8    **THE COURT:**  You're full-time at the school?
9    **PROSPECTIVE JUROR PEREZ:**  Yes.
10    **THE COURT:**  Full-time?
11    **PROSPECTIVE JUROR PEREZ:**  Yes.
12    **THE COURT:**  What are you majoring in.
13    **PROSPECTIVE JUROR PEREZ:**  Social work.
14    **THE COURT:**  Okay.  Thank you.
15        (Prospective Juror Perez leaves sidebar.)
16    **THE COURT:**  Okay.  Mr. Gruzynski.
17    **PROSPECTIVE JUROR GRUZYNSKI:**  Your Honor, I request an
18    excuse.  I have two kids at home, age 1 and 3, that need
19    daycare from 7:00.  My wife drops them off.  I need to pick
20    them up 3:00 o'clock Monday through --
21    **THE COURT:**  Every day?
22    **PROSPECTIVE JUROR GRUZYNSKI:**  Every day because
23    they're small ones.
24    **THE COURT:**  And there's nobody else who can help you
25    for a couple weeks?

**SIDEBAR**

1    **PROSPECTIVE JUROR GRUZYNSKI:**  I only have her.  We

2    live together.

3    **THE COURT:**  Okay.  And you said about 5 percent of

4    Google stock too?

5    **PROSPECTIVE JUROR GRUZYNSKI:**  5 percent depends on how

6    it behaves.

7    **THE COURT:**  Of course.

8    **PROSPECTIVE JUROR GRUZYNSKI:**  Yeah, 5 percent.

9    **THE COURT:**  That's a pretty reasonably big holder.

10   **PROSPECTIVE JUROR GRUZYNSKI:**  Yeah.  I would say for

11   me it's significant.

12   **THE COURT:**  All right.  Okay.  Thank you.

13   (Prospective Juror Gruzynski leaves sidebar.)

14   **THE COURT:**  I think there was one more person.

15   Yes.  Come on down.

16   **THE CLERK:**  Two more.

17   **THE COURT:**  Remind me your name.

18   **PROSPECTIVE JUROR RAHMAN:**  Maryam Rahman, R-A-H-M-A-N.

19   **THE CLERK:**  She's in the first 10.

20   **THE COURT:**  Oh, you've been there for a while.

21   **PROSPECTIVE JUROR RAHMAN:**  Yeah.

22   **THE COURT:**  Yeah.  What's the issue?

23   **PROSPECTIVE JUROR RAHMAN:**  So I actually work

24   full-time, and this is a five-week case and so I can't take

25   more than, like, a week or two off for work.  And also it's a

1  two and a half hour trip each way --

2          **THE COURT:**  Where do you live?

3          **PROSPECTIVE JUROR RAHMAN:**  -- with the traffic.

4          **THE COURT:**  Where do you live?

5          **PROSPECTIVE JUROR RAHMAN:**  Antioch.

6          **THE COURT:**  Antioch.  So does Ms. Clark.

7      You know, legally your employer can't take your job away

8  from you for jury service.

9          **PROSPECTIVE JUROR RAHMAN:**  I have deadlines.  Just

10  before Wednesday they gave me a deadline I have to do.  So it's

11  not --

12          **THE COURT:**  What do you do for pest control?

13          **PROSPECTIVE JUROR RAHMAN:**  I'm assistant branch

14  manager.

15          **THE COURT:**  Okay.  All right.  I understand, but

16  everybody is in that same position.  And I can send a letter to

17  your job.  You're legally protected, and I can send a letter to

18  them if you need me to do that.  I'm happy to do that.  I do

19  that with some frequency.

20          **PROSPECTIVE JUROR RAHMAN:**  I do have a deadline I have

21  to meet, so it's a little tough.  They just gave it to me on

22  Wednesday before I came.

23          **THE COURT:**  Okay.  Wednesday -- what's the Wednesday

24  deadline?

25          **PROSPECTIVE JUROR RAHMAN:**  They just gave me the

1   deadline yesterday, but it's due by November 10th.

2           **THE COURT:**  We're not starting till the 6th.  So

3   you've got all day tomorrow and, you know, we're done at 3:30

4   every day.

5           **PROSPECTIVE JUROR RAHMAN:**  Yeah.  I mean, it's really

6   difficult for me.

7           **THE COURT:**  I'm not going to excuse you on that

8   grounds because everybody is in the same situation, so...

9       Okay.  All right.

10          **PROSPECTIVE JUROR RAHMAN:**  I mean, I hope it's

11  considered.

12              (Prospective Juror Rahman leaves sidebar.)

13          **THE COURT:**  Okay.  Anybody else?  Your name again?

14          **PROSPECTIVE JUROR CRUZ:**  Shantel Cruz.  Cruz is my

15  last name.

16          **THE COURT:**  Cruz?

17          **PROSPECTIVE JUROR CRUZ:**  Yes.  I'm Seat Number 8.

18          **THE COURT:**  Will you show me?  Where's your name?

19          **PROSPECTIVE JUROR CRUZ:**  Right here.

20          **THE COURT:**  Sorry.  I missed that.

21      You've been here for a while.

22          **PROSPECTIVE JUROR CRUZ:**  Yeah.

23      It's because I'm a nurse so I deal with infection control

24  in my building.

25          **THE COURT:**  What?

1      **PROSPECTIVE JUROR CRUZ:**  I deal with infection control

2  in my building.  I'm the only one who, like, handles that.

