1  LISA J. DEMSKY (State Bar No. 186006)
   Lisa.Demsky@mto.com
2  JESSICA O. LAIRD (State Bar No. 331713)
   Jessica.Laird@mto.com
3  MUNGER, TOLLES & OLSON LLP
   350 South Grand Avenue, 50th Floor
4  Los Angeles, California 90071-3426
   Telephone:     (213) 683-9100
5  Facsimile:      (213) 687-3702

6

7  *Attorneys for Non-Party Riot Games, Inc.*

8
                        UNITED STATES DISTRICT COURT
9
                       NORTHERN DISTRICT OF CALIFORNIA
10

11
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION | Case Nos.   3:21-MD-02981-JD<br>3:20-CV-05671-JD<br>3:20-CV-05761-JD<br>3:21-CV-05227-JD<br>3:22-CV-02746-JD |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>*In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD<br><br>*Epic Games, Inc. v. Google LLC et al.*, No. 3:20-cv-05671-JD | **NON-PARTY RIOT GAMES, INC'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF THE TRIAL RECORD**<br><br>Judge: Hon. James Donato |

Pursuant to Civil L.R. 7-11 and 79-5, Non-Party Riot Games, Inc. ("Riot") hereby brings this administrative motion to seal those portions of the Tuesday, November 29, 2023 trial transcripts ("Administrative Motion to Seal") that contain non-party Riot's highly confidential information. On November 27, 2023, Riot filed an administrative motion to seal portions of the deposition testimony that Riot was informed the parties planned to play from the October 27, 2023 Deposition of Mark Sottosanti ("Sottosanti Deposition") and five Exhibits thereto that contain Riot's highly confidential negotiation information, without objection from any party. Dkt. 811. The Court granted this motion orally on November 28, 2023 to the same extent it had previously granted non-party Spotify's motion, and directed Riot to that ruling for guidance as to the scope of the sealing. That evening, Riot obtained the transcript from the Spotify ruling, tailored its designations to that ruling, and provided them to the parties, requesting sealing of only five Exhibits and those portions of the deposition transcript in which counsel or the witness read directly from those Exhibits or described them in detail. On November 29, 2023, Riot was informed that pursuant to a discussion with the Court that morning while non-party Riot was not present and without an opportunity for Riot to be heard, the Sottosanti Deposition designations were played in full with Exhibits displayed in open Court.

Respectfully, Riot requests that the Court permit sealing in line with its November 28 oral ruling and grant this Administrative Motion to Seal those limited portions of the trial record and the five Exhibits in the record that reference the following categories of confidential information that align with this Court's sealing order relating to Spotify: (i) internal Riot negotiation strategy and market considerations; (ii) non-public technical capabilities and content delivery considerations; (iii) internal discussion of meetings and negotiation strategy; and (iv) internal negotiation considerations. A chart identifying the specific documents and deposition testimony in each category is at paragraph 4 in the attached Declaration of Dan Nabel ("Nabel Declaration").

Riot has narrowly tailored this request to these documents and excerpts of testimony that contain highly sensitive non-public information that would disadvantage non-party Riot Games in current, ongoing, and future negotiations, including one specific active, highly confidential negotiation, in accordance with the Court's prior Order. Riot attaches the Nabel Declaration and the Declaration of Lisa Demsky ("Demsky Declaration") in support of its Administrative Motion to Seal. For the reasons stated below, Riot requests that the Court grant this motion.

## I. RIOT'S PRIOR MOTION TO SEAL

On November 28, 2023, Riot filed an administrative motion to seal Deposition Exhibits 1221, 1222, 1226, 1227, and 1229, and portions of the Sottosanti Deposition relating to those documents. Dkt. 811; Demsky Declaration, ¶ 2. Neither Google nor Epic Games opposed that sealing request. Demsky Declaration, ¶ 2. Riot received notice Monday evening that Riot's sealing request would be raised on Tuesday, November 28, and had counsel present on November 28 to be heard. *Id.* ¶ 3. At that time, the Court ruled orally: "I'm going to do the same thing I did for Spotify. . . . It's on the transcript. Any internal, purely internal, no. Anything else, Yes, it will come in. Okay? So fees, whatever, that comes in. Anything purely internal to Riot, . . . will not come in. Look at the Spotify order. That will give you the paradigm." *Id.* ¶ 4, Ex. A at 2762:20-2763:2.

In the Spotify Order, the Court ordered the sealing of any "evidence of Spotify's internal rationales for proposals made to Google leading to the execution of the [] Agreement, Spotify's internal negotiation strategy, and Spotify's contingency planning during the negotiations in the event of an agreement was not reached will be sealed." *Id.* ¶ 5, Ex. B at 1876:2-7. On the evening of November 28, Riot narrowed the material it sought to seal, after reviewing the Spotify Order, and attempted to adhere to that paradigm. It identified for the parties' counsel the narrowed portions of the Sottosanti Deposition and Exhibits thereto that evidenced Riot's negotiation strategy, internal considerations for adopting negotiating positions, and contingency planning. *Id.* ¶ 6.

