SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

### Spotify - Google Play Better Together Program Partnership ("Program") Addendum to the Google Play Developer Distribution Agreement

The following Program terms (this "**Addendum**") are added to and supplement the terms of the Google Play Developer Distribution Agreement, currently provided at https://play.google.com/about/developer-distribution-agreement.html and in effect as of November 17, 2020 (which may be updated by Google from time to time) (the "**DDA**"), by and among Google and **Spotify AB**, whose principal place of business is at Regeringsgatan 19, SE-111 53 Stockholm, Sweden ("**Spotify AB**"), **Spotify USA Inc. ("Spotify USA")**, whose principal place of business is at 4 World Trade Center, 150 Greenwich Street, New York, NY 10006, and **Spotify India LLP ("Spotify India"),** whose principal place of business is at North F/A-4, Floor 1st, A Block, Shivsagar Estate Dr Annie Besant Road, Worli Mumbai, Mumbai City MH 400018 IN with respect to such Developer's Relevant Product(s) and Service(s) (as such terms are defined below), and are effective as of June 10, 2022 (the "**Effective Date**"). Spotify AB, Spotify USA and Spotify India are collectively referred to as "**Developer**."

Capitalized terms used but not defined herein have the meaning set forth in the DDA.

1.     **Definitions.** All capitalized terms used but not defined in this Addendum have the meanings given to them in the DDA. The following additional definitions are added solely for the purpose of this Addendum:

1.1.     "**Affiliate**" means, with respect to a party, any entity that directly or indirectly controls, is controlled by, or is under common control with, such party.

1.2.     "**Alternative In-App Billing System**" means an alternative billing system offered by Developer for Paid Transactions, through Developer's platform, in accordance with the terms and conditions of this Addendum.

1.3.     "**Including**" means "including without limitation."

1.4.     "**Paid Transactions**" means a transaction for a purchase of in-app purchases, in-app subscriptions, in-app services, and the associated auto-renewals for digital content using User Choice Billing including any applicable Taxes.

1.5.     "**Play Developer Distribution Agreement**" means the DDA and related policies that developers agree to in order to distribute their app through Google Play, which, subject to Section 5, Google may update from time to time in its sole discretion.

1.6.     "**Potential User**" means, with respect to a particular Service, any: (1) potential subscriber to such Service who does not have a currently active, paid-for or temporary trial subscription to such Service, whether or not the user saved a form of payment with Developer; or (2) any purchaser (including prior purchasers) of such Service, as the case may be.

1.7.     "**UCB Pilot Launch Date**" means the first date when User Choice Billing is enabled for Developer's Relevant Products and becomes available to users.

1.8.     "**Relevant Product(s)**" means, with respect to Developer, the specific Product(s) of Developer set forth in Exhibit A (Developers, Relevant Products and Services) attached hereto, which is distributed on Google Play and Developer delivers the corresponding Service(s) to users which may be updated from time to time.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250116

1.9.  "**Service(s)**" means, with respect to Developer, the audio content service of such Developer set forth in Exhibit A (Developers, Relevant Products and Services) attached hereto and made available by Developer via the corresponding Relevant Product(s).

1.10.  "**Third-Party Legal Proceeding**" means any legal proceeding filed by a third party before a court or government tribunal (including any civil, administrative, investigative or appellate proceeding).

1.11.  "**Third-Party Fees**" means those variable fees attributable to valid Developer payment transactions through Google Play's billing system, owed by Google to third parties that support various forms of payment ("FOPs") on Google Play's billing system, such as credit card processors, payment services companies, mobile phone carriers and gift card integrators.

1.12.  "**User Choice Billing**" means the pilot program Google announced at https://android-developers.googleblog.com/2022/03/user-choice-billing.html, where Developer may offer Alternative In-App Billing System alongside Google Play's billing system, so that users may choose between Google Play's billing system and the Alternative In-App Billing System subject to the terms and conditions of this Addendum.

2.  **Program Overview**

2.1.  Overview

(a)  Google Play continues to evolve and invest in the tools, services, and programs that help developers with different needs succeed. Google is committed to work with developers to help them build amazing user experiences across devices and build sustainable businesses.

(b)  This Program is intended to promote the growth and success of the overall Google Play and Android ecosystem while enabling users to have a trusted, seamless experience, including more choice for users when it comes to payment systems. The Program recognizes that the Android ecosystem is diverse with many different types of business models, industry focuses, and global scale of developers; one size does not fit all, and in collaboration with select partners, Google Play can innovate - defining and offering features that are tailored to more sophisticated developers who have different capabilities and needs than Google Play's broader developer community, to allow such developers to innovate for the benefit of users.

(c)  Spotify continues to advocate for platform fairness and expanded payment options, among other things, because fair and open platforms enable better consumer experiences and allow developers to grow and thrive, including via this Program with Google Play.

2.2  Program Components

(a)  Google Play User Choice Billing Pilot and Case Studies. The parties will work together to enable User Choice Billing for Relevant Products and upon mutual agreement, Google and Spotify will use the experience as its case studies for the User Choice Billing pilot program.

(b)  Android Innovation and Success Fund. The parties will work together to engage in applicable early access programs ("**EAPs**") and launch new Developer features on critical Android surfaces and devices which, as described in Exhibit B, include but are not limited to mobile phones, smart watches, large screen displays, TVs, and auto. Further, the parties will co-invest fifty million US Dollars ($50,000,000) each over the course of the Term towards a Success Fund to market the joint innovations.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250117

**EXHIBIT 1532-002**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

(c)   <u>Program Fees for Providing Google Play's Billing System Services.</u> Because of the distinguished partnership structure and value exchanges under Sections 2.2 (a) and 2.2(b) above, the parties agree to a new fee structure as defined in Section 3 (Program Fees). The Program Fees are payable on account of Google Play's billing system services being provided by Google to Developer for enabling its users to pay for the purchase of Relevant Products.

2.3   <u>Eligibility Criteria</u>. To participate in the Program, starting from the Effective Date throughout the Addendum Term, Developer must meet the following criteria across all Affiliates:

(a)   Provide premium audio content via a direct-to-consumer subscription monetization model across multi-platform experiences;

(b)   In the aggregate, maintain 150 million or more paid subscribers in total as described in Section 2.3(a) above globally, where a healthy proportion of the subscribers are monthly active users;

(c)   In the aggregate, commit to serving users across a minimum of 150 markets, including a history of localizing the Relevant Product for emerging markets;

(d)   Have a history of, and continued demonstration of maintaining payments features reasonably similar to what Play provides as of the Program launch date;

(e)   Have a history of, and continued demonstration of maintaining user trust and safety standards reasonably similar to what Play provides as of the Launch Date, which includes but is not limited to serving as a partner on joint user trust and safety initiatives (e.g., fraud prevention), maintaining an app in good standing with the Developer Policies and other relevant Google Play policies, and maintaining user safety initiatives; and

(f)   Have a history of, and continued collaboration with Google to build and maintain a fully featured app experience across a range of Android form factors and to co-develop and be among the first to trial and launch these features across major Android form factors such as mobile, auto, tablets, wearables, Google TV, Assistant, and future platforms as agreed by the parties, which includes but is not limited to resourcing an appropriately sized engineering team to supporting this Program.

2.4   <u>Program Requirements.</u>

(a)   <u>Google Obligations</u>

(i)   <u>User Choice Billing</u>.

(1)   Google will allow Developer to integrate User Choice Billing on Developer's platform with Google Play's billing system as described in Exhibit C ("Choice Screen Specifications"), Exhibit D ("Choice Billing Specifications"), Exhibit E ("User Choice Screen UX Guidelines"), and Exhibit F ("Phase 1 Choice Screen Expanded/Collapsed State");

(2)   Google will allow Developer to freely communicate with users about the Alternative In-App Billing System and options available to them in the User Choice Billing screen, and



pg. 3

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

**EXHIBIT 1532-003**

(3)    Google will provide Spotify Parties with partnerships support and growth consulting, which includes but is not limited to: (i) Quarterly in-depth growth consulting analysis to identify growth opportunities to increase user engagement, (ii) Technical support e.g. direct support for app release management & technical troubleshooting, (iii) Access to EAPs on Google Play to solicit input from Developer and encourage close collaboration, and (iv) working in good faith with Developer to assist with Developer roadmap goals.

(ii)    <u>Android Innovation and Success Fund Investment</u>. Google will contribute to the Success Fund as provided in Exhibit G ("Marketing & Promotional Activities; Success Fund").

(b)    <u>Developer Obligations</u>.

(i)    <u>User Choice Billing</u>. To integrate User Choice Billing, Developer must comply with the following Developer Obligations, across the applicable Relevant Products:

(1)    Comply with the DDA and related policies (except as modified herein), including all required applicable technical integrations (such as Play Billing Library as described in Android Developer's website at https://developer.android.com/google/play/billing/integrate unless where an alternative technical integration has been mutually agreed to as part of the User Choice Billing solution design);

(2)    Collaborate on a joint public statement to announce on or before the UCB Pilot Launch Date which is subject to mutual agreements by both parties;

(3)    Show Google Play's billing system within the choice screen for transaction types set out in Google's payments policy in accordance with Exhibits E ("User Choice Screen UX Guidelines") and F ("Phase 1 Choice Screen Expanded/Collapsed State");

(4)    Maintain payments features or standards, and user trust & safety standards reasonably similar or greater to what Google Play provides;

(5)    Integrate the features and comply with the requirements as described in Exhibit B ("Program Integration Requirements"), Exhibit C ("Choice Screen Specifications"), Exhibit D ("Choice Billing Specifications"), Exhibit E ("User Choice Screen UX Guidelines"), and Exhibit F ("Phase 1 Choice Screen Expanded/Collapsed State");

(6)    For the avoidance of doubt, Developer may freely communicate with users around the in-app billing options available to them in the choice screen in ways that are consistent with the terms of this Addendum and grow the Android ecosystem; and

(7)    Be responsible for hosting, distributing, and delivering media content and media services within the Relevant Products to its users.

For the avoidance of doubt, Developer retains the right to not integrate User Choice Billing, provided Developer continues to comply with the DDA.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY    GOOG-PLAY-011250119

**EXHIBIT 1532-004**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

(ii)    <u>Android Innovation and Success Fund</u>. In addition to the Developer obligations in Section 2.4(b)(i) above, Developer must also, across all Relevant Products:

(1)    Work with Google to differentiate the Android ecosystem through product innovation and experience. Developer will work in good faith to adopt EAPs, where applicable, and work with Google to provide feedback on the Android roadmap and define new experiences together. Developer will make best reasonable efforts to launch new Developer features on critical Android surfaces and devices (including Google's top third party OEM partners and its first party Android devices), and for other important Developer features either simultaneously or within a reasonable timeframe as on other platforms, and to launch new Developer features first on Android where Google provides early access to Developer for new and innovative features. In addition, as a highly valuable Android developer, Google will provide Developer relevant EAPs for early review. Where Developer decides to launch a feature on another platform first due to less technical effort, Developer agrees to meet with Google to review and determine, at Developer's sole discretion, if it is possible to reduce technical effort to launch simultaneously on Android, such as supporting features on the latest OS releases of Android, on all Android devices currently receiving security updates, or on all devices that are technically feasible (i.e., with memory and CPU capability);

(2)    Build agreed-upon best-in-class experiences on Android, and comply with feature adoption and distribution on Android products and surfaces set out in Exhibit B ("Product Integration Requirements");

(3)    Contribute to the Success Fund set out in Exhibit G ("Marketing & Promotional Activities; Success Fund"), and

(4)    Pay the Program Fees set out under Section 3 (Program Fees) below.

2.5    <u>Territories</u>.  The Program scope will be global, wherever paid apps and in-app purchases are offered through Google Play's billing system.

3.    **Program Fees.**

3.1    Subject to Developer complying with this Addendum, including Developer's obligations in Section 2.4(b) and 5.2 and complying with the DDA (as amended by this addendum), instead of being subject to Service Fees provided at <u>https://support.google.com/googleplay/android-developer/answer/112622?hl=en</u>, Developer will pay Google, pursuant to Section 6 (Payment Terms), the amount equivalent to all Third-Party Fees incurred by Google for Developer-related transactions processed on Google Play's billing system, which will be collected as a per-transaction fee of four percent (4%) for the transactions that flow through Google Play's billing system and adjusted on an annual basis as provided under Section 3.3 (specifically, the fee applies to the aggregate transaction value of valid payment transactions associated with Developer through Google Play's billing system, exclusive of taxes, subject solely to adjustment for refunds and reversals) during the Addendum Term (the "**Program Fees**"). For the avoidance of doubt, Developer will not be required to pay any fees for transactions that are processed by Developer through Developer's Alternative In-App Billing System under User Choice Billing.



pg. 5

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY    GOOG-PLAY-011250120

**EXHIBIT 1532-005**

3.2     For the avoidance of doubt, the Parties agree and acknowledge that no fees will be payable in relation to users operating within services that are provided for free to users (e.g., Spotify Parties' ad-supported services).

3.3     On an annual basis, Google will determine Third-Party Fees incurred by Google for the Spotify Parties'-related transactions that were processed on Google Play's billing system for the prior calendar year. The difference in Third-Party Fees incurred by Google and the 4% per-transaction fees collected by Google from Developer will be either invoiced to Developer or refunded back to Developer in accordance with the direction of the difference and in accordance with the terms of Section 6 ("**Payment Terms**").

