1  Tiffany L. Lee (Bar No. 303007)
   tiffanylee@perkinscoie.com
2  PERKINS COIE LLP
   1201 Third Avenue, Suite 4900
3  Seattle, WA 98101
   Telephone: (206) 359-3304
4  Facsimile: (206) 359-4404

5  *Attorney for Non-Party*
   *Nintendo of America, Inc.*
6

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12  **IN RE GOOGLE PLAY STORE**          MDL No. 3:21-md-02981-JD
    **ANTITRUST LITIGATION**
13                                        **NON-PARTY NINTENDO OF AMERICA**
    THIS DOCUMENT RELATES TO:            **INC.'S STATEMENT PURSUANT TO**
14                                        **LOCAL RULE 79-5(f)(3) IN SUPPORT OF**
    *Epic Games Inc. v. Google LLC et al.*, Case  **ADMINISTRATIVE MOTION TO SEAL**
15  No. 3:20-cv-05671-JD

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Pursuant to Civil Local Rule 79–5(f)(3), non-party Nintendo of America Inc. ("NOA")

2  submits this Statement to support the parties' Joint Administrative Motion to Consider Whether

3  Another Party's Material Should Be Sealed ("Administrative Motion to Seal").  Specifically,

4  NOA seeks to seal portions of Trial Exhibits 384 and 1524 referring to Nintendo[1] ("Nintendo

5  Confidential Information").  NOA requests that those portions of Trial Exhibits 384 and 1524 be

6  redacted from any versions made available in the public record.  This Statement is accompanied

7  by the Declaration of Kristopher Kiel ("Kiel Decl."), which describes the Nintendo Confidential

8  Information in greater detail.

9    The presumptive right of public access to court records "is not absolute," *Kamakana v.*

10  *City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006), and may be denied by the

11  Court to protect confidential information.  *See Phillips ex rel. Estates of Byrd v. General Motors*

12  *Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002).  Trial records may be sealed if a party or non-party

13  "articulate[s] compelling reasons . . . that outweigh the general history of access and the public

14  policies favoring disclosure." *Kamakana*, 447 F.3d at 1178–79.  As described below, NOA's

15  request meets this standard.

16    NOA has taken steps to protect this information throughout the course of these cases.

17  First, NOA understands that Google produced the documents designated as Trial Exhibits 384

18  and 1524 during discovery.  Google labeled the documents "HIGHLY CONFIDENTIAL-

19  ATTORNEYS' EYES ONLY" in part because it includes information that is confidential to non-

20  party NOA.  In addition, during trial, NOA filed motions to seal portions of Trial Exhibits 384

21  and 1524.  *Epic Games Inc. v. Google LLC*, No. 3:20-cv-05671-JD, Dkt. 507, 511 (N.D. Cal.); *In*

22  *Re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD, Dkt. 739, 744 (N.D. Cal.).

23  NOA later withdrew those motions after Epic explained that it would not refer in open court to

24  the document portions that NOA now seeks to seal.  *Epic Games Inc. v. Google LLC*, No. 3:20-

25

26  _____

27  [1] NOA is a subsidiary of Nintendo Co., Ltd. ("NCL"), a Japanese corporation. (Kiel Decl. ¶ 1.)
NCL has many other subsidiaries. (*Id.*) For purposes of this motion only, "Nintendo" refers to
NCL and its subsidiaries, including NOA, even though NCL and its subsidiaries are separate and

28  distinct entities.

1   cv-05671-JD, Dkt. 521, 526 (N.D. Cal.); *In Re Google Play Store Antitrust Litigation*, No. 3:21-
2   md-02981-JD, Dkt. 758, 764 (N.D. Cal.).

3       The Nintendo Confidential Information in Trial Exhibits 384 and 1524 is competitively
4   sensitive and non-public information relating to: confidential contractual arrangements that
5   Nintendo has entered with Google, including the specific terms of the arrangements; financial
6   data regarding the relationship and contractual arrangements between Nintendo and Google; and
7   Nintendo's negotiation strategy relating to Google.  (Kiel Decl. ¶¶ 6, 8, 10.)  The contractual
8   arrangements between Nintendo and Google reflect sensitive information concerning, for
9   example, Nintendo's negotiation strategies in its dealings with Google.  (*Id.* ¶¶ 7, 11.)  Nintendo
10  could suffer significant competitive harm if that information were to become public, including
11  losing any edge over competitors with respect to negotiations with Google.  (*Id.* ¶ 7.)  Public
12  disclosure of detailed financial information has the potential to cause severe harm to Nintendo
13  because competitors could use the information to glean insights into Nintendo's business
14  strategies, both generally and with respect to Google, and take steps to undercut Nintendo's
15  execution of those strategies.  (*Id.* ¶¶ 8, 9.)  And information about Nintendo's relationship with
16  Google, if disclosed to the public, would also undermine Nintendo's market position by allowing
17  competitors to emulate the unique combination of contractual arrangements between Nintendo
18  and Google, which has taken many years to develop.  (*Id.* ¶ 11.)

