Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*,<br>Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**EPIC'S PROPOSED PERMANENT INJUNCTION** |

The Court, having considered the evidence presented during trial and the jury verdict delivered on December 11, 2023 (the "Verdict"), hereby grants a permanent injunction in favor of the Plaintiff Epic Games, Inc. ("Epic") and against Defendants Google LLC; Google Ireland Limited; Google Commerce Limited; Google Asia Pacific Pte. Limited; and Google Payment Corp (collectively, "Google"), as set forth below.

The goal of this injunction is to open up to competition the two markets found by the jury: the market for the distribution of Android apps ("Android App Distribution Market") and the market for Android in-app billing services for digital goods and services transactions ("Android In-App Payment Solutions Market"), to the benefit of developers of Android apps ("Developers"), developers of payment solutions for use in Android apps and users of Android mobile devices ("Users").

## I.   APPLICABILITY

This Order shall apply to Google and each of its parents, affiliates, subsidiaries, officers, directors, agents, employees, successors, and assigns, to any successor to any substantial part of the business that is the subject of this Order and to all other persons acting in concert with Google and with actual notice of this Order.

## II.   ANDROID APP DISTRIBUTION MARKET

Google is enjoined from enforcing contractual provisions, guidelines or policies, or otherwise imposing technical restrictions, usage frictions, financial terms or in-kind benefits that (i) restrict, prohibit, impede, disincentivize or deter the distribution of Android apps[1] through an Android app distribution channel other than the Google Play Store (an "Alternative Android App Distribution Channel"), including but not limited to, app stores other than the Google Play Store ("Third-Party App Stores"),[2] direct distribution via a web browser, pre-installation on an Android device, or any other means; (ii) have the effect of impeding or deterring competition among Android app distributors (including competition between Alternative Android App Distribution Channels and the Google Play

---

[1] Distribution includes both supply of apps by Developers and acquisition of apps by Users unless otherwise specified.

[2] For the avoidance of doubt, Third-Party App Stores include but are not limited to app stores owned and operated by mobile network carriers ("Carriers"), by original equipment manufacturers ("OEMs") or by Developers.

Store); and/or (iii) otherwise discriminate against or disadvantage Android app distribution through any Alternative Android App Distribution Channel. To effectuate the injunctive relief, the Court orders the following specific remedies addressing Google's conduct in the Android App Distribution Market.

  A. *No Agreements Not To Compete:* Google is prohibited from engaging in the following conduct.

1. **Placement and Preinstallation Terms for Third-Party App Stores:** Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that prohibits, limits or disincentivizes the placement of, preinstallation of, and/or grant of installation permissions ("Installation Permissions") by a Carrier or an OEM to, any Android app or Third-Party App Store, including on the basis of the availability or non-availability of such app or Third-Party App Store on the Google Play Store.
   i. For the avoidance of doubt, Google shall not require or incentivize a carrier or OEM to introduce any additional steps for a User to enable or access a preinstalled Third-Party App Store beyond the steps required to access the Google Play Store when it is preinstalled.
2. **Agreements with Actual or Potential Competing Distributors:** Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that requires or incentivizes—including through the provision of any pecuniary or in-kind benefits, or through the imposition of any financial term or economic loss—any potential or actual provider of an Alternative Android App Distribution Channel (a "Competing Distributor") to scale back, refrain from increasing investment into, or abandon its distribution of Android apps or its entry into the distribution of Android apps, including, but not limited to, incentivizing Competing Distributors not to invest in Alternative

Android App Distribution Channels.  For the avoidance of doubt, this clause includes but is not limited to the following:

    i. Google shall not offer any Competing Distributor a share of revenues from, or related to, the Google Play Store.

    ii. Google shall not offer any Competing Distributor any share of revenues, from any source, that is tied to, related to, or conditioned on the development, preinstallation, launch or placement of any Alternative Android App Distribution Channel, including a Competing Distributor's abstention from any of the foregoing.

    iii. In any agreement with a Competing Distributor, Google shall include a clear and express statement that the terms of that agreement, including the provision of any benefit or financial term, is not in any way conditional on the Competing Distributor's use, development, preinstallation, launch or placement of any Alternative Android App Distribution Channel, including a Competing Distributor's abstention from any of the foregoing.

