Paul J. Riehle, Bar No. 115199
paul.riehle@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH
LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
CRAVATH, SWAINE & MOORE LLP
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT STATEMENT REGARDING PERMANENT INJUNCTION**<br><br>Judge:    Hon. James Donato |

The Court directed Defendants Google LLC et al. ("Google") and Plaintiff Epic Games, Inc. ("Epic"; collectively, "The Parties") to submit this Joint Statement "of implementation steps and a timeline with milestone dates for the permanent injunction."  Dkt. No.[1] 1109 (Oct. 9, 2025).

**Part I** describes Google's implementation steps and states Epic's positions on those steps for each operative provision of the Injunction, Dkt. No. 1017.

**Part II** requests guidance from the Court regarding communications with the Technical Committee.

## I.     Implementation of Injunction

The chart below summarizes the Parties' positions on Google's compliance with each of the provisions of the Injunction that have operative effect (Injunction Paragraphs 4 - 13).  With respect to Paragraphs 4 through 10, which are currently in effect, the chart describes Google's current compliance approach and notes that the Parties do not have any disputes regarding Google's current compliance approach for these Paragraphs.  Google has indicated to Epic that it intends to adopt certain requirements for user trust and safety and certain service fees.  Epic has indicated to Google that it disagrees that these requirements are necessary for user trust and safety, that it objects to such requirements and fees, and that its position is that they would violate the injunction.  The Parties are discussing these issues.  Google will notify the Court before adopting any such changes to its plans for complying with the Injunction that Epic disputes.  At or before that time, the Parties will raise any disputes regarding Google's future plans with the Court or the Technical Committee, as appropriate.

With respect to Paragraphs 11 and 12, which Google has until July 22, 2026, to implement, the chart reflects that Google will share its implementation plans with Epic on a timing and cadence determined by the Technical Committee but no later than March 31, 2026.

Finally, with respect to Paragraph 13, which concerns the Technical Committee, the Parties have identified the proposed party-selected members and shall report back to the Court on the selection of a proposed third member within a week of this Joint Statement.  The Parties request

---

[1] All references to Dkt. No. are to the MDL docket, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD, unless otherwise noted.

1  the Court's guidance on whether a party may have ex parte communications with that party's

2  selected Technical Committee member.  That issue is addressed in Part II, below.

3

| Injunction Provision | Implementation Steps & Timeline[2] |
|---|---|
| **Injunction Paragraph 4**:<br><br>For a period of three years ending on November 1, 2027, Google may not share revenue generated by the Google Play Store with any person or entity that distributes Android apps, or has stated that it will launch or is considering launching an Android app distribution platform or store. | Google is complying with Injunction Paragraph 4 as follows:<br><br>Google will not share revenue generated by the Google Play store for smartphones and/or tablets in the United States with any (1) original equipment manufacturer ("OEM") of Android smartphones and/or tablets, (2) wireless carrier for smartphones and/or tablets, (3) owner of an Android app store or Android app distribution platform for smartphones and/or tablets, or (4) developer that has stated that it will launch or is considering launching an Android app distribution platform or Android app store for smartphones or tablets.<br><br>To the extent that Google has agreements in place that contain provisions that meet the above description, Google will waive, amend, modify and/or not enforce those provisions for the period during which the Injunction is in effect.<br><br>The Parties do not currently have any disputes regarding Google's compliance with Injunction Paragraph 4. |
| **Injunction Paragraph 5**:<br><br>For a period of three years ending on November 1, 2027, Google may not condition a payment, revenue share, or | Google is complying with Injunction Paragraph 5 as follows:<br><br>Google will not condition a payment, revenue share, or access to any Google product or |

---

[2] Google has adopted certain aspects of its compliance plan to avoid disputes with Epic.  But, in doing so, Google does not concede that those aspects of its compliance plan are required by the Injunction or that a different compliance plan would not satisfy the Injunction.  Google reserves the right to modify its compliance plan if necessary, with notice to Epic so that any disputes can be raised with the Court. Epic reserves all rights with respect to such future changes by Google.

access to any Google product or service, on an agreement by an app developer to launch an app first or exclusively in the Google Play Store.

service on an agreement by an app developer to launch an app on the Google Play store for distribution to smartphones and/or tablets, anywhere in the world, on the same day as, before, or to the exclusion of, launching that app on any third-party distribution platform in the United States.

