Paul J. Riehle, Bar No. 115199
paul.riehle@faegredrinker.com
**FAEGRE DRINKER BIDDLE & REATH LLP**
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL PORTIONS OF MATERIALS IN SUPPORT OF JOINT MOTION TO MODIFY PERMANENT INJUNCTION**<br><br>Judge:   Hon. James Donato |

## INTRODUCTION

Pursuant to Civil Local Rules 7-11 and 79-5, and Paragraphs 25-30 of this Court's Standing Order for Civil Cases, Plaintiff Epic Games, Inc. ("Epic") and Defendants Google LLC, *et al.* ("Google") respectfully move the Court to seal portions of materials submitted in support of the parties' Joint Motion to Modify Permanent Injunction. This Administrative Motion to File Under Seal is supported by the Declaration of Kuruvilla Olasa in Support of the Administrative Motion to File Under Seal ("Olasa Decl."), the Declaration of Ariel Spivak in Support of the Administrative Motion to File Under Seal ("Spivak Decl."), the Declaration of Randy Gelber in Support of the Administrative Motion to File Under Seal ("Gelber Decl."), and the Proposed Order submitted herewith.

## ARGUMENT

Recognizing the presumption in favor of access to court papers, the parties have publicly filed their Joint Motion to Modify Permanent Injunction, as well as the proposed Modified Injunction itself. For the avoidance of doubt, the parties do not seek to seal Exhibits 1 or 4 to the confidential settlement terms ("Term Sheet"). As such, the public will have full access to the proposed form of Modified Injunction (Exhibit 4 to the Term Sheet) and will see the specific changes the parties are requesting to the Permanent Injunction.

This sealing request is tailored only to other settlement terms that the parties deemed confidential in resolving the legal dispute as well as forward-looking technical and commercial provisions that may never come into effect if the contingencies in the Term Sheet are not satisfied. It focuses on two highly sensitive categories of non-public information: (1) the Term Sheet between the parties that resulted from complex negotiations and that will come into force only if, among other things, the Court grants the parties' request to modify the injunction; and (2) Exhibits 2 and 3 to the Term Sheet, which reflect both parties' detailed, forward-looking technical (Exhibit 2) and financial (Exhibit 3) terms. *See* Declaration of Kuruvilla Olasa in Support of Joint Motion to Modify Injunction, Ex. A (Term Sheet, Ex. 2 to Term Sheet, and Ex. 3 to Term Sheet).

A court may seal records where the "party seeking to seal a judicial record" demonstrates

-1-

JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
IN CONNECTION WITH JOINT MOTION TO MODIFY PERMANENT INJUNCTION
Case Nos. 3:21-md-02981-JD, 3:20-cv-05671-JD

"compelling reasons" that "outweigh the general history of access and the public policies favoring disclosure." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (citations omitted). "Numerous courts in this district have recognized the importance of protecting confidential settlement communications and materials 'in order to promote settlement' and have concluded that this general policy satisfies the . . . 'compelling reasons' standard to seal judicial records." *Doe v. Apple, Inc. Health & Welfare Benefit Plan*, No. 22-cv-02566-EJD, 2023 WL 2021697, at *2 (N.D. Cal. Feb. 15, 2023) (quoting *Milliner v. Mutual Secs.*, Inc., No. 15-cv-03354-DMR, 2021 WL 2645794, at *5 (N.D. Cal. June 28, 2021)). Courts have also traditionally "granted protective orders to protect confidential settlement agreements." *Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389 JW, 2008 WL 11357787, at *2-3 (N.D. Cal. July 2, 2008) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002)).

The Parties have tailored their sealing requests to meet the Ninth Circuit's "compelling reasons" standard and promote this Circuit's policy of encouraging settlement. First, there is a strong public interest in maintaining confidentiality of settlement negotiations and settlements, which encourages parties to resolve litigation. Second, the Term Sheet and Exhibits 2 and 3 thereto contain competitively sensitive, forward-looking technical and commercial terms. This type of information constitutes "trade secrets" and non-public financial information that has consistently been held to meet the Ninth Circuit's "compelling reasons" standard for sealing information.

