# EXHIBIT A

# (REDACTED)

Confidential

**BINDING SETTLEMENT TERM SHEET**
**FRE 408 AND EQUIVALENT STATE LAWS ("TERM SHEET")**

| Recitals and Confidentiality | |
|---|---|
| **Framing Recitals** | The Parties desire to: (i) achieve a global settlement of their legal and regulatory disputes; (ii) avoid disputes and further legal and/or injunction compliance proceedings between them concerning or related to the subject matter of this term sheet (this "Term Sheet") and Long-Form Agreement. |
| **Binding** | This Term Sheet, which contains all of the material terms of the Parties' agreement, shall become binding upon execution by authorized signatories (named below) and Board approvals. If either party fails to obtain board approval within 48 hours of signing, this agreement will be null and void. |
| | The parties intend that a long-form settlement agreement (the "Long-Form Agreement"), and any accompanying commercial agreements referenced herein, will be drafted and executed by the parties in due course following the execution of this binding Term Sheet. Until such time as the Long-Form Agreement is executed, the terms of this Term Sheet shall govern. The parties will make reasonable efforts to finalize the Long-Form Agreement by the end of 2025. |
| **Confidentiality of Term Sheet** | The terms and conditions described in this Term Sheet (including its existence) shall be confidential information and shall not be disclosed by the Parties to any third party, except to the Parties' respective advisors and counsel who are reasonably consulted in furtherance of the settlement contemplated hereby and are subject to confidentiality obligations no less restrictive than this Term Sheet, and except as needed to effectuate the agreements described herein, as set forth further below. |
| | If a Party determines that it is required by law to disclose information regarding this Term Sheet or to file this Term Sheet with any regulatory or governmental authority, it shall, a reasonable time before making any such disclosure or filing, consult with the other Party regarding such disclosure or filing and use reasonable efforts to obtain confidential treatment for such portions of the disclosure or filing. |
| **Confidentiality of Long-Form Agreement** | Certain of the settlement terms will be confidential (subject to negotiation) and the Parties will agree to protections to prevent disclosure to third-parties, with limited exceptions for obtaining |

**Confidential**

| | tax or legal advice, compulsion by a court or administrative agency (with reasonable notice to the other party). |
|---|---|
| **App Store Terms**[1] | |
| **Steering** | 1. Google to permit steering to digital goods transactions via external web links or alternative in-app payment options.  Alternative payment options shall be shown side-by-side along with Google Play Billing, unless local laws require Google to permit developers to offer alternative payment options without Google Play Billing shown side-by-side. |
| | 2. Google will not be required to permit links to downloads from within an app installed/updated from the Google Play store. |
| | 3. In order to ensure users are able to make a clear choice, the parties will agree upon fair UX guidelines for showing alternative payment processing side-by-side along with Google Play Billing including clear branding, and neutral messaging regarding responsibility for billing and refunds. Developers can show differentiated pricing and benefits. Google Play's Brand FOP icons, and price will appear with equal UX treatment as the developer's Brand and price. As long as the billing rate charged by Google does not exceed 6% (or, for up to a maximum of 10% of countries (which shall not include the US, Canada, and EU) where Google incurs significantly higher costs of payments, does not exceed 7%), Google may require developers to display Play Points earned in the same side-by-side UX. Google may not require developers to display, or condition the receipt of any benefits on displaying, further Google marketing or promotional messages. |
| | 4. Google will provide an API to render the side-by-side flows for developers to optionally use. Developers can implement their own purchasing flow themselves subject to the prior paragraph. |
| | 5. When a user clicks on an external link in an app, Google |

---

[1] Developers who choose to distribute their apps on Google Play are required to sign a Developer Distribution Agreement (DDA). Google shall ensure that the DDA and all other agreements and policies necessary for distribution on the Play Store shall, at all times consistent with the Rollout section, not contain any terms or requirements that are inconsistent with or limit the obligations imposed on Google by this Term Sheet.

**Confidential**

may show an information screen that communicates that the user will be going to an external website to conclude this digital purchase and Google Play is not involved in that purchase.  The information must be communicated in a neutral manner and give the user the option to never display this screen again for the app.  For avoidance of doubt, the screen shall not be designed to decrease the possibility of a successful completion of the transaction.  External links will be allowed to use parameters, like transaction IDs, such that the user be directed to a logged-in web session to complete a transaction.

6.  Google may assess a Service Fee (as defined below) on the value of transactions, including transactions processed by alternative payment processing or transactions made on the linked website within 24 hours of using an external link.  An API, to be defined by Google and subject to approval by the Technical Committee, will be made available and required to track these transactions for the primary purpose of facilitating payment and accounting.  Google will not share data from the API with third parties or use data from the API for the purpose of ads targeting or competing with the developer's app.  The API will not interfere with the ability for developers to exercise the rights provided for under this agreement. Implementation of the API and compliance with requirements to report transactions (subject to audit) are required to enable linkouts. Google shall only be permitted to exercise the rights set forth in this clause 5 on versions of Android where Google makes the relevant API available.

