Brian C. Rocca, S.B. #221576
brian.rocca@morganlewis.com
Sujal J. Shah, S.B. #215230
sujal.shah@morganlewis.com
Michelle Park Chiu, S.B. #248421
michelle.chiu@morganlewis.com
Leigha Beckman, S.B. #334611
leigha.beckman@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: (415) 442-1000

*Attorneys for Defendants*

Glenn D. Pomerantz, S.B. #112503
glenn.pomerantz@mto.com
Kuruvilla Olasa, S.B. #281509
kuruvilla.olasa@mto.com
Lauren N. Beck, S.B. #281509
lauren.beck@mto.com
**MUNGER, TOLLES & OLSON LLP**
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Justin P. Raphael, S.B. #292380
justin.raphael@mto.com
Dane P. Shikman, S.B. #313656
dane.shikman@mto.com
**MUNGER, TOLLES & OLSON LLP**
560 Mission Street, Twenty Seventh Floor
San Francisco, California 94105
Telephone: (415) 512-4000

Jonathan I. Kravis, *pro hac vice*
jonathan.kravis@mto.com
**MUNGER, TOLLES & OLSON LLP**
601 Massachusetts Avenue NW, Suite 500E
Washington, D.C. 20001
Telephone: (202) 220-1100

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION** | Case No. 3:21-md-02981-JD |
| THIS DOCUMENT RELATES TO: | **DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| *Epic Games, Inc. v. Google LLC et al.,* | |
| Case No. 3:20-cv-05671-JD | **(REDACTED)** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1

## TABLE OF CONTENTS

2

Page

3  I.    INTRODUCTION ........................................................................................................... 1

4  II.   LEGAL STANDARD .................................................................................................... 3

   III.  ARGUMENT ................................................................................................................. 4

5        A.    Epic Cites No Basis to Claim An Adjustment For Prejudgment or
6              Postjudgment Interest ............................................................................................ 4

7        B.    Epic's Fee Request Should Be Substantially Reduced Because It Reflects
               Excessive and Unreasonably Billed Hours ........................................................... 7

8              1.    Epic Requested Hours are Excessive ......................................................... 7

9                    a.    Excessive Staffing ......................................................................... 7

10                   b.    Transient Timekeepers .................................................................. 9

                     c.    Excessive Staffing for Document Review .................................... 10

11                   d.    Excessive Staffing and Time Billed for Conferencing ................. 11

12                   e.    Excessive Staffing and Time Billed for Deposition
                           Preparation ................................................................................... 12

13                   f.    Excessive Hours Billed Per Day ................................................... 13

14             2.    A Material Percentage of Epic's Hours Are Not Sufficiently
                     Documented ............................................................................................. 14

15                   a.    Vague and Boilerplate Billing ...................................................... 14

16                   b.    Epic Failed to Sufficiently Document and Isolate Hours
                           Spent on the Epic v. Apple Matter ............................................... 15

17             3.    Epic Seeks Fees For Improper Categories of Tasks .................................. 16

                     a.    Overhead and Clerical Tasks ....................................................... 16

18                   b.    Summer Associate Time ............................................................... 17

19       C.    Epic's Fee Request Is Not Presumptively Reasonable Because Epic Paid It. ...... 18

20 IV.   CONCLUSION ............................................................................................................. 20

21

22

23

24

25

26

27

28

-i-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
CHICAGO

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Action Star Enter. v. Kaijet Tech. Int'l*,
  No. CV–12–08074 BRO, 2014 WL 12589632 (C.D. Cal. Jul. 7, 2014) ........................... 9, 12

*In re Actos (Pioglitazone) Prods. Liab. Litig.*,
  274 F. Supp. 3d 485 (W.D. La. 2017) .................................................................................. 10

*Barjon v. Dalton*,
  132 F.3d 496 (9th Cir. 1997) .................................................................................................. 7

*Barranco v. 3D Sys. Corp.*,
  No. CV 13-00412 LEK-RLP, 2018 WL 4512186 (D. Hawaii June 15, 2018) ..................... 13

*Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dept.*,
  516 F. Supp. 3d 1202 (2021) ................................................................................................ 14

*In re Borden*,
  104 B.R. 167 (Bankr. D. Minn. 1989) .................................................................................. 18

*Campbell v. National Passenger R.R. Corp.*,
  718 F. Supp. 2d 1093 (2010) ................................................................................................ 14

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986) ......................................................................................... 7, 14

*Christensen v. Stevedoring Services of America*,
  557 F.3d 1049 (9th Cir. 2009) ................................................................................................ 7

*Clark v. City of Los Angeles*,
  803 F.2d 987 (9th Cir. 1986), *overruled on other grounds* by *Berry v. Air
  Force Cent. Welfare Fund*, 115 F.4th 948 (9th Cir. 2024) ...................................................... 6

*Clark v. InComm Fin. Servs.*,
  Case No. EDCV 22-1839 JGB, 2024 WL 4875348 (C.D. Cal. Nov. 8, 2024) ......................... 8

*Common Cause v. Jones*,
  235 F. Supp. 2d 1076 (C.D. Cal. 2002) ................................................................................ 17

*Epic Games, Inc. v. Apple, Inc.*,
  Case No. 4:20-CV-05640-YGR-TSH (N.D. Cal.) .............................................................. 2, 15

*Epic Games, Inc. v. Google LLC, et al*,
  Case No. 3:20-cv-05671-JD (N.D. Cal.) ............................................................................... 15

-ii-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*,
886 F.2d 1545 (9th Cir. 1989) ................................................................................................. 3

*Gates v. Deukmejian*,
987 F.2d 1392 (9th Cir. 1993) ............................................................................................. 3, 5

*Heavener v. Meyers*,
158 F. Supp. 2d 1278 (E.D. Okla. 2001) ................................................................................ 8

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ..................................................................................................... 4, 7, 12

*Johnson v. Georgia Highway Exp.*,
488 F.2d 714 (5th Cir. 1974) ................................................................................................ 17

*Jordan v. Multnomah Cnty.*,
815 F.2d 1258 (9th Cir. 1987) ............................................................................................... 6

*Kaiser Aluminum & Chemical Corp. v. Bonjorno*,
494 U.S. 827 (1990) ........................................................................................................... 4, 6

*Lamie v. U.S. Trustee*,
540 U.S. 526 (2004) ............................................................................................................... 5

*Lauderdale v. City of Long Beach*,
No. CV 08-979 ABC, 2010 WL 11570514 (C.D. Cal. Jan. 11, 2010) .................................... 8

