| | |
|---|---|
| Paul J. Riehle, Bar No. 115199<br>paul.riehle@faegredrinker.com<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>Four Embarcadero Center, 27th Floor<br>San Francisco, CA 94111<br>Telephone: (415) 591-7500 | Glenn D. Pomerantz, Bar No. 112503<br>glenn.pomerantz@mto.com<br>MUNGER, TOLLES & OLSON LLP<br>350 South Grand Avenue, Fiftieth Floor<br>Los Angeles, California 90071<br>Telephone: (213) 683-9100 |
| Gary A. Bornstein (*pro hac vice*)<br>gbornstein@cravath.com<br>CRAVATH, SWAINE & MOORE LLP<br>375 Ninth Avenue<br>New York, New York 10001<br>Telephone: (212) 474-1000 | Brian C. Rocca, Bar No. 221576<br>brian.rocca@morganlewis.com<br>MORGAN, LEWIS & BOCKIUS LLP<br>600 Montgomery Street, Suite 2300<br>San Francisco, CA 94111-1596<br>Telephone: (415) 442-1000 |
| *Counsel for Plaintiff Epic Games, Inc.* | *Counsel for Defendants* |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**RENEWED JOINT MOTION TO MODIFY PERMANENT INJUNCTION**<br><br>Judge:    Hon. James Donato |

RENEWED JOINT MOTION TO MODIFY PERMANENT INJUNCTION
Case Nos. 3:21-md-02981-JD, 3:20-cv-05671-JD

**NOTICE OF MOTION & MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

NOTICE OF MOTION AND JOINT MOTION TO MODIFY THE INJUNCTION: PLEASE TAKE NOTICE that on April 9, 2026, or a date to be set by the Court, in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, before the Honorable James Donato, Plaintiff Epic Games, Inc. ("Epic") and Defendants Google LLC *et al.* ("Google"; collectively, "the parties") will and hereby do move this Court to modify the Permanent Injunction in the above-captioned matters to conform it to the Revised Proposed Modified Injunction proposed by the parties.

The parties seek a ruling under Federal Rule of Civil Procedure 60 adopting the Revised Proposed Modified Injunction proposed by the parties herein and attached as Exhibit B to the Declaration of Kuruvilla Olasa ("Olasa Decl.").

This joint motion is based on this notice of motion and motion, the memorandum of points and authorities that follows, the concurrently filed Declaration of Kuruvilla Olasa and exhibits thereto, the pleadings, papers, and other documents on file in this action, and such other evidence and argument presented to the Court at or prior to any hearing in this matter.

DATED:  March 4, 2026

**MUNGER, TOLLES & OLSON LLP**
  Glenn D. Pomerantz
  Kuruvilla Olasa
  Jonathan I. Kravis
  Justin P. Raphael
  Dane P. Shikman
  Lauren N. Beck

By:  */s/ Glenn D. Pomerantz*
  Glenn D. Pomerantz
  *Counsel for Defendants Google LLC et al.*

DATED:  March 4, 2026

**MORGAN, LEWIS & BOCKIUS LLP**
  Brian C. Rocca
  Sujal J. Shah
  Michelle Park Chiu
  Leigha Beckman

|   |   |   |
|---|---|---|
| 1 |   |   |
| 2 |   | By:  /s/ Brian C. Rocca |
| 3 |   | Brian C. Rocca<br>*Counsel for Defendants Google LLC et al.* |
| 4 |   |   |
| 5 | DATED:  March 4, 2026 | **CRAVATH, SWAINE & MOORE LLP** |
| 6 |   | Gary A. Bornstein (*pro hac vice*)<br>Yonatan Even *(pro hac vice)* |
| 7 |   | Lauren A. Moskowitz *(pro hac vice)*<br>Michael J. Zaken *(pro hac vice)* |
| 8 |   | M. Brent Byars *(pro hac vice)* |
| 9 |   | **FAEGRE DRINKER BIDDLE & REATH LLP** |
| 10 |   | Paul J. Riehle (SBN 115199) |
| 11 |   | By:  /s/ Gary A. Bornstein |
| 12 |   | Gary A. Bornstein<br>*Counsel for Plaintiff Epic Games, Inc.* |

# INTRODUCTION

Following the January 22, 2026 hearing, Epic and Google returned to the negotiating table to fashion a new settlement that is responsive to the Court's concerns and those of its independent expert, Dr. Rose. The parties believe they have achieved that goal in a new and comprehensive private settlement, Olasa Decl., Exhibit A (the "New Settlement"), and a Revised Proposed Modified Injunction ("RPMI"), Olasa Decl., Exhibit B. A redline of the Revised Proposed Modified Injunction against the Court's Existing Injunction (MDL Dkt. No. 1017) is attached as Exhibit D to the Olasa Declaration.

