# Attachment A

Noah A. Brumfield, C.A. Bar No. 203653
ALLEN OVERY SHEARMAN STERLING US LLP
1101 New York Avenue, N.W.
Washington, D.C. 20005
(202) 683-3847
noah.brumfield@aoshearman.com

*Attorney for Amicus Curiae Reliance Entertainment Studios UK Pvt. Ltd.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION**<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games, Inc. v. Google LLC et al.*<br>Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>***AMICUS CURIAE* BRIEF OF INTERESTED DEVELOPERS**<br><br>Judge: Hon. James Donato |

## INTEREST OF THE *AMICI CURIAE*

The undersigned *amicus,* Reliance Entertainment Studios UK Pvt. Ltd., on behalf of itself and Miniclip SA ("Interested Developers," hereinafter "Developers") submits this *amicus curiae* brief in support of Google LLC ("Google") and Epic Games, Inc.'s ("Epic") Renewed Joint Motion to Modify the Permanent Injunction, MDL Dkt. No. 1179 ("Renewed Joint Motion"). Developers offer their perspective on the proposed modified injunction's procompetitive benefits to mobile app developers and publishers. Developers seek a streamlined method for accessing Android devices, a secure mobile app environment, and the freedom to employ their preferred billing solutions. As such, Developers support the parties' Revised Proposed Modified Injunction

("RPMI") and believe the RPMI more vigorously protects their business interests than the Court's Permanent Injunction entered October 7, 2024, MDL Dkt. No. 1017 ("Permanent Injunction").

## I.   Developers in Support

### A.  Reliance Games

The gaming division of Reliance Entertainment Studios UK Pvt. Ltd. d/b/a Reliance Games ("Reliance Games") is a wholly owned subsidiary of Reliance Anil Dhirubhai Ambani Group Ltd.  Reliance Games is a global developer, publisher, and marketer of mobile game apps. Reliance Games is a non-party to this action whose business depends on fair access to mobile device users.

### B.  Miniclip

Miniclip SA ("Miniclip") is an international digital games and entertainment company whose ultimate beneficial owner is Tencent Holdings Limited.  Miniclip is a developer and publisher of mobile games and seeks fair access to mobile devices.

## ARGUMENT

## I.   The Registered App Store Program Would Facilitate Simpler Android User Access to Developers' Apps

Developers, creators and publishers of mobile apps, seek a simple and safe method for Android users to download their products.  Unnecessary barriers between users and third-party app stores impact the user experience and are likely to impede downloads of app stores and, consequently, the apps they distribute.

Under the Permanent Injunction's store distribution remedy, third-party app stores would be available to Android users only through the Google Play Store ("Google Play"). Though the Permanent Injunction aims to enhance competition in app store distribution, the Permanent Injunction places Google in a gatekeeper role.  Google has represented that, before distributing a third-party app store, Google Play must scrutinize both the app store and the apps available on the store for compliance with Google's content standards.  This means that Google would retain discretion to admit or deny competing app stores based on how Google assesses their adherence

to its content standards. The parties note this process would "inevitably create friction between Google Play and rival app stores." Renewed Joint Motion at 7. Developers fear this friction would not only slow but reduce independent app store downloads, needlessly inhibiting users' access to apps.

By contrast, Google and Epic's proposed Registered App Store program would provide a more transparent process for qualifying competing app stores. It would require Google to provide streamlined Android access for third-party stores meeting certain reasonable criteria, including safety qualifications. The Registered App Store program would obviate the need for Google to act as a middleman by allowing app stores that follow objective safety protocols direct downloads to Android devices. Without compromising legitimate safety interests, the RPMI would minimize Google's control over the apps downloaded to Android devices and thereby more robustly safeguard competition. This, Developers believe, is more likely to increase adoption of alternative app stores, with the potential to increase the ways users may download and pay for Developer apps. With users enjoying more seamless access to third-party stores, Developers would directly benefit from the added optionality.

Critically for international app developers, the Registered App Store program would operate both globally and, if the Court approves the RPMI, within the United States. The RPMI also commits Google to providing the streamlined downloading regime for a period twice as long as the Permanent Injunction's store distribution remedy. A six-year Registered App Store program operating both inside and outside the United States would enable Developers to make informed strategic and investment decisions on the scale needed to compete in the global market.

## II.    The Registered App Store Program Would Enhance the Security Ecosystem for Android Apps

Developers share Google's concern for Android user safety, and they have a critical business interest in having certainty that their apps would be downloaded to a secure environment. Developers also appreciate the competent security structure that Google can provide to protect users from malware and other risks. Under the Registered App Store program, publishers of apps

distributed on registered stores would be assured that their apps were downloaded from stores meeting the standardized security criteria—criteria that were negotiated by Epic to "minimize Google's ability to fence out legitimate competitors." Renewed Joint Motion at 7. This should ensure that the streamlined access offered by the Registered App Store program would not come at the expense of user safety.

The RPMI envisions a uniform, neutral security review for all third-party stores against a narrow set of criteria. The proposed requirement that all registered app *stores* meet objective security criteria should reduce the burden on both third-party stores and app publishers compared to a content-based review of every *app* distributed by third-party stores available through Google Play, a process Google believes would be necessary before allowing Google Play access. The Registered App Store program should not impose additional cost or time investments on Developers, who would benefit from the increased content flexibility.

### III.    The RPMI Would Provide Developers the Freedom to Use Their Own Billing Systems

The Permanent Injunction prohibits Google from mandating that Developers offer Google Play Billing for in-app transactions. The RPMI maintains this important provision, providing Developers a choice between offering Google Play Billing, their own billing systems, or an alternative billing system alongside Google Play Billing. Under the terms of the parties' settlement, Developers would also have the option to exclusively offer their own payment solution in certain foreign jurisdictions. Developers welcome this change to the parties' original proposed modification as it would enable greater Developer optionality. This term is especially beneficial to Developers when considered with the Registered App Store program. The RPMI, by retaining this provision from the Permanent Injunction and reducing Google's control over the download process, would protect Developer freedom both in theory and in practice.

### CONCLUSION

It is in Developers' best interests that Android users have a streamlined path to downloading third-party app stores without going through Google Play. The Registered App Store program's

safety protocols would play an important role in assuring that Developers' apps are not downloaded onto Android devices whose security has been compromised.  At the same time, the RPMI retains critical Developer freedom to select their preferred billing methods.  For the foregoing reasons, the RPMI improves the Permanent Injunction's competitive guardrails in the Android app distribution market and delivers promising results for independent app developers.

Dated: April 6, 2026

Respectfully submitted,

*/s/ Noah A. Brumfield*
Noah A. Brumfield
ALLEN OVERY SHEARMAN
STERLING US LLP
*Attorney for Amicus Curiae Reliance Entertainment Studios UK Pvt. Ltd. on behalf of Interested Developers*