Paul J. Riehle, Bar No. 115199
paul.riehle@faegredrinker.com
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, CA 94111
Telephone: (415) 591-7500

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
CRAVATH, SWAINE & MOORE LLP
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000

*Counsel for Plaintiff Epic Games, Inc.*

Glenn D. Pomerantz, Bar No. 112503
glenn.pomerantz@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, California 90071
Telephone: (213) 683-9100

Brian C. Rocca, Bar No. 221576
brian.rocca@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

*Counsel for Defendants Google LLC, et al.*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE GOOGLE PLAY STORE ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>*Epic Games Inc. v. Google LLC et al.*, Case No. 3:20-cv-05671-JD | Case No. 3:21-md-02981-JD<br><br>**JOINT SUBMISSION REGARDING STORE DISTRIBUTION USER EXPERIENCE DISPUTE**<br><br>Judge:   Hon. James Donato |

-1-

Plaintiff Epic Games, Inc. ("Epic") and Defendants Google LLC, *et al*. ("Google"; collectively, "The Parties") respectfully submit this joint submission pursuant to Paragraph 13 of the Permanent Injunction entered October 7, 2024 (the "Injunction"), which allows a party to seek the Court's resolution of a dispute or issue after the Technical Committee's ("TC's") review. (Dkt. No. 1017 at ¶ 13.)[1]

On July 1, 2026, in a joint submission to the TC, ("Ex. B"), the Parties raised three issues relating to the user experience of accessing third-party app stores distributed on the Google Play Store under Paragraph 12 of the Injunction ("Store Distribution").  On July 12, the TC issued its determination on the three issues presented ("Ex. A"), resolving two issues in Epic's favor and one in Google's favor.  Epic seeks this Court's review of the TC's determination on what was labeled "Issue #2."  (Ex. A.)  Below, the Parties provide their respective statements on this issue.

---

[1] All references to "Dkt. No." are to the MDL docket, *In re Google Play Store Antitrust Litig.*, No. 3:21-md-02981-JD, unless otherwise noted.

## EPIC'S STATEMENT

To increase user awareness of and access to competing app stores, the Injunction requires Google to allow "the distribution of third-party Android app distribution platforms or stores through the Google Play Store." (Injunction ¶ 12.) On the Play Store, the most basic discovery mechanism is the search function. But contrary to the purpose of the Injunction, Google plans to categorically exclude all app stores from Play Store search results. Instead, Google intends to relegate app stores to a separate page that users cannot reach without an extra click. (Ex. C; Ex. B at 3 (Figs. 4–5).) Google's proposal departs from conventional search functionality, will confuse users and will make app stores harder to find and less likely to be used. Although the TC accepted Google's approach, it did so on grounds that are inconsistent with the trial record and with this Court's prior observations. For example, the TC approved Google's plan as providing users with "clear cues" that they are installing an app store rather than another type of app (Ex. A), but the Court previously rejected Google's argument that such cues were needed to prevent user confusion (Dkt. No. 1000 at 69:7–9 ("We can presume the user has some intentionality about knowing they're installing an app store.")). While Epic respects the TC's perspective, the underlying issue here is not a matter of computer science, and the TC has not been asked to revisit whether and to what extent third-party app stores pose risks. Rather, the question before the Court is whether Google's refusal to include app stores in the ordinary search results that users expect to receive will impair the effectiveness of the Store Distribution remedy. Because Google's plan will frustrate the Injunction's goals, it should be rejected.

