John E. Schmidtlein (CSB # 163520)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
jschmidtlein@wc.com

Anne Johnson Palmer (CSB # 302235)
ROPES & GRAY LLP
One Maritime Plaza, Suite 1800
300 Clay Street
San Francisco, CA 94111
Tel: (415) 315-6300
Fax: (415) 315-6350
anne.johnsonpalmer@ropesgray.com

*Attorneys for Defendant Google LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| EPIC GAMES, INC. v. GOOGLE, LLC, ET AL., <br><br> THIS DOCUMENT RELATES TO: <br><br> *In re Google Play Store Antitrust Litigation, Case No. 3:21-md-02981-JD* | Case No. 3:20-cv-05671-JD <br><br> **DEFENDANT GOOGLE LLC'S OPPOSITION TO BRANCH METRICS, INC.'S ADMINISTRATIVE MOTION TO CONSIDER WHETHER CASES SHOULD BE RELATED** <br><br> Judge: Hon. James Donato <br><br> [N.D. Cal. Civil L.R. 3-12] |

DEF. GOOGLE'S OPP. BRANCH'S MOT. TO RELATE                    CASE NO. 3:20-CV-05671-JD

All parties agree that *Branch* meets the standard for relatedness to *Arcell* and *Crowell*, because the plaintiffs in those cases, like Branch itself, claim to have been harmed in the same alleged market for general search services at issue in *United States v. Google* ("*DOJ Search*"). Google has moved to relate *Branch* to *Arcell*/*Crowell*, and Branch agrees. But Branch does not stop there, and instead claims relation also to *Play* (and *Epic* and *Aptoide*) and *Yelp*,[1] without any position as to which relatedness finding would yield the most efficiencies. Branch's scattershot approach should be rejected. *Branch* is related under Local Rule 3-12 to *Arcell*/*Crowell* alone.

Branch's effort to reshape its own allegations to fit the mold of *Play*, *Epic*, *Aptoide*, and *Yelp* fall far short of the standard for relatedness. *Branch* is about an alleged functionality for searching app content, which functionality Branch allegedly was unable to distribute due to agreements between Google and its Android manufacturer and carrier partners, and more specifically, due to an "alternative search service" provision in such agreements.[2] That same contract provision was challenged in *DOJ Search* and is fundamental to the claims in *Arcell*/*Crowell*. By contrast, Branch is not an app store like Epic or Aptoide, nor does it claim harm in a market for in-app payment processing. Nor is Branch a local search provider like Yelp that claims to have been harmed by alleged self-preferencing on Google's search results page.

Branch, however implausibly, casts itself as a participant in a general search market; none of the plaintiffs in *Play*, *Epic* or *Aptoide*, or in *Yelp*, claim participation in that market, whether as competitors or consumers. The only other plaintiffs who claim participation in that same market are those in *Arcell*/*Crowell* (as consumers). That core relation—not Branch's copy-and-pasting of allegations of other markets asserted by Epic, Aptoide or Yelp—is what drives Branch's case. Indeed, this is why Branch's CEO testified in the *DOJ Search* case; he never testified in *Epic*.

Branch's strained effort to cast its claims as related to those in *Play*, *Epic*, *Aptoide,* and

---

[1] We refer to *Branch Metrics, Inc. v. Google LLC*, 26-cv-07544-KAW (N.D. Cal.) as "*Branch*"; *Arcell v. Google LLC*, 22-cv-02499-RFL (N.D. Cal.) as "*Arcell*"; *Crowell v. Google LLC*, 25-cv-02775-RFL (N.D. Cal.) as "*Crowell*"; *In re Google Play Store Antitrust Litig.*, 21-md-02981 (N.D. Cal.) as "*Play*"; *Epic Games, Inc. v. Google LLC*, 20-cv-05671 (N.D. Cal.) as "*Epic*"; *Aptoide S.A. v. Google LLC*, 26-cv-03165-JD (N.D. Cal.) as "*Aptoide*"; and *Yelp Inc. v. Google LLC*, 24-cv-06101-SVK (N.D. Cal.) as "*Yelp*."

[2] Compl. ¶¶ 18, 29, 30, 86, 170-178, 230, 258, 279, 285, 287, 296, 311, 319, 352, 360, 370.

1

*Yelp* should be taken with a grain of salt. This is not the first time Branch has inaccurately characterized its claims under the guise of claiming efficiencies in a particular venue. Despite Branch hailing from Mountain View, California—like Google—Branch originally filed this lawsuit in Marshall, Texas, where not a single party, relevant nonparty, witness, or source of evidence was found. In taking the rare step of a writ of mandamus to order transfer, the Fifth Circuit not only saw through Branch's gambit, but it expressly noted the relatedness of *Branch* to *DOJ Search*. Google respectfully submits that the Court should likewise deny Branch's scattershot effort to relate its claims to multiple litigations, and deem *Branch* related to *Arcell/Crowell*.