3      **THE COURT:**  Where are you a nurse?

4      **PROSPECTIVE JUROR CRUZ:**  In a skilled nursing facility

5  in San Bruno.

6      **THE COURT:**  What's the name of it?

7      **PROSPECTIVE JUROR CRUZ:**  San Bruno Skilled Nursing.

8      **THE COURT:**  Okay.  So there's plenty of nurses there;

9  right?

10     **PROSPECTIVE JUROR CRUZ:**  Yeah, but my position,

11 because I'm infection control preventionist, we're dealing with

12 flu season, so I don't think anybody will cover.

13     **THE COURT:**  It's supposed to be mild this year.  I saw

14 a story saying it's mild this year.

15     Everybody's got that same situation, Ms. Cruz.

16 Everybody's got things to do, so I can't excuse you on that

17 ground.  Okay?

18     **PROSPECTIVE JUROR CRUZ:**  Okay.

19         (Prospective Juror Cruz leaves sidebar.)

20     **THE COURT:**  All right.  Thank you.

21     **THE CLERK:**  There's one more.

22     **THE COURT:**  Come in.

23     **PROSPECTIVE JUROR WONG:**  This is a question.  I'm a

24 federal employee and I have use-or-lose about three more weeks

25 to go, so I wonder how that works.

**SIDEBAR**

1          THE COURT:  Three more works for?

2          PROSPECTIVE JUROR WONG:  Annual leave because I have

3  to use it by the end of December.

4          THE COURT:  Okay.

5          PROSPECTIVE JUROR WONG:  So if I serve for five weeks,

6  how would that affect my vacation time?

7          THE COURT:  I don't know.

8          PROSPECTIVE JUROR WONG:  That's why I asked someone in

9  that room.

10          THE COURT:  You'd get paid for it.

11          PROSPECTIVE JUROR WONG:  I know I get paid.

12          THE COURT:  What agency do you work?

13          PROSPECTIVE JUROR WONG:  I work U.S. Custom and Border

14  Protection.

15          THE COURT:  Right downstairs?

16          PROSPECTIVE JUROR WONG:  555 Battery Street.

17          THE COURT:  On Battery Street?

18          PROSPECTIVE JUROR WONG:  I asked someone there.  They

19  asked me -- we're all federal employees.  They couldn't answer.

20          THE COURT:  Do you have any idea?

21          THE CLERK:  You may give a note.

22          THE COURT:  You won't lose it.  I'll give you a note.

23          PROSPECTIVE JUROR WONG:  Okay.  All right.

24          THE COURT:  Is that okay?

25          PROSPECTIVE JUROR WONG:  Yeah.

**SIDEBAR**

1          **THE COURT:**  I send letters to people all the time.

2   Just remind me.

3                    (Prospective Juror Wong leaves sidebar.)

4          **THE COURT:**  Is that it?

5          **THE CLERK:**  So what are we doing?

6          **THE COURT:**  We're going to hear from the plaintiff.

7          **MR. BORNSTEIN:**  I temporarily lost track who we have;

8   we had so many come through.

9          **THE COURT:**  What do you want to do about Ms. Perez,

10  the student?

11         **MS. BELL:**  I think she should be excused for hardship.

12         **THE COURT:**  I'll make that a Court one.

13     Okay.  All right.  Next.

14         **MR. BORNSTEIN:**  Nothing else from us, Your Honor.

15         **THE COURT:**  You good?

16         **MR. BORNSTEIN:**  Yeah.

17         **MS. BELL:**  We move for cause on Mr. Wong.  He's in

18  Seat 8, I believe, or Seat 9.

19         **THE CLERK:**  9.

20         **THE COURT:**  Mr. Wong.  Last peremptory.

21         **MS. BELL:**  No.  We move for cause.  The

22  questionnaire -- his questionnaire response said that the

23  Google Play Store and the Apple App Store have monopoly power.

24         **THE COURT:**  Mr. Wong, I'm sorry, can you come join me

25  again?

**SIDEBAR**

1          **MR. BORNSTEIN:**  And, Your Honor, were you intending to

2      excuse the hardship with the gentleman with childcare issues?

3          **THE COURT:**  I think so.  He also has 5 percent Google.

4      Mr. Wong, in your questionnaire you made a comment about

5      Apple-Google monopoly power.

6          **PROSPECTIVE JUROR WONG:**  Yes, I do.

7          **THE COURT:**  What do you mean by that?

8          **PROSPECTIVE JUROR WONG:**  There's only two choices

9      right at the time, but I think the Google lawyer explained it

10     how the Android store is kind of open so it did change my mind.

11         **THE COURT:**  It changed your mind.  Are you able to

12     hear the evidence in this case and not assume either party has

13     monopoly power?

14         **PROSPECTIVE JUROR WONG:**  At this point, yes.

15         **THE COURT:**  Great.  You're comfortable with that?

16         **PROSPECTIVE JUROR WONG:**  I still think Apple is a

17     monopoly, but the way --

18         **THE COURT:**  You're open minded about Google?

19         **PROSPECTIVE JUROR WONG:**  Right.  Right.  That's

20     correct.

21         **THE COURT:**  Great.  Thank you.

22     I'm not going to exercise for cause Mr. Wong.  Cause is

23     denied.

24     Okay.  I will excuse Mr. Gruzynski for hardship.  Are you

25     okay with that?

1          MS. BELL:  Yes, Your Honor.

2          THE COURT:  Okay.  All right.  You're good.

3     Anything?

4          MS. BELL:  Your Honor, we will use our last peremptory

5     on Mr. Wong.