## II. COMPELLING REASONS JUSTIFY RIOT'S ADDITIONAL REQUEST TO SEAL

Portions of the trial record contain "sources of business information that might harm [Riot's] competitive standing," and compelling reasons justify their sealing. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (*quoting Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978)). The five Exhibits and accompanying portions of the Sottosanti Deposition identified in paragraph 4 of the Nabel Declaration constitute "confidential business material, marketing strategies, [and] product development plans [that] could result in improper use by business competitors seeking to replicate [Riot's] business practices and circumvent the time and resources necessary in developing their own practices and strategies." *Roley v. Google LLC*, No. 18-cv-07537-BLF, 2020 WL 13517498, at *1 (N.D. Cal. Apr. 28, 2020) (citation omitted). As the Court's prior oral ruling on Riot's administrative motion suggests, the risk of competitive harm to Riot outweighs concerns about access to judicial records. Riot is not a party to these proceedings and, as described in the declaration of Dan Nabel, compelling reasons exist to seal those portions of the trial record that include the following information:

  A. **<u>Negotiation Strategy and Market Considerations:</u>** Exhibits 1221 and 1229 and portions of the Sottosanti Deposition referring to them contain confidential negotiation strategy and considerations that are neither disclosed in the ordinary course of business nor generally made available to employees of Riot. *See* Nabel Declaration, ¶ 3. The analysis reveals confidential information about Riot's user base, costs, and revenues, and reflects Riot's internal negotiation strategies in its dealings with Google. Riot personnel spent time and effort researching and analyzing the terms of a potential agreement with Google and its impact on Riot's current and future content delivery strategy in the marketplace. The public disclosure of such information would competitively harm Riot by giving its competitors insight into Riot's business operations and its users' behavior. Such disclosure could also undercut deal terms and Riot's negotiating position in active negotiations with other platforms and as such, this sensitive commercial information should be sealed. *See*

*Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2021 WL 2476916, at *3 (N.D. Cal. June 17, 2021) (sealing confidential information regarding key commercial metrics).

      **B.**    <u>**Technical Capabilities and Content Delivery Considerations:**</u>  Exhibit 1222 and portions of the Sottosanti Deposition referring to it contain confidential non-public information regarding Riot's engineering and technical capabilities.  Riot strives to offer its content on a wide variety of devices and on those platforms where its users are present.  If Riot's product development considerations and technological capabilities regarding content delivery are made public and widely available, that information may be used by Riot's competitors to Riot's disadvantage in highly confidential ongoing negotiations.  *See* Nabel Declaration, ¶¶ 3, 4.  Moreover, Riot's competitors could use the information to inform their own technical and business strategies, including with respect to product strategy and distribution in competition against Riot.  This would generally harm Riot's ability to compete and grow its business.

      **C.**    <u>**Internal Discussion of Meetings and Negotiation Strategy:**</u>  Exhibit 1226 and portions of the Sottosanti Deposition referring to it reveal internal impressions of Riot's and competitor's negotiating posture and business and financial considerations not disclosed to persons outside the Riot negotiating team.  The high profile of these cases is likely to garner significant media and industry attention, and wide disclosure of this sensitive commercial information, which is the result of significant effort and discussions with Google, would give Riot's competitors an advantage in ongoing negotiations with Riot and even Google, to the potential detriment of Riot.  *See Id.* ¶ 3.

      **D.**    <u>**Negotiation Considerations for Particular Deal Terms:**</u>  Exhibit 1227 and portions of the Sottosanti Deposition referring to it contain confidential negotiation strategy and considerations, and internal strategic analysis of terms and benefits to Riot from agreements, that are neither disclosed in the ordinary course of business nor generally made available to employees of Riot.  *See Id.* ¶ 3.  Because Riot partners with other platforms to deliver its content, Riot's business

-5-   Case No. 21-md-02981-JD
NON-PARTY RIOT'S ADMINISTRATIVE MOTION TO SEAL PORTIONS OF THE TRIAL RECORD

model not only depends on its ability to negotiate delivery agreements with platforms on favorable terms but also requires Riot to negotiate simultaneously with multiple distribution partners. Because Riot is continuously negotiating and renegotiating with those partners to ensure terms that are favorable and Riot's existing and/or potential partners could use this information in negotiations to extract terms and conditions from Riot they may not have otherwise been able to, sealing of this information is warranted. *See, e.g.*, *Philips v. Ford Motor Co.*, No. 14-CV-02989, 2016 WL 7374214, at *4 (N.D. Cal. Dec. 20, 2016) (concluding that "the need to avoid competitive disadvantage in contract negotiations and undercutting by competitors is a compelling reason").

Consistent with this request and the Court's prior oral ruling on Riot's administrative motion to seal, Riot requests that the Court seal those portions of the trial transcript in which the portions of the Sottosanti Deposition and Exhibits described in the Nabel Declaration are discussed or read. Nabel Declaration, ¶ 4. While the deposition designations may appear lengthy, due to the way questions were asked at the deposition, much of this testimony consists merely of counsel reading the contents of the five highly confidential Exhibits into the record or asking the witness to do so. Sealing this testimony is therefore consistent with the narrow sealing of the five Exhibits at issue.

Riot understands that a transcription of the testimony played will be included in the trial record. Riot can lodge a sealed copy of the run-sheet from the deposition transcript with the portions designated for sealing marked, or can undertake whatever other steps would be helpful to facilitate the Court in sealing the narrow portions of the record containing these excerpts. For the affected exhibits, Riot requests that those exhibits admitted into evidence be maintained under seal.

DATED:  December 8, 2023                     MUNGER, TOLLES & OLSON LLP

By: _____*/s/ Lisa J. Demsky*_____
LISA J. DEMSKY
Attorneys for Non-Party Riot Games, Inc.