3.4     Google will provide to Developer an annual 'true up report', subject to agreed-upon procedures performed by a globally recognized independent third-party accounting firm (e.g., Deloitte, PwC, E&Y) identified by Google, including reconciling the components of the report back to Google's underlying books and records and asking the third-party accounting firm to perform procedures ensuring that all fees included in any true-up report are Third-Party Fees attributable to Spotify transactions on Google Play Billing. Google will provide any third-party report to Developer as soon as reasonably practicable, and will make best efforts to provide the report no later than sixty (60) days after the conclusion of the prior calendar year.  Developer will have an opportunity to provide input on the agreed-upon scope and procedures, but for the avoidance of any doubt, Spotify will not request, and Google will not provide, an independent audit of the true-up report for any period during the Addendum Term.

3.5.    Google will provide Developer an informational report on the Developer-related transactions that occurred within Google Play's billing system quarterly once Developer transactions take place via Google Play's billing system. The report will show monthly costs by country based on a blended regional rate applicable in the region where the country locates, as solely and reasonably determined by Google. Developer may request further disaggregation, and Google will make reasonable and good faith efforts to fulfill such requests, but Google retains sole authority to determine whether to provide such information. Notwithstanding the foregoing, Google shall use best efforts to continue enhancing the granularity of the regional breakout over the Term of the Addendum (e.g., by individual country, where doing so does not breach Google's confidentiality obligations or other applicable contractual obligations with third parties). Google will provide the quarterly report to Developer no later than forty-five (45) days after the conclusion of the prior calendar quarter.

3.6     As of the effective date of this Agreement, Google has provided the Developer with a list of Third Party Fees, which Google reserves the right to update from time to time. If Google identifies any change in the categories of Third-Party Fees that causes an increase of Third-Party Fees in excess of 1.0% (from the past quarterly report of Third Party Fees) per calendar quarter on a blended regional rate Google will promptly inform Developer in writing of such a change with reasonable details about the change, where sharing such details does not breach Google's confidentiality obligations or other applicable contractual obligations with third parties. Developer may ask Google from time to time (but not exceeding once per quarter) for the list of Third Party Fees, and if asked, Google will provide it to Developer within a reasonable time. If Developer has any concerns with the changes communicated by Google, or the categorization of such Third-Party Fees, Google and Developer will discuss such concerns in good faith and work together to resolve such concerns (e.g., finding an appropriate solution to identify and address chargebacks), including by escalating such concerns to both parties' senior leadership for discussion and resolution.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250121

**EXHIBIT 1532-006**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

4.    **Term & Termination.**

4.1.    Term.  The term of this Addendum commences upon the Effective Date, and unless terminated earlier in accordance with this Addendum, continues through thirty-six (36) months following the UCB Pilot Launch Date, currently targeted to be between August 31 and November 30, 2022 ("**Addendum Term**").

4.2.    Termination and Suspension.

(a)    Either party may terminate this Addendum by providing written notice to the other party in the event such other party materially breaches a term of this Addendum and fails to cure such breach within thirty (30) days of receiving notice of such breach.  For the avoidance of doubt, any breach of Section 7 (Confidentiality and Publicity) of this Addendum will be considered a material breach.

(b)    Either party may temporarily suspend performance under this Addendum immediately by providing written notice to the other party, if compliance with any terms of this Addendum poses an immediate and material security threat or threat of immediate and material legal liability to such party that can only be avoided by such immediate suspension of performance.

(c)    Without limiting any other rights and remedies of Google, including, without limitation, those under Section 4.2(a), if Developer fails to meet the Eligibility Criteria set forth in Section 2.3 above, then Google will notify Developer in writing of such non-compliance. If Developer fails to cure such non-compliance within forty-five (45) days of such notice, then Google may terminate this Addendum.

(d)    If a government or controlling body of any country or territory imposes any law, restriction, or regulation that makes a party's performance of its obligations under this Addendum invalid, illegal, or unenforceable, either party may terminate or suspend, in whole or in part, this Addendum with immediate effect by providing the other parties with written notice thereof; provided, however, that at the request of any party, the parties will discuss in good faith any appropriate amendments to this Addendum to include valid, legal and enforceable obligations that are to the extent possible, similar in their terms to such invalid, illegal, or unenforceable obligations and reflect the intent of the parties when entering into this Addendum.  For clarity, Google and Developer reserve the right to terminate this Addendum with immediate effect if User Choice Billing becomes illegal or unenforceable, subject to all other obligations in this Section 4.2(e).

(e)    In the event of any dispute or disagreement between the parties regarding Sections 4.2(a) through (d) above; and prior to either party commencing legal action or seeking to terminate or suspend the Agreement (collectively, "Dispute"), both parties will submit the Dispute to the Executive Escalation Process set forth in Section 13.2 (Executive Escalation Process) for resolution.  If the Executive Escalation Process does not resolve the Dispute, this Addendum may be terminated or suspended as either party intended in accordance with Sections 4.2(a) through (d) following written notice to the other party after the 15th day of the 3rd escalation.

4.3.    Effect of Termination; Post-Termination Tail Period.  Upon the termination or expiration of this Addendum, the parties will work together to, among other things, explore how to transition such



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY        GOOG-PLAY-011250122

**EXHIBIT 1532-007**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

users to a different payment system, and the applicable Program Fees for users remaining on Google Play's billing system.

(a) During the twenty-four (24) months following the termination or expiration of the Addendum (the "**Tail Period**"):

(i) for any users who remain on Google Play's billing system during the Tail Period, the Program Fees will be in accordance with Sections 3(a) through (e) of this Addendum, provided that Google may also charge Developer an additional 0.5% in Program Fees after the true up process for the transactions that flow through Google Play's billing system.

(ii) Google will allow Developer to actively migrate users on Google Play's billing system to Developer billing, and will also exercise commercially reasonable efforts to assist Developer in doing so.

(b) At the conclusion of the Tail Period, the parties agree that, provided Developer qualifies for the Media Experience - Audio/Developer Accelerator Program (outlined at https://play.google.com/console/about/mediaprogram/ and in materials provided by Google to Developer), any transactions that flow through Google Play's billing system will be subject to fees that are no greater than those in effect as of the Effective Date under the Media Experience - Audio/Developer Accelerator Program.

4.4.    Survival.  Upon expiration or termination of this Addendum, all rights and obligations hereunder will cease; provided, however, that the following provisions will survive any termination or expiration of this Addendum: Section 1 (Definitions), Section 3 (Program Fees), Section 4.2 (Termination and Suspension), Section 4.3 (Effect of Termination; Post-Termination Tail Period); Section 6 (Payment Terms, including Exhibit H), Section 7 (Confidentiality and Publicity), Section 10 (Disclaimer of Warranties), Section 12 (Defense of Third-Party Legal Proceedings), and Section 13 (Miscellaneous).

5.    **Play Developer Distribution Agreement.**

5.1.    Updating the Play Developer Distribution Agreement.  Developer understands and agrees that Google maintains the right to amend, update and enforce the DDA and related Developer Program Policies in its sole discretion; provided, however, that as and between Google and Developer, such amendments, updates and enforcement with respect to the Relevant Products will be in accordance with and subject to the following:

(a) The parties acknowledge and agree that the parties will meet frequently and collaborate in good faith to help this Program succeed. Each party agrees to appoint a team dedicated to supporting this partnership and to use commercially reasonable efforts, including sharing quarterly updates on Google Play Developer Program Policies, priority access to dedicated policy support, inclusion in relevant developer feedback forums, and commitment to gathering Developer's feedback on relevant payments policy development, relevant payments-related API specifications and feedback from scoping through to general access phases;

(b) Google will notify Developer in advance of any material changes to Google Play Developer Program Policies that impact Developer's obligations under this Program, and if either party has concerns with their obligations as they relate to the Term Sheet, Play Policies during the pre-enforcement stage, and/or the broader Android Play ecosystem, they may promptly employ the Executive Escalation Process pursuant to Section 13.2, and



pg. 8

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250123

**EXHIBIT 1532-008**

(c)     If Google believes that Developer is in violation of the DDA (as amended and updated in accordance with this Section 5), then Google will notify Developer of the violation and both parties will collaborate in good faith to resolve such violation, including via the Executive Escalation Process pursuant to Section 13.2.

5.2.    <u>Merchant of Record.</u> With respect to paid transactions, Google is the merchant of record only for those transactions that are processed both: (a) via Google Play's billing system, AND (b) in the jurisdictions described at https://support.google.com/googleplay/android-developer/answer/764536. Developer is the merchant of record for all other paid transactions, including those processed via Alternative In-App Billing Systems.

5.3.    <u>Customer Support.</u> Developer is solely responsible for providing all customer support in relation to Paid Transactions processed via Alternative In-App Billing Systems. Google agrees that it will provide, upon request, reasonable information to Developer in a timely manner to enable Developer to provide customer support, currently anticipated via the Partner Escalation Support EAP.

5.4.    <u>Interpretation and Escalation.</u>  This Addendum supplements, and must be first interpreted in a complementary manner with, the DDA (as may be amended and updated from time to time in accordance with Section 5.1). All terms in the DDA apply to this Addendum unless otherwise set forth in this Addendum, in which case this Addendum controls.  If either party has concerns with their obligations as they relate to the Addendum, Program, Play policies, and/or the broader Android and Play ecosystem, such party may promptly employ the Executive Escalation Process pursuant to Section 13.2 (Executive Escalation) below to resolve such concerns.

6.      **Payment Terms**

6.1.    <u>Developer as Payor.</u>

(a)     <u>Invoicing.</u> If Google determines any Program Fees or Taxes are owed by Developer under this Addendum as a result of performing the annual review of Third-Party Fees as outlined in Section 3.3, Google will issue an invoice to Developer for such Program Fees and Taxes owed and will use commercially reasonable efforts to do so within thirty (30) calendar days. Within thirty (30) days following the invoice date ("**Payment Due Date**"), Developer will pay all Program Fees and Taxes to Google in the currency stated in the invoice, using a payment method approved by Google for such Developer (as may be modified by Google from time to time).

(b)     <u>Payment Disputes & Refunds.</u> Any payment dispute must be submitted before the Payment Due Date. Notwithstanding the above, if the parties determine that certain billing inaccuracies are attributable to Google's billing system, Google will work with Developer to resolve such inaccuracies and issue a subsequent corrected invoice. If a refund is issued, it will be in the form of credit for the applicable amount of the Program Fees along with a corresponding credit note.

6.2     <u>Google as Payor.</u>

(a)     In accordance with applicable law and regulations, Google has multiple local Google Affiliates to facilitate payment transactions, and payments from Google to Developer may be made by one or more of these Google Affiliates in accordance with the applicable Google Payments Seller Terms of Service agreed to by the Developer during the merchant onboarding process, which will satisfy Google's payment obligations under this Addendum; provided that any marketing or promotional funds (Success Fund) payment from Google



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250124

**EXHIBIT 1532-009**

**SPOTIFY AND GOOGLE CONFIDENTIAL // NTK**

to Developer with respect to the Indian market will be made from GAP to a Developer entity that is incorporated or tax resident of a country outside India.

(b) Save as otherwise set out in this Addendum, all settlements between Google and Developer shall occur in accordance with the applicable Google Payments Seller Terms of Service agreed to by the Developer during the merchant onboarding process. Google will:

(i) initiate payment using commercially reasonable efforts, of the amounts in Payment Transactions made during a calendar month, to the Seller's Settlement Account before the end of the 15th day in the following calendar month;

(ii) make available revenue reporting to Developer via the Play Console, which will include the daily estimated sales report delivered on a daily basis and monthly earnings report delivered on a monthly basis within 5 days after the conclusion of the prior month. For the avoidance of doubt, Google reserves the right to update and improve the daily estimated sales and monthly earnings reports but will ensure that the data included as of contract execution will remain in place; and

(iii) in respect of Purchase Transactions in the Buyer's Currency, convert the Purchase Price as shown in the Buyer's Currency into the currency used in the applicable Seller's Settlement Account(s) as follows:

(1) currency conversion to be at rates updated throughout the day sourced from a reputable currency converter (e.g., Bloomberg, Reuters) ("Conversion Rate");

(2) Conversion Rate shall be applied as a pass-through with no additional margin or spread applied; and

(3) For monthly payments on Google Play Billing transactions, the Conversion Rate shall be set at time the Payment Transaction was made by the Buyer and not at the time of settlement by Google into Seller's Settlement Account.

(c) Google Play has a long history of, and continues to listen to the developer ecosystem, investing in innovation and improvements across the Google Play platform to help our developers succeed on Android, including in our payment systems. Throughout the Addendum Term, the parties agree to collaborate in good faith to identify and find solutions for Developer payment concerns.

6.3    Taxes. Google and Developer agree to the terms provided under Exhibit H (Taxes).

7.  **Confidentiality and Publicity.**

7.1.    Confidentiality. This Addendum is "Confidential Information" as defined in the Non-Disclosure Agreement entered into between Google Ireland Limited and Spotify AB, effective April 21, 2021, except that the choice of law and jurisdiction will be controlled by Section 13.6 of the Addendum.

7.2.    Publicity.  Google and Developer will collaborate on a joint public statement to announce on or before the UCB Pilot Launch Date which is subject to mutual agreements by both parties.  Other than the above joint public statement, neither Google nor Developer may make any public statement regarding this Addendum or the Program without the other's written approval (email to suffice). Notwithstanding the foregoing, once the parties agree on a series of talking points with respect to the Program, either party may make public statements consistent with such talking points



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY
GOOG-PLAY-011250125

**EXHIBIT 1532-010**

or the joint public statement, and nothing in the foregoing will restrict either party's ability to continue to advocate for the principles it has publicly advocated for prior to the execution of this Addendum.