19      The risk of competitive harm to Nintendo merits sealing the Nintendo Confidential
20  Information and outweighs concerns about access to judicial records.  *E.g.*, *Century Aluminum*
21  *Co. v. AGCS Marine Ins. Co.*, No. 11-CV-02514-YGR, 2012 WL 13042825, at *2 (N.D. Cal.
22  Aug. 10, 2012) (sealing confidential information because "competitive harm may result" from
23  public disclosure that would "reveal confidential business information and strategies");
24  *Koninklijke Philips N.V. v. Elec-Tech Int'l Co.*, No. 14-CV-02737-BLF, 2015 WL 581574, at *2–
25  3 (N.D. Cal. Feb. 10, 2015) (sealing confidential business information that could be used by
26  competitors); *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1228 (Fed. Cir. 2013) (finding
27  disclosure of information that "competitors could not obtain anywhere else" might result in
28  competitive harm and should be sealed); *XIFIN, Inc. v. Firefly Diagnostics, Inc.,* No.

317CV00742BENKSC, 2018 WL 1244781, at *2 (S.D. Cal. Mar. 9, 2018) (sealing "commercially sensitive business information" reflected in a contract, including "proprietary protocols and processes").  The risk of competitive harm is more than theoretical.  The cases here involve a direct competitor to Nintendo—Epic Games. And given the high profile of the cases, NOA expects that the cases and public dockets will be monitored by employees and representatives of many other Nintendo direct competitors in the gaming industry.  NOA's interest in protecting its competitively sensitive information is the kind of "compelling reason" recognized in the Northern District of California as sufficient to justify protections.  *Jam Cellars, Inc. v. Wine Grp. LLC*, No. 19-CV-01878-HSG, 2020 WL 5576346 at *1 (N.D. Cal. Sept. 17, 2020) ("Courts have found that confidential business information in the form of license agreements, financial terms, details of confidential licensing negotiations, and business strategies satisfies the compelling reasons standard") (internal citations omitted); *Skillz Platform Inc., v. AviaGames Inc.*, No. 21-cv-02436, 2023 WL 8720685 at *3 (N.D. Cal. Dec. 18, 2023) ("Compelling reasons exist to seal trade secrets, which includes . . . confidential business information that, if published, may harm a party's competitive standing"); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922 at *3 (N.D. Cal. Jan. 3, 2019) (finding compelling reasons existed to "seal information that, if published, may harm . . . third parties' competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets").

Nintendo requests that the Court grant the administrative motion and seal the Nintendo Confidential Information from Trial Exhibits 384 and 1524 so that such information will be redacted from the versions of Trial Exhibits 384 and 1524 made available in the public case record.  NOA's request is particularly strong because of the circumstances here.  Non-party Nintendo was drawn into this litigation by the parties, not through any actions of its own.  In addition, Nintendo had no control over the trial proceedings or whether the parties would seek to use its highly confidential information.  In this scenario, it would be markedly unfair to publicly disclose Nintendo Confidential Information and subject Nintendo to competitive harm.

1

2    DATED:  December 28, 2023          /s/Tiffany L. Lee
                                        Tiffany L. Lee (CA Bar No. 303007)
3                                        tiffanylee@perkinscoie.com
                                        PERKINS COIE LLP
4                                        1201 Third Avenue, Suite 4900
                                        Seattle, WA 98101
5                                        Telephone: (206) 359-3304
                                        Facsimile: (206) 359-4404
6
                                        *Attorney for Non-Party*
7                                        *Nintendo of America Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATEMENT IN SUPPORT OF ADMINISTRATIVE MOTION TO SEAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

☒     I hereby certify that on December 28, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this case.

*/s/ Tiffany L. Lee*
Attorney