3. **No Exclusivity:**  Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that requires or incentivizes the distribution of any Android app, or of any content available in or through an app, exclusively on the Google Play Store.

    i. For the avoidance of doubt, any monetary benefit offered to a Developer to distribute any Android app through the Google Play Store in lieu of, or in parallel with, self-distribution of the same Android app, is prohibited by this Paragraph II.A.3.

4. **No MFNs/Limits on Differentiated Content:**  Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that sets a Developer's timing of the release of any Android app on the

                Google Play Store, or the pricing or content of any app so released—or that incentivizes any of the foregoing to be set—in reference to the timing of the launch of such app, or the pricing or content thereof, on any Alternative Android App Distribution Channel, including, but not limited to, enforcing any sim-ship, most-favored nation ("MFN"), content parity or pricing parity requirement in any of Google's Project Hug agreements.

        5. **No Restrictions on Removal of Developer Apps from the Google Play Store:** Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that prohibits the withdrawal of any Android app from the Google Play Store without Google's consent, including, but not limited to, enforcing the non-removal requirement in certain of Google's Project Hug agreements.

    B. *Download Remedies:* With respect to distribution and download outside of the Google Play Store, Google is enjoined from each of the following.

        1. **Parity of Install Flow Regardless of Source:** Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that prohibits or disincentivizes—through any technical, contractual, financial, or other means—the downloading, granting of permissions, installation and/or updating of any Android app through any Alternative Android App Distribution Channel. To implement the foregoing:

            i. With respect to downloading from Third-Party App Stores, Google shall not impose, require, encourage or incentivize the imposition of any prompts, warnings, reminders, settings screens or other "friction" steps on the download of apps from Third-Party App Stores beyond the frictions associated with the downloading of apps from the Google Play Store itself.

      ii.   With respect to downloading outside of a Third-Party App Store, Google shall not impose, require, encourage or incentivize the imposition of any prompts, warnings, reminders, settings screens or other "friction" steps on devices, other than (a) a single one-tap screen asking in neutral language that the user confirm intent to proceed with the app installation or (b) as set forth in Paragraph II.B.2 below.

      iii.   On any given device, Google shall be required to display prompts, warnings, reminders, settings screens or other "friction" steps in connection with the installation of an app from the Google Play Store that are commensurate with those that are imposed (whether by Google, an OEM or a Carrier) in connection with installation from an Alternative Android App Distribution Channel.

2. Notwithstanding the above Paragraph II.B.1:

      i.   Google may include a single one-tap screen asking the user to allow a web browser or Third-Party App Store downloaded from an Alternative Android App Distribution Channel to install other apps upon the first installation attempt from such web browser or Third-Party App Store.

      ii.   Google may impose additional frictions and/or block the installation of apps/stores from the web or an app store for (i) apps/stores whose developers declined to subject their apps/stores to a generally available, distribution-channel-agnostic notarization-like process or (ii) apps/stores that are known malware.

C. *Remedies Concerning Access to Android and Other Google Products or Services:* With respect to access to Android's functionality and other Google products or services, Google is enjoined from each of the following.

1. **Parity of Access to Android Functionality Regardless of Source:** Google shall not enforce any existing agreement, enter into any new agreement or

otherwise engage in any conduct that denies or impedes any Alternative Android App Distribution Channel, or any Android app that was downloaded through any Alternative Android App Distribution Channel, from having access to Android functionality and/or APIs and features (whether such functionality, APIs or features are considered part of Android Open Source Project ("AOSP") or Google Mobile Services ("GMS")) that is equivalent to the access had by any non-Google-owned Android app downloaded through the Google Play Store.

    i. For avoidance of doubt, Google shall grant equal access to Android operating system and platform features, including APIs like the PACKAGE_INSTALLER API, to Developers without discriminating based on the Developers' choice of app distribution channel.  Google may not claim that features which are traditionally part of an operating system or platform are instead part of the Google Play Store.

2. **No Access Restrictions to Other Google Products or Services:**  Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that conditions or impedes access to, restricts the use of, or conditions the terms of access to any of Google's products or services (other than its Google Play Billing ("GPB") service) on the basis of a Developer's actual or intended use of any Alternative Android App Distribution Channel.

    i. For the avoidance of doubt, prohibiting or disincentivizing the inclusion of a link to download or install any Android app through any Alternative Android App Distribution Channel in an advertisement for such an app that is handled or facilitated by Google Search, Google Ads, or similar services would be deemed a violation of this Paragraph II.C.2.