Notwithstanding the prior paragraph, Google may condition a payment, revenue share, or access to any Google product or service on an agreement by an app developer to launch an app first, at the same time or exclusively on the Android platform, provided that the developer is free to choose any Android app store for distribution to smartphones and/or tablets in the United States.

To the extent there are existing agreements containing provisions that are inconsistent with Google's compliance approach for Injunction Paragraph 5, Google will waive, amend, modify and/or not enforce those provisions during the period in which the Injunction is in effect. Google has informed the counterparties to any such agreements of such waivers, amendments, modifications, or non-enforcement.

The Parties do not currently have any disputes regarding Google's compliance with Injunction Paragraph 5.

**Injunction Paragraph 6:**

For a period of three years ending on November 1, 2027, Google may not condition a payment, revenue share, or access to any Google product or service, on an agreement by an app developer not to launch on a third-party Android app distribution platform or store a version of an app that includes features not available in, or is otherwise different from, the version of the app offered on the Google Play Store.

Google is complying with Injunction Paragraph 6 as follows:

Google will not condition a payment, revenue share, or access to any Google product or service on an agreement by an app developer not to launch, on a third party Android app distribution platform or Android app store for distribution of apps to smartphones and/or tablets in the United States, a version of an app that includes features not available in, or is otherwise different from, the version of the app offered on the Google Play store,

| | |
|---|---|
| | anywhere in the world, for smartphones or tablets.<br><br>To the extent there are existing agreements containing provisions that are inconsistent with Google's compliance plan for Injunction Paragraphs 6, Google will waive, amend, modify and/or not enforce those provisions during the period in which the Injunction is in effect. Google has informed the counterparties to any such agreements of such waivers, amendments, modifications, or non-enforcement.<br><br>The Parties do not currently have any disputes regarding Google's compliance with Injunction Paragraph 6. |
| **Injunction Paragraph 7**:<br><br>For a period of three years ending on November 1, 2027, Google may not condition a payment, revenue share, or access to any Google product or service, on an agreement with an original equipment manufacturer (OEM) or carrier to preinstall the Google Play Store on any specific location on an Android device. | Google is complying with Injunction Paragraph 7 as follows:<br><br>Google will not condition a payment, revenue share, or access to any Google product or service on an agreement with an OEM or carrier to preinstall the Google Play store on any specific location on Android smartphones or tablets for distribution in the United States.<br><br>To the extent that Google has agreements in place that contain provisions that meet the above description, Google will waive, amend, modify and/or not enforce those provisions during the period in which the Injunction is in effect. Google has informed the counterparties to any such agreements of such waivers, amendments, modifications, or non-enforcement.<br><br>The Parties do not currently have any disputes regarding Google's compliance with Injunction Paragraph 7. |
| **Injunction Paragraph 8:**<br><br>For a period of three years ending on | Google is complying with Injunction Paragraph 8 as follows: |