I.   **Disclosure of the Term Sheet Could Frustrate the Strong Public Interest in Maintaining the Confidentiality of Settlement Negotiations and Agreements**

The public has a "significant interest" in preserving the confidentiality of settlement discussions, which "promotes timely and satisfactory conflict resolution." *Micron Tech., Inc. v. Netlist, Inc.*, 744 F. Supp. 3d 1115, 1126 (D. Idaho 2024); *see also Kalinauskas v. Wong*, 151 F.R.D. 363, 365 (D. Nev. 1993) (holding that risk of disclosure of the parties' settlement negotiations threatens the public interest which "favors judicial policies which promote the

completion of litigation"). Public interest also seeks to protect "the secrecy of settlements when desired by the settling parties." *Kalinauskas*, 151 F.R.D. at 365; *see also Bank of Am., N.A. v. Blas*, No. 3:24-CV-00183-SLG, 2025 WL 2480951, at *14 (D. Alaska Aug. 28, 2025) ("[The] "inclusion of confidentiality provisions in [...] settlement agreements is a 'compelling reason' warranting their filing under seal."). Courts further recognize that parties may be unwilling to offer the proposed terms if the settlement is not approved in its negotiated form. *See Facebook*, 2008 WL 11357787, at *3 ("Settlement positions are often extreme and should they be made public a litigant would reasonably fear being judged in the court of public opinion . . . . These concerns would hardly encourage negotiations."). Maintaining confidentiality over settlement agreements thus promotes the Ninth Circuit's "strong policy encouraging settlement of cases." *See, e.g.*, *Gilmore v. People of the State of California*, 220 F.3d 987, 1001 n.17 (9th Cir. 2000).

Here, the Term Sheet was negotiated on a confidential basis and it contains an express confidentiality provision. Olasa Decl. ¶¶ 2-3. Disclosure of the settlement terms, moreover, erodes confidentiality protections that are otherwise extended to parties in this Circuit to encourage settlement. *See Facebook*, 2008 WL 11357787, at *3 (if the public were "kept abreast of all developments in the settlement discussions of lawsuits of public interest," "such disclosure would . . . result in no settlement discussions and no settlements") (quoting *United States v. Glenn Falls*, 160 F.3d 853, 856 (2d Cir. 1998)). Public disclosure would also reveal to current or future litigation opponents the manner in which the parties approached and concluded their settlement discussions, which could harm their future commercial and litigation positions. *UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 985 (N.D. Cal. 2019) (noting "the potential harm that could befall [defendant] if competitors or future opposing parties had access to the specific terms on which it settled"). Thus, there are compelling reasons to maintain the confidentiality of the Term Sheet.

**II.  The Term Sheet Contains Competitively Sensitive, Forward-Looking Commercial Terms**

The Ninth Circuit has found compelling reasons for sealing documents that may reveal

confidential "trade secrets." *See, e.g.*, *In re Electronic Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (allowing sealing of "trade secrets" or "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it"). In accordance, courts in the Ninth Circuit have sealed the terms of agreements that would expose the movant to competitive harm if publicly disclosed. *See, e.g.*, *id.* (finding "compelling reasons" to seal confidential pricing terms, rates, and payment terms in an agreement); *Brady v. Delta Energy Comms., Inc.*, No. 5:21-cv-01843-FWS-SHK, 2024 WL 4869170, at *2 (C.D. Cal. Feb. 15, 2024) (finding the defendants would suffer "competitive disadvantage" if "certain confidential terms and contextual information were publicly disseminated"; terms were substantially similar to a confidential term sheet the court previously found compelling reasons to seal); *Balsam Brands Inc.*, 420 F. Supp. 3d at 985 (noting "the potential harm that could befall [defendant] if competitors or future opposing parties had access to the specific terms on which it settled"); *Fed. Trade Comm'n v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) (granting motion to seal information regarding the "terms of confidential contracts, contract negotiations, or trade secrets").

Public disclosure of the terms of the parties' confidential settlement terms would reveal competitively sensitive, forward-looking commercial and technical terms that constitute trade secrets. Protecting this information outweighs any public interest in disclosure, particularly since the settlement terms reflected in the Term Sheet come into force only if, among other things, the Court grants the parties' request to modify the Injunction. *See* Mot. at 4-5; Olasa Decl. ¶ 5.