7.  Google may review external links solely for compliance with reasonable Trust and Safety Requirements to protect users and their payment data and to address illegal or harmful content on the destination page (e.g., ensuring the Payments flow is compliant with appropriate payments standards (PCI), ensuring the destination does not have CSAM).

8.  Google will not discriminate against any developer based on whether the developer offers alternative in-app billing or external purchasing links including but not limited to app review timelines, access to features in the store, or other Google services.

9.  For the avoidance of doubt, nothing in this agreement requires Google to allow external links from apps other than web browsers installed/updated by Google Play to

**Confidential**

| | |
|---|---|
| | download apps or app stores. In the event Google is required to allow apps other than web browsers to host external links that facilitate the download of apps or app stores from apps installed/updated by Google Play, nothing in this Term Sheet shall be interpreted to prevent Google from charging for such apps or app stores following a successful download. |
| **Google Play Service Fees** | Google shall retain discretion to set the price for its services within the pricing limits it has proposed in this Term Sheet and that will be presented to the Court for approval in a Modified Injunction. For digital goods purchases set forth in this section, Google Android and Google Play shall not charge revenue proportionate or per-purchase fees for apps and games other than (1) the Google Play service fees set forth in this section; (2) fees for the use of Google Play Billing; or (3) applicable taxes. The fees below do not include the fee that Google may charge for Google Play's billing service, at its own discretion.<br><br>The fees set forth in this paragraph will only apply to installs from users who first install or update the app or game from the Google Play Store after October 30, 2025 ("New Installs").<br><br>● **Performance Gaming Purchases:** In games, the service fees for in-app and linked purchases that provide gameplay advantages, impact game outcomes, gameplay progress rate or player power, as well as any loot boxes, other randomized outcome purchases, and real-money gaming shall not exceed 20%.<br><br>● **Experiential Gaming Purchases:** The service fees for in-app and linked purchases shall not exceed 9% as long as digital purchases are not for Performance Gaming Purchases, including for content, levels, events, or cosmetic items that are bought in games but do not have more than a de minimis effect on game mechanics or otherwise provide a gameplay advantage.<br><br>● **Subscription Gaming Purchases:** Service fees for all recurring purchases in games shall not exceed 9%<br><br>● **Virtual Gaming Currencies:** If an in-game virtual currency can be used to purchase both Performance and Experiential content within games, and a portion of the expenditure can be attributed to Experiential that is not part of a bundle, then the portion of expenditures attributable to Experiential Content shall be offered a rate not to exceed 9% and the portion attributable to other content shall be offered a rate not to exceed 20%. The parties will agree on a process for the allocation of |

**Confidential**

| | |
|---|---|
| | such expenditures on a post purchase basis, with Google to charge the higher of the two rates, and crediting developers during the immediately succeeding payment cycle based on actual purchases for all spent and reported in-game currency amounts.<br><br>● **App Purchases:** The service fees for all in-app and linked purchases, including but not limited to subscriptions, in all non-game apps shall not exceed 9%.<br><br>● **Bundles:** If a bundle contains items that are subject to two different service fee rates, Google may apply the higher rate.<br><br>● **Paid App and Games:** Paid Apps and Games sold in the Play Store will be subject to a fee for the initial download not exceeding 9% plus the required billing fee (due to the transaction being concluded in the Play Store).<br><br>To be eligible for the new rates, the developer will agree to build, with reasonably equivalent quality, an Android version of their application for all the form factors subject to these Google Play Service Fee terms (i.e., smartphones and tablets) that their app supports on other major mobile ecosystems.<br><br>For purchases in apps or games installed or updated by Google Play not defined as "New Installs" above, Google may charge a service fee not to exceed 20% when payments are processed via external web links. |
| **Rollout** | Google will roll out provisions relating to Steering and Google Play Service Fees on a schedule no later than the following:<br><br>● United States, European Economic Area and United Kingdom:  by March 31, 2026;<br>● Korea and Japan:  by December 31, 2026;<br>● Rest of World:  by June 30, 2027.<br><br>Provided, however, in the event the conditions of the Contingent Settlement have not been met by the dates above, Google's deadline to roll out the business changes related to Steering and Google Play Service Fees in the applicable jurisdiction(s) shall be extended to 21 days following the conditions of the Contingent Settlement provision being met.<br><br>Notwithstanding the above, Google shall implement steering via external links, with the modifications outlined in this agreement, |