*LiiON, LLC v. Vertiv Grp. Corp.*,
No. 18-CV-6133, 2021 WL 229657 (N.D. Ill. Jan. 22, 2021) .............................................. 13

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................................................. 16

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*,
114 F. Supp. 3d 819 (N.D. Cal. 2015) .................................................................................... 4

*Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*,
776 F.2d 646 (7th Cir. 1985) .................................................................................................. 6

*Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*,
612 F. Supp. 3d 899 (N.D. Cal. 2020) .................................................................................... 3

*Pierce v. United States*,
255 U.S. 398 (1921) ............................................................................................................... 4

-iii-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
(continued)

**Page**

*Pit River Tribe v. Bureau of Land Mgmt.*,
939 F.3d 962 (9th Cir. 2019)...........................................................................................5

*Ramos v. Lamm*,
713 F.2d 546 (10th Cir. 1983)..........................................................................................9

*In re Recycling Indus., Inc.*,
243 B.R. 396 (Bankr. D. Colo. 2000) ...........................................................................18

*Shephard v. Dorsa*,
No. CV 95–8748, 1998 WL 1799018 (C.D. Cal. July 2, 1998)..............................11

*Stonebrae, L.P. v. Toll Bros., Inc.*,
2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) .........................................................19

*Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*,
731 F. Supp. 2d 937 (N.D. Cal. 2010) ................................................................5, 7

*Toven v. Metropolitan Life Ins. Co.*,
No. CV 06–07260, 2009 WL 578538 (C.D. Cal. 2009) .......................................11

*United States v. $28,000.00 in U.S. Currency*,
802 F.3d 1100 (9th Cir. 2005)...........................................................................................3

*Univ. Elec., Inc. v. Univ. Remote Control, Inc.*,
130 F. Supp. 3d 1331 (C.D. Cal. 2015)...........................................................8, 9, 12

*Van Gerwen v. Guaranteed Mut. Life Co.*,
214 F.3d 1041 (9th Cir. 2000).....................................................................................4

*Villasenor v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
2021 WL 242924 (N.D. Cal. Jan. 25, 2021) .....................................................4, 18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)......................................................................................3

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007)..........................................................................6, 11, 15

*Yamada v. Nobel Biocare Holding AG*,
825 F.3d 536 (9th Cir. 2016)...........................................................................2, 18

**Statutes**

15 U.S.C. § 15a ................................................................................................................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3     15 U.S.C. § 26 .................................................................................................................. 1, 3, 4, 5

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1  **I.    INTRODUCTION**

2          Google does not dispute that Epic is entitled to an award of reasonable attorneys' fees and

3  costs.  The amounts Epic requested, however – $180.8 million in attorneys' fees and costs and

4  $36.9 million in purported prejudgment and postjudgment interest (ECF No. 1088, at 24) – are

5  unreasonable and should be substantially reduced (as to the fees and costs) and rejected entirely

6  (as to interest).

7          As a threshold matter, the request for interest is improper and should be stricken.  The

8  Clayton Act does not provide for interest where, as here, the plaintiff seeks only injunctive relief.

9  See 15 U.S.C. § 26.  Epic cites no other authority that would warrant in these circumstances an

10  extraordinary grant of ***$36.9 million*** for the "time value of money."  Given the absence of either

11  statutory authority or supporting case law, this aspect of Epic's request should be rejected

12  outright.

13          With respect to any award of attorneys' fees and costs, the Court's review should be

14  guided by the touchstone standard of "reasonableness."  Epic's ***$180.8 million*** request grossly

15  exceeds that standard.  The Court should reduce Epic's request for the following reasons and

16  others, which are detailed in the supporting Declaration of Andre E. Jardini ("Jardini Decl."):

17          •     <u>**First-Year Lawyers**</u>.  Epic requests ▮▮▮ in fees for ▮ timekeepers with

18  less than one year of experience out of its $170.5m total fee request.  Jardini Decl. ¶ 133.  The

19  vast majority of these junior associates were staffed by Cravath and worked on the case for less

20  than two years and either left the case or left the firm.[1]  While first year associates can provide

21  value to legal matters, a defendant should not be required to bear the costs associated with a "burn

22  and churn" case management model.

23          •     <u>**Conferencing / Meetings.**</u>  Epic requests excessive fees for attendance at team

24  meetings.  Solely by way of example, in November 2021 Cravath held team meetings on ▮ days

25

26  _____

[1] Cravath employs a "rotation" business model for associates in which associates "are assigned to
work with a partner or small group of partners for a period of time," and "[a]t the end of that
27  period, each associate 'rotates' to work with a different partner or group of partners within their
department."  See Cravath, https://www.cravath.com/careers/legal-hiring/professional-
28  development/the-rotation-system.html (last visited December 5, 2025).

with an average of ▉ timekeepers billing each of those days for meetings—resulting in an extraordinary ▉ meeting hours for just that month.  Jardini Decl. Ex. 7.11a.  Courts routinely reduce fee awards for this type of billable activity due to inherent inefficiencies and the potential for abuse.

- **Transient Staffing.**  Epic requests fees for hours billed by 67 timekeepers who spent less than 50 total hours on the case, and 84 timekeepers who billed less than 100 total hours.  This type of "transient staffing" yields unreasonable inefficiencies in this type of case and merits a further reduction.  Jardini Decl. ¶ 121.

- **Deposition Staffing**.  Epic requests excessive fees related to depositions of Google witnesses, with upwards of ▉ to ▉ unique timekeepers billing time to prepare for a single deposition.  Jardini Decl. ¶ 162.  Although participating in the deposition preparation process can be valuable professional experience, a defendant should not be required to fund a pattern and practice of overstaffed depositions.

**Additional Excludable Hours**.  Beyond these and other examples of excess, Epic also fails in many instances to provide a sufficient description of the work performed.  This defect includes scores of vague time entries, billing for clerical and summer associate tasks and overhead, and a failure to properly isolate work performed by Cravath for a separate litigation, *Epic Games, Inc. v. Apple, Inc.*, No. 4:20-CV-05640-YGR (N.D. Cal.) ("Epic v. Apple").  Jardini Decl.¶¶ 137-39, 144-50, 165-68.