The New Settlement does not require the Court to modify its Existing Injunction to go into effect. Outside the United States, the settlement terms take effect on the schedule stated in the parties' agreement. And within the United States, Google will continue to comply with the Court's Existing Injunction (MDL Dkt. No. 1017) and will adjust its compliance plans consistent with the RPMI if the Court grants this motion and enters the RPMI.

The RPMI, for which the parties seek approval, hews much more closely to the Existing Injunction than did the parties' previous proposal and is designed to address the concerns raised at the January 22, 2026 hearing.

*First*, the RPMI maintains, without any changes, the Court's Catalog Access remedy in full.

*Second*, the parties' previous proposal would have permitted Google to require Google Play Billing to be offered side-by-side with a developer's alternative in-app billing system for in-app transactions. By contrast, the RPMI maintains, without change, the Court's prohibition on Google requiring developers to offer Google Play Billing for in-app transactions.

*Third*, the RPMI proposes to replace the current three-year Store Distribution remedy in the Existing Injunction with a six-year Registered App Store program. The parties believe that the Registered App Store program provides a streamlined opportunity for app store distribution on Android that will be as or more effective than the Store Distribution remedy. As part of their settlement, the parties therefore agreed that Google will implement the Registered App Store program in all markets outside the United States. Adopting the RPMI will ensure that app stores

have access to the same, low-friction distribution option in the United States that they will obtain outside the United States as a result of the parties' settlement.

***Fourth***, the RPMI does not contain the provisions regarding service fees about which Dr. Rose raised a concern at the hearing. (Jan. 22, 2026 Hearing Tr. 121:19–22:11 (Jan. 22, 2026) (Rose).)

***Finally***, the RPMI proposes other modifications that are consistent with changes the parties had proposed in their prior proposal and that did not appear to present serious concerns for the Court or Dr. Rose.

The parties submit that, under Paragraph 14 of the Existing Injunction, "good cause" exists to enter the RPMI. The parties' settlement, which is not contingent on entry of the RPMI, requires Google to deliver significant commitments, including a Registered App Store Program outside the United States. The Registered App Store program will promote competition in the Android app distribution market by streamlining the process for downloading qualified Android app stores and downloading apps from those qualified stores, thereby making it easier for Google Play store competitors to offer their product directly to Android users, while also addressing concerns that Google has raised about the safety and security of Android users.

The RPMI is "suitably tailored" to this "changed circumstance," *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992), because it extends those same benefits to developers, app stores, and users in the United States. Moreover, under the RPMI, Registered App Stores will be able to take advantage of the Catalog Access remedy, which the Court and Dr. Rose noted is designed to address network-effect concerns.

## **LEGAL STANDARDS**

The Existing Injunction provides that "Google or Epic may request a modification of the injunction for good cause." (Existing Injunction ¶ 14.) In addition, Federal Rule of Civil Procedure 60(b)(5) provides that "[o]n motion and just terms, the court may relieve a party" from an order if (among other reasons) "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Supreme Court has explained that this Rule creates a "flexible standard" for modifying an injunction. *Rufo*, 502 U.S. at 393. Under that standard, a party seeking

-2-

1  modification of an injunction bears the burden of establishing "a significant change in facts or law
2  [that] warrants revision of the decree." *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249,
3  1255 (9th Cir. 1999) (quoting *Rufo*, 502 U.S. at 376).  "If the moving party" shows a "significant
4  change in circumstances," then "the court should consider whether the proposed modification is
5  suitably tailored to the changed circumstance." *Rufo*, 502 U.S. at 383.  A settlement between the
6  litigants can constitute a significant change in circumstances, warranting modification of an
7  injunction.  *See Janssen Prods., L.P. v. Lupin Ltd.*, 2016 WL 3392291, at *3 (D.N.J. June 15,
8  2016); *see also Aurelius Cap. Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98, 107 (2d Cir.
9  2016) (approving vacatur of injunction against Argentina after new government entered into
10 settlements, or attempted to settle, with various classes of bondholders).