A key way that users find the apps they want in the Play Store is through the Play Store's search function. Especially given Google's preeminence in search, if a user searches for "music streaming" on the Play Store, the user knows Google will present the most relevant options available, such as Spotify and Apple Music. And if a user specifically searches "Spotify," they know Google will present—typically as the top result—the Spotify app, which can be installed with one click. But Google is refusing to do the same for competing app stores. Instead, Google proposes that Play Store search results will *never* include third-party app stores *at all*, regardless of relevance to a user's query. Thus, even if a user searches the Play Store specifically for "app

-3-

stores" or for a specific third-party store (*e.g.*, "Epic Games Store"), Google will not include *any* app stores in the results.  (Ex. B at 3.)  Instead, the search results would include only apps that are not app stores (and, therefore, not what the user wants), and the user would need to follow another link to a completely separate page where app stores would then be displayed.  (*Id.*)  That search path for app stores is materially different from, and inferior to, a typical search results page.  No user is accustomed to having the most relevant search results excluded from the search results page or being forced to navigate to a separate page to find what they searched for.  As a result, when users do not see what they want on the search results page, users are likely to overlook the new link, be dissuaded by the friction or just give up.

To overcome the prevalence of the Play Store (and resulting network effects), this Court ordered Google to allow app stores on the Play Store, where users go by default.  (Dkt. No. 1016 at 12.)  Thus, the basic goal of the Injunction is to get rival app stores onto the Play Store so they can benefit from user's habits and expectations about how to find and install apps.  (*Id.*)  App stores therefore must benefit from the Play Store's search function in the same way any other apps do, because that is what every user expects.  Google's proposal would deprive rival app stores— and only rival app stores—of equal access to the most basic app discovery tool on the Play Store.

The TC based its determination on a view that "inconsistent treatment for third-party app stores" was warranted by "the risks associated with installing third-party app stores" and "the well-known tendency of users to 'click through' warning screens."  (Ex. A.)  That rationale is contrary to findings of this Court and would undermine the Store Distribution remedy.

*First*, as to "the risks associated with installing third-party app stores" (Ex. A), that die has been cast.  The Injunction quite properly requires that third-party stores be made more accessible.  And to address the security of those stores, the Injunction allows Google to review app stores and their catalogs of apps for content and security using the same standards Google uses for review of other apps on the Play Store.  (Injunction ¶ 12.)  Removing app stores from search results and thereby making them harder to find is not a security measure; it is a form of friction that will materially decrease the discovery of third-party stores.  In fact, this Court has already expressed

-4-

"skeptic[ism]" that Google should "treat . . . a third-party store app any differently from the 3 million apps [Google] already [has]" or single out "just the one [type of app] that's going to be competitive with Play Store." (Dkt. No. 1000 at 73:14–22.)

*Second*, the TC's assumption that users simply "click through" warning screens and not realize they are installing an app store is also belied by the record. (Ex. A.) To begin, it is impossible to see how a user searching for "app stores" or the "Epic Games Store" would need reminding that the resulting apps are app stores. As this Court put it, "[w]e can presume the user has some intentionality about knowing they're installing an app store." (Dkt. No. 1000 at 69:7–9.) Thus, contrary to Google's assertion, its flow is not "only what is necessary" to tell users they are installing a store. (Google Stmt. at 7.) But even setting that aside, the evidence at trial—including testimony from Google's own CEO—proved (Dkt. No. 840 at 1360:16–22), and the Court found, that users do not simply breeze through warning screens; instead, friction is "highly effective in discouraging users from even trying" to get apps outside of the Play Store. (Dkt. No. 1016 at 12.)

*Finally*, the TC stated, without explanation, that Google's proposal would not "imped[e] app-store discovery or installation." (Ex. A.) Google goes further and says its version may be "preferential" for app stores because of the "banner" that precedes the search results. (Google Stmt. at 8.) But in every other context, Google endeavors to present the most relevant results of any search at the top of the search results page. It does so because that is the most effective way to present users with the results they seek. There is nothing unique about app stores; if they do not appear at the top of the search results page when they are the most relevant search results, users will be less likely to download them. Google's argument that it sometimes puts its own "products" in banners simply confirms Epic's point. As Google's Ex. D shows, the "products" that Google places in banners in Play Store search results are ***not*** apps. Google's apps show up in the search results, where users expect them. The banners are reserved for other ancillary items like a "gift card"—which users are far more likely to ignore. (*See* Ex. D.)

If app stores are excluded from ordinary search results, app stores are less likely to be discovered and used, which would undermine the Store Distribution remedy.