## **BACKGROUND**

Branch alleges to have attempted to distribute a product called "Discovery Search," which would allow users to search a repository of app content, and which it claims was foreclosed by agreements between Google and its Android device manufacturer and carrier partners. *Branch*, ECF 1 ¶¶ 42–46, 51–52. Branch thus positions itself as an alleged victim of the conduct challenged in *DOJ Search*, coordinating with the plaintiffs there, and sending its CEO to testify at trial. Likewise, Branch's complaint relies on dozens of documents from *DOJ Search*, and Branch plans to call here the same expert that the DOJ did in *DOJ Search*. By contrast, Branch is not an app store like Epic or Aptoide, did not participate in *Play*, and does not purport to participate in Yelp's asserted local search markets or to share Yelp's complaints about Google's search results page.

Branch leaves the misimpression that Google belatedly moved to transfer here halfway through discovery (Mot. at 1); in fact, Google moved to transfer at the outset of this case, but Branch dragged out transfer briefing by insisting on venue discovery. That discovery yielded no sources of evidence within 100 miles of Marshall, Texas, but did yield several instances in which Branch embraced its reliance on *DOJ Search*. *See, e.g.*, *Branch*, ECF 57 at 5 (Branch timed its complaint to benefit from "prior government action," *i.e.*, *DOJ Search*); Ex. 1 (arguing that it is "[r]elying on the massive record established in" *DOJ Search* without mention of *Play*).

Straining for some connection to Texas, Branch claimed relation to a suit brought by the Texas Attorney General related to advertising technologies. Ex. 1 at 4. Branch had nothing to do with that case either. The Fifth Circuit ordered transfer, observing that Branch's case "stems from

2

a suit by the United States against Google," i.e., *DOJ Search*. *In re Google, LLC*, 172 F.4th 450, 452, *withdrawn and superseded on denial of reh'g*, 2026 WL 1906872 (5th Cir. July 2, 2026).

## ARGUMENT

Google moved to relate this case to *Arcell* and *Crowell*, cases that also focus on search services and, in particular, general search services.  Branch agrees, but also claims potential relation to four other cases.  Branch's connection to *Play*, *Epic,* and *Aptoide* is strained at best, and does not meet the standard for relatedness.  Branch's effort to relate to *Yelp* fares no better.[3]

**I.      The Parties Agree that *Branch* Meets the Standard to Relate to *Arcell*/*Crowell*.**

Branch concedes (as it must) relatedness to *Arcell*/*Crowell*; it alleges, like the plaintiffs in *Arcell* and *Crowell*, that Google's Android agreements restrained trade in the same general search services market.  Yet, despite that Branch professes to take no position on assignment, it offers several arguments to distinguish *Branch* from *Arcell*/*Crowell*.  Mot. at 4.  None is availing.

First, Branch argues that it has added markets beyond general search to its complaint.  But to the extent Branch refers to the markets asserted in *Play*, Branch is not a participant in those markets, as explained *infra,* Part II.  To the extent Branch refers to *Yelp*, Branch does not even allege to be a participant in the local search markets that Yelp pleads either.  *Infra*, Part III.  Setting aside the reasons Branch added these markets to its complaint, it has always embraced *DOJ Search* as the basis for its claims, to the point of testifying on the DOJ's behalf.  Branch's effort to fold other cases into its complaint does not change the relatedness analysis.

Second, Branch argues that, because *Arcell* and *Crowell* were brought by consumers, they present different issues of standing and damages.  But Branch does not explain why that would reduce factual overlap or judicial economy, or increase the risk of inconsistent results.  *Epic* and *Aptoide* were related to claims brought by regulatory enforcers and consumers notwithstanding different theories of harm, standing, and alleged damages (of which Epic asserted none).

Third, Branch argues that *Arcell* and *Crowell* are both putative class actions.  That is inaccurate as to *Arcell*, which is brought by a group of individual plaintiffs, not a class.  In any

---

[3] Aside from those previously deemed related, none of these cases relate to one another.  *See* N.D. Cal. L.R. 3-12(e).

DEF. GOOGLE'S OPP. BRANCH'S MOT. TO RELATE                    CASE NO. 3:20-CV-05671-JD

event, that is of no consequence.  This Court related *Epic* to *Play*, and *Aptoide* to *Play*, despite neither *Epic* nor *Aptoide* being class actions, while other *Play* plaintiffs sought class treatment.