6          THE COURT:  All right.  Great.

7          MR. BORNSTEIN:  And I apologize.  Your Honor, you

8     excused Ms. Perez, the student?

9          THE COURT:  Yes, I'm doing her and Mr. Gruzynski.

10         MR. BORNSTEIN:  Understood.

11     (The following proceedings were heard in open court:)

12         THE COURT:  Mr. Gruzynski and Ms. Perez and Mr. Wong,

13     you can go back to the jury office.

14     (Prospective Jurors Suavic Gruzynski, Shaneen Perez, and

15     Yin Wong excused.)

16         THE COURT:  Let's get our next three, please.

17         THE CLERK:  Alexander Bellecci, B-E-L-L-E-C-C-I.  If

18     you'll take Seat Number 2.

19     Joel Calderon, C-A-L-D-E-R-O-N.  If you'll take Seat

20     Number 4.

21     Ryan Carlin, C-A-R-L-I-N.  If you'll take Seat Number 9.

22         THE COURT:  Okay.  Before we go through the questions,

23     let's all just stand up and stretch for a second.  Okay?  We've

24     been sitting for a while.

25     Anybody dehydrated in the jury box?  No.

1    Okay.  I do that during the trial too.  I don't want

2  people to sit too long.

3    Okay.  I'll tell you what, for the three of you just

4  joined us, we've gone over the questions several times, let me

5  just ask you -- I'm just going to call on you each, and you can

6  tell me if you have a note.  I'll start with Mr. Bellecci.

7         **PROSPECTIVE JUROR BELLECCI:**  All good.

8         **THE COURT:**  All good.  Okay.

9    Mr. Calderon, all good?  No answers?  Okay.  Wow.

10        **PROSPECTIVE JUROR CALDERON:**  Number 10.

11        **THE COURT:**  Which one?

12        **PROSPECTIVE JUROR CALDERON:**  Number 10.

13        **THE COURT:**  Okay.  Number 10?  That's good.  That's

14 the only one?

15        **PROSPECTIVE JUROR CALDERON:**  Yes.

16        **THE COURT:**  Okay.  Before we go -- and, Mr. Carlin,

17 any -- all good?  Totally good?

18    Okay.

19    Why don't you come down and join us, Mr. Calderon.

20    (The following proceedings were heard at the sidebar:)

21        **THE COURT:**  Welcome.

22        **PROSPECTIVE JUROR CALDERON:**  Yes.  I'm scared I don't

23 understand the situation because I don't know the technology.

24        **THE COURT:**  You're worried about English?

25        **PROSPECTIVE JUROR CALDERON:**  I understand only basic,

1   but --

2           THE COURT:  Basic English?

3           PROSPECTIVE JUROR CALDERON:  Yes.

4           THE COURT:  I see.

5           PROSPECTIVE JUROR CALDERON:  It's hard for me to

6   explain.

7           THE COURT:  Okay.

8           PROSPECTIVE JUROR CALDERON:  Sometimes I ask my kids

9   to explain to me what's going on, so...

10          THE COURT:  I mean, you are a U.S. citizen now; right?

11          PROSPECTIVE JUROR CALDERON:  Yes.

12          THE COURT:  So where do you work?

13          PROSPECTIVE JUROR CALDERON:  At the U.S. Postal

14  Service.

15          THE COURT:  USPS?

16          PROSPECTIVE JUROR CALDERON:  Yes.

17          THE COURT:  You speak English there; right?

18          PROSPECTIVE JUROR CALDERON:  I understand some of it.

19          THE COURT:  You've got to do more than that.  You've

20  got a job at the postal office.  You've got to speak English.

21          PROSPECTIVE JUROR CALDERON:  Just the customer and

22  deliver the mail.

23          THE COURT:  You're a mailman?

24          PROSPECTIVE JUROR CALDERON:  Yes.

25          THE COURT:  Not the counter people?

1          **PROSPECTIVE JUROR CALDERON:**  No.

2          **THE COURT:**  Okay.  All right.  Thank you.  You can go

3   back.  Thanks.

4          **PROSPECTIVE JUROR CALDERON:**  Thank you.

5              (Prospective Juror Carlin leaves sidebar.)

6          **MR. BORNSTEIN:**  We would like to excuse Mr. Carlin.

7          **THE COURT:**  Mr. Carlin?

8          **MR. BORNSTEIN:**  Yes.

9          **THE COURT:**  All right.

10          **MR. BORNSTEIN:**  Second peremptory.

11          **THE COURT:**  Second one.  Okay.

12          **THE CLERK:**  You don't have any more preemps.

13          **THE COURT:**  No, they do.  They're out.  He's the

14   plaintiff.

15          **MR. BORNSTEIN:**  We had two and just exercised one.

16          **THE COURT:**  Okay.  I will -- I think -- I have the

17   list.

18        I think for Mr. Calderon maybe.

19          **MR. BORNSTEIN:**  I'm content to let Mr. Calderon go.

20          **THE COURT:**  You want to keep him?

21          **MS. BELL:**  I do want to keep him.  You think it's

22   enough?

23          **THE COURT:**  I do, actually.

24          **MR. BORNSTEIN:**  That's fine.

25          **THE COURT:**  Last peremptory.