8.     **Data Usage**. Google Play will prohibit the sharing of data gathered by Google Play about the Spotify app or other Relevant Products or specifically a user interacting with the Relevant Products with other parts of Google except where the sharing of such data is aggregated with data sets of equivalent size from other developer apps in ways that are non-specific to Developer or the Relevant Products and reidentification of the data is prohibited, or the data is solely shared for the benefit of the overall Google Play ecosystem (e.g., to develop anti-fraud or anti-abuse features) but not to inform commercial decisions for any competing Google product or service in direct competition with the Relevant Product. Google Play will not share or allow the use of data gathered by Google Play about the Spotify app or other Relevant Products with or by any Google services competing with the Relevant Products except where doing so meets the requirements of this Section 8, and will implement policies (which for the avoidance of doubt, include corresponding practices) to enforce such restrictions with other parts of Google. For the avoidance of doubt, Google Play reserves the right to use the data gathered by Google Play about Google Play users to improve the Google Play ecosystem.

9.     **Representations and Warranties and Covenants.** Each parties' existing representations, warranties, and covenants under Section 11 of the DDA are superseded by the following provisions:

9.1.     Each party represents and warrants that it has full power and authority to enter into this Addendum, and that the execution and delivery of this Addendum, and the performance of its obligations hereunder, will not constitute a material breach or default of or otherwise materially breach any agreement to which such party or any of its Affiliates are a party.

9.2.     If Developer uses third-party materials, it represents and warrants that, to its knowledge, it has the necessary and applicable rights to distribute the third-party material.

9.3.     Each party covenants that they will comply with all laws applicable to its rights and obligations under the Addendum.

10.     **DISCLAIMER OF WARRANTIES.**

10.1.     SUBJECT TO SECTION 9, TO THE MAXIMUM EXTENT PERMITTED BY LAW, DEVELOPER UNDERSTANDS AND EXPRESSLY AGREES THAT ITS USE OF THE PLAY CONSOLE AND GOOGLE PLAY IS AT ITS SOLE RISK AND THAT THE PLAY CONSOLE AND GOOGLE PLAY ARE PROVIDED "AS IS" AND "AS AVAILABLE" WITHOUT WARRANTY OF ANY KIND. SUBJECT TO SECTION 9, TO THE MAXIMUM EXTENT PERMITTED BY LAW, GOOGLE UNDERSTANDS AND EXPRESSLY AGREES THAT ITS USE OF AND/OR MAKING AVAILABLE OF GOOGLE PLAY'S BILLING SYSTEM IN CONNECTION WITH THE RELEVANT PRODUCTS ARE AT ITS SOLE RISK AND THAT THE RELEVANT PRODUCTS ARE PROVIDED "AS IS" AND "AS AVAILABLE" WITHOUT WARRANTY OF ANY KIND.

10.2.     SUBJECT TO SECTION 9, DEVELOPER'S USE OF THE PLAY CONSOLE AND GOOGLE PLAY AND ANY MATERIAL DOWNLOADED OR OTHERWISE OBTAINED THROUGH THE USE OF THE PLAY CONSOLE AND GOOGLE PLAY IS AT ITS OWN DISCRETION AND RISK AND DEVELOPER IS SOLELY RESPONSIBLE FOR ANY DAMAGE TO DEVELOPER'S COMPUTER SYSTEM OR OTHER DEVICE OR LOSS OF DATA THAT RESULTS FROM SUCH USE.

10.3.     SUBJECT TO SECTION 9, GOOGLE FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY,



pg. 11

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

**EXHIBIT 1532-011**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT. SUBJECT TO SECTION 9, DEVELOPER EXPRESSLY DISCLAIMS ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES AND CONDITIONS OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEMENT WITH RESPECT TO THE RELEVANT PRODUCTS AND ALTERNATIVE IN-APP BILLING SYSTEM.

11.  **Limitation of Liability.**

11.1   In Section 11, "Liability" means any liability, whether under contract, tort, or otherwise, including for negligence.

11.2   TO THE MAXIMUM EXTENT PERMITTED BY LAW AND EXCEPT FOR LIABILITIES FOR (a) DEATH OR PERSONAL INJURY RESULTING FROM ITS NEGLIGENCE OR THE NEGLIGENCE OF ITS EMPLOYEES OR AGENTS, (b) WILLFUL BREACH, FRAUD OR FRAUDULENT MISREPRESENTATION, (c) A PARTY'S PAYMENT OBLIGATIONS UNDER SECTION 6 (PAYMENT TERMS), OR (e) MATTERS FOR WHICH LIABILITY CANNOT BE EXCLUDED OR LIMITED UNDER APPLICABLE LAW, EACH PARTY UNDERSTANDS AND EXPRESSLY AGREES THAT IT, ITS SUBSIDIARIES AND AFFILIATES, AND ITS LICENSORS WILL NOT BE LIABLE TO THE OTHER PARTY UNDER ANY THEORY OF LIABILITY FOR (A) ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, OR EXEMPLARY DAMAGES THAT MAY BE INCURRED BY THE OTHER PARTY INCLUDING ANY LOSS OF DATA, WHETHER OR NOT THAT PARTY OR ITS REPRESENTATIVES HAVE BEEN ADVISED OF OR SHOULD HAVE BEEN AWARE OF THE POSSIBILITY OF ANY SUCH LOSSES ARISING; OR (B) DAMAGES IN EXCESS OF, IN THE AGGREGATE, OF  ONE MILLION USD ($1,000,000).

11.3   SUBJECT TO SECTION 11.2, EACH PARTY'S TOTAL AGGREGATE LIABILITY UNDER SECTION 12 (DEFENSE OF THIRD-PARTY LEGAL PROCEEDINGS) IS LIMITED TO FIFTEEN MILLION USD ($15,000,000). SUBJECT TO SECTION 11.2, GOOGLE'S TOTAL AGGREGATE LIABILITY UNDER SECTION 8 (DATA USAGE) IS LIMITED TO TWENTY  MILLION USD ($20,000,000).

11.4   Allocation of Risk.  The parties agree that (a) the mutual agreements made in this Section 11 reflect a reasonable allocation of risk, and (b) that neither party would enter into this Agreement without these limitations on liability.

12.  **Defense of Third-Party Legal Proceedings.**

12.1   **By Google.**  Subject to Section 12.4 (Conditions), Google will defend (at its sole expense), or at its option settle, any Third-Party Legal Proceeding brought against Developer after the Effective Date to the extent the Third-Party Legal Proceeding arises from:

   (a)      Google's breach of Sections 9.1 or 9.3; or

   (b)      an allegation that Developer's use of the Play Console that connects to the Google Play Billing systems infringes on a third party's Intellectual Property Rights.

12.2   **Exceptions.**  Google will have no obligations or liability under Section 12.1 arising from:

   (a)      Developer's breach of this Agreement;

   (b)      modifications of Google's Play Console or Google Play Billing systems by Developer other than those set forth in this Addendum;



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY                    GOOG-PLAY-011250127

**EXHIBIT 1532-012**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

(c)     combination of Google's Play Console or Google Play Billing systems with any other software or products or any other materials, unless the Google Play Console or Google Play Billing systems as provided by Google substantially embodies the corresponding Intellectual Property right of such claim;

(d)     Third party products distributed through Google Play, excluding any third party products and/or services used by Google for the purposes of performing its obligations under this Addendum;

(e)     events that gave rise to the claim that arose outside the Term of this Agreement; or

(f)     lawsuits or proceedings related to a Third-Party Legal Proceeding brought against Developer prior to the Effective Date.

12.3    **By Developer.**  Subject to Section 12.4 (Conditions), Developer will defend (at its sole expense), or at its option settle, any Third-Party Legal Proceeding brought against Google and Google affiliates after the Effective Date to the extent the Third-Party Legal Proceeding arises from:

(a)     a breach of Developer's representations, warranties, or covenants in Section 9;

(b)     Developer's use of the Play Console and Google Play in violation of this Addendum;

(c)     Developer's infringement or violation of any Intellectual Property Right by the Alternative In-App Billing System;

(d)     Any information that Developer provides to Google Play or users in connection with this Addendum or Relevant Products that are not current, true, accurate, supportable or complete; or

(e)     Developer's distribution of Relevant Products via Google Play.

12.4    **Conditions**.  The provisions in this Section 12 are conditioned on the following:

(a)     The party seeking defense of a Third-Party Legal Proceeding (the "Defended Party") must promptly notify the other party (the "Defending Party") in writing in accordance with Section 13.4 (Notices) of the Third-Party Legal Proceeding and cooperate reasonably with the Defending Party to resolve the Third-Party Legal Proceeding. If a breach of this Subsection 12.4(a) prejudices the defense of the Third-Party Legal Proceeding, the Defending Party's obligations under this Section 12 will be reduced in proportion to the prejudice.

(b)     The Defended Party must tender sole control of the Third-Party Legal Proceeding to the Defending Party who then has full control and authority over the defense, including selection of controlling counsel, except that:

(i)     any settlement requiring the Defended Party to admit liability, pay money, or take (or refrain from taking) any action, will require the Defended Party's prior written consent;

(ii)     the Defended Party may object to the Defending Party's choice of controlling counsel on the basis of any then-existing conflict of interest that cannot be waived under applicable rules of professional responsibility; and



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250128

**EXHIBIT 1532-013**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

(iii)   the Defended Party may appoint its own non-controlling counsel at its own expense.

12.5   **Monetary Damages**. Subject to Section 11.3, Defending Party will pay any monetary damages finally awarded against Defended Party by a court of competent jurisdiction at the conclusion of Defending Party's defense of a Third Party Legal Proceeding under Section 12.1 or 12.3, respectively, with all appeals exhausted, but only to the extent such damages can be attributed to Defending Party's obligations under Section 12.1 or 12.3 respectively. Defending Party's obligation to pay monetary damages will not apply to any damages arising from: (1) Defended Party's acts or omissions that give rise to a finding of willful infringement of asserted patents, copyrights, trade secrets, or trademarks; (2) Defended Party's acts or omissions that directly give rise to punitive damages; or (3) a Defended Party's cost in complying with injunctive relief or other design around costs.

12.6   **Rights and Obligations**.  THE PROVISIONS OF THIS SECTION 12 STATE THE PARTIES' ONLY RIGHTS AND OBLIGATIONS UNDER THIS AGREEMENT FOR A THIRD PARTY LEGAL PROCEEDING.

13   **Miscellaneous.**

13.1   <u>Entire Agreement</u>. This Addendum, its Exhibits, and the DDA state all terms agreed between the parties and supersede all other agreements between the parties relating to the Program and Program specifics such as the Success Fund, product integrations, UX guidelines and choice screen specifications, choice billing specifications, and fees. Except as supplemented by this Addendum, the DDA will remain in full force and effect

13.2   <u>Executive Escalation Process</u>.  The Executive Escalation Process (as described below) is as follows. The parties will submit the Dispute to the Executive Contacts, set forth below. Within ten (10) business days after the Dispute is submitted to the Executive Contacts, the Executive Contacts will meet in person or by phone/video conference and attempt in good faith to resolve the Dispute. Each Executive Contact will endeavor for a period of at least fifteen (15) days at each level to resolve the Dispute before either party commences legal action or seeks to terminate the Addendum. Each party may change its Executive Contact by providing written notice to the other party.

The initial Executive Contacts for Developer and Google are as follows:

| Order | Function | Name of PoC |
|---|---|---|
| 1st escalation | Business/ Product | Google: Sameer Samat<br>Developer: Alex Norstom |
| 2nd escalation | Legal | Google: Tristan Ostrowski<br>Developer: Harry Clarke |
| 3rd escalation | CEO | Google: Sundar Pichai<br>Developer: Daniel Ek |



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY    GOOG-PLAY-011250129

**EXHIBIT 1532-014**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

13.3   <u>Change of Control</u>. If a party experiences a change of control (for example, through a stock purchase or sale, merger, or other form of corporate transaction to a third party): (a) that party will give written notice to the other party within 30 days after the change of control; and (b) the other party may immediately terminate this Addendum any time between the change of control and 30 days after it receives that written notice.  This termination triggered by the change of control does not need to go through the Executive Escalation Process set forth in Section 13.2.

13.4   <u>Notices</u>.  All notices of termination or breach of this Addendum must be in English, in writing (which includes via email) and addressed to the other party's Legal Department.  The address for notices to Google's Legal Department is legal-notices@google.com; also, Developer will use commercially reasonable efforts to send an email copy to the then-current primary business contact as a courtesy.  The address for notices to Developer's Legal Department is legalnotice@spotify.com; also, Google will use commercially reasonable efforts to send an email copy to the then-current primary business contact as a courtesy.  Notice will be treated as given on receipt, as verified by written or automated receipt or by electronic log (as applicable).

13.5   <u>URLs</u>.  Subject to Section 5, all URLs referenced in this Addendum and their contents may be updated from time to time by Google.

13.6   <u>The Governing Law and Jurisdiction</u>. This Addendum is governed by California law, excluding California's choice of law rules. All claims arising out of or relating to the subject matter of this Addendum will be litigated exclusively in the federal or state courts of Santa Clara County, California, USA, and the parties consent to personal jurisdiction in those courts.