D. *Remedies To Promote Competition in Android App Distribution:*  Google must undertake the conduct below in order to address the cumulative continuing effects of the conduct found to be unlawful and thereby restore competition in the Android App Distribution Market.

1. **Google Play Store Catalog Access and Library Porting:** For a period of six (6) years, Google shall provide Third-Party App Stores access to the Google Play Store app catalog.

    i. On Android-compatible phones that preload what is currently named the GMS suite ("GMS Devices") or any similar package of Google apps and APIs made available to OEMs, Google shall allow Third-Party App Stores to access the Google Play Store's catalog of apps not then available on those Third-Party App Stores. If a Third-Party App Store's User wishes to download and install an app not then available on that Third-Party App Store, Google shall have the Google Play Store download and install that app on the Third-Party App Store User's device through a background process similar to the Alley Oop integration offered by Google to certain third-party Developers. Such apps installed by the Google Play Store shall be governed by the Google Play Store's distribution agreements with Developers, and Google may require the Third-Party App Stores to clearly indicate this to Users.

    ii. Google shall allow Users to provide Third-Party App Stores with access to a list of apps installed by the Google Play Store on the User's GMS Device. Google shall provide Users with the ability, subject to a one-time User permission, to change the ownership for any or all of those apps such that the Third-Party App Store becomes the update owner for those apps when those apps are directly distributed by the Third-Party App Store.

2. **Google Play Store Distributing Third-Party App Stores:** For a period of six (6) years, Google shall allow distribution of competing Third-Party App Stores on the Google Play Store.

      i. The download process of Third-Party App Stores from the Google Play Store shall be identical in all respects to the download process of any other app from the Google Play Store, except that in connection with the first attempt to install an app from a Third-Party App Store downloaded from the Google Play Store, Google may present the User of a downloaded Third-Party App Store with a single one-tap screen asking the User to allow the Third-Party App Store to install other apps.

      ii. Google shall not impose any fees in connection with the distribution of Third-Party App Stores on the Google Play Store pursuant to this Paragraph II.D.2 (including any fees on any sales made by such app stores or in apps distributed directly (*i.e.*, not through the access mechanism in Paragraph II.D.1) by these app stores).

   3. **Mandating Placement of the Google Play Store:** For a period of six (6) years, Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that mandates or incentivizes the placement of the Google Play Store in any specific location on an Android device, including but not limited to the default home screen.

*     *     *

Notwithstanding the preceding prohibitions, nothing in this section shall prohibit Google from engaging in bona fide competition on the merits with respect to the distribution of apps on Android, such as:

   1. Making price or quality improvements to the Google Play Store to differentiate it from Alternative Android App Distribution Channels; and/or

   2. Communicating to OEMs, Carriers, Developers and Users regarding any purported quality or price advantages of the Google Play Store over Alternative Android App Distribution Channels, or otherwise publicly promoting the Google Play Store.

### III. ANDROID IN-APP PAYMENT SOLUTIONS MARKET

Google is enjoined from (i) restricting, prohibiting, impeding, disincentivizing or deterring the use of Android in-app payment solutions other than GPB ("Alternative In-App Payment Solutions"), and/or (ii) otherwise discriminating against Alternative In-App Payment Solutions, Developers that use Alternative In-App Payment Solutions, or any Android app or Third-Party App Store that uses Alternative In-App Payment Solutions. To effectuate the injunctive relief, the Court orders the following specific remedies as it relates to Google's conduct in the Android In-App Payment Solutions Market.

A. *Free Flow of Information Regarding Out-Of-App Purchasing Options*:

1. Google shall not in any way limit, control, or restrict the ways an app can inform Users about out-of-app purchasing options.
2. Google shall not restrict, prohibit, impede, disincentivize or deter Developers from informing Users about out-of-app purchasing options or from offering different prices for in-app purchases using GPB and using out-of-app payment options.
3. Google shall not require Developers to use Google APIs (such as Google's "User Choice Billing" APIs) in order to invoke out-of-app purchasing options.
4. Google shall not impose any Coercive Fees on transactions between a Developer and User made through out-of-payment options to which a User was "steered" by a link within an app.
   i. The term "Coercive Fees" means fees that are higher than: Google's fees for a similar transaction utilizing GPB minus Google's average per-transaction total cost for handling in-app transactions in the preceding calendar year.
   ii. Google shall disclose its calculation of the average per-transaction total costs for handling in-app transactions in any given year to the Compliance Committee provided for in Section IV, and shall make that

total cost public no later than its release of its audited financials for the corresponding calendar year. For the avoidance of doubt, Google will not be required to calculate or disclose publicly its average per-transaction total cost for handling in-app transactions should it decide not to impose any fees on transactions between a Developer and User made through linked out-of-app payment options (as provided for in this Section) and not to impose any fees on in-app transactions using Alternative In-App Payment Solutions (as provided for in Section III.B) in a given year.