| | |
|---|---|
| November 1, 2027, Google may not condition a payment, revenue share, or access to any Google product or service, on an agreement with an OEM or carrier not to preinstall an Android app distribution platform or store other than the Google Play Store. | Google will not condition a payment, revenue share, or access to any Google product or service on an agreement by an OEM or carrier not to preinstall an Android app distribution platform or Android app store other than the Google Play store on smartphones or tablets for distribution in the United States.<br><br>To the extent that Google had agreements in place that contain provisions that meet the above description, Google will waive, amend, modify and/or not enforce those provisions during the period in which the Injunction is in effect. Google has informed the counterparties to any such agreements of such waivers, amendments, modifications, or non-enforcement.<br><br>The Parties do not currently have any disputes regarding Google's compliance with Injunction Paragraph 8. |
| **Injunction Paragraph 9:**<br><br>For a period of three years ending on November 1, 2027, Google may not require the use of Google Play Billing in apps distributed on the Google Play Store, or prohibit the use of in-app payment methods other than Google Play Billing. Google may not prohibit a developer from communicating with users about the availability of a payment method other than Google Play Billing. Google may not require a developer to set a price based on whether Google Play Billing is used. | Google is complying with Injunction Paragraph 9 as follows:<br><br>Google is not requiring the use of Google Play Billing for users in the United States in apps distributed on the Google Play Store.<br><br>Google is not prohibiting the use of in-app payment methods other than Google Play Billing for users in the United States in apps distributed on the Google Play Store.<br><br>Google is not prohibiting a developer from communicating with users in the United States about the availability of a payment method other than Google Play Billing.<br><br>Google will not require a developer to set a price based on whether Google Play Billing is used for users in the United States in an app distributed in the Google Play Store.<br><br>Google has informed Google Play developers by email, with a link to a public Google |

| | |
|---|---|
| | website, that the above conduct is not prohibited.<br><br>The Parties do not currently have any disputes regarding Google's compliance with Injunction Paragraph 9.<br><br>Google has indicated to Epic that it intends to adopt certain requirements for user trust and safety and certain service fees.  Epic has indicated to Google that it disagrees that these requirements are necessary for user trust and safety, that it objects to such requirements and fees, and that its position is that they would violate the injunction.  The Parties are discussing these issues.  Google will notify the Court before implementing any such guidelines and economic models that Epic disputes, and Epic and Google can raise any disputes at that time before the Court or Technical Committee as appropriate. |
| **Injunction Paragraph 10:**<br><br>For a period of three years ending on November 1, 2027, Google may not prohibit a developer from communicating with users about the availability or pricing of an app outside the Google Play Store, and may not prohibit a developer from providing a link to download the app outside the Google Play Store. | Google is complying with Injunction Paragraph 10 as follows:<br><br> Google is not prohibiting developers from communicating with users in the United States about the availability or pricing of apps outside the Google Play Store.<br><br> Google is not prohibiting developers from offering links to users in the United States to download apps outside the Google Play Store or to complete transactions for digital goods and services.<br><br> Google has informed Google Plays developers by email, with a link to a public Google website, that the above conduct is not prohibited.<br><br>The Parties do not currently have any disputes regarding Google's compliance with Injunction Paragraph 10.<br><br>Google has indicated to Epic that it intends to adopt certain requirements for user trust and safety and |

| | |
|---|---|
| | certain service fees. Epic has indicated to Google that it disagrees that these requirements are necessary for user trust and safety, that it objects to such requirements and fees, and that its position is that they would violate the injunction. The Parties are discussing these issues. Google will notify the Court before implementing any such guidelines and economic models that Epic disputes, and Epic and Google can raise any disputes at that time before the Court or Technical Committee as appropriate. |
| **Injunction Paragraph 11:**<br><br>For a period of three years, Google will permit third-party Android app stores to access the Google Play Store's catalog of apps so that they may offer the Play Store apps to users. For apps available only in the Google Play Store (i.e., that are not independently available through the third-party Android app store), Google will permit users to complete the download of the app through the Google Play Store on the same terms as any other download that is made directly through the Google Play Store. Google may keep all revenues associated with such downloads Google will provide developers with a mechanism for opting out of inclusion in catalog access for any particular third-party Android app store. Google will have up to eight months from the date of this order to implement the technology necessary to comply with this provision, and the three-year time period will start once the technology is fully functional. | As a result of the Ninth Circuit's orders, Google has until July 22, 2026, to implement the technology necessary to comply with Paragraph 11.<br><br>Google is working on its plans for implementation of Paragraph 11 and will share those plans with Epic on a timing and cadence determined by the Technical Committee but no later than March 31, 2026. The Parties can present any disputes to the Technical Committee or Court as appropriate. |
| **Injunction Paragraph 12:**<br><br>For a period of three years, Google may not prohibit the distribution of third-party Android app distribution platforms or stores through the Google Play Store. Google is entitled to take reasonable | As a result of the Ninth Circuit's orders, Google has until July 22, 2026, to implement the technology and procedures necessary to comply with Paragraph 12.<br><br>Google is working on its plans for implementation of Paragraph 12 and will share those plans with Epic on a timing and cadence determined by the Technical |