Exhibit 3 to the Term Sheet contains detailed commercial partnership terms and conditions, and specific, future financial terms (such as future discounts, spend commitments, migration targets), that reflect the commercial value placed by each party on aspects of the agreement. Spivak Decl. ¶ 4; Gelber Decl. ¶ 6. If revealed publicly, competitors or future counterparties could use these confidential terms to negotiate against the parties and demand better or different terms. *Id.* The parties regularly negotiate agreements for these services with other counterparties that are not involved in this litigation. *Id.* This is precisely the type of competitive

1  harm the Ninth Circuit has contemplated when protecting materials that constitute trade secrets
2  from public disclosure. *In re Electronic Arts*, 298 F. App'x at 569.
3        Exhibit 2 to the Term Sheet reflects details of the proposed technical standards and
4  processes for App Store Registration that have not been publicly announced. Spivak Decl. ¶ 5. It
5  is premature to reveal these terms publicly in their current form, as additional details will need to
6  be developed in advance of their formal publication to ensure an orderly rollout and reduce the
7  risk of confusion. *Id.* Until such time as those materials are finalized and approved for broad
8  dissemination, they will remain confidential. *Id.* Exhibit 2's current form, if made public, may
9  cause harm to third parties who misunderstand and/or rely on the pre-publication proposed
10 standards and processes, and also, by extension, cause reputational harm to Android.
11       And the Term Sheet itself also contains terms that describe plans for future investments by
12 Epic and Google in numerous aspects of their respective businesses, which reveal forward-looking
13 expectations about the commercial prospects of those products. For example, there are terms
14 related to licenses (including the financial terms of the licenses); future plans for advertising
15 spend; future marketing strategies; and commitments to invest in new innovations. *Id.* ¶ 6; Gelber
16 Decl. ¶¶ 5, 7. If publicly revealed, competitors could revise their own strategic plans, including by
17 benchmarking their own investments against Epic and Google's, or pursuing their own, similar
18 commercial partnerships that are better informed by the structure and financial commitments
19 negotiated by Epic and Google. The Ninth Circuit has recognized that there are "compelling
20 reasons" to seal these types of forward-looking plans. *See In re Electronic Arts*, 298 F. App'x at
21 569 ("a detailed plan for the creation, promotion, financing, and sale of contracts' constitutes a
22 trade secret'") (quoting *Clark v. Bunker*, 453 F.2d 1006, 1009 (9th Cir. 1972)).

## **CONCLUSION**

24       The Parties respectfully request this Court to grant their sealing requests to seal the Term
25 Sheet and Exhibits 2 and 3 to the Term Sheet. If the court denies the request, the parties request
26 four business days to comply with any concomitant order.

| | |
|---|---|
| DATED: November 4, 2025 | **MUNGER, TOLLES & OLSON LLP**<br>  Glenn D. Pomerantz<br>  Kuruvilla Olasa<br>  Jonathan I. Kravis<br>  Justin P. Raphael<br>  Dane P. Shikman<br>  Lauren N. Beck<br><br>By:  /s/  Glenn D. Pomerantz<br>      Glenn D. Pomerantz<br><br>*Counsel for Defendants Google LLC et al.* |
| DATED: November 4, 2025 | **MORGAN, LEWIS & BOCKIUS LLP**<br>  Brian C. Rocca<br>  Sujal J. Shah<br>  Michelle Park Chiu<br>  Leigha Beckman<br><br>By:  /s/  Brian C. Rocca<br>      Brian C. Rocca<br><br>*Counsel for Defendants Google LLC et al.* |
| DATED: November 4, 2025 | **CRAVATH, SWAINE & MOORE LLP**<br>  Gary A. Bornstein (*pro hac vice*)<br>  Yonatan Even *(pro hac vice)*<br>  Lauren A. Moskowitz *(pro hac vice)*<br>  Michael J. Zaken *(pro hac vice)*<br>  M. Brent Byars *(pro hac vice)*<br><br>**FAEGRE DRINKER BIDDLE & REATH LLP**<br>  Paul J. Riehle (SBN 115199)<br><br>By:  /s/  Gary A. Bornstein<br>      Gary A. Bornstein<br><br>*Counsel for Plaintiff Epic Games, Inc.* |

-6-

JOINT ADMINISTRATIVE MOTION TO FILE UNDER SEAL MATERIALS
IN CONNECTION WITH JOINT MOTION TO MODIFY PERMANENT INJUNCTION
Case Nos. 3:21-md-02981-JD, 3:20-cv-05671-JD

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer of this document attests that concurrence in the filing of the document has been obtained from each of the other signatories.

By: /s/ *Kuruvilla Olasa*
Kuruvilla Olasa