**Confidential**

| | to transactions in the United States as soon as possible, and no later than the later of December 3, 2025 or 21 days following the Court entering the modified injunction. |
|---|---|
| **Epic Reinstatement** | Google shall immediately reinstate Epic's developer account. Epic and its subsidiaries shall have the option to list or relist any of their respective games and other applications on the Google Play store (including Fortnite, but not the Epic Games Store), subject to Google's generally applicable policies. Google shall not treat Epic or its subsidiaries or their respective applications adversely based on any actions taken by Epic prior to the date of this Term Sheet in connection with the disputes that are the subject of this Term Sheet.  For avoidance of doubt, Epic will comply with the DDA and all Google Play Developer Policies in effect at the time it lists or relists any of its respective games and/or other applications on the Google Play Store.  Epic will not insert links to transactions in apps installed/updated by Google Play until Google Play rolls out provisions relating to steering on the schedule described above. |
| | |

**Confidential**



| | |
|---|---|
| **Direct Downloading Terms** | |
| **Direct Downloading Screens** | Google agrees to make modifications to future versions of Android (starting with v17 in 2026, no later than QPR2) to simplify the installation flow of Registered App Stores (with a definition to be agreed); and for permissions upon first install from a Registered App Store, per Exhibit 1.<br><br>Google will prohibit, through contracts, the device certification process or otherwise, the introduction of more burdensome |

**Confidential**

| | |
|---|---|
| | Android installation flows for Registered App Stores than, or subject them to obligations in addition to, those set forth in Exhibit 1.<br><br>In order to be eligible for the streamlined flows and permissions, Registered App Stores must:<br>- Qualify as a legitimate app marketplace<br>- Provide a transparent app store user experience<br>- Take reasonable steps to ensure trust, safety and system health<br><br>To be a Registered App Store, app stores would also need to be reviewed by Google's Android team for compliance with policies specifically identified in Exhibit 2, as well as, at Google's election, pay fees reasonably designed solely to cover the operational costs associated with the registration and review process. Such fees will not be revenue proportionate.<br><br>Google will continue to permit third-party app stores to operate on Android free of charge and will continue to permit the direct downloading of apps from developer websites and third-party stores without any fees being imposed for those downloads (or purchases made within them) unless the downloads originate from linkouts from apps and games installed/updated by Google Play (excluding web browsers). |
| **Commercial/Partnership Terms** | |



**Confidential**

| | |
|---|---|
| | ████████████████ |
| ████████████ | ████████████████████████ ████████████████ ████████████████████████ ████████████████████ |
| **General Terms** | |
| **Global scope** | This Term Sheet and the Long-Form Agreement will be global in scope and will be applicable to all current and future games and other apps of Epic and its subsidiaries. Subject to complying with the Registered App Store requirements, this Term Sheet and the Long-Form Agreement will cover the Epic Games Store. |
| **Form Factor** | This Term Sheet and the Long-Form Agreement shall cover smartphone and tablet devices and no other form factors. For the avoidance of doubt, any references to Android herein refers to Android for smartphone and tablet devices. |
| **No admission of liability**. | Neither Party will admit any liability nor concede the merit of any arguments or defenses. |
| **Dismissal of Claims** | **Actions Prior to Obtaining Court Approval**<br><br>● Promptly upon execution of this Term Sheet, the parties will request that the Court in *Epic Games, Inc. v. Google LLC*, No. 3:20-cv-05671-JD (N.D. Cal.) *(Epic I)* modify its injunction to reflect the applicable terms of the parties' agreement. Specifically, the Parties agree to jointly petition the court to seek entry of a modified injunction in the form attached hereto as Exhibit 4 ("Modified Injunction") without requiring Google and the States, as a condition of preliminarily approving the settlement of in *Utah et al. v. Google LLC*, No. 3:21-cv-05227 (N.D. Cal.), to agree to the remedies described in Paragraphs 11 or 12, or those portions of Paragraphs 7, 9, 10 in the *Epic I* injunction that are additional to the Modified Injunction, and to advise the court of the contingencies in this Term Sheet in a manner agreed to |