Recognizing the flaws in its showing, Epic incorrectly argues that its attorneys' fee request is "presumptively reasonable" because it actually paid the fees in question.  While a lodestar figure – once established – can be presumptively reasonable, it must first be established with reference to reasonably expended hours, which Epic has not demonstrated here.  *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (lodestar "is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable rate for the region and for the experience of the lawyer") (emphasis added).  Further, even if Epic's lodestar calculations were accepted at

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-2-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1    face value, Epic has not demonstrated that Epic properly managed the expenditure of attorney

2    fees throughout the litigation. This is further evidenced by the fact that Epic paid Cravath's

3    attorney fees for both *Epic v. Apple* and *Epic v. Google*, which Epic did not segregate out by

4    matter for a year and a half. Thus, no presumption of reasonableness is warranted.

5         For these reasons and others set out below, Google respectfully requests that the Court

6    reduce the amount of attorneys' fees and costs sought by Epic to $131,244,233.36 and deny

7    Epic's request for an interest adjustment.

8    **II.    LEGAL STANDARD**

9         The prevailing party in an antitrust suit for injunctive relief is entitled to recover "the cost

10   of suit, including a reasonable attorney's fee." 15 U.S.C. § 26.  There is no provision for the

11   award of interest on attorneys' fees and costs in an injunctive relief action.  *Id.*  In the Ninth

12   Circuit, a reasonable attorney's fee is calculated using the lodestar method of "multiplying the

13   number of hours the party reasonably expended on the litigation by a reasonable hourly rate."

14   *Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd.*, 612 F. Supp. 3d 899, 922 (N.D. Cal.

15   2020).  "The burden of presenting the appropriate fee documentation rests squarely on the

16   shoulders of the attorneys seeking the award."  *In re Washington Pub. Power Supply Sys. Sec.*

17   *Litig.*, 19 F.3d 1291, 1306 (9th Cir. 1994); *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir.

18   1993) ("[t]he fee applicant bears the burden of documenting the appropriate hours expended in

19   the litigation and must submit evidence in support of those hours worked).  This includes

20   "detailed documentation of the hours worked."  *United States v. $28,000.00 in U.S. Currency*,

21   802 F.3d 1100, 1105 (9th Cir. 2005) (internal citations and quotations omitted); *Optronic Techs.*,

22   612 F. Supp. 3d at 922 (prevailing party must submit "evidence of the appropriate hours

23   expended").

24        In evaluating a party's fee application, a court will perform "a factual determination as to

25   whether the requested fee is reasonable."  *$28,000.00 in U.S. Currency*, 802 F.3d at 1105; *see*

26   *also Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989)

27   (district court must undertake a "detailed analysis of the time records presented" and should

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-3-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

"refuse[] to accept uncritically plaintiffs' counsel's representations concerning the time expended"). The court must exclude from the calculation hours that it determines were not "reasonably expended" on litigation because they were "excessive, redundant, or otherwise unnecessary." *Van Gerwen v. Guaranteed Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435-36, (1983)); *O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 114 F. Supp. 3d 819, 826 (N.D. Cal. 2015). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Villasenor v. Cmty. Child Care Council of Santa Clara Cnty.*, Inc., 2021 WL 242924, at *7 (N.D. Cal. Jan. 25, 2021) (citing *Hensley*, 461 U.S. at 433).

## III.    ARGUMENT

### A.    Epic Cites No Basis to Claim Prejudgment or Postjudgment Interest

Epic seeks attorneys' fees and costs pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26. Mot. at 18. Without statutory authorization or case law support, Epic asks for an additional $34,982,028 in interest on top of its requested attorneys' fees, and $1,941,735 in interest on its requested costs. Mot. at 24. Epic's attempt to frame this additional $37 million demand as an adjustment for "the time value of money" reflects a demand for both prejudgment interest[2] and postjudgment interest.[3] *See* Mot. at 24; Dkt. 731-15 (O'Connor Decl., Ex. M) (applying prime rate adjustment to Epic's fees from the filing of the complaint through the purported date of judgment, and separately from the date of judgment through the filing of its motion for attorney fees). Epic has no statutory basis to claim either, and the case law Epic cites is distinguishable from the circumstances here.

**Prejudgment Interest.** Epic cites no statutory basis to award prejudgment interest on a fees and costs award in an injunction case. *See Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 840 (1990) ("At common law judgments do not bear interest; interest rests solely upon statutory provisions") (quoting *Pierce v. United States*, 255 U.S. 398, 406 (1921)). Epic ignores the text of the statute it cites; 15 U.S.C. § 26 does not authorize prejudgment interest.

---

[2] Epic seeks $25.7 million in prejudgment interest for fees and $1 million for costs.
[3] Epic seeks $6.9 million in postjudgment interest for fees and $1 million for costs.

When applying a statute, the court may not insert words that are not there.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004) (declining to "read an absent word into the statute," which would result in "an enlargement of [the statute] by the court"); *Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019) ("It is not our practice to read words into statutory provisions"). Moreover, Congress has authorized interest when it intended to do so, as reflected in a parallel section of the Clayton Act authorizing damages and interest.  *See* 15 U.S.C. § 15a ("The court may award under this section, pursuant to a motion by such person promptly made, simple interest on actual damages for the period beginning on the date of service of such person's pleading setting forth a claim under the antitrust laws and ending on the date of judgment…") (emphasis added).  Epic does not cite a single case in support of its request in which a prevailing party recovered prejudgment interest for attorneys' fees or costs under 15 U.S.C. § 26.

Lacking statutory authorization for claiming prejudgment interest on fees and costs in an injunction case, Epic relies on inapposite cases.  First, Epic relies on cases dealing with delayed compensation to a prevailing party's attorneys, who undertook risk during the case, which is not the case here.  Epic relies on, for example, *Theme Promotions, Inc. v. News Am. Mktg. FSI, Inc.*, where the court held that "[t]o compensate Theme's *attorneys* for the delay in receiving its fees, the court enhances the fees calculated at historical rates by a prime rate interest factor."  731 F. Supp. 2d 937, 949 (N.D. Cal. 2010) (emphasis added); Mot. at 24.  But here, Epic's attorneys have faced no delay in payment, as they were compensated "on a non-contingent basis throughout the duration of this matter."  Mot. at 24.  *Theme Promotions* also involved a litigation spanning *12 years*—nearly three times the length of this case.  *See id.* at 947-48 ("Theme's attorneys seek payment for work performed up to twelve years ago.").  Similarly, Epic cites *Gates v. Deukmejian* for the proposition that district courts have discretion to compensate prevailing parties at current, rather than historical, billable rates.  O'Connor Decl. ¶ 220 (citing 987 F.2d 1392, 1407 (9th Cir. 1992)).  But *Deukmejian*, too, was about compensating plaintiffs' attorneys. 987 F.2d at 1407 ("Plaintiffs' attorneys have waited over three years to be compensated."). There, the Ninth Circuit explicitly discussed record evidence showing how plaintiff's counsel's

1   work precluded them from engaging in work on other cases at market rates. *Id.* at 1406. Epic's

2   law firms faced no such preclusion here; they were paid at market rates on an ongoing basis.