**ARGUMENT**

**I.   THERE IS GOOD CAUSE TO ENTER THE RPMI, WHICH ACHIEVES AND FURTHERS THE GOALS OF THE EXISTING INJUNCTION.**

In the Existing Injunction, the Court prohibited certain conduct by Google and also took steps to enhance competition in the two markets identified by the jury—Android app distribution and Android in-app payment services for digital goods and services.

The parties' First Proposed Modified Injunction ("FPMI" (MDL Dkt. No. 1119-3)) was intended to achieve those same goals, albeit through different approaches.  But the Court, amici, and Dr. Rose voiced concerns about several modifications in the FPMI—in particular, (1) the removal of the Catalog Access remedy (*see, e.g.*, Jan. 22, 2026 Hearing Tr. 13:4–16) and (2) the requirement that developers who choose alternative payment solutions offer those alongside Google Play Billing (*see id.* 120:19–21:18; Amicus Br. of Microsoft Corp., MDL Dkt. No. 1159–1, at 7–9).

The parties' new settlement and RPMI restore the original versions of those provisions from the Existing Injunction.  The RPMI, like the Existing Injunction, requires Google to offer the Catalog Access remedy in the United States.  And the RPMI prohibits Google from requiring the integration of Google Play Billing—even alongside alternative payment solutions.

The RPMI also requires Google to simplify the installation flow outside the Google Play

store for rival app stores that meet certain safety and security standards.  The parties submit that this seamless installation flow, through the Registered App Store program, will address the Court's concerns regarding the effect of installation friction on app store competition.  (*See* Order re Google's Renewed Motion for Judgment as Matter of Law, Dkt. No. 984, at 13 (citing example of the friction experienced by the Amazon App Store).)  And the RPMI will achieve this benefit in a way that harmonizes with the install flow that Google is committing to make available to Registered App Stores around the world for six years.  This uniform global landscape should help rival stores reach users even more robustly than the Existing Injunction.  This increased competition is "good cause" to modify the injunction.

### A.     The RPMI Maintains Most Key Provisions from the Existing Injunction.

The RPMI preserves key portions of the Existing Injunction prohibiting certain conduct by Google with respect to the relevant markets.  Specifically, like the Existing Injunction, the RPMI ensures that Google cannot engage in the practices that were at issue in the litigation.  The RPMI also retains key provisions of the Existing Injunction that address network effects.

*First,* with respect to past app distribution conduct, the RPMI tracks the Existing Injunction almost verbatim by prohibiting Google from:

- Sharing Google Play store revenue with would-be competitors (*compare* RPMI ¶ 4, *with* Existing Injunction ¶ 4);
- Entering into certain kinds of most-favored or exclusivity agreements with developers (*compare* RPMI ¶¶ 5–6, *with* Existing Injunction ¶¶ 5–6);[1]
- Entering into certain agreements with OEMs and carriers regarding the preinstallation or placement of third-party stores (*compare* RPMI ¶ 8, *with* Existing Injunction ¶ 8);[2] and

---

[1] The parties' minor modifications to these provisions *strengthen* the Existing Injunction by clarifying that the RPMI prohibits sim-ship arrangements and allows Google to have apps exclusively or preferentially on Android vis-à-vis iOS, *provided* that the developer is free to launch on Android through the store of its choice.  (RPMI ¶ 5.)

[2] The RPMI retains a modification to the placement provision that was contained in the parties' previous proposed modified injunction.  Specifically, rather than preventing Google from paying

- Prohibiting communications with users inside and outside of apps (*compare* RPMI ¶ 10, *with* Existing Injunction ¶ 10).[3]

Neither the Court nor Dr. Rose expressed concerns about the parties' minor changes to the above provisions in the FPMI.

***Second,*** the parties heard the Court's concern with their prior proposal (in the FPMI) to modify the Existing Injunction to remove the Catalog Access remedy and seek to be responsive to the Court's admonition that this remedy is necessary "to overcome the network effects and the entrenched problem of Google's dominance." (Jan. 22, 2026 Hearing Tr. 13:6–9.) Accordingly, the RPMI maintains, unchanged, the Catalog Access remedy from the Existing Injunction. (RPMI ¶ 11.)