-5-

**GOOGLE'S STATEMENT**

The TC unanimously concluded that Google's proposal addresses "risks associated with installing third-party app stores"—and it does so "without impeding app-store discovery or installation." Ex. A.  This finding is consistent with the charge the Court assigned to the TC and in line with the remedy contemplated in the Injunction.  Epic repeatedly mischaracterizes Google's proposal:  Google is not hiding app stores.  Users searching for app stores will be directed to app stores.  In fact, Google Play will display—*at the very top of the search results page*, and above all other results—a banner with a link to an app store landing page.  Ex. C.  In response to a search for a specific app store, that banner includes the store's name and logo.  *Id.*

Epic's proposal won't make app stores easier to find, but it will raise the "overriding concerns" that led the TC to reject Epic's approach.  Ex. A.  The Court should uphold the TC's decision that Google's proposal addresses real-world risks without impairing app store discovery.

***First***, the TC's determination is well within its domain of expertise.  The TC consists of (1) Epic's selection, Prof. Michael Ernst, a Professor of Computer Science who served as Epic's remedies-stage expert, including on the app store distribution remedy, (2) Prof. Michael Reiter, a Professor of Computer Science and Electrical & Computer Engineering at Duke University, who was jointly selected, and (3) Patrick Brady, Google's selection, a Vice President at Google.  In issuing the Injunction, the Court recognized that it was "in no position to anticipate" or "solve" the "potential security and technical risks involved in making … available … rival app stores."  Dkt. 1016 at 12.  For that exact reason, "the injunction establishe[d] a Technical Committee" to address "technical issues about security" of the type presented here.  *Id.* at 16.  Epic is wrong to suggest that addressing such concerns is not within the domain of the TC.

***Second***, the TC's risk-assessment is well-supported by the record.  Epic's security expert, Prof. James Mickens, agreed that the "permission to install other apps," which is used by app stores, has "significant security implications," and "deserves special attention from the user," because it allows app stores to "later install malware" and "give[s] attackers powerful capabilities to corrupt the device."  Trial Tr. 2196:23–2197:10 (Mickens) (Nov. 21, 2023).  Google's security expert concurred.  Trial Tr. 2228:14–2229:6 (Qian) (Nov. 21, 2023).  Epic's proposal ignores the

-6-

expertise of the TC and the clear evidence in the record, described above.

Nor are the concerns identified by the TC resolved by Google Play's baseline security reviews of app stores it distributes.  These app stores can circumvent Google Play's initial security review by unilaterally updating themselves—or the apps they list—once they are installed by the user.  As a result, Google Play's review is necessarily limited and Google Play cannot stop an app store it distributes from enabling (purposefully or inadvertently) its powerful install permission to expose users to malware or dangerous content.  That is exactly what the TC was referring to when it noted "the risks associated with installing third-party app stores."  Ex. A.

***Third***, as the TC recognized, Google's solution is reasonably designed to ensure that users understand what they are doing "without impeding app-store discovery or installation."  Ex. A. Epic's own expert conceded at the remedies hearing that "[y]ou need some way to get the user to say, 'Yeah, I agree to this thing being an installer.'"  Dkt. 1000 at 72:15–18.  Google's proposal, described below, implements only what is necessary to achieve this outcome—to ensure users understand that they are navigating toward an app store with installation powers, as opposed to an ordinary app.

**1.  No Sideloading Screens**:  Epic omits a key detail:  App stores distributed by Google Play will ***not*** be subject to the sideloading notification and consent screens—which Epic has called "scare screens"—that installers must normally show before installing apps.  *See* Trial Tr. 1763:9–1766:25 (Kleidermacher) (Nov. 15, 2023).  Instead, once a third-party store is installed on the user's device from Google Play, it can directly proceed to installing apps.  Although this reduces the "friction" Epic has complained about (Epic Stmt. at 3), it also creates real risks for the user by eliminating the user's opportunity to (i) be informed that a specific app store will be installed and (ii) decide whether to give that store the powerful ability to install other apps.