## II.   *Branch* Does Not Meet the Standard to Relate to *Play*, *Epic,* or *Aptoide.*

The only basis upon which Branch suggests relation to *Play*, *Epic*, or *Aptoide* is that one of the four markets Branch claims to allege harm in is the Android App Distribution market.  That Branch copies a market from *Play* into its complaint does not create relatedness, for Branch is not a participant in that market.  Branch is not and does not purport to be an app store, app developer, or an app.  While Branch identifies the plaintiffs in *Play/Epic* as including an "app developer" and "app store," and the plaintiff in *Aptoide* as an "app store," Branch concedes it is none of those things, but rather, a "technology developer."  Mot. at 2.  Nor does Branch plead harm in any in-app payment processing market.  Finally, Branch was never a consumer, or otherwise a participant, in any of these markets.  *Contra Hurley v. Google LLC*, No. 25-cv-00883-JD (N.D. Cal.), ECF 25 (holding suit brought by Canadian consumers of apps related to *Play*).  The *Epic* trial thus featured testimony about competing app stores and from app developers, but not from Branch.  *See In re Google Play Store Antitrust Litig.*, 2024 WL 3302068, at *10–*12 (N.D. Cal. July 3, 2024).  Branch never participated in any aspect of *Play*, nor was it mentioned in any complaint filed by *Epic*, *Aptoide*, or any of the other *Play* plaintiffs.  Even were the app distribution market in some fashion to "constitute a portion of this case" simply because Branch copied that market into its complaint, "it will not constitute a substantial whole of this case," which is insufficient to "meet either prong of Rule 3-12(a)."  *Hynix Semiconductor Inc. v. Rambus Inc.*, 2008 WL 3916304, at *2 (N.D. Cal. Aug. 24, 2008).  "[T]he differences . . . far outweigh the similarities."  *In re Wells Fargo Mortg.-Backed Certificates Litig.*, 2010 WL 4117477, at *8 (N.D. Cal. Oct. 19, 2010).

By contrast, *Aptoide* is related to *Play* because Aptoide is an app store claiming to be harmed by the same conduct litigated in *Play*.  But unlike Aptoide, Branch does not distribute apps to users, does not update apps, does not facilitate in-app purchases, and does not charge or pay service fees on in-app purchases.  At most, all Branch claims to have done was to direct users to app stores operated by companies other than Branch.  Its claims are thus fundamentally different from *Play*, *Epic*, or *Aptoide*, which concerned Google's alleged monopolization of services that

4

Branch does not provide and alleged supracompetitive fees that Branch does not pay. There would be no efficiencies whatsoever from squeezing Branch's claims into *Play*, *Epic,* or *Aptoide*.

Branch observes (Mot. at 2) that, apart from the markets litigated in *Play*, Aptoide also pleads a market for general search and/or search advertising markets. But Aptoide does not claim to be a search service. Instead, it alleges only that Google's market power in those markets impacted the app distribution markets, in which Aptoide claims it was a competitor, *Aptoide*, ECF 1 ¶¶ 273-294, but in which Branch now concedes it was not (because it is not, and never was, an app store). The **only** plaintiffs among these that, like Branch, claim to have actually participated in a market for general search services are the plaintiffs in *Arcell* and *Crowell*.

### III.     *Branch* Does Not Meet the Standard to Relate to *Yelp*.

Branch's attempt to relate this case to *Yelp* similarly fails. Yelp alleges that it is a specialized vertical provider in alleged markets for local search services and local search advertising, and claims to have been harmed by alleged "self-preferencing" and "tying" related to the design of Google's search results page. Branch has no such theory, and thus distinguishes itself from Yelp. *Branch*, ECF 1 ¶ 57. Yelp does not claim to have participated in a general search services market, and Branch does not challenge the design of Google's search results page.

Branch incorrectly asserts that Yelp asserts "the same theory" of Google's "unlawful monopolization of the market for general search services" (citing Yelp's Local Search Services Market monopolization claim). Mot at 4-5. Yelp alleges Google holds *market power* in general search, but does not claim itself to participate in that market. Rather, Yelp's focus is on local search services, which it claims is a separate market from general search. Nor does Yelp claim to have been harmed by the core agreements at issue in *DOJ Search*, *Branch*, and *Arcell*/*Crowell*: Google's agreements with Android device manufacturers and wireless carriers, which are not substantively discussed in Yelp's complaint. Finally, as with *Play*, *Epic*, and *Aptoide*, Branch offers no explanation of the increased efficiency if these cases are related.

### CONCLUSION

Google respectfully submits that this case should be deemed related to *Arcell*/*Crowell*, and relation to the other cases cited by Branch should be denied.

DATED: July 27, 2026

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

By:     */s/ John E. Schmidtlein*
        John E. Schmidtlein (CSB # 163520)
        WILLIAMS & CONNOLLY LLP
        680 Maine Avenue SW
        Washington, DC 20024
        Tel: (202) 434-5000
        Fax: (202) 434-5029
        jschmidtlein@wc.com

        Anne Johnson Palmer (CSB # 302235)
        ROPES & GRAY LLP
        One Maritime Plaza, Suite 1800
        300 Clay Street
        San Francisco, CA 94111
        Tel: (415) 315-6300
        Fax: (415) 315-6350
        anne.johnsonpalmer@ropesgray.com

        *Attorneys for Defendant Google LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this July 27, 2026, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System.

DATED: July 27, 2026                By:    */s/ John E. Schmidtlein*

John E. Schmidtlein