1          MS. BELL:  I don't have any.

2          THE COURT:  You're done?

3          MS. BELL:  Yes.

4          THE COURT:  So just one person, Carlin.

5          MR. BORNSTEIN:  Yes.  We're keeping Mr. Calderon?

6          THE COURT:  Yeah.

7          MR. BORNSTEIN:  Okay.

8      (The following proceedings were heard in open court:)

9          THE COURT:  Okay.  Mr. Carlin, you can return to the

10   jury office.

11           (Prospective Juror Ryan Carlin excused.)

12         THE COURT:  And let's call up our next person, please.

13         THE CLERK:  Rodney Hankins, H-A-N-K-I-N-S.  You'll

14   take Seat Number 9.

15         THE COURT:  Okay.  Mr. Hankins, can I just ask you the

16   question numbers?  Do you have any notes to any of the

17   questions?

18         PROSPECTIVE JUROR HANKINS:  Yeah.  For Number 2.

19         THE COURT:  Number 2, that's Google ties, yes.

20         PROSPECTIVE JUROR HANKINS:  Yes.  In my 401K plan, one

21   of my mutual funds owns Google.

22         THE COURT:  Okay.  So it's one of many, many stocks in

23   that mutual fund?

24         PROSPECTIVE JUROR HANKINS:  Yeah.  Google is one of

25   the largest -- largest holdings in that one.

1          **THE COURT:**  Okay.  And --

2          **PROSPECTIVE JUROR HANKINS:**  The technology.

3          **THE COURT:**  It's a tech fund.  Okay.

4      All right.  Any other responses?

5          **PROSPECTIVE JUROR HANKINS:**  Yeah.  I work for a

6  factory automation company, so we manufacture robotics.

7          **THE COURT:**  Oh.  Which company do you work for?

8          **PROSPECTIVE JUROR HANKINS:**  It's called Yasakawa.  So

9  our headquarters is in Japan, U.S. headquarters is in Illinois,

10  and we have a small office out here.

11          **THE COURT:**  Oh, okay.  Just out of curiosity, what

12  kind of robots are they?

13          **PROSPECTIVE JUROR HANKINS:**  Wafer handling for

14  semiconductor manufacturing.

15          **THE COURT:**  Oh, okay.  So they're like assembly-line

16  robots on a production line?

17          **PROSPECTIVE JUROR HANKINS:**  Yeah.  They go into like a

18  chamber, pull out wafers --

19          **THE COURT:**  Oh, okay.

20          **PROSPECTIVE JUROR HANKINS:**  -- and then goes into

21  other processes.

22          **THE COURT:**  Oh, okay.  All right.  And what do you do?

23  And you're a product manager there?

24          **PROSPECTIVE JUROR HANKINS:**  Yeah.  Engineering product

25  manager.

1          THE COURT:  Okay.  Are you dealing with apps or
2    anything like that?

3          PROSPECTIVE JUROR HANKINS:  Apps, no.

4          THE COURT:  Okay.

5          PROSPECTIVE JUROR HANKINS:  The one other thing I
6    guess going back to --

7          THE COURT:  Just the number.  Just give me the
8    question number.  Which question?

9          PROSPECTIVE JUROR HANKINS:  2C.

10         THE COURT:  2C.  Oh, okay.  Yeah, we talked about your
11   Google.

12         PROSPECTIVE JUROR HANKINS:  So part of our sales team
13   has actually been into Google for potential opportunities.

14         THE COURT:  Okay.

15         PROSPECTIVE JUROR HANKINS:  Not me personally --

16         THE COURT:  Not you personally?

17         PROSPECTIVE JUROR HANKINS:  -- but other people in our
18   company.

19         THE COURT:  All right.  And when was the last time
20   there was one of those visits?  Do you know?

21         PROSPECTIVE JUROR HANKINS:  I don't remember.  We
22   record the visit in a database, but I didn't look at the dates.

23         THE COURT:  All right.  But it wasn't this year?

24         PROSPECTIVE JUROR HANKINS:  I would say within the
25   past three years.

1    **THE COURT:**  In the past -- but you personally weren't

2    involved in those meetings?

3    **PROSPECTIVE JUROR HANKINS:**  No.

4    **THE COURT:**  Okay.  Good.

5    Anything else?

6    **PROSPECTIVE JUROR HANKINS:**  No.  I think I covered it.

7    **THE COURT:**  Great.  Thank you.

8    All right.  Let me talk to the lawyers and be right back.

9    (The following proceedings were heard at the sidebar:)

10   **MR. BORNSTEIN:**  I have a question, Your Honor, for

11   cause for Mr. Hankins.  I have an issue with a potential cause

12   for Mr. Hankins, which is in his questionnaire he indicated he

13   said anti-abortion and no homosexuality, and I have a few gay

14   members --

15   **THE COURT:**  What does this have to do with it?

16   **MR. BORNSTEIN:**  This is a potential prejudice issue.

17   **THE COURT:**  Epic is not an abortion --

18   (Official Reporter clarification.)

19   **MR. BORNSTEIN:**  I apologize.

20   He said no homosexuality.

21   **THE COURT:**  What does that have to do with this case,

22   though?

23   **MR. BORNSTEIN:**  I do have gay team members, including

24   myself, Your Honor.

25   **THE COURT:**  How are they going to know?

1          **MR. BORNSTEIN:**  It's a fair question.  I have to worry

2     about it; but if not, I will exercise a peremptory of

3     Mr. Hankins and save the trouble.

4          **THE COURT:**  All right.  Do a peremptory.  It's your

5     last one.