**SIGNATURES ON NEXT PAGE.**



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250130

**EXHIBIT 1532-015**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**ACKNOWLEDGED AND AGREED:**

**Google LLC**

By: _____

Print _____
Hiroshi Lockheimer
Title: _____
Authorized Signatory

Date: _____

2022.06.11
17:39:09
-07'00'

**Spotify AB**

By: _Alex Norström_
Alex Norström (Jun 11, 2022 12:34 GMT+9)

Print Name: Alex Norström

Title: Chief Freemium Officer

Date: Jun 11, 2022


**Google Ireland Limited**

By: _____

Print Name: _____

Title: _____
Tatjana Taraszka
Per, David Sneddon (Director)

Date: _____

2022.06.1
2
17:47:03
+01'00'

**Spotify USA Inc.**

By: _Eve Konstan_

Print Name: Eve Konstan

Title: General Counsel

Date: Jun 10, 2022


**Google Asia Pacific Pte. Limited**

By: _____

Print Name: _____

Title: _____
S. Lavanya
Lavanya Swetharanyan
Director
Google Asia Pacific Pte. Ltd.

Date: _____

2022.06.
12
16:28:10
+08'00'

**Spotify India LLP**

By: _____
Peter Grandelius (Jun 10, 2022 23:42 GMT+2)

Print Name: Peter Grandelius

Title: Associate General Counsel

Date: Jun 10, 2022


**Google Commerce Limited**

By: _____

Print Name: _____

Title: _____
Tatjana Taraszka
Per, David Sneddon (Director)

Date: _____

2022.06.1
2
17:47:44
+01'00'



pg. 16

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

**EXHIBIT 1532-016**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK



Exhibit A

Developers, Relevant Products and Services

The following is a list of Relevant Products and Developers as of the Effective Date of this Addendum. Spotify reserves the right to amend or revise this list from time to time. For the avoidance of doubt, all apps under the Developer's accounts must comply with Play policies and this Addendum.

| Developer | Relevant Product | Relevant Product Package Name | Service |
|---|---|---|---|
| Spotify AB<br>Spotify USA<br>Spotify India | Spotify: Music and Podcasts | com.spotify.music | Streaming albums and hits, find a song, discover music, and download songs and podcasts |
| Spotify AB<br>Spotify USA<br>Spotify India | Anchor - Make your own podcast | fm.anchor.android | Allows users to create, host and distribute podcasts |
| Spotify AB<br>Spotify USA<br>Spotify India | Soundtrap Studio | com.soundtrap.studioapp | An online, collaborative music and podcast recording studio in an app |
| Spotify AB<br>Spotify USA<br>Spotify India | Spotify Live | io.bettylabs.disco | An audio experience that lets artists, athletes and fans share their opinions live. |
| Spotify AB<br>Spotify USA<br>Spotify India | Spotify for Artists | com.spotify.s4a | Provides the tools for artists to develop a fanbase, understand their audience, manage their artist profile, and celebrate new releases and milestones. |
| Spotify AB | Spotify for Android TV | com.spotify.tv.android | Spotify music and podcasts service for Android TV |

pg. 17

**EXHIBIT 1532-017**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| | | | |
|---|---|---|---|
| Spotify USA<br>Spotify India | | | |
| Spotify AB<br>Spotify USA<br>Spotify India | Spotify Stations | com.spotify.zerotap | Listen to music, your favorite artists & create personalized radio stations |
| Spotify AB<br>Spotify USA<br>Spotify India | Spotify test app for Auto | com.spotify.testauto | Spotify for Android Automotive, closed testing only. |
| Spotify AB<br>Spotify USA<br>Spotify India | Spotify app for emerging markets | com.spotify.lite | A lighter Spotify - listen to music for free, using less data and storage. |
| Spotify AB<br>Spotify USA<br>Spotify India | Spotify Kids offering | com.spotify.kids | Spotify music offering customised for kids. Packed with singalongs, soundtracks and playlists made for young listeners |

pg. 18

GOOG-PLAY-011250133

**EXHIBIT 1532-018**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Exhibit B**

**Program Integration Requirements**

Developer will be invited to participate in EAPs to test and provide feedback on the new features that arise in the future in Android and Play product roadmaps. Developer will also be invited to participate in Google's promotional activities for the new features, where commercially feasible and reasonable, and as agreed by the parties.

The parties agree to follow a process for the proposal, acceptance, and execution of various Public Availability Announcement and Measurable Quality Improvements as part of the technical obligations, as set forth below. The below examples are aspirational and meant to serve as examples only with product deliverables to be defined in collaboration through the below outlined shared Product Requirements Document ("**PRD**") process with the intention to provide clear benefits for end users.

(a) **Quarterly Meetings**. The parties will each appoint four (4) individuals (two (2) business and two (2) product/engineering) that are knowledgeable in the subject matter to meet quarterly held over an agreed number of days on a mutually agreed upon time and date (such a meeting, a "**Quarterly Meeting**"). The first meeting will take place on a mutually-agreed upon date, which will be no later than sixty (60) days after the Effective Date. The goal of the meetings will be to propose and discuss (1) relevant Google platform product roadmaps related to **Public Availability Announcements** and **Measurable Quality Improvements**, and (2) discuss implementation details of product roadmap and feasibility to complete Public Availability Announcement and Measurable Quality Improvements. The parties will confirm the outcomes of quarterly meetings in a shared PRD.

    1)     **Public Availability Announcement**: Public case study showcasing integration with respect to the upcoming launch of new product(s) or major update(s). Developer will complete one (1) Public Availability Announcement technical obligation every six (6) months where commercially reasonable and as mutually agreed by the parties.

    2)     **Measurable Quality Improvement**: Improving Spotify app quality and user experience on current Google products, including all relevant bug fixes. Developer will complete the Measurable Quality Improvements as set out in writing in the shared PRD over the following six (6) months where commercially reasonable and as mutually agreed by the parties.

(b) **Public Availability Announcements and Measurable Quality Improvements**: Within thirty (30) business days (unless a longer time is agreed to by the parties due to commercial feasibility) of a Quarterly Meeting, the parties will agree on the Public Availability Announcement and Measurable Quality Improvements set out in the collaborative, mutually agreed shared PRD in writing for the next six (6) months, with longer runway for roadmap innovations that have an implementation time that are longer than 6 months, tabled for future planning purposes. The parties will exchange information to inform the implementation of such Public Availability Announcements and Measurement Quality Improvements.

The below example Public Availability Announcement and Measurable Quality Improvements are not exhaustive and do not indicate contractual commitment. The below examples are aspirational and meant to serve as examples only, with product deliverables to be defined in collaboration through the shared PRD process with the intention to provide clear benefits for end users:



pg. 19

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY
GOOG-PLAY-011250134

**EXHIBIT 1532-019**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| Product | Product Integration Examples |
|---|---|
| Android TV | • Cast Connect<br>• Play Next<br>• Media Actions Catalog Metadata feed |
| Wear OS | • Launch partner for R7<br>• Optimize power usage and support new APIs (when available) for standalone offline + streaming playback<br>• Implement WearOS tile and complication.<br>• Seamless sign-in on watch (same Developer account as phone app)<br>• Commitment to meet quarterly to review power consumption, data usage, and audio quality of Wear app, and collaborate on improvements<br>• Migrate to updated media control API<br>• Google Assistant integration on Wear 3<br>• App startup time improvements.<br>• Remove UI Jank<br>• Full compliance with Wear Material Design guidelines<br>• Improved device picker performance |
| Large Screen [LS] / Entertainment Space [ES] / T6 / Chrome OS | • [LS] Optimized tablet UX (Layouts)<br>• [LS] Hero use case<br>  ○ Table Top Mode<br>  ○ Drag and Drop<br>• [ES] Home Channel for Mobile (Audio) Integration<br>• [T6] Launch partner for T6<br>• [T6] Cast Connect support<br>• [T6] Voice & Media Control, Lock Screen Shareable<br>• [LS] Input support<br>• [Chrome OS] Android app optimizations on Chromebooks |
| Auto | • Assistant on Auto features<br>  ○ Media recommendations for search and discovery<br>  ○ FG (Foreground) search FAB (Floating Action Button)<br>  ○ Car App Library for Media |



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250135

**EXHIBIT 1532-020**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| Android | <ul><li>Framework: Android 12 & 13 migrations</li><li>Optimize for App quality & Modern UI.</li><li>Update Cast SDK implementation to support Better Together Media Transfer use case</li><li>Integration with Identify, participating in Identify EAP.</li><li>Android launcher integration.</li></ul> |
|---|---|
| Play | <ul><li>'Always on' Store Listing experiments</li><li>Deal center</li><li>Build for LiveOps</li><li>A/B test 'growth consulting' optimisation recommendations</li><li>Speak at Google events<ul><li>I/O</li><li>Playtime</li></ul></li><li>Case study participation</li></ul> |



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250136

**EXHIBIT 1532-021**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Exhibit C**

**User Choice Billing Screen Specifications**

**Choice Screen**
This Program between Developer and Google is intended to advance the overall Play / Android ecosystem while ensuring users have a trusted, seamless experience. It recognizes that the ecosystem is diverse with many different types of business models, industry focuses, and global scale of developers; One size does not fit all and that in collaboration with our partners, we can innovate - defining and offering features that are tailored to more sophisticated developers who have different capabilities and needs than Play's broader developer community and who are making an important contribution to the Play / Android ecosystem for users.

This program focuses on innovations in billing and payment where we would like to explore enabling developers to offer their own billing and payment flows in conjunction with Google Play's billing system and giving users the choice of which system to use in ways that can improve subscriber growth and retention.

The broad parameters of the program are as follows:

**Scope:** The revised Billing Approach and Choice Screen UI will apply to new in-app purchases of functionality and digital content on Android (as required by Google Play's policies) that from the start date of the Program and will not be applicable for existing Developer users/subscribers. For the avoidance of doubt, for any in-scope payments, the previous payment system choice should be saved and applied for subsequent payments. For the avoidance of doubt, every Choice screen (base and variations) will show Google Play's billing system unless outlined in Google Play's Policies.

**Choice:** Play will provide UX guidelines, outlined in Exhibit E ("User Choice Screen UX Guidelines"), for a base user-choice UI, owned, hosted and rendered by Developer, that is the general default, ensuring Developer users are offered an informed choice for how to complete their checkout, including both Developer and Play as billing options. Each choice should be represented with sufficient information as outlined in Exhibit E ("User Choice Screen UX Guidelines") for a user to make a decision.

**Base Choice.** The details of the "Base Choice" UI include:
- Developer defined SKU details section, that comply with all applicable Play Policies
- A choice module with expandable and collapsible choices for Developer and Play. Each section of the choice module (Developer and Play) can be presented in an expanded state (showing available and eligible FOPs) or a collapsed state (showing no/limited FOP information). The criteria for when different billing options are presented as expanded or collapsed are outlined in Exhibit F "Phase 1 Choice Screen Expanded/Collapsed Default State".
- Subject to relevant data protection and technical limitations, each section of the choice module (Developer and Play) may also display a representation of the availability of existing stored forms of payment.

Unless the parties agree, the base choice UI as shown in Exhibit E ("User Choice Screen UX Guidelines") should not be altered.

**Variations:** Because the base UI described above has sections that can be expanded or collapsed, the parties may agree, based on an agreed-upon criteria in Exhibit F ("Phase 1 Choice Screen Expanded/Collapsed Default State"), on a per-country or country group basis, on which variations should be offered by default for the initial period of the partnership (Phase 1 - see below). This default will be the main choice-screen offered in each country. Any instance where the user experience is such that the choices to users are different than the Base Choice (e.g., where users have varied collapsed/expanded options) will be deemed collectively as "Variations."



pg. 22

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250137

**EXHIBIT 1532-022**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

Unless the parties agree, the base Choice Screen UI and agreed variations should not be altered for the initial period of the partnership (Phase 1 - see below). In Phase 2, Developer will determine, in its sole discretion, the Choice Screen UI, within the agreed-upon UX guidelines, and subject to periodic reviews and mutual sharing of experiment data about Google Play's billing system and choice screen performance. For the avoidance of doubt, the parties will not share individual user data during such periodic reviews.

**Performance:** In the event that the UX Guidelines result in a Sustained Negative Impact (as defined below) on Developer's overall aggregate number of users entering the checkout (for the avoidance of doubt, the User Choice Screen is considered the first page of the checkout experience) versus the number of users successfully completing a transaction)  (i.e., they are not neutral or better) ("Checkout Conversion"), the parties will re-evaluate or revise the UX Guidelines to improve performance while remaining consistent with overall user choice principle for billing.  Sustained Negative Impact shall be determined as follows:

1.  During Phase 1: Sustained Negative Impact shall mean, on average over the course of six (6) weeks, lower aggregate Checkout Conversion. If we see negative trends prior to the end of the one (1) month in any of the following Substantial Markets or greater than three (3) Remaining Markets:

    a.  Substantial Markets: Argentina, Brazil, Chile, Colombia, India, Indonesia, Italy, Malaysia, Mexico, Netherlands, Peru, Philippines, Poland, South Africa, Spain, Sweden, Turkey, United Kingdom, United States, Australia, Canada, Japan, Korea, France, Germany, and Thailand (collectively, "Substantial Markets"),

    b.  All other markets (collectively, "Remaining Markets"),

    the parties agree to promptly meet and work together to resolve the negative trend.