B.   *No Tying of Distribution to Payments (Contractual, Economic or Technical)*: Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that requires the implementation of GPB in any Android app, including, but not limited to, enforcing Sections 1 and/or 2 of its Google Play Payments Policy.

1. Google shall not enforce or enter into contractual provisions, guidelines or policies, or impose technical restrictions or financial terms, that (a) restrict, prohibit, impede, disincentivize or deter Developers from integrating any Alternative In-App Payment Solution, whether alongside GPB or in lieu of GPB; or (b) restrict, prohibit, impede, disincentivize or deter Developers from offering different prices for in-app purchases using GPB and any Alternative In-App Payment Solution and/or making that price difference visible to Users.

2. Google shall not require Developers to use Google APIs (such as Google's "User Choice Billing" APIs) in order to invoke Alternative In-App Payment Solutions.

3. Google shall not impose any Coercive Fees on transactions made through Alternative In-App Payment Solutions.

C.   *No Discrimination on the Basis of Payment Solution*:

1. Google shall not reject for distribution, or otherwise disadvantage, any Android app submitted for distribution through the Google Play Store on the basis of the app's actual or intended integration of one or more Alternative In-App Payment Solutions, whether alongside GPB or in lieu of GPB.

2. Google shall not retaliate or threaten to retaliate against any Developer on the basis of such Developer's actual or intended integration of one or more Alternative In-App Payment Solutions into its app(s), whether alongside GPB or to the exclusion of GPB.

3. Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that imposes financial terms, technical limitations or otherwise restricts, prohibits or impedes access to the Android platform, any Android functionality and/or features or APIs, to any Android app (including any Third-Party App Stores) or Developer based on whether or not GPB is used by that app or that Developer as a payment solution exclusively or alongside Alternative In-App Payment Solutions.

4. Google shall not enforce any existing agreement, enter into any new agreement or otherwise engage in any conduct that conditions or impedes access to, restricts the use of, or conditions the terms of access to any of Google's products or services based on whether or not an Android app or a Developer chooses to use GPB as a payment solution exclusively or alongside Alternative In-App Payment Solutions.

\*   \*   \*

Notwithstanding the preceding prohibitions, nothing in this Section III shall prohibit Google from engaging in bona fide competition on the merits with respect to in-app payment solutions for Android apps, such as:

1. Making price or quality improvements to GPB to differentiate it from Alternative In-App Payment Solutions.
2. Communicating to OEMs, Carriers, Developers and Users regarding any purported quality or price advantages of GPB over Alternative In-App Payment Solutions, or otherwise publicly promoting GPB.

Further, nothing in this section shall prohibit Google from seeking a modification of the Court's Order regarding the Android In-App Payment Solutions Market (this Section III) on the basis of changed circumstances (*i.e.*, Google's loss of monopoly power in the Android App Distribution Market).

## IV.   COMPLIANCE

Google shall establish a compliance committee ("Compliance Committee") and retain a compliance officer ("Compliance Officer") in accordance with the below terms and conditions. The Compliance Committee shall be a committee of Google's Board of Directors, consisting of at least three members of the Board of Directors who are not present or former employees of Google and who meet the definition of "Independent Director" under NASDAQ Marketplace Rule 4200(a)(15).

The Compliance Officer shall report directly to the Compliance Committee and to the Chief Executive Officer of Google. The Compliance Officer shall be responsible for the development and supervision of Google's internal programs to ensure compliance with the antitrust laws and this Order. Google shall give the Compliance Officer all necessary authority and resources to discharge the responsibilities listed herein. The Compliance Officer may be removed only by the Compliance Committee for good cause shown and unrelated to carrying out the obligations set forth below in good faith, ordinary diligence and with loyalty to the assigned role.