| | |
|---|---|
| measures to ensure that the platforms or stores, and the apps they offer, are safe from a computer systems and security standpoint, and do not offer illegal goods or services under federal or state law within the United States, or violate Google's content standards. The review measures must be comparable to the measures Google is currently taking for apps proposed to be listed in the Google Play Store. If challenged, Google will bear the burden of proving that its technical and content requirements and determinations are strictly necessary and narrowly tailored. Google may require app developers and app store owners to pay a reasonable fee for these services, which must be based on Google's actual costs. Google will have up to eight months from the date of this order to implement the technology and procedures necessary to comply with this provision, and the three-year time period will start once the technology and procedures are fully functional. For the duration of this time period, the Technical Committee described in paragraph 13 below will in the first instance decide challenges to Google's review decisions, with the Court serving as the final word when necessary. | Committee but no later than March 31, 2026. The Parties can present any disputes to the Technical Committee or Court as appropriate. |
| **Injunction Paragraph 13:**<br><br>Within thirty days of the date of this order, the parties will recommend to the Court a three-person Technical Committee. Epic and Google will each select one member of the Technical Committee, and those two members will select the third member. After appointment by the Court, the Technical Committee will review disputes or issues relating to the technology and processes required by the preceding provisions. If the Technical Committee | Epic has identified Michael Ernst, Professor of Computer Science & Engineering at the University of Washington, as its party-selected member of the Technical Committee.<br><br>Google has identified Patrick Brady, Vice President of Engineering, Automotive at Google as its party-selected member of the Technical Committee.<br><br>The Parties shall report to the Court on the selection of a proposed third member within a week of this Joint Statement.<br><br>As discussed in Part II, the Parties request |

| | |
|---|---|
| cannot resolve a dispute or issue, a party may ask the Court for a resolution. The Technical Committee may not extend any deadline set in this order, but may recommend that the Court accept or deny a request to extend. Each party will bear the cost of compensating their respective party-designated committee member for their work on the committee. The third member's fees will be paid by the parties in equal share. | clarification regarding whether a party may have ex parte communications with that party's selected Technical Committee member regarding the subject matter of the Technical Committee's work. |

## II.    Technical Committee

**<u>Parties' Joint Statement:</u>**

Paragraph 13 of the Injunction reads:

> Within thirty days of the date of this order, the parties will recommend to the Court a three-person Technical Committee. Epic and Google will each select one member of the Technical Committee, and those two members will select the third member. After appointment by the Court, the Technical Committee will review disputes or issues relating to the technology and processes required by the preceding provisions. If the Technical Committee cannot resolve a dispute or issue, a party may ask the Court for a resolution. The Technical Committee may not extend any deadline set in this order, but may recommend that the Court accept or deny a request to extend.  Each party will bear the cost of compensating their respective party-designated paid by the parties in equal share.

Dkt. No. 1017 ¶ 13.

### A.    Selection of the Members of the Technical Committee

The Parties have each selected a member to propose for service on the Technical Committee.  Google has selected Patrick Brady, Vice President of Engineering, Android, at Google.  Epic has selected Michael Ernst, Professor of Computer Science & Engineering at the University of Washington.  Mr. Brady and Professor Ernst have identified candidates to serve as the third member of the Technical Committee.  They are working to finalize their selection based

on the candidates' willingness, availability and management of conflicts.  The Parties shall report back to the Court on the selection of a proposed third member within a week of this Joint Statement.