**Confidential**

|  |  |
|---|---|
|  | by the Parties. |
|  | ● Contemporaneously with the Parties' motion for the entry of the Modified Injunction, the Parties will move for a stay of the proceedings in *Epic II* pending satisfaction or non-occurrence of the Court in *Epic I* entering the Modified Injunction. |
|  | **Actions Following Court Approval of the Modified Injunction**. |
|  | ● Epic will dismiss *Epic Games, Inc. v. Google LLC*, No. 3:24-06843-JD (N.D. Cal.) *(Epic II)* with prejudice. |
|  | **Actions Following Court Approval and Satisfaction of Contingencies**. |
|  | ● The parties will file papers necessary to effectuate a dismissal with prejudice (or the local equivalent) in all other jurisdictions in which Epic has pending claims against Google. |
|  | Within 45 days after the conditions of the Contingent Settlement are met, Google shall pay Epic ▉▉▉ for its attorneys' fees and costs and Epic shall waive and/or withdraw all global requests for attorneys' fees and costs. |
| **Contingent Settlement** | Except for the items stated in the Dismissal of Claim section under the heading Actions Prior to Obtaining Court Approval, the Parties' rights and obligations under this Term Sheet and the Long-Form Agreement are contingent on |
|  | ● the Court in *Epic I* entering the modified injunction; and |
|  | ● the Court in *Utah et al. v. Google LLC*, No. 3:21-cv-05227 (N.D. Cal.) not requiring Google and the States, as a condition of preliminarily approving the settlement of that matter, to agree to additional conduct relief that is substantially similar to Paragraphs 11 or 12, or those portions of Paragraphs 7, 9, 10 in the *Epic I* injunction that are additional to the Modified Injunction. |
| **Withdrawal of pending regulatory complaints** | In accordance with local practice and procedures, and to the extent feasible, Epic will withdraw any written complaints that it previously lodged with governmental agencies or commissions or courts or tribunals about Google and the subject matter of this Term Sheet and/or the Long-Form Agreement.  For the avoidance of doubt, this provision requires reasonable, good faith efforts by Epic to request the withdrawal of written complaints that it submitted through any formal agency complaint process (e.g., a "Form C" complaint with the European Commission or a complaint with the Netherlands ACM); however, this provision does not restrict Epic's ability to respond to inquiries from government agencies.  For the |

**Confidential**

| | avoidance of doubt, notwithstanding the non-disparagement provision below, nothing in this term sheet restricts Epic's advocacy or complaints regarding parties other than Google, including its advocacy regarding generally applicable changes such as app-related legislation where that advocacy does not seek to impose new obligations on Google beyond those set forth in this agreement. |
|---|---|
| **Cessation of advocacy against Google Play** | Epic may remain a member of advocacy groups such as the Coalition for App Fairness but will not advocate for further changes to the Google policies and practices that are the subject of this Term Sheet and/or the Long-Form Agreement, except that Epic may speak in support of legislation or regulation proposed by others that imposes new obligations generally on closed mobile ecosystems comprised of smartphone and/or tablet categories, provided it directs its advocacy specifically to Apple practices.  Nothing herein prevents Epic from advocating changes to the policies or practices of, or restrict Epic's advocacy or complaints regarding, other companies, including Apple. For the avoidance of doubt, notwithstanding the non-disparagement provision below, nothing in this term sheet restricts Epic's advocacy or complaints regarding parties other than Google, including its advocacy regarding generally applicable changes such as app-related legislation where this advocacy does not seek to impose new obligations on Google beyond those set forth in this agreement. |
| **Covenant not to sue or assist others to sue** | The Parties will agree to not sue each other or directly or indirectly support a third party that has sued or may in the future sue the other concerning or related to the subject matter of this Term Sheet ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ and the Long-Form Agreement or those matters covered by the release of claims; provided, however, this provision does not restrict (a) either Party's ability to respond to validly issued discovery requests from third parties or other legally binding obligations to provide evidence in a proceeding, (b) either Party from seeking to enforce the terms of this Term Sheet and/or the Long-Form Agreement or the modified injunction contemplated thereby, (c) either Party from seeking to enforce the terms of the commercial agreements contemplated by this term sheet ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ or release any claims relating to the commercial agreements or (d) Epic from complying with its indemnity obligations to the consumer claimants in *Epic Games and Others v. Alphabet Inc, Google LLC and Others* (UK Competition and Appeal Tribunal, Case No. 1378/6/7/20), provided that Epic shall in good faith seek to end its indemnity |