3   *Welch v. Metro. Life Ins. Co.* applied a similar rationale in holding that district courts "have the

4   discretion to compensate plaintiff's attorneys for a delay in payment." 480 F.3d 942, 947 (9th

5   Cir. 2007) (cited at O'Connor Decl. ¶ 222). To the extent such rationale applies to a prevailing

6   party itself, rather than attorneys who were not paid during the case, Epic has not identified a

7   single case in support of this novel request.

8        Without supporting authority, Epic attempts to couch its request for interest as

9   compensation as an inflation adjustment. Mot. at 24. In particular, Epic cites a 40-year old

10   Seventh Circuit decision in *Ohio-Sealy Mattress Mfg. Co. v. Sealy Inc.*, 776 F.2d 646, 663 (7th

11   Cir. 1985), for the proposition that a plaintiff is entitled to the lost time value of money

12   compensation to account for inflation. Mot. at 24. *Ohio-Sealy* predates the Supreme Court

13   decision in *Kaiser Aluminum* requiring statutory authorization for awarding interest, and to the

14   extent its framing of an adjustment at current rates as "inflation" versus interest is inconsistent

15   with Kaiser, it should be disregarded. In the Ninth Circuit, however, "adjustment for inflation is

16   not required in every case"; rather, "the question for the district court is the reasonableness of the

17   adjustment in light of the totality of the circumstances and the relevant factors, including delay in

18   payment." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 n.7 (9th Cir. 1987); *see also Clark*

19   *v. City of Los Angeles*, 803 F.2d 987, 993 (9th Cir. 1986), *overruled on other grounds* by *Berry v.*

20   *Air Force Cent. Welfare Fund*, 115 F.4th 948, 954 (9th Cir. 2024) (declining to find an abuse of

21   discretion where the district court refused to adjust attorney fee award for inflation, as

22   adjustments for inflation "are not invariably required, any more than a contingency multiplier

23   is"). The totality of the circumstances, where Epic was compensated at the prevailing market

24   rates on a non-contingent basis and Epic's failure to provide any relevant factors to apply an

25   inflation adjustment, clearly shows the unreasonableness of this request. As described below,

26   Epic has not faced the type of delay in payment that would warrant such an adjustment.

27        **Postjudgment Interest**. To the extent Epic seeks postjudgment interest, the only

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-6-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1    conceivable path is where a significant post-judgment delay leads to a significant delay in the

2    payments of fees and costs.  Epic has not shown any significant delay of payment since entry of

3    judgment.  *See, e.g.*, *Barjon v. Dalton*, 132 F.3d 496, 503 (9th Cir. 1997) (denying enhancement

4    for 14-and-17 month delays in fees payments since becoming entitled to a fees award).  Epic

5    relies on *Theme Promotions, Inc.*, 731 F. Supp. 2d at 949, where a litigant sought attorneys' fees

6    over four years after judgment had been entered in its favor.  While Epic claims that the

7    "effective" judgment date is October 7, 2024 (Mot. at 24), in fact, judgment was entered on

8    January 9, 2025.  See Dkt. 716.  Thus, as of the date of this filing, less than a year has passed

9    since the entry of judgment.  Such timing is not out of the ordinary.  The Ninth Circuit has

10   recognized that a 17-month period in obtaining fees is "not very long," and denied an interest

11   adjustment in those circumstances.  *Barjon*, 132 F.3d at 503.  Similarly, in *Christensen v.*

12   *Stevedoring Services of America*, 557 F.3d 1049, 1056 (9th Cir. 2009), the court found that a two-

13   year delay was "not so egregious or extraordinary as to require a delay enhancement."

14   Accordingly, Epic has not demonstrated delay that could ever warrant an award of postjudgment

15   interest.

**B.    Epic's Fee Request Should Be Substantially Reduced Because It Reflects Excessive and Unreasonably Billed Hours**

16

17          A district court should exclude from the lodestar amount hours that are not reasonably

18   expended because they are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S.

19   at 434.  Here, Epic's underlying billing records reveal substantial amounts of excessive and

20   unnecessary billing.  Jardini Decl. ¶ 76.  The Court should therefore reduce Epic's fee request to

21   account for unreasonableness, as detailed below.

**1.    Epic Requested Hours are Excessive**

**a.    Excessive Staffing**

          Hours may be reduced by the court "if the case was overstaffed and hours are duplicated;

25   if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of Los*

26   *Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  While determining whether work is unnecessarily

27   duplicated is "no easy task," "the moving party should not be given free rein to overstaff a case."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-7-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1   *Clark v. InComm Fin. Servs*., Case No. EDCV 22-1839 JGB (SHKx), 2024 WL 4875348, at *6

2   (C.D. Cal. Nov. 8, 2024); *see Univ. Elec., Inc. v. Univ. Remote Control, Inc.*, 130 F. Supp. 3d

3   1331, 1339 (C.D. Cal. 2015) (applying a 10% reduction to fees where "[t]here were too many

4   lawyers working on the same task, too many lawyers coming up to speed, and too many lawyers

5   attending depositions and hearings).

6          Epic retained six different law firms for this matter, in addition to a document review

7   vendor.  See Mot. at 10-11.  The bulk of Epic's requested fees originate from Cravath (█████

8   ████ of the $170.5 million total fee request), Jardini Decl. ¶ 3, a firm that alone utilized 212

9   separate timekeepers over the course of the litigation.  *Id.* ¶ 113.  Cravath's staffing included 18

10  partners, 80 associates, 30 discovery attorneys, and 66 other billing personnel.  *Id.*  Public

11  information indicates Cravath employs 532 attorneys, which means that over the course of this

12  litigation, ***over 20% of the firm's attorney workforce*** was employed on this case.  *Id.* ¶ 114.