***Third,*** the parties heard the concerns raised by amici and by the Court's independent expert regarding the parties' prior proposal (in the FPMI) to modify the Existing Injunction to allow Google to require developers to incorporate Google Play Billing into their apps (albeit side-by-side with alternative payment options, which Google must permit). (*See* Jan. 22, 2026 Hearing Tr. 120:19–121:18; Amicus Br. of Microsoft Corp., MDL Dkt. No. 1159-1, at 7–9.) Accordingly, the RPMI maintains, unchanged, the Existing Injunction's prohibition against Google mandating the incorporation of Google Play Billing into apps distributed on the Play store in the United States.

**B.    Enabling the Registered App Store Program in the United States Would Strengthen the Injunction.**

---

for the Play store to be pre-installed at a specific location on an Android device, the RPMI prohibits Google from paying OEMs or carriers to refrain from placing third-party app stores in a specific location on an Android device. (*Compare* RPMI ¶ 7, *with* Existing Injunction ¶ 7.) Although this modification allows Google to pay for its *own placement* on an Android device, it prohibits Google from creating any roadblocks to a *competitor's placement* on that same device. This modification was not raised as a subject of substantial concern by this Court or Dr. Rose at the January 22, 2026 hearing.

[3] Like the parties' previous proposed modified injunction, the RPMI retains the change that Google is no longer required to allow apps to include links to download other apps from the web. (RPMI ¶ 10.) This modification was not raised as a subject of substantial concern from the Court or Dr. Rose at the January 22, 2026 hearing.

The parties' settlement requires Google to adopt and maintain for six years, in all geographies outside the United States, the Registered App Store program, which enables streamlined downloads of third-party stores that meet certain baseline security and safety requirements and the apps they offer. (Ex. A to Olasa Decl., Exs. 1–2.) Under the RPMI, Google would be required to adopt this Registered App Store program (for the same six-year period) also in the United States.

The Registered App Store remedy would replace the Store Distribution remedy that is contemplated in Paragraph 12 of the Existing Injunction. There is good cause to endorse that replacement because the Registered App Store remedy would have a positive impact on the ability of competing stores to reach more users, and implementing that remedy in the United States would align the Android landscape here with changes that Google has committed to make around the world.

The Registered App Store remedy and the Store Distribution remedy have certain key similarities. Both remedies require Google to take steps to make it easier for users to download third-party app stores. Consistent with the stated purpose of the Store Distribution remedy, the Registered App Store remedy will "lower the barriers for rival app stores to get onto users' phones." *In re Google Play Store Antitrust Litig.*, 2024 WL 4438249, at *7 (N.D. Cal. Oct. 7, 2024).[4] But there are also key differences between the two remedies, which militate in favor of adopting the RPMI.

***First***, if the RPMI is adopted, the Registered App Store remedy will apply globally *and in the United States*. This will provide third-party app stores the opportunity to pursue a consistent

---

[4] Epic notes that, at the January 22, 2026 hearing, Dr. Bernheim testified that download frictions have a significant impact on the success rate for downloads of third-party stores from the web. (Jan. 22, 2026 Hearing Tr. 52:13–53:8.) Dr. Bernheim relied on Amazon's failure to gain traction due to those frictions (*id.* 17:19–18:3) and reported on a field test he conducted showing that with a streamlined download such as that contemplated under the Registered App Store program, the number of successful download attempts would more than double (*id.* 50:15–53:8). Dr. Bernheim acknowledged that Play store distribution of third-party stores may achieve a similar effect, but raised concerns about its long-term sustainability, especially after the Existing Injunction's three-year term expires. Dr. Rose acknowledged that the evidence Dr. Bernheim cited regarding Amazon's inability to overcome frictions was "compelling." (*Id.* 153:2–19.)

1  strategy to building scale inside and outside the United States.

2  **Second**, Google has committed to the Registered App Store program for at least six years,
3  as compared to the three-year term of the Store Distribution remedy.

4  **Third**, under the Registered App Store remedies, third-party stores will be distributed
5  *outside* the Play store, and therefore Play will not be reviewing such stores to ensure that they
6  comply with its content standards. By contrast, under the Store Distribution remedy, because
7  third-party stores will be distributed *inside* the Google Play store, Google has indicated that Play
8  will review these stores to ensure that they—and the apps they distribute—are consistent with
9  Google Play's content standards. In Google's view, this review step—which it believes is
10 necessary for apps or app stores distributed in the Google Play store—will inevitably create
11 friction between Google Play and rival app stores. The Registered App Store remedy will
12 minimize that friction.