In light of that change, in order to "give[] users clear cues that they are moving through an installation flow for a third-party app store (versus another type of app)," Ex. A, Google has created a simple landing page on Google Play that is dedicated to third-party app stores.  Users can browse and seamlessly install app stores from this landing page.  To ensure that users understand that they are installing an app store with powerful permissions and policies that may differ from

Google Play's policies, Google negotiated with Epic to agree on neutral, non-scary language.

**2.  Users Can Easily Find the App Store Landing Page**: To ensure that users can easily navigate to and use this landing page, Google has created numerous easy-to-use pathways that lead to this landing page: (1) Google included a prominent link in the menu of the Google Play Store; (2) at Epic's request, Google added a link in Google Play's "Categories" page, and (3) any app store can directly link to this landing page (e.g., from an ad, on a website, or in an email).

Google has also developed a search experience that will allow users to quickly and easily find app stores and the app store landing page.  This search function provides users with two ways to identify and search for third-party app stores.  First, lexical searches associated either with a given app store brand name (*e.g.*, "Capital") or app store name (*e.g.*, "Capital App Store") will return a result that prominently displays, at the top of search results, the specific app store's name and logo.  *See* Ex. C.  That result will direct users, with a link, to the app store landing page, where the desired app store will be shown at the top of the page.  *See* Ex. C.  Alternatively, if a user searches for app stores generally (*e.g.*, "app stores"), they will see a prominent result directing them to the app store landing page.  *See* Ex. C.  This treatment is similar to search queries for Google's own products, where a banner near the top of search results fulfills the user's search request and directs them with a link to another page in the Google Play Store.  Ex. D.

Epic's claim that Google's plan "will make third-party app stores harder to find and less likely to be used" (Epic Stmt. at 2) is unsupported and directly at odds with the TC's contrary finding that Google's proposal provides appropriate exposure and access to third-party app stores.  Ex. A.  The TC's finding can be trusted:  As noted, and contrary to Epic's claim that Google's proposal "categorically exclude[s]" app stores from search (Epic Stmt. at 2), Google will allow users to search for third-party app stores and surface responsive results in a prominent banner directly at the top of the search results, even on queries where the app store might otherwise be ranked lower.  In other words, app stores are not hidden from results—in some cases they are given *preferential* placement relative to where relevance alone would position them.

Google's plan thus balances security with accessibility—a measured solution unanimously endorsed by the TC and precisely the type of technical judgment the TC was created to render.

-8-

DATED: July 24, 2026

**CRAVATH, SWAINE & MOORE LLP**
Gary A. Bornstein (*pro hac vice*)
Yonatan Even *(pro hac vice)*
Lauren A. Moskowitz *(pro hac vice)*
Michael J. Zaken *(pro hac vice)*
M. Brent Byars *(pro hac vice)*

**FAEGRE DRINKER BIDDLE & REATH LLP**
Paul J. Riehle (SBN 115199)

By: */s/ Gary A. Bornstein*
Gary A. Bornstein

*Counsel for Plaintiff Epic Games, Inc.*

DATED:  July 24, 2026

**MUNGER, TOLLES & OLSON LLP**
Glenn D. Pomerantz
Kuruvilla Olasa
Lauren N. Beck

By: */s/ Kuruvilla Olasa*
Kuruvilla Olasa

*Counsel for Defendants Google LLC, et al.*

DATED:  July 24, 2026

**MORGAN, LEWIS & BOCKIUS LLP**
Brian C. Rocca
Sujal J. Shah
Michelle Park Chiu
Leigha Beckman

By: */s/ Brian C. Rocca*
Brian C. Rocca

*Counsel for Defendants Google LLC, et al.*

-9-

**CIVIL L.R. 5-1(i)(3) ATTESTATION**

Pursuant to Civil L.R. 5-1(i)(3), the filer of this document attests that concurrence in the filing of the document has been obtained from each of the other signatories.

By:    /s/ Gary A. Bornstein

Gary A. Bornstein

-10-