6          **MR. BORNSTEIN:**  I know.

7          **THE COURT:**  Yep.  Okay.

8          **MR. BORNSTEIN:**  Thank you, Your Honor.

9        (The following proceedings were heard in open court:)

10         **THE COURT:**  Okay.  Thank you, Mr. Hankins.  You can go

11    back to the jury office.

12          (Prospective Juror Rodney Hankins excused.)

13         **THE COURT:**  And let's have our next person, please.

14         **THE CLERK:**  Kelly Thompson, T-H-O-M-P-S-O-N.  Please

15    take Seat Number 9.

16         **THE COURT:**  Okay.  Ms. Thompson, just give me the

17    question number before an answer.

18         **PROSPECTIVE JUROR THOMPSON:**  Sure.  So Question 2,

19    financial dealings, I own Google stock through an index fund.

20    Not supermaterial, but through index retirement funds.

21         **THE COURT:**  So you own it through a fund, you don't

22    own actual --

23         **PROSPECTIVE JUROR THOMPSON:**  not directly.

24         **THE COURT:**  Okay, great.  Okay.

25         **PROSPECTIVE JUROR THOMPSON:**  And then Question 3 I

1  think you listed the witnesses.

2          **THE COURT:**  Yes.

3          **PROSPECTIVE JUROR THOMPSON:**  I do believe that I had

4  meetings with Andy Rubin from Google in my --

5          **THE COURT:**  Just one second.  Hold on.  Let me just

6  make sure we're clear here.

7      Andy Rubin, who is a former senior vice president of

8  mobile and digital content at Google.  Is that the man?

9          **PROSPECTIVE JUROR THOMPSON:**  Yeah, that -- it's not a

10 personal acquaintance, but there would have been a professional

11 meeting during my tenure at Walmart e-Commerce.

12         **THE COURT:**  At Walmart e-Commerce?  Do you know when

13 that meeting would have happened just roughly?

14         **PROSPECTIVE JUROR THOMPSON:**  Sometime between

15 2013-2014.  I don't remember exactly.  It's pretty vague.

16         **THE COURT:**  So A good 10 years ago?

17         **PROSPECTIVE JUROR THOMPSON:**  Yes.

18         **THE COURT:**  And you haven't seen or heard from

19 Mr. Rubin since?

20         **PROSPECTIVE JUROR THOMPSON:**  No, he's not a personal

21 acquaintance.

22         **THE COURT:**  Now you said Walmart eCommerce.  Are you

23 doing apps?

24         **PROSPECTIVE JUROR THOMPSON:**  Yeah.  So Questions 4

25 and 5, Walmart e-Commerce runs all of its -- you know, all of

 1   its operations out of here, Walmart Labs.  So we're a retail

 2   company, but all of the heavy tech presence was done out here.

 3       We did develop apps, and as my -- I was a senior vice

 4   president, a chief operating officer, both at Walmart e-Com or

 5   at walmart.com sams.com -- samsclub.com, so we had several

 6   apps.  We had an app development team, and it was part of my

 7   purview oversight of my product development roadmap, the

 8   development, the features and functionality, as well as the

 9   distribution because they drove sales.

10       **THE COURT:**  Let me ask you this:  Are you working

11   there today?

12       **PROSPECTIVE JUROR THOMPSON:**  No.  I left in early

13   2019.

14       **THE COURT:**  Okay.  So you left about four years ago.

15       Okay.  And since then, have you had anything to do with

16   the app world at all?

17       **PROSPECTIVE JUROR THOMPSON:**  Yes.  I serve as a

18   strategic adviser to a few small-time developers that work --

19   most of their business ideas are manifested through apps.  One

20   is Quest Story and the other one is Open Wardrobe, but not a

21   technical adviser; more of a strategic adviser on business

22   model, product market fit, et cetera.

23       **THE COURT:**  Does that device touch on app stores or

24   app distribution in any way?

25       **PROSPECTIVE JUROR THOMPSON:**  It touches on app

1    distribution, yes, and --yeah.

2         **THE COURT:**  Does it touch specifically on either Apple

3    App Store or Google Play?

4         **PROSPECTIVE JUROR THOMPSON:**  Yeah.  Strategically

5    which one are you going to launch on first, where are you going

6    to place your resources, that kind of thing, which one is

7    better for business.

8         **THE COURT:**  Okay.  All right.  So you're deep in the

9    app world; is that what you're saying?

10        **PROSPECTIVE JUROR THOMPSON:**  Relative to a lot of my

11   former colleagues, no, but relatively speaking, probably, yes.

12        **THE COURT:**  All right.  Any other answers?

13        **PROSPECTIVE JUROR THOMPSON:**  Question 8, I read the

14   *Wall Street Journal* pretty --

15        **THE COURT:**  Okay.  So that's fine.  So you saw some

16   coverage in the journal?

17        **PROSPECTIVE JUROR THOMPSON:**  I believe so.

18        **THE COURT:**  Okay.  Any other questions?

19        **PROSPECTIVE JUROR THOMPSON:**  No.

20        **THE COURT:**  Okay.

21      All right.  We'll talk with the lawyers, and I'll be right

22   back.

23      (The following proceedings were heard at the sidebar:)

24        **THE COURT:**  You can say something in the minute.  Go

25   ahead.

1          Wait.  He's done.  You're both done.

2               **MR. BORNSTEIN:**  We have a for-cause challenge for

3    Ms. Thompson.

4               **MS. BELL:**  So do we.