    Sustained Negative Impact may be determined globally or on an individual market level as defined in Substantial Markets or greater than three (3) Remaining Markets above; or

2.  During Phase 2: Sustained Negative Impact shall mean, on average over the course of any three (3) consecutive months, lower aggregate conversion as compared to such rates over the preceding month. Sustained Negative Impact may be determined globally or on an individual market level as defined in Substantial Markets or greater than three (3) Remaining Markets above.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250138

**EXHIBIT 1532-023**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Experimentation:** A key goal with this partnership should be to continually drive and optimize performance, driven by experimentation. Google will propose an experimentation framework outlined in Exhibit E ("User Choice Screen UX Guidelines"), to be agreed with Developer. The parties will agree to define a two-phased plan for how this should be done:

| Phase | Agreed Target Dates | Milestone | What happens |
|---|---|---|---|
| Phase -1 | By 31st May 2022 | Clean copy of this Addendum | Teams will collaborate to scope product effort and codify delivery milestones and deliver an integration guide needed to aspirationally launch User Choice Billing in 3 months from execution of this Addendum, which will last at most 6 months. If the scoping returns a build time of greater than 6 months the parties will work together to rescope and mutually agree on different sequencing of the project to meet a 6 months timeline. |
| Phase 0 | 31st May - 31st August 2022, or at the latest 30th November 2022 | Build phase once this Addendum has been signed | During this time, the parties will build the agreed scoped features and integrations outlined in technical specifications. |
| Phase 1 | Depending on build time, between 31st August 2022 and at latest 30th November 2022 | Launch User Choice Billing and start to experiment with the countries in Collapsed or Expanded state as set out in Exhibit F | During this 6-month period, the parties will define and execute the experimentation plan (including target countries, success metrics and follow up planning), review results, and agree on next steps.<br><br>The parties will target to launch 100% of markets within 3 months of Phase 1 launch. |



pg. 24

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250139

**EXHIBIT 1532-024**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Ramp Up**
Ramp Up is defined as the period from when User Choice Billing is launched in a country, to the point where 100% of users in that country see User Choice Billing only. Ramp Up progress will reflect at a minimum, a gradual increase over the period. Spotify commits that once a user is seeing User Choice Billing, they will not revert to previous options.

For countries in which Spotify launches User Choice Billing by November 30th, 2022, Spotify will be entitled to a 3-month Ramp Up period. For countries in which Spotify launches User Choice Billing later than November 30th, 2022, Spotify will be entitled to a 6-week Ramp Up period.

**Technical Issues**
A Technical Issue is defined as a configuration, server or API related bug that impedes the User Choice Billing screen/system from working as intended, for example:

- Unintended payment failures
- Unresponsive API calls



pg. 25

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250140

**EXHIBIT 1532-025**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| | | | |
|---|---|---|---|
| | | | • Play Billing cart not rendering UI as expected<br><br>If the parties discover a Technical Issue the parties will work together to resolve.<br><br>If the parties agree that the resolution would require more than the Ramp Up time to resolve, the parties agree to work together in good faith to resolve such technical issues by establishing an action plan with a targeted timeline to resolve the Technical Issue.<br><br>While the parties are actively working to resolve such Technical Issue, the parties agree to temporarily pause the Ramp Up period for impacted users and resume when the specific Technical Issue has been addressed, at the very latest by the end of Phase 1. |
| Phase 2 | End of Phase 1 - 31st May 2025 | Business As Usual | Developer to experiment based on the experimentation plan in Phase 1 (Base Choice + Variations) subject to agreed-upon choice screen guidelines outlined in Exhibit E ("User Choice Screen UX Guidelines").<br><br>For the avoidance of doubt, experimentation will be between different variations of |



pg. 26

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250141

**EXHIBIT 1532-026**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| | | | |
|---|---|---|---|
| | | | UCB where Google Play Billing will be present in both test and control groups.<br><br>The parties agree to periodic reviews of the experiments (see Exhibit E for experiment guidelines) and to share findings to inform optimizations where applicable to the broader ecosystem. |
| End of Term | 31st May 2025 | End of term | |

**Note:**

- The parties will meet regularly during all phases above and can mutually agree to shift some countries from Phase 1 to Phase 2 earlier than the originally-allocated 6 month timeline for Phase 1.
- Quarterly Business Review Meetings. The parties will meet on a quarterly basis: to review Google Play's billing system and choice screen performance, forthcoming material regulatory changes to agree on their impact, quarterly cost reports, learnings from other Google Play's billing system side-by-side experiences; Google to share new Google Play's billing system countries to be added; to share relevant forthcoming developments (such as new payment use cases for Developer, relevant Google Play's billing system product/policy developments); to review relevant experiments and results, and to share findings to inform optimizations where applicable to the broader ecosystem. For the avoidance of doubt, the parties will not share individual user data during such Quarterly Business Review Meetings.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250142

**EXHIBIT 1532-027**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

## Exhibit D

## User Choice Billing Specifications

**Checkout**
Within the guidelines agreed with Google in Exhibit E ("User Choice Screen UX Guidelines") , Developer will own, host and render the initial checkout / payment choice selection screen presented to users. The initial checkout screen will be consistent with Developer UX and allow Developer control to test/optimize and ensure users fully understand what they are purchasing and the choices available to them.
The representation of Google Play's billing system on the checkout screen will be in line with Google brand requirements.

Once the user has made their selection:
(1) If the user selects a Developer payment method they will continue within Developer's checkout process and UX
(2) If the user selects Google Play's billing system, they will transition into a Google Play's billing system purchase experience.

For the avoidance of doubt, every Choice screen (base and variations) will show Google Play's billing system unless specified in Google Play's Policies.

**Payment & Transaction Management**

(1)  Where a user pays directly with Developer

Developer will continue to maintain full control of transaction management (including routing, retries, grace periods, disputes, and customer service). Developer will not share data related to payment choice with Google.

Users paying directly with Developer will not be eligible for Play Points.

(2)  Where a user selects Google Play's billing system:

Users who select to pay via Google Play's billing system will see the same features as other Google Play's billing system carts, including but not limited to, Play Points, Play Promotions (as applicable) etc.

Developer will maintain a set of product SKUs in Google Play's billing system which can be updated from Developer's product catalogue in an automated manner. The SKU Name, price & billing terms can be overridden at run-time leveraging an API in Early Access Program, "Per Transaction Offers", and are subject to additional developer agreement to use.  If applicable, the tax and compliance settings associated with the base SKU must match the item ultimately purchased in the Google Play's billing system cart.  At the point of purchase, Developer will communicate to Google any additional details required for the billing schedule, against which Google will process the recurring payments. Further details will be provided in an integration guide.

If a user chooses Google Play's billing system, Google will optimize cart conversion for a one-time or subscription purchase, including utilizing tools such as in-session (immediate) retry logic.  Where reasonable, for Subscription renewals, Google will turn OFF the otherwise mandatory features of Account Hold and Re-subscribe (previously known as Restore) at Developer's request, unless Developer requests for such features to be turned back on. Developer can choose to use optional subscription retention features, like Grace Period or Pause, in the Google Play console. Google will provide confirmation of the status back to Developer via Play's Real Time Developer Notifications (RTDN) functionality.



pg. 28

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250143

**EXHIBIT 1532-028**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Subscription / Account Management**

Users who elect to pay via Google Play's billing system will be able to see their Developer subscription within the Google Play Store Subscription Center. The parties will work together to craft an integration guide which will include, among other things, details regarding the specific management of Users who elect to pay via Google Play's billing system. That integration guide will reflect the following principles:

- As a default Developer position, account management activity flows should direct the user to Developer's account management pages
- Some exceptions to this default position are:
  - when the user decides to change or edit FOPs within the Google Play's billing system environment
  - when the user decides to cancel their subscription in the Google Play Store Subscription Center, Google will include a "cancel" button in the Google Play Store Subscription Center that immediately cancels the user's subscription.
    - Notwithstanding the above, the parties will work together in good faith to include additional or different functionality that remains in compliance with applicable laws and regulations.
- Google will make available the RTDN mechanism to enable Developer to receive notifications of a change in a Google Play's billing system subscribed user's entitlement status.

For the avoidance of doubt, Google will not enable other optional Program-specific subscription management features for Developer other than the ones described above without the parties' mutual agreement. Google will also work in good faith to implement features and functionality suggested by Developer designed to help users maintain their subscriptions (e.g., subscriber retention and last chance offer features), and may implement some such features for the broader Play ecosystem.

Developer will remain primarily responsible for customer communications regarding their Developer subscription (for the avoidance of doubt, Google Play has the right to send other customer communications to customers based on their settings with Google Play). Therefore, where a user has selected to pay via Google Play's billing system, Google will deliver such notifications, communications, and receipts as are required by regulation and/or consistent with a Google Play's billing system experience.

**Customer Support, Fraud, Trust & Safety**

Regardless of how a user has elected to pay, Developer will continue to provide primary customer support for Developer account management, leveraging Developer's self-help resources and advisors

1. If the user selects a Developer payment method, all payment-related customer support will continue to be provided by Developer
2. If the user selects Google Play's billing system, Google and Developer will agree on a framework for issue resolution and user transition between support teams as appropriate, provided that Google will handle any customer complaints and/or refund requests in a manner as required by applicable law and/or consistent with a Google Play's billing system experience.
3. Developer will be able to process all necessary payment amendments including cancellations and refunds in an automated manner and will pass Google the information needed to process the relevant changes via Google Play's billing system. For the avoidance of doubt, if a user selects Google Play's billing system, FOP edits / replacements (including back-up payment methods) need to happen on a Google surface initiated by the user.
4. Developer will have the right to terminate any subscribers where they are in breach of Developer T&Cs or identified as fraud across both Developer billing and Google Play's billing system (as current functionality exists). The parties will work in good faith to share insights and frameworks to reduce fraud on the Developer Android user base.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250144

**EXHIBIT 1532-029**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Google Play Store Trust & Safety**

Where a user elects to pay directly with Developer, Developer's policies and procedures will apply to the transaction and Developer will deliver such notifications, communications, and receipts as are required by regulation and/or consistent with a Developer experience. Google acknowledges Developer implements and commits to maintain policies to increase user confidence and trust in its payment experiences, by developing policies and resources for parents of younger users, clear and concise terms and conditions and user guidelines, sophisticated anti-fraud monitoring and prevention protocols and fully-scaled customer service team who apply Developer's refund and payment fraud policies globally from multiple call centers around the world. Developer has policies (including measures) not to allow users under the age of 13 (or the relevant age of consent within a user's country) to create accounts on Developer apps, and does not allow purchases in offering specifically aimed at younger audiences (com.spotify.kids) without implementing appropriate mechanisms (e.g., parent consent). The parties will work together to ensure that trust and safety (e.g., parental controls or specific policies) will be applied in a mutually-agreeable manner.   Where a user elects to pay with Google Play's billing system, Google Play Trust & Safety APIs will apply in line with Google Play Store policies and procedures



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250145

**EXHIBIT 1532-030**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Exhibit E**

**User Choice Billing Screen UX Guidelines**

**UX Guidelines & Experiment Guide for Developer-Owned, Hosted User Choice**

**Principles**
- Informed user choice
  - Users should choose which billing system they want to use.
  - Users should have the information required to make an informed choice.
- Optimize for conversion
- User Data Privacy

**Requirements**
UX Guidelines
*Definitions*

| Term | Definition |
|------|------------|
| User Choice Screen | Refers to the contents within the entire screen that the user will see when they are making a choice between the developer's & Google Play's billing systems. |
| SKU Module | Represents a module within the User Choice Screen what the user is purchasing and at what the price/terms. |
| Choice Module | Represents a module within the User Choice Screen where the user chooses between the developer's & Google Play's billing systems. |

*User Choice Screen*
The User Choice Screen consists of only 4 components
- Header (Optional)
- SKU Module
- Choice Module
- Footer (Optional)

*SKU Module*
- Developer may render SKU module in their own UX / tone / copy
- SKU module must contain the following information:
  - SKU title
  - Pricing Terms (including ongoing subscriptions terms, if applicable)
  - Subscription Trial Period (if applicable)
  - Initial paid billing date (if applicable)
- This information must match the data sent to Google Play's billing system, if user chooses to checkout with Google Play's billing system



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250146

**EXHIBIT 1532-031**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

*Choice Module*
- The Choice Module must include the following components:
  - Title (to delineate choice module from SKU module)
  - Short agreed upon text explaining the choice users need to make
  - Billing System Options: 2 checkout options that allow users to complete their purchases

- Billing System Options: The choice module must show two options through which they can finish their purchase
  - The developer's billing system and Google Play's billing system should be displayed as two separate, actionable options
  - The Google Play choice must be rendered in accordance with Google Play Brand Guide
  - Both options must be clearly displayed "above the fold"; if Google Play's billing system is displayed "below the fold", the parties commit to meet and revise the UX Guidelines, in the mutual interest to promote user freedom of choice in billing. The parties acknowledge that the form factor of a very limited set of mobile devices may not enable Google Play's billing system to appear above the fold with the Developer expanded state. The parties agree to evaluate whether UX guidelines to be revised based on data on the frequency of occurrence of Google Play's billing system below the fold.
  - Both options must be displayed before users are asked to enter any further information, such as FOP input fields
  - The Google Play's billing system option should not be represented as a form of payment either explicitly or implicitly
- Copy
  - All product-related copy presents Google Play Billing accurately and there is no inaccurate representation of the two choices
- CTAs (Call to action):
  - Each billing option should include a CTA that makes it clear that users are making a choice between billing systems (each with their own set of payment options)
  - CTA text should be represented equally and follow the same pattern for both developer & Google Play's billing system. This text needs to be agreed upon between both developer & Google Play
    - For purely example purposes: If CTA copy is "Pay with _____", then this will result in 2 CTAs: "Pay with Developer" & "Pay with Google Play"
- Equal Visual Representations: All buttons / CTA for the choice module should be represented in an equal manner. This includes but is not limited to choice options presentation, button sizes, text size/style, tap targets, and icon sizes.
- Expand & Collapse: Each billing option will have an "expanded" and "collapsed" state. Each state provides an intuitive UI that encourages interaction and presents clear information that allows users to make an informed decision.
  - Collapsed: The following must be included in the collapsed state of each option:
    - Icon: Icon representing the billing system
    - CTA: Call to action to continue, for purely example purposes: "Pay with X"
    - Subject to mutual agreement: Optionally available: One line of additional information to display the billing system's benefits
  - Expanded: The following must be included in the expanded state of each option (in addition to all required elements defined in the collapsed state)



pg. 32

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250147

**EXHIBIT 1532-032**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

■       Flexibility to determine the number of Form of Payment (FOP) icons initially visible to the user.  If more FOPs are available but cannot be shown due to space constraints, display "+more"

●       Order of FOPs is determined by the billing system (i.e. Google Play will determine which icons will be presented in which order for the Google Play's billing system option)

●       Available FOPs must be customised by country. Google Play will share a list of Play's billing system FOPs available by country.