The Compliance Officer shall have the following duties and responsibilities:

A. Within ninety (90) days after entry of this Order, arrange for delivery to all executives of the Android, Google Play, and GPB business lines, and all officers and directors of Google ("Designated Google Personnel"), a copy of this Order together with additional informational materials describing the conduct prohibited and required by this Order;

B. Ensure that the Designated Google Personnel are annually briefed on the meaning and requirements of this Order and the United States antitrust laws and advising them that Google's legal advisors are available to confer with them regarding any question concerning compliance with this Order or the United States antitrust laws;

C. Obtain from each person described above within sixty (60) days of entry of this Order and annually thereafter, and for each person thereafter succeeding to such a position, a written certification under penalty of perjury pursuant to 28 U.S.C. 1746 that he or she: (i) has read, understands, and agrees to abide by the terms this Order; (ii) has to his or her knowledge either (a) not violated this Order or (b) violated this Order and sets forth the specific facts and circumstances of any violation of this Order; and (iii) has been advised and understands that his or her failure to comply with this Order may result in a finding of contempt of court;

D. On an annual basis, certify to the Court whether or not Google is fully compliant with this Order; and

E. Report promptly to the Court any credible evidence of violation of this Order and any Designated Google Personnel who has refused to sign the certificate required by Section IV.C above.

## V.   ANTI-RETALIATION

Google is enjoined from taking any retaliatory actions against Epic or any of its affiliates in connection with or based on: (a) Epic's filing of its complaint against Google in this litigation; (b) Epic's proceeding against Google in the litigation that resulted in the jury verdict against Google; (c) Epic's pursuit of the injunctive relief contained herein: (d) Epic's August 2020 enablement of a direct payment option in *Fortnite* on the Google Play Store; (e) the steps Epic took to enable that Epic payment option; (f) Epic's 2018 launch of *Fortnite* on Android through an Alternative Android App Distribution Channel; or (g) Epic's actions prior to the 2018 launch (collectively "Prior Epic Actions"). For the avoidance of doubt, prohibited retaliatory actions include any conduct by Google that blocks or makes it disproportionately difficult or costly for Epic (as compared to any other entity) to develop,

distribute, update, publish, offer, make available, market, or advertise, any Android app, Third-Party App Store or Android in-app payment solution, including but not limited to by denying or burdening Epic's access to the Google Play Store or any other Google service.  For the avoidance of doubt, a showing that Google is treating Epic differently than other developers will be *a prima facie* showing of non-compliance with this clause, and the burden will be on Google to prove that such disparate treatment is not retaliatory.

### VI.     ADDITIONAL PROVISIONS

This Court retains jurisdiction to enable Epic or Google to apply to this Court at any time for, or to act *sua sponte* to issue, further orders and direction as may be necessary or appropriate to carry out or construe this Order, to modify any of its provisions, to enforce compliance, and/or to punish violations of its provisions.  Epic or Google may also seek modification of this Order by written motion and for good cause based on changed circumstances.

The use of headings in this Order is for ease of reference only.  The headings have no legal effect, are not to be considered part of this Order and shall not be deemed to alter or affect the meaning or interpretation of any provision in this Order.

Dated: April 11, 2024

Respectfully submitted,

By:    /s/ *Gary A. Bornstein*
           Gary A. Bornstein

**FAEGRE DRINKER BIDDLE & REATH LLP**

Paul J. Riehle (SBN 115199)
paul.riehle@faegredrinker.com

Four Embarcadero Center
San Francisco, California 94111
Telephone: (415) 591-7500
Facsimile: (415) 591-7510

**CRAVATH, SWAINE & MOORE LLP**

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
Timothy G. Cameron (*pro hac vice*)
tcameron@cravath.com
Yonatan Even (*pro hac vice*)
yeven@cravath.com
Lauren A. Moskowitz (*pro hac vice*)
lmoskowitz@cravath.com
Justin C. Clarke (*pro hac vice*)
jcclarke@cravath.com
Michael J. Zaken (*pro hac vice*)
mzaken@cravath.com
M. Brent Byars (*pro hac vice*)
mbyars@cravath.com

825 Eighth Avenue
New York, New York 10019
Telephone: (212) 474-1000
Facsimile: (212) 474-3700

*Counsel for Plaintiff Epic Games, Inc.*