## B.    Technical Committee Dispute Resolution Process

The Parties have proposed to the Technical Committee a process for presentation of disputes or issues for resolution by the Technical Committee.  The proposed process is reflected in **Appendix A**.  The Parties contemplate that, once the Technical Committee is formally appointed, the Technical Committee may wish to make changes to the process before it is finalized.  At a high level, the proposed process addresses:

- Google's disclosure of the technology and processes it intends to use to implement the Injunction (¶ 1);
- The timing and process for submission of disputes or issues for resolution by the Technical Committee (¶ 2);
- The process the Technical Committee will follow in deliberating and resolving disputes or issues (¶¶ 3–5, 8);
- The timing and format of any decision by the Technical Committee (¶¶ 6–7);
- The process for appealing a decision of the Technical Committee to this Court (¶ 9); and
- Miscellaneous other logistical issues such as confidentiality, access to record materials and vacancies (¶¶ 10–13).

## C.    Communications Between Technical Committee Members and the Parties

The Parties have been unable to resolve one matter related to the working of the Technical Committee, which relates to communications between each party and its designee to the Technical Committee.  The Parties' competing proposals on this issue are reflected in Paragraph 5 of the proposed process, and their respective positions are summarized below.

**Epic's Statement:**

Because Google chose to designate a current Google employee as its Technical Committee member, *ex parte* communications between Google and its designee are inevitable.  To ensure parity, Epic should be free to communicate *ex parte* with its designee to the Technical Committee.

Google's proposed designee to the Technical Committee, Patrick Brady, is a current Google employee who "lead[s] Android Auto and other (confidential) efforts for Google" and who testified at his deposition that his work at Google had previously involved deciding how the Google Play store would compete with other app stores. *See* Patrick Brady, LinkedIn Profile, available at www.linkedin.com/in/patrickbrady-604a381.  It is Epic's understanding that Mr. Brady reports to Sameer Samat, Google's President of the Android Ecosystem, whose responsibilities include overseeing the Google Play store.  Under these circumstances, it is inevitable that Mr. Brady will have *ex parte* communications with Google representatives about topics that relate to the disputes or issues that come before the Technical Committee.  Even with the best of intentions from all involved, it would be impossible as a practical matter to wall Mr. Brady off from communicating on those topics with his fellow employees, including his direct supervisor.[3]  At the very least, it would be impossible for Epic or the Court to police such communications or prevent them from taking place.  Google's argument that Mr. Brady currently leads Android Auto (and will not be assigned to "any projects that relate to Google's implementation of the Injunction") has no merit; Google has selected Mr. Brady *because* of his expertise in Android as it relates to smartphones and tablets, not for his knowledge about cars. And as Google admits, Mr. Brady reports to and regularly communicates with Android leadership whose responsibilities include the Google Play store.  Google has proposed no safeguards or guarantees other than a promise to honor the moratorium on *ex parte* communications that Google proposes, and Epic is not aware of any safeguards or guarantees that could give Epic or the Court meaningful comfort while Mr. Brady remains a Google employee.  Epic agrees with Google that the Technical Committee's overall goal is independence, but it was Google's choice to nominate a

---

[3] Google's proposal to somehow prevent Mr. Brady from participating in communications concerning "Google's injunction compliance proposals or any other topic related to the Play injunction" is simultaneously too cabined (the Technical Committee will consider more than just Google's compliance proposals) yet hopelessly vague ("any other topic" could cover a swath of Android issues that Mr. Brady handles for Google, including "(confidential) efforts" described in his LinkedIn profile, that are impossible for the Court to define or police).

1    Technical Committee member from within its own organization that risks frustrating that goal,

2    even if inadvertently.  Parity requires that Epic too should be free to communicate with Prof.