Confidential

| | obligations following dismissal of its litigation against Google in the UK. |
|---|---|
| | Epic covenants not to assert claims against Google on or after the expiration of the provisions of this Term Sheet and/or Long-Form Agreement for conduct substantially similar to the conduct alleged in *Epic I* and *Epic II* so long as Google continues to comply with the Steering, Service Fee, and Direct Downloading provisions in this Term Sheet and Paragraph 8 of the district court's October 2024 injunction, unless the claims are based on new conduct by Google that is not substantially similar to the conduct that was the basis of *Epic I* and *Epic II*. This covenant shall survive the term of this Term Sheet and/or Long-Form Agreement. |
| **Release of claims** | The Parties will agree to a mutual release of all claims that (i) were or could have been raised in the litigation and (ii) concern or relate to the subject matter of the allegations in the litigation. The Parties will each waive the protections of Cal. Civil Code Section 1542. For the avoidance of doubt, the releases herein shall not apply to conduct occurring after the expiration of the applicable provision of this Term Sheet and/or the Long-Form Agreement or injunction addressing such conduct. |
| **Dispute escalation process**. | During the term of this Term Sheet and/or Long-Form Agreement, the Parties will agree to escalate to their respective designated executives any concerns or disputes concerning or related to the subject matter of this Term Sheet and/or the Long-Form Agreement. For the avoidance of doubt, the Parties agree this clause requires an attempt at pre-litigation dispute resolution, but does not restrict a party from responding to inquiries from government agencies. |
| **Non-disparagement** | The Parties agree to not disparage each other or their respective business practices related to: (i) the factual allegations, legal claims or remedies (proposed or imposed) in *Epic I*, *Epic II* or in any non-U.S. litigation or regulatory proceeding initiated by Epic against Google regarding similar subject matter; and (ii) the subject matter of this Term Sheet and/or Long-Form Agreement. For the avoidance of doubt, nothing in this term sheet restricts Epic's advocacy or complaints regarding parties other than Google, including its advocacy regarding generally applicable changes such as app-related legislation where this advocacy does not seek to impose obligations on Google beyond those set forth in this agreement or its ability to respond to investigative requests by regulatory and legislative bodies. |
| **Term** | This Term Sheet and/or the Long-Form Agreement shall expire |

Confidential

| | |
|---|---|
| | 5 years from the actual date of the completion of the global rollout of the steering and service fee changes set forth in this Term Sheet; provided, however, (i) the provisions to be set forth in the modified injunction shall expire upon the expiration of such provisions stated in the injunction, (ii) the provisions related to confidentiality and release of claims shall survive the expiration of this Term Sheet and/or the Long-Form Agreement and (iii) the ▮▮▮▮▮▮▮▮▮▮▮▮ agreements shall expire as provided in those agreements. |
| **Public Statement & Advocacy** | The Parties shall agree on the content of a joint statement, or acceptable separate statements, supportive of the business changes reflected in the Term Sheet, and reflecting the spirit of the Parties' new partnership. |
| | Epic believes that the Google and Android platform, with the changes in this term sheet, are procompetitive and a model for app store / platform operations, and will make good faith efforts to advocate for the same. |
| | The Parties will undertake reasonable efforts to defend the validity and enforceability of this Term Sheet before courts, government authorities and tribunals. |
| **Legal/Governance Provisions** | **Integration clause**. Until such time the Long-Form Agreement is executed, this Term Sheet is the entire agreement between the Parties with respect to the subject matter. Upon execution of the Long-Form Agreement, the Long-Form Agreement shall be the entire agreement between the Parties with respect to the subject matter. |
| | **Representation by counsel**.  Each Party's counsel represents they are not representing any other claimants against the other Party. |
| | **Interpretation as joint drafting**. This Term Sheet and/or the Long-Form Agreement will be deemed to have been jointly negotiated and drafted. |
| | **Authority to Bind Parties**.  Each person executing this Term Sheet and/or the Long-Form Agreement on behalf of a Party or Parties represents they have the authority to execute it and bind that Party or those Parties. |
| | **Attorneys' Fees/Costs**.  Unless otherwise agreed to in the Long-Form Agreement, each Party will bear their own attorneys' fees and costs. |
| | **Governing law; exclusive forum**. This Term Sheet and the Long-Form Agreement will be governed by California law. Any dispute arising out of or relating to this Term Sheet and/or the Long-Form Agreement shall be brought in the Northern District of California. Notwithstanding the foregoing the governing law and forum for disputes arising out of or relating to the ▮▮▮▮ |

13

Confidential

██████████████████████████ shall be as set forth therein.

**Compliance with Local Laws.** Each Party intends to comply with applicable laws, regulations and court orders in the jurisdictions in which they conduct business. Nothing in this Term Sheet or the Long-Form Agreement shall require or shall be interpreted to require either Party to violate applicable laws, regulations or court orders in any jurisdiction. Each party represents that, to their knowledge, nothing in this term sheet would cause such party to be in violation of any such applicable laws, regulations or court orders.

If a provision of this Term Sheet or Long-Form Agreement is determined to require an action that would be inconsistent with the laws, regulations, or court orders of a particular jurisdiction, the Parties shall: (i) not be required to take that action to the extent it would violate the laws, regulations, or court orders of that jurisdiction; and (ii) work in good faith to address that situation so that the Parties' commitments in this Term Sheet or Long-Form Agreement can be effectuated to the maximum extent possible without violating the laws, regulations, or court orders of that jurisdiction.