13         Moreover, more than half of the Cravath associates billing to this matter had less than a

14  year of experience – 54 out of 80 associates.  *Id.* ¶ 133, Ex. 7.4 (Attorneys with One or Zero

15  Years of Experience).  These associates (█ across all firms) billed exorbitantly to the case; their

16  fees amount to approximately ██████ hours and ██████████ of the requested fees—

17  approximately one-third of Epic's overall requested fees.  *Id.* ¶ 133.  Of these █ associate

18  attorneys, at least ██ had less than two years of experience over the timeline of working on this

19  matter, supporting the conclusion that these timekeepers had minimal experience not just at the

20  time they joined the case, but throughout their overall tenure on *Epic v. Google*.  *Id.*  The fact that

21  approximately one-third of the total number of attorneys that performed work on this matter, a

22  complex antitrust litigation, had minimal legal experience strongly suggests excessive and

23  duplicative staffing by Cravath.  *See e.g.*, *Lauderdale v. City of Long Beach*, No. CV 08-979 ABC

24  (JWJX), 2010 WL 11570514, at *7 (C.D. Cal. Jan. 11, 2010) (finding certain hours "duplicative

25  and unnecessary" where junior attorneys expended time on tasks that were continued by more

26  experienced attorneys); *Heavener v. Meyers*, 158 F. Supp. 2d 1278, 1280-81 (E.D. Okla. 2001)

27  (reducing fee award due to "excessive billing by counsel attributable, in large part, to counsel's

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-8-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

[use of] inexperience[d] [associates]" and criticizing counsel's "use of this litigation as an 'educational forum'" for associates); *Ramos v. Lamm*, 713 F.2d 546, 554 n.3 (10th Cir. 1983) ("[i]f the inexperience of counsel requires the unusually large number of hours, the adversary should not be required to pay for more than the normal time the task should have required."). Epic acknowledges this voluntary staffing choice of rotating out associates after two years, but claims, without support, for the unrealistic position that "efficiency was not lost when certain associates rotated out after two years and new associates took their place" due to senior staffing remaining consistent. O'Connor Decl. ¶ 106. However, Epic never explains how such efficiency would be maintained by a churn of over 50 junior associates, which would be an incredible undertaking, and fails to confront the staggering number of hours billed by those rotating junior associates.

In addition to Cravath's 212 timekeepers, Epic utilized another ▇ timekeepers across the other five law firms, bringing the total number of law firm timekeepers to ▇. Jardini Decl. ¶ 116. Epic additionally utilized the document review services of Update Inc., who billed for ▇ timekeepers. *Id.* ¶ 117. In total, ▇ individuals billed time to this matter. *Id.* ¶ 118. This is an extraordinary and excessive number of individuals working on a single matter, which was also coordinated with the resources of separate plaintiff group attorneys, and strongly suggests overstaffing by Epic, and accordingly, duplicative and excessive hours.

Google requests a reduction of 20% of the fees billed by those attorneys with minimal legal experience, amounting to ▇▇▇. *Id.* ¶ 135.

### b.    Transient Timekeepers

Epic's time entries also reveal inefficient staffing through a significant number of "transient" timekeepers over the course of the litigation. Jardini Decl. ¶ 121. Of Cravath's 212 unique timekeepers working on this case, many of those timekeepers billed insignificant amounts of time on the matter. *Id.* Courts in the Ninth Circuit have excluded hours due to this type of inefficient transient involvement. *See, e.g., Univ. Elec., Inc.*, 130 F. Supp. 3d at 1339 (excluding hours billed by attorneys who spent less than 100 hours on the matter "[b]ecause such transient

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-9-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1    involvement is inefficient); *see also Action Star Enter. v. Kaijet Tech. Int'l*, No. CV–12–08074

2    BRO, 2014 WL 12589632, at *11 (C.D. Cal. Jul. 7, 2014) (applying a 15% across-the-board

3    reduction "in order to compensate for any inefficiencies of litigation").

4        Despite the enormous number of timekeepers, Cravath requests fees for 67 timekeepers,

5    including 38 associates, who contributed less than 50 hours over the course of the litigation.

6    Jardini Decl. ¶ 121.  84 timekeepers billed less than 100 hours over the course of the four-plus

7    years of litigation.  *Id.*  Given a case of this complexity and magnitude, Mot. at 17, Epic has not

8    shown what contribution these timekeepers could have efficiently made in the time equivalent of

9    2-4 weeks, particularly given the time required to become familiarized with the case.  *Id.*

10                    **c.    Excessive Staffing for Document Review**

11       Epic retained a contract document reviewer vendor, Update, that employed contract

12   attorneys to review documents for both *Epic v. Google* and *Epic v. Apple*.  Medina Decl. ¶ 12;

13   O'Connor Decl. ¶ 30.  ▮ individual timekeepers from Update billed a staggering 142,748.6

14   hours to document review attributed to this case—this is over ***39 years*** of 10 hour days of review

15   for 365 uninterrupted days.  Jardini Decl. ¶ 119; O'Connor Decl. ¶ 79.  Despite these enormous

16   document review resources, Epic's law firms used another ▮ individual attorneys to conduct

17   additional review.  Jardini Decl. ¶ 159.  Given that the total number of timekeepers used across

18   Epic's six law firms totaled ▮, *id.* ¶ 116, this means nearly ▮ of the attorney workforce on

19   *Epic v. Google* billed to document review on top of Epic's contract reviewers.  This is plainly

20   excessive.[4]

21       Moreover, the amount of hours billed by Epic's contract document reviewers alone—

22   before even accounting for attorney hours—approaches and at times exceeds the amount of hours

23   billed in cases that Epic claims were of "similar complexity and duration."  Mot. at 14.  For

24

25   _____
     [4] Both parties requested significant document discovery, as they are entitled to, but Epic is not
26   entitled to reimbursement for excessive or duplicative costs related to document review.  Indeed,
     pursuant to the Stipulation and Order Regarding Coordination of Discovery, Epic was required to
27   coordinate with other Plaintiffs in this matter, but they have not shown minimal evidence they
     shared review costs with the other parties. *See* Epic Dkt. 89, para. 2 ("Plaintiffs shall coordinate
28   discovery efforts to the fullest extent reasonably possible to minimize expense and facilitate the
     orderly and efficient progress of the Related Actions.")

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

example, Epic cites to *In re Actos (Pioglitazone) Prods. Liab. Litig.*, 274 F. Supp. 3d 485, 529 (W.D. La. 2017), where plaintiffs' counsel was compensated "for over 200,000 hours of work over four years, which the court found appropriate given the millions of documents, over a hundred depositions and 'extremely high level of expertise, collaboration, and agreement' required throughout the MDL." Mot. at 14-15.  Epic refers selectively to the total hours billed by Epic's law firms over four years, 248,838.31 hours, to suggest Epic's total hours are comparable to the Actos case.  *Id.* at 14.  But Epic selectively excludes the ~142,000 hours spent by Update on document review in making this comparison.  Mot. at 14 ("The total number of hours expended by the entire attorney team, *excluding contract attorneys from Update*, was 248,838.31 hours") (emphasis added).  Adding Epic's attorney hours to Update's document review hours amounts to nearly 400,000 total hours billed by Epic.  Thus, even using a case that Epic cited as an appropriate comparator, which also involved review of millions of documents, Epic's lawyers (including those at Update) billed significantly more hours.