13     Two more points are important in this context. One, the parties are cognizant that the
14 Court observed that users have been trained to rely on Google Play as a source of downloads. (*See*
15 Jan. 22, 2026 Hearing Tr. 28:10–29:1.) But the evidence shows that both Amazon and Epic,
16 through marketing and incentives, were able to get users to *try* to download their stores—and Epic
17 submits that the main hurdle they faced was their inability to get enough users to *complete* the
18 install process. (*See, e.g.*, *id.* 17:19–18:3, 52:13–53:8, 94:20–95:6.) In Epic's view, the
19 Registered App Store program is the best available remedy to address *that* real world problem and,
20 with the Catalog Access remedy in place, third-party stores can try to move users off Play
21 permanently by offering a full suite of apps on day one.

22     Two, the parties are likewise aware that the Court raised concerns that the Registered App
23 Store program would "give the fox the keys to the henhouse" by giving Google a say over which
24 app stores are registered. (*Id.* 39:14–22.) But the parties submit that the Registered App Store
25 program provides Google with far *less* control over third-party stores than would the Store
26 Distribution remedy. The Registered App Store program requires Google to approve *any* store
27 that meets certain safety and security criteria—rooted in neutral criteria vigorously negotiated by
28 Epic to minimize Google's ability to fence out legitimate competitors. (Ex. A to Olasa Decl.,

-7-

Ex. 2). By contrast, distribution on Google's own store gives Google more control over the process and, moreover, allows Google to review in advance the apps a third-party store intends to carry—something that Google believes to be necessary if third-party stores are distributed through Google Play.[5]

Finally, the parties acknowledge that the RPMI, like the FPMI, does not require Google to permit in-app links to downloads from apps that are downloaded or maintained on the Play Store. (*See* RPMI ¶ 10.) The parties note that under the RPMI, the Registered App Store program addresses and streamlines app distribution on Android devices. In any event, this modification was not raised as a subject of substantial concern by this Court or Dr. Rose at the January 22, 2026 hearing.

In sum, the parties submit that the RPMI's combined remedies—Registered App Store program *and* Catalog Access—create the best solution to address concerns regarding both Google's past conduct and concerns regarding network effects. Rather than a rework of the Existing Injunction, the targeted substitution of one distribution remedy is meant to make the overall set of remedies more resilient in light of the global changes to which Google has agreed. This constitutes good cause to modify the Existing Injunction.

## II.     THE CREATION OF A UNIFORM GLOBAL SYSTEM PRESENTS CHANGED CIRCUMSTANCES TO WARRANT MODIFYING THE INJUNCTION.

The availability of the Registered App Store program is a "significant" "changed circumstance" that justifies modifying the Injunction, for two reasons. *Rufo*, 502 U.S. at 383. ***First***, as discussed *supra* pp. 5–8, the parties submit that the Registered App Store program—which did not exist before the parties' settlement—will benefit competition. ***Second***, the availability of the Registered App Store program outside the United States is an additional changed circumstance that will make that remedy better for competition than the Store

---

[5] Indeed, at the remedies stage, Epic objected to Google having the ability to vet all third-party stores and their apps, which Epic argued "would allow Google to retain its position as gatekeeper of Android app distribution." (MDL Dkt. No. 985 at 23–25.) The Court overruled that objection. (*See* MDL Dkt. No. 1016 at 12.)

1  Distribution remedy.  As discussed, *supra* pp. 5–6, the parties' settlement will implement the
2  Registered App Store remedy in markets outside the United States whether or not the Court adopts
3  the RPMI—making the Registered App Store remedy the primary method for app store
4  distribution outside the United States.  That is a "significant" changed circumstance.  *Rufo*, 502
5  U.S. at 383.  Epic notes that, as Mr. Sweeney explained, investments in distribution are costly, and
6  app stores and app developers make decisions about investing in distribution on a global scale.
7  (*See* Jan. 22, 2026 Hearing Tr. 66:13–68:13 (Sweeney).)  Bringing distribution in the United
8  States into alignment with the primary distribution method outside of the United States will allow
9  competing app stores to build for and invest in one uniform, primary distribution channel—
10 simplifying competition and allowing developers to reach more scale with less investment, to the
11 benefit of users and developers.