5               **MR. BORNSTEIN:**  It's the questionnaire, not what she

6    just said now.

7               **THE COURT:**  Oh, questionnaire.

8               **MR. BORNSTEIN:**  She indicated negative feelings about

9    both companies.  Against Epic --

10              **THE COURT:**  It's an equal opportunity.

11              **MR. BORNSTEIN:**  As to Epic, she indicated that her son

12   played obsessively and was opposed of the addictive qualities

13   of the game.

14              **THE COURT:**  Are you worried about a different thing?

15              **MS. BELL:**  A different thing.  She knows Andy Rubin,

16   who left Google due to sexual misconduct.  There was publicity

17   about the exit package.  It sounds like if she remembers him --

18              **THE COURT:**  Let's call her over for a minute.

19        Ms. Thompson, can you join us for a minute?

20              **PROSPECTIVE JUROR THOMPSON:**  Yes, sir.

21              **THE COURT:**  Just a couple questions.

22        So this will seem random, but do you have any idea why

23   Andy Rubin left Google?

24              **PROSPECTIVE JUROR THOMPSON:**  No.  I don't know him

25   that well.

SIDEBAR

1           **THE COURT:**  So you don't know anything about him?

2           **PROSPECTIVE JUROR THOMPSON:**  No, I don't.

3           **THE COURT:**  Now in your questionnaire, that written

4    thing, you expressed some concern about your son playing too

5    much Fortnite.

6           **PROSPECTIVE JUROR THOMPSON:**  Yes.  That was a source

7    of tension in the household and unanticipated bills associated

8    with the app charges.

9           **THE COURT:**  Are you over that now?

10          **PROSPECTIVE JUROR THOMPSON:**  I have --

11          **THE COURT:**  I don't need the details.

12          **PROSPECTIVE JUROR THOMPSON:**  I have opinions.

13          **THE COURT:**  Is it still a big issue now?

14          **PROSPECTIVE JUROR THOMPSON:**  No.  The Fortnite craze

15   has mellowed.

16          **THE COURT:**  What are your opinions?

17          **PROSPECTIVE JUROR THOMPSON:**  I feel it's a bit

18   predatory just based on psychologic -- like the understanding

19   of human psychologic and addiction, and I feel like they did --

20   actually were predatory with kids in understanding what they

21   were doing.

22          **THE COURT:**  This is an antitrust case.  It's just

23   business.  Are you going to be able to put those opinions aside

24   and just listen to the merits?

25          **PROSPECTIVE JUROR THOMPSON:**  I'd like to think I'm a

1    reasonable person.

2        I did have a question about the length of the trial.  I'm

3    not sure if this is the time.  So I serve --

4        **THE COURT:**  Before you do that, are you able -- in

5    this case do you believe --

6        **PROSPECTIVE JUROR THOMPSON:**  I believe --

7        **THE COURT:**  You've got to let me finish.

8        Are you able to put aside any ideas you have about, you

9    know, Fortnite being addictive and just focus on the antitrust

10   issues in this case?

11       **PROSPECTIVE JUROR THOMPSON:**  Yes.  As the lawyer -- I

12   believe I could.

13       **THE COURT:**  All right.

14       **PROSPECTIVE JUROR THOMPSON:**  So I serve as a director

15   on two publicly traded companies, and so I have quarterly

16   meetings coming up on November 20th.

17       **THE COURT:**  What time on the 20th?

18       **PROSPECTIVE JUROR THOMPSON:**  11:00 to 4:00.  I believe

19   that's a Monday.  So it doesn't work with the timing.  And I

20   also have travel for a quarterly meeting in December.

21       **THE COURT:**  When in December?

22       **PROSPECTIVE JUROR THOMPSON:**  December 11th and

23   probably start on the 8th.  It's the 11th through the 14th, so

24   it butts up a little bit to the timeline that you gave.

25       In every annual report, the director meeting attendance is

1  listed, and I only serve to the shareholders who either choose

2  to elect or reelect me.

3          **THE COURT:**  What company?

4          **PROSPECTIVE JUROR THOMPSON:**  First Hawaiian.

5          **THE COURT:**  First Hawaiian?

6          **PROSPECTIVE JUROR THOMPSON:**  Yeah.  It's a holding

7  company for First Hawaii Bank and a.k.a Brands.  It's a digital

8  apparel company with a few physical locations.

9          **THE COURT:**  Okay.

10          **PROSPECTIVE JUROR THOMPSON:**  Anything else?

11          **THE COURT:**  No.  That's all right.  Thanks.

12          (Prospective Juror Thompson leaves sidebar.)

13          **THE COURT:**  All right.  I will excuse her mainly

14  because I'm concerned about the -- I appreciate her interest in

15  trying to put aside, but I'm not sure she's going to be able to

16  put aside the animosity.

17      (The following proceedings were heard in open court:)

18          **THE COURT:**  Okay.  Ms. Thompson, you can return to the

19  jury office please.

20      Let's call our next person up.

21          **THE CLERK:**  Terri Archibald, A-R-C-H-I-B-A-L-D.

22  Please take Seat Number 9.

23          **THE COURT:**  Okay.  Ms. Archibald, welcome.  The

24  microphone is conveniently to your left or to your right.

25  Yeah, okay.

1      All right.  Now, if you could, just give me the question

2  number first before any answers, please.

3           **PROSPECTIVE JUROR ARCHIBALD:**  Sure.