■       Benefits: Up to XX characters (2 lines) of billing system benefits

●       Each party reserves the right to decide CTA regarding their respective benefits of their billing option

●       For the avoidance of doubt, each party agrees not to make denigrating comments or negative inferences about the capabilities of the other party's billing option

■       Input Fields (Optional): The expanded state may also include input fields for FOP information collection (e.g., credit card input), so long as the expanded form doesn't push the other choice below the fold

○       The default state (expanded vs. collapsed) of each billing option will be set by country subject to Exhibit F.

*Portrait & Landscape*
The User Choice Screen must match both portrait and landscape in-app experiences. If the developer only chooses one of these formats, then they only need to support check out in that format.

*Languages & Localization*
Best effort to use device language where possible to respect user preferences.

*Google Play Brand Guide*

| Google Play icon | Google Play prism |
|---|---|
| Minimum Dimensions | 24dp X 24dp |
| Representation of Google Play Billing in all materials | The parties will work together in good faith to develop a review process.  For the avoidance of doubt, text included in public facing product and documentation relating to Google Play Billing and User Choice Billing must be mutually agreed upon in writing. |

**Experimentation**
Following Phase 1, Dev experimentation will be permitted without Google Play team involvement subject to agreed-upon choice screen guidelines outlined above.

The parties agree to periodic reviews of the experiments and results, and to share findings to inform optimizations where applicable to the broader ecosystem.



pg. 33

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

**EXHIBIT 1532-033**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Exhibit F**

**Phase 1 User Choice Billing Screen Expanded/Collapsed State**

- **Developer Expanded:** Argentina, Brazil, Chile, Colombia, India, Indonesia, Italy, Malaysia, Mexico, Netherlands, Peru, Philippines, Poland, South Africa, Spain, Sweden and Turkey, United Kingdom, United States, Rest of World (Play supported)

- **Google Expanded:** Australia, Canada, Ghana, Nigeria, Pakistan, Qatar, Saudi Arabia, Tanzania, Thailand, and Vietnam. For the avoidance of doubt, Developer may elect to include additional markets during Phase 1

- **Developer/Google Both Collapsed:** Japan, Korea, France, Germany



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250149

**EXHIBIT 1532-034**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Exhibit G**

**Marketing & Promotional Activities; Success Fund**

**Success Fund**

During the Addendum Term, Developer and Google will each make available funds of $50M USD each in total over the Term, for marketing and promotional activities. The goal is to promote the resulting developer and product innovations arising out of the collaboration between Google and Developer:

- Increase Android premium device engagement and retention
- Promote Developer installs and engagement on Android products outlined in Exhibit B (Product Integration Requirements)

The parties will mutually agree on campaign planning towards marketing and promotional efforts to meet the goals set out above ("Success Fund"). For the avoidance of doubt, nothing in this Exhibit requires Developer to spend any funds on Google's advertising platforms and Developer has the discretion where to allocate such spend. Each party agrees that it will provide a reasonable fair market value for the activities provided as examples herein.

Mutual campaign reporting between Google and Developer will be limited to mutually agreed campaign performance tracking.

For example purposes only, marketing, promotional, and media spend may include:
- Social or Digital marketing, including paid social campaign, paid search, and TV
- YouTube/social media video produced by Developer to showcase new device release or other Developer/Android/Google
- Social media vid/placement of a short and long-form video (e.g., an advertisement) on broadcast TV, "Out Of Home" (e.g. billboards, transit ads, etc.) or digital media.
- Digital media (e.g., such as, but not limited to, web banners, or online video, etc.) & Radio & online audio advertising
- Television advertisements
- Print ads published in newspapers and/or magazines.
- Creative assets for placement on outdoor billboards (inclusive of digital surfaces).
- For Developer, additional promotional surfaces are available to it via its other partnerships.
- Any investment in promotional trials for Google-related platforms or devices

For example purposes only, influencer and creator partnerships spend may include, but are not limited to, social & creator media influencer campaigns for specific Android devices or celebrity product placements for specific Android devices. Each party is responsible for ensuring such influencer and celebrity product placements comply with all endorsement guidelines and other necessary disclosures to consumers.

For example purposes only, retail channel spend may include: retail specific creative assets, including retail fixtures, posters, in-store signage and/or any other type of creative asset displayed at carrier & retail stores or other merchandising channels (e.g. website placement, Product Detail Page, etc.), which adhere to Developer's in-store guidelines provided by Developer to Google.

For example purposes only, hardware bundling promotions may include: Google hardware bundling (e.g., Nest, Chromecast, Google TV hardware, etc.), Google accessory hardware bundling (e.g., controllers,



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250150

**EXHIBIT 1532-035**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

earbuds, wearables, speakers, etc.), Promotions for Android and Pixel tablets and Chromebooks, TVs & Set Top Boxes that run on Android TV & Google TV OS.

**Success Fund Availability**
Funds will be spent to promote new Spotify app executions on Android surfaces. The parties will collaborate and jointly agree on the timing and the selected Android / Developer features to promote based on the agreed public availability announcements and quality improvements in Exhibit B ("Product Integrations")

**Success Fund Governance Plan**
Each party will provide a team to help ensure the successful delivery of the objectives of the Success Fund and will designate a Success Fund project manager who will be the primary point of contact. Each party will ensure that sufficient representatives of the party attend frequent and recurring calls between representatives of the parties to align on Success Fund uses and monitor progress and deployment of the agreed Success Fund activities.

Key tasks of each party's Success Fund project managers will include:
1) Overall oversight and project management of the Success Fund activities;
2) Planning, campaign development and approvals;
3) Regular project meetings with relevant stakeholders to ensure delivery of the campaigns;
4) Meeting to review campaign performance; and
5) Provide reporting on agreed success metrics.

**Marketing Spend Thresholds**. If either party is required under applicable law to remit Taxes in connection with marketing spend (e.g., Success Fund) then that party will include such amount in its overall calculation of its costs and expenses and commitment thresholds for the marketing spend.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY          GOOG-PLAY-011250151

**EXHIBIT 1532-036**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Exhibit H**

**Taxes**

All terms related to taxes and tax matters provided under the DDA apply, except as modified by the following terms:

1. **Definitions**.

    a. "**Tax(es)**" means all government-imposed charges, including taxes, government levies, duties, imposts, withholdings, and Transaction Taxes but not taxes based on Google's or Developer's net income, net worth, asset value, property value, or employment.

    b. "**Transaction Tax(es)**" means taxes that are imposed on the purchase price or cost of goods or services, including value-added taxes (VAT), goods and services taxes (GST), sales taxes, and similar transaction taxes.

2. **Tax Documentation and Representations**.

    a. The parties will, within a reasonable timeframe, provide the other with copies of applicable tax documentation, certifications, or other appropriate evidence reasonably requested in writing by the other, including information or documentation to satisfy audit requests by relevant tax authorities. For data required to be provided by Google to support tax authority requests on audits of Spotify, Google will use commercially reasonable efforts to work with Spotify in good faith to provide the same level of documentation to Spotify in response to audit requests by relevant tax authorities as Google provides to support Google's tax positions in an audit.  For data required to be provided by Spotify to support tax authority requests on audits of Google, Spotify will use commercially reasonable efforts to work with Google in good faith to provide the same level of documentation to Google in response to audit requests by relevant tax authorities as Spotify provides to support Spotify's tax positions in an audit.

    b. Developer hereby represents and warrants that Developer is not acting as an agent or appointee on behalf of any other person in respect of any transaction undertaken through Developer's platform and processed on Google Play's billing system, and Developer agrees to provide written notification to Google at least ninety (90) days prior to any such agency or appointment taking effect.

    c. For a deemed supply for VAT purposes between Spotify AB and Google, Spotify AB will issue a legally compliant tax invoice to Google to reflect such deemed supply to the extent required by local law. Spotify AB is to send the tax invoice to an email address to be provided by Google to Spotify no later than thirty (30) days prior to the initial launch of UCB in accordance with this Addendum. For the avoidance of doubt, this provision applies solely to Spotify AB.

3. **Paid Transactions processed on Google Play's billing system**.

    a. Program Fee. The Program Fee is exclusive of any applicable Transaction Taxes. Developer is responsible for paying any Transaction Taxes arising on the Program Fee. Where Google is required under applicable law to discharge Taxes arising on the Program Fees, Google will calculate, determine, and deduct such applicable Taxes from the amount that Google remits to Developer in addition to (and without any offset from) the Program Fee.



pg. 37

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250152

**EXHIBIT 1532-037**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

b.  <u>Tax Categories</u>.

    i.    For Paid Transactions processed on Google Play's billing system for which Developer is responsible for Transaction Taxes under Schedule 2 to this Exhibit H, Developer is solely responsible for providing and maintaining accurate inputs for tax categorization of Products. Any adjustments that Developer makes to the tax categorization of Products will take effect according to the terms provided by Google Play for tax categories.

    ii.    For Paid Transactions processed on Google Play's billing system for which Google is responsible for Transaction Taxes under Schedule 1 to this Exhibit H, Google is solely responsible for maintaining accurate inputs for tax categorization of Products. Google may use tax category information provided by Developer to determine, charge, and remit Taxes for Paid Transactions for which Google is responsible.

c.  <u>Transaction Tax Responsibility</u>.

    i.    Google will determine in its sole capacity whether Google is responsible for Transaction Taxes on a Paid Transaction processed on Google Play's billing system ("**Google-Responsible GPB Transactions**"). Such determination may be updated or changed by Google from time to time. Google will use commercially reasonable efforts to provide timely prior notice to Developer of such changes or updates to the scope of Google-Responsible GPB Transactions, including (but not limited to) as a written update to Schedule 1 to this Exhibit H, or via email, or via Google Play Console message. In the event that Google and Developer are not in agreement with a change to Google-Responsible GPB Transactions, the parties agree to work in good faith to resolve the disagreement. For the avoidance of doubt, in the event a disagreement cannot be resolved, Google will determine and control Transaction Taxes on Google Play's billing system for Paid Transactions for which Google determines that Google is responsible.

    ii.    For the Paid Transactions on Google Play's billing system in jurisdictions listed in Schedule 1 to this Exhibit H as of the date of this Addendum, Google is responsible for Transaction Taxes. For such transactions that are processed on Google Play's billing system, Google's responsibilities include (but are not limited to) (a) determining if a transaction is taxable; (b) charging and collecting the Transaction Taxes at the applicable rate; (c) remitting the Transaction Taxes to the appropriate taxing authority; and (d) providing any required documentation to the user or appropriate taxing authority.

    iii.    For the Paid Transactions on Google Play's billing system in jurisdictions listed in Schedule 2 to this Exhibit H as of the date of this Addendum ("**Developer-Responsible GPB Transactions**"), Google is not responsible for Transaction Taxes, and therefore Developer is responsible for controlling the settings on Google Play Console for Transaction Taxes made available by Google on Google Play Console. For transactions that are processed on Google Play's billing system for which Developer is responsible for Transaction Taxes, Developer's responsibilities include (but are not limited to) (a) determining if a transaction is taxable; (b) timely update the settings for Transaction Taxes on



pg. 38

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY        GOOG-PLAY-011250153

**EXHIBIT 1532-038**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

Google Play Console to give effect to changes in taxability; (c) verifying the accuracy of any reports used for the Tax calculation; and (d) remitting the Transaction Taxes to the appropriate taxing authority. Google's responsibilities include (but are not limited to) (x) charging and collecting Transaction Taxes at the applicable rate (as determined and provided by Developer on Google Play Console); (y) remitting the collected Transaction Taxes in their entirety to Developer; and (z) providing a purchase receipt to the user.

d. <u>Non Sales-Tax/Specialty Tax.</u> For Florida Communications Services Tax and amusement taxes in the State of Illinois (e.g., Chicago & Evanston Amusement Taxes) Google will implement a system to allow Developer to accurately collect such taxes with the necessary level of granularity within a reasonable timeframe but in any event by the end of H1 2023. Prior to such implementation, Google will provide Developer functionality to set a flat tax rate at or above the lowest rate. Google will collect the aforementioned taxes at the lowest rate across the applicable tax area and remit those amounts to the Developer. Developer, with cooperation from Google and at Google's expense, will request a binding Private Letter Ruling from the State of Florida Department of Revenue proposing a blended rate of 12.57% to cover all CST tax liabilities for the periods until a system solution is implemented. If the proposal is accepted by the State of Florida and the terms of the agreement are met, all liabilities covered by the Private Letter Ruling will be settled for purposes of the Florida Communications Services Tax. If the proposal is not accepted, Spotify will then calculate the delta between the amount collected and the highest rate in the applicable tax area and remit at the highest rate to the relevant Authorities. Developer will notify Google of the amount paid and Google shall reimburse Developer the delta within 30 days. To the extent that there is a portion of users where the parties agree it is appropriate to seek a refund from the Florida Department of Revenue, then within 60 days after remittance of such taxes, Google, at its own expense, will jointly co-operate in preparing a claim that Developer will file for refund with the State of Florida to reclaim all overpaid taxes and remit those to Google within 30 days of receipt of funds. Once Google has implemented the appropriate systems to collect taxes with the desired level of granularity, Google will collect the taxes listed in this section at the appropriate rates and remit the full amount to the Developer. In addition, once the appropriate systems are in place, Google will also include such taxes listed in this section in its obligations under Section 3(c)(iii) above.