3    Ernst.

4

5    **Google's Statement:**

6         Google requests clarification on this issue as Epic's position is inconsistent with Google's

7    understanding of the function and role of the Technical Committee.  Under Paragraph 13, the

8    Technical Committee uses its independent judgment to address disputes between the parties

9    regarding the technology and processes for implementing the Injunction, with the goal of

10   resolving such disputes without burdening the Court.  The process document drafted by the parties

11   allows the Technical Committee to request information and/or argument from counsel via

12   communications to both parties at any time.  In light of these provisions, allowing the party

13   Committee members to communicate *ex parte* with the parties about issues before the Committee

14   is both unnecessary and inconsistent with the Committee's role.  Such communications would

15   give the party members information that is not available to the full Committee and would turn the

16   party members into advocates for positions articulated to them on an *ex parte* basis.

17        Epic's suggestion that such *ex parte* communications between Google and Mr. Brady are

18   "inevitable" is incorrect.  Mr. Brady leads the Android Auto team, which handles projects related

19   to the use of the Android operating system in automobiles, not on smartphones or tablets.  Epic

20   says that Mr. Brady was selected for the Technical Committee based on his experience with

21   smartphones and tablets, but his prior experience has no bearing on his compliance with a

22   prohibition on *ex parte* communications about the work of the Committee.  He is not currently

23   working on any projects that relate to Google's implementation of the Injunction and Google will

24   not assign him to any such projects as long as he serves on the Technical Committee.  The

25   responsibilities of Mr. Brady's supervisor, Mr. Samat, are far broader than just the Google Play

26   Store—Mr. Samat oversees the entire Android Ecosystem.  Mr. Brady fully understands the scope

27   of the Technical Committee's responsibilities and the importance of complying with a prohibition

28

on *ex parte* communications on issues that come before the Committee.  Indeed, Mr. Brady and Google Play store leaders have been specifically advised that no one at Google may communicate with Mr. Brady about Google's Injunction compliance proposals or any other topic related to the Play Injunction.  And in light of the significant progress made by the parties to narrow disputes related to implementation of the Injunction to this point, it seems likely that the number of issues falling into that category will be relatively discrete.  Under these circumstances, Google respectfully suggests that a prohibition on *ex parte* communications is workable and fair and best suited to the independent role of the Committee.

DATED:  October 30, 2025

**MUNGER, TOLLES & OLSON LLP**
Glenn D. Pomerantz
Kuruvilla Olasa
Jonathan I. Kravis
Justin P. Raphael
Dane P. Shikman
Lauren N. Beck

By:   */s/ Kuruvilla Olasa*

Kuruvilla Olasa

*Counsel for Defendants Google LLC et al.*

DATED:  October 30, 2025

**MORGAN, LEWIS & BOCKIUS LLP**
Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Leigha Beckman

By:   */s/ Brian C. Rocca*

Brian C. Rocca

*Counsel  for Defendants Google LLC et al.*

DATED:  October 30, 2025

**CRAVATH, SWAINE & MOORE LLP**
Gary A. Bornstein (*pro hac vice*)
Yonatan Even *(pro hac vice)*
Lauren A. Moskowitz *(pro hac vice)*
Michael J. Zaken *(pro hac vice)*
M. Brent Byars *(pro hac vice)*

**FAEGRE DRINKER BIDDLE & REATH LLP**
Paul J. Riehle (SBN 115199)

By:   */s/ Gary A. Bornstein*

Gary A. Bornstein

*Counsel for Plaintiff Epic Games, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer of this document attests that concurrence in the filing of the document has been obtained from each of the other signatories.

By:  */s/ Kuruvilla Olasa*

Kuruvilla Olasa

JOINT STATEMENT REGARDING PERMANENT INJUNCTION
Case Nos. 3:21-md-02981-JD, 3:20-cv-05671-JD