An "Invalid Provision" is defined as:

> (a) any provision or subpart of a provision in this Term Sheet that a court, governmental authority or tribunal (in each case, of competent jurisdiction) finds invalid or unenforceable;

> (b) any provision or subpart of a provision in this Term Sheet that a court, governmental authority or tribunal (in each case, of competent jurisdiction) informs a Party will be the subject of an investigation and said Party (after good-faith consultation with the other Party) reasonably believes the investigation will lead to a finding that the provision or subpart of a provision is invalid or unenforceable; or

> (c) any provision or subpart of a provision in this Term Sheet that the Parties come to agree would likely be found invalid or unenforceable under existing or new law or regulations.

With respect to an Invalid Provision: (i) any unaffected portions of the Invalid Provision and the other provisions in this Term Sheet will remain in full force and effect, provided that with respect to the Steering terms and the Service Fee term, if one is deemed invalid then the other will be treated as invalid as well, (ii) neither Party shall have any right to terminate this Term Sheet as a result of such Invalid Provision; (iii) the Invalid Provision will remain in effect outside the affected jurisdiction to the maximum degree possible under the law; and (iv) the Parties will promptly use their utmost best efforts to modify such

**Confidential**

|  | Invalid Provision (and, if necessary, any valid provisions or subparts thereof) to enable Google to develop alternative pricing structures in the affected jurisdiction that have the purpose and effect of retaining, to the maximum degree possible under the law, the benefits that would be obtained by each Party under the Term Sheet if the Invalid Provisions were valid and enforceable.<br><br>**Authorization.** Where authorization or approval from a competition authority is required, or the Parties agree that it may be advisable to obtain, for any provision of this term sheet to come into force in a particular jurisdiction, the parties agree:<br><br>(i)  to apply for such authorization or approval within the timeframes required by local law and to take all reasonably necessary steps to prepare that application, and to promptly provide any additional information requested, or respond to any questions raised, by the relevant authority; and<br><br>(ii)  that the relevant provisions are conditional upon, and will not come into force in that jurisdiction unless and until, the grant of such authorization or approval; provided, however, that said authorization or approval is either unconditional or on conditions that are acceptable to Google (acting reasonably). |
|--|--|

**Confidential**

**ACKNOWLEDGED AND AGREED BY**

On behalf of Epic Games, Inc.                     On behalf of Google LLC

_____                     _____
Tim Sweeney                                               Lara Kollios
CEO                                                             Director, Regulatory Affairs
Epic Games, Inc.                                         Google LLC

DATE: October 31, 2025                              DATE: _____
_____

**Confidential**

**ACKNOWLEDGED AND AGREED BY**

On behalf of Epic Games, Inc.                    On behalf of Google LLC

Signed by:

*Lara Kollios*

BDEB6B027C8D4AD...

_____    _____

Tim Sweeney                                      Lara Kollios
CEO                                              Director, Regulatory Affairs
Epic Games, Inc.                                 Google LLC


DATE: _____              DATE: \_\_10/31/2025_____

**EXHIBIT 1**

# Unified Install and Permission flow





# Unified Install and Permission flow







# EXHIBIT 2

# App Store Definition

## 1.  Operate as a Legitimate Marketplace

- **Open Access:** Function as an open 3P marketplace for all eligible third-party developers, with clear, non-discriminatory policies, including, for stores who choose to allow ads, permitting developers to integrate any ad network compliant with applicable trust and safety policies.

- **Developer Authorization:** Maintain direct contractual relationships with developers and have their express authorization to distribute their apps.

- **IP Compliance:** Respect intellectual property rights and maintain a clear process for handling IP disputes.

## 2. Provide a Transparent User Experience

- **Primary Purpose:** The store's main function must be the discovery, installation, and management of apps from a diverse catalog. The Store must be consumer-facing (with a user destination and launcher icon) that is either pre-loaded or explicitly installed by the user. A store may have additional features beyond its main function, such as social features (friends, chat, game clip sharing), and utility features (authentication, parental controls, account and family management).

- **Clear App Information:** Display essential app details, including name, developer, description, version, and size.

- **User Control:** Ensure app installations and ownership changes occur only with explicit user consent and provide clear user controls for automatic or manual updates.

- **User Support:** Offer direct and accessible customer support channels.

## 3. Ensure Ecosystem Trust & Safety

- **Security:** Proactively and in good faith prevent the distribution of malware and Potentially Harmful Apps (PHAs) and prohibit illegal or fraudulent activity through robust policy enforcement.

- **Privacy & Compliance:** Publish and in good faith enforce clear privacy policies, do not materially violate applicable laws and regulations (e.g., GDPR, DSA), and manage government requests appropriately.