Given the extensive amount of time spent by both law firms and Update on document review, Google requests a reduction of 3% of the total hours billed by the law firms Cravath, Wiggin, and Zukerman, equal to ▮▮▮▮ hours and ▮▮▮▮▮▮▮.  *Id.* ¶ 160.

### d.    Excessive Staffing and Time Billed for Conferencing

Courts regularly reduce attorneys' fee requests for excessive meetings where parties failed to provide a "persuasive justification for the intra-office meetings." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007); *see also Toven v. Metropolitan Life Ins. Co.*, No. CV 06–07260, 2009 WL 578538, at *3 (C.D. Cal. 2009) (reducing total hours billed by 4% for excessive intra-office meetings); *Shephard v. Dorsa*, No. CV 95–8748, 1998 WL 1799018, at *2 (C.D. Cal. July 2, 1998) (reducing total hours billed by 5% for excessive intra-office meetings).

As stated above, Epic employed an extraordinary number of timekeepers on this matter, *see* section III.B.1 and Jardini Decl. ¶ 176, and those timekeepers billed an excessive amount of time to conferencing and team meetings.  *Id.* ¶ 152, *see* Exs. 7.11a (Meeting Attendance on Consecutive Days) and 7.11b (Meeting Attendance (More than 15 Timekeepers)).  For example,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-11-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

1  over the course of the litigation, ███████████████████████████████████

2  ██████████████████████████████████ *See id.* ███████████████████

3  █████████████████████████████████████████████ *Id.* While the amount

4  of time billed to meetings this day varies by timekeeper, many are ██████████ ████████

5  █████████████████████████████████████████████████████████████

6  ████████████ *Id.* ████████████████████████████████████████

7  ████████████ *Id.* █████████████████████████████████████████

8  ████████████████████████████████████████████ *Id.* In total,

9  Cravath billed ██████ hours on team meetings in November 2021. *See* Jardini Decl., Ex. 7.11a.

10  While some level of team meetings and coordination is reasonable on a matter of this size

11  and complexity, Jardini Decl. ¶ 153, the frequency and volume of attendees at these team

12  meetings is excessive and demonstrates a lack of billing judgment. *Hensley*, 461 U.S. at 437.

13  Indeed, sophisticated clients generally disfavor the excessive use of conferencing and regulate it

14  with billing guidelines. Jardini Decl. ¶ 154. Many of the time entries fail to even identify a

15  particular topic, pleading, or reason for the meeting. *See id.*, Ex. 7.11b (Meeting Attendance

16  (More than 15 Timekeepers)) (*e.g.*, ████████████████████████████████████

17  ██████████████████). Further, given the vagueness of the descriptions of the meetings, it strains

18  credulity that Epic could appropriately allocate between the concurrent litigations it was pursuing

19  against Apple and Google at the time. *See infra*, § III.B.2.b.

20  While Google does not seek a discrete reduction for excessive time billed on

21  conferencing, Epic's billing for team meetings demonstrates that conferencing was excessive and

22  that overall staffing decisions were unreasonable. *Id.* ¶ 157.

23      **e.**  **Excessive Staffing and Time Billed for Deposition Preparation**

24  Courts also have discretion to reduce fees for general overstaffing of litigation tasks. *See*

25  *Univ. Elec., Inc.*, 130 F. Supp. 3d at 1339 (applying a 10% reduction to fees where "[t]here were

26  too many lawyers working on the same task, too many lawyers coming up to speed, and too many

27  lawyers attending depositions and hearings); *see also Action Star*, No. CV–12–08074 BRO at *11

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

(applying a 15% across-the-board reduction "in order to compensate for any inefficiencies of litigation").

For the depositions of certain Google witnesses, Epic staffed an average of ███ timekeepers per witness, and at times substantially more, as with Google witness Purnima Kochikar, which had ███ unique timekeepers billing on her deposition preparation. Jardini Decl. ¶ 162.  Further, many depositions had ████████ attorneys in attendance for Epic.  *Id.* ¶ 164.  This volume of individuals preparing for and attending the deposition of a single witness is excessive, inefficient, and duplicative, and it is unreasonable to seek reimbursement for these staffing choices. *See e.g.*, *Barranco v. 3D Sys. Corp.*, No. CV 13-00412 LEK-RLP, 2018 WL 4512186, at *6 (D. Hawaii June 15, 2018) (finding repeatedly that "[i]n light of the time billed by other attorneys for the preparation and attendance at these depositions, the Court finds that this time [preparing for the depositions] is excessive and unreasonable."); *LiiON, LLC v. Vertiv Grp. Corp.*, No. 18-CV-6133, 2021 WL 229657, at *3-4 (N.D. Ill. Jan. 22, 2021) (finding repeatedly "unreasonable and excessive" the involvement of multiple attorneys in deposition preparations).

Because most of the deposition preparation billing descriptions were not specific as to the actual tasks performed, it is difficult to determine if all the attorneys' preparation or presence was adequately justified.  Jardini Decl. ¶ 164. Google requests a reduction of ██████ hours, calculated at the average Cravath firm rate without summer associates (██████), or ██████████ is appropriate, which does not consider the additional billing by the law firms Wiggin, Zukerman, or Faegre.  *Id.*

### f.    Excessive Hours Billed Per Day

Epic's fees also reflect many instances of excessive hours billed per day, which warrants a reduction.  Jardini Decl. ¶¶ 124-130.  In particular, Cravath billing records reflect a significant number of time entries billing in excess of 12 hours per day.  *Id.*, Ex. 7.13 ("Long Billing Days"). For example, in the month of December 2020, ████████████████████████████████ ████████████████████████████████████████████  *See id.*  In total, time billed on these exceedingly long days—not including any time billed in November 2023, the

month of trial—totals ▓▓▓▓▓ hours.  *Id.* ¶ 130.