### III. THE COMMITMENTS IN THE SETTLEMENT AGREEMENT DO NOT DEPEND ON THE REVISED PROPOSED MODIFIED INJUNCTION.

Finally, the parties note that the Court, Dr. Rose, and the FTC raised concerns that Google may have provided Epic with something of value in the settlement in return for Epic agreeing to forgo certain remedies in the proposed modified injunction.

The parties have taken steps to address that concern by decoupling the settlement agreement from the RPMI and vice versa.  Accordingly, the terms of the settlement—other than the expansion of the Registered App Store program in the United States—will go into effect regardless of whether Google is bound by the Existing Injunction or the RPMI, demonstrating that any value exchanged between Google and Epic in the settlement is not tethered to the Court's decision on the injunction.

If the Court decides to adopt the RPMI, the principal change in the United States will be to extend the Registered App Store program to the United States.  And if the Court declines to adopt the RPMI, Google will continue to comply with the Existing Injunction.

Finally, the parties acknowledge that the revised settlement agreement includes two of the provisions that were the subject of discussion at the January 22 hearing, but neither is contingent on entry of the RPMI.

*First*, the parties' revised settlement retains a commitment from Epic to purchase a set amount of services from Google. Unlike in the prior settlement, however, the revised settlement does not make those terms contingent on the Court entering the RPMI: Epic's purchase of services will occur whether or not the Court modifies its Injunction. Epic's commitment to purchase those services, moreover, is a benefit *to Google* and *from Epic*, and so cannot be a quid pro quo for Epic accepting the RPMI. (*See* Jan. 22, 2026 Hearing Tr. 83:21–84:14 (Sweeney: "[W]e view this as a significant transfer of value from Epic to Google.").)

*Second*, the revised settlement retains an agreement regarding a potential metaverse partnership. As Mr. Sweeney testified, the metaverse browser referred to in those terms is analogous to a regular browser. (*See id.* at 85:22–86:3 (Sweeney).) That potential partnership is also not conditioned upon the Court's entry of the RPMI.

## CONCLUSION

The RPMI preserves nearly all of the core provisions of the Existing Injunction, including Catalog Access to address network effects, adds a remedy in lieu of a similar Store Distribution remedy to better address Google's network effects and create sustainable competition, and provides minimal, further pro-competitive adjustments. As such, the parties submit that it resolves the concerns the Court previously raised. The parties respectfully submit that there is "good cause" to approve the RPMI because it will facilitate greater competition than the Existing Injunction, particularly in light of the changed global circumstances presented by the parties' settlement and Google's commitment to roll out a Registered App Store program around the world.

| | | |
|---|---|---|
| 1 | DATED: March 4, 2026 | **MUNGER, TOLLES & OLSON LLP** |
| | | Glenn D. Pomerantz |
| 2 | | Kuruvilla Olasa |
| | | Jonathan I. Kravis |
| 3 | | Justin P. Raphael |
| | | Dane P. Shikman |
| 4 | | Lauren N. Beck |

By: /s/ *Glenn D. Pomerantz*
Glenn D. Pomerantz
*Counsel for Defendants Google LLC et al.*

DATED: March 4, 2026          **MORGAN, LEWIS & BOCKIUS LLP**
                              Brian C. Rocca
                              Sujal J. Shah
                              Michelle Park Chiu
                              Leigha Beckman

By: /s/ *Brian C. Rocca*
Brian C. Rocca
*Counsel for Defendants Google LLC et al.*

DATED: March 4, 2026          **CRAVATH, SWAINE & MOORE LLP**
                              Gary A. Bornstein (*pro hac vice*)
                              Yonatan Even *(pro hac vice)*
                              Lauren A. Moskowitz *(pro hac vice)*
                              Michael J. Zaken *(pro hac vice)*
                              M. Brent Byars *(pro hac vice)*

**FAEGRE DRINKER BIDDLE & REATH LLP**
Paul J. Riehle (SBN 115199)

By: /s/ *Gary A. Bornstein*
Gary A. Bornstein
*Counsel for Plaintiff Epic Games, Inc.*

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer of this document attests that concurrence in the filing of the document has been obtained from each of the other signatories.

By: /s/ *Brian C. Rocca*

Brian C. Rocca