4      So probably Number 7.

5           **THE COURT:**  Number 7.  Oh, yes, app creation.  Okay.

6           **PROSPECTIVE JUROR ARCHIBALD:**  Right.  So just to

7  clarify, my background is as a recruiter, so I hire for

8  companies.

9           **THE COURT:**  Oh.

10          **PROSPECTIVE JUROR ARCHIBALD:**  So scientific and

11 technology.

12     And my ex and I had our own custom application development

13 company called Righthinking for 20 years.  We dissolved that in

14 2015.

15          **THE COURT:**  Custom what company?

16          **PROSPECTIVE JUROR ARCHIBALD:**  The company name was

17 Righthinking, one word, one T, R-I-G-H-T.  We had it for

18 20 years.  It was more custom application development, so it

19 was more for larger companies.  We developed, you know, like

20 financial apps, things like that, for Schwab and Safeway and --

21          **THE COURT:**  Oh, so you personally have created and

22 developed apps?

23          **PROSPECTIVE JUROR ARCHIBALD:**  I am not a developer.

24 I'm a recruiter.  So I did all the hiring for our company.

25          **THE COURT:**  Oh, I see.  So you hired the app

1    developers?

2              **PROSPECTIVE JUROR ARCHIBALD:**  Yes.

3              **THE COURT:**  But you personally were not involved in

4    actually developing or creating an app?

5              **PROSPECTIVE JUROR ARCHIBALD:**  Not creating, no.

6              **THE COURT:**  Okay.  And was your husband an app

7    developer?

8              **PROSPECTIVE JUROR ARCHIBALD:**  Yes.

9              **THE COURT:**  So he actually made the apps or help make

10   the apps?

11             **PROSPECTIVE JUROR ARCHIBALD:**  Him and others.  We had

12   a whole team.

13             **THE COURT:**  Is that company still around?

14             **PROSPECTIVE JUROR ARCHIBALD:**  No.  We dissolved it in

15   2015.

16             **THE COURT:**  2015.  Okay.  So it's been at least

17   eight years since you've been involved with that?

18             **PROSPECTIVE JUROR ARCHIBALD:**  Yes, but I'm still a

19   recruiter and I still hire.

20             **THE COURT:**  And I think you said this is your

21   ex-husband now; is that right?

22             **PROSPECTIVE JUROR ARCHIBALD:**  Sure is.  Permanently.

23                          (Laughter)

24             **THE COURT:**  When did that happen?  Recently?

25             **PROSPECTIVE JUROR ARCHIBALD:**  2010.

 1           **THE COURT:**  Oh, okay.  So husband and company are long

 2   gone?

 3           **PROSPECTIVE JUROR ARCHIBALD:**  Yes.

 4           **THE COURT:**  All right.  Okay.

 5           **PROSPECTIVE JUROR ARCHIBALD:**  Yeah, and it's not

 6   coming back.

 7           **THE COURT:**  For recruiting you're filling open

 8   positions for companies.  Does that include Google or Epic?

 9           **PROSPECTIVE JUROR ARCHIBALD:**  No, but I have worked

10   for a company called Castlight Health, which had developed an

11   app for healthcare.

12           **THE COURT:**  Now, have you actually placed app

13   developers in jobs?

14           **PROSPECTIVE JUROR ARCHIBALD:**  Yes.  I have quite a

15   network.

16           **THE COURT:**  All right.  But as a recruiter, not as an

17   engineer?

18           **PROSPECTIVE JUROR ARCHIBALD:**  As a recruiter.

19           **THE COURT:**  Okay.  Any other responses?

20           **PROSPECTIVE JUROR ARCHIBALD:**  No.  I mean, I -- the

21   list of people you listed, I mean, I don't recognize any of

22   those names.  They might be in my network, but I don't

23   recognize them.

24           **THE COURT:**  No, no.  Only if you actually --

25           **PROSPECTIVE JUROR ARCHIBALD:**  No.

PROCEEDINGS

1       **THE COURT:**  -- got a bell rung.

2    Okay.  All right.  Anything else?  That's it?

3    All right.  Let me just talk with the lawyers here one

4  moment.  We'll be right back.

5    (The following proceedings were heard at the sidebar:)

6       **MR. BORNSTEIN:**  We're done.  I think we're good.

7       **THE COURT:**  We're good.

8       **MS. BELL:**  All right.

9       **THE COURT:**  All right.

10    (The following proceedings were heard in open court:)

11       **THE COURT:**  Okay.  Everyone in the gallery, thank you

12  for coming in.  You may return to the jury office.

13    I'm going to ask you one thing, because we are a

14  United States entity, we save and collect our pens and pads.

15  So there should be a box --

16       **THE CLERK:**  Just bring them to the front.

17       **THE COURT:**  Bring them to the front because we need

18  them for our next case please.

19                        (Pause in proceedings.)

20       **THE COURT:**  Okay.  Congratulations, you are now the

21  members of the jury.  Ms. Clark is going to take you to the

22  back.

23    Here's what we're going to do -- I don't think they need

24  to come back, do they?

25       **THE CLERK:**  No.

1          **THE COURT:**  Okay.  Tomorrow is off.  See you Monday

2    morning.  Try to get here about quarter to 9:00.  All right?

3    We will have coffee and sugary carbohydrates and maybe a fresh

4    fruit, if we're lucky, probably along the lines of a banana.