4. **Paid Transactions Processed on Alternative In-App Billing Systems**.
Developer hereby represents and warrants that, as between Developer and Google, Developer is responsible for collecting and remitting to the applicable tax authority any Taxes on Paid Transactions processed on an Alternative In-App Billing System, including (but not limited to) (a) determining if a Paid Transaction is taxable; (b) charging and collecting the Taxes at the applicable rate; (c) remitting the Taxes to the appropriate taxing authority; and (d) providing any required documentation to the user or appropriate taxing authority.

5. **Indemnities.**

a. Developer will indemnify and hold Google harmless against any and all Tax Claims against Google for any Taxes, interest, penalties, or fines arising out of any misdeclaration or miscategorization (including with respect to the tax categorization of Products) by Developer arising from Paid Transactions processed on Google Play's billing system.



pg. 39

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

**EXHIBIT 1532-039**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

b. Developer will indemnify and hold Google harmless against any and all Tax Claims against Google for Taxes, interest, penalties, or fines arising from Paid Transactions processed on an Alternative In-App Billing System.

c. Except in the case of a misdeclaration or miscategorization by Developer as provided under Section 5(a), Google will indemnify and hold Developer harmless against any and all Tax Claims (subject to Section 6 below) against Developer for Taxes, interest, penalties, or fines arising from Paid Transactions processed on Google Play's billing system in Google-Responsible GPB Transactions (the scope of which is currently reflected in Schedule 1 to this Exhibit H).

d. Except in the case of non-sales tax Transaction Taxes, Google will indemnify and hold Developer harmless against any and all Tax Claims (subject to Section 6 below)  against Developer for any Taxes, interest, penalties, or fines arising as a result of Google errors (because of which Google is not able to apply Tax as entered by the Developer in Google Play console) arising from Paid Transactions processed on Google Play's billing system in Developer-Responsible GPB Transactions (the scope of which is currently reflected in Schedule 2 to this Exhibit H). Once any systems are in place to collect taxes within the scope of Section 5(e) of this Exhibit H (below), this Section 5(d) will be extended to include such taxes as well.

e. For Florida Communications Services Tax and amusement taxes in the State of Illinois (e.g., Chicago & Evanston Amusement Taxes), Google will indemnify and hold Developer harmless against any and all claims assessed by any tax authority during a tax audit against Developer for any Taxes, interest, penalties, or fines until Google has an appropriate system in place to allow Developer to collect such taxes with the necessary level of granularity. To the extent Developer believes that there are other applicable taxes similar to the ones mentioned in this Section 5(e), that Google will discuss in good faith whether such taxes are applicable, and upon mutual agreement, may include such taxes under this Section 5(e).

f. Notwithstanding anything to the contrary, nothing in this Addendum including this Exhibit H limits or excludes either party's liability under Sections 5(a), 5(b), 5(c), and 5(d) above of this Exhibit H, except that neither party's liability under Section 5(e) will exceed Three Million Five Hundred Thousand US Dollars (US$3,500,000) including penalties and interest.

6. **Indemnity Procedures**.

a. Definitions.  The following defined terms will apply for purposes of Section 6 of this Exhibit H, "Indemnified Tax Claims and Disputes" only:

    i. "Tax Dispute" means any proceeding relating to a Tax Claim where conduct is controlled by Developer or Google, as applicable as set forth in Section 6(b).

    ii. "Governmental Tax Authority" means any relevant governmental tax authority with respect to Tax Claims.

    iii. "Penalties" includes (without limitation) all interest, fines, penalties, and surcharges imposed by any Governmental Tax Authority in relation to Transaction Taxes.



pg. 40

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

**EXHIBIT 1532-040**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

iv.    "<u>Indemnifying Party</u>" means Google or Developer, as applicable under Sections 5(a)-(e) of this Exhibit H.

v.    "<u>Tax Claim</u>" means any Taxes or Penalties assessed by a Governmental Tax Authority against Google or Developer.

b.   <u>Management of Tax Claims and Tax Disputes</u>

i.    If a Governmental Tax Authority asserts (orally or in writing, including in the course of any audit conference, information document request (IDR), proposed adjustment, or other formal or informal communication) a Tax Claim related to an amount indemnified under Sections 5(a), 5(b), 5(c), 5(d), or 5(e) of this Exhibit H, then the Indemnified Party shall give written notice (including via e-mail) to the Indemnifying Party not more than thirty (30) days after the Indemnified Party receives notice of such assertion, and such written notice shall include reasonably sufficient details of such Tax Claim, the due date for any payment, and the time limits for any appeal.

ii.    The Indemnifying Party will provide evidence within thirty (30) days after receiving such notice above, to be used by the Indemnified Party or its Affiliates to initiate a Tax Dispute against any liability assessed against or otherwise imposed on the Indemnified Party by reason of such Tax Claim. In the event that a Governmental Tax Authority demands evidence in less than thirty (30) days, the parties will work together in good faith to timely meet such demand.

iii.   The Indemnified Party shall keep the Indemnifying Party reasonably informed as to the progress of such Tax Dispute. The Indemnified Party shall consider the Indemnifying Party's feedback with respect to the portion of any proceeding which relates to a Tax Claim.

iv.    The Parties shall consult and cooperate in advance of the Indemnified Party settling or otherwise compromising any Tax Claim.

v.    If, after the Parties have followed all procedures described under this Section 6(b)(i)-(iv) in response to a Tax Dispute arising over a Tax Claim and taken all reasonable steps to cooperate and exhaust all available administrative and judicial remedies to mitigate and resolve such Tax Claim, the Governmental Tax Authority proceeds to issue a final assessment or decision against the Indemnified Party for the Tax Claim, and upon presentation to the Indemnifying Party of audit workpapers related to this issue, then the Indemnifying Party shall agree to reimburse the Indemnified Party for the amount of such unfavorably resolved Tax Claim (the "**Indemnified Tax Claim**") as described under Section 6(c).

vi.    The terms of this Section 6 shall supersede any indemnity provisions in the Addendum with respect to tax-related claims (including but not limited to Sections 11 and 12). For the avoidance of doubt, the Indemnifying Party and its Affiliates shall be jointly and severally liable for the Indemnified Tax Claim.

c.   <u>Tax Claims; Reimbursement</u>.

i.    Subject to Section 6(b) of this Exhibit H, if the Indemnified Party is required by a Governmental Tax Authority to make a payment of Indemnified Tax Claim, then



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY      GOOG-PLAY-011250156

**EXHIBIT 1532-041**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

the Indemnified Party shall (and shall be entitled to) make that payment within the time and in the amount, as required by the Governmental Tax Authority.

ii.    Subject to agreement as per Section 6(b) of this Exhibit H, within thirty (30) days of receiving a demand / order for the Indemnified Tax Claim issued by the Governmental Tax Authority for making a payment under Section 6(c)(i) of this Exhibit H, the Indemnified Party shall deliver to the Indemnifying Party a copy of such demand / order.

iii.    Within ninety (90) days of receiving the demand / order provided by the Indemnified Party under Section 6(c)(ii) of this Exhibit H, the Indemnifying Party shall reimburse to the Indemnified Party an amount (the "**Reimbursement**") equal to the sum of the amount of Taxes and Penalties paid by the Indemnified Party under Section 6(c)(i) of this Exhibit H in relation to an Indemnified Tax Claim.

7.   **Taxes Arising on True-Up Payments**.

   a.   <u>Payment Terms</u>. These terms apply to the true-up payments contemplated under Section 3.3 of this Addendum and apply in addition to the Payment Terms provided under Section 6 of this Addendum.

   b.   <u>Transaction Taxes</u>. All payments, deemed payments, or reimbursements of Program Fees under Section 3.3 of this Addendum are exclusive of Transaction Taxes. Where required under law, the invoicing party will charge Transaction Taxes and the invoiced party shall be responsible for paying such Transaction Taxes, unless the invoiced party provides the invoicing party with a timely and valid tax exemption certificate. The invoiced party is responsible for paying any Transaction Taxes arising on payments to the invoicing party.

   c.   <u>Withholding Taxes on Payments from Google to Developers</u>.

       i.    <u>Spotify AB and Spotify India LLP</u>. If Google is required under applicable law to withhold Taxes from its payments to Spotify AB or Spotify India LLP, as applicable, and remit such Taxes to any governmental taxing authority, then Google will pay to Spotify AB or Spotify India LLP, as applicable, the remaining net amount after such Taxes have been withheld. Spotify AB or Spotify India LLP, as applicable, agrees to timely provide, as soon as reasonably practicable, any tax documentation or certification requested by Google, including IRS Forms W-8 or local equivalent. Spotify AB or Spotify India LLP, as applicable, hereby certifies that any services that it is deemed to perform pursuant to this Addendum are not performed in the United States or Singapore and furthermore agrees to provide written notification to Google at least ninety (90) days prior to any such services being performed in the United States or Singapore. Provided Spotify AB and Spotify India LLP furnish valid U.S. tax documentation (e.g. Forms W-8, W-9), the parties agree that no U.S. withholding Taxes are applicable.

       ii.    <u>Spotify USA Inc</u>. If Google is required under applicable law to withhold Taxes from its payments to Spotify USA Inc. and remit such Taxes to any governmental taxing authority, then Google will pay to Spotify USA Inc. the remaining net amount after such Taxes have been withheld. Spotify USA Inc. agrees to timely provide, as soon as reasonably practicable, any tax documentation or certification requested by Google, including IRS Forms W-9. Spotify USA Inc.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY        GOOG-PLAY-011250157

**EXHIBIT 1532-042**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

hereby certifies that any services that it is deemed to perform pursuant to this Addendum are not performed in Singapore and furthermore agrees to provide written notification to Google at least ninety (90) days prior to any such services being performed in Singapore. Provided Spotify USA Inc furnishes valid U.S. tax documentation (e.g. Forms W-8, W-9), the parties agree that no U.S. withholding Taxes are applicable.

d.  <u>Withholding Taxes on Payments from Developer to Google</u>.

   i.  Developer shall not reduce the amount of any payment to Google by any withholding taxes except as provided under subsection (ii).

   ii.  If Developer determines that it is or will be required under Applicable Law to apply withholding taxes on a payment to Google, the Parties agree to engage in good faith to find a mutually agreeable solution to eliminate the required withholding, including by way of documentation or other means available to the extent possible under Applicable Law. If such solution cannot be reached within forty-five (45) days after Developer notifies Google in writing of its determination that it is or will be required to apply withholding taxes on the payment to Google, then to the extent Taxes are required under applicable law to be deducted or withheld from or in respect of payments from Developer to Google, including to the extent that such payments are due in less than forty-five (45) days, Developer will (a) pay the remaining net amount to  Google after such Taxes have been withheld; (b) deposit or remit such Taxes with the relevant applicable tax authority within a reasonable time; and (c) provide Google with a copy of an official tax receipt, a copy of filed forms with the taxing jurisdiction, or other appropriate evidence of such remittance of payment of such Taxes within a reasonable time after request of such documentation.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250158

**EXHIBIT 1532-043**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Schedule 1 to Exhibit H**

**Jurisdictions in which Google is responsible for certain Transaction Taxes on Google Play's billing system**

As per 3(c)(i) of this Exhibit H, Google will determine if a Relevant Product is taxable and if so, the applicable Transaction Tax rate will be collected either by Google, the Payment Processor, or the Authorized Provider, and remitted to the appropriate taxing authority for Products sold to users. Google may update the countries/territories where it will determine and remit the Transaction Taxes and will use commercially reasonable efforts to provide prior notice to Developer. In all other countries/territories, Developer is responsible for determining if a Relevant Product is taxable, the applicable Transaction Tax to be collected, and for remitting the Transaction Taxes to the appropriate taxing authority. For countries/territories listed in Schedule 1 to this Exhibit H, all Taxes (including Transaction Taxes) will be deducted from the final price of Relevant Products sold to calculate the Program Fee and the remainder (sales price less Service Fee and Taxes, if any) will be remitted to Developer.

For clarity, the parties agree that certain Paid Transactions with end users in the following jurisdictions are considered to be within Google's tax responsibility on Google Play's billing system as of the date of this Addendum. Schedules 1 and 2 remain subject to change in the future, and Google will notify Developer of changes and updates in accordance with Section 3(c)(i) of this Exhibit H.

| Jurisdiction | Developer | Google Play Entity |
| --- | --- | --- |
| Åland | Spotify AB | Google Commerce Limited |
| Albania | Spotify AB | Google Commerce Limited |
| Armenia[1] | Spotify AB | Google Commerce Limited |
| Australia | Spotify AB | Google Asia Pacific Pte. Ltd |
| Austria | Spotify AB | Google Commerce Limited |
| Azores | Spotify AB | Google Commerce Limited |
| Bahrain | Spotify AB | Google Commerce Limited |
| Bangladesh | Spotify AB | Google Asia Pacific Pte. Ltd |
| Belarus | Spotify AB | Google Commerce Limited |
| Belgium | Spotify AB | Google Commerce Limited |
| Bulgaria | Spotify AB | Google Commerce Limited |
| Cambodia | Spotify AB | Google Asia Pacific Pte. Ltd |
| Cameroon | Spotify AB | Google Commerce Limited |
| Canada[2] | Spotify AB | Google LLC |

---

[1] Google has taken responsibility as required, but changes are not yet live in the system.