- **Technical Health:** Adhere to Android's technical requirements (e.g., target API levels) to ensure a high-quality, stable, and performant user experience.

- **User Safety:** Provide parental controls and enforce policies against deceptive or disruptive practices including advertising.

# Process

- All evaluations of compliance with app store registration requirements and related support functions shall be conducted by Android.  Google Play shall have no role in determining whether an app store meets the criteria for a registered app store or determining if an app store is compliant with policies.

- Where Android determines an app store is or becomes materially noncompliant with the app store registration criteria, Android will give the app store notice of the circumstances of non-compliance.

- Prior to any de-registration of an app store, Android shall provide the app store with an opportunity to cure.  The timing for the opportunity to cure depends on the nature and severity of the circumstances of non-compliance.  Android shall provide at least seven (7) days and up to thirty (30) days to cure, depending on the circumstances.  Android may provide extensions in the cure period if the app store has made substantial, good faith efforts to cure.

- A denial in registration or de-registration may occur without a cure period if the app store negligently or intentionally causes extreme user harm (e.g., intentional installation of known malware).

- Android shall provide a right to appeal registration decisions.

- Google Play shall be subject to these same requirements.

- For avoidance of doubt, Google will not use the above Trust & Safety requirements as a pretext to discriminate against any app store provider.

- The parties agree to review the volume of incidents and user harm detected by Google after 180 days to determine if the above measures are working as intended to keep consumers safe.

- * Further details will be provided in the Long-form agreement.

# Exhibit 3

**Highly Confidential**



**Highly Confidential**



**Highly Confidential**



Highly Confidential

# EXHIBIT 4

## Modified *Epic v. Google* Injunction

This modified permanent injunction is entered in MDL member case *Epic Games, Inc. v. Google LLC et al.*, Case No. 20-cv-05671-JD, based on the joint motion filed by the parties. This injunction supersedes the permanent injunction entered by the Court on October 7, 2024, ECF No. 1017.

1.      This injunction applies to Google LLC and each of its parent, affiliated, and subsidiary entities, officers, agents, employees, and any person in active concert or participation with them, who receive actual notice of this order by personal service or otherwise (together, Google). The term "Android" as used in this injunction refers to smartphones and tablets that run the Android operating system and the term "Android apps" refers to apps for Android smartphones and tablets.  The term "app" or "apps" means all applications, including games, but excludes app stores.

2.      Unless otherwise stated, the effective date of the injunction is seven (7) days after the Court enters this modified injunction (the "Effective Date").

3.      The geographic scope of the injunction is the United States of America.

4.      For a period of three years from the Effective Date, Google may not share revenue generated by the Google Play Store with any person or entity that distributes Android apps, or has stated that it will launch or is considering launching an Android app distribution platform or store.

5.      For a period of three years from the Effective Date, Google may not condition a payment, revenue share, or access to any Google product or service, on an agreement by an app developer to launch an app first, exclusively, or at the same time in the Google Play Store, anywhere in the world, as compared to the launch date of that app on another app distribution platform or store for smartphones and/or tablets in the United States.  Notwithstanding the prior sentence, Google may condition a payment, revenue share, or access to any Google product or service on an agreement by an app developer to launch an app first, exclusively or at the same time on the Android platform, provided that the developer is free to choose any Android app store for distribution in the United States.

6.      For a period of three years from the Effective Date, Google may not condition a payment, revenue share, or access to any Google product or service, on an agreement by an app developer not to launch on a third-party Android app distribution platform or store in the United States a version of an app that includes features not available in, or is otherwise different from, the version of the app offered on the Google Play Store (anywhere in the world).

7.      For a period of three years from the Effective Date, Google may not condition a payment, revenue share, or access to any Google product or service, on an agreement with an original equipment manufacturer (OEM) or carrier to refrain from placing a third party Android app store on any specific location on an Android device.

8.      For a period of three years from the Effective Date, Google may not condition a payment, revenue share, or access to any Google product or service, on an agreement with an OEM or carrier not to preinstall an Android app distribution platform or store other than the Google Play Store.