With the exception of trial, where extremely long days are reasonably necessary, serious questions exist as to the reasonableness, necessity, and efficacy of such entries.  *Id.* ¶ 131. This is often exacerbated by the brief and vague descriptions of work performed for these large blocks of time.  *Id.* ¶ 132.  Google requests a significant reduction of 25%, or ▓▓▓▓▓▓▓, to reflect days where inefficiencies and unreasonable billing occurred.  *Id.*

### 2.    A Material Percentage of Epic's Hours Are Not Sufficiently Documented

#### a.    Vague and Boilerplate Billing

In addition to excluding hours that are administrative, excessive, redundant, or unnecessary, courts may exclude hours with inadequate documentation or poor record-keeping. *Campbell v. National Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (2010); *see also Chalmers*, 796 F.2d at 1210 (excluding hours because the case was overstaffed and hours duplicated). They may exclude time entries that are block billed, vague, or clerical in nature. *Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dept.*, 516 F. Supp. 3d 1202, 1214-15 (2021).  Moreover, "when faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id.*

Epic's billing documentation reveals significant entries with improperly vague or boilerplate time entries.  For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Jardini Decl. Ex. 7.5 (Boilerplate Vague Billing Entries). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Id.* Ex. 7.5 to the Jardini Declaration details over nine thousand hours and over ▓▓▓▓▓▓▓ of dollars in fees billed to this type of vague, rote, and

-14-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    boilerplate entries across Epic's law firms.  *Id.*  Vague entries like these fail to meet Epic's

2    burden to "document[ ] the appropriate hours expended," and are impossible to use to determine

3    the reasonableness of the work.  *Welch.*, 480 F.3d 942 at 948.  As such, these types of entries

4    should be reviewed carefully and excluded as appropriate within the Court's discretion. *Id.*

5         Google requests a reduction of ████████████ for these insufficiently documented entries.

6    Jardini Decl. ¶ 182.

7              **b.     Epic Failed to Sufficiently Document and Isolate Hours Spent**
                        **on the *Epic v. Apple* Matter**

8         From April 2020 to September 10, 2021, Epic's counsel at Cravath, Swaine, & Moore

9    ("Cravath") billed time entries spent on both *Epic Games, Inc. v. Google LLC, et al*, Case No.

10   3:20-cv-05671-JD (N.D. Cal.) and *Epic Games, Inc. v. Apple, Inc.*, Case No. 4:20-CV-05640-

11   YGR-TSH (N.D. Cal.) to a single matter code.  Bornstein Decl ¶ 26.  In *Epic v. Apple*, Epic was

12   not the prevailing party, and was not permitted to seek recovery of attorneys' fees and costs. *Epic*

13   *Games, Inc. v. Apple, Inc.,* Case No. 4:20-CV-05640-YGR-TSH (N.D. Cal.), Dkt. No. 814 ("each

14   party shall bear its own costs of the action").  Epic claims that Cravath attorneys undertook a

15   review of entries during that time period and allocated fees to Google where the time entry

16   indicated work performed on both matters.  *Id.* ¶ 28.  However, further review of that time period

17   reveals a significant volume of entries dedicated to both cases that have been either (1)

18   improperly attributed in full to Google, when they clearly reflect work performed for both

19   matters, or (2) overly allocated to Google based on the information provided.  For those entries,

20   Google requests a reduction to reflect that the work performed appears to have been applicable to

21   both the Google and Apple lawsuits.

22        For example,  ██  time entries from Epic's counsel reflect time spent ████████████

23   ████████████████████  without any reference to Apple or Google.  Jardini Decl. ¶ 166.

24   Examples include ████████████████████████████████

25   ████████████████████████████████████

26   ████████████████████████████████

27        ████████  *Id.*  ████████████████████████████

-15-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    █████, and Epic acknowledges it billed its time during this time period to a single matter code.

2    *See Epic v. Google*, Dkt. 1 and *Epic v. Apple*, Dkt. 1; Bornstein Decl. ¶ 26.  In the absence of

3    language in these time entries identifying which complaint a given timekeeper was billing to (and

4    a breakdown of the time allocated to the respective activities), it is unreasonable to attribute those

5    entries in full to Google, which Epic has done here.

6         Similarly, Epic appears to be seeking fees from Google for time spent on ████████

7    ████████████████████████████████████████████████

8    ███████████████████████████████████████████████

9    ████████████████████████████████████████████

10    █████████████████████████████████████████████

11    ████████████████████████████████████████████████████

12    ██████████████ For example, ███████████████████████████████

13    ██████████████████████████████████████████████████████

14    ██████████████████████████████████ Jardini Decl. ¶ 167.

15    As stated above, on ███████████████████████████████████

16    ████████████████████████████. *Id.* ¶ 166.  There is no indication in these

17    entries that these ███████████████████████████████ were related to

18    Google as opposed to Apple, and indeed, ██████████████████████████

19    ██████████████ Epic has not established that such time is properly included in its fee

20    application to Google in this matter.

21        In total, Cravath billed █ entries, ████ hours and ████████ within these entries. *Id.* ¶

22    167.  Google does not request a separate reduction to this improper allocation, as it is subsumed

23    in the reduction for excessively vague billing entries.

24            **3.**    **Epic Seeks Fees For Improper Categories of Tasks**

25            **a.**    **Overhead and Clerical Tasks**

26        Other billing entries reveal time spent on overhead expenses, which are not compensable,

27    and clerical tasks that have been billed at excessively high professional rates.  *Missouri v.*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-16-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

*Jenkins*, 491 U.S. 274, 288 n. 10 (1989) (clerical tasks are typically considered overhead expenses, and are not reimbursable; "purely clerical or secretarial tasks should not be billed at a paralegal [or lawyer] rate"); *Johnson v. Georgia Highway Exp.*, 488 F.2d 714, 717 (5th Cir. 1974) ("It is appropriate to distinguish between legal work, in the strict sense, and…clerical work… which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.").

For example, Epic seeks fees for overhead costs such as ███████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████ Jardini Decl., Ex. 7 ("Examples of Overhead").  These types of services can be performed by a legal secretary, and are part of the overhead associated with law firm operations as a cost of doing business. *Id.* ¶ 145.  Google seeks a reduction of ████, reflecting ██████ hours, for overhead entries. *Id.* ¶ 149.

Epic also seeks fees for purely clerical tasks that do not require the use of a legally trained professional, such as ████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ██████████████████████████████████ *Id.* ¶ 150, Jardini Decl., Ex 7 ("Examples of Clerical"). These types of tasks should be reduced to a more appropriate hourly rate than those charged by legal professionals such as paralegals or associates, as Cravath chose to use here. *Id.* ¶ 150.  Google accordingly seeks a reduction of █████ for clerical time.  Jardini Decl. ¶¶ 150, 182.