5          And just so you know, we do provide lunch during

6    deliberations.  We don't provide it up to then.  So you will

7    have a half hour lunch.  I typically bring mine just because

8    it's kind of hard to get around the Tenderloin and there is a

9    cafeteria on the second floor.

10         But, in any event, I'll see you Monday morning at

11   9:00 a.m. or a little bit before, and we will get right into

12   the case with opening statements and our witnesses.

13         **THE CLERK:**  Can I have you-all please stand and raise

14   your right hand.

15                         (Jury sworn.)

16         **ALL:**  Yes.

17         **THE CLERK:**  Thank you.

18         **MR. BORNSTEIN:**  Your Honor, I'm sorry to interrupt,

19   but could we approach for a second?  It's something we would

20   like to talk to you about that would be useful for the jury to

21   know.

22         **THE COURT:**  Oh, okay.  Why don't you just hang for one

23   second?

24         There will be a number of instances where we're going to

25   try to make things go better and faster, and we'll have little

1   conversions like this.  So usually it ends up in a benefit for

2   you.  Okay?  So just one second.

3          (Sidebar conference heard but not reported.)

4          **THE COURT:**  All right.  In a late-breaking

5   development, we will be able to provide you with daily lunches,

6   if you wish.  Okay?  We'll work out the mechanics.

7          I wouldn't count on Monday.  Just bring in something, if

8   you would, on Monday.  But we will have a plan in effect after

9   that; and if you'd like to opt in, that would be great.  If you

10  don't want to do it, that's perfectly fine, but there will be a

11  daily lunch availability for every day of trial starting, let's

12  say, on Tuesday or Wednesday.  Okay?  I'll let you know again

13  on Monday.  So Monday you're on your own but after that, the

14  odds are good.

15         Now, I'm glad we had that break because that reminds me of

16  one very important thing.  You're going to hear this every day,

17  every day that we are together you're going to hear this.  I'm

18  going to start you off with it today and that is:

19         Now that you are a member of the jury, it is vitally

20  important, absolutely critical that you do these following

21  things:

22         Do not think about this case at all between now and Monday

23  morning.  Do not do any research.  Don't look up any news

24  articles.  Don't go online and do any searches.  Don't do any

25  background research on anybody you've seen in the court or on

1    anything you've heard about today, apps, app stores, Android,

2    phones, Epic.  Don't do anything in the way of trying to learn

3    anything about this case.  Okay?  Just put it completely out of

4    your mind.

5        If you happen to see any press coverage between now and

6    Monday morning, don't read it.  If it's a newspaper or it's

7    online, it's on TV or radio, don't listen to it.  All right?

8    It's vitally important from now on out until you reach your

9    verdict that the only information you get about this case takes

10   place within these four walls.

11       Okay.  This is a vital rule of evidence.  I'm going to

12   read you an instruction about it on Monday morning, which is a

13   formal jury instruction.

14       Typically my case is to select a jury and start on the

15   same day.  This is a little bit atypical.  We have a number of

16   big cases going on right now, so I had to do it a couple days

17   in advance.  So I'm telling you this now before you've even

18   gotten into the case, but it is essential that you do not read,

19   research, think about or talk about it to anyone.  Okay?

20       Somebody mentioned his kid had told him about the case.

21   Don't let anyone talk to you about it either.  No

22   communications.  All right?

23       From now on out, you're in a news-free bubble from any

24   source with respect to this case.

25       Okay.  I'll see you Monday morning.

PROCEEDINGS

1          **JUROR ARCHIBALD:**  I have a question.  Tuesday is

2   Election Day.  Is that a working day here?

3          **THE COURT:**  Oh, it is.

4          **JUROR ARCHIBALD:**  I'm not sure if it's a government

5   holiday that day.

6          **THE COURT:**  That's a good point.  We will talk about

7   that on Monday.  That's absolutely of course vital.  We'll have

8   to make some kind of accommodation, but we'll talk about that

9   on Monday.  All right?  But don't worry about -- you will be

10  allowed to vote, if that's what you need to do, in person,

11  yeah.

12         **JUROR KLOPP:**  Can I just ask, the week of

13  Thanksgiving, so what's the scheduling?

14         **THE COURT:**  So Monday and Tuesday.  Wednesday for the

15  rest of the week.

16     See you Monday.

17     All rise for the jury, please.

18     (Proceedings were heard out of the presence of the jury:)

19         **THE COURT:**  All right.  Take a seat.

20     All right.  We all set.  Anything plaintiffs?  You all

21  set?

22         **MR. BORNSTEIN:**  We're all set, Your Honor.

23         **THE COURT:**  Okay.  Defendants?

24         **MR. POMERANTZ:**  We're all set, Your Honor.

25         **THE COURT:**  Okay.  So work out the lunch thing.

**PROCEEDINGS**

1          I actually forgot Tuesday was Election Day.  So just think

2     about how you want to handle that.  Okay?  The polls are

3     usually open till 8:00 in California.

4          Okay.  All right.  I'll see you then.

5               **THE CLERK:**  All rise.

6          Court's in recess.

7                    (Proceedings adjourned at 12:11 p.m.)

8                    ---oOo---

9

10

11               <u>**CERTIFICATE OF REPORTER**</u>

12          I certify that the foregoing is a correct transcript

13     from the record of proceedings in the above-entitled matter.

14

15     DATE:   Thursday, November 2, 2023

16

17

18

19     _____

20          Kelly Shainline, CSR No. 13476, RPR, CRR
                  U.S. Court Reporter

21

22

23

24

25