[2] Varies by province.



pg. 44

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250159

**EXHIBIT 1532-044**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| Canary Islands (Spain) | Spotify AB | Google Commerce Limited |
|---|---|---|
| Ceuta (Spain) | Spotify AB | Google Commerce Limited |
| Chile | Spotify AB | Google LLC |
| Croatia | Spotify AB | Google Commerce Limited |
| Cyprus | Spotify AB | Google Commerce Limited |
| Czech Republic | Spotify AB | Google Commerce Limited |
| Denmark | Spotify AB | Google Commerce Limited |
| Estonia | Spotify AB | Google Commerce Limited |
| Faroe Islands | Spotify AB | Google Commerce Limited |
| Finland | Spotify AB | Google Commerce Limited |
| France | Spotify AB | Google Commerce Limited |
| French Guiana | Spotify AB | Google Commerce Limited |
| French Polynesia | Spotify AB | Google Commerce Limited |
| Georgia | Spotify AB | Google Commerce Limited |
| Germany | Spotify AB | Google Commerce Limited |
| Ghana | Spotify AB | Google Commerce Limited |
| Gibraltar | Spotify AB | Google Commerce Limited |
| Greece | Spotify AB | Google Commerce Limited |
| Greenland | Spotify AB | Google Commerce Limited |
| Guadeloupe | Spotify AB | Google Commerce Limited |
| Hungary | Spotify AB | Google Commerce Limited |
| Iceland | Spotify AB | Google Commerce Limited |
| Indonesia | Spotify AB | Google Asia Pacific Pte. Ltd |
| Ireland | Spotify AB | Google Commerce Limited |
| Italy | Spotify AB | Google Commerce Limited |
| Kazakhstan[3] | Spotify AB | Google Commerce Limited |
| Kenya | Spotify AB | Google Commerce Limited |
| Latvia | Spotify AB | Google Commerce Limited |

---

[3] Google has taken responsibility as required, but changes are not yet live in the system.



pg. 45

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY
GOOG-PLAY-011250160

EXHIBIT 1532-045

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| Liechtenstein | Spotify AB | Google Commerce Limited |
| Lithuania | Spotify AB | Google Commerce Limited |
| Luxembourg | Spotify AB | Google Commerce Limited |
| Malaysia | Spotify AB | Google Asia Pacific Pte. Ltd |
| Malta | Spotify AB | Google Commerce Limited |
| Martinique | Spotify AB | Google Commerce Limited |
| Mayotte | Spotify AB | Google Commerce Limited |
| Melilla (Spain) | Spotify AB | Google Commerce Limited |
| Mexico | Spotify AB | Google LLC |
| Moldova | Spotify AB | Google Commerce Limited |
| Monaco | Spotify AB | Google Commerce Limited |
| Morocco | Spotify AB | Google Commerce Limited |
| Netherlands | Spotify AB | Google Commerce Limited |
| New Caledonia | Spotify AB | Google Commerce Limited |
| New Zealand | Spotify AB | Google Asia Pacific Pte. Ltd |
| Nigeria | Spotify AB | Google Commerce Limited |
| Norway | Spotify AB | Google Commerce Limited |
| Oman | Spotify AB | Google Commerce Limited |
| Poland | Spotify AB | Google Commerce Limited |
| Portugal[4] | Spotify AB | Google Commerce Limited |
| Puerto Rico | Spotify AB | Google LLC |
| Réunion | Spotify AB | Google Commerce Limited |
| Romania | Spotify AB | Google Commerce Limited |
| Saint Barthélemy | Spotify AB | Google Commerce Limited |
| Saint Martin | Spotify AB | Google Commerce Limited |
| Saint Pierre and Miquelon | Spotify AB | Google Commerce Limited |
| San Marino | Spotify AB | Google Commerce Limited |
| Saudi Arabia | Spotify AB | Google Commerce Limited |

---

[4] Includes Madeira.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250161

**EXHIBIT 1532-046**

**SPOTIFY AND GOOGLE CONFIDENTIAL // NTK**

| Serbia | Spotify AB | Google Commerce Limited |
|---|---|---|
| Singapore | Spotify AB | Google Asia Pacific Pte. Ltd |
| Slovakia | Spotify AB | Google Commerce Limited |
| Slovenia | Spotify AB | Google Commerce Limited |
| South Africa | Spotify AB | Google Commerce Limited |
| South Korea | Spotify AB | Google Asia Pacific Pte. Ltd |
| Spain | Spotify AB | Google Commerce Limited |
| Svalbard | Spotify AB | Google Commerce Limited |
| Sweden | Spotify AB | Google Commerce Limited |
| Switzerland | Spotify AB | Google Commerce Limited |
| Taiwan | Spotify AB | Google Asia Pacific Pte. Ltd |
| Tajikistan[5] | Spotify AB | Google Commerce Limited |
| Thailand | Spotify AB | Google Asia Pacific Pte. Ltd |
| Turkey | Spotify AB | Google Commerce Limited |
| Ukraine | Spotify AB | Google Commerce Limited |
| United Arab Emirates | Spotify AB | Google Commerce Limited |
| United Kingdom | Spotify AB | Google Commerce Limited |
| United States[6] | Spotify USA Inc | Google LLC |
| Uzbekistan | Spotify AB | Google Commerce Limited |
| Zimbabwe[7] | Spotify AB | Google Commerce Limited |

---

[5] Google has taken responsibility as required, but changes are not yet live in the system.

[6] Google LLC is only responsible for state and local sales tax in jurisdictions with marketplace facilitator laws.

[7] Google has taken responsibility as required, but changes are not yet live in the system.



pg. 47

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250162

**EXHIBIT 1532-047**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

**Schedule 2 to Exhibit H**

**Jurisdictions in which Developer is responsible for Transaction Taxes on Google Play's billing system**

As provided under Section 3.5 of the DDA, Google will determine if a Relevant Product is taxable and if so, the applicable Transaction Tax will be collected either by Google, the Payment Processor, or the Authorized Provider, and remitted to the appropriate taxing authority for Relevant Products sold to users. Google may update the countries/territories where it will determine and remit the Transaction Taxes and will use commercially reasonable efforts to provide prior notice to Developer. In all other countries/territories, Developer is responsible for determining if a Relevant Product is taxable, the applicable rate of Tax to be collected, and for remitting the Taxes to the appropriate taxing authority. For countries/territories listed in Schedule 2 to this Exhibit H, all Taxes (including Transaction Taxes) will be deducted from the final price of Relevant Products sold to calculate the Program Fee and the remainder (sales price and Taxes (in their entirety) less Program Fee) will be remitted to Developer.

For clarity, the parties agree that the following jurisdictions are not included on Schedule 1 and are not considered to be within Google's tax responsibility (except as mentioned below) on Google Play's billing system as of the date of this Addendum. Schedules 1 and 2 remain subject to change in the future, and Google will notify Developer of changes and updates in accordance with Section 3(c)(i) of this Exhibit H.

| Jurisdictions | Developer | Google Play Entity |
| --- | --- | --- |
| Algeria | Spotify AB | Google Commerce Limited |
| Angola | Spotify AB | Google Commerce Limited |
| Antigua and Barbuda | Spotify AB | Google LLC |
| Argentina | Spotify AB | Google LLC |
|  |  |  |
| Aruba | Spotify AB | Google LLC |
| Azerbaijan | Spotify AB | Google Commerce Limited |
| Bahamas | Spotify AB | Google LLC |
| Barbados | Spotify AB | Google LLC |
| Belize | Spotify AB | Google LLC |
| Benin | Spotify AB | Google Commerce Limited |
| Bermuda | Spotify AB | Google LLC |
| Bolivia | Spotify AB | Google LLC |
| Bosnia | Spotify AB | Google Commerce Limited |
| Botswana | Spotify AB | Google Commerce Limited |
| Brazil | Spotify AB | Google LLC |
| British Virgin Islands | Spotify AB | Google LLC |



pg. 48

NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250163

**EXHIBIT 1532-048**

| Burkina Faso | Spotify AB | Google Commerce Limited |
| Cape Verde | Spotify AB | Google Commerce Limited |
| Chad | Spotify AB | Google Commerce Limited |
| Colombia | Spotify AB | Google LLC |
| Comoros | Spotify AB | Google Commerce Limited |
| Costa Rica | Spotify AB | Google LLC |
| Côte d'Ivoire | Spotify AB | Google Commerce Limited |
| Democratic Republic of the Congo | Spotify AB | Google Commerce Limited |
| Djibouti | Spotify AB | Google Commerce Limited |
| Dominica | Spotify AB | Google LLC |
| Dominican Republic | Spotify AB | Google LLC |
| Ecuador | Spotify AB | Google LLC |
| Egypt | Spotify AB | Google Commerce Limited |
| El Salvador | Spotify AB | Google LLC |
| Fiji | Spotify AB | Google Asia Pacific Pte. Ltd |
| Gabon | Spotify AB | Google Commerce Limited |
| Gambia | Spotify AB | Google Commerce Limited |
| Grenada | Spotify AB | Google LLC |
| Guatemala | Spotify AB | Google LLC |
| Guinea | Spotify AB | Google Commerce Limited |
| Guinea-Bissau | Spotify AB | Google Commerce Limited |
| Haiti | Spotify AB | Google LLC |
| Honduras | Spotify AB | Google LLC |
| Hong Kong | Spotify AB | Google Asia Pacific Pte. Ltd |
| India | Spotify India LLP | Google Asia Pacific Pte. Ltd |
| Iraq | Spotify AB | Google Commerce Limited |
| Israel | Spotify AB | Google Commerce Limited |
| Jamaica | Spotify AB | Google LLC |
| Japan | Spotify AB | Google Asia Pacific Pte. Ltd |



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250164

**EXHIBIT 1532-049**

| Jordan | Spotify AB | Google Commerce Limited |
|---|---|---|
| Kuwait | Spotify AB | Google Commerce Limited |
| Kyrgyzstan | Spotify AB | Google Commerce Limited |
| Lao People's Democratic Republic | Spotify AB | Google Asia Pacific Pte. Ltd |
| Lebanon | Spotify AB | Google Commerce Limited |
| Liberia | Spotify AB | Google Commerce Limited |
| Libya | Spotify AB | Google Commerce Limited |
| Macao | Spotify AB | Google Asia Pacific Pte. Ltd |
| Maldives | Spotify AB | Google Asia Pacific Pte. Ltd |
| Mali | Spotify AB | Google Commerce Limited |
| Mauritius | Spotify AB | Google Commerce Limited |
| Micronesia | Spotify AB | Google Asia Pacific Pte. Ltd |
| Mozambique | Spotify AB | Google Commerce Limited |
| Namibia | Spotify AB | Google Commerce Limited |
| Nepal | Spotify AB | Google Asia Pacific Pte. Ltd |
| Nicaragua | Spotify AB | Google LLC |
| Niger | Spotify AB | Google Commerce Limited |
| North Macedonia | Spotify AB | Google Commerce Limited |
| Pakistan | Spotify AB | Google Asia Pacific Pte. Ltd |
| Panama | Spotify AB | Google LLC |
| Papua New Guinea | Spotify AB | Google Asia Pacific Pte. Ltd |
| Paraguay | Spotify AB | Google LLC |
| Peru | Spotify AB | Google LLC |
| Philippines | Spotify AB | Google Asia Pacific Pte. Ltd |
| Qatar | Spotify AB | Google Commerce Limited |
| Republic of the Congo | Spotify AB | Google Commerce Limited |
| Rwanda | Spotify AB | Google Commerce Limited |
| Samoa | Spotify AB | Google Asia Pacific Pte. Ltd |
| Senegal | Spotify AB | Google Commerce Limited |



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250165

**EXHIBIT 1532-050**

SPOTIFY AND GOOGLE CONFIDENTIAL // NTK

| | | |
|---|---|---|
| Seychelles | Spotify AB | Google Commerce Limited |
| Sierra Leone | Spotify AB | Google Commerce Limited |
| Solomon Islands | Spotify AB | Google Asia Pacific Pte. Ltd |
| Sri Lanka | Spotify AB | Google Asia Pacific Pte. Ltd |
| St. Kitts and Nevis | Spotify AB | Google LLC |
| St. Lucia | Spotify AB | Google LLC |
| Suriname | Spotify AB | Google LLC |
| Tanzania | Spotify AB | Google Commerce Limited |
| Togo | Spotify AB | Google Commerce Limited |
| Tonga | Spotify AB | Google Asia Pacific Pte. Ltd |
| Trinidad and Tobago | Spotify AB | Google LLC |
| Tunisia | Spotify AB | Google Commerce Limited |
| Uganda | Spotify AB | Google Commerce Limited |
| United States[8] | Spotify USA Inc | Google LLC |
| United States Minor Outlying Islands (Navassa Island, Baker Island, Howland Island, Jarvis Island, Johnston Atoll, Kingman Reef, Midway Atoll, Wake Atoll) | Spotify AB | Google LLC |
| United States Virgin Islands | Spotify AB | Google LLC |
| Uruguay | Spotify AB | Google LLC |
| Vanuatu | Spotify AB | Google Asia Pacific Pte. Ltd |
| Venezuela | Spotify AB | Google LLC |
| Vietnam | Spotify AB | Google Asia Pacific Pte. Ltd |
| Zambia | Spotify AB | Google Commerce Limited |

---

[8] Spotify USA Inc is responsible for transaction taxes other than state and local sales tax and state and local sales tax in jurisdictions without marketplace facilitator laws.



NON-PARTY HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL EYES ONLY

GOOG-PLAY-011250166

**EXHIBIT 1532-051**