9.      For a period beginning on the later of (i) December 3, 2025, and (ii) 21 days after the Effective Date through June 30, 2032, Google will permit apps installed/updated by the Google Play store to show alternative payment options for digital transactions via external transaction web links and/or alternative in-app payment options. Alternative payment options shall be shown side-by-side along with Google Play Billing, and developers may show different prices and benefits for digital transactions processed using alternative payment options. Google may not (1) prohibit a developer from communicating with users about the availability of such alternative payment methods, (2) require a developer to set a price based on whether Google Play Billing is used, or (3) discriminate against any developer based on whether the developer offers alternative in-app payment options or external purchasing links.

      a.  Google may not burden the use of in-app alternative payment options or external links by limiting their design, placement (except Google may require side-by-side placement), formatting or messaging, or by requiring the user to change any settings or navigate other frictions in order to use them.  Notwithstanding the preceding sentence, Google may adopt reasonable user experience guidelines in connection with alternative payment options. Google may review external transaction links for compliance with reasonable trust and safety policies to protect users and their payment data and to address illegal or harmful content on the destination page.

      b.  Google may assess a service fee on transactions completed using alternative payment methods, including transactions made on a linked website within up to 24 hours of using an external link on versions of Android where Google makes available a relevant API to track such transactions. The transaction tracking API may be used by Google for the primary purpose of facilitating payment to Google and accounting.  Google may not share data from the API with third parties or use data from the API for the purpose of ads targeting or competing with the developer's app.  Any API shall not interfere with developers' ability to offer or communicate about alternative payment methods, including external transaction links.

10.     For a period beginning on the later of (i) December 3, 2025, and (ii) 21 days after the Effective Date through June 30, 2032, Google may not prohibit a developer from communicating with users inside or outside of an app about the availability or pricing of an app (including an app store) outside the Google Play Store.  This paragraph does not require Google to permit a developer to include an in-app link leading to an app or app store download within apps installed or updated on the Google Play Store.

11.     For a period beginning no later than March 31, 2026 through June 30, 2032, for digital goods purchases set forth in the second paragraph of this Section 11, Google Play and

Google Android shall not charge revenue proportionate or per purchase fees for apps first installed/updated from Google Play on or after October 30, 2025 ("New Installs") other than (1) the Google Play service fees set forth below; (2) fees for the use of Google Play Billing; and (3) applicable taxes.  Google shall independently determine its fees, subject to the limitations provided for below.

Google may not charge a service fee greater than 20% for in-app and linked purchases in games (1) where such purchases provide more than a de minimis gameplay advantage, including but not limited to purchases that impact game outcomes, gameplay progress rate, or player power, or (2) purchases with random outcomes (such as "loot boxes").  Google may not charge a service fee greater than 9% for (1) in-app and linked purchases, in games, where such purchases do not provide more than a de minimis gameplay advantage, including purchases for content, levels, events, or cosmetic items; (2) in-app subscriptions for apps; and (3) in-app and linked purchases in non-game apps.  Google may not charge a service fee greater than 9% (excluding any Google Play Billing fee) for apps sold upfront in the Google Play Store.  For the avoidance of doubt, Google may charge the higher service fee for a bundle that includes items subject to two different service fees.  For an in-app or linked purchase of virtual currency which can be used to obtain multiple kinds of items whose service fees differ, the higher service fee may apply until and unless a portion of the virtual currency use can be attributed and pro-rated to items bearing the lower service fee.

Google may establish eligibility requirements for these fees requiring the developer to build, with reasonably equivalent quality, a version of their application for Android smartphones and tablets that exists on other major mobile ecosystems.

12.    For a period beginning on the Effective Date through June 30, 2032, for purchases in apps installed or updated by Google Play that do not qualify as New Installs, Google may not charge a service fee greater than 20% when payments are processed via external web links.

13.    For a period beginning on the Effective Date through June 30, 2032, Google will continue to permit third-party app stores to operate on Android free of charge and will continue to permit the direct downloading of apps from developer websites and third-party stores without any fees being imposed for those downloads unless the downloads originate from linkouts from apps installed/updated by Google Play (excluding web browsers).  Google will develop and release in a version of the next major Android release a process to certify an Android app store as a "Registered App Store" and will maintain this feature through June 30, 2032.

      a.  Starting with a version of the next major Android release through June 30, 2032, Google will modify future versions of the Android operating system so that a user can install a Registered App Store from a website by clicking on a single store install screen using neutral language. This will also grant the permission to the store to install apps.

      b.  Google may create reasonable requirements for certification as a Registered App Store, including but not limited to review of the app store by Google's Android

team and the payment of reasonable fees to cover the operational costs associated with the review and certification process.  Such fees may not be revenue proportionate.

14.     The parties will recommend to the Court a three-person Technical Committee. Epic and Google will each select one member of the Technical Committee, and those two members will select the third member. After appointment by the Court, the Technical Committee will review disputes or issues relating to the technology and processes required by the preceding Paragraphs. If the Technical Committee cannot resolve a dispute or issue, a party may ask the Court for a resolution. The Technical Committee may not extend any deadline set in this order.  Each party will bear the cost of compensating their respective party-designated committee member for their work on the committee. The third member's fees will be paid by the parties in equal share.

15.     The Court will retain jurisdiction over the injunction for all purposes. Google or Epic may request a modification of the injunction for good cause.