Together, Google requests a reduction of ████████████ for overhead costs, and ██████████ for clerical tasks. *Id.* ¶¶ 149-50, 182.

### b.    Summer Associate Time

Epic has submitted for reimbursement time by 14 summer associates who collectively billed 1023 hours to the case.  Jardini Decl. ¶ 139.  This time should be excluded from Epic's fee

-17-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

request.  *See, e.g.*, *Common Cause v. Jones*, 235 F. Supp. 2d 1076, 1080 (C.D. Cal. 2002) (agreeing that plaintiffs exercised "proper billing judgment" in eliminating 400 summer associate hours from request for fees); *In re Borden*, 104 B.R. 167, 170 (Bankr. D. Minn. 1989) ("Summer clerkships… are typically used by law firms as a marketing tool to attract top talent to the firms that hope to hire them. Usually firms do not expect to make money on them."); *In re Recycling Indus., Inc.*, 243 B.R. 396, 404 (Bankr. D. Colo. 2000) (finding amount of time spent by summer associates unwarranted, unreasonable, and attorney time spent reviewing, editing, or rewriting such work product "a prime example of unnecessary, redundant and inefficient rendering of legal services and attorneys' billing [and] reflect[ing] a complete lack of billing judgment by more senior counsel and the billing partner.").

Here, the summer associates' time entries often reflect time attending meetings, research, or reviewing documents, performed at the direction of other attorneys.  Jardini Decl. ¶ 138.  Other entries reflect general inefficiencies.  For example, █████████████████████████████ █████████████████████████████████████████████████████████████  *See id.* Ex. 7.5.  ██████████████████ ███████████████████████████████████████████████████████████████████████  it is unlikely this time contributed meaningfully to any witness deposition preparation.

In total, ████████ in fees were billed by summer associates. Jardini Decl. ¶ 182.  Google requests these fees be excluded from Epic's request.

**C.    Epic's Fee Request Is Not Presumptively Reasonable Because Epic Paid It.**

Epic asserts that the fact that Epic paid its outside counsel's attorney fees throughout the litigation, and exercised billing judgment in doing so, it is entitled to a "strong" presumption that its fees were reasonable.  Mot. at 10.  This is wrong for several reasons.  First, while it is correct that the figure a lodestar calculation produces is generally "presumed to be [a] reasonable" amount for the fee award, *Villasenor*, 2021 WL 242924, at *7, the lodestar itself must reflect reasonably expended hours.  *Yamada*, 825 F.3d at 546.  Epic has not met its burden to demonstrate that the ████████ hours billed by its law firms and document review vendor, were

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

reasonable.  Jardini Decl. ¶ 110.  Second, Epic has failed to demonstrate that it acted as a

"sophisticated party" that "carefully reviewed" its bills.  *See id.* at ¶ 109.  Lastly, the mere fact

that Epic paid counsel over the course of the litigation is not dispositive of whether those

requested fees were reasonable for purposes of shifting fees to defendants.  *Stonebrae, L.P. v. Toll*

*Bros., Inc.*, 2011 WL 1334444, at *6 (N.D. Cal. Apr. 7, 2011).  "There may be a number of

extraneous reasons why a plaintiff might pay fees to its counsel in excess of what is otherwise

reasonable."  *Id.*

     As stated above, the hours expended by Epic's counsel in litigating this matter reveal

excessive, duplicative, inefficient, and vague billing, which calls into serious question whether

the amount that Epic seeks in fees is, in fact, reasonable.  *See, infra*, § III.B.  Moreover, Epic fails

to provide sufficient evidence to support that Epic "carefully reviewed its bills and negotiated

these rates."  Mot. at 10.  Epic's in-house attorney states that, for example, "Epic raised questions

with counsel about invoices when necessary and, when Epic determined it to be appropriate, Epic

in consultation with counsel declined to pay certain invoiced fees."  *Id.* (citing Medina Decl. ¶ 4).

However, Google was unable to identify any instances of Epic renegotiating an invoice or

declining to pay for specific work.  Jardini Decl. ¶ 91.  Ms. Medina's declaration itself does not

describe any specific instances in which Epic declined to pay certain invoices, nor does Epic's

expert Mr. O'Connor attempt to quantify any such reductions.  Cravath also fails to identify any

specific instances in which questions from Epic led to a reduction in bills, or provide any estimate

of such reductions.  Bornstein Decl. ¶ 74 (referring only vaguely to such inquiries from Epic "on

occasion").  It is therefore unclear how often Epic questioned its invoices from counsel or what

percentage of fees sought by counsel were ultimately renegotiated or rejected, and therefore,

whether Epic in fact acted as a "sophisticated party" in managing its attorney fees.

     Additionally, many of Epic's monthly invoices were in the       of dollars, at times

comprising       of entries.  Jardini Decl. ¶¶ 84-86.  Epic fails to describe in its motion or

supporting declarations how Epic managed to review this volume of billings or whether it used

any systems or software to assist with the review of these invoices.  *Id.* ¶¶ 88-92.  Ms. Medina

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-19-

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD

refers in her declaration only broadly to "Epic" reviewing invoices or raising questions with counsel; she does not identify any other in-house attorneys or employees who may have assisted in this review. *See, e.g.*, Medina Decl. ¶ 4.

Epic offers conclusory, thin support for its claim that it acted as a "sophisticated party" undertaking "careful review" of its law firm invoices, and should not be entitled to a "forceful presumption" that its fees were therefore reasonable.

## IV.    CONCLUSION

In total, to account for the various billing deficiencies underlying Epic's attorneys' fee and cost request, Google requests the Court limit Epic's fees and cost award to $131,244,233.36, which reflects a 27% reduction to the calculated request, and that the Court deny Epic's request for interest.

Dated: December 5, 2025

**MORGAN, LEWIS & BOCKIUS LLP**
Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Leigha M. Beckman

Respectfully submitted,

By:    */s/ Brian C. Rocca*
          Brian C. Rocca

**MUNGER, TOLLES & OLSON LLP**
Glenn D. Pomerantz
Kuruvilla Olasa
Justin P. Raphael
Jonathan I. Kravis
Dane P. Shikman
Lauren N. Beck

Respectfully submitted,

By:    /s/ Glenn D. Pomerantz
          Glenn D. Pomerantz

*Counsel for Defendants*

DEFENDANT GOOGLE'S OPPOSITION TO EPIC'S MOTION FOR ATTORNEYS' FEES AND COSTS
Case No. 3:21-md-02981-JD, 3